```
                  IN THE UNITED STATES BANKRUPTCY COURT
                    FOR THE DISTRICT OF DELAWARE


IN RE:                          )   Case No.  09-10138(KG)
                                )   (Jointly Administered)
                                )
NORTEL NETWORKS, INC.,          )   Chapter 11
            ET AL,              )
                                )   Courtroom 3
                                )   824 Market Street
            Debtors.            )   Wilmington, Delaware
                                )
                                )   February 28, 2017
                                )   9:02 a.m.


                    TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE JUDGE KEVIN GROSS
                  UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For Law Debenture,
Trustee:                    Patterson Belknap Webb & Tyler
                            BY:  JAMES MASELLA, ESQ.
                            BY:  DANIEL LOWENTHAL, ESQ.
                            TAYLOR KIRKLIN, ESQ.
                            1133 Avenue of the Americas
                            New York, NY  10036
                            (212) 336-2720


ECRO:                       GINGER MACE

Transcription Service:      DIAZ TRANSCRIPTION SERVICES
                            331 Schuylkill Street
                            Harrisburg, Pennsylvania 17110
                            (717) 233-6664
                            www.diaztrans.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service
```

APPEARANCES:
(Continued)

For Solus Alternative
Asset Management:          Quinn Emanuel Urquhart & Sullivan
                          BY: JAMES TECCE, ESQ.
                          BY:  COREY WORCESTER, ESQ.
                          51 Madison Avenue, 22nd Floor
                          New York, NY 10010
                          212-849-7000


For Solus Alternative
Asset Management:          Pinckney Weidinger Urban & Joyce
                          BY:  JOANNE PINCKNEY, ESQ.
                          3711 Kennett Pike
                          Kennett Pike, DE 19807
                          302-504-1498


For Law Debenture,
Trustee:                   Morris James LLP
                          BY:  STEPHEN MILLER, ESQ.
                          500 Delaware Avenue, Suite 1500
                          Wilmington, DE 19801
                          302-888-6853


For Official Committee
Of Unsecured Creditors:    Akin Gump Strauss Hauer & Feld, LLP
                          BY: DAVID BOTTER, ESQ.
                          One Bryant Park
                          Bank of America Tower
                          New York, NY  10036-6745
                          212-872-1000


For Official Committee
Of Unsecured Creditors:    Whiteford Taylor Preston
                          BY: KATHERINE GOOD, ESQ.
                          The Renaissance Centre, Ste. 500
                          405 N. King Street
                          Wilmington, DE  19801-3700
                          302-357-3266


For Interested Party,
Dewey LeBoeuf Secured
Lender:                    Kramer Levin
                          BY:  ROBERT SCHMIDT, ESQ.
                          212-715-9527

1

1    WILMINGTON, DELAWARE, TUESDAY, FEBRUARY 28, 2017, 9:02 A.M.

2         THE CLERK:  Please rise.

3         THE COURT:  Good morning, everyone.  You may be

4    seated.  Thank you.

5         We're here of course on the Fee Dispute, and Mr.

6    Lowenthal is all ready.

7         MR. LOWENTHAL:  Yes, sir, Your Honor.

8         THE COURT:  Now, just --

9         MR. LOWENTHAL:  Good morning.

10         THE COURT:  Good morning.  Just to remind

11    everyone, we'll go until around 1:00, and we'll take a

12    break, you know, around 10:30.  Then we'll resume at 2:00

13    until 5:00, and we'll take another 15-minute break in the

14    afternoon, and I'll kind of just keep loose time for

15    counsel's benefit, and I'll let you know if you ask how much

16    time you've got.

17         Good morning, Mr. Lowenthal.

18         MR. LOWENTHAL:  Yes, sir, Your Honor.  Good

19    morning, Daniel Lowenthal, Patterson, Belknap, Webb and

20    Tyler for the Indentured Trustee on the NNCC notes, Delaware

21    Trust Company, formerly Law Debenture Trust Company of New

22    York.

23         Now, Your Honor, before I begin my opening

24    remarks, I'd just like to make a few introductions.

25         THE COURT:  Yes, please.

1          MR. LOWENTHAL:  And I'd like to hand up a couple

2  of things.

3          THE COURT:  All right.

4          MR. LOWENTHAL:  And then I'll start with the

5  proceeding.

6          THE COURT:  Good.

7          MR. LOWENTHAL:  Okay.  So with me at counsel table

8  is James Masella, my partner, with whom you've spoken on the

9  phone.

10          THE COURT:  Yes.

11          MR. LOWENTHAL:  Obviously Stephen Miller --

12          THE COURT:  Mr. Miller.

13          MR. MILLER:  Good morning, Your Honor.

14          MR. LOWENTHAL:  -- from Morris James.

15          THE COURT:  Good morning.

16          MR. LOWENTHAL:  And one of my colleagues, Taylor

17  Kirklin.

18          THE COURT:  Mr. Kirklin, good morning to you.

19          MR. LOWENTHAL:  And also in the courtroom is

20  Robert Schmidt of the Dewey Trust Estate.

21          THE COURT:  Good morning, Mr. Schmidt.

22          MR. LOWENTHAL:  Your Honor, as you know, Dewey

23  represented Law Debenture as its lead counsel from early

24  2009 until spring of 2012 when they imploded and Law

25  Debenture retained my firm as lead counsel.

1          THE COURT:  Yes.

2          MR. LOWENTHAL:  Okay.  If I may approach, Your

3  Honor, you asked yesterday for a chart for us to determine

4  how the Fee Objectors calculated their objections.

5          THE COURT:  Yes.

6          MR. LOWENTHAL:  We've done our best.  I'll hand

7  one to opposing counsel, and if I may, I'll hand them a

8  couple so they have a few.  And then if I may, I'll hand you

9  our chart.

10          THE COURT:  Please, Mr. Lowenthal.  Thank you.

11          MR. LOWENTHAL:  The other thing I'm going to hand

12  up, and again, I'll give opposing counsel a couple of -- or

13  a few provisions of the Indenture that I might refer to

14  during my opening remarks.

15          THE COURT:  Very well.

16          MR. LOWENTHAL:  So let me do that, and then we'll

17  start.

18          THE COURT:  Okay.  Thank you, Mr. Lowenthal.

19  Wonderful.  Thank you.

20          MR. LOWENTHAL:  Your Honor, the Trustee and its

21  professionals are very proud of their work in this case.

22  The invoices that you've received reflect work that was done

23  for eight years, and the work is for fees that have been

24  earned and yet have not yet been paid.  Before this

25  proceeding started, those fees were just shy of $8 million,

1   and significantly, the Canadian Court has already approved

2   the fees of another Indenture Trustee, Wilmington Trust, as

3   being reasonable and their fees for the same eight years for

4   counsel in three jurisdictions, $7.15 million.

5           With respect to the Indenture Trustee, which I'll

6   refer to either as the NNCC Trustee or the Trustee, the

7   Debtors have already agreed to pay $4.25 million of the

8   about $8 million, and that means about $4 million of the

9   total $8 million through January 31st will be paid from the

10  charging lien, and that really should take care of it.  Four

11  point two five is being paid by the Estate, and the Debtors

12  don't -- the Objectors don't even object to about $4 million

13  of our fees.  That's about eight right there, but we're

14  going to proceed through this and demonstrate to you why our

15  fees in any event are all reasonable.  The Debtors' Estate

16  is also paying for the Objectors' own counsel $750,000 in

17  fees, and the Objectors' portion of the Ad Hoc Committee

18  fees, $2 million.  So with the $11 million that were

19  incurred on behalf of the NNCC Holders, and the U.S. Debtors

20  are paying all but just $4 million.

21          To quote Your Honor, the Allocation Dispute was

22  unprecedented, complex, and massive, one of the most

23  expensive on record.  For all parties in this case, Your

24  Honor, there were difficult legal and valuation issues, no

25  doubt, multiple cases filed in multiple countries, eight

1  years' worth of hard work, $2 billion in Estate professional

2  fees, four mediations in two countries, a 20-day cross-

3  border trial, video linked in two countries, Reconsideration

4  Motions, Appeals and more.  For those eight years, Your

5  Honor, it was the NNCC Trustee that carried the torch for

6  the NNCC Claims in this Court, at mediation and on the

7  Creditors Committee.  The Trustee was the only, the only

8  pure non-conflicted Creditor for the NNCC notes.

9       The Objectors held and hold debt in other tranches

10  of the Debtors' capital structure, trade claims, holdless

11  holds, and PointState holds five or six tranches of the

12  Crossover Bonds.  Indenture Trustee has no way of knowing

13  their various investment strategies, what their algorithm

14  shows, what they want for the NNCC notes besides the highest

15  recovery versus the others, but it was the only the NNCC

16  Trustee that was pure in representing the interests of

17  maximizing recoveries for the NNCC holders, and those claims

18  are worth about $300 million based on the unique attributes

19  of the NNCC notes, principal of $150 million pre-petition

20  interest, the Support Agreement that Your Honor's heard so

21  much about, which provided for post-petition interest if we

22  had the chance to litigate it, and a no-call provision in

23  the Indenture.  These bonds were also unique in this case

24  because they were the only ones issued out of the U.S. and

25  guaranteed in Canada.

1          Now, Your Honor, the test for reasonableness is

2     the lodestar test, and the Trustee and its professionals

3     absolutely satisfy it.  Let me go through the factors

4     briefly.  Hourly rates -- no doubt that the rates of the

5     various firms here are market rates.  The complexity and

6     difficulty of the case -- that speaks for itself.  The

7     lawyers' expert in this area -- today is not a day for

8     humility or modesty, Your Honor.  We're all proud of the

9     work we did, as I said.  The resources marshalled on the

10    other side -- Your Honor, we talked about this in our papers

11    and at Confirmation, and we have absolute agreement, I

12    believe, of the Objectors.  It was us against everybody else

13    in the case.  No one else agreed with our views on the

14    Support Agreement.  We had to be involved in this case, Your

15    Honor.  We had to push these issues.  The timing and demands

16    of the case -- again, I think that speaks for itself.  The

17    amount involved, the benefit to the client and the results

18    obtained -- the Trustee, Your Honor, was a full contributor

19    in all aspects of this case, and it had to be, and our

20    Noteholders are receiving the best recovery of any creditor

21    group in the three countries in this case, essentially 100

22    percent of principle and pre-petition interest.  All of

23    those elements, Your Honor, are satisfied here, and in fact,

24    the Fee Objectors take issue with none of them.

25          Their only objection addresses one issue, and

1   that's hours billed.  Their assertion, Your Honor, that the

2   cost of the Trustee, quote, unquote, spiraled out of control

3   and there was a lot of duplication by the Trustee, are

4   absurd.  You've seen the chart in our Brief where we compare

5   the fees from the EMEA Debtors on down to the three

6   Trustees.  They're a pimple.  They're miniscule in a case of

7   this size and complexity.  Duplication -- absolutely not.

8   The Ad Hoc Bondholders billed approximately $95 million, and

9   I understand the United States Creditors Committee and their

10  professionals about $74 million worked at cost, only $8

11  million, does not duplicate that work, Your Honor.  We were

12  surgical and we were efficient.

13          The same people, Your Honor, who are questioning

14  the way we staffed this in this incredibly complex case that

15  at least five outside lawyers working to attack our fees in

16  this eight-year case, Your Honor, they cite Judge Walrath's

17  *Worldwide Direct* case, 363 sale that took a couple of

18  months.  That's in one bucket.  We were before Judge Walrath

19  in the *Washington Mutual* case where four indentured trustees

20  served on the Creditors Committee, complex issues.  We had

21  counsel for all of them on every committee call working

22  through tough legal and valuation issues, and Judge Walrath

23  approved everyone's fees in full as reasonable in the plan

24  that she confirmed in that case a few years ago.

25          Your Honor, this case, this case is *Worldwide*

1    *Direct* or *Washington Mutual* on steroids.  We submit that how

2    we handled this case, how efficiently we handled this case,

3    demonstrates that we satisfy all of those elements.

4            Now, Your Honor, I want to turn to some of the

5    Indenture provisions because I want to make sure that

6    everything that we address today is framed in the right

7    light.  We're an Indenture Trustee operating after default.

8    The Trustee's a creation of statute, the Indenture Trust

9    Indenture Act, and we are performing a role pursuant to

10   contract, the Indenture with the Debtors.  They're our

11   counterparty.  The Trustee's rights and obligations are

12   governed by the Trust Indenture Act, New York law, and case

13   law that's been developed for decades.  The Trustee is to be

14   paid by the Issuer.  That's the Debtors.  But if they don't

15   pay, we have a First Lien on disbursements to the extent

16   that they are reasonable.  Typically in bankruptcy cases,

17   and often debtors do not pay fees of trustees.  Here they

18   are paying 425, and often if they do get paid or if a

19   trustee gets paid, there has to be a showing of substantial

20   contribution.  We're not even focusing on that today.

21   That's not at issue.  But otherwise we would have to be paid

22   from the Charging Lien.  Any holder who buys public debt

23   pursuant to a standard indenture is presumed to know that,

24   and at his deposition, Mr. Blauner admitted that he read the

25   Indenture; he knows that.  And we're subject -- the standard

1    we're subject to is prudence, a prudent person's standard.

2    Trustee's also allowed to retain professionals, and they can

3    be paid for the reasonable fees as well.

4            Now, this is important.  The Trustee does not act

5    for any specific holders.  The Trustee acts for all holders,

6    whoever they might be on a given day, and often there's a

7    robust market for distressed debt, and holders at the outset

8    of the case might not be holders at the end of the case.

9    The Trustee here had no idea from one day to the next Solus

10   would be a Bondholder.  They could have traded out.  We know

11   that the other large holder first was Nokota, then

12   Macquarie, then PointState, which just came in 2016.  So the

13   Trustee must do on a daily basis what it believes is prudent

14   on behalf of whoever might be on any given day, and under

15   the Indenture, the Trustee can be held liable if it

16   willfully disregards its duties or is grossly negligent, but

17   the Indenture also gives the Trustee rights as well.  They

18   can give a direction, a majority can, with a full indemnity

19   in case other holders sue the Trustee for taking that

20   direction.  So the Trustee absent a direction must determine

21   what is prudent.  That includes staffing, what's to be read,

22   what hearings to attend, and more.

23           You have a stack of emails, Your Honor, that we

24   submitted with Mr. Heaney's deposition.

25           THE COURT:  Yes.

1          MR. LOWENTHAL:  It demonstrates in exercising

2    prudence just how much we worked with the Objectors and

3    their counsel.  Your Honor, I say in my 29, 30 years of

4    doing this, and many of them representing indenture

5    trustees, have never worked as closely as we did with

6    particularly counsel for the Objectors, the Malik Schiffrin

7    firm and the Quinn firm, and the irony, the irony is that

8    the holders who pushed us for so much work and answers to

9    such complicated topics as PBGC joint and several liability,

10   the no-call provision and so much more, when all of it's

11   done, the irony is that when they're going to receive a 100

12   percent recovery, they now object to the amount of the work

13   done.  These are the same holders, Your Honor, that demanded

14   of us that we not sit on the sidelines, quote, unquote, and

15   you have that email, with respect to the Appeal of the

16   Allocation Decisions, and yet they're now the same holders

17   that object to the fact that we attended a conference before

18   the 3rd Circuit Court of Appeals and involved in the

19   Allocation Trial.  Tellingly, Your Honor, when the work was

20   actually being done, the Objectors never made one remark to

21   us about fees, staffing, hourly rates and the like, not in

22   eight years.

23          We satisfied the test of reasonableness, Your

24   Honor, and submit that we've already satisfied our burden.

25   But here we are with their Objections, and Your Honor made

1  one thing perfectly clear on January 25th in our

2  teleconference, that the Objectors had to identify on an

3  item-by-item, line-by-line basis what they objected to, and

4  with respect -- except for a minor exceptions, Your Honor,

5  we submit they have not done that.  What they did is, they

6  lumped everything into five categories, color-coded, that

7  basically make no sense to us.  Two of the categories make

8  up over 90 percent of their Objections:  committee service

9  and use of counsel on committee, and participation in the

10 Allocation Proceeding.  I'm going to come back to their

11 Objections with respect to the color coding in a bit.

12          With respect to committee time, over the last

13 month, Your Honor, their position keeps changing.  First

14 they said in early January, the Trustee, Indenture Trustees,

15 have a conflict just for sitting on a committee.  Well, they

16 dropped that argument.  Then they said the Trustee shouldn't

17 have served on the committee, that wasn't prudent, and they

18 dropped that argument.  So now in their latest Brief on

19 Friday where this has come to, apparently they now concede

20 it's prudent because we have a whole list of cases since the

21 1990s where Indenture Trustees are appointed by the U.S.

22 Trustees all the time, so now they basically say but even if

23 you're sitting, you shouldn't be able to use -- you

24 shouldn't use your own counsel, even though the Indenture

25 says the Trustee can act through counsel, so that's now

1  their objection:  you shouldn't rely on counsel even when

2  you're dealing with all of these complicated issues and

3  you're the only one carrying the torch for the NNCC holders

4  on the Committee.

5       The Trustee's representatives here, Your Honor, as

6  in most cases, Mr. Heaney and Ms. Horwitz, they're not

7  lawyers.  The Indenture is crystal clear, however, that they

8  can rely on the help of lawyers and act through counsel, and

9  no doubt what they did is Indenture Trustee's practice, it

10 produced efficiencies, and it was prudent to have counsel

11 involved on the Committee and getting the benefit of the

12 Committee efficiencies and working with counsel for the

13 Committee and their financial advisers over the last many

14 years on all of these Allocation issues because that's

15 essentially all the Committee really did for a number of

16 years.  So if the decision is, or was, was it prudent, was

17 it a prudent thing to have help of counsel or risk making

18 mistakes and being accused by holders of being grossly

19 negligent and facing much larger, costly problems than this

20 $8 million dispute, costlier problems in terms of both money

21 and reputation.  I think the decision dictates itself, Your

22 Honor.

23      The highlighting they have makes no sense.

24 There's pink and yellow and some of it says it's Committee

25 stuff, some of it says excessive time, some of it says you

1   shouldn't have been doing this or that.  It's hard to make

2   heads or tails of it.  We've given you our best effort but

3   you told them to go line item by line item and they really

4   just haven't done that, Your Honor.  What they seem to be

5   doing is cherry-picking and trying to get Your Honor to

6   believe eight years after the fact that somehow my

7   colleagues and I could have parachuted in and out of this

8   case and gotten this all just right.  Well, that's not the

9   legal standard.  It wasn't that type of case.  The

10  professionals had to stay involved every day, and Mr.

11  Blauner's comment in his Affidavit as to what he anticipated

12  or what he expected in terms of what we would do, that's all

13  irrelevant to the legal analysis, Your Honor.  It's the

14  "prudent person" standard.  And of course --

15          THE COURT:  It's not measured in hindsight,

16  either, as I understand it.

17          MR. LOWENTHAL:  That's correct, Your Honor.  It's

18  measured at the time, so what's today?  February 28th.  And

19  it was February 28th, 2013, and we came off of the Winkler

20  mediation in cold Toronto in January, and Your Honor and

21  Justice Morawetz at the time said go ahead and put together

22  a trial protocol, which we worked on hard with Cleary and

23  Milbank and the others, and Your Honor said please, get me a

24  trial protocol, we're going to work on this, and things in

25  there relate to what we are working on and involve

1   potentially holders' recoveries next year if it's settled in

2   the next mediation or at trial or after trial.  We had to

3   make a decision with our client day after day whether we

4   should be involved.  So, you know, it's not as if you're

5   watching the Super Bowl and you know that the whole game's

6   going to be resolved in overtime.  So what happened with the

7   two-minute warning really didn't matter in the first half.

8   You don't know that.  You're watching and you're on the edge

9   of your seat.  You're involved all the time.  So to come

10  here eight years afterwards, you're absolutely right, and

11  look in hindsight and say you should have done this on

12  February 28th but you shouldn't have done that on March 3rd

13  and you should have been able to answer my question when I

14  called you at nine in the morning about the PBGC liability

15  on June 3rd but you actually shouldn't have been there at

16  the Allocation Trial, the day when Your Honor said we all

17  really need to go meet in the library and have a discussion.

18  We had to decide, Your Honor, day by day to do the prudent

19  thing, and that's what we did both with respect to the

20  Committee, which was dealing with Allocation all the time,

21  and the Allocation process, and they, Your Honor, they

22  object to our entire involvement in the Allocation process.

23  That's their other big color-coded objection, Your Honor.

24          All three of the Indenture Trustees were appointed

25  by you and Justice Morawetz to be Core Parties along with

1  the other key parties in this case, and we all did a lot.

2  We all helped draft that trial protocol.  We all did

3  pretrial discovery, and we were surgical as to which

4  depositions we went to and not.  We relied a lot on Mr.

5  Botter and his Committee to summarize some of those

6  depositions because we didn't want to go to everything.

7  We'd have a much higher bill now if we had done that.  But

8  we were prudent, Your Honor, same with their Trial and their

9  Reconsideration Motions.  Yes, we were at trial.  We're

10  trained in law school that if there's an issue that's

11  relevant to your client, you darn well better be at trial.

12  You have no idea what's going to happen.  No one was

13  indemnifying my firm for a malpractice suit if we weren't

14  there and something went sideways.  Never.  Reconsideration

15  motions -- we had to make them, Your Honor, both in the U.S.

16  and Canada, and we're the only party that had them granted

17  in both countries, and what took place in Canada was

18  particularly significant for our holders.  The PPI motions,

19  the mediations before Judge Farnan, he'll tell you how we

20  were involved and active in this case, and then the Appeal

21  where we were told don't side on the sidelines.

22          It was clearly prudent, Your Honor, clearly

23  prudent.  That's the standard for the NNCC Noteholders to be

24  involved in the Allocation Proceeding in all phases in this

25  courtroom, in conferences with Your Honor, and in lawyers'

1    offices in Delaware and in New York.  The Trustee, as I

2    said, could not parachute in and out.

3         Two examples, Your Honor, we put in our Brief,

4    issues that happened with Mr. McConnell, one of the experts

5    in this case.  We had to fix what was going on, and if we

6    weren't involved, it could have been bad for our holders.

7    They don't even know who Mr. McConnell is.

8         And then your Allocation Decision, Your Honor,

9    gave rise and Justice Newbould's need for some

10   Reconsideration, and also your Decision brought forth an

11   issue as to whether the NNCC Noteholders would get a direct

12   Allocation of the lockbox.  I couldn't sit on the sidelines

13   and not be involved in then parachute in and figure out what

14   to do with respect to that.  That would not be prudent or

15   professionally responsible.  In fact, Your Honor, the only

16   reason we could do the work that Solus and PointState don't

17   object to is because we did the work that they do object to.

18        As I said at the Confirmation Hearing, and as Your

19   Honor just suggested and not raised -- not suggested but

20   made clear, we didn't have a crystal ball day to day, year

21   after year, month after month, year after year as to what

22   would happen.  We had to be there.  And at no time, at no

23   time we were given a direction to stand down and not

24   participate.  It would have been foolhardy and incredibly

25   risky for the Trustee to not involved in the Allocation

1    process.  If the test is prudent, then it was prudent for

2    the Trustee to participate.

3          I think I'm approaching my 15 minutes but I'd like

4    just a few more minutes, if I may, Your Honor, to take care

5    of a few more things and sum up?

6          THE COURT:  Sure.  Go ahead.

7          MR. LOWENTHAL:  Thank you.  There are three other

8    categories, quickly.  They criticized the firms for not

9    taking off some money for transitioning from Dewey to my

10   firm.  The Dewey firm has graciously agreed to take a $60

11   reduction so that issue we think should go away.

12         They criticized my firm for billing for times

13   preparing fee statements, which estate professionals always

14   do.  We believe that's fine here, Your Honor, but to try and

15   clear out some of this underbrush, our calculation of what

16   they say that number is was $84,000. We will concede that --

17   not concede but we'll just take it off the table and write

18   that amount off of our bill so we don't even have to deal

19   with that.

20         There's some alleged duplication.  We can't figure

21   out what that is.  In the color-coding schemes, they seem to

22   have run out of colors.  Why they had to lump three

23   different categories in yellow and pink is beyond me but we

24   don't agree with the duplication because it's not just

25   specific enough, Your Honor.  That should be denied.

1          You'll hear today from Mr. Heaney.  He's the

2    retired managing director of Law Debenture with 44 years of

3    industry experience, and Sandra Horwitz, the managing

4    director of Delaware Trust, who likewise has significant

5    experience in the industry.

6          When the trial is over, Your Honor, we're going to

7    ask Your Honor to award the fees on a firm-by-firm basis,

8    and we maintain that they are reasonable.

9          And one other thing, Your Honor, before I sit

10   down.  We also believe that the fees incurred and included

11   with this proceeding in January and February should be

12   awarded as well.  The Indenture gives the Trustee a right of

13   indemnification for defending challenges to its performance.

14   That's section 606(b) in what you have before you.  And if

15   the Debtors don't pay that, it's a valid exercise out of the

16   Charging Lien.  The case -- and that's in section 606(d).

17   The case that the Debtors -- I'm sorry.  The case that the

18   Fee Objectors cite, *Baker v. Asarco*, not applicable here.

19   We are not estate professionals.  And the American rule

20   doesn't apply because we have a contract that takes care of

21   this.

22          So in conclusion, Your Honor, the Trustee and its

23   professionals, we did great work.  The fees earned and

24   incurred are reasonable.  The holders never gave us a

25   direction to stand down, not participate on the Committee

1  with our client or participate in the Allocation Proceeding.

2  We're here in hindsight.  They didn't give us an indemnity

3  if we got sued.  No direction, no indemnity to do anything

4  different from what we were doing in the real time of this

5  case.

6          So therefore, Your Honor, based on the law, the

7  facts and the equities here, we submit that the fees earned

8  should be paid now.  Thank you.

9          THE COURT:  All right.  Thank you, Mr. Lowenthal.

10          Mr. Tecce, good morning.

11          MR. TECCE:  Good morning, Judge Gross.  Good

12  morning.

13          Good morning, Judge.  This morning, I'm joined by

14  my partner, Mr. Worcester.

15          THE COURT:  Mr. Worcester, good morning.

16          MR. TECCE:  Ms. Pinckney, our Delaware counsel.

17          MS. PINCKNEY:  Good morning, Your Honor.

18          MR. TECCE:  Mr. Pugh from our firm as well, and

19  Mr. Russell, and our client, Mr. Steven Blauner, in the back

20  of the courtroom.

21          THE COURT:  All right.

22          MR. TECCE:  Your Honor, during my opening

23  presentation, I'm going to refer to some slides, if I may

24  approach?

25          THE COURT:  Yes.  Thank you, Mr. Tecce.

1            MR. TECCE:  Thank you.  I had to make sure I left

2   one for myself.

3            THE COURT:  Yes, that's right.

4                          (Laughter)

5            MR. TECCE:  Your Honor, today's dispute is not a

6   dispute about the qualifications of attorneys that appeared

7   in these cases.  It's not a dispute about their caliber.

8   It's not a dispute about their integrity.  By definition,

9   this is an adversarial process, but the adversaries who have

10  the irreconcilable dispute here are the Trustee and the

11  Noteholders.  The attorneys are not the adversaries in this

12  dispute.

13           And what this dispute is about is the legal duties

14  that are imposed on an Indenture Trustee, which is a

15  fiduciary for the NNCC Noteholders and an entity that owes

16  them an undivided duty of loyalty.  The Trustee is obligated

17  to discharged that duty in a way that protects the

18  Noteholders, to exercise prudence, to manage his

19  professionals properly, and to ensure that the overarching

20  purposes of the Indenture, which is to get the notes repaid,

21  is realized.

22           The Noteholders respectfully submit that that duty

23  was not properly discharged in this case, that professionals

24  over a seven-year period of time were not managed in a way

25  to avoid duplication and expense, and as a consequence,

1  their fees are not reasonable for purposes of the Indenture.

2          It is anathematic to the Noteholders to object to

3  professional pleas.  Our client, Mr. Blauner, is here.  He

4  will tell you that in 40 years of experience, he's never

5  objected to an Indenture Trustee's fees.  This is not an

6  objection that we took lightly, and it is not a whimsical

7  objection by any measure.  It's one steeped in the law

8  governing the Trustee's fiduciary duties to its Noteholders,

9  which goes back 100 years, and it's also steeped in a

10  Decision from this Court and another that specifically

11  examined this issue.

12          And we're talking about the *Worldwide Direct* case,

13  Your Honor.  What decision recognizes is that an indenture

14  trustee that sites on a creditors committee wears two hats.

15  There's a trustee as committee member, and that committee

16  member is a statutory fiduciary for all unsecured creditors,

17  and there's the second hat, which is the trustee as a

18  fiduciary for its individual noteholders, and it is not

19  absolved of that duty when it assumes committee membership.

20  It carries two duties.

21          And what *Worldwide Direct* makes clear is that the

22  standards governing the fees and expenses of an indenture

23  trustee that sits as a member of a statutory committee with

24  respect to its committee-related work are governed under a

25  substantial-contribution standard, and with respect to its

1   status as a fiduciary for its noteholders, its second hat,

2   they're governed under the reasonableness standard under the

3   indenture.  In assessing the reasonableness of fees of an

4   indenture trustee that sits on a statutory committee,

5   *Worldwide Direct* lays out four fundamental propositions.

6   The first:  "The indenture trustee owes its fiduciary duty

7   to the debenture holders, not to the bankruptcy estate," and

8   that requires it to "act in the best interest of the

9   debenture holders and with the same care as if it owned the

10  investment.  Second, while it's prudent for the indenture

11  trustee to hire its own attorneys, it has "an obligation to

12  assure that the firm only did what is necessary to protect

13  the noteholders' interests."  Third, the trustee bears the

14  burden of proof in establishing the reasonableness of its

15  fees, and fourth, to be reasonable, the fees must relate to

16  work performed advancing the interests of the noteholders

17  specifically and matters peculiar to their interests

18  separate and apart from their interests as general unsecured

19  creditors.

20          That case is on all fours with this case.  I would

21  not try to argue, Your Honor, that that case was as complex

22  as Nortel.  In fact, 99 percent of the bankruptcy cases in

23  this country or even a smaller percent, .01 percent, are as

24  complex as Nortel.  But that doesn't render the case

25  inapplicable.  What that means is that the trustee in that

1  case, their fees were $1.6 million.  That means that I can't

2  argue to you that that's a comparable figure for the Trustee

3  in this case, and I wouldn't.  What I am arguing is that

4  that case is on point because the Indenture Trustee sat on

5  the Creditors Committee.  That case is on point because it

6  examines three categories of fees.  The first, the fees and

7  expenses incurred as a member of the Creditors Committee,

8  and it found that 250,000 of those satisfied the

9  substantial-contribution standard.  The second bucket, fees

10 and expenses incurred as a member of the Creditors

11 Committee, it found a portion of those 700,000 were

12 unreasonable because they did not advance the interests of

13 the Noteholders.  And then a third bucket were fees that

14 they found in fact did interests of the Noteholders, and the

15 Court allowed those fees as reasonable.

16        The Trustee argues that this case is 11 years old,

17 that it hasn't been followed, but no cases criticized this

18 decision, no cases said this decision is not good law, and

19 it's corroborated by the *General Holmes* decision in the

20 Southern District of Texas, which applies the very same

21 analysis.

22        Respectfully, Your Honor, our client's position

23 has not been properly characterized in this dispute.  We

24 have never argued that it is imprudent for the Trustee to

25 become a member of the Creditors Committee.  That is not our

1    argument.  We have never argued that it's imprudent for the

2    Trustee to retain its own counsel.  That is not our

3    argument.  We are not challenging the practice of indenture

4    trustees sitting on creditors' committees.  That is not the

5    objection.

6         THE COURT:  Let me ask you a question, Mr. Tecce.

7    Because -- would you agree that this is not a hindsight

8    exercise?

9         MR. TECCE:  I would, Your Honor, I would, and to

10   address Your Honor's question to Judge Lowenthal -- to --

11        THE COURT:  You've elevated him.

12        MR. TECCE:  -- counsel for --

13        MR. LOWENTHAL:  All rise.

14        THE COURT:  That's right.

15                    (Laughter)

16        MR. TECCE:  -- to counsel for the Indenture

17   Trustee, Your Honor.  It's not viewed in hindsight, okay?

18        THE COURT:  Yes.

19        MR. TECCE:  But we're not challenging the prudence

20   of the decision to sit on the Committee in hindsight.  We're

21   not challenging that decision.  We're not challenging the

22   decision to engage counsel and the prudence of doing that.

23   What we're challenging is the incurrence of fees on a real-

24   time basis.  These fees were incurred from 2009 until today.

25        THE COURT:  But when the lawyers went -- when the

1    lawyers for the Indenture Trustee went to the Committee

2    meeting, how did they know whether they would be advancing

3    the interests of the Committee or the interests of the

4    Noteholders and the like?

5         MR. TECCE:  Your Honor, we'll show you internal

6    emails to show the lawyers absolutely knew that they were

7    advancing the interests of the Creditors Committee and that

8    they specifically were not advancing the interests of the

9    Noteholders.  I will show you those emails.

10        And to answer your question as well, you may be

11   asking Your Honor, how do you know in a Committee meeting

12   that comes up next Tuesday whether or not issues are going

13   to implicate your client.

14        THE COURT:  Right.

15        MR. TECCE:  That's your question.

16        THE COURT:  That's right.  That's right.

17        MR. TECCE:  The answer is, is you count on your

18   Creditors Committee, here Akin Gump, which is probably one

19   of the leaders creditors' committees lawyers in the United

20   States, to advise your client as to what's happening, and

21   then perhaps one lawyer looks at the agenda to make a

22   determination or after the fact the client reports back to

23   their lawyer.  What *Worldwide Direct* says is, first of all,

24   it's not even clear you need a lawyer on the call but our

25   issue not so much that there may have been a lawyer on

1  different calls.  Our issue is that there are two and three

2  lawyers on every Creditors Committee call and every meeting,

3  and I'll get to in a second why our categories -- we

4  actually tried to be very straightforward here.  We're not

5  the Fee Auditor in this case.  We didn't go through and say,

6  you know, there were six people at this particular meal and

7  there are four charges.  That's not the level of scrutiny

8  and that's not our objection.  Our objection stated with

9  precision is that when a trustee sits on a creditors

10  committee and when it engages its own counsel, it must be

11  reminded that it has two duties:  one, to unsecured

12  creditors, generally, the trustee, and one as a fiduciary to

13  the noteholders, and before it can charge the noteholders

14  recoveries, it has to establish that the work that it did on

15  the committee related to advancing their specific interests.

16  They're not without a remedy.  They can file a substantial-

17  contribution claim.

18          But again, taking it back to the Trustee, what are

19  the so-called NNCC Noteholder interests that we're saying

20  had to be advanced?  Your Honor may recall NNCC is a

21  financing company.  It has no hard assets apart from claims

22  against other entities, in this case NNI.  It has a Support

23  Agreement Claim with NNI that requires that it maintain

24  solvency of NNCC at all times, and the NNCC Noteholders

25  argue that that Support Agreement Claim entitled their notes

1   to bespoke treatment.  That was our big buzzword in the

2   case.

3          THE COURT:  Right.

4          MR. TECCE:  The other agreement between NNI and

5   NNCC is the intercompany loan between NNCC and NNI, and the

6   efficacy of the Support Agreement Claim and the intercompany

7   loan, the effect of the bankruptcy filing on those

8   agreements, they were issues that were destined for

9   challenge in these cases.  They're fairly discrete, and they

10  were raised by our Noteholders.  But those are the NNCC

11  issues, the independent issues that relate to NNCC, and NNCC

12  had a claim against NNL in Canada, but I'll speak to why.

13  There were other parties in the case where that might have

14  been a relevant issue.

15         But these are the issues that are peculiar, and

16  order for the Trustee to carry its burden, it must show

17  before charges or distributions that its Creditors

18  Committee-related work related to those interests.

19         So I go to the chart now, Your Honor, this chart

20  here.

21         THE COURT:  Yes.

22         MR. TECCE:  Commensurate with your Order, Your

23  Honor, on February 3rd, we provided color-coded day note

24  entries.

25         THE COURT:  Yes.

1          MR. TECCE:  Okay.  We divided these into four

2    categories.  We could have divided them into 50 categories

3    if we wanted to look at every time someone had an office

4    conference and cited a case that said the office conferences

5    can't be compensated in Bankruptcy and anytime somebody

6    charged a car after 8 p.m., that's not -- we didn't go

7    there.  That's not -- we're not going into that level of

8    granularity.  We made this as straightforward as possible

9    because our objection is consistent with *Worldwide Direct*.

10   Creditors Committee time that is not spent advancing the

11   interests of the Noteholders specifically cannot be charged

12   to the Noteholders' distribution.  That's the objection here

13   today, and that relates to yellow, which is participation in

14   Creditors Committee meetings and participation in connection

15   with matters that look to advance the interests of Unsecured

16   Creditors generally and Allocation, which as we will show,

17   as we will show through the testimony of Mr. Blauner, as we

18   will show through the cross-examination of Mr. Heaney, and

19   as we'll show as I walk you through the emails in this case,

20   everyone in this room understood that Allocation was a U.S.

21   issue and Allocation was not an issue specific to NNCC.  It

22   was an issue was that was being championed by the Debtors,

23   the Bondholder Group and the Creditors Committee and their

24   interests were 100 percent aligned with our interests, and

25   the Indenture Trustee absolutely knew this and understood

1  this, that this was not an issue that related to the

2  parochial interests that I've just identified for you about

3  the notes.

4          So in this chart, Your Honor, we have the fees.

5  The fees at present total $8.2 million.  But there's two

6  columns, Your Honor.  You'll see the top is pre-mediation

7  and the second is pre-hearing.  Between mediation and

8  hearing, we actually went through the day notes and scrubbed

9  them one more time to make sure that we were basically being

10  consistent and precise in our reductions.  Now, the numbers

11  are greater between pre-mediation on the aggregate basis

12  because January, we're objecting to the fees on fees, as we

13  call them.  The January fees are two hundred and some

14  thousand dollars.  So this number is ultimately greater.

15  But if you look between Committee and Allocation between the

16  two bars, you see the numbers have gone down.  Okay.  We've

17  taken some out.

18          But what I'd like to start with is what we're not

19  objecting to.  We're not objecting to $4.1 million worth of

20  fees, and what's in that number?  Okay.  First, work on the

21  proof of Claim.  We're not objecting to that.  Proof of

22  Claim was filed by Dewey, Motion to Amend filed by

23  Patterson.  No objection, clearly advances the Noteholders'

24  interests.  Work on memos prepared by either firm that go to

25  the notes, the Support Agreement Claim, intercompany claim

1   -- no objection.  Communications between the Trustee and its

2   attorneys -- no objection.  Review of the docket -- no

3   objection.  And we're giving them the benefit of the doubt

4   here that every time the document was reviewed, it was

5   reviewed to see if there was a pleading that was filed that

6   related specifically to the notes.  Because remember, Your

7   Honor, in practice if you're on a creditors committee, you

8   typically get notice from -- especially from a law firm of

9   the caliber of Akin Gump, you get notice of what gets filed

10  in the case.  But we give them credit.  You review the

11  docket and make sure that nothing's filed that jumps out at

12  you as a lawyer that goes to your notes.  No objection.

13  Work on the no call.  This is a 1996 Indenture.  It has a

14  no-call feature, and he worked on a no-call.  No objection,

15  clearly relates to the notes.  The issue of post-petition

16  interest -- there are myriad emails that you have seen

17  attached to Mr. Heaney's Affidavit of the Correspondence

18  between the Noteholders' counsel on issues of post-petition

19  interest -- joinders, discussions.  No objection.  No

20  objection.

21          We argued that -- in the post-petition interest

22  dispute, Your Honor may remember there was a settlement

23  between the Debtors and the Bondholders.  We argued that our

24  notes were entitled to different treatment.  We didn't join

25  in the settlement.

1           THE COURT:  Right.

2           MR. TECCE:  Any work related to that, no

3  objection.  Joinders -- any joinder on any subject matter,

4  any one, no objection.  That includes joinders on post-

5  petition interest.  That includes joinders filed in

6  connection with the Allocation Trial for the reasons which

7  I'll explain we have an issue with the Allocation Trial, but

8  if they filed a Pleading, if the Trustee filed a Pleading,

9  we'll give them credit for that.  There's no objection to

10 that.

11          But critically, there's no objection to the

12 Allocation Appeal work, and the argument from the Indenture

13 Trustee is well, we had to do all the work before that to

14 get to the Appeal.  We dispute that completely, Your Honor.

15 Your Honor's pro rata, Modified Pro Rata Decision, was not a

16 position that was advanced by any party in these cases.

17 When it was handed down, it became important to the

18 Noteholders and to make sure that that feature was

19 protected.  No one advanced an argument that NNCC was

20 entitled to any lockbox proceeds.  What Mr. Blauner will

21 testify to and what NNCC Noteholders were focused on was

22 money to NNI.  Your Honor's Decision said if there's a Claim

23 against your Debtor, you get an Allocation of lockbox

24 proceeds resulting in an Allocation of lockbox proceeds

25 against NNCC.  That was not advanced by anyone, not advanced

1    by the Trustee, not advanced by anyone in the U.S.

2            On a going-forward basis, the parties filed a

3    Motion for Reconsideration with Your Honor.

4            THE COURT:  That's right.

5            MR. TECCE:  The parties made a decision to join in

6    the Appeal in the United States.  We are not charging for

7    any of that type, and our argument is that in order to be

8    there, the Trustee had to be a Core Party.  Fair enough.

9    But the Trustee did not have to incur a million and a half

10   dollars in fees and expenses attending more than 30

11   depositions, meet and confers, every aspect of the discovery

12   in which it was immersed.  And while we were aware that they

13   were a Core Party, we had no idea that they were engaged in

14   that level of activity.

15           Plan mechanics -- no objection, Your Honor.  Time

16   spent --

17           THE COURT:  Did the Noteholders ever ask?

18           MR. TECCE:  Your Honor, Mr. Blauner will testify

19   to this fact, okay, and we'll ask -- but the view of the

20   Noteholders is that their operating assumption was that the

21   Noteholders are a member of the Bondholder Committee, okay.

22   The Noteholders understood that the Debtors and the

23   Bondholder Committee and the Creditors Committee were taking

24   significant steps in connection with that litigation.  They

25   also understood that there was no Allocation of lockbox

1  proceeds to NNCC advocated by any party so they had no cause

2  to think for one second that their Trustee was attending

3  multiple, multiple depositions, was deeply engaging itself

4  in discovery and all granular aspects of that case, and they

5  had no way of knowing because they were not a part of that

6  process.  The same question, Your Honor.  Your clients knew

7  that they were members of the Creditors Committee.  Why

8  didn't you ask about how many people were staffed on

9  Creditors Committee calls?  We had no way of knowing because

10  no bills were sent to us.

11            THE COURT:  Right.

12            MR. TECCE:  We're not the client.

13            THE COURT:  Right.

14            MR. TECCE:  And in point of fact, as you'll see,

15  the Trustee itself didn't review its own bills until at

16  least 2011, possibly as late as 2012.  So the level of

17  participation -- there's two levels of knowledge here.

18  There's knowledge that you are a member of the Creditors

19  Committee and there's knowledge that you were a Core Party,

20  and then there's knowledge of all the things that you're

21  doing in connection with that that our clients have no way

22  of knowing and they have no reason to suspect that it gets

23  to this level, and as soon as they find out, as soon as

24  they're told in 2016 when they settled their issues with

25  this case, the minute they're told that the fees are as high

1   as they are, the first thing they do is say send us the

2   bills, we want to talk directly to the Trustee.  They didn't

3   hesitate for a second when they found that out.

4            Last category -- no objection.  Expenses -- this

5   is not what this case is about.  We're not objecting to

6   people's hotel and airfare.  We're not going there.  We have

7   our basically four categories of objections here, all right?

8            THE COURT:  Yes.

9            MR. TECCE:  So if I could, Your Honor --

10            THE COURT:  The chart that Mr. Lowenthal handed to

11   me, is that a joint chart so to speak?

12            MR. TECCE:  No, I don't think the numbers -- I

13   think they actually objected to more of their fees.  I'm

14   happy to take their number but our -- it's not -- our

15   calculations are based on our review of the bill, which is

16   right there, and adding up the numbers based on the hourly

17   rate.  That's how we come up with our numbers.

18            So if I could, Your Honor, I just pulled out --

19            THE COURT:  Oh.

20            MR. TECCE:  If I could ask you to go back to this?

21            THE COURT:  Yes.

22            MR. TECCE:  I just pulled out some samples of --

23   again, we did object to the note entries on a line-by-line

24   basis as you asked.  We went through every bill and we

25   highlighted in one color or another in a way that was

1   consistent with our objection.  The first category, the

2   yellow category, is the Creditors Committee time.  This is

3   time that appears from the day note to have nothing to do

4   with advancing the interests of the Noteholders consistent

5   with our theory that Creditors Committee time is only

6   chargeable to our notes when it advances the interests of

7   our notes.  So here, Your Honor, on the second slide, we

8   pulled samples of day notes.  The first is from the Dewey

9   firm on the left.  Interviewing CROs, interviewing CRO

10  candidates -- when you look at some of the observations that

11  are made in the *Worldwide Direct* decision, Judge Walrath

12  identified a couple of activities that she thought did not

13  fall within the category of advancing the Noteholders'

14  interests.  Work "done regardless of whether the meeting or

15  call impacted on the senior debt issue or other matters

16  peculiar to the Noteholders' interest.  Counsel attended

17  almost every meeting, performed business-related tasks such

18  as interviewing prospective crisis managers."  I mean,

19  that's right from the decision, and here there are attorneys

20  interviewing CRO candidates.  It could have easily been done

21  by Akin Gump and the Creditors Committee.  There was no need

22  for these attorneys to do this.  This has nothing to do with

23  the advancement of our notes.  On the right, there's a

24  review of fee application filed by professionals in the

25  case, not an issue for our Noteholders but an issue for

1   Creditors Committee work generally, and if it supports a

2   Substantial Contribution Claim, it can be compensated, but

3   it can't be charged to our notes.

4          And Your Honor, another point.  We're not

5   objecting to 100 percent of the Committee time.  I just gave

6   you the panoply of things that we're not objecting to.

7   Allocation Appeal, PPI, Joinders, multiple correspondence

8   between the firms with draft of Pleadings.  No objection

9   there.  And here's just some examples.  These are other

10  instances.  Look at the Dewey note on slide #3, Your Honor,

11  if I could?  Participate on multiple conferences with

12  Committee counsel regarding weekly agenda, and the second

13  one, participate in conferences with working group

14  professionals regarding 2026 distribution options.  That

15  would relate to our notes.  If it relates to our notes, it's

16  covered.  You can charge our Distribution.  The same on the

17  right -- this is the WT Claims Objection, Wilmington Trust

18  Claims Objection.  That was the post-petition interest

19  issue.  Not objectionable to us.  That's $4.1 million, Your

20  Honor.

21          Now, the yellow category also contains instances

22  of what we say is overstaffing, and all we're saying on

23  overstaffing -- again, we're not the Fee Auditor in this

24  case.  What we're saying on overstaffing is how many people

25  are on a Committee call or at a Committee meeting, all

1  right?  And we have some specifics that we cite on the

2  fourth slide, but there were over 300 Creditors Committee

3  meetings in this case, and over 250 of them were staffed by

4  two or more lawyers for the Trustee at the senior level

5  most, and if you look, the hours objection is to the pattern

6  of work, which is that most work, almost all work is

7  conducted on business days with no weekend time.  Now,

8  obviously we're not asking them to work weekends but our

9  position, Your Honor, stated precisely is that that's

10  reflective of something, which is it's reflective of weekly

11  participation in Creditors Committee activity that's being

12  led by the Creditors Committee.  I bet you if you looked at

13  the Creditors Committee's time, there may be a lot of

14  weekend work because some of the exigent matters may be

15  taken on by them.  But that's the point, that's the staffing

16  point, and that's our objection, Your Honor.  That's our

17  objection to Committee time.

18          And I think I've been through our objection on

19  Allocation, Your Honor, but to be clear, as I said, NNCC has

20  no operations so this is the so-called yellow salmon.  We

21  call it the salmon-colored box, okay?

22          THE COURT:  Yes.

23          MR. TECCE:  The lockbox proceeds -- no party in

24  the U.S. argued for Allocation of lockbox proceeds to our

25  Debtor.  None.  The point was to have as much Allocation as

1   Your Honor -- and I feel like I'm almost -- I'm humbled to

2   lecture Your Honor about what happened in the Allocation

3   Trial and Your Honor's Decision but I'm forced into that

4   position, and I apologize.

5            THE COURT:  Go ahead, Mr. Tecce.

6            MR. TECCE:  But the position of our clients was

7   that consistent with that of the Debtors, the Bondholder

8   Committee, Creditors Committee, as much -- we wanted as much

9   money into NNI as possible, because remember, our issues are

10  our Debtor has a Claim against NNI under the Support

11  Agreement --

12           THE COURT:  Right.

13           MR. TECCE:  And our Debtor has a Claim against NNI

14  under the intercompany loan.

15           THE COURT:  That's right.

16           MR. TECCE:  So all interests were aligned.  We all

17  wanted the same thing.  Cleary Gottlieb, the Debtors' firm,

18  Akin Gump, the Creditors Committee's firm, Milbank Tweed,

19  Mr. LeBlanc, the Milbank firm, they were all pushing for the

20  same thing, and so for that reason, the Noteholders -- Mr.

21  Blauner will testify to this -- were focused on their

22  efforts, and if you review the internal documents of the

23  Trustee, and I will show you them in my closing argument and

24  we'll see them come out through the witness testimony, they

25  fully understood that this was a common issue to everyone,

1    and in point of fact, there's an exchange that I will point

2    you to between the Bondholders' lawyer and the Committee

3    counsel's lawyer pushing back that Allocation is not --

4    don't raise your parochial issues in Allocation.  This is

5    not the place for you to do that.  So there was a clear

6    understanding that Allocation was not an NNCC 7.875 percent

7    notes issue.

8              Again, while the Trustee was a Core Party, the

9    Trustee was the Core Party, not its lawyers.  It had an

10   obligation to manage those professionals and to make sure in

11   the face of a wall, an armada of lawyers like the Debtors,

12   the Bondholder Group and the Creditors Committee, that its

13   lawyers were not duplicating the efforts of any of those

14   attorneys, and we were not aware of that until 2016 when the

15   issue became relevant in the context of the Settlement and

16   their fees first became known to us.  And again, Your Honor,

17   the Trustee is our fiduciary.  He's the Noteholders'

18   fiduciary.  The obligation falls from the Trustee to the

19   Noteholders.  The Noteholders are not obligated to check in

20   with their Trustee to make sure their Trustee is discharging

21   its fiduciary duty to manage its professionals.  That is not

22   an obligation that falls on them, and when there's no reason

23   to suspect that the Trustee's attorneys are duplicating the

24   efforts of three constituencies in an Allocation Trial and

25   the Trustee's attorneys in multiple number are sitting on

1  Creditors Committee meeting after Creditors Committee,

2  meeting more than 300 over a seven-year period, there's no

3  reason to suspect that at all so there's not going to be a

4  request from our clients to find that out, to confirm -- can

5  you please confirm that you're not staffing two to three

6  senior attorneys on every Committee call.  It was not

7  something that entered anyone's mind.

8         And Your Honor, so I have an example here on my

9  fifth slide, if I might?

10        THE COURT:  Yes.

11        MR. TECCE:  These are examples of Allocation

12  issues that we take issue with, and I think if you look at

13  these, the salmon-colored ones, meet and confers on

14  discovery, review proposed experts, et cetera, there was

15  mention made of the McConnell deposition.  There were two

16  questions as of that deposition.  There were more than 31

17  depositions.  The Trustee didn't have a witness in the

18  trial.  Witnesses -- Your Honor is familiar with the trial.

19  I can't -- I'm not going to purport to educate you on what

20  happened.

21        And again, from and after the trial, Your Honor's

22  Decision was not the result of anyone's advocacy.  It was a

23  new level in Allocation, Modified Pro Rata with an

24  Allocation of lockbox proceeds to our Debtor, had never been

25  requested by us.  So you could have easily picked that up

1  without spending a million and a half dollars reviewing

2  expert reports of experts whose opinions weren't adopted in

3  the case, so it was a new situation.  The landscape changed

4  after Your Honor's Decision.

5          The fourth category, Your Honor, is fees for

6  invoicing the Trustee.  I understand they've been dropped.

7          THE COURT:  Withdrawn.

8          MR. TECCE:  There's a sample on page 6 of some of

9  the things we objected to.

10          THE COURT:  Right.

11          MR. TECCE:  And the other one is these duplicative

12  time entries.  These are time entries that appear on two

13  different bills, okay?  So I'm on slide #7 here.  The

14  expenses on the left appear in two different places in the

15  same PDF file.  On the right, the bill for December has

16  these entries and then the January bill has them again.  So

17  if you're adding up all your monthly bills, you're billing

18  me twice for these.  This is about $100,000.

19          Now, Your Honor, going back to my first page, we

20  have changed our numbers, the first two columns to reflect

21  the scrubbing of the work product, and what the difference

22  is between Committee time pre-mediation and Committee time

23  pre-hearing and Allocation time pre-mediation and Allocation

24  time pre-hearing is we went back to make sure that all

25  Joinders, all written work product prepared by the Trustee's

1    counsel, all of it, including the Joinder in connection with

2    the Allocation Trial, which we object to, all their written

3    work product we gave them credit for, okay?  We don't have

4    to argue the esoteric implications of a separate Pleading

5    individually with their name at the bottom and whether that

6    benefited us even in an Allocation Trial of common issues.

7    We're just not going to go there.

8         We want back to make sure that we gave them credit

9    for all time reviewing the docket, and we gave them credit

10   -- if they created a Joinder, we gave them credit for time

11   like reviewing the other Pleadings which we had previously

12   objected to.  So that's the difference between these two

13   numbers.

14        THE COURT:  Around $100,000?

15        MR. TECCE:  That's correct, Your Honor.  Well --

16   that's exactly right, Your Honor.

17        THE COURT:  All right.

18        MR. TECCE:  So, Your Honor, with that, we

19   respectfully submit that the burden has not been carried

20   because the Noteholders -- with respect to the burden, Your

21   Honor, we could have easily come up with 45 categories and

22   objected to every level and done a few others review.  We

23   simplified this.  *Worldwide Direct* we think is

24   straightforward.  *General Holmes* we think is

25   straightforward.  We think the issue is straightforward.

1   And so we've identified those entries that we think fall

2   within that, and that's our challenge.

3            One would have thought that in response, they

4   simply would have gone back and annotated their day notes to

5   explain why that work actually benefited the NNCC

6   Noteholders.  Why did interviewing the chief restructuring

7   officer candidates -- how did that benefit the Noteholders?

8   If my Fee Application was challenged by the Office of the

9   United States Trustee, myself and Mr. Pugh can attest we

10  spent many, many times going through our day note entries

11  explaining on a day-note-by-day-note basis how it is that

12  we're justified and what did we do, and one would think if

13  $8 million was at stake, you would make sure when you went

14  through your own day notes that it was clear how the work

15  you did actually benefited your Noteholders if that's the

16  argument you're going to make.  If the argument you're going

17  to make is my work benefited Unsecured Creditors generally,

18  fine, but that's a Substantial Contribution Claim.

19           I want to be clear about something, Your Honor.

20  There's not an agreement by any party in this case that

21  $4.25 million is reasonable.  The Debtors have not agreed to

22  that at all.  The Plan says $4.25 million of reasonable

23  fees, okay?

24           THE COURT:  Right.  That's right.

25           MR. TECCE:  So to say the Debtors have agreed it's

1   four point -- they've agreed to anything.

2           THE COURT:  I understand that.  I agree with that,

3   Mr. Tecce.

4           MR. TECCE:  Thank you.  So, Your Honor, there's no

5   annotation of the day notes that explains how it relates to

6   -- and perhaps that's just a refusal to acknowledge that

7   *Worldwide Direct* is the case and it's a refusal to

8   acknowledge that in order to charge the Distribution, you

9   have to demonstrate that the work that you did benefited the

10  Noteholders.  But there are Affidavits that are submitted in

11  connection with the Trustee's Objection or response to our

12  Objection, rather, and they don't conclusively establish the

13  reasonableness of the fees.  What those Affidavits argue --

14  first they don't even describe in general terms how the work

15  advanced the interests of the NNCC Noteholders.  What they

16  argue is that when you're on the Creditors Committee, you're

17  advancing the interest of your notes, period, full stop,

18  they're per se reasonable.  That's the argument that's being

19  advanced, and that's not the right -- that's not the law,

20  Your Honor.  That's not right.

21          The Affidavits also show that the Trustee is sort

22  of pointing the finger back at the Noteholders saying, you

23  know, you knew all along, but as I told you, Your Honor,

24  there's two levels of knowledge here.  There's knowledge

25  you're a Core Party, there's knowledge you're a member of a

1    Creditors Committee, and then there's the granular knowledge

2    of all that that entails that only you know because you as

3    the Trustee are managing your professionals.  You're

4    supposed to be reviewing their bills.  And as the fiduciary

5    to the Noteholders, it might have been good.  And you'll

6    see, Your Honor, when Mr. Blauner testifies, there was a

7    back and forth about coming up with a protocol in this case,

8    and that agreement was never realized.  That agreement was

9    never realized because there were disputes about who owned

10   the debt, prove you own the debt, refusal to enter into a

11   joint defense group.  There could have been a protocol that

12   said I want to know as a Noteholder how you're staffing this

13   case.  That protocol was never realized.  There was a

14   discussion about it and it headed off and it never came to

15   ground.

16           Now, but to be clear, Your Honor, from and after

17   that period, whether there was a formal agreement or not, a

18   period of cooperation did emerge in the late 2014 period of

19   time, and if you look at the Fee Objections in these cases,

20   they're significantly higher.  Prior to that period and from

21   and after that period, the Objections go down.  As I said,

22   we don't object once there's a level of cooperation.  We

23   don't object when Joinders are being shared.  We don't

24   object when there's an email exchange saying should I go to

25   the mediation and our Noteholders and their counsel say yes,

1  we'd like you to go to the mediation.  Okay?  When you look

2  at their earlier emails, which I'll show you, that say we

3  don't think you should go to the mediation and the response

4  is, I'm going as a Committee member -- I'm going to walk you

5  through those emails, Your Honor.  There's a big difference

6  here, and that's earlier in the process.

7        Lastly, Your Honor, I'd like to conclude if I

8  could with -- I'd like to conclude if I could with -- oh, on

9  slide #8, this is an example in gray of things that we've

10 de-designated in between for reasons which I stated.  You

11 know, we want to make sure that we're consistent with our

12 position.  We're giving you credit for your Joinders, things

13 of that nature.  We've gone through and scrubbed our -- not

14 for nothing, Your Honor.  This was not a small exercise.

15        THE COURT:  No, I'm sure it wasn't.  I'm sure it's

16 not a small exercise to review it, either.

17                    (Laughter)

18        MR. TECCE:  On *Asarco*, Your Honor, what I call the

19 *Asarco* issue, the fees-on-fees issue, this is critically

20 important, obviously it is, but the Supreme Court has spoken

21 on this issue on the American Rule, okay, and that is case

22 examined, retained professionals in bankruptcy cases,

23 section 330, all right?  But what it says -- and we disagree

24 with the Trustee on this.  What it says is that you do not

25 depart from the American Rule unless statute or the contract

1   expressly authorized that departure, the contract, okay?

2            THE COURT:  The Indenture?

3            MR. TECCE:  The Indenture.  Okay.  But the

4   Indenture doesn't do it.  Supreme Court told you in its

5   decision what language needs to be there.  It has to say the

6   prevailing party gets its fees in litigation.  Those words

7   in sum and substance have to be in the agreement.

8            The *Boomerang Tube* case from this Court said does

9   the contract "provide that each will be responsible for the

10  others' legal fees if it loses a dispute between them?"  No.

11  The Indenture -- first of all, the Indenture does not

12  contain any language to the effect of whether a prevailing

13  party pays in a lawsuit between the Noteholders and the

14  Indenture Trustee.  It has to be explicit.  The Supreme

15  Court tells you that.  It has to be expressed.  The

16  indemnity is not that language.  The indemnity says the

17  issuers will indemnify the Trustee for fees and expenses

18  that it incurs in occurrence with the acceptance or

19  administration of the Trust including the costs or expenses

20  of its counsel but it doesn't say that the prevailing party

21  will pay and it doesn't say that the Noteholders will pay in

22  a dispute over the reasonableness of fees.  That is the

23  level of explicitless -- explicit --

24            THE COURT:  Explicitness.

25                           (Laughter)

1          MR. TECCE:  Thank you.  That is required to

2   satisfy the Supreme Court of the United States.  It is

3   lacking in this Indenture.

4          There are serious implications too because there

5   will be no economic consequence to litigating attorneys'

6   fees unless it's clear, especially in the bankruptcy context

7   that fees on fees cannot be recovered.  The Trustee argued

8   that it's the only Fee Challenge in the Nortel cases.  Your

9   Honor, I'm sorry to tell you this but the final Fee

10  Application process hasn't started yet, so that's premature

11  to make that assessment, but I can tell you this.  With

12  respect to the retained professionals and because of *Asarco*,

13  the prospect of you having another hearing like this with

14  respect to retained professionals is much, much lower

15  because you're not going to see television sets and clips

16  from video depositions and fancy, glossy slides, and we're

17  not going to have three witnesses to argue about fees

18  because you're going to carry your own freight if you push

19  it to that level, and the most talented alternative dispute

20  resolution professionals in the United States are not going

21  to be able to help you because there's no consequence.

22  You're economically indifferent to litigating your fees.

23          The price of that recalcitrance has got to be that

24  you pay your own freight when you litigate your fees, and

25  the Supreme Court makes that clear.  The contract is not an

1  exception to that ruling.  And an indenture trustee should

2  not be held to a lower standard than retained professionals

3  when it's contract does not specifically provide that a

4  prevailing party in litigation gets its fees in a challenge.

5       So with that, Your Honor, I look forward to seeing

6  you in the closing, and I thank you for listening to me this

7  morning and we look forward to -- and thank you for your

8  time to make yourself available for telephone conferences.

9  I understand this is a difficult dispute, but I thank you

10  very much, Your Honor.

11       THE COURT:  Thank you, Mr. Tecce.  Thank you.

12       All right.  I'm ready to take testimony.

13       Mr. Masella, good morning.

14       MR. MASELLA:  Good morning, Your Honor.  Before I

15  call Mr. Heaney, let me just discuss two housekeeping

16  matters if I could?

17       THE COURT:  Yes.

18       MR. MASELLA:  The first is, the parties have

19  stipulated that all exhibits attached to each of the

20  Affidavits that you've received is admitted into evidence.

21  They've also stipulated that each of the exhibits introduced

22  during each of the depositions taken so far are admitted

23  into evidence.

24       THE COURT:  Okay.

25       MR. MASELLA:  And then finally, counsel for the

1  Fee Objectors sent me an email last night listing seven

2  additional documents which we've stipulated are also into

3  evidence, and we will get those to Your Honor in due course.

4        MR. LOWENTHAL:  Your Honor, Mr. Masella and I will

5  communicate this.  We can get a CD or DVD over.  We haven't

6  had a chance to sync up our exhibit list yet --

7        THE COURT:  Understood.

8        MR. LOWENTHAL:  -- so our numbering's not right.

9        MR. MASELLA:  But each document today that's used

10  with a witness will either have been admitted or the

11  examining lawyer will advise the Court that it is not

12  subject to the stipulation.

13        THE COURT:  Very well.  That's important.  Thank

14  you, Mr. Masella.  Thank you.

15        MR. MASELLA:  And the other thing, Your Honor, I

16  want to talk to you about before we start with Mr. Heaney

17  was Your Honor's direction that the February 9th conference

18  that direct testimony would come in by affidavit.

19        THE COURT:  Yes.

20        MR. MASELLA:  You directed that we would have

21  cross-examination, so what I propose to do with Mr. Heaney

22  is call him, have him sworn, present his Affidavit and the

23  exhibits to the Court, and then I'll pass the witness.

24        THE COURT:  That's right.  That's how I foresaw

25  how we would proceed.

1              MR. LOWENTHAL:  And we've agreed to that.

2              THE COURT:  Very well.

3              MR. MASELLA:  Thank you very much, Your Honor.

4              THE COURT:  Your Honor.

5              MR. MASELLA:  So Your Honor, I call Mr. Heaney.

6              THE COURT:  All right.  Mr. Botter, did you wish

7    to be heard first?

8              MR. BOTTER:  Your Honor, very briefly.  Good

9    morning.

10             THE COURT:  Good morning.

11             MR. BOTTER:  David Botter, Akin Gump Strauss Hauer

12   and Feld, on behalf of the Official Committee of Unsecured

13   Creditors.

14             As Your Honor will recall, during one of the

15   telephonic conferences, we informed Your Honor as well as

16   the other parties that the Committee itself maintains the

17   attorney-client privilege and has not waived the privilege

18   and Committee members themselves are not entitled to waive

19   the privilege on their own.  The parties have been excellent

20   in preserving the privilege.  We are here obviously to

21   protect the privilege.  I'm hopeful that we won't have to

22   object to any questions or answers but I just wanted to

23   state that for the record, Your Honor.

24             THE COURT:  All right, Mr. Botter.  Thank you.

25   And from where you're sitting, if you hear something to

1  which you object, stand up --

2          MR. BOTTER:  I will.

3          THE COURT:  --- and I will take your objection.

4          MR. BOTTER:  Thank you.

5          THE COURT:  Good.

6          MR. MASELLA:  Your Honor, may I ask that James

7  Heaney be sworn?

8          THE COURT:  Yes.

9      JAMES HEANEY, WITNESS FOR INDENTURE TRUSTEE, SWORN

10         MR. MASELLA:  Your Honor, may I approach the

11  witness?

12         THE COURT:  Yes, you may.

13         MR. MASELLA:  And would Your Honor like a binder

14  with --

15         THE COURT:  I've already got it.  I don't need

16  another.  But thank you, Mr. Masella.

17         MR. MASELLA:  My pleasure, Your Honor.

18                      DIRECT EXAMINATION

19  BY MR. MASELLA:

20  Q.   Mr. Heaney, I've handed you a document that contains

21  your Affidavit and each exhibit thereto.  Do you have that

22  document in front of you?

23  A.   I do.

24  Q.   We're going to mark that as Heaney Trial Exhibit -- I'm

25  sorry -- Indenture Trustee Trial Exhibit #1.  Do you

1  recognize your signature on the last page of that Affidavit?

2  A.    I do.

3  Q.    And is everything in that Affidavit true and complete

4  to the best of your knowledge?

5  A.    To the best of my knowledge.

6              MR. MASELLA:  I pass the witness, Your Honor.

7              THE COURT:  All right.  Thank you, Mr. Masella.

8              MR. WORCESTER:  Your Honor, we brought cross-

9  examination books with us.  Is it okay if I approach and

10  hand these up?

11             THE COURT:  Yes, it is.  And you have a set for

12  me.  Thank you.

13             MR. WORCESTER:  I do.

14             THE COURT:  All right.  Okay.  Thank you.

15             MR. WORCESTER:  Your Honor, you don't object to

16  water at the podium, do you?

17             THE COURT:  I certainly don't, not at all.  Or at

18  the witness stand, for that matter, Mr. Heaney.  There's

19  water there for you if you would like some.

20             MR. HEANEY:  Thank you, Your Honor.

21                       CROSS-EXAMINATION

22  BY MR. WORCESTER:

23  Q.    Mr. Heaney, it's good to see you again.  The Indenture

24  Trustee applied to be a Core Party in connection with the

25  Allocation Trial, didn't it?

1    A.    That's correct.

2    Q.    You did not discuss that in advance with the

3    Noteholders or their counsel.  Isn't that right?

4    A.    Yes.

5    Q.    Becoming a Core Party gave the Law Debenture the right

6    to participate in the Allocation Trial.  Isn't that right?

7    A.    Yes.

8    Q.    It did not obligate Law Debenture to undertake any

9    particular task, correct?

10   A.    No.

11   Q.    In fact, Law Debenture was never a witness in the

12   Allocation Trial, right?

13   A.    That's correct.

14   Q.    Your lawyer did not put on any witnesses at the trial?

15   A.    They did not.

16   Q.    Nor did they argue any particular issues during the

17   trial.  Isn't that right?

18   A.    That's correct.

19   Q.    And in your mind, Law Debenture was possibly attending

20   the Allocation Trial in a monitoring function.  Isn't that

21   true?

22   A.    Yes, it is true.

23   Q.    Nonetheless, despite that monitoring function, they

24   sent attorneys to each of the 20 days of the Allocation

25   Trial, right?

1   A.    That's correct.

2   Q.    In fact, they sent multiple attorneys to all but one

3   day of the Allocation Trial.  Isn't that right?

4   A.    I believe so.

5   Q.    And no consideration was ever given to which days of

6   the trial they should attend.  Isn't that right?

7   A.    That's correct.

8   Q.    You're also aware that your attorneys attended 31

9   depositions in the Allocation Trial, aren't you?

10  A.    That's correct.

11  Q.    And no consideration was given to which of those

12  depositions your attorneys should attend.  Isn't that right?

13  A.    Not to my memory.

14  Q.    And you're not aware of any emails that your attorneys

15  alerted Solus or any other Noteholders that it was going to

16  attend a deposition in the Allocation Trial before it did

17  so.  Isn't that right?

18  A.    Not to my memory.

19  Q.    And you have no independent knowledge or -- I'm sorry.

20  You have no recollection of whether or not any of those

21  depositions wound up becoming important to the trial.  Isn't

22  that right?

23  A.    Not to my memory.

24  Q.    Nor whether or not any questions your lawyers asked any

25  of those depositions became important to the trial?

1   A.    Not to my memory.

2   Q.    In fact, you're not even aware if your lawyers did ask

3   questions at any of those depositions.  Isn't that right?

4   A.    Not to my memory.

5           MR. WORCESTER:  Mr. Heaney, if you could turn to

6   tab 23 of your binder, which we'll mark as DX-1 -- and Your

7   Honor, every exhibit -- every tab in the binder is on the

8   list that the parties have agreed to.

9           THE COURT:  All right.  And that was 23?  Is that

10  right, Mr. Worchester?

11          MR. WORCESTER:  Yes, 23, Your Honor.

12          THE COURT:  All right.

13  BY MR. WORCESTER:

14  Q.    If you could look at tab 23, Mr. Heaney, this is one of

15  the documents that we used at your deposition on Sunday.  Do

16  you see in the paragraph below the redactions that Mr.

17  Lowenthal wrote "I told Javier" -- and that's Javier

18  Schiffrin, who is counsel for Solus, isn't it?

19  A.    This is the document ending in 9292 number?

20  Q.    Yes, it is.

21  A.    Okay.

22  Q.    And we're looking at the paragraph below the redaction.

23  A.    Okay.

24  Q.    And you see the sentence that begins "I told Javier"?

25  A.    Yes.

1  Q.    That's Javier Schiffrin, who is counsel for Solus,

2  right?

3  A.    Correct.

4  Q.    Mr. Lowenthal said "I told Javier that Judge Gross and

5  Justice Morawetz likely don't expect parties to list their

6  individual parochial issues.  Rather, they likely want a

7  list of the big common issues such as allocation."  You see

8  that, right?

9  A.    I do.

10  Q.    You understood from this email that Mr. Lowenthal

11  viewed Allocation as a big, common issue, didn't you?

12  A.    Yes.

13  Q.    You didn't disagree with him at any time, did you?

14  A.    I did not.

15  Q.    You never told Solus or the Noteholders that you

16  disagreed with him, did you?

17  A.    I did not.

18  Q.    In fact, before the disagreement about fees that we're

19  having right now, you're not aware of anyone ever expressing

20  the view that the Allocation Trial was about the parochial

21  issues rather than about the big common issues, are you?

22  A.    I'm not.

23  Q.    During the Allocation Trial, the U.S. interests were

24  represented by Cleary, Milbank, Akin, Torres, Bennet Jones

25  and Cassels.  Isn't that correct?

1  A.    That's correct.

2  Q.    All of those firms had the common goal of maximizing

3  the sale proceeds allocated to the U.S. Debtors to the

4  exclusion of other jurisdictions, didn't they?

5  A.    Yes.

6  Q.    And they have the common goal of maximizing return to

7  the U.S., right?

8  A.    That's correct.

9  Q.    I just have a couple more questions on Allocation.   If

10 you could turn to tab #4 in the binder, which we will mark

11 as DX-2.

12 A.    I'm sorry.   The tab number again?

13 Q.    #4, and it's an email correspondence bearing the Bates

14 number IT00003378.   We looked at this deposition -- at this

15 exhibit in your deposition, didn't we?

16 A.    Yes.

17 Q.    And you don't see any indication in this email that Mr.

18 Tecce solicited this update from Mr. Lowenthal.   Isn't that

19 right?

20 A.    I don't.

21 Q.    And the hearing in Canada that Mr. Lowenthal references

22 in his email to Mr. Tecce is part of the Allocation Trial,

23 right?

24 A.    Right.

25 Q.    And Mr. Lowenthal references that there was a four-and-

1  a-half-hour hearing on July 25th.  You're aware, aren't you,

2  that the NNCC Noteholders are not objecting to Mr.

3  Lowenthal's participation in that hearing?

4  A.    Yes.

5  Q.    And you're also aware that they're not objecting to Mr.

6  Lowenthal's communication with Mr. Tecce about that

7  particular hearing?

8  A.    Correct.

9  Q.    Shortly after the Chapter 11 cases were filed, the

10  Indenture Trustee submitted its application to serve as a

11  member of the Creditor Committee, didn't it?

12  A.    It did.

13  Q.    And the NNCC Noteholders did not at that time instruct

14  the Indenture Trustee to serve on the Creditors Committee,

15  did they?

16  A.    No, they did not.

17  Q.    Nor did they at any other time, right?

18  A.    They did not.

19  Q.    Do you have your Affidavit in front of you?

20  A.    Yes, I do.

21  Q.    You testify in paragraph 11 -- and I'll give you a

22  chance to find it.

23  A.    All right.

24  Q.    That when a trustee sits on a committee, it is

25  generally the case that indenture trustees retain individual

1  counsel to help them with their committee work.  Do you see

2  that?

3  A.    Yes.

4  Q.    In your view, the fact that indenture trustees often

5  site on committees means that indenture trustees are

6  automatically entitled to all of the fees approved from

7  committee work.  Isn't that right?

8  A.    Can you repeat the question, please?

9  Q.    I can.  In your view, the fact that indenture trustees

10  often sit on committees means that indenture trustees are

11  automatically entitled to all of the fees accrued from

12  committee work.  Isn't that right?

13  A.    All the reasonable fees.

14           MR. WORCESTER:  Turn to tab 24 of your binder.

15  That's your deposition transcript.  Your Honor, I'm not

16  going to mark the deposition transcripts.

17           THE COURT:  All right.

18  BY MR. WORCESTER:

19  Q.    You recall being deposed in this case, don't you, Mr.

20  Heaney?

21  A.    I do.

22  Q.    You were under oath when you were deposed, weren't you?

23  Mr. Heaney, you were under oath when you were deposed,

24  weren't you?

25  A.    Yes, I was.

1  Q.    And you testified honestly and to the best of your

2  ability, didn't you?

3  A.    I did.

4  Q.    Would you take a look at page 145 of the deposition,

5  and it's divided into four pages per page so it's page 37 on

6  the bottom but page 145 of the testimony.  And if you look

7  at line 13, you'll see that I asked you the question, "Put a

8  different way, the fact that an indenture trustee often sit

9  on committees does not mean indenture trustees are

10  automatically entitled to all of the fees accrued from

11  committee work, right?"  You answered "They're entitled to

12  their fees."  And I followed up, "Automatically from sitting

13  on the committee?"   No reply.  And then you answered "Yes.

14  I'm sorry," and we noted the witness is not a yes.

15  A.    I take the position that I was talking about reasonable

16  fees although I didn't mention them as reasonable.

17  Q.    In the deposition when I asked you if it was your

18  position that all of the Indenture Trustee's fees were paid

19  from the Committee, you said yes, right?

20  A.    I did.

21  Q.    Today your position is, it's only the reasonable fees?

22  A.    I neglected to say "reasonable" at the deposition.

23  Q.    You would agree with me, wouldn't you, that the

24  Committee addresses many issues that aren't relevant to the

25  7 and 7/8ths Noteholders?

1  A.    That's correct.

2  Q.    And that's in part because the Committee acts on behalf

3  of all the Unsecured Creditors, not just the 7 and 7/8ths

4  Noteholders?

5  A.    That's correct.

6  Q.    Nonetheless, you feel that it's prudent practice for an

7  indenture trustee to have its counsel advise on "all issues

8  in the case."  You said that in paragraph 11 of your

9  Affidavit, right?

10  A.    I did.

11  Q.    And you said "Even on those issues for which the

12  Official Committee's counsel may also be providing Official

13  Committee advice."  Isn't that right?

14  A.    That's correct.  The counsel to the Official Committee

15  is not counsel to the Indenture Trustee.

16  Q.    Mr. Heaney, your counsel's going to get the chance to

17  ask you questions on redirect afterwards.  If my questions

18  are yes or no, I'd appreciate it if you could answer yes or

19  no.

20  A.    If I have more to say, I'm going to have to say it.

21        MR. WORCESTER:  Your Honor, can I ask for an

22  instruction to have questions answered yes or no if they can

23  be answered yes or no?

24        THE COURT:  Well, I'm reluctant to limit a witness

25  to a yes or no answer if there is more that that witness

1  wants to say, and I think we have to play it by ear based on

2  the question.

3       MR. WORCESTER:  Okay.

4  BY MR. LOWENTHAL:

5  Q.   Having your counsel provide advice on "all issues,"

6  even "on those issues for which the Official Committee's

7  counsel may also be providing Official Committee advice,"

8  that's what you did in this case, isn't it?

9  A.   One more time.

10 Q.   Having your counsel provide advice on "all issues,"

11 even "on those issues for which the Official Committee's

12 counsel may also be providing Official Committee advice,"

13 that's what you did in this case, isn't it?

14 A.   Yes.

15 Q.   And that was true regardless of the issue and

16 regardless of whether the Committee counsel was also

17 advising on?

18 A.   Yes, but I felt some of them may have had some bearing

19 on us, on our role as Indenture Trustee.

20 Q.   And some of them may not, right?

21 A.   Possibly.

22 Q.   Akin Gump was Committee counsel.  Isn't that correct?

23 A.   That's correct.

24 Q.   And they attended every single Committee meeting,

25 didn't they?

1  A.    They did.

2  Q.    And they prepared summaries of the Committee meetings

3  after the Committee meeting was over, didn't they?

4  A.    They did.

5  Q.    And they sent those to you?

6  A.    Yes, they did.

7  Q.    And it's also the case that Dewey LeBoeuf prepared

8  summaries for you, didn't they?

9  A.    They did.

10  Q.    And it's also the case that Patterson Belknap prepared

11  summaries for you?

12  A.    That's correct.

13  Q.    Akin Gump also distributed an agenda before each

14  Committee meeting, didn't they?

15  A.    That's correct.

16  Q.    And the agenda listed out the issues that were to come

17  up at the Committee meeting, didn't they?

18  A.    They did.

19  Q.    Nonetheless, you had usually multiple lawyers from your

20  law firm attend every single Committee meeting regardless of

21  what was on the agenda.  Isn't that right?

22  A.    Yes, but there's always times where other things come

23  up that are not on the agenda that may relate to Indenture

24  Trustee.

25  Q.    Is there any reason that if one of those things had

1  come up you wouldn't have been able to call Mr. Lowenthal,

2  or before Mr. Lowenthal, one of the lawyers at the Dewey

3  firm, to ask about the issue that had come at the Committee

4  meeting?  There isn't, is there?

5  A.   I may not permit it.  Everybody else there has a

6  lawyer.  Am I supposed to go alone?

7  Q.   You could have made that call after the Committee

8  meeting, though, couldn't you have?

9  A.   I could have made a call after the Committee meeting.

10  Whether it would have been in time, I don't know.

11  Q.   You never alerted the Noteholders to the fact that you

12  were having your lawyers at Patterson and at Dewey and at

13  the other four firms that represented the Trustee throughout

14  the case, you never alerted the Noteholders to the fact that

15  they were reviewing all issues in the case, did you?

16  A.   No, we did not specifically do that.

17  Q.   Can you turn to tab #7 in the binder?  And we'll mark

18  this DX-3.

19  A.   Document 320?

20  Q.   Yes.  It's Bates stamped 320 at the bottom.  If you

21  look at the last paragraph, the one beginning "finally," Mr.

22  Lowenthal writes "Finally, he asks" -- and is the "he" in

23  this Mr. Schiffrin again?

24  A.   Okay.

25  Q.   Is the "he" in the sentence Mr. Schiffrin?  "Finally,

1  he asked"?

2  A.    "Finally, he asked if Law Debenture is going to

3  mediation."

4  Q.    Right.  It's Mr. Schiffrin doing the asking.

5  A.    Okay.

6  Q.    "Finally, he asked if Law Deb is going to the

7  mediation.  I said Jim and I planned to go.  I said we've

8  been told that the mediator expects us to be there and we're

9  going as a Committee member.  He, Mr. Schiffrin, said he

10 heard that mediation is to deal with cross-border issues and

11 that intercreditor issues might not be a part of it and thus

12 perhaps you shouldn't go."  You testified at your deposition

13 that Mr. Lowenthal reported his conversation to you, didn't

14 you?

15 A.    I did.

16 Q.    So you understood that the majority holders through you

17 shouldn't go to the mediation?

18 A.    Correct.

19 Q.    But you went anyway, didn't you?

20 A.    We did, but there's 10 percent of the holders that are

21 not represented by your Noteholders.

22 Q.    It says in this email that you went as a Committee

23 member, doesn't it?

24 A.    It does.

25 Q.    And you went as a Committee member despite the fact

1  that more than 50 percent of the notes thought you shouldn't

2  go.  Isn't that right?

3  A.  We went although more than 50 percent of the

4  Noteholders thought we should not go but they were not

5  directing us.  They chose not to direct us.

6         MR. WORCESTER:  Turn to the next tab in your

7  binder, tab #8, which we'll mark as DX-4.

8         THE COURT:  Was that -- that was DX-3.  Is that

9  right?

10        MR. WORCESTER:  Yes, Your Honor, that was DX-3.

11        THE COURT:  All right.

12        MR. WORCESTER:  And we'll mark tab #8 as DX-4.

13 BY MR. WORCESTER:

14 Q.  This is an exchange between Mr. Lowenthal and Mr.

15 Schiffrin, isn't it?

16 A.  Yes, it is.

17 Q.  And Mr. Lowenthal reported on this exchange too, didn't

18 he?

19 A.  Yes, he would have.

20 Q.  And Mr. Schiffrin writes in the first numbered

21 paragraph "There should be no reference to the Official

22 Committee in this submission, which your client is filing in

23 its capacity as Indenture Trustee."  Do you see that?

24 A.  I do.

25 Q.  And he goes on to say "Well, the current reference is

1  to a fact.  There is a risk that the Court will mistakenly

2  infer that the interests of your constituents are

3  represented by the Official Committee, which they manifestly

4  are not."  Do you see that?

5  A.    I do.

6  Q.    You agree with Solus that the Committee manifestly does

7  not represent their interests at all times, don't you?

8  A.    Repeat the question, please.

9  Q.    You agree with Solus that the Committee manifestly does

10  not represent their interests at all times, don't you?

11  A.    Yes.

12  Q.    It's fair to say, isn't it, that there are times when

13  Solus's interests are aligned with the Committee and there

14  are times when Solus's interests are not aligned with the

15  Committee.  Isn't that right?

16  A.    Yes.

17  Q.    Sitting here today, though, you cannot think of any

18  specific example where the Committee did work that was

19  specifically to the benefit of the NNCC Noteholders.  Isn't

20  that right?

21  A.    I do not recall.

22  Q.    Nor can you recall any example where there was an issue

23  relevant to the NNCC Noteholders that wasn't relevant to the

24  rest of the Committee where the rest of the Committee said

25  okay, we'll do that because it benefits the Noteholders.

1   Isn't that right?

2            MR. BOTTER:  Your Honor?

3            THE COURT:  Mr. Botter?  Yes, Mr. Botter.

4            MR. BOTTER:  Your Honor, I think he can't testify

5   as to what the Committee said or didn't say in Committee

6   deliberations.  That would be invading privilege.

7            THE COURT:  You know what?  You have to come

8   forward, Mr. Botter.  I'm sorry.

9            MR. WORCESTER:  That's okay, Your Honor.  I'll

10  withdraw the question.

11           THE COURT:  All right.  The question is withdrawn.

12  Thank you.  Thank you, Mr. Botter.

13  BY MR. WORCESTER:

14  Q.   From 2009 until 2016, the Indenture Trustee never

15  advised the Noteholders that it was spending millions of

16  dollars on Committee-related work, did it?

17  A.   Did not, but we were not asked by the Noteholders

18  either.

19  Q.   It also never told them anything about the amount of

20  fees it was incurring on any other issue, did it?

21  A.   No, it did not.

22  Q.   Wouldn't it have been a prudent thing to do to tell the

23  Noteholders what your fees were?

24  A.   I do not think it's necessary.

25  Q.   If someone was incurring millions of dollars of fees on

1  your personal behalf and it was going to come out of your

2  pocket, you agree with me, don't you, that you would want to

3  be updated on the incurrence rate of those fees?

4  A.    I would.

5  Q.    One last set of questions on your Committee work, Mr.

6  Heaney.  Capstone is the financial adviser to the Committee,

7  wasn't it?

8  A.    It was.

9  Q.    You do not remember any specific example of Capstone

10 providing information to Law Debenture in Law Debenture's

11 role as the Trustee to the NNCC notes, do you?

12         MR. BOTTER:  Your Honor?

13         THE COURT:  Mr. Botter?

14         MR. BOTTER:  I'd ask that the question be answered

15 yes or no, not [indiscernible].

16         THE COURT:  Is that acceptable, Mr. Worchester?

17         MR. WORCESTER:  I would actually prefer a yes or

18 no answer.

19         THE COURT:  All right.

20         MR. HEANEY:  No.

21 BY MR. WORCESTER:

22 Q.    It's correct you don't remember any examples, right?

23 A.    I don't.

24 Q.    Similarly, and you can also answer this question yes or

25 no, you do not recall any instances in which any other

1  adviser that the Committee retained gave you advice that was

2  specific to the Noteholders?

3  A.    I don't remember.

4  Q.    This is going to be a little harder in a binder, Mr.

5  Heaney, than it was at the deposition where you could put

6  the two documents next to each other, but if you could take

7  a look at tabs #21 and #22, which are going to be marked DX-

8  4 -- DX-5 and DX-6.

9  A.    I'm sorry.  That was #24 and #25?

10 Q.    #21 and #22.

11 A.    #22.

12        MR. WORCESTER:  Your Honor, would it be okay if I

13 approached the witness to disassemble his binder.  I think

14 it's easier if --

15        THE COURT:  Yes.

16        MR. WORCESTER:  -- he has both documents in front

17 of him.

18        THE COURT:  Yes.

19 BY MR. WORCESTER:

20 Q.    You've seen these documents before, haven't you, Mr.

21 Heaney?

22 A.    I have.

23 Q.    Do you recall that in July 2016, Solus learned for the

24 first time that your fees were approximately $7 million,

25 right?

1  A.   Correct.

2  Q.   And also in July 2016, Mr. Lowenthal informed you that

3  Solus would like to speak to you about the fees in this

4  case.  Isn't that right?

5  A.   Yes.

6  Q.   But you did not get back to Solus until October.  Isn't

7  that right?

8  A.   Yes.

9  Q.   And you didn't get back to Solus until October due to

10  internal discussions at Law Debenture.  Isn't that right?

11  A.   Correct.

12  Q.   And those internal discussions were discussing whether

13  you would get back to Solus at all, weren't they?

14  A.   Yes.

15  Q.   There was a debate that went on within Law Debenture

16  for roughly three months about whether or not the majority

17  holder of the notes would be told what the fees incurred in

18  the case were.  Isn't that right?

19  A.   Correct.

20  Q.   And you testified in your deposition that if Solus had

21  asked for an update earlier, you're not sure whether or not

22  management at Law Debenture would have agreed to give it to

23  them.  Isn't that right?

24  A.   Yes.

25  Q.   It would not have been a difficult thing to provide

1  periodic incurrence updates to the majority holder, would

2  it?

3  A.   Not from the Trustee's standpoint.  And Counsel, I'm

4  sure stuff would have to be redacted.

5  Q.   After the Noteholders received your October response,

6  they asked for a businessperson-to-businessperson meeting to

7  discuss the fees, didn't they?

8  A.   They did.

9  Q.   And you refused that businessperson-to-businessperson

10 meeting, didn't you?

11 A.   I did because the representative from Solus is a lawyer

12 for 26 years.  I'm not a lawyer.

13 Q.   You mentioned in paragraph 40 of your Affidavit --

14 changing topics.  You mentioned in paragraph 40 of your

15 Affidavit the Bank of New York.  Do you see that?

16          THE COURT:  This was what number?  I'm sorry.

17          MR. WORCESTER:  Paragraph 40 of Mr. Heaney's

18 Affidavit.

19          THE COURT:  Oh, I'm sorry.  Thank you.

20 BY MR. WORCESTER:

21 Q.   You mention Bank of New York in paragraph 40 of your

22 Affidavit, don't you?

23 A.   I do.

24 Q.   They sat on the Committee with you, right?

25 A.   They did.

1    Q.    And they were Core Parties in the Allocation Trial?

2    A.    They were.

3    Q.    And they attended mediations with you?

4    A.    They did.

5    Q.    And they filed Joinders and Briefs about the litigation

6    just like Law Debenture did?

7    A.    They did.

8    Q.    Their fees were about $4 million, weren't they?

9    A.    I believe so.

10   Q.    This was a cross-border case for them as well, right?

11   A.    Yes.

12   Q.    You took over as lead trust officer for the 7 and 7/8th

13   notes at the end of May 2010, correct?

14   A.    Correct.

15   Q.    Prior to that, you had only billed one-half hour of the

16   case -- on the case in December of 2009.  Isn't that right?

17   A.    That's correct.

18   Q.    Prior to taking over as lead trust officer, you were

19   not involved in any decision-making on the matter?

20   A.    No decision-making.

21   Q.    That was your predecessor, Mr. Bice, wasn't it?

22   A.    It was.

23   Q.    Similarly, any supervision of the attorneys prior to

24   you taking over the case in the middle of 2010 was also done

25   by Mr. Bice.  Isn't that right?

1    A.    Correct.

2              MR. WORCESTER:  Take a look at tab #16 of your

3    binder.  I promise, we won't spend very long on day notes,

4    Your Honor.

5              THE COURT:  All right.  Is this DX-7?

6              MR. WORCESTER:  This will be DX-7, Your Honor.

7              THE COURT:  All right.

8    BY MR. WORCESTER:

9    Q.    And it's Law Debenture's bills.

10   A.    Right.

11   Q.    Am I correct that from the beginning of the case until

12   May 2013, so from 2009 until 2013, every bill from Law

13   Debenture states only that it was for extraordinary fees and

14   expenses?

15   A.    Yes.

16   Q.    There's no other description listed?

17   A.    Correct.

18   Q.    Sitting here today, you can't remember any of the work

19   that was specifically done in 2012, 2011 or 2010.  Isn't

20   that right?

21   A.    Correct.

22   Q.    So you can't tell me that it was specifically done for

23   the benefit of the Noteholders.  Isn't that right?

24   A.    I cannot.

25   Q.    When you took over as lead trust officer in May 2011 --

1   I'm sorry -- in May 2010, you looked for bills from the

2   Dewey firm, didn't you?

3   A.    I did.

4   Q.    And you couldn't find them anywhere at Law Debenture.

5   Isn't that right?

6   A.    That's correct.

7   Q.    You asked Dewey to send you bills, didn't you?

8   A.    I did.

9   Q.    And during the deposition, we had a discussion about we

10  couldn't find any reference to bills being sent before 2012.

11  Your counsel produced yesterday a document indicating that

12  the bills were sent in 2011.

13  A.    Right.

14  Q.    And I slipped that into your binder as the additional

15  document.  Do you see the additional document in front of

16  you?

17  A.    Yes, I do.

18          MR. WORCESTER:  We're going to mark that DX-8,

19  Your Honor.

20          THE COURT:  Is that the document you gave me

21  that's --

22          MR. WORCESTER:  It's the loose document, yes.  It

23  was just produced yesterday so it didn't make it into the

24  binder.

25          THE COURT:  Very well.  Thank you.

1    BY MR. WORCESTER:

2    Q.    Does that document refresh your recollection that June

3    2011 was when Dewey sent you the bills?

4    A.    Yes.

5    Q.    Prior to June 2011, Law Debenture didn't have bills of

6    Dewey to even review, did it?

7    A.    I'm not sure if we did or not.

8    Q.    When you looked for them when you took over as lead

9    trust officer, you couldn't find them, right?

10    A.    I could not.

11    Q.    Turn to tab #17, which we'll mark as DX-9.  These are

12    the bills of Dewey LeBoeuf.  Do you recall looking at these

13    at your deposition?

14    A.    Yes.

15    Q.    Turn to the entries, the billing entries, for April

16    17th and April 23rd, 2009, which are on page 4 of the bills.

17    There were Committee calls on each day, weren't there?

18    A.    I'm sorry.  The dates again?

19    Q.    April 17th and April 23rd, 2009, and they're on page 4

20    about a quarter of the way down the page.

21    A.    Yes.

22    Q.    And there were Committee calls each day, right?

23    A.    Correct.

24    Q.    And those Committee calls were attended by two

25    different lawyers from Dewey LeBoeuf, weren't they?

1    A.    Yes.

2    Q.    And the same is true for the Committee calls that were

3    on April 30th, May 7th, and May 14th.  Isn't that right?

4    A.    Correct.

5    Q.    In fact, the same is true for almost every Committee

6    call that occurred while Dewey was counsel.  Isn't that

7    right?

8    A.    Correct.

9    Q.    And those two lawyers were both senior lawyers, weren't

10   they?

11   A.    One was more senior than the other.

12   Q.    Mr. Miller was a former partner and the head of the

13   Newark office of Dewey LeBoeuf, I believe, and was at this

14   time of counsel, and Mr. Komboti was a senior counsel,

15   right?

16   A.    Correct.

17   Q.    And Dewey LeBoeuf sent two lawyers to virtually every

18   Committee call regardless of the issues that were on Akin's

19   agenda.  Isn't that right?

20   A.    That's correct.

21   Q.    You never asked Dewey LeBoeuf to consider the agenda

22   before considering how many lawyers they would staff on the

23   call, did you?

24   A.    I did not.  They worked as a team, and both members had

25   to be up to speed.

1  Q.    The more junior of the two lawyers prepared notes after

2  every call, didn't he?

3  A.    He did.

4  Q.    And he sent those notes to you?

5  A.    Yes.

6  Q.    And Akin Gump also prepared notes after every call,

7  didn't they?

8  A.    Correct.

9  Q.    And they also sent those notes to you, didn't they?

10 A.    Correct.

11 Q.    How did the Noteholders benefit from Mr. Komboti

12 preparing notes to send you when Akin was already sending

13 you notes after every call?

14 A.    Akin isn't representing us as Indenture Trustee.  We

15 had to make sure that what Akin was sending us, of what Akin

16 was sending us and how it might weigh --

17 Q.    Would the --

18 A.    -- on the Indenture [indiscernible].

19 Q.    Would the -- I'm sorry.  I didn't mean to cut you off.

20 Would the Noteholders have been prejudiced if Mr. Miller had

21 prepared the notes himself for the call?

22 A.    No.

23 Q.    Would there have been a problem for the Noteholders if

24 you had prepared the notes from the call for the call that

25 you attended?

1  A.    Being that I'm not a lawyer, they might have.

2  Q.    Do you recall that at your deposition you said that you

3  wanted the experience with the Dewey counsel on the call?

4  A.    Yes.

5  Q.    No one from the Noteholders ever told you that they

6  needed two senior lawyers to be on the call.  Isn't that

7  right?

8  A.    No, I don't think the Noteholders weren't even in

9  contact with us at that point.

10  Q.    Nor later when Patterson came into the case, right?  No

11  one from the Noteholders ever told you they wanted two

12  senior Patterson attorneys to be on the call?

13  A.    No, they didn't.

14  Q.    Or three Patterson attorneys as the case may have been?

15  A.    No, but they also weren't directing us at that point in

16  time.

17  Q.    If you turn to the end of Dewey's bills, it's the

18  third-to-last page, page 110, you see the timekeeper's

19  summary?

20  A.    Yes.

21  Q.    Do you see that Dewey billed 3,473 total hours?

22  A.    Yes.

23  Q.    And we went over this at your deposition.  Do you agree

24  with me that there was 2.8 hours of paralegal time?

25  A.    Correct.

1  Q.    And there was 10.35 hours of non-legal staff and legal

2  adviser time?

3  A.    Yes.

4  Q.    And there was just over 63½ hours of associate time?

5  A.    Right.

6  Q.    But there was approximately 3,400 of partner and

7  counsel time.  Isn't that right?

8  A.    Correct.

9  Q.    In May 2012, the Noteholders directed you to replace

10  Dewey LeBoeuf, didn't they?

11  A.    They did.

12  Q.    The reason that the Noteholders gave was that Dewey

13  ignored requests for coordination and refused to cooperate.

14  Isn't that right?

15  A.    Yes.

16  Q.    And you hired Patterson Belknap?

17  A.    We hired Patterson Belknap because Dewey was in a death

18  spiral at that point.

19  Q.    When you switched firms, Dewey refused to turn over its

20  work product until they got paid, didn't they?

21  A.    As it turned in 2011, they had given us their bills.

22  Q.    But they refused to turn over their work product after

23  you terminated them until you agreed to pay them.  Isn't

24  that right?

25  A.    Yes, until we brought out the retention letter that

1  said that they were only going to be paid from the

2  recoveries in the bankruptcy.

3  Q.    Patterson worked diligently for four months to get

4  Dewey's work products from them, didn't they?

5  A.    Correct.

6  Q.    That was work product that Patterson needed to get

7  itself up to speed, isn't it?

8  A.    Yes, it was.

9  Q.    In fact, ultimately, Dewey's hold-up forced you to

10  promise that their invoices were reasonable before they

11  would turn over the documents.  Isn't that right?

12  A.    Yes, but we examined all those invoices before we

13  decided that they were reasonable.

14  Q.    And you agreed that the invoices were reasonable, and

15  then Dewey turned over one box of documents and a thumb

16  drive containing 31 Word documents.  Isn't that right?

17  A.    Correct.

18  Q.    You did not ask Dewey to give you a discount because of

19  the duplication that Patterson was forced to incur, did you?

20  A.    I did not.  I felt it was beneficial for the holders

21  for both firms to confer.

22  Q.    It would have been beneficial, wouldn't it have been?

23  A.    It would have been.

24  Q.    We discussed that on May 4, 2012, Solus sent you a

25  direction letter asking you to replace Dewey.  They asked

1   you to hire a different firm, didn't they?

2   A.    They did.

3   Q.    And that firm was Kirkland and Ellis, wasn't it?

4   A.    Yes.

5   Q.    You didn't respond to the direction letter from Solus

6   on May 4th, did you?

7   A.    I did not.

8   Q.    You didn't respond on May 5th, either, did you?

9   A.    I did not.

10  Q.    Or May 6th?

11  A.    I did not.

12  Q.    Now, on May 7th you hired Patterson Belknap.  Isn't

13  that right?

14  A.    Correct.

15  Q.    After hiring Patterson Belknap, on May 9th you got back

16  to Solus and you said the direction letter was deficient,

17  didn't you?

18  A.    We did.

19  Q.    You said that it was deficient in part because it

20  failed to prove that Solus owned 50 percent of the notes.

21  Isn't that right?

22  A.    Correct.

23  Q.    You also said it was deficient in part because Solus

24  had failed to provide you with an indemnity.  Isn't that

25  right?

1   A.    That's correct.

2   Q.    There was no reason that you could not have told Solus

3   those things on May 4th, 5th or 6th before you hired

4   Patterson.  Isn't that right?

5   A.    That's right, but the Trustee has the right to select

6   its own counsel, and I don't believe Kirkland is a corporate

7   trust counsel in any event.

8   Q.    If you had told Solus that you believed they owed you

9   an indemnity or that they hadn't established they owned 50

10  percent of the notes, they could have corrected those

11  problems, couldn't they?

12  A.    Yes, but still could have refused to hire the attorney

13  they wanted us to hire.

14  Q.    Because you did not raise them, Solus was in essence

15  presented with a fait accompli, wasn't it?

16  A.    Yes.

17  Q.    That led to a disagreement on a call with Mr. Blauner,

18  didn't it?

19  A.    It did.

20  Q.    You hung up the phone at the end of that call, didn't

21  you?

22  A.    I did after Mr. Blauner screamed was I calling him a

23  liar, and I told him twice I was ending this call, and then

24  I hung up.

25  Q.    And following that disagreement, you never spoke to him

1  again.  Isn't that right?

2  A.   I did not.

3  Q.   For five years you never spoke to the representative of

4  more than half of the notes that you were fiduciary for?

5  A.   We spoke to him through our counsel.

6  Q.   In 2013, Solus prepared a general -- Solus proposed a

7  general protocol for working together on a going-forward

8  basis, didn't they?

9  A.   I believe so.

10  Q.   And if you take a look at tab #20 of your binder, which

11  we'll mark as DX, I believe we're up to 10, that's the email

12  that Mr. Blauner sent you proposing that, isn't it?

13            THE COURT:  DX-20, did you -- tab #20?

14            MR. WORCESTER:  Tab #20, DX-10.

15            THE COURT: Okay.

16            MR. HEANEY:  Yes.

17  BY MR. WORCESTER:

18  Q.   And in the email, Mr. Blauner expresses surprise to see

19  on the Nortel docket a Motion for Leave to Amend Proof of

20  Claimed filed by Law Debenture that had never been run by

21  him.  Isn't that right?

22  A.   Correct.

23  Q.   And here in 2013, Mr. Blauner is still complaining

24  about the lack of cooperation like he did with Dewey and

25  after you didn't respond to his May 4th letter hired the

1  counsel of your choosing and then told him afterwards that

2  his letter was deficient.  Isn't that right?

3  A.   Yes.  We were permitted by the Indenture to hire the

4  counsel of our choosing, not the Bondholders.

5           MR. WORCESTER:  I don't have any further

6  questions, Your Honor.

7           THE COURT:  All right.  Thank you.  Why don't we

8  take a break now?  We'll take a 15-minute break.  Be back

9  here at five after 11, all right?  And the witness should

10  not speak with anyone during the break.

11           MR. HEANEY:  Okay.

12           THE COURT:  Thank you.

13                         (Recess)

14           THE CLERK:  Please rise.

15           THE COURT:  Thank you, all.  You may be seated.

16  Mr. Masella.

17           MR. MASELLA:  Thank you, Your Honor.  May I

18  proceed?

19           THE COURT:  You may proceed with redirect.

20           MR. MASELLA:  Thank you very much, Your Honor.

21                    REDIRECT EXAMINATION

22  BY MR. MASELLA:

23  Q.   Good afternoon, Mr. Heaney.

24  A.   Good afternoon.

25  Q.   I'm going to apologize to you in advance because my

1  examination of you is going to be a little bit choppy.  I've

2  got various topics I just want to cover with you which were

3  covered on cross, so I'm going to jump from topic to topic,

4  okay?

5  A.    Okay.

6  Q.    During your cross-examination, you were asked a bunch

7  of questions about whether or not you had informed the Fee

8  Objectors that the Indenture Trustee wished to become a Core

9  Party.  Do you recall those questions and your answers?

10  A.    Yes.

11  Q.    And you said no, you had not informed them, correct?

12  A.    Yes.

13  Q.    And the implication of that was that they weren't

14  informed.  Do you understand that?

15  A.    I do.

16         MR. MASELLA:  I'd like to ask you to take a look

17  at a document, which, Your Honor, may I approach the

18  witness?

19         THE COURT:  Yes, you may.

20         MR. MASELLA:  And may I approach, Your Honor?

21         THE COURT:  Yes.  Thank you, Mr. Masella.

22  BY MR. MASELLA:

23  Q.    Mr. Heaney, will you please take a look at this

24  document, which was previously marked as Blauner Exhibit

25  #122?

1   A.    Yes.

2   Q.    And let me know when you're done looking it over.

3   A.    I'm ready.

4   Q.    Blauner Exhibit #122 is an email communication between

5   Javier Schiffrin and Dan Lowenthal.  Do you see that, sir?

6   A.    I do.

7   Q.    And Dan Lowenthal reports to Mr. Schiffrin on March

8   8th, 2013, that Judge Gross and Judge Morawetz have granted

9   the Indenture Trustee's request that Law Debenture be deemed

10  a Core Party.  Do you see that, sir?

11  A.    I do.

12  Q.    And Javier Schiffrin responds to Mr. Lowenthal, does he

13  not?

14  A.    He does.

15  Q.    And he writes, does he not, "Thanks.  I was on the

16  call."  Do you see that, sir?

17  A.    I do.

18  Q.    Would you agree with me then that at least -- well,

19  Javier Schiffrin -- who is Javier Schiffrin?

20  A.    Counsel for Solus.

21  Q.    Okay.  So you would agree with me, would you not, that

22  at least counsel for Solus was aware contemporaneously that

23  a request had been made and granted for Law Debenture to

24  become Core Party?

25  A.    Yes.

1      MR. WORCESTER:  Objection.  Your Honor?

2      THE COURT:  Yes.

3      MR. WORCESTER:  It's probably not a big deal on a

4  limited redirect but I would appreciate non-leading

5  questions.

6      THE COURT:  All right.  We'll take that into

7  consideration.  Thank you.

8      MR. MASELLA:  Thank you very much.  Thank you,

9  Your Honor.

10  BY MR. MASELLA:

11  Q.   Now, you were also asked questions as to whether or not

12  various documents had been solicited.  Do you recall that

13  question and that answer?

14  A.   Yes.

15  Q.   And do you recall that Mr. Blauner had earlier

16  instructed Mr. Lowenthal and others including yourself to

17  keep Solus in the loop on all matters concerning the NNCC

18  notes?

19  A.   Correct.

20      MR. MASELLA:  And I'd like to ask you to take a

21  look at another document, which was also previously marked

22  and admitted in this case as Blauner #111.  Your Honor, may

23  I approach?

24      THE COURT:  Yes.

25  BY MR. MASELLA:

1  Q.    And Mr. Heaney, if you'd like me know after you've had

2  a chance to review this document?

3  A.    All right.

4  Q.    And do you see that --this is an email communication

5  from Steve Blauner to Dan Lowenthal and yourself, correct?

6  A.    Right.

7  Q.    December 26, 2012.  Do you see that date, sir?

8  A.    I do.

9  Q.    And the last paragraph reads "As a consequence, it

10  would be at best inappropriate for Law Debenture to act in

11  any way with respect to the notes without checking with

12  Solus.  If there's a need to discuss this general protocol,

13  we are available."  Do you see that, sir?

14  A.    I do.

15  Q.    Is it your understanding that after December 26, 2012,

16  this general protocol as described by Mr. Blauner in this

17  email was followed?

18  A.    Yes.

19  Q.    And in fact, you instructed Mr. Lowenthal, did you not,

20  to make sure that Mr. Blauner was aware of all significant

21  -- Mr. Blauner's counsel were aware of all significant

22  issues in the matter?

23  A.    Yes, after consultation with our management.

24         MR. MASELLA:  Sir, I'd like to ask you to take a

25  look at another document which responds to a cross-

1  examination question you were asked in terms of instructions

2  that you'd given to Mr. Lowenthal.  Your Honor, may I

3  approach?

4              THE COURT:  Yes.

5              MR. MASELLA:  And I should have noted for the

6  record before when I was handing this document around, this

7  was previously marked as Blauner Exhibit #110, so it's been

8  admitted into evidence.

9              THE COURT:  All right.

10  BY MR. MASELLA:

11  Q.    Have you had an opportunity to review this document,

12  sir?

13  A.    I have.

14  Q.    Now, if you look at the bottom of the first page

15  carrying over to the second page, there's an email from you

16  to Steve Blauner and Dan Lowenthal.  Do you see that?

17  A.    Yes.

18  Q.    And you copy on that email Javier Schiffrin, Ryan

19  Cunningham and an M. Thaltus at Nokota.  Do you see that,

20  sir?

21  A.    I do.

22  Q.    And at that time Nokota was one of the majority holders

23  of the NNCC notes, correct?

24  A.    Correct.

25  Q.    And if you look at the last paragraph of that email

1  that I was just reading to you which is on the second page

2  of the email chain, it says "I've instructed Dan" -- that's

3  Dan Lowenthal, correct?

4  A.    Correct.

5  Q.    "I've instructed Dan that subject to confidentiality

6  restrictions attendant to Law Debenture's membership on the

7  Committee to confer and work cooperatively with Javier" and

8  that's Javier Shiffrin, correct?

9  A.    Correct.

10 Q.    "To work cooperatively with Javier Schiffrin because I

11 believe that doing so in the best interests of all holders

12 of the notes."  Did I read that correctly, sir?

13 A.    You did.

14 Q.    And you sent this email in May of 2012.  Is that

15 correct?

16 A.    That's correct.

17 Q.    And you thereafter received reports from Mr. Lowenthal,

18 did you not, with regard to conversations that took place

19 between him and Javier Schiffrin and later J.B. Tecce of the

20 Quinn Emanuel firm, correct?

21 A.    I did.

22 Q.    Do you have an understanding or belief as to whether

23 Mr. Lowenthal followed this direction?

24 A.    Yes.

25 Q.    What is your understanding or belief?

1    A.    That he shared non-confidential information.

2    Q.    Now, you were asked some questions during the course of

3    your cross-examination about bills that Law Debenture had

4    rendered, correct?

5    A.    Right.

6    Q.    And you were asked whether certain bills provided

7    detail with regard to tasks that were undertaken.  Do you

8    recall so testifying?

9    A.    Yes.

10   Q.    Do me a favor.  Take a look at Exhibit K to your

11   Affidavit, and no reason to read the whole thing but if you

12   could just flip through it for me?

13   A.    Yes.  Okay.

14   Q.    Okay.  And describe for the Court, if you would, what

15   Exhibit K is?

16   A.    Time sheets for Law Debenture.

17   Q.    Does those time sheets cover the entire period for when

18   the bills were rendered?

19   A.    Yes.

20   Q.    And were you ever asked to provide any detail behind

21   any of the bills that you rendered?

22   A.    Not to my memory.

23   Q.    If you had been asked for detail, would you have been

24   willing to provide the material in Exhibit K if you

25   consulted with your management and they agreed to do so?

1  A.    Yes, we would.

2  Q.    You can put that aside, if you would.  I just have a

3  couple questions about Dewey, and you were asked some

4  questions about Dewey, and I think the suggestion was made

5  that Moshe Komboti and Larry Miller were both partners.  Do

6  you recall those questions and those responses?

7  A.    They were both senior attorneys there.

8  Q.    Okay.  What was the relationship between Moshe Komboti

9  and Larry Miller, if you know?

10  A.    Moshe was a bankruptcy expert.

11  Q.    And Larry Miller worked with Moshe?

12  A.    He did.

13  Q.    Did Moshe report to Larry Miller?

14  A.    Yes, he did.

15  Q.    Was Moshe junior to Larry Miller, if you know?

16  A.    He was.

17  Q.    Now, I do apologize for being choppy.  You were asked a

18  series of questions about the Bank of New York, and that's

19  referred to as Bank of New York Mellon today, correct?

20  A.    Correct.

21  Q.    Do you recall whether the Bank of New York Mellon was

22  aligned with the Ad Hoc Committee of Bondholders?

23  A.    I believe they were.

24  Q.    Do you recall whether they worked together with the Ad

25  Hoc Committee of Bondholders?

1   A.    I believe they did.

2   Q.    And did you know that the Ad Hoc Committee of

3   Bondholders incurred legal fees of $95 million?

4   A.    I heard but I haven't seen anything.

5   Q.    Does that suggest to you an answer to why Bank of New

6   York Mellon only billed $4 million?

7   A.    Yes, it does.

8   Q.    You received a bunch of questions about Committee

9   summaries that were allegedly prepared by Akin Gump, and I

10  don't want to go into the content of what any of these

11  summaries said or if they are even summaries, okay?

12  A.    Okay.

13  Q.    Did Akin Gump prepare summaries of Committee meetings

14  or did they prepare minutes of Committee meetings?

15  A.    Minutes.

16  Q.    Okay.  And did the minutes necessarily summarize

17  discussions that took place that were not on the agenda?

18           MR. WORCESTER:  Yes or no, Your Honor, please.

19           THE COURT:  Yes or no.

20           MR. HEANEY:  Yes.

21  BY MR. MASELLA:

22  Q.    They did necessarily --

23  A.    They did.

24  Q.    -- include summaries?

25  A.    To my memory, yes.

1  Q.   Okay.  Now, you used the phrase a couple times in

2  response to questions that you received on cross about a

3  direction letter.  Do you recall being asked questions and

4  giving those responses?

5  A.   I do.

6       MR. MASELLA:  Okay.  I'd like to hand you two

7  documents if I may approach, Your Honor?

8       THE COURT:  Yes, you may.

9       MR. MASELLA:  Thank you, Your Honor.

10 BY MR. MASELLA:

11 Q.   The first document was previously marked as Blauner

12 Exhibit #106, and the second document was previously marked

13 as Blauner Exhibit #107, so both of these have been admitted

14 into evidence.  And sir, if you could familiarize yourself

15 with Exhibits #106 and #107 and let me know when you're done

16 doing that.

17 A.   Okay.

18 Q.   Sir, so Exhibit #106, do you have an understanding in

19 terms of what Exhibit #106 purports to be?

20 A.   A letter of direction.

21 Q.   Who issued that letter of direction, if you could tell

22 me?

23 A.   The Noteholders.

24 Q.   And which Noteholders specifically?

25 A.   Solus, Nokota Capital.

1   Q.    And is Nokota Capital a Noteholder today?

2   A.    No.

3   Q.    They sold?

4   A.    Yes.

5   Q.    And they sent this direction letter to you.  Is that

6   correct?

7   A.    That's correct.

8   Q.    And according to the letter, anyway, this came to you

9   by courier and email, correct?

10  A.    Correct.

11  Q.    So at least as of May 4, 2012, you would agree with me,

12  would you not, that Stephen Blauner knew your name, your

13  title and your email address?

14  A.    He did.

15  Q.    And in fact, we saw that you communicated with him by

16  email in one of the earlier exhibits, correct?

17  A.    Correct.

18  Q.    And then if you look at Exhibit #107, you respond to

19  Mr. Blauner, correct?

20  A.    Correct.

21  Q.    And you tell Mr. Blauner that you find the direction

22  letter to be deficient.  Is that correct?

23  A.    That's correct.

24  Q.    Why did you find the direction letter to be deficient?

25  A.    It didn't provide proper evidence of their holdings,

1  and didn't provide indemnity, and because the Trustee has

2  the right to select its own counsel.

3  Q.   And those three items you just listed are items that

4  are described in Exhibit #107, correct?

5  A.   Correct.

6  Q.   And Exhibit #107 was sent five days after the direction

7  letter was received, correct?

8  A.   Correct.

9  Q.   Thereafter, after May 9th of 2012, did you ever receive

10  another direction letter from Mr. Blauner?

11  A.   Not to my memory.

12  Q.   After May 9th, 2012, did you ever receive another

13  letter from any of the Fee Objectors?

14  A.   Not to my memory.

15  Q.   After May 9th, 2012, did you ever receive another

16  direction letter from any of the NNCC Noteholders?

17  A.   No, I don't.

18  Q.   Now, I believe a point was made during your cross-

19  examination that you never voluntarily provided a fee

20  summary or a budget or something else about the fees that

21  were being incurred by Law Debenture.  Do you recall those

22  questions and those answers?

23  A.   Correct.

24  Q.   Did either of the Fee Objectors ever ask you for a

25  budget?

1  A.    No, they did not.

2  Q.    Did -- prior to 2016, did either of the Fee Objectors

3  ask you any questions about the legal fees that were being

4  incurred by Law Debenture?

5  A.    Not to my memory.

6  Q.    Let me ask that question even more broadly.  Prior to

7  2016 when this dispute first was raised, do you recall any

8  of the NNCC Noteholders ever asking you a single question

9  about staffing, budgeting, legal fees, projected legal fees,

10 or fee estimates?

11 A.    No.

12 Q.    And do you understand that Mr. Blauner was a partner at

13 Milbank Tweed, a major law firm, for 27 years?

14 A.    Yes, I do.

15 Q.    Do you think that Mr. Blauner had some idea that fees

16 were being incurred?

17 A.    I would think so.

18         MR. MASELLA:  I have no more questions at this

19 time, Your Honor.

20         MR. MASELLA:  All right.  Thank you, Mr. Masella.

21                    RECROSS-EXAMINATION

22 BY MR. WORCESTER:

23 Q.    I'll be brief, Mr. Heaney, in part because we're on the

24 clock, and Mr. Tecce is going to yank me if I talk too long.

25 Take a look at Blauner #122, which was the first document

1    that Mr. Masella handed you.

2    A.    Okay.

3    Q.    If you look at the last paragraph of Mr. Lowenthal's

4    email at the bottom, it says "I'm pleased to report that

5    Judge Gross and Justice Morawetz have granted our request

6    that Law Debenture be deemed a Core Party in the Allocation

7    Proceedings."  Do you see that?

8    A.    Yes, I do.

9    Q.    This email was sent after that request was already

10   granted, wasn't it?

11   A.    Yes.

12   Q.    You've never seen any email in preparation for today,

13   in preparation for your deposition or that you remember that

14   suggests Solus or the Noteholders were told before that

15   application.  Isn't that right?

16   A.    I don't recall.

17   Q.    Take a look at Blauner Exhibit #111, and that's the

18   email from Mr. Blauner to Mr. Lowenthal and yourself dated

19   12/26/2012.  Do you see that?

20   A.    Yes.

21   Q.    Solus proposed this general protocol after a filing was

22   made that they hadn't seen before it went in.  Isn't that

23   right?

24   A.    Correct.

25   Q.    And they said it would be inappropriate at best for Law

1  Debenture to act in any way with respect to the notes

2  without checking with Solus.  Do you see that?

3  A.   Yes.

4  Q.   And your position is that you accepted that general

5  protocol and followed that -- I'm not using the word

6  "direction" in the technical sense, so I'll change it, but

7  that instruction?

8  A.   Yes.

9  Q.   Your report in your Affidavit at paragraphs 30 and 31

10  that you asked Mr. Lowenthal to keep Mr. Blauner or his

11  counsel in the loop on all significant matters.  Isn't that

12  right?

13  A.   Yes.

14  Q.   And you say elsewhere in your Affidavit that your

15  understanding was Mr. Lowenthal kept Mr. Blauner and Solus

16  in the loop on most matters.  Isn't that right?

17  A.   Non-confidential matters, yes.

18  Q.   You never communicated to Mr. Blauner that you were

19  adopting his general protocol, did you, because you never

20  spoke to him after you hung up on him in 2000 whatever it

21  was -- 10?

22  A.   Correct.

23  Q.   You've never seen an email from Mr. Lowenthal or anyone

24  else at Patterson where Mr. Lowenthal or someone else at

25  Patterson communicated either to Mr. Blauner or one of his

1  counsel that they were accepting the general protocol.

2  You've never seen that email, have you?

3  A.    I remember being advised by Dan that he did speak to

4  their counsel.

5  Q.    And that he accepted the general protocol?

6  A.    Yes.

7  Q.    After Mr. Blauner asked for a general protocol to be

8  kept in the loop on any matter related to Solus, any matter,

9  and said it would be inappropriate to not be kept in the

10  loop, did you tell him that you were going to run up $1.4

11  million of fees going into the Allocation Trial?

12  A.    Did not, and were not asked.

13  Q.    Did you tell him as part of the general protocol, which

14  was to keep him in the loop on any matter related to the

15  notes, that you'd be attending 31 depositions in the

16  Allocation Trial?

17  A.    Not to my knowledge.

18  Q.    And Mr. Lowenthal didn't either to your knowledge,

19  right?

20  A.    Not to my knowledge.

21  Q.    Similarly, as part of the general protocol that you

22  claim you accepted to keep Mr. Blauner and Solus in the loop

23  with respect to any matter related to the notes, did you

24  tell them about the staffing issues at the Committee, that

25  two and three lawyers were attending every meeting?

1  A.    I did not.

2  Q.    In fact, what you've seen in preparation for this case,

3  for your deposition, for being here today, is a handful,

4  maybe a dozen or more than that emails of communications on

5  specific tasks to which Solus isn't objecting.  Isn't that

6  right?

7  A.    I can't recall.

8  Q.    You don't remember seeing any emails?

9  A.    I remember seeing emails from Solus's counsel to Dan

10  Lowenthal making requests for information.

11  Q.    And my question is, with respect to those emails, it's

12  your understanding sitting here today that Solus isn't

13  objecting to any of that, isn't it?

14  A.    I don't understand that.

15  Q.    Okay.  And you also understand, don't you, that in fact

16  Solus was not updated on every single matter related to the

17  notes?

18  A.    Not related -- not advised on confidential matters.

19  Q.    In fact, it's not confidential how many lawyers you

20  have attend a Committee meeting, right?

21  A.    No.

22  Q.    It's not confidential who prepares up the summaries?

23  A.    No, but I don't know that it directly affects the

24  Noteholders if we're enhancing recovery prospects for them.

25  Q.    And that's Mr. Blauner's objection to the time being

1   spent, isn't it?

2   A.    I think so.

3         MR. WORCESTER:  I only have one more question,

4   Your Honor.

5         THE COURT:  Yes.

6         MR. WORCESTER:  Actually I lied, like lawyers

7   often do when they have one more question.

8   BY MR. WORCESTER:

9   Q.    My one question is -- and then I have more.  My one

10  question is, during seven years that Law Debenture was

11  managing this case, did Law Debenture ever once ask counsel

12  at Patterson, at Dewey or at any one of the other four firms

13  that represented it to write off a single minute of time?

14  A.    No, we did not.  I believe them to be honest firms and

15  people backed with integrity.

16  Q.    We talked about Exhibit K of your Affidavit, which was

17  a list of data entries.  That's not the bill that was sent

18  to Solus, is it?

19  A.    No.

20  Q.    The bill that was sent to Solus was the entries we

21  looked at earlier during your cross-examination.  Isn't that

22  right?

23  A.    Correct.

24  Q.    The times on that entry, Exhibit K, do not match up

25  with the times on the bill that was sent to Solus, do they?

1   A.    I don't know for sure.

2   Q.    Have you checked?

3   A.    No, I haven't.

4            MR. WORCESTER:  I don't have any other questions,

5   Your Honor.

6            THE COURT:  All right.  Thank you.  I just have a

7   quick question for Mr. Heaney, more out of curiosity than

8   anything.  Were the summaries of the Committee minutes -- of

9   the Committee meetings, were those, do you know, sent to

10  anyone at Solus or representing Solus?

11           MR. HEANEY:  From our counsel?

12           THE COURT:  Yes.

13           MR. HEANEY:  No, not to my knowledge.

14           THE COURT:  They were just sent to you?

15           MR. HEANEY:  Right.

16           THE COURT:  All right.  Thank you.  All right.

17  Mr. Heaney, you may step down, sir.  Thank you.

18           MR. MASELLA:  Your Honor?

19           THE COURT:  Yes, Mr. Masella.

20           MR. MASELLA:  Thank you, Your Honor.  The

21  Indenture Trustee calls Sandra E. Horwitz.

22           THE COURT:  All right, Ms. Horwitz.

23     SANDRA E. HORWITZ, WITNESS FOR INDENTURE TRUSTEE, SWORN

24           MR. MASELLA:  Your Honor, may I approach?

25           THE COURT:  Yes, you may.  Thank you, Mr. Masella.

1                          DIRECT EXAMINATION

2    BY MR. MASELLA:

3    Q.   Ms. Horwitz, I've placed in front of you a copy of your

4    Affidavit with exhibits.  Do you have that document in front

5    of you, ma'am?

6    A.   I do.

7    Q.   And do you recognize this as your affidavit?

8    A.   I do.

9    Q.   And if you look at the final page with me, there's a

10   signature, or actually two signatures.

11   A.   Yes.

12   Q.   And do you recognize the top signature as your own?

13   A.   I do.

14   Q.   Do you swear that whatever -- that everything contained

15   in this Affidavit is true and complete to the best of your

16   knowledge?

17   A.   I do.

18          MR. MASELLA:  I pass the witness.

19          THE COURT:  All right.  Thank you, Mr. Masella.

20          MR. WORCESTER:  Your Honor, may I approach the

21   bench and the witness?

22          THE COURT:  Yes, yes, you may.

23                         CROSS-EXAMINATION

24   BY MR. WORCESTER:

25   Q.   Ms. Horwitz, it's good to see you again.  The Delaware

1  Trust Company purchased Law Debenture's Trust Division on

2  December 6th, correct?

3  A.    That is of 2016, yes.

4  Q.    Yes, December 6th that just went by.  You took over as

5  Trustee Representative at that point, right?

6  A.    That is correct.

7  Q.    You didn't work for Law Debenture prior to December

8  6th, 2016, did you?

9  A.    That is correct.

10 Q.    You didn't work on the case in any way prior to

11 December 6th, 2016, right?

12 A.    Correct.

13 Q.    Any knowledge that you have concerning what went on

14 before December 6th, 2016, doesn't come from seeing it with

15 your own eyes as it happened, correct?

16 A.    Right.

17 Q.    Necessarily it comes from what you've been told by

18 other people?

19 A.    Yes.

20 Q.    Similarly, you have no personal knowledge of the tasks

21 performed by Dewey LeBoeuf or Patterson Belknap before

22 December 6th, 2016, right?

23 A.    Right.

24 Q.    You have no knowledge base of what the other firms

25 besides Patterson or Dewey did.  Isn't that right?

1  A.    That's right.

2  Q.    And similarly, no knowledge of any specific tasks or

3  projects that were performed by the Creditors Committee that

4  might or might not have benefited the Noteholders before

5  December 6th, 2016, right?

6  A.    Right.

7  Q.    Similarly, you have no direct knowledge of any tasks

8  that might have been performed in connection with the

9  Allocation Trial.  Isn't that right?

10  A.    That's right.

11  Q.    It's your position that any task the Indenture Trustee

12  performs or that its lawyers perform in its connection with

13  Committee work is reasonable.  Isn't that right?

14  A.    Yes, I do.

15  Q.    Any task at all?

16  A.    Yes, in the fulfillment of our obligation to act as

17  would a prudent person.

18  Q.    And I asked you at your deposition, there's not any

19  task at all that you can imagine an Indenture Trustee or the

20  lawyers to that Indenture Trustee performing while they sat

21  on a Committee that would not be reasonable, and you

22  answered no.  Isn't that right?

23  A.    Correct.

24  Q.    Since taking over as Trustee Representative, you

25  haven't gone back to look at Patterson's time from before

1  December 2016, right?

2  A.    Right.

3  Q.    You haven't looked at Dewey's time, either.  Isn't that

4  right?

5  A.    Right.

6  Q.    Now, I know you've only been involved with the case for

7  about three months, but there are still more or less weekly

8  Creditors Committee calls, aren't there?

9  A.    Yes.

10  Q.    And you've been attending those calls, haven't you?

11  A.    For the most part, yes.

12  Q.    And following the calls, Akin Gump sends you a summary

13  just as it sent Mr. Heaney, doesn't it?

14  A.    I would consider them one-sentence summaries.  They're

15  minutes.

16  Q.    Since you took over as Trustee Representative,

17  Patterson has not continued to send summaries of the calls.

18  Isn't that right?

19  A.    That's right.

20  Q.    Since you took over as Trustee Representative, Mr.

21  Lowenthal has generally with one or two exceptions been the

22  only Patterson attorney attending Creditors Committee calls.

23  Isn't that right?

24  A.    That's right.

25  Q.    You've never felt disserved in anyway by the fact that

1  Patterson has only had one lawyer on the call over the past

2  three months, have you?

3  A.    No.

4  Q.    I asked you at your deposition whether or not you knew

5  if it would have been prudent for the Trustee to provide

6  budgets or fee schedules to the Noteholders given the seven-

7  year length of the case.  You answered "I don't know."  Do

8  you recall that?

9  A.    Yes.

10 Q.    And you testified in your Affidavit at paragraph 20

11 that sitting on Committees is generally useful and was in

12 Nortel, and I asked you, can you name any task that the

13 Committee performed that specifically benefited the

14 Noteholders, and you responded "I have no personal knowledge

15 of that given the Delaware Trust Company did not acquire the

16 portfolio until December 6, 2016."  Do you recall that?

17 A.    Yes.

18 Q.    And we also discussed Patterson's bills for January and

19 the fact that they were approximately $200,000.  Is that

20 right?

21 A.    That's right.

22 Q.    And we agreed that most of that time, virtually all of

23 it, in fact, was related to preparing for this dispute.

24 Isn't that right?

25 A.    Yes.

1  Q.    And you told me that you don't know what the bills for

2  February are going to be but that in fact you've been

3  working with Patterson and their lawyers on a near-daily

4  basis getting ready for this hearing.  Isn't that right?

5  A.    Near daily.

6  Q.    And that means that the cost of this fee dispute could

7  be $400,000 or more just on one side.  Isn't that right?

8  A.    And I believe as I replied at my deposition, I won't

9  know what the bills are for February until I get them in

10  March.

11         MR. WORCESTER:  I don't have any further

12  questions, Your Honor.

13         THE COURT:  All right.  Thank you.  Oh, remain

14  seated.  I'm sorry, Ms. Horwitz.  Mr. Masella may have

15  questions.

16         MR. MASELLA:  I'm sorry.  Just give me one moment,

17  Ms. Horwitz.

18         MS. HORWITZ:  I'm sorry about that.

19         THE COURT:  That's all right.

20         MR. MASELLA:  Your Honor, I have no redirect of

21  Ms. Horwitz.

22         THE COURT:  All right.  Thank you.

23         MR. WORCESTER:  Thank you, Ms. Horwitz.

24         THE COURT:  Now you may step down, Ms. Horwitz.

25  Thank you.

1          MS. HORWITZ:  Thank you so much.

2          THE COURT:  You're welcome.  Thank you.

3          So now I guess we're up to Mr. Blauner.  Would it

4    make sense to take the break now or to get started and see

5    how far we can get by 1:00?

6          MR. WORCESTER:  Your Honor, we're at your

7    discretion, however you want to proceed.

8          THE COURT:  Mr. Masella?

9          MR. MASELLA:  Your Honor, I think this is going to

10   be very, very quick, so I think we should just keep going.

11         THE COURT:  All right.  Let's do that.  We'll keep

12   going.  Thank you.

13       STEPHEN J. BLAUNER, WITNESS FOR NOTEHOLDERS, SWORN

14         THE COURT:  Thank you, Mr. Blauner.

15         MR. TECCE:  Your Honor, may I approach?

16         THE COURT:  Yes.

17         MR. TECCE:  And may Mr. Russell approach?

18         THE COURT:  Absolutely.

19         MR. TECCE:  Thank you very much.

20         THE COURT:  You may.  Thank you, Mr. Tecce.  Thank

21   you.

22                      DIRECT EXAMINATION

23   BY MR. TECCE:

24   Q.   Good afternoon, Mr. Blauner.  Can I ask you, sir, to

25   open the binder that I just presented to you?

1  A.    Yes.

2  Q.    Inside that binder, inside the left-hand pocket there,

3  do you see that document titled Affidavit of Stephen Blauner

4  in Support of Objection of NNCC Noteholders to Asserted Fees

5  and Expenses of Indenture Trustee?  Do you see that?

6  A.    I do.

7  Q.    Do you recognize that document, sir?

8  A.    I do.

9  Q.    Can I -- can you tell me what it is?

10  A.    This is my Affidavit prepared in connection with this

11  dispute.

12  Q.    And can I ask you to turn to the last page of that

13  document, Mr. Blauner?

14  A.    Yes.

15  Q.    Is that your signature on that page?

16  A.    It is.

17        MR. TECCE:  Your Honor, I'd like to move for the

18  admission of Mr. Blauner's Affidavit into the record.

19        THE COURT:  Any objection?

20        MR. MASELLA:  It's already in.

21        THE COURT:  It's already in?  All right.  That's

22  fine.  It's already in.

23        MR. TECCE:  Thank you.  I'll pass the witness,

24  Your Honor.

25        THE COURT:  Thank you.

1           MR. MASELLA: Good morning, Mr. Blauner.

2           MR. BLAUNER:  Good morning.

3           MR. MASELLA:  Your Honor, we have no cross-

4    examination questions for Mr. Blauner at this time.

5           THE COURT:  All right.  I guess there's no

6    redirect.

7                     (Laughter)

8           MR. TECCE:  Well, that was the shortest

9    examination in history, I'm afraid.

10          THE COURT:  Yes.  All right.  Mr. Blauner, you may

11   step down.

12          MR. BLAUNER:  Thank you, sir.

13          THE COURT:  Thank you.  You're right, that was

14   short, Mr. Masella.  That was as short as it could be/

15                     (Laughter)

16          THE COURT: I suppose we should go to closing now.

17   Is that right?  Is that what counsel proposes?

18          MR. MASELLA:  Your Honor, yes.  It would be great

19   if we could have a 20-minute break just to collect our

20   thoughts, but other than that, we're ready to go.

21          THE COURT:  You've got a lot of time left.  How

22   long will your closing be, do you think, roughly, just

23   roughly?  And I'm not going to hold you to it.

24          MR. MASELLA:  Mine will be very brief because

25   we've said most of what needs to be said in the Brief, so

1   I'm not going to reiterate that stuff or I'm not going to

2   tell you about the case which you lived through, so mine

3   will be very brief.

4           THE COURT:  All right.

5           MR. TECCE:  Your Honor, I don't think mine will be

6   as long as my opening, and I think --

7           THE COURT:  Do you want to start now or do you

8   want to start after lunch?

9           MR. TECCE:  Again, Your Honor --

10          MR. WORCESTER:  It sounds to me, Your Honor, like

11  you were suggesting we take a break?

12          THE COURT:  Not really, no.

13          MR. TECCE: I actually think this, Your Honor, if

14  we could have a short break because I think if we had a

15  little time, both of us, we might even --

16          THE COURT:  Do you want a 20-minute break?

17          MR. TECCE:  Sure.

18          THE COURT:  And then we'll come back?

19          MR. TECCE:  That would be great, actually.

20          MR. MASELLA:  That would be great, Your Honor.

21          MR. TECCE:  And then perhaps we would just -- we

22  would see how long we go after that.

23          MR. MASELLA:  All right.  Let's take a 20-minute

24  break and then we'll run until we're finished.  We'll stand

25  in recess, everyone.

1                        (Recess)

2               THE CLERK:  Please rise.

3               THE COURT:  Thank you, everyone.  You may be

4    seated.  And Mr. Masella is at bat.

5               MR. MASELLA:  Good afternoon, Your Honor.  Thank

6    you again for your patience and for listening to us and for

7    setting so much time on your schedule to deal with this --

8               THE COURT:  Absolutely.

9               MR. MASELLA:  -- including telephone conferences.

10   We're very grateful.

11              THE COURT:  It's an important matter.

12              MR. MASELLA:  Thank you.  I agree.

13              I've been given the privilege of making the

14   closing argument here today, but I'm not going to use that

15   privilege to tell you about the case or to tell you what

16   happened in this case since the Petition was filed back in

17   2009.  I'm not going to use this time to tell you that, you

18   know, that it was appropriate for the Indenture Trustee to

19   be a Core Party or for the Indenture Trustee to be on the

20   Creditors Committee.  Your Honor appointed them to both of

21   those positions.

22              I'm also not going to tell you what a fine lawyer

23   Mr. Lowenthal is or his colleagues, Mr. Guiney and Mr. Dent,

24   or, frankly, for that matter, the lawyers Larry Miller and

25   Moshe Komboti at Dewey because I think Your Honor saw them,

1   and I think Your Honor has reached his own judgments on

2   those points.

3            I'd like to start by talking to you for a moment

4   about why we did not cross-examine Steve Blauner.  Mr.

5   Blauner is -- he was a partner at Milbank Tweed for 27

6   years, and since 2005 he's been in the hedge fund world.  We

7   have nothing bad to say about Mr. Blauner.  He is -- he can

8   be a little bit rough.  He was a little bit rough with Mr.

9   Heaney back at the beginning of this matter, but he's a fine

10  man, he's a smart man, and he's a good lawyer.  And he has

11  views, and he has views that he expresses in his Affidavit,

12  but what he did not express in his Affidavit, Your Honor,

13  were any facts concerning any of the line entries that the

14  Fee Objectors purport to contest.  In fact, the Fee

15  Objectors have not submitted to Your Honor a single fact

16  showing that even one of the line entries is in any way

17  questionable, it came as a result of a decision that was not

18  prudent, or is in any way not reasonable.  They haven't

19  submitted any evidence to that point at all, not one.

20  There's not a single affidavit. Nothing in Mr. Blauner's

21  Affidavit suggests that.  So that's why, Your Honor, we

22  didn't waste Your Honor's time cross-examining Mr. Blauner.

23  Mr. Blauner himself admits in his Affidavit -- it's

24  paragraph 22 of his Affidavit -- that while the Indenture

25  Trustee was represented by Dewey, I had little interaction

1  with either the Trustee or its counsel.  So Mr. Blauner has

2  nothing to say about Dewey.

3          With regard to Patterson, he concedes, as he must,

4  that his counsel was speaking to Mr. Lowenthal and his team

5  on a virtually daily basis.  They queried Mr. Lowenthal

6  about the smallest things.  They asked Mr. Lowenthal to

7  explain the legal research the firm had done.  They demanded

8  updates on what was happening.  The only thing that Mr.

9  Lowenthal did not share with them, the only thing, were

10 matters that were privileged relating to the Creditors

11 Committee.  Everything else, everything else Mr. Lowenthal,

12 played, using the colloquial expression, open kimono,

13 anything you want to know, come on by our office, we'll talk

14 on the phone, we'll give you any information you want, and

15 as Mr. Lowenthal told you this morning, there's no question

16 Mr. Lowenthal worked as closely with these layers for Solus

17 as he has ever worked on a bankruptcy matters with lawyers

18 for another party.  No question about it.  Okay.

19         So that's why we did not cross-examine Mr. Blauner

20 because there's absolutely no evidence in his Affidavit --

21 there's not a single factual piece of information, nothing

22 that any of the line entries that they purport to challenge

23 are in any way questionable, are in any way not reasonable

24 or are the result of not prudent action, nothing.

25         So let's talk about what the evidence has shown,

1   and Your Honor, if you wouldn't mind, I'd like to ask you to

2   turn back to the slides that Mr. Lowenthal handed out at the

3   beginning, and I have additional copies.  May I approach?

4           THE COURT:  The slides?  Do you mean --

5           MR. MASELLA:  These are Indenture Trustee's

6   slides.

7           THE COURT:  Oh, yes, I have that.

8           MR. MASELLA:  And what I think oftentimes is lost

9   in these kind of fee disputes and this sort of stuff is the

10  terms of the governing instrument, and the terms of the

11  governing instrument deal with many of the issues that we

12  all need to decide here, and let's start with the first

13  page.  Let's figure out who the parties to this Indenture

14  are.  The parties to the Indenture are the Issuer -- that's

15  on the first page -- Northern Telecom Limited and Northern

16  Telecom Capital Corporation.  Those two entitles are the

17  Issuers.  That's one party to the Indenture.  On the same

18  side with that Issuer is the Guarantor, Northern Telecom

19  Limited, and on the other side of the Indenture is the Bank

20  of New York as the Trustee.  Those are the parties to this

21  contract.  Bank of New York viewed itself as having a

22  conflict because it represented other bonds, and that's why

23  it spent $95 million and worked so closely with the Ad Hoc

24  Bond Committee -- I'm sorry -- that's why it spent $4

25  million and took advantage of the $95 million the Ad Hoc

1  Bond Committee generated as they were working together.  So

2  Bank of New York had to step out as Trustee and in its place

3  stepped Law Debenture.  So those are the parties to the

4  Indenture.

5          Now, if you'll flip the page with me, the second

6  page of these slides, the duties of the Trustee are spelled

7  out, and those duties are the Trustee shall exercise such of

8  its rights and powers invested in it by this Indenture and

9  to use the same degree of care and skill in their exercise

10 as a prudent person would exercise or use under the

11 circumstances in the conduct of his or her own affairs, and

12 I submit to you, Your Honor, that as Mr. Heaney testified,

13 both in his Affidavit and on the stand, and as Ms. Horwitz

14 testified in her Affidavit, that's exactly what Law

15 Debenture and subsequently Delaware Trust did.

16         Now, why do I say that?  If I were participating

17 in a creditors committee and I were trying to act prudently

18 to guard my own affairs, my own wallet, my own money, and I

19 were walking into a room -- and I'm a litigator, I'm not a

20 -- I don't know the fineness of bankruptcy law -- I'm just a

21 dumb litigator -- I would insist if were on a creditors

22 committee of having Mr. Lowenthal with me, and why would I

23 do that?  Because I have no idea personally what issues

24 might arise during the creditors committee meeting, and I

25 need his advice, so the question becomes, is it prudent in

1   the first instance for the Indenture Trustee to sit on the

2   Creditors Committee.  The Fee Objectors don't claim it's

3   not.  They admit that it's prudent.  They admit it's a

4   customary practice.  So they are fine with the Indenture

5   Trustee sitting on the Creditors Committee.  Their only

6   question is whether the Indenture Trustee should or

7   shouldn't have had lawyers representing it on calls and in

8   meetings.  I mean, I personally believe, and I respectfully

9   suggest that that question answers itself.  Everyone else in

10  the room had multiple lawyers.  Mr. Heaney testified to

11  that.  Everyone else.  And yes, agendas were circulated in

12  advance but many times off-agenda items were discussed

13  during these meetings.  Those off-agenda items could have an

14  impact on the NNCC Noteholders.  It was not only prudent to

15  have counsel with you in the room, it was necessary.  And

16  frankly, absent a direction letter -- and I'll get there in

17  a moment, Your Honor -- but if a different decision had been

18  made -- let's imagine that Mr. Heaney, not a lawyer, no

19  legal training, or Ms. Horwitz, not a lawyer, no legal

20  training, determined to attend Creditors Committee on his or

21  her own and not take lawyers with them and just hope that

22  they spot an issue and hope they spot that issue in time to

23  pick up the phone and maybe get Mr. Lowenthal or maybe get

24  another lawyer on the phone.  That's ridiculous, Your Honor.

25  You need to have counsel there, and that's why every single

1   person who participated in the Creditors Committee at every

2   single meeting had counsel present.

3           So they say okay, well, this is what they say in

4   their Brief.  Imagine, Your Honor, that, you know, there's a

5   possibility Your Honor may not agree with us but, Your

6   Honor, they had three lawyers in Committee calls and you

7   ought to penalize them for that.  Well, I went through last

8   night and I circled all the times that Craig Dent, one of

9   the lawyers on the team, was on these calls, and I added up

10  that money, about $40,000.  I came out with $40,100.  I

11  can't swear to that number but that's what I came up with.

12  So okay, maybe we shouldn't have three lawyers on it.  The

13  question -- but Mr. Lowenthal made the decision in

14  consultation with his team and in consultation with Mr.

15  Heaney, the representative of the Trustee, that it was

16  prudent to have the entire team participate in these calls.

17  As Mr. Heaney testified, this wasn't a decision made without

18  consultation with Mr. Heaney.  This was a reasoned decision

19  and the decision was made.  And frankly, Your Honor, a

20  decision does not become not prudent and a fee associated

21  with it does not become not reasonable because we disagree

22  with it or someone disagrees with it.

23          I respect Mr. Blauner.  I understand that he

24  disagrees with some of the decisions that have been made.

25  But disagreement does not equal as a legal matter

1  determining a given charge to be not reasonable or

2  determining a given action not to be prudent.

3         So now if Your Honor will flip with me to the next

4  section, which is section 602, opposing counsel made an

5  argument in his opening statement -- well, before I even get

6  there -- I'm sorry.  Before I even get there, let's look at

7  section 602, which is the page I just directed your

8  attention to.  Because this one is relevant as well, and

9  section 602 provides that the Trustee may act through agents

10 or attorneys, and the Trustee may consult counsel of its

11 selection.  What does that mean, Your Honor?  That means

12 that the Trustee, Law Debenture, can select its own lawyers.

13 It doesn't need to choose a law firm that's imposed upon it.

14 It has freedom to choose its own lawyers, and moreover, it

15 may act through those attorneys or its agents.  So if Law

16 Debenture asked its attorneys to attend a meeting and asked

17 it to participated with it in any given meeting that's a

18 Core Party Proceeding or a Creditors Committee meeting, it

19 was entitled to do that, and what did Law Debenture do with

20 the Core Party matters?  It asked its attorney and agent,

21 Mr. Lowenthal, to attend those.  Why did it do that?

22 Because Mr. Heaney couldn't be a value added.  Right?  In

23 the United States, a corporation can't participate in a

24 trial or a deposition through an individual non-attorney so

25 Mr. Heaney thought and discussed with Mr. Lowenthal as he

1  testified here today that it was appropriate for Mr.

2  Lowenthal to attend these events so that an attorney could

3  be there and could speak up and could apprise us to events

4  that happened, in my opinion, and I think the record shows,

5  a perfectly prudent decision, and the fees resulting from

6  that are reasonable, and there's no allegation that there

7  were three attorneys at Allocation matters or anything like

8  that.  There are perhaps two events where there two lawyers

9  for Patterson Belknap but the vast majority of them were Mr.

10  Lowenthal or Mr. Heaney, Mr. Lowenthal's colleague.

11            THE COURT:  Mr. Heaney?

12            MR. MASELLA:  I'm sorry.  Mr. Guiney.

13            THE COURT:  Right.

14            MR. MASELLA:  My apologies.  Mr. Guiney, G-U-I-N-

15  E-Y.  My apologies.  And I'm going to apologize to Brian

16  too.  He's a very important part of this team, and I didn't

17  mean to diminish that contribution in any way, shape or

18  form.

19            If you flip a couple pages back, there's a section

20  606(b) of the Indenture, and there's a highlighted portion

21  of 606(b) which responds directly to the point that opposing

22  counsel made in his opening statement.  Opposing counsel

23  cited *Asarco* and the American Rule, and opposing counsel

24  says well, under the American Rule and under *Asarco*, this

25  Court cannot, according to counsel, cannot award the

1   Indenture Trustee the fees it has incurred in this

2   proceeding.  I respectfully suggest that is 100 percent

3   wrong.  *Asarco* does not deal with a contract situation, and

4   I think if Your Honor reads that decision, you will quickly

5   conclude that that does not impact an indenture situation

6   where we have a contract governing the situation, which we

7   have here, and the American Rule does not apply because of

8   section 606(b) of the Indenture.  And 606(b) provides -- I

9   won't read the whole thing to you but if you read the text

10  after the word "including" so the dependent clause, it says

11  "including the costs and expenses of defending against any

12  claim or liability in connection with the exercise or

13  performance of any its powers or duties hereunder."  In

14  other words, the issuers, severally and not jointly, shall

15  indemnify the Trustee or any predecessor trustee and their

16  agents for any, any cost and expenses of defending itself

17  against any claim or liability.  There's no question that

18  the claim or liability that's sought here is to cause the

19  Indenture Trustee to be liable for a portion of its legal

20  fees to disallow a portion of its legal fees.  There's no

21  question that this Indenture, this contract between Northern

22  Telecom and Bank of New York and Northern Telecom Limited as

23  Guarantor applies and provides directly that the Indenture

24  Trustee is entitled to be indemnified.  No question at all.

25  *Asarco* doesn't say anything.  The American Rule doesn't

1   impact that.  There's a contractual provision, and in this

2   state and in most states -- every state except for

3   California, this language is good and binding.

4            THE COURT:  And New York law applies to this

5   matter.

6            MR. MASELLA:  Correct, and New York provides and

7   New York law permits this to stand.  That's correct, Your

8   Honor.

9            At base, the entire case that the Fee Objectors

10  brought is -- it's a hindsight case, and Your Honor asked a

11  question earlier on today which suggested to me that Your

12  Honor gets it.  This case is all about hindsight.  The Fee

13  Objectors say well, a certain meeting didn't have anything

14  to do with us so we shouldn't have to pay for that meeting.

15  They suggested a certain event during the Allocation

16  Proceedings didn't have anything to do with them so they

17  shouldn't have to pay for it.  That's what they suggest.

18  But they only know that because eight years later, eight

19  years later we're here, we've settled the claims, and

20  they're saying aha, now we know, now we know that there were

21  some events that took place historically which didn't

22  directly impact the NNCC Noteholders and therefore we

23  shouldn't have to pay for them.  That's the entire case that

24  they made.  But here, Your Honor, service on the Creditors

25  Committee, one of the costs of admission to that job, to be

1  able to have that position and being able to have a seat at

2  the table was participating in Committee meetings and

3  telephone calls.  It wasn't as if the Indenture Trustee or

4  its counsel could say okay, we'll agree to serve on the

5  Creditors Committee but only if there's something that we

6  directly care about that day.  From time to time there may

7  not be a matter we're interested in so we're not going to

8  participate in that.  That's not the way it works.  One of

9  the prices of -- one of the costs of admission here was

10  participating fully in the Creditors Committee process, and

11  that's what the Indenture Trustee did.

12          Mr. Heaney also testified through his Affidavit

13  that 95 percent of the matters discussed at the Committee

14  following the Rockstar sale dealt with Allocation matters.

15  The Allocation matters directly impacted the NNCC notes.  So

16  at most, at most, if Your Honor believes that the hindsight

17  approach should govern, which it shouldn't under the law,

18  and if Your Honor accepts the arguments that have been made,

19  at most the argument is worth a 5 percent discount at most,

20  not the multimillion-dollar discount that has been proposed.

21          Finally, with regard to the Core Party issue, that

22  is also done in hindsight.  I think the record is clear that

23  Mr. Lowenthal participated fully in Allocation matters.  He

24  gave an opening statement, he gave a closing statement.  You

25  know, he was involved -- there were witnesses that took --

1   I'm sorry -- depositions that took place.  Various Patterson

2   Belknap lawyers examined those witnesses.  There's no

3   question that the Indenture Trustee was fully invested in

4   the Allocation process.  And why?  As Mr. Heaney told us,

5   his view was that being a Core Party would permit the

6   Indenture Trustee to protect the interests of the NNCC

7   Noteholders.

8           So that leaves us only a couple open issues, which

9   are the fees charged for working on billing matters.

10          THE COURT:  Which have been withdrawn, as I

11  understand it.

12          MR. MASELLA:  Exactly right, Your Honor.  So

13  $84,000 was taken off the table, and the duplicative

14  entries.  There is absolutely no evidence that has been

15  submitted regarding the duplicate entries.  None.  Mr.

16  Blauner doesn't say anything about them.  No affidavits have

17  been submitted.  There's no competent evidence about them.

18  There's no competent evidence that the entries are in fact

19  duplicative, and I've looked at them, and Your Honor will

20  look at them.  I don't believe they are duplicative.  So I

21  don't understand the point.  I've got nothing more to say on

22  it.  It's a small money point but it's just wrong.

23          So Your Honor, this is about more than just money

24  for the Indenture Trustee.  This is a principle matter.  And

25  the reason why this challenge matters so much to the

1 Indenture Trustee is because if this challenge succeeds, it

2 will upend the work of an indenture trustee.  If an

3 indenture trustee knows that it cannot be paid for work on a

4 creditors committee, it won't serve on creditors committee.

5 And here the Creditors Committee was comprised of two

6 Indenture Trustees and PBGC.  So there would have been only

7 one party who was willing to serve on the Creditors

8 Committee absent the participation of the Indenture

9 Trustees.  What the Fee Objectors are asking is for a ruling

10 from this Court that says we're not going to pay for

11 participating in Creditors Committees.

12         Same thing on the Core Parties.  I mean, if

13 indenture trustees cannot be paid to participate in trial

14 matters, how can they do their job? It's not only prudent,

15 it's necessary to participate in Trial matters and

16 Allocation matters, particularly when those matters can

17 directly affect, as they would here, the NNCC Noteholders.

18         Your Honor, if I might just reserve a few minutes

19 of my time?

20         THE COURT:  Yes.

21         MR. MASELLA:  Thank you, and I will sit down and

22 save the rest of that time for rebuttal.

23         THE COURT:  Thank you, Mr. Masella.

24         MR. TECCE:  Good afternoon, again, Judge Gross.

25         THE COURT:  Good afternoon this time, Mr. Tecce.

1          MR. TECCE:  Thank you.  Your Honor, if I may, I'm

2    going to refer to a few of the documents that are in Mr.

3    Blauner's witness binder.

4          THE COURT:  Yes.

5          MR. TECCE:  So if you might have that at the

6    ready, that might help here.

7          THE COURT:  All right.

8          MR. TECCE:  Thank you very much.

9          So Your Honor, I'd like to begin by addressing the

10   hindsight point because it's been the subject of a lot of

11   discussion.  The Trustee's position is that the fiduciary

12   duty cannot be measured in hindsight.  We'd submit that we

13   are not measuring it in hindsight but under the Trustee's

14   view, their fees are incurred, and if they determine that

15   that's prudent, then we're finished.  But that would make

16   *Worldwide Direct* completely, utterly and totally irrelevant.

17   *Worldwide Direct* involved an indenture trustee that sat on a

18   creditors committee.  The noteholders challenged its fees.

19   The noteholders said you can't -- the trustee said, rather,

20   you can't challenge our fees because you knew I sat on the

21   creditors committee, and Judge Walrath said you know what?

22   If you want to argue that their fees are zero, you're right,

23   you can't challenge their fees, but we're not arguing the

24   fees are zero.  We're arguing the standard of the case,

25   which is in order for you to charge our distribution, you

1   have to show that your Creditors Committee-related work

2   inured directly to the benefit of our notes.  And I think

3   the difference between a more pragmatic explanation, the

4   Trustee's position and the Noteholders is, the Trustees

5   would have you enable them to staff every meeting, go to

6   every deposition with multiple, multiple attorneys, two to

7   three attorneys at every meeting, to say we don't know going

8   in whether or not this is going to impact but we need to

9   just be there, and what we're saying is, no, you need to be

10  prudent in the discharge of your duties, and that means you

11  need to manage your professionals in a way that avoids

12  duplication.  So no, you can't send two to three lawyers to

13  every meeting.  And that's not the price of admission for

14  participating on a statutory creditors committee in

15  bankruptcy courts in this country.

16          We're not saying -- and I said this in the

17  beginning -- that you cannot retain your own attorney.

18  We're not saying that Creditors Committee members be they

19  Indenture Trustees or other members are not entitled to seek

20  reimbursement of their fees.  The law on this is evolving,

21  Your Honor.  Your Honor is familiar with the *Lehman Brothers*

22  decision.  That's a question of substantial contribution.

23  But they're not without remedy, and it's not an all-of-

24  nothing proposition.  The consequences are not so dire.

25  This case is an evolution that moves more closely to where

1   the law is going to be scrupulous with respect to these

2   fees.

3            And so going back to *Worldwide Direct*, Your Honor,

4   under the reasonableness standard, the trustee has the

5   burden.  The Trustee is attempting to shift the burden back

6   to us.  We've identified the day note entries where the

7   Creditors Committee work does not relate specifically to the

8   advancement of the interests of our Noteholders.  The burden

9   is not on us to prove how they do.  The burden is on the

10  Trustee, and the Trustee has not carried that burden.

11           The Trustee also tries to argue that the $8

12  million is a negligible amount compared to the fees of the

13  other professionals in these cases.  I'm citing page 12 of

14  the Brief.  But the only comparable is Bank of New York,

15  Your Honor, and that comparable is directly on all fours.

16  They were a member of the Creditors Committee.  They were

17  participants in the Allocation Trial.  They had cross-border

18  issues, and they incurred fees of $4 million.  And the

19  argument in response to the Trustee is well, hold on, they

20  had the Ad Hoc Bondholder Group, and all their fees

21  advancing the Crossover Bondholders issues as well.  But

22  this particular bond issuance had its own Noteholders and

23  its own Noteholders' counsel doing the same thing with

24  respect to these issues.

25           Your Honor, Nortel may be the most -- one of the

1   most complex Chapter 11 cases in history.  That's very true.

2   But when it came to NNCC, the issues were straightforward.

3   We had a box, NNCC.  That box had two claims, two claims to

4   NNI, a Support Agreement Claim and an Intercompany Claim.

5   Those were the issues relevant to NNCC.  And NNCC

6   Noteholders engaged their own counsel to advance those

7   issues.  Their counsel highlighted the Support Agreement and

8   the Intercompany Loan Claim in their own Pleadings starting

9   in 2014.  They filed a motion.  Their counsel filed a motion

10  to estimate the Support Agreement Claim.  Their counsel

11  filed a motion to have the Intercompany Claim allowed.  The

12  Debtors agreed, graciously so, and we fixed the schedules

13  and we got that amended, and now there's an allowed

14  Intercompany Claim.  So again, Nortel is an extremely

15  complicated case.  The NNCC box, not so much.  Two claims

16  between NNCC and NNI at the motion of the NNCC Noteholders,

17  the Estimation Motion, that Intercompany Claim was allowed.

18  We just solved the first problem.

19          Now we have the Support Agreement Claim.  And to

20  be clear, the Creditors Committee -- I'm not saying the

21  Creditors Committee did not discharge its duties but the

22  Creditors Committee was not a supporter of the Support

23  Agreement Claim.

24          Your Honor may remember we came here on a status

25  conference for our Estimation Motion.  The Creditors

1   Committee made very clear, they wanted to reserve their

2   substantive rights with respect to that Claim.  That Claim

3   was going to be challenged and litigated in this court if it

4   wasn't settled, but it was settled.  It was settled by the

5   NNCC Noteholders who negotiated a settlement with the

6   Debtors for the treatment of their Claims under the Chapter

7   11 Plan.  They had their own counsel advancing their

8   interests just like the Ad Hoc Bondholder Group had the

9   Milbank firm advancing its interests and that insured to the

10  benefit of the Bank of New York.

11          The difference is that the Bank of New York

12  managed the process better.  At $4 million, they were

13  allocation trial participants, they were core party members,

14  and they attended meetings, and I thought I heard counsel

15  for the Trustee say that -- or Mr. Heaney, rather, everybody

16  had multiple attorneys at Committee meetings.  Well, if Bank

17  of New York had multiple attorneys at committee meetings,

18  they managed to pull off that off for $4 million.

19          Your Honor, in our slides, the issue of the

20  Objections that we've raised goes to Creditors Committee

21  participation.  It goes to Allocation Trial. These are in

22  essence the same argument, which is these activities did not

23  fully -- did not specifically advance the interests of the

24  NNCC Noteholders.

25          Implicit in that is a question of whether there

1    were more attorneys necessary at different events, whether

2    hours were excessive.  But those are our Objections, and

3    we've raised them.  We've highlighted the day notes, and we

4    note, Your Honor, that if you look at the pattern of the

5    billing in the case, as we've said, there were periods of

6    time when billing took place during the week, and almost all

7    the billing was during the week with very few percentage of

8    the hours on weekends.

9            THE COURT:  I don't understand that argument.

10           MR. TECCE:  That argument, Your Honor, goes to

11   whether or not the work that's being performed is just

12   duplicative of or consistent with the routine Creditors

13   Committee work that's being handled by another law firm.  If

14   there was an exigency, if you were really advancing the

15   interests of the Noteholders, it would not have been a

16   Monday to Friday, 9-5 job.  And in 2012, there were six

17   business days during which Nortel was not billed by the

18   attorneys.  In 2013, all but eight business days, all but

19   eight business days.  Of those five, they were Good Friday,

20   the day before Memorial Day, and three days around

21   Christmas.  Otherwise all business days were billed, plus

22   three more in that year.  And the point is simply that it

23   suggests that the time was merely monitoring Committee

24   activity, engaging in Committee activity, the brunt of which

25   was being pushed forward by other firms.

1          Going to Allocation, Your Honor, I think that the

2    Noteholders have made very clear that they do not dismiss

3    the idea that the Trustee was a Core Party.  They don't deny

4    that they knew the Trustee was a Core Party.  Their only

5    point was that they didn't instruct the Trustee to be a Core

6    Party, they did that on their own.  Okay, fine.  But we

7    don't deny that we knew that.  But the issue is whether or

8    not it was reasonable to spend a million and a half dollars

9    in fees when an armada of lawyers who had the same interests

10   that your clients did carried the weight on that litigation.

11   All the fees that we've heard kicked around for the other

12   law firms, they weren't prosecuting Allocation, they were

13   trying to bring assets into the United States.

14          And so when Your Honor created a new world and

15   issued the Allocation Decision, the Core Party was there but

16   there was no need to spend a million and a half dollars

17   getting there by attending depositions, by being part of a

18   discovery conference.  That was not necessary.

19          And Your Honor, I just would like to highlight one

20   or two emails in your binder there, Your Honor, if I could

21   ask you to turn to tab #11?

22          THE COURT:  Yes.

23          MR. TECCE:  The Indenture Trustee fully understood

24   that Allocation was not a 7.8 to 7.5 percent note issue.

25   They understood that.  They understood that they were

1   participating as a Creditors Committee member, and the

2   relevance of that is, if that's true, the Trustee should

3   have managed professionals to make sure they weren't

4   duplicating the efforts of Committee members and then the

5   larger U.S. Creditors that were prosecuting that.  And in

6   the last paragraph, the second paragraph up from the bottom,

7   counsel to the Trustee indicates because our -- Mr.

8   Schiffrin, who is counsel to the Noteholders, said we don't

9   think you should go to the mediation because it's not really

10  a Noteholder issue, and the response was yeah, but I'm a

11  member of the Creditors Committee so we're going to go in

12  that capacity.  That reflects an understanding that the

13  participation in these activities is in connection with the

14  activities as a member of the Creditors Committee.  One

15  more, Your Honor, tab #12.

16          THE COURT:  Yes.

17          MR. TECCE:  Or I'm sorry, tab #14, Your Honor.

18          THE COURT:  Tab #14?  I'm sorry.

19          MR. TECCE:  I'm sorry, tab #14, Your Honor --

20          THE COURT:  Yes.

21          MR. TECCE:  -- in Mr. Blauner's binder.  This has

22  been marked as DX-1.  And what this email reflects is an

23  exchange between counsel to the Trustee and counsel to the

24  Noteholders over an issue statement that's going to be

25  submitted in connection with the mediation.  And there's a

1  back and forth because counsel for the Noteholders wants to

2  emphasize the uniqueness of the NNCC notes and counsel for

3  the Trustee is saying, but we're a member of the Creditors

4  Committee and this is Allocation, and I think the sentence

5  that appears about midway through, "I told Javier that Judge

6  Gross and Judge Morawetz likely don't expect parties to list

7  their individual parochial issues.  Rather, they likely want

8  to list the big common issues such as Allocation."  I

9  respectfully submit, Your Honor, the Trustee understood what

10  I was doing.

11        Now, again, it's not without remedy here.  It's

12  not without remedy, because he can file a Claim for

13  Substantial Contribution because it's clearly acting in its

14  capacity as a member of a Creditors Committee, and the law

15  in this country is that if you can establish substantial

16  contribution, then you can get your fees paid in that

17  capacity, and the law in *Worldwide Direct* says that.  What

18  we're saying is that when you're a member of the Committee,

19  you can't charge our notes for doing work that doesn't

20  directly to our Noteholders, that relates to the Creditor

21  body at large.

22        THE COURT:  Do I have to look at all of the time

23  entries submitted?  Tell me what I have to do.

24        MR. TECCE:  I think Your Honor has to look at

25  those entries and understand whether or not when you read

1   them you feel -- your response to reading them is the same

2   as our response when we read them, which is, was this work

3   that was generic Creditors Committee work or was it work

4   that went to our Noteholders; were those Creditors Committee

5   meetings properly staffed, look at how many attorneys were

6   on them; what was the level of the attorney that was

7   attending the meeting; was it a junior attorney, were they

8   senior attorneys; would there have been a better way to

9   manage the professionals as a member of the Creditors

10  Committee and a fiduciary to the Noteholders than is

11  reflected in those day notes.  To be clear, though, we're

12  not objecting to all the work.

13          Your Honor, there were a series of Pleadings that

14  were filed in the case.  There are 11 Joinders and/or

15  statements, okay?

16          THE COURT:  Right.

17          MR. TECCE:  And we listed those, and these are

18  those Joinders and those statements right here, okay?  The

19  bill for these is here, and I'm not suggesting, Your Honor,

20  that they have to be of the same type but the point is, is

21  that there's a tremendous amount of work that is in those

22  day notes that if you were to read them, you would see does

23  not go to the work that I was very -- perhaps I took longer

24  than I needed this morning but I wanted to be very specific

25  in my list of things that we don't object to:  no-call work,

1  Proof of Claim work, Joinders on Post-Petition Interest,

2  Allocation work after the Decision, Proof of Claim work,

3  communications.  We don't object to that work at all, and

4  you're still at $4.1 million.

5       The problem is that the way the balance of the

6  work was done was not properly managed, and there's been a

7  back and forth this morning about whether there was an

8  agreement, a protocol in place.  If there had been a

9  protocol in place, we wouldn't have had this fight, and it

10 would have been easy enough to do, Your Honor -- it would

11 have been easy enough to do to share information about the

12 fees.  There were -- during the course of these cases, there

13 were two holders that held 90 percent of this issue.  I

14 understand that Solus held 60 percent or more than 50

15 percent for the majority of the cases.  Macquarie

16 substituted in.

17            THE COURT:  Right.

18            MR. TECCE:  And then PointState substituted in.

19 But for the most part, between the two of them, they had 90

20 percent of the issue certainly as long as I've been their

21 lawyer, which is from 2014.  To communicate with them would

22 not have been very difficult.  To keep them abreast of the

23 amount of money that was being spent would not have been

24 very difficult.  The problem is that again, as I said, as

25 the Trustee, the fiduciary duty runs to the Noteholders.

1  It's not incumbent on the Noteholders, I don't believe, as a

2  matter of law to make sure that the Trustee is discharging

3  its duty to manage professionals properly.  That's also --

4  by the way, that fiduciary duty is also the subject of New

5  York law.

6          But even more so, Mr. Heaney testified that when

7  the request for the bills was made in 2016, there was a

8  three-month lag period because Law Debenture wasn't sure

9  that it was going to hand them over.  There was internal

10  dispute about whether or not there was sufficient

11  entitlement to have that information, and when my partner,

12  Mr. Worcester, asked him on cross-examination, do you think

13  if they had asked earlier you would have given them to them,

14  he said he didn't even know, he didn't know, wasn't sure.

15  And if you look at the back and forth between the attempt to

16  negotiate the protocol, you could see how it's quite

17  possible that that information might not have been given.

18          So if I could ask, Your Honor, in your binder to

19  turn to tab #4, and what tab #4 is, Your Honor, is -- by the

20  way, the Patterson firm substituted in in May of 2012.

21  That's the first time that there was conversations of some

22  type of coordinated agreement.  There was a request for a

23  joint defense agreement in May, which was flatly denied, but

24  going down through December of 2012, Mr. Blauner appears

25  because a Motion to Amend a Proof of Claim is filed and

1  wasn't consulted on it, and this is the general protocol

2  email that was the subject of some testimony here earlier

3  today.  And I think that there was some sort of discussion

4  that --

5           THE COURT:  Was the amendment improper?

6           MR. TECCE:  No, the issue with the amendment --

7  the Proof of Claim -- again, Nortel is a very complicated

8  case, NNCC, not so much so.  They wanted to make sure that

9  Proof of Claim really properly addressed the Support

10 Agreement issue, and that was very important to Mr. Blauner,

11 and he was engaged in discussions with the Dewey firm about

12 what the Proof of Claim should say, and then Dewey

13 transitioned out so that he basically was radio silent.  No

14 one responded.  We had no idea.  And months went by, and

15 then this thing just hits the docket.  He was actually in

16 discussions with the Dewey firm about what the Proof of

17 Claim should say earlier in the year, and the -- I point

18 Your Honor to tab #7 in that binder if you want to just take

19 a look here -- by the way, these are all in evidence, Your

20 Honor, by agreement of the parties.

21           THE COURT:  Yes.

22           MR. TECCE:  You'll see Mr. Blauner was reaching

23 out to the Dewey firm in the April time period.  In that

24 last email, they're saying when we last spoke, you were

25 going to provide an outline of the issues and the claims you

1  were going to assert on behalf of the bonds as a predicate

2  to preparation of advocacy piece.  I've heard nothing from

3  you.  And then in the next tab, or right behind that there's

4  a blue sheet where Mr. Blauner puts another request in to

5  the Dewey firm for information, and there's an exchange

6  here.  Mr. Blauner's unable to get work product and

7  cooperation out of the Dewey firm. You know, I don't want --

8  they were perhaps in a difficult spot at the time, but the

9  point is, he didn't get that, which led to the direction

10  letter, and then ultimately -- if I could ask you just to

11  turn to tab #8, Your Honor.  This is in the May time period.

12  The Patterson firm comes on the scene, and Mr. Schiffrin,

13  who's Mr. Blauner's lawyer, asks them for a Joint Defense

14  Agreement.  You can see down there the counsel for the

15  Trustee says Law Debenture will not sign a Joint Defense

16  Agreement.  And lastly, Your Honor, I'd ask you to turn to

17  tab #10 because this is an email dated January 16, 2013,

18  which is after the email I showed you in tab #4 where Mr.

19  Blauner raised his displeasure with the fact that the Motion

20  to Amend the Proof of Claim was filed, and they asked him

21  again for proof of his ownership in the bonds, which he

22  provided on January 3rd, so there's a period from May 2012

23  to January 2013 where Mr. Blauner hadn't, according to the

24  Trustee, provided satisfactory evidence of his ownership, so

25  in this email at tab #4, he sends the broker's statements,

1  and that takes us to tab #10 where you'll see the second

2  paragraph down "Javier and Steve" -- Javier, that's Mr.

3  Schiffrin's attorney, and Steve -- "said that they wanted

4  general protocol with us on how we can coordinate efforts.

5  Javier made clear that Solus doesn't want to give us a

6  direction letter, and I made clear that we asked Solus

7  periodically to update for evidence of their holdings.

8         The point is, Your Honor, there's no formal

9  protocol that's put into place, and the idea that there was

10 a protocol and the idea that if we asked for the payment of

11 the fees during this period of time, the idea that that's

12 been established on the record in this case, I respectfully

13 dispute that.  Mr. Heaney's told you he wasn't even sure

14 that they would give him the numbers.  There's no formal

15 protocol that's been put into place.

16         THE COURT:  Is there anything that the Trustee and

17 his lawyers didn't do in this case to represent the

18 Noteholders that they should have done?

19         MR. TECCE:  They didn't discharge their duty under

20 the Indenture.  If you're asking me was there any Pleading

21 that they should have filed --

22         THE COURT:  Yes.

23         MR. TECCE:  Are you asking me at that level, or

24 are you asking me --

25         THE COURT:  No, I'm asking you at that level.

1          MR. TECCE:  No.  I think what happens, Your Honor,

2    if you look at the evolution of things, there is no

3    cooperation between Dewey -- there's an attempt at

4    cooperation, I should say.  It doesn't get off the ground.

5    There's a rocky start perhaps in 2014.  But then during the

6    2015 and the 2016 time period, the level of cooperation

7    increases --

8          THE COURT:  Yes.

9          MR. TECCE:  -- and the level of objections

10   decreased because they are singularly advancing our

11   interests.  But up until that point, just participating in

12   the Allocation Trial and all aspects of it for a million and

13   a half dollars and overstaffing calls in a way that we have

14   no idea that's going on, that's not discharging their duty

15   to the Noteholder as required under New York law and

16   *Worldwide Direct*.

17          And the point is, just to my point, they knew how

18   to do this.  We all knew how to do this.  So if I could ask

19   you to turn to tab #23, Your Honor?  It says here -- this is

20   an email between counsel of the Trustee and its lawyer,

21   forwarding emails with me and counsel to the Trustee saying

22   "Please see the emails below.  I told Jamie -- that's me --

23   that we will not attend since he will not attend."  They're

24   talking about a deposition during the PPI litigation.  This

25   is a prime example of coordination.  This is how we

1  coordinate.  This is how we cooperate.  I showed you the

2  earlier email where we specifically -- counsel to our

3  Noteholders specifically told the Trustee's lawyer we don't

4  think you should go to mediation, it's not an issue for you,

5  and the responses was, we're going as a Committee member.

6  But here, by 2014, there's a level of cooperation.

7          THE COURT:  You indicated you were going to try

8  and attend the deposition, right?

9          MR. TECCE:  Correct, so one of us was going to go.

10 It wasn't going to be both of us, though, because having

11 more than one lawyer in a deposition is not efficient, and

12 first of all, having any lawyer, we have to decide first,

13 are we even going to go, but that level of scrutiny is

14 missing from the Allocation Trial work.  People just

15 attended depositions.  That's the point.

16          Again, tab #26, Your Honor, here's another

17 example.  Tab #26, we're talking about going to a mediation,

18 and we specifically told the Trustee's counsel it was

19 important for them to go.  It was, so we told them to go.

20 We didn't go.  We don't object to their time for that.  We

21 don't object to their time for things that we did in the

22 cooperative spirit that's reflected in these emails, and

23 that's $4.1 million that we don't object to.  It's the other

24 $4 million that's a problem.  That doesn't satisfy the

25 standard of *Worldwide Direct*.  It didn't advance the

1  interests of the notes and it's not compensable from a

2  charge against the Distributions.  It may be compensable

3  some other way.  It may be that the Trustee can demonstrate

4  that it advanced the interests of general Unsecured

5  Creditors at large and satisfied that Substantial

6  Contribution standard but they can't charge the

7  Distribution.

8         Going back to the evidence point, Your Honor, and

9  the day notes.

10         THE COURT:  Yes.

11         MR. TECCE:  Your Honor asked do I need to read all

12  the day notes.  If Your Honor adopts the *Worldwide Direct*

13  version of the world, the answer is no because the day notes

14  don't satisfy their burden of establishing that the work

15  that's reflected in the day notes advances the interests of

16  the Noteholders.  I showed you, Your Honor, from my slides,

17  my slide #2 from this morning if Your Honor has it?

18         THE COURT:  Yes.

19         MR. TECCE:  I showed you, if you read the day

20  notes, "prepare for and participate in OCC Co with U.S.

21  Debtors, CRO and counsel."  There's nothing in that -- in

22  those words that tells me how that goes to my Noteholders,

23  okay?  "Review communications with F. Hodara regarding

24  Equinox sale, the sale of Equinox."  There's nothing that

25  tells me how that goes to my Noteholders.  "Review Committee

1  submissions on CRO."  Again, I mean, I think you get the

2  point, Your Honor.

3  Now, that doesn't mean that it's not true but it's

4  not proven by what's in the day note, and the burden to do

5  that is not onus, it's on the Trustee.  They bear the burden

6  of proving that these fees related to the advancement of our

7  notes before they charge our distribution, and they've not

8  done that, and you can't push the burden back on the

9  Noteholders by saying that I didn't go through each -- I

10  identified -- we identified the categories of day notes that

11  are objectionable under the legal theory that we have put

12  forth in our Objection that the law under *Worldwide Direct*

13  is you need to bury your burden of establishing how this

14  work benefited the Noteholders.  We've identified the

15  entries that don't work.  We also have entries that work.

16  If I could ask you to turn to page 3?  The Dewey

17  entry, 12/9/10, "participate in conferences regarding the

18  Distributions to the Noteholders."  I don't think that can

19  be any clearer, Your Honor.  That goes to the notes, okay?

20  On the right-hand side, "call with [indiscernible] PPI

21  appeal, post-petition interest."  We were very hot on that

22  issue, as Your Honor will remember.  We worked cooperatively

23  with them.  We have no objection to the time incurred in

24  doing that.  That clearly relates to our notes.

25  The next entry, "research on WT claims."  It was

1  the Wilmington Trust Objection that kicked off the PPI

2  dispute.  Obvious to us.  We did not highlight these issues,

3  okay?

4           The next one, page 5 of my slides, Your Honor,

5  these are Allocation emails.  This is reviewing of expert

6  reports.  This -- I read this, and our legal position is

7  based on *Worldwide Direct* and based on our view on

8  Allocation and how Allocation was universally understood by

9  everyone to be a matter that relates to all Unsecured

10 Creditors.  This time is not compensable by charging the

11 Distributions to the Noteholders because these day notes

12 clearly do not reflect anything unique to the NNCC notes.

13 Again, we highlighted those entries.  We would have thought

14 that they would have come back and explained, even if not

15 line by line, through an affidavit how it is that these day

16 note entries went to our Noteholders.  If anything, the

17 testimony is to the contrary.  Mr. Heaney's testimony is

18 that no, this went to the Creditors at large but I'm on the

19 Committee and if I'm a member of a Creditors Committee, my

20 work goes to everyone and I get paid for it, and again,

21 we're not saying that you don't get paid, we're not saying

22 that you can't hire your own lawyer.  We're just saying

23 before you charge the Noteholders' Distribution, you have to

24 show the work benefited the Noteholders or establish

25 Substantial Contribution for your service on the Committee

1   to General Unsecured Creditors at large.

2          In the Brief, Your Honor, on page 34 of the Brief

3   filed by the Trustee, there is an argument - -we've heard it

4   this morning -- that the Indenture Trustee was there to

5   satisfy the demands of the Noteholders, and there is a

6   series of examples that are given.  When the information was

7   asked about a no-call, that information was provided.  PPI

8   Allocation, the Appeal, that they responded to those

9   demands.  Your Honor, to the extent that that's true and the

10  example's there, we're not objecting to that work.  We're

11  not objecting to PPI work.  We're not objecting to no-call

12  work.  We're not objecting to Allocation Reconsideration

13  Motions.  We're not objecting to Appeal work.  We don't

14  object to the work.

15         So with the examples that are given, I'd ask Your

16  Honor just to remember my cadence of time, which is coming

17  up to 2013, 2014, I showed you the emails.  There's some

18  tension back and forth.  In 2014, late 2014, starting 2015,

19  the cooperation level increases, the level of objection

20  decreases.  But for the day notes that we've identified

21  during all those periods, we don't have an answer on how

22  that work benefited the Noteholders specifically.

23         Which brings me to the subject of Dewey.  I

24  respectfully submit, Your Honor, that the record on Dewey is

25  extremely thin for the approval of any fees.  I mean, we've

1   quantified our dollar amounts, but let's -- if I could just

2   highlight a few issues with respect to Dewey.  There is

3   3,400 hours of partner and of-counsel time, and there is 75

4   hours of associate and paralegal time, and again, I don't

5   want -- I'm not saying the caliber of the attorneys is not

6   there.  It's obvious it's very much there.  The problem is

7   in the staffing.  I understand that they have to communicate

8   with each other but that is extremely top-heavy in terms of

9   the need to have an attorney on a call in case an issue

10  comes up.  You remember you asked is hindsight 20/20.  No.

11  The prudent person would have one attorney there and then

12  follow up, not two to three on every call in case something

13  happens, and Dewey is a prime example of how when that's not

14  controlled, it gets out of control.

15          Dewey refused to hand over work product to

16  Patterson Belknap because the fees wouldn't get paid.

17  That's not acceptable under any set of circumstances.  The

18  Patterson firm had to work to get that work product.

19  Obviously we don't object to the time in doing that, another

20  prime example of work done exclusively to the benefit of the

21  Noteholders to get the work product that the Dewey firm had

22  prepared with respect to the notes.  But to hold it back and

23  say because we're not getting paid, it's unacceptable.

24          The fact that Dewey's willing to write off

25  $60,000, where does that number come from?  What does it

1   tell you about what Dewey thinks is right here?  They

2   attended 162 meetings and calls of the Creditors Committee

3   for $1.24 million.  They didn't hand over the work product

4   that they created during the period of time.

5          And it's also clear, Your Honor, if you look at

6   Law Debenture's day notes, Mr. Bice was the Law Debenture

7   principal on this matter in the beginning, and he was

8   succeeded by Mr. Heaney.

9          THE COURT:  Yes.

10          MR. TECCE:  Mr. Bice isn't here testifying today.

11  I understand -- my understanding is he's retired.  So is Mr.

12  Heaney.  He's a good soldier.  He came to court today to

13  answer for -- to answer the challenges of the Noteholders.

14  Mr. Bice is not here.  I think his silence is deafening.

15  Mr. Heaney didn't get a bill until July 2011 from Dewey.  So

16  in the case of Dewey, Your Honor, I don't see any plausible

17  basis to have those fees in.

18          Now, on the issue of the indemnity, can I ask Your

19  Honor to pull out the handout that Law Debenture's attorneys

20  provided?

21          THE COURT:  Yes.

22          MR. TECCE:  And I'm looking at 606(b), the Issuer

23  severally and not jointly shall indemnify the Trustee.  Do

24  you see that section, Your Honor?

25          THE COURT:  Yes.

1          MR. TECCE:  Okay.  So I'd like to start with

2   *Asarco*.  *Asarco* says that and I quote 135 Supreme Court at

3   2164, "The American Rule, each litigant pays his or her

4   attorney's fees win or lose unless a statute or a contract

5   provide otherwise."  Okay?  Now, in the *Boomerang* decision

6   that was issued by this Court, there was a debate about

7   whether or not there was a contract exception to the

8   American Rule coming out of *Asarco*, and this Court concluded

9   that there is a contract exception but it wasn't going to

10  carry the day in the *Boomerang Tube* case because in that

11  case, there was an agreement between a creditors committee

12  and its professionals.  And you know what that agreement

13  said?  It said that there was a provision indemnifying the

14  professionals -- I'm reading 548 Bankruptcy Reporter at page

15  70 -- "because they include a provision indemnifying them

16  for expenses incurred in any successful defense of their

17  fees."  That's quite express, and what the Supreme Court

18  says is, if your contract is going to cover it, because the

19  Supreme Court looked at the statute but the analysis is

20  exactly the same.  It has to have the words that show that

21  there's going to be fee shifting, and those words are

22  litigation costs to the prevailing party, or as the

23  *Boomerang Tube* case said -- I'm reading from page 74 --

24  "This is not a contract between two parties providing that

25  each will be responsible for the other's legal fees."  Okay.

1    That was the language that was missing from that agreement.

2    The Court also noted that the debtor paid the fees, not the

3    creditors committee, and I'm reading from the top of that

4    page.  It says "This is a contract between two parties and

5    that in the event that the committee counsel will win the

6    challenge with a third party, the estate will pay."

7            I want to go back to 606(b).  That's exactly what

8    this says.  The Issuers -- that's the Debtors, that's NNCC.

9    That's not our clients, that's not the Noteholders, that's

10   the Issuer -- shall severally and not jointly indemnify the

11   Trustee.  There's not a provision in this Indenture that

12   says that the Noteholders will pay if the Indenture Trustee

13   is the prevailing party in a dispute between them, and that

14   is the level of explicitness that is required in order to

15   have the cost of this litigation, which is probably going to

16   be $400,000 to $500,000 charged again to the Noteholders'

17   Distribution, and it's very important, Your Honor, because

18   there were a lot of policy reasons that were raised today.

19   If the Indenture Trustee -- if you find that *Asarco* applies,

20   indenture trustees won't sit on creditors' committees

21   because they can't get their fees paid.  Again, we're not

22   asking for a rule that bars indenture trustees from getting

23   their fees paid.  What we're saying is, if you're an

24   indenture trustee and you sit on a creditors committee, to

25   get your work done for committee-level participation, it has

1  to be a substantial contribution to charge the distribution.

2  It has to be for work that inures directly and peculiarly to

3  the benefit of the noteholders.  If it does neither of

4  those, you don't get it.  If there's a dispute over fees,

5  you don't get paid for that because that doesn't benefit the

6  Noteholders, and that was the point that *Asarco* made.  The

7  Court said that services that are rendered for -- services

8  rendered in defending fees are not services for the benefit

9  of your constituency.  They are services for the benefit of

10  the professionals.  By definition, those services don't

11  benefit our Noteholders at all, clearly.

12           And it's not just *Boomerang*.  The 3rd Circuit

13  Court of Appeals, Your Honor, in *Zurich* picked up on *Asarco*

14  and the contract exception to the *Asarco* rule in the *Zurich*

15  decision which we cited, and there the contract -- the Court

16  determined that contract does not cover the fees in this

17  dispute.

18           So the idea that we can just schlop off *Asarco*

19  because it dealt with the retention of professionals and

20  doesn't apply to a private contract, there's not a single

21  case that's cited by the Indenture Trustee in their Briefs

22  that stands for that proposition at all.  There's no

23  response to *Zurich*, there's no response to *Boomerang* and

24  there's no response to our analysis of *Asarco*, and there's

25  no words other than the ones that have been handed up to you

1  that in this Indenture that provide that in a dispute

2  between the Noteholders and the Trustee, the prevailing

3  party gets its fees paid.  No language to that effect.  And

4  I respectfully submit, Your Honor, that if you find that, I

5  think people will continue to participate on creditors'

6  committees because you're not barring their fees from being

7  paid, you're saying they have to satisfy the standard, and

8  if they don't and you want to litigate them, that's fine,

9  but you're paying the freight for that, and if you don't

10  resolve it before you get to court, your recalcitrance is

11  your problem.

12              THE COURT:  I think you ought to get ready to wrap

13  up, Mr. Tecce.

14              MR. TECCE:  I'm finished, Your Honor.

15              THE COURT:  All right.  Thank you.

16              MR. TECCE:  Thank you.

17              THE COURT:  Thank you.

18              Mr. Masella.

19              MR. MASELLA:  Thank you, Your Honor.  I'll be very

20  brief.

21              May I ask you to please keep that in front of you,

22  the Indenture pages that --

23              THE COURT:  Yes.

24              MR. MASELLA:  -- my friend, Mr. Tecce, was talking

25  to you about?

1          THE COURT:  Yes.

2          MR. MASELLA:  As Your Honor knows from looking at

3   the bills, Law Debenture incurred fees, charged fees of

4   $300,000 for eight years of work on this matter.  According

5   to Mr. Tecce, this litigation, which the Fee Objectors have

6   caused to have happened, will cost between $200,000 and

7   $400,000, much more than the fees that Law Debenture has

8   earned from this litigation.

9          Now, this section 606(b), which is on the second-

10  to-last page, provides for indemnification.  Mr. Tecce says

11  well, that's only indemnification by the Issuers, right?

12  That's his argument.  If you'll flip to the next page with

13  me, Your Honor, there's section 606(d) of the Indenture, and

14  section 606(d) directly answers Mr. Tecce's point.  It says

15  "To secure the Issuer's respective payment obligations in

16  this section, the Trustee shall have a lien prior to debt

17  securities on all money or property held or collected by the

18  Trustee."

19          THE COURT:  Yes.

20          MR. MASELLA:  In other words, section 606, the

21  entirety of section 606 is secured by the charging lien

22  including the indemnification provision.  Mr. Tecce asked

23  where the $60,000 that Dewey wrote off came from.  That came

24  from Dewey and Patterson Belknap reviewing the bills and

25  determining how much money -- how many fees were required,

1  what the fees were to get up to speed, simple as that.

2  That's what the $60,000 write-off represents.  There's been

3  no evidence submitted that that $60,000 is not sufficient,

4  and I think from the bills, it appears to be completely

5  reasonable.

6          Let me get to the point that Mr. Tecce made

7  regarding burden shifting.  The Indenture Trustee has

8  satisfied its burden in two ways.  One, it submitted

9  detailed day notes, which under the law are a sufficient

10  first step, and number two, we provided direct testimony by

11  Mr. Heaney and Ms. Horwitz describing the process through

12  which the Indenture Trustee reviewed the bills, that there

13  was a line-by-line review, and their findings of

14  reasonableness with respect to each.  That plainly under the

15  law satisfies the Indenture Trustee's initial burden.

16          Then the burden shifts.  The burden shifts to the

17  Fee Objectors to put forth evidence suggesting that those

18  fees are not reasonable.  That is what they have not done.

19  That's nowhere in Mr. Blauner's Affidavit, and no other

20  affidavits have been submitted.  No direct testimony or

21  cross has been submitted which in any way questions that

22  initial showing, and that's their obligation.

23          May I ask you, Your Honor, to please turn back to

24  tab #14 which is a document which has been mentioned several

25  times today, and I think Mr. Tecce's point about the

1   document at tab #14 is that there's a distinction drawn

2   between parochial issues and big common issues such as

3   Allocation, and Mr. Tecce's point is that Allocation is a

4   big common issue, therefore that's different than parochial

5   issues which apply only to the NNCC Noteholders.  But big

6   common issues also apply to the NNCC Noteholders.  Big

7   common issues are common to all Unsecured Creditors.  I

8   mean, I don't understand the point they're trying to make

9   but I just wanted to point that out to Your Honor.

10          Mr. Tecce threw out several hypotheticals, and

11  those hypotheticals all surround Law Debenture's cooperation

12  or lack thereof and how over time Law Debenture began to

13  cooperate more with the Noteholders and therefore the

14  Noteholders' Fee Objections decreased.  That's the point

15  that Mr. Tecce is making.  But that point ignores the job of

16  the Indenture Trustee.  The Indenture Trustee -- of course

17  the Indenture Trustee wants to cooperate with Noteholders.

18  Of course it wants to cooperate with other counsel who are

19  involved just like Bank of New York Mellon cooperated with

20  the Ad Hoc Bond Committee.  Of course we want to cooperate

21  with people.  Of course we want to decrease fees whenever we

22  can.  And there's a way that the Fee Objectors could cause

23  us to not do certain activities.  Mr. Tecce's theory was

24  that the Allocation Trial has a lot of lawyers involved in

25  it so therefore, according to him, Patterson Belknap's

1  participation in the Allocation Proceeding was duplicative.

2  I respectfully disagree because the Indenture Trustee was

3  attempting to safeguard the interests of the Noteholders in

4  general in that matter.  But the Fee Objectors could have

5  caused that result.  We saw earlier today a direction

6  letter.  The direction letter was deficient, but that was a

7  direction letter that was prepared by Mr. Blauner and

8  submitted to the Indenture Trustee, and that direction

9  letter was deficient and the Indenture Trustee didn't hide

10 the ball.  Within less than a week, they sent a letter back

11 saying here are the deficiencies and the fee to address

12 them.  Mr. Blauner sent another objection letter.  This was

13 May of 2012.  He could have stopped.  He admits that the

14 Indenture Trustee was participating in the Committee.  He

15 admits that he understood the Indenture Trustee was

16 participating in the Allocation matters.  He admits his

17 lawyer was on the telephone when Your Honor appointed the

18 Indenture Trustee a Core Party.  If that bothered him in any

19 way, shape or form, why didn't he send a direction letter?

20 He chose not to because he wanted to take advantage of the

21 good work that Mr. Lowenthal and his team and the Indenture

22 Trustee were doing.  He wanted to continue to lean on that,

23 just like Bank of New York Mellon was leaning on the Ad Hoc

24 Bond Committee's counsel.  He wanted to do that.

25          Now, I think one of the points that Mr. Tecce made

1   drives that point home.  He says well, the Fee Objectors

2   were represented by their own counsel.  Their own counsel

3   was Malik and Schiffrin for a period of time, then it became

4   Quinn Emanuel, and I think his point was, or he suggested

5   his point was, I think, that therefore the Indenture Trustee

6   didn't need to do certain things.  There are other

7   Noteholders and those Noteholders change over time.  Solus

8   could have sold its interest in the NNCC bonds at any time.

9   Any day it could have sold its interest.  In fact, we know

10  that because the first co-majority holder, Nokota

11  Securities, sold its interest to Macquarie.  Macquarie held

12  those securities for a period of time, and in February 2016

13  sold them to PointState.  These were readily tradeable bonds

14  that could have been sold at any time.  So the NNCC

15  Noteholders have the protection of the Indenture Trustee.

16  The Indenture Trustee owes its duty to all Noteholders, not

17  just one, not even just the majority.

18          And the amounts of money charged by each I think

19  demonstrate the reasonableness also of the fees incurred by

20  the Indenture Trustee in this matter.  Quinn Emanuel and

21  Malik Schiffrin charged $750,000.  How did they do that?

22  They were able to lean on Mr. Lowenthal for research, for

23  assistance, for covering matters.  Mr. Lowenthal charged $8

24  million.  That is very comparable to Bank of New York

25  Mellon, which charged $4 million and was able to lean on the

1    Ad Hoc Bond Committee's counsel, Milbank Tweed, which

2    charged $95 million.

3            So Your Honor, I respectfully submit that Mr.

4    Tecce's arguments are incorrect, but more importantly, they

5    all smack of hindsight.  He is sitting here now and say you

6    could have done this differently, Your Honor, look at those

7    bills, Your Honor, evaluate the staffing, decide whether 1.2

8    hours should have been charged rather than 1.6.  That is the

9    definition of an exercise and review with hindsight.  It's

10   not permitted under the law.  That's not the test.  They've

11   not satisfied their burden.

12           Thank you very much, Your Honor.

13           THE COURT:  Thank you, Mr. Masella.

14           MR. TECCE:  Your Honor, I just wanted to thank you

15   -- I didn't have a chance -- for your time.  I appreciate

16   it.

17           THE COURT:  I didn't -- I wasn't cutting you off.

18   I just --

19           MR. TECCE:  No, it's okay, and I understand it's

20   been a long process, but I wanted to say thank you.

21           THE COURT:  Well, it's an interesting question and

22   it's a difficult question, and it's one that I'm going to

23   have to take in reserve and write an Opinion because it's

24   important, I think, that I address these issues, and you've

25   certainly framed them well for me.  I understand the issues,

1  and it's a matter now of deciding who's right and who's

2  wrong or who I think is right and who I think is wrong, and

3  I will do that as promptly as I can.

4         I know that there is some time sensitivity here

5  for Distribution effective with the Plan.  I don't know

6  exactly when that is but it's soon, and I will therefore

7  endeavor to get an opinion out very quickly.

8         MR. TECCE:  Thank you, Your Honor.

9         THE COURT:  All right.  Thank you, everyone.  It

10 was a good hearing.

11        COUNSEL:  Thank you, Your Honor.

12        THE COURT:  I appreciate your efforts.  Thank you.

13        (Whereupon at 1:33 p.m., the hearing was

14 adjourned.)

15                    CERTIFICATION

16         I certify that the foregoing is a correct

17 transcript from the electronic sound recording of the

18 proceedings in the above-entitled matter.

19

20
21 _____      March 2, 2017
22 Florence E. Blantz, Transcriber        Date
23 Diaz Transcription Services

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **-this**(1) 92:4 | | **adopting**(1) 103:19 | | **agreement**(29) 7:20 8:11 8:14 28:23 28:25 | | **always**(2) 19:13 66:22 | |
| **15-minute**(2) 3:13 88:8 | | **adopts**(1) 149:12 | | 29:4 29:6 31:25 40:11 45:20 47:8 47:8 | | **amend**(4) 31:22 87:19 143:25 145:20 | |
| **20-day**(1) 7:2 | | **advance**(8) 25:12 30:15 56:2 88:25 123:12 | | 47:17 49:7 135:4 135:7 135:10 135:19 | | **amended**(1) 135:13 | |
| **20-minute**(3) 116:19 117:16 117:23 | | 135:6 136:23 148:25 | | 135:23 142:8 143:22 143:23 144:10 144:20 | | **amendment**(2) 144:5 144:6 | |
| **7/8ths**(2) 63:25 64:3 | | | | 145:14 145:16 155:11 155:12 156:1 | | **america**(1) 2:30 | |
| **a-half-hour**(1) 61:1 | | **advanced**(8) 28:20 33:16 33:19 33:25 | | | | **american**(9) 20:19 48:21 48:25 126:23 | |
| **a.m**(2) 1:15 3:1 | | 33:25 34:1 46:15 46:19 149:4 | | **agreements**(1) 29:8 | | 126:24 127:7 127:25 155:3 155:8 | |
| **ability**(1) 63:2 | | | | **aha**(1) 128:20 | | | |
| **able**(8) 13:23 16:13 50:21 67:1 129:1 | | **advancement**(3) 37:23 134:8 150:6 | | **ahead**(3) 15:21 19:6 40:5 | | **americas**(1) 1:30 | |
| 129:1 163:22 163:25 | | **advances**(3) 31:23 37:6 149:15 | | **airfare**(1) 36:6 | | **amount**(7) 8:17 12:12 19:18 71:19 134:12 | |
| | | **advancing**(14) 24:16 27:2 27:7 27:8 28:15 | | **akin**(17) 2:27 27:18 32:9 37:21 40:18 | | 141:21 142:23 | |
| **about**(81) 6:8 6:8 6:12 6:13 7:18 7:21 | | 30:10 37:4 37:13 46:17 134:21 136:7 | | 53:11 59:24 65:22 66:13 81:6 81:12 81:14 | | | |
| 8:10 9:10 12:21 16:14 22:6 22:7 22:8 | | 136:9 137:14 147:10 | | 81:15 81:15 97:9 97:13 111:12 | | **amounts**(2) 153:1 163:18 | |
| 22:13 23:12 31:2 35:8 36:5 40:2 43:18 | | | | | | **analysis**(4) 15:13 25:21 155:19 157:24 | |
| 45:19 47:7 47:9 47:14 50:17 52:16 59:18 | | **advantage**(2) 121:25 162:20 | | **akin's**(1) 80:18 | | **anathematic**(1) 23:2 | |
| 59:20 59:21 61:6 63:15 67:3 71:19 74:3 | | **adversarial**(1) 22:9 | | **alerted**(3) 57:15 67:11 67:14 | | **and**(301) 3:5 3:11 3:13 3:14 3:15 3:19 4:1 | |
| 74:16 76:5 76:8 78:9 79:20 87:24 89:7 | | **adversaries**(2) 22:9 22:11 | | **algorithm**(1) 7:13 | | 4:4 4:16 4:19 4:24 5:7 5:8 5:12 5:16 | |
| 95:3 96:3 96:4 96:18 97:8 98:2 100:20 | | **advice**(7) 64:13 65:5 65:7 65:10 65:12 | | **aligned**(5) 30:24 40:16 70:13 70:14 96:22 | | 5:20 5:23 5:24 6:1 6:3 6:8 6:10 6:11 6:14 | |
| 101:3 101:9 104:24 106:16 111:7 113:18 | | 73:1 122:25 | | **all**(149) 3:6 4:3 6:15 6:20 6:23 8:8 8:19 | | 6:17 6:19 6:22 6:24 7:4 7:6 7:9 7:11 | |
| 117:2 118:15 119:4 119:7 120:2 120:6 | | | | 8:22 9:21 10:3 11:5 12:10 13:22 14:2 | | 7:17 7:22 7:24 8:2 8:2 8:5 8:11 8:11 8:15 | |
| 120:18 120:25 124:10 128:12 129:6 130:16 | | **advise**(3) 27:20 52:11 64:7 | | 14:14 14:15 15:8 15:12 16:9 16:16 16:20 | | 8:17 8:19 8:19 8:22 8:23 8:25 9:3 9:7 9:8 | |
| 130:17 130:23 140:5 142:7 142:11 143:10 | | **advised**(3) 71:15 104:3 105:18 | | 16:24 17:1 17:2 17:2 17:24 21:9 21:21 | | 9:9 9:12 9:22 9:22 10:9 10:11 10:12 | |
| 144:11 144:16 147:24 148:17 152:7 154:1 | | **adviser**(3) 73:1 83:2 | | 23:16 24:20 26:13 27:23 28:24 33:13 35:4 | | 10:17 10:18 10:24 10:25 11:2 11:6 11:7 | |
| 155:6 158:25 160:25 | | **advisers**(1) 14:13 | | 35:20 36:7 38:22 38:25 39:6 40:16 40:16 | | 11:14 11:22 12:2 12:4 12:7 12:7 12:8 12:9 | |
| | | **advising**(1) 65:17 | | 40:19 42:3 43:17 43:24 43:25 44:1 44:2 | | 12:10 12:14 12:16 12:18 12:21 12:24 | |
| **above-entitled**(1) 165:18 | | **advocacy**(2) 42:22 145:2 | | 44:9 44:17 45:22 46:23 47:2 48:23 49:11 | | 12:25 13:3 13:9 13:9 13:17 14:2 14:6 | |
| **abreast**(1) 142:22 | | **advocated**(1) 35:1 | | 51:12 51:19 53:6 53:24 55:7 55:15 57:17 | | 14:8 14:8 14:10 14:11 14:12 14:13 14:18 | |
| **absent**(3) 11:20 123:16 131:8 | | **affairs**(2) 122:11 122:18 | | 57:2 58:9 58:12 60:2 61:23 62:6 62:11 | | 14:19 14:21 14:24 14:24 15:3 15:5 15:7 | |
| **absolute**(1) 8:11 | | **affect**(1) 131:17 | | 62:13 62:17 63:10 63:18 64:3 64:7 65:5 | | 15:7 15:8 15:10 15:14 15:18 15:19 15:20 | |
| **absolutely**(9) 8:3 9:7 16:10 27:6 30:25 | | **affects**(1) 105:23 | | 65:10 67:15 69:11 70:7 70:10 71:11 72:19 | | 15:20 15:21 15:22 15:23 15:23 15:24 | |
| 114:18 118:8 120:20 130:14 | | **affidavit**(36) 15:11 32:17 52:18 52:22 | | 74:13 77:5 77:7 84:12 88:7 88:9 88:15 | | 15:25 16:5 16:8 16:10 16:11 16:13 16:17 | |
| | | 54:21 55:1 55:3 61:19 64:9 75:13 75:15 | | 91:6 91:17 92:3 92:20 92:21 93:9 94:11 | | 16:19 16:21 16:21 16:25 17:1 17:3 17:4 | |
| **absolved**(1) 23:19 | | 75:18 75:22 95:11 103:9 103:14 106:16 | | 101:20 103:11 107:6 107:16 107:16 107:22 | | 17:5 17:8 17:14 17:16 17:16 17:17 17:20 | |
| **absurd**(1) 9:4 | | 108:4 108:7 108:15 112:10 115:3 115:10 | | 108:19 110:15 110:19 112:22 113:13 | | 17:20 17:25 18:1 18:2 18:5 18:8 18:9 | |
| **acceptable**(2) 72:16 153:17 | | 115:18 119:11 119:12 119:20 119:21 | | 113:19 113:22 114:11 115:21 116:16 116:10 | | 18:10 18:13 18:13 18:16 18:18 18:19 | |
| **acceptance**(1) 49:18 | | 119:23 119:24 120:20 122:13 122:14 | | 117:4 117:23 119:19 121:12 124:8 127:24 | | 18:22 18:23 18:24 19:5 19:14 19:17 19:23 | |
| **accepted**(3) 103:4 104:5 104:22 | | 129:12 151:15 160:19 | | 128:12 132:7 134:15 134:20 137:6 137:18 | | 20:3 20:8 20:9 20:10 20:11 20:14 20:16 | |
| **accepting**(1) 104:1 | | | | 137:18 137:21 138:11 140:22 141:12 142:3 | | 20:19 20:22 20:23 21:7 21:18 21:19 22:10 | |
| **accepts**(1) 129:18 | | **affidavits**(6) 46:10 46:13 46:21 51:20 | | 144:19 147:12 147:18 148:12 149:11 | | 22:13 22:15 22:19 22:22 22:25 23:6 23:9 | |
| **accompli**(1) 86:15 | | 130:16 160:20 | | 151:9 152:21 157:11 157:22 158:15 159:17 | | 23:10 23:12 23:15 23:17 23:18 23:21 | |
| **according**(5) 99:8 126:25 145:23 159:4 | | | | 161:7 161:11 163:16 164:5 165:9 | | 23:22 23:25 24:7 24:9 24:15 24:17 24:18 | |
| 161:25 | | **afraid**(1) 116:9 | | | | 25:3 25:6 25:8 25:10 25:13 25:14 25:18 | |
| | | **after**(43) 10:7 15:16 16:2 16:3 18:21 18:21 | | **all-of**(1) 133:23 | | 26:9 26:22 27:4 27:7 27:10 27:20 28:1 | |
| **accrued**(2) 62:11 63:10 | | 18:21 27:22 30:6 42:1 42:21 43:4 47:16 | | **allegation**(1) 126:6 | | 28:2 28:3 28:5 28:6 28:8 28:10 28:12 | |
| **accused**(1) 14:18 | | 47:21 61:9 66:3 67:7 67:9 75:5 81:1 81:6 | | **alleged**(1) 19:20 | | 28:13 28:24 29:4 29:5 29:5 29:6 29:9 | |
| **acknowledge**(2) 46:6 46:8 | | 81:13 83:22 85:15 86:22 87:25 88:9 92:1 | | **allegedly**(1) 97:9 | | 29:11 29:15 30:4 30:5 30:13 30:14 30:16 | |
| **acquire**(1) 112:15 | | 92:15 92:23 100:6 100:9 100:12 100:15 | | **allocated**(1) 60:3 | | 30:18 30:21 30:23 30:24 30:25 31:7 | |
| **act**(12) 10:9 10:12 11:4 13:25 14:8 24:8 | | 102:9 102:21 103:20 104:7 117:8 117:22 | | **allocation**(88) 6:21 12:16 12:19 13:10 | | 31:7 31:8 31:10 31:13 31:15 31:20 32:1 | |
| 92:10 103:1 110:16 122:17 125:9 125:15 | | 127:10 142:2 145:18 | | 14:14 16:16 16:20 16:21 16:22 17:24 18:8 | | 32:3 32:11 32:14 32:23 33:12 33:18 33:21 | |
| | | | | 18:12 18:25 21:1 30:16 30:20 30:21 31:15 | | 34:7 34:9 34:10 34:11 34:12 34:19 34:22 | |
| **acting**(1) 140:13 | | **afternoon**(7) 3:14 88:23 88:24 114:24 | | 33:6 33:7 33:12 33:23 33:24 34:25 38:7 | | 34:23 35:4 35:4 35:14 35:19 35:20 35:22 | |
| **action**(2) 120:24 125:2 | | 118:5 131:24 131:25 | | 39:19 39:24 39:25 40:2 41:3 41:4 41:6 | | 35:23 36:6 36:16 36:24 37:19 37:21 38:1 | |
| **active**(1) 17:20 | | | | 41:24 42:11 42:23 42:24 43:23 43:23 44:2 | | 38:4 38:9 38:12 38:22 39:1 39:3 39:5 | |
| **activities**(5) 37:12 136:22 139:13 139:14 | | **afterwards**(3) 16:10 64:17 88:1 | | 44:6 55:25 56:6 56:12 56:20 56:24 57:3 | | 39:16 39:18 40:1 40:3 40:4 40:13 40:20 | |
| 161:23 | | **again**(30) 5:12 8:16 28:18 36:23 38:23 | | 57:9 57:16 59:7 59:11 59:20 59:23 60:9 | | 40:22 40:23 40:23 41:1 41:2 41:10 41:12 | |
| | | 41:8 41:16 42:21 43:16 55:23 60:12 67:23 | | 60:22 76:1 102:6 104:11 104:16 110:9 | | 41:14 41:15 41:16 41:22 41:24 42:8 42:12 | |
| **activity**(4) 34:14 39:11 137:24 137:24 | | 79:18 87:1 108:25 117:9 118:6 131:24 | | 126:7 128:15 129:14 129:15 129:23 130:4 | | 42:13 42:21 42:21 43:1 43:11 43:16 43:21 | |
| **acts**(2) 11:5 64:2 | | 135:14 140:11 142:24 144:7 145:21 148:16 | | 131:16 134:17 136:11 136:21 138:1 138:12 | | 43:22 43:23 | |
| **actually**(13) 12:20 16:15 28:4 31:8 36:13 | | 150:1 151:15 151:20 153:4 156:16 156:21 | | 138:15 138:24 140:4 140:8 142:2 147:12 | | | |
| 45:5 45:15 72:17 106:6 108:10 117:13 | | | | 148:14 151:5 151:8 151:13 152:8 152:12 | | | |
| 117:19 144:15 | | **against**(10) 8:12 28:22 29:12 33:23 33:25 | | 161:3 161:13 161:24 162:1 162:16 | | | |
| | | 40:10 40:13 127:11 127:17 149:2 | | | | | |
| **added**(2) 124:9 125:22 | | | | **allowed**(5) 11:2 25:15 135:11 135:13 | | | |
| **adding**(2) 36:16 43:17 | | **agenda**(9) 27:21 38:12 66:13 66:16 66:21 | | **almost**(5) 37:17 39:6 40:1 80:5 137:6 | | | |
| **additional**(4) 52:2 78:14 78:15 121:3 | | 66:23 80:19 80:21 97:17 | | **alone**(1) 67:6 | | | |
| **address**(5) 10:6 26:10 99:13 162:11 164:24 | | | | **along**(2) 16:25 46:23 | | | |
| **addressed**(1) 144:9 | | **agendas**(1) 123:11 | | **already**(9) 6:1 6:7 12:24 54:15 81:12 | | | |
| **addresses**(2) 8:25 63:24 | | **agent**(1) 125:20 | | 102:9 115:20 115:21 115:22 | | | |
| **addressing**(1) 132:9 | | **agents**(3) 125:9 125:15 127:16 | | | | | |
| **adjourned**(1) 165:14 | | **aggregate**(1) 31:11 | | **also**(45) 4:19 6:16 7:23 11:2 11:17 18:10 | | | |
| **administered**(1) 1:6 | | **ago**(1) 9:24 | | 20:10 23:9 34:25 38:21 46:21 51:21 52:2 | | | |
| **administration**(1) 49:19 | | **agree**(14) 19:24 26:7 46:2 63:23 70:6 70:9 | | 57:8 61:5 64:12 65:7 65:12 65:16 66:7 | | | |
| **admission**(4) 115:18 128:25 129:9 133:13 | | 72:2 82:23 90:18 90:21 99:11 118:12 | | 66:10 66:13 71:19 72:24 74:2 76:24 81:6 | | | |
| **admit**(2) 123:3 123:3 | | 124:5 129:4 | | 81:9 82:15 85:23 91:11 91:21 105:15 | | | |
| **admits**(4) 119:23 162:13 162:15 162:16 | | | | 112:18 118:22 129:12 129:22 134:11 143:3 | | | |
| **admitted**(7) 10:24 51:20 51:22 52:10 | | **agreed**(14) 6:7 8:13 19:10 45:21 45:25 | | 143:4 150:15 154:5 156:2 161:6 163:19 | | | |
| 91:22 93:8 98:13 | | 46:1 53:1 58:8 74:22 83:23 84:14 95:25 | | | | | |
| | | 112:22 135:12 | | **alternative**(3) 2:4 2:12 50:19 | | | |
| **adopted**(1) 43:2 | | | | **although**(2) 63:16 69:3 | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**and**(301) 43:23 44:5 44:9 44:21 44:22 45:1 45:2 45:4 45:9 45:12 45:12 46:6 46:7 46:12 46:19 47:1 47:4 47:5 47:7 47:8 47:14 47:14 47:16 47:19 47:20 47:21 47:25 47:25 48:3 48:6 48:13 48:21 48:23 49:7 49:13 49:17 49:21 50:12 50:15 50:16 50:16 50:19 50:24 51:1 51:6 51:7 51:7 51:25 52:3 52:4 52:15 52:22 52:23 53:1 53:12 53:17 53:18 53:25 54:3 54:13 54:21 55:3 55:3 55:9 55:11 56:19 57:5 57:11 57:14 57:19 58:6 58:9 58:17 58:22 58:24 59:4 59:25 60:6 60:13 60:17 60:21 60:25 61:5 61:13 61:21 63:1 63:1 63:5 63:6 63:12 63:13 63:14 63:25 64:2 64:3 64:11 65:1 65:15 65:15 65:20 65:24 66:2 66:5 66:7 66:10 66:16 67:12 67:17 67:22 68:7 68:8 68:10 68:11 68:25 69:12 69:14 69:17 69:20 69:25 70:13 72:1 72:24 73:7 73:8 73:9 73:10 74:2 74:9 74:12 74:20 75:3 75:9 76:1 76:3 76:5 76:5 76:12 77:9 77:13 78:4 78:9 78:14 79:16 79:19 79:19 79:22 79:24 80:2 80:3 80:9 80:12 80:13 80:14 80:17 80:24 81:4 81:6 81:9 81:16 82:23 83:1 83:1 83:4 83:6 83:13 83:16 84:14 84:14 84:15 85:3 85:3 85:16 86:6 86:23 86:23 86:25 87:10 87:18 87:23 87:24 88:1 88:9 89:9 89:11 89:13 89:20 90:2 90:5 90:7 90:8 90:12 90:15 90:23 91:13 91:15 91:16 91:20 91:22 92:1 92:4 92:5 92:9 92:19 93:5 93:16 93:18 93:19 93:22 93:25 94:7 94:9 94:14 94:17 94:19 94:19 95:6 95:11 95:14 95:20 95:25 96:3 96:4 96:5 96:6 96:9 96:11 96:18 97:2 97:9 97:16 98:3 98:12 98:14 98:15 98:15 98:24 99:1 99:5 99:8 99:9 99:13 99:15 99:18 99:21 100:1 100:1 100:3 100:6 100:22 101:12 101:24 102:5 102:17 102:18 102:25 103:4 103:5 103:9 103:14 103:15 104:5 104:9 104:12 104:18 104:22 104:25 105:11 105:15 105:25 106:9 106:14 107:8 108:9 108:12 108:15 108:21 110:2 110:18 110:21 111:10 111:12 112:10 112:11 112:12 112:14 112:18 112:18 112:22 113:1 113:3 113:6 113:8 114:4 114:17 115:5 115:12 116:23 117:6 117:18 117:21

**and**(301) 117:24 118:4 118:6 118:6 118:23 118:24 119:1 119:6 119:10 119:10 119:11 120:4 120:14 121:1 121:3 121:8 121:9 121:10 121:12 121:15 121:19 121:22 121:23 121:25 122:2 122:7 122:8 122:8 122:9 122:11 122:13 122:13 122:15 122:17 122:18 122:19 122:22 122:24 123:7 123:8 123:11 123:15 123:16 123:21 123:21 123:22 123:23 123:25 124:6 124:8 124:9 124:14 124:19 124:19 124:20 125:8 125:10 125:14 125:16 125:19 125:20 125:25 126:3 126:3 126:4 126:5 126:6 126:15 126:16 126:20 126:23 126:23 126:24 127:3 127:7 127:8 127:11 127:14 127:15 127:16 127:22 127:22 127:23 128:1 128:2 128:3 128:4 128:6 128:6 128:10 128:19 128:22 129:1 129:2 129:10 129:18 130:4 130:13 130:19 130:24 131:5 131:6 131:9 131:21 131:21 131:21 132:14 132:16 132:21 132:2 133:4 133:9 133:10 133:13 133:16 133:23 134:3 134:10 134:15 134:18 134:18 134:20 134:22 135:4 135:5 135:7 135:12 135:13 135:13 135:16 135:19 136:3 136:9 136:14 136:14 137:2 137:3 137:6 137:20 137:22 138:8 138:14 138:14 138:16 138:19 139:1 139:4 139:5 139:10 139:22 139:23 139:25 140:1 140:2 140:4 140:4 140:6 140:14 140:17 140:25 141:10 141:17 141:17 141:18 141:19 142:3 142:6 142:7 142:9 142:18 143:11 143:15 143:15 143:19 143:25 144:1 144:3 144:10 144:11 144:12 144:14 144:14 144:17 144:25 145:5 145:5 145:6 145:10 145:12 145:16 145:20 146:1 146:3 146:6 146:9 146:10 146:16 146:7 146:9 147:2 147:12 147:13 147:14 147:17 147:20 147:21 148:5 148:8 148:11 148:18 148:22 149:1 149:5 149:8 149:20 151:5 151:14 151:19 151:20 151:20 152:5 152:9 152:18 153:3 153:3 153:4 153:4 153:11 153:13 153:22 154:2 154:5 154:7 154:22 154:23 155:2 155:8 155:12 155:12 155:17 155:21 156:3 156:4 156:10 156:13 156:17 156:24 157:2 157:6 157:12 157:14 157:15 157:17 157:23 157:24 158:2 158:3 158:7 158:8 158:9 159:6 159:13 159:24 159:24 160:4 160:10 160:11 160:10 160:19 160:22 160:25 161:12 161:10 161:12 161:13 161:22 162:7 162:8 162:9 162:11 162:21 162:21 163:3 163:4 163:7 163:12 163:18 163:20 163:25 164:5 164:9 164:19

**and**(9) 164:21 164:22 164:23 164:24 165:1 165:1 165:2 165:2 165:6

**and/or**(1) 141:14

**annotated**(1) 45:4

**annotation**(1) 46:5

**another**(19) 3:13 6:2 23:10 36:25 38:4 50:13 54:16 91:21 92:25 100:10 100:12 100:15 120:18 123:24 137:13 145:4 148:16 153:19 162:12

**answer**(13) 16:13 27:10 27:17 64:18 64:25 72:18 72:24 91:13 97:5 149:13 152:21 154:13 154:13

**answered**(7) 63:11 63:13 64:22 64:23 72:14 110:22 112:7

**answers**(6) 12:8 53:22 89:9 100:22 123:9 159:14

**anticipated**(1) 15:11

**any**(101) 6:15 8:20 10:22 11:5 11:14 23:7 33:2 33:3 33:3 33:4 33:16 33:20 34:7 35:1 41:13 45:20 49:12 53:22 56:8 56:14 56:16 57:14 57:15 57:20 57:24 57:24 58:3 59:13 60:17 61:17 66:25 70:17 70:22 71:20 72:9 72:22 72:25 72:25 76:19 76:23 77:18 78:10 86:7 88:5 92:11 95:20 95:21 97:10 100:13 100:16 101:3 101:7 102:12 103:1 104:8 104:8 104:14 104:23 105:8 105:13 106:12 107:4 109:10 109:13 110:2 110:7 110:11 110:15 110:18 112:12 113:11 115:19 119:13 119:13 119:16 119:18 119:19 120:14 120:22 120:23 120:23 125:17 126:17 127:11 127:13 127:15 127:16 127:16 127:17 146:20 148:12 150:19 152:25 153:17 154:16 155:16 160:21 162:18 163:8 163:9 163:14

**anyone**(6) 33:25 34:1 59:19 88:10 103:23 107:10

**anyone's**(2) 42:7 42:22

**anything**(14) 21:3 46:1 71:19 97:4 107:8 120:13 126:7 127:25 128:13 128:16 130:16 146:16 151:12 151:16

**anytime**(1) 30:5

**anyway**(3) 68:19 99:8 111:25

**anywhere**(1) 78:4

**apart**(2) 24:18 28:21

**apologies**(2) 126:14 126:15

**apologize**(4) 40:4 88:25 96:17 126:15

**apparently**(1) 13:19

**appeal**(9) 12:15 17:20 33:12 33:14 34:6 38:7 150:21 152:8 152:13

**appeals**(3) 7:4 12:18 157:13

**appear**(2) 43:12 43:14

**appeared**(1) 22:6

**appears**(4) 37:3 140:5 143:24 160:4

**applicable**(1) 20:18

**application**(5) 37:24 45:8 50:10 61:10 102:15

**applied**(1) 55:24

**applies**(4) 25:20 127:23 128:4 156:19

**apply**(5) 20:20 127:7 157:20 161:5 161:6

**appointed**(4) 13:21 16:24 118:20 162:17

**appreciate**(4) 64:18 91:4 164:15 165:12

**apprise**(1) 126:3

**approach**(15) 5:2 21:24 54:10 55:9 89:17 89:20 91:23 93:3 98:7 107:24 108:20 114:15 114:17 121:3 129:17

**approached**(1) 73:13

**approaching**(1) 19:3

**appropriate**(2) 118:18 126:1

**approval**(1) 152:25

**approved**(3) 6:1 9:23 62:6

**approximately**(4) 9:8 73:24 83:6 112:19

**april**(6) 79:15 79:16 79:19 79:19 80:3 144:23

**are**(137) 5:21 6:15 6:20 7:18 8:5 8:20 8:23 9:3 9:13 10:9 10:11 10:16 10:18 12:13 12:25 13:21 15:25 19:7 20:8 20:19 20:24 22:10 22:11 22:14 23:1 23:24 24:23 26:3 27:12 28:1 28:7 28:18 29:10 29:15 29:15 31:11 31:13 32:16 34:6 34:21 35:18 35:25 36:1 36:15 37:11 37:19 38:9 38:25 40:9 41:19 41:23 41:25 42:11 43:12 46:10 46:10 47:3 47:23 50:4 50:20 51:22 52:2 53:18 53:20 59:21 61:2 62:5 62:10 63:9 64:18 66:23 68:20 70:2 70:4 70:12 70:13 70:14 70:14 73:7 79:11 79:16 92:13 97:11 100:3 100:4 111:7 113:2 113:9 120:23 120:23 120:24 121:5 121:14 121:14 121:16 121:20 122:3 122:6 122:7 123:4 126:6 126:8 130:9 130:18 130:20 131:9 132:2 132:13 132:14 132:22 132:24 133:19 133:24 136:21 137:2 141:14 141:17 144:19 146:23 146:24 147:10 148:13 150:11 151:5 152:6 152:15 155:21 157:7 157:8 157:9 160:9 160:18 161:7 161:18 162:11 163:6 164:4

**area**(1) 8:7

**aren't**(4) 57:9 61:1 63:24 111:8

**argue**(10) 24:21 25:2 28:25 44:4 46:13 46:16 50:17 56:16 132:22 134:11

**argued**(6) 25:24 26:1 32:21 32:23 39:24 50:7

**argues**(1) 25:16

**arguing**(3) 25:3 132:23 132:24

**argument**(20) 13:16 13:18 26:1 26:3 33:12 33:19 34:7 40:23 45:16 45:16 46:18 118:14 125:5 129:19 134:19 136:22 137:9 137:10 152:3 159:12

**arguments**(2) 129:18 164:4

**arise**(1) 122:24

**armada**(2) 41:11 138:9

**around**(6) 3:11 3:12 44:14 93:6 137:20 138:11

**asarco**(17) 20:18 48:18 48:19 50:12 126:23 126:24 127:3 127:25 155:2 155:2 155:8 156:19 157:6 157:13 157:14 157:18 157:24

**aside**(1) 96:2

**ask**(34) 3:15 20:7 26:6 34:17 34:19 35:8 36:20 54:6 58:2 64:17 64:21 67:3 72:14 84:18 89:16 91:20 92:24 100:24 101:3 101:6 106:11 114:24 115:12 121:1 138:21 143:18 145:10 145:16 147:18 150:16 152:15 154:18 158:21 160:23

**asked**(44) 5:3 36:24 57:24 63:7 63:17 68:1 68:2 68:6 71:17 74:21 75:6 78:7 80:21 84:25 89:6 91:11 93:1 95:2 95:6 95:20 95:23 96:3 96:17 98:3 103:10 104:7 104:12 110:18 112:4 112:12 120:6 125:16 125:16 125:20 128:10 143:12 143:13 145:20 146:6 146:10 146:11 152:7 153:10 159:22

**asking**(8) 27:11 39:8 68:4 84:25 101:8 131:9 146:20 146:23 146:24 146:25 156:22

**asks**(2) 67:22 145:13

**aspect**(1) 34:11

**aspects**(3) 8:19 35:4 147:12

**assert**(1) 145:1

**asserted**(1) 115:4

**assertion**(1) 9:1

**assessing**(1) 24:3

**assessment**(1) 50:11

**asset**(2) 2:5 2:13

**assets**(2) 28:21 138:13

**assistance**(1) 163:23

**associate**(2) 83:4 153:4

**associated**(1) 124:20

| Word | Page:Line |
|---|---|
| assumes(1) 23:19 | |
| assumption(1) 34:20 | |
| assure(1) 24:12 | |
| attached(2) 32:17 51:19 | |
| attack(1) 9:15 | |
| attempt(2) 143:15 147:3 | |
| attempting(2) 134:5 162:3 | |
| attend(13) 11:22 57:6 57:12 57:16 66:20 105:20 123:20 125:16 125:21 126:2 147:23 147:23 148:8 | |
| attendant(1) 94:6 | |
| attended(10) 12:17 37:16 57:8 65:24 76:3 79:24 81:25 136:14 148:15 154:2 | |
| attending(9) 34:10 35:2 56:19 104:15 104:25 111:10 111:22 138:17 141:7 | |
| attention(1) 125:8 | |
| attest(1) 45:9 | |
| attorney(10) 86:12 111:22 125:20 126:2 133:17 141:6 141:7 146:3 153:9 153:11 | |
| attorney's(1) 155:4 | |
| attorney-client(1) 53:17 | |
| attorneys(34) 22:6 22:11 24:11 32:2 37:19 37:22 41:14 41:23 41:25 42:6 50:5 56:24 57:2 57:8 57:12 57:14 76:23 82:12 82:14 96:7 125:10 125:15 125:16 126:7 133:6 133:7 136:16 136:17 137:1 137:18 141:5 141:8 153:5 154:19 | |
| attributes(1) 49:1 | |
| auditor(2) 28:5 38:23 | |
| authorized(1) 49:1 | |
| automatically(4) 62:6 62:11 63:10 63:12 | |
| available(1) 51:8 92:13 | |
| avenue(3) 1:30 2:8 2:22 | |
| avoid(1) 22:25 | |
| avoids(1) 133:11 | |
| award(2) 20:7 126:25 | |
| awarded(1) 20:12 | |
| aware(11) 34:12 41:14 57:8 57:14 58:2 59:19 61:1 61:5 90:22 92:20 92:21 | |
| away(1) 19:11 | |
| back(37) 13:10 21:19 23:9 27:22 28:18 36:20 41:3 43:19 43:24 44:8 45:4 46:22 47:7 74:6 74:9 74:13 85:15 88:8 110:25 117:18 118:16 119:9 121:2 126:19 134:3 134:5 140:1 142:7 143:15 149:8 150:8 151:14 152:18 153:22 156:7 160:23 162:10 | |
| backed(1) 106:15 | |
| bad(2) 18:6 119:7 | |
| baker(1) 20:18 | |
| balance(1) 142:5 | |
| ball(2) 18:20 162:10 | |
| bank(18) 2:30 75:15 75:21 96:18 96:19 96:21 97:5 121:19 121:21 122:2 127:22 134:14 136:10 136:11 136:16 161:19 162:23 163:24 | |
| bankruptcy(15) 1:1 1:20 10:16 24:7 24:22 29:7 30:5 48:22 50:6 84:2 96:10 120:17 122:20 133:15 155:14 | |
| barring(1) 158:6 | |
| bars(2) 31:16 156:22 | |
| base(2) 109:24 128:9 | |
| based(7) 7:18 21:6 36:15 36:16 65:1 151:7 151:17 | |
| basically(5) 13:7 13:22 31:9 36:7 144:13 | |
| basis(12) 11:13 13:3 20:7 26:24 31:11 34:2 36:24 45:11 87:8 113:4 120:5 154:17 | |
| bat(1) 118:4 | |
| bates(2) 60:13 67:20 | |
| bear(1) 150:5 | |

| Word | Page:Line |
|---|---|
| bearing(2) 60:13 65:18 | |
| bears(1) 24:13 | |
| became(5) 33:17 41:15 41:16 57:25 163:3 | |
| because(80) 7:24 10:5 13:20 14:14 17:6 18:17 19:24 20:20 25:4 25:5 25:12 26:7 30:9 31:12 32:6 35:5 35:9 39:14 40:9 44:20 47:2 47:9 50:4 50:12 50:15 50:18 50:21 64:2 70:25 75:11 83:17 84:18 85:19 85:23 86:14 88:25 94:10 100:1 101:23 103:19 116:24 117:14 118:25 120:20 121:22 122:23 124:21 125:8 125:22 127:7 128:18 131:1 132:10 132:20 139:7 139:9 140:1 140:12 140:13 143:8 143:25 145:17 147:10 148:10 149:13 151:11 153:16 153:25 155:10 155:15 155:18 156:17 156:21 157:5 157:19 158:6 162:2 162:20 163:10 164:23 | |
| become(5) 25:25 89:8 90:24 124:20 124:21 | |
| becomes(1) 122:25 | |
| becoming(2) 56:5 57:21 | |
| been(78) 5:23 5:24 10:13 15:1 16:13 16:15 18:6 18:24 25:17 25:23 27:25 29:14 37:20 39:18 42:24 43:6 44:19 47:5 47:11 52:10 53:19 67:1 67:10 68:8 71:22 74:25 82:10 81:23 82:14 84:22 84:23 87:20 90:23 91:12 93:7 95:23 95:23 98:13 109:17 110:8 111:6 111:10 111:21 112:5 113:2 118:13 119:6 123:17 124:24 129:18 129:20 130:10 130:14 130:17 131:6 132:10 137:15 139:22 141:8 142:6 142:8 142:10 142:11 142:20 142:22 142:23 143:17 146:12 146:15 157:25 160:2 160:20 160:21 160:24 163:14 164:8 164:20 | |
| before(36) 1:19 3:23 5:24 9:18 12:17 17:19 20:9 20:14 28:13 29:17 33:13 51:14 52:16 57:16 59:18 66:13 67:2 73:20 78:10 80:22 84:10 84:12 86:3 93:6 102:14 102:22 109:14 109:21 110:4 110:25 125:5 125:6 137:20 150:7 151:23 158:10 | |
| began(1) 161:12 | |
| begin(2) 3:23 132:9 | |
| beginning(6) 67:21 77:11 119:9 121:3 133:17 154:7 | |
| begins(1) 58:24 | |
| behalf(6) 6:19 11:14 53:12 64:2 72:1 | |
| behind(1) 95:20 145:3 | |
| being(29) 6:3 6:11 12:20 14:18 14:18 30:22 31:9 39:11 46:18 47:23 62:19 78:10 76:17 98:17 98:3 100:21 101:3 101:16 104:3 105:3 105:25 129:1 130:5 137:11 137:13 137:25 138:17 142:23 158:6 | |
| belief(2) 94:22 94:25 | |
| believe(19) 8:12 15:6 19:14 20:10 57:4 76:9 80:13 86:6 87:9 87:11 94:11 96:23 97:1 100:18 106:14 113:8 123:8 130:20 143:1 | |
| believed(1) 86:8 | |
| believes(2) 11:13 129:16 | |
| belknap(12) 1:26 3:19 66:10 83:16 83:17 85:12 85:15 109:21 126:9 130:2 153:16 159:24 | |
| belknap's(1) 161:25 | |
| below(3) 58:16 58:22 147:22 | |
| bench(1) 108:21 | |
| beneficial(2) 84:20 84:22 | |
| benefit(16) 3:15 8:17 14:11 32:3 45:7 70:19 77:23 81:11 133:2 136:10 153:20 157:3 157:5 157:8 157:9 157:11 | |
| benefited(10) 44:6 45:5 45:15 45:17 46:9 110:4 112:13 150:14 151:24 152:22 | |
| benefits(1) 70:25 | |
| bennet(1) 59:24 | |
| besides(2) 7:14 109:25 | |

| Word | Page:Line |
|---|---|
| bespoke(1) 29:1 | |
| best(11) 5:6 8:20 15:2 24:8 55:4 55:5 63:1 92:10 94:11 102:25 108:15 | |
| bet(1) 39:12 | |
| better(3) 17:11 136:12 141:8 | |
| between(35) 29:4 29:5 31:7 31:11 31:15 31:15 32:1 32:18 32:23 38:8 41:2 43:22 44:12 48:10 49:10 49:13 69:14 90:4 94:19 96:8 127:21 133:3 135:16 139:23 142:19 143:15 147:3 147:20 155:11 155:24 156:4 156:13 158:2 159:6 161:2 | |
| beyond(1) 19:23 | |
| bice(5) 76:21 76:25 154:6 154:10 154:14 | |
| big(12) 16:23 29:1 48:5 59:7 59:11 59:21 91:3 140:8 161:2 161:4 161:5 161:6 | |
| bill(12) 17:7 19:18 36:15 36:24 43:15 43:16 77:12 106:17 106:20 106:25 141:19 154:15 | |
| billed(7) 9:1 9:8 76:15 82:21 97:6 137:17 137:21 | |
| billing(7) 19:12 43:17 79:15 130:9 137:5 137:6 137:7 | |
| billion(1) 7:1 | |
| bills(30) 35:10 35:15 36:2 43:13 43:17 47:4 77:9 78:1 78:7 78:10 78:12 79:3 79:5 79:12 79:16 82:17 83:21 95:3 95:6 95:18 95:21 112:18 113:1 113:9 143:7 159:3 159:24 160:16 160:22 | |
| binder(20) 54:13 58:6 58:7 60:10 62:14 67:17 69:7 73:4 73:13 77:3 78:14 78:24 87:10 114:25 115:2 132:3 138:20 139:21 143:18 144:18 | |
| binding(1) 128:3 | |
| bit(4) 13:11 89:1 119:8 119:8 | |
| blantz(1) 165:22 | |
| blauner(67) 10:24 21:19 23:3 30:17 33:20 34:18 40:21 47:6 86:17 86:22 87:12 87:18 87:23 89:24 90:4 91:15 91:22 92:5 92:16 92:20 93:7 93:16 98:11 98:13 99:12 99:19 99:21 100:10 101:12 101:15 101:25 102:17 102:18 103:10 103:15 103:18 103:25 104:7 104:22 114:3 114:13 114:14 114:24 115:3 115:13 116:1 116:2 116:4 116:10 116:12 119:4 119:15 119:7 119:22 119:23 120:1 120:19 124:23 130:16 143:24 144:10 144:22 145:19 145:23 146:2 162:12 | |
| blauner's(10) 15:11 92:21 105:25 115:18 119:20 132:3 139:21 145:6 145:13 160:19 | |
| blue(1) 145:4 | |
| body(1) 140:21 | |
| bond(6) 121:24 122:1 134:22 161:20 162:24 164:1 | |
| bondholder(8) 11:10 30:23 34:21 34:23 40:7 41:12 134:20 136:8 | |
| bondholders(8) 9:8 32:23 41:2 88:4 96:22 96:25 97:3 134:21 | |
| bonds(7) 7:12 7:23 121:22 145:1 145:21 163:8 163:13 | |
| books(1) 55:9 | |
| boomerang(6) 49:8 155:5 155:10 155:23 157:12 157:23 | |
| border(1) 7:3 | |

| Word | Page:Line |
|---|---|
| both(15) 14:20 16:19 17:15 17:17 73:16 80:9 80:24 84:21 96:5 96:7 98:13 117:5 118:20 122:13 148:10 | |
| bothered(1) 162:18 | |
| botter(18) 2:28 17:5 53:6 53:8 53:11 53:11 53:24 54:4 54:4 71:2 71:3 71:3 71:4 71:8 71:12 72:12 72:13 72:14 | |
| bottom(6) 44:5 63:6 67:20 93:14 102:4 139:6 | |
| bowl(1) 16:5 | |
| box(5) 39:21 84:15 135:3 135:3 135:15 | |
| break(11) 3:12 3:13 88:8 88:8 88:10 114:4 116:19 117:11 117:14 117:16 117:24 | |
| brian(1) 126:15 | |
| brief(12) 9:4 13:18 18:3 101:23 116:24 116:25 117:3 124:4 134:14 152:2 152:2 158:20 | |
| briefly(2) 8:4 53:8 | |
| briefs(2) 76:5 157:21 | |
| bring(1) 138:13 | |
| brings(1) 152:23 | |
| broadly(1) 101:6 | |
| broker's(1) 145:25 | |
| brothers(1) 133:21 | |
| brought(4) 48:10 55:8 83:25 128:10 | |
| brunt(1) 137:24 | |
| bryant(1) 2:29 | |
| bucket(3) 9:18 25:9 25:13 | |
| budget(2) 100:20 100:25 | |
| budgeting(1) 101:9 | |
| budgets(1) 112:6 | |
| bunch(2) 89:6 97:8 | |
| burden(21) 12:24 24:14 29:16 44:19 44:20 134:5 134:5 134:8 134:9 134:10 149:14 150:4 150:5 150:8 150:13 150:17 160:7 160:8 160:15 160:16 160:16 164:11 | |
| bury(1) 150:13 | |
| business(5) 39:7 137:17 137:18 137:19 137:21 | |
| business-related(1) 37:17 | |
| businessperson-to-businesspe    75:6 75:9 | |
| but(143) 6:13 6:20 7:15 10:14 10:21 11:16 12:25 13:22 15:2 16:12 16:15 17:7 18:19 19:3 19:14 19:17 19:23 22:9 24:24 25:17 26:19 26:25 27:24 28:18 29:10 29:12 29:15 31:5 31:15 31:18 32:10 33:7 33:11 34:9 34:19 36:14 37:25 38:2 39:2 39:8 39:15 39:19 40:3 40:6 45:18 46:10 46:23 47:16 48:20 48:23 49:3 49:20 50:9 50:11 51:9 52:9 53:22 54:16 57:2 63:6 65:18 66:22 68:19 69:4 71:17 73:6 74:6 82:15 83:6 83:22 84:12 86:5 86:12 91:4 95:11 97:4 103:6 105:23 111:7 113:2 116:20 118:14 119:9 119:12 123:12 123:17 124:5 124:11 124:13 124:25 126:9 127:9 128:18 128:24 129:5 130:22 132:13 132:15 132:23 133:8 133:23 134:14 134:21 135:2 135:21 136:4 137:2 137:18 137:18 138:6 138:7 138:15 139:10 140:3 141:20 141:24 142:19 143:6 143:23 145:8 147:5 147:11 148:6 148:13 149:6 150:3 151:18 152:20 153:1 153:8 153:22 155:9 155:19 158:9 161:5 161:9 161:5 162:4 162:6 164:4 164:20 165:6 | |
| buys(1) 10:22 | |
| buzzword(1) 29:1 | |
| cadence(1) 152:16 | |
| calculated(1) 5:4 | |
| calculation(1) 19:15 | |
| calculations(1) 36:15 | |
| caliber(3) 22:7 32:9 153:5 | |

| Word | Page:Line |
|---|---|

**california**(1) 128:3
**call**(36) 9:21 27:24 28:2 31:13 32:13 37:15 38:25 39:21 42:6 48:18 51:15 52:2 53:5 67:1 67:7 67:9 80:6 80:18 80:23 81:2 81:6 81:13 81:21 81:24 81:24 82:3 82:6 82:12 86:17 86:20 86:23 90:16 112:1 150:20 153:9 153:12

**called**(1) 16:14
**calling**(1) 86:22
**calls**(19) 28:1 35:9 79:17 79:22 79:24 80:2 107:21 111:8 111:10 111:12 111:17 111:22 123:7 124:6 124:9 124:16 129:3 147:13 154:2

**came**(13) 11:12 15:19 47:14 82:10 99:8 119:17 124:10 124:11 135:2 135:24 154:2 159:23 159:23

**can**(44) 11:2 11:15 11:18 11:18 13:25 14:8 28:13 28:16 38:2 38:16 42:4 45:9 50:11 52:5 62:8 62:9 64:21 64:22 67:17 70:22 72:24 96:2 110:19 112:12 114:5 114:24 115:9 115:9 115:12 119:7 125:12 131:14 131:16 140:12 140:15 140:16 145:14 146:4 149:3 150:18 154:18 157:18 161:22 165:3

**can't**(20) 19:20 25:1 30:5 38:3 42:19 71:4 77:18 77:22 105:7 124:11 125:23 132:19 132:20 132:23 133:12 140:19 149:6 150:8 151:22 156:21

**canada**(5) 7:25 17:16 17:17 29:12 60:21
**canadian**(1) 6:1
**candidates**(3) 37:10 37:20 45:7
**cannot**(10) 30:11 50:7 70:17 77:24 126:25 126:25 131:3 131:13 132:12 133:17

**capacity**(4) 69:23 139:12 140:14 140:17
**capital**(4) 7:10 98:25 99:1 121:16
**capstone**(2) 72:6 72:9
**car**(1) 30:6
**care**(6) 6:10 19:4 20:20 24:9 122:9 129:6
**carried**(4) 7:5 44:19 134:10 138:10
**carries**(1) 23:20
**carry**(3) 29:16 50:18 155:10
**carrying**(2) 14:3 93:15
**case**(110) 1:5 5:21 6:23 7:23 8:6 8:13 8:14 8:16 8:19 8:21 9:6 9:14 9:16 9:17 9:19 9:24 9:25 9:25 10:2 10:2 10:12 11:8 11:8 11:19 15:8 15:9 17:1 17:20 18:5 20:16 20:17 20:17 21:5 23:22 23:12 24:20 24:20 24:21 24:24 25:1 25:3 25:4 25:5 25:16 28:5 28:22 29:2 29:13 30:4 30:19 32:10 35:4 35:25 36:5 37:25 38:24 39:3 43:3 45:20 46:7 47:7 47:13 48:21 49:8 61:25 62:19 64:8 65:8 65:13 66:7 66:10 67:14 67:15 74:4 74:18 76:10 76:16 76:16 76:24 77:11 82:10 82:14 91:22 105:2 106:11 109:10 111:6 112:7 117:2 118:15 118:16 128:9 128:10 128:12 128:23 132:24 133:25 135:15 137:5 141:14 144:8 146:12 146:17 153:9 153:12 154:16 155:10 155:11 155:23 157:21

**cases**(18) 6:25 10:16 13:20 14:6 22:7 24:22 25:17 25:18 29:9 33:16 47:19 48:22 50:8 64:19 134:13 135:1 142:12 142:15

**cassels**(1) 59:25
**categories**(11) 13:6 13:7 19:8 19:23 25:6 28:3 30:2 30:2 36:7 44:21 150:10

**category**(6) 36:4 37:1 37:2 37:13 38:21 43:5

**cause**(3) 35:1 127:18 161:22
**caused**(2) 159:6 162:5
**centre**(1) 2:37
**certain**(5) 95:6 128:13 128:15 161:23

**certainly**(3) 55:17 142:20 164:25
**certification**(1) 165:15
**certify**(1) 165:16
**cetera**(1) 42:14
**chain**(1) 94:2
**challenge**(10) 29:9 45:2 50:8 51:4 120:22 130:25 131:1 132:20 132:23 156:6

**challenged**(3) 45:8 132:18 136:3
**challenges**(2) 20:13 154:13
**challenging**(5) 26:3 26:19 26:21 26:21 26:23

**championed**(1) 30:22
**chance**(6) 7:22 52:6 61:22 64:16 92:2 164:15

**change**(2) 103:6 163:7
**changed**(2) 43:3 43:20
**changing**(2) 13:13 75:14
**chapter**(4) 1:8 61:9 135:1 136:6
**characterized**(1) 25:23
**charge**(11) 28:13 38:16 46:8 125:1 132:25 140:19 149:2 149:6 150:7 151:23 157:1

**chargeable**(1) 37:6
**charged**(12) 30:6 30:11 38:3 130:9 156:16 159:3 163:18 163:21 163:23 163:25 164:2 164:8

**charges**(2) 28:7 29:17
**charging**(6) 6:10 10:22 20:16 34:6 151:10 159:21

**chart**(8) 5:3 5:9 9:4 29:19 29:19 31:4 36:10 36:11

**check**(1) 41:19
**checked**(1) 107:2
**checking**(2) 92:11 103:2
**cherry-picking**(1) 15:5
**chief**(1) 45:6
**choose**(2) 125:13 125:14
**choosing**(2) 88:1 88:4
**choppy**(1) 89:1 96:17
**chose**(2) 69:5 162:20
**christmas**(1) 137:21
**circled**(1) 124:8
**circuit**(2) 12:18 157:12
**circulated**(1) 123:11
**circumstances**(2) 122:11 153:17
**cite**(3) 9:16 20:18 39:1
**cited**(4) 30:4 126:23 157:15 157:21
**citing**(1) 134:13
**claim**(39) 28:17 28:23 28:25 29:6 29:12 31:21 31:22 31:25 31:25 33:22 38:2 40:10 40:13 45:18 104:22 123:2 127:12 127:17 127:18 135:4 135:4 135:8 135:10 135:11 135:14 135:17 135:19 135:23 136:2 136:2 140:12 142:1 142:2 143:25 144:7 144:9 144:12 144:17 145:20

**claimed**(1) 87:20
**claims**(13) 7:6 7:10 7:17 28:21 38:17 38:18 128:19 135:3 135:3 135:15 136:6 144:25 150:25

**clause**(1) 127:10
**clear**(21) 13:1 14:7 18:20 19:15 23:21 27:24 39:19 41:5 45:14 45:19 47:16 50:6 50:25 129:22 135:20 136:1 138:2 141:11 146:5 146:6 154:5

**clearer**(1) 150:19
**clearly**(8) 17:22 17:22 31:23 32:15 140:13 150:24 151:12 157:11

**cleary**(3) 15:22 40:17 59:24
**clerk**(3) 3:2 88:14 118:2

**client**(11) 8:17 16:3 17:11 21:1 21:19 23:3 27:13 27:20 27:22 35:12 69:22

**client's**(1) 25:22
**clients**(5) 35:6 35:21 40:6 42:4 138:10 156:9

**clips**(1) 50:15
**clock**(1) 101:24
**closely**(4) 12:5 120:16 121:23 133:25
**closing**(6) 40:23 51:6 116:16 116:22 118:14 129:24

**co-majority**(1) 163:10
**coding**(1) 13:11
**cold**(1) 15:20
**colleague**(1) 126:10
**colleagues**(3) 4:16 15:7 118:23
**collect**(1) 116:19
**collected**(1) 159:17
**colloquial**(1) 120:12
**color**(2) 13:11 36:25
**color-coded**(3) 13:6 16:23 29:23
**color-coding**(1) 19:21
**colors**(1) 19:22
**columns**(2) 31:6 43:20
**come**(18) 13:10 13:19 16:9 36:17 40:24 44:21 52:18 66:16 66:22 67:1 67:3 71:7 72:1 109:14 117:18 120:13 151:14 153:25

**comes**(4) 27:12 109:17 145:12 153:10
**coming**(2) 47:7 152:16 155:8
**commensurate**(1) 29:22
**comment**(1) 15:11
**committee**(205) 2:26 2:34 6:17 7:7 9:9 9:20 9:21 13:8 13:9 13:12 13:15 13:17 14:4 14:11 14:12 14:13 14:16 14:20 17:5 20:25 23:14 23:15 23:15 23:19 23:23 24:4 25:5 25:7 25:11 25:25 26:20 27:1 27:3 27:7 27:11 27:18 28:2 28:10 28:15 30:10 30:14 30:23 31:15 32:7 34:21 34:23 34:23 35:7 35:9 35:19 37:2 37:5 37:21 38:1 38:5 38:12 38:25 38:5 39:2 39:11 39:12 39:17 40:8 40:8 41:2 41:12 42:1 42:1 42:6 43:22 43:22 46:16 47:1 48:4 53:12 53:16 53:18 61:11 61:14 61:24 62:1 62:7 62:12 63:11 63:13 63:19 63:24 64:2 64:13 64:14 65:7 65:12 65:16 65:22 65:24 66:2 66:3 66:14 66:17 66:20 67:3 67:7 67:9 68:9 68:22 68:25 69:22 70:3 70:6 70:9 70:13 70:15 70:18 70:24 70:24 71:5 71:5 72:6 73:1 75:24 79:17 79:22 79:24 80:2 80:5 80:18 94:7 96:22 96:25 97:2 97:8 97:13 97:14 104:24 105:20 107:8 107:9 110:3 110:13 110:21 111:8 111:22 112:13 118:20 120:11 121:24 122:1 122:17 122:22 122:24 123:2 123:5 123:20 124:1 124:6 125:18 128:25 129:2 129:5 130:20 130:23 131:4 131:4 131:5 131:8 132:18 132:21 133:14 133:18 134:7 134:16 135:20 135:21 135:22 136:1 136:16 136:17 136:20 137:13 137:23 137:24 139:1 139:4 139:11 139:14 140:4 140:14 140:18 141:3 141:4 141:10 148:5 149:25 151:19 151:19 151:25 154:2 155:11 156:3 156:5 156:24 161:20 162:14

**committee's**(7) 39:13 40:18 64:12 65:6 65:11 162:24 164:1
**committee-level**(1) 156:25
**committee-related**(4) 23:24 29:18 71:16 133:1
**committees**(9) 26:4 27:19 62:5 62:10 63:9 112:11 131:11 156:20 158:6

**common**(13) 40:25 44:6 59:7 59:11 59:21 60:2 60:6 140:8 161:2 161:4 161:6 161:7 161:7

**communicate**(3) 52:5 142:21 153:7
**communicated**(3) 99:15 103:18 103:25
**communication**(3) 61:6 90:4 92:4
**communications**(4) 32:1 105:4 142:3
**company**(5) 3:21 3:21 28:21 109:1 112:15
**comparable**(4) 25:2 134:14 134:15 163:24
**compare**(1) 9:4
**compared**(1) 134:12
**compensable**(3) 149:1 149:2 151:10
**compensated**(2) 30:5 38:2
**competent**(2) 130:17 130:18
**complaining**(1) 87:23
**complete**(2) 55:3 108:15
**completely**(3) 33:14 132:16 160:4
**complex**(6) 6:22 9:14 9:20 24:21 24:24 135:1

**complexity**(2) 8:5 9:7
**complicated**(4) 12:9 14:2 135:15 144:7
**comprised**(1) 131:5
**concede**(3) 13:19 19:16 19:17
**concedes**(1) 120:3
**concerning**(3) 91:17 109:13 119:13
**conclude**(3) 48:7 48:8 127:5
**concluded**(1) 155:8
**conclusion**(1) 20:22
**conclusively**(1) 46:12
**conduct**(1) 122:11
**conducted**(1) 39:7
**confer**(2) 84:21 94:7
**conference**(5) 12:17 30:4 52:17 135:25 138:18

**conferences**(8) 17:25 30:4 38:11 38:13 51:8 53:15 118:9 150:17

**confers**(2) 34:11 42:13
**confidential**(3) 105:18 105:19 105:22
**confidentiality**(1) 94:5
**confirm**(2) 42:4 42:5
**confirmation**(2) 8:11 18:18
**confirmed**(1) 9:24
**conflict**(2) 13:15 121:22
**connection**(13) 30:14 33:6 34:24 35:21 44:1 46:11 55:24 110:8 110:12 115:10 127:12 139:13 139:25

**consequence**(4) 22:25 50:5 50:21 92:9
**consequences**(1) 133:24
**consider**(2) 80:21 111:14
**consideration**(3) 57:5 57:11 91:7
**considering**(1) 80:22
**consistent**(7) 30:9 31:10 37:1 37:4 40:7 48:11 137:12

**constituencies**(1) 41:24
**constituency**(1) 157:9
**constituents**(1) 70:2
**consult**(1) 125:10
**consultation**(4) 92:23 124:14 124:14
**consulted**(2) 95:25 144:1
**contact**(1) 42:9
**contain**(1) 49:12
**contained**(1) 108:14
**containing**(1) 84:16
**contains**(2) 38:21 54:20
**contemporaneously**(1) 90:22
**content**(1) 97:10
**contest**(1) 119:14
**context**(2) 41:15 50:6
**continue**(2) 158:5 162:22
**continued**(2) 2:2 111:17
**contract**(21) 10:10 20:20 48:25 49:1 49:9 50:25 51:3 121:21 127:3 127:6 127:21 155:4 155:7 155:9 155:18 155:24 156:4 157:14 157:15 157:16 157:20

**contractual**(1) 128:1
**contrary**(1) 151:17

| Word | Page:Line |
|---|---|

**contribution**(11) 10:20 28:17 38:2 45:18 126:17 133:22 140:13 140:16 149:6 151:25 157:1

**contributor**(1) 8:18
**control**(7) 9:2 153:14
**controlled**(1) 153:14
**conversation**(1) 68:13
**conversations**(2) 94:18 143:21
**cooperate**(6) 83:13 148:1 161:13 161:17 161:18 161:20

**cooperated**(1) 161:19
**cooperation**(10) 47:18 47:22 87:24 145:7 147:3 147:4 147:6 148:6 152:19 161:11

**cooperative**(1) 148:22
**cooperatively**(3) 94:7 94:10 150:22
**coordinate**(2) 146:4 148:1
**coordinated**(1) 143:22
**coordination**(2) 83:13 147:25
**copies**(1) 121:3
**copy**(2) 93:18 108:3
**core**(26) 16:25 34:8 34:13 35:19 41:8 41:9 46:25 55:24 56:5 76:1 89:8 90:10 90:24 102:6 118:19 125:18 125:20 129:21 130:5 131:12 136:13 138:3 138:4 138:5 138:15 162:18

**corey**(1) 2:7
**corporate**(1) 86:6
**corporation**(2) 121:16 125:23
**correct**(92) 15:17 44:15 56:1 56:9 56:13 56:18 57:1 57:7 57:10 59:3 59:25 60:1 60:8 61:4 64:1 64:5 64:14 65:22 65:23 66:12 66:15 68:18 72:22 74:1 74:11 74:19 76:13 76:14 76:17 77:1 77:11 77:17 77:21 78:6 79:23 80:4 80:8 80:16 80:20 81:8 81:10 82:25 83:8 84:5 84:17 85:14 85:22 86:1 87:22 89:11 91:14 92:5 93:23 93:24 94:3 94:4 94:8 94:9 94:15 94:16 94:20 95:4 96:19 96:20 99:6 99:7 99:9 99:10 99:16 99:17 99:19 99:20 99:22 99:23 100:4 100:5 100:7 100:8 100:23 102:24 103:22 106:23 109:2 109:6 109:9 109:12 109:15 110:23 128:6 128:7 148:9 165:16

**corrected**(1) 86:10
**correctly**(1) 94:12
**correspondence**(3) 32:17 38:7 60:13
**corroborated**(1) 25:19
**cost**(6) 9:2 9:10 113:6 127:16 156:15
**costlier**(1) 14:20
**costly**(1) 14:19
**costs**(5) 49:19 127:11 128:25 129:9 155:22
**could**(55) 11:10 15:7 18:2 18:6 18:16 30:2 36:9 36:18 36:20 37:20 38:11 42:25 44:21 47:11 48:8 48:9 51:16 58:5 58:14 60:10 64:18 67:7 67:9 73:5 73:6 79:10 86:2 86:10 86:12 95:12 98:14 98:21 113:6 116:14 116:19 117:14 123:13 126:2 126:3 126:3 129:4 138:20 143:16 143:18 145:10 147:18 150:16 153:1 161:22 162:4 162:13 163:8 163:9 163:14 164:6

**couldn't**(7) 18:12 67:8 78:4 78:10 79:9 86:11 125:22

**counsel**(106) 4:7 4:23 4:25 5:7 5:12 6:4 6:16 9:21 12:3 12:6 13:9 13:24 13:25 14:1 14:8 14:10 14:12 14:17 21:16 26:2 26:12 26:16 26:22 28:10 32:18 37:16 38:12 44:1 47:25 49:20 51:25 56:3 58:18 59:1 62:1 64:7 64:12 64:14 64:15 65:5 65:7 65:10 65:12 65:16 65:22 75:3 78:11 80:6 80:14 80:14 82:3 83:7 86:6 86:7 87:5 88:1 88:4 90:20 90:22 92:21 100:2 103:11 104:1 104:4 105:9 106:11 107:11 116:17 120:1 120:4 123:15 123:25 124:2 125:4 125:10 126:22 126:22 126:23 126:25 129:4 134:23 135:6 135:7 135:9 135:10 136:7 136:14 139:7 139:8 139:23 139:23 140:1 140:2 145:14 147:20 147:21 148:2 148:18 149:21 156:5 161:18 162:24 163:2 163:2 164:1 165:11

**counsel's**(3) 3:15 41:3 64:16
**count**(1) 27:17
**counterparty**(1) 10:11
**countries**(5) 6:25 7:2 7:3 8:21 17:17
**country**(3) 24:23 133:15 140:15
**couple**(10) 4:1 5:8 5:12 9:17 37:12 60:9 96:3 98:1 126:19 130:8

**courier**(1) 99:9
**course**(9) 3:5 15:14 52:3 95:2 142:12 161:16 161:18 161:20 161:21
**court**(222) 1:1 3:3 3:8 3:10 3:25 4:3 4:6 4:10 4:12 4:15 4:18 4:21 5:1 5:5 5:10 5:15 5:18 6:1 7:6 11:25 12:18 15:15 19:6 21:9 21:15 21:21 21:25 22:3 23:10 25:15 26:6 26:11 26:14 26:18 26:25 27:14 27:16 29:3 29:21 29:25 33:1 34:4 34:17 35:11 35:13 36:8 36:10 36:19 36:21 39:22 40:5 40:12 40:15 42:10 43:7 43:10 44:14 44:17 45:24 46:2 48:15 48:20 49:2 49:4 49:8 49:15 49:24 50:2 50:25 51:11 51:17 51:24 52:7 52:11 52:13 52:19 52:23 52:24 53:2 53:4 53:6 53:10 53:24 54:3 54:5 54:8 54:12 54:15 55:7 55:11 55:14 55:17 58:9 58:12 62:17 64:24 69:8 69:11 70:1 71:3 71:7 71:11 72:13 72:16 72:19 73:15 73:18 87:15 88:7 88:12 88:15 88:19 89:19 89:21 91:2 91:6 91:24 93:4 93:9 95:14 97:19 98:8 106:5 107:6 107:12 107:14 107:16 107:19 107:22 107:25 108:19 108:22 113:13 113:19 113:22 113:24 114:2 114:8 114:11 114:14 114:16 114:18 114:20 115:19 115:21 115:25 116:5 116:10 116:13 116:16 116:21 117:4 117:7 117:12 117:16 117:18 118:3 118:8 118:11 121:4 121:7 121:16 121:26 126:25 128:4 130:10 131:10 131:20 131:23 131:25 132:4 132:7 136:3 137:9 138:22 139:16 139:18 139:20 140:22 141:16 142:17 144:5 144:21 144:16 154:9 154:12 154:21 154:25 155:2 155:6 155:8 155:17 155:19 156:2 157:7 157:13 157:15 158:10 158:12 158:15 158:17 158:23 159:1 159:19 164:13 164:17 164:21 165:9 165:12

**courtroom**(4) 1:10 4:19 17:25 21:20
**courts**(1) 133:15
**cover**(4) 89:2 95:17 155:18 157:16
**covered**(2) 38:16 89:3
**covering**(1) 163:23
**craig**(1) 124:8
**created**(3) 44:10 138:14 154:4
**creation**(1) 10:8
**credit**(7) 32:10 33:9 44:3 44:8 44:9 44:10 48:12

**creditor**(4) 7:8 8:20 61:11 140:20

**creditors**(103) 2:27 2:35 7:7 9:9 9:20 23:14 23:16 24:19 25:5 25:7 25:10 25:25 26:4 27:7 27:18 27:19 28:2 28:9 28:12 29:17 30:10 30:14 30:16 30:23 32:7 34:23 35:7 35:9 35:18 37:2 37:5 37:21 38:1 39:2 39:11 39:12 39:13 40:8 40:18 41:12 42:1 42:1 45:17 46:16 47:1 53:13 61:14 64:3 110:3 111:8 111:22 118:20 120:10 122:17 122:21 122:24 123:2 123:5 123:20 124:1 125:18 128:24 129:5 129:10 131:14 131:14 131:5 131:7 131:11 132:18 132:21 133:1 133:14 133:18 134:7 134:16 135:20 135:21 135:22 135:25 136:20 137:12 139:1 139:5 139:11 139:14 140:3 140:14 141:3 141:4 141:9 149:5 151:10 151:18 151:19 152:1 152:2 154:4 155:11 156:3 156:20 156:24 158:5 161:7

**crisis**(1) 37:18
**critically**(2) 33:11 48:19
**criticized**(3) 19:8 19:12 25:17
**cro**(4) 37:9 37:20 149:21 150:1
**cros**(1) 37:9
**cross**(8) 7:2 55:8 89:3 92:25 98:2 100:18 116:3 160:21

**cross-border**(3) 68:10 76:10 134:17
**cross-examination**(8) 30:18 52:21 55:21 89:6 95:3 106:21 108:23 143:12
**cross-examine**(2) 119:4 120:19
**cross-examining**(1) 119:22
**crossover**(2) 7:12 134:21
**crystal**(2) 14:7 18:20
**cunningham**(1) 93:19
**curiosity**(1) 107:7
**current**(1) 69:25
**customary**(1) 123:4
**cut**(1) 81:19
**cutting**(1) 164:17

**daily**(3) 11:3 113:5 120:5
**dan**(9) 90:5 90:7 92:5 93:16 94:2 94:3 94:5 104:3 105:9

**daniel**(2) 1:28 3:19
**darn**(1) 17:11
**data**(1) 106:17
**date**(2) 92:7 165:22
**dated**(2) 102:18 145:17
**dates**(1) 79:18
**david**(2) 2:28 53:11
**day**(45) 8:7 11:6 11:9 11:14 15:10 16:3 16:3 16:16 16:18 16:18 18:20 18:20 29:23 31:8 37:3 37:8 45:4 45:10 45:14 46:5 57:3 77:3 79:17 79:22 129:6 134:6 137:3 137:20 137:20 141:11 141:22 149:9 149:12 149:13 149:14 149:19 150:4 151:11 151:15 152:20 154:6 155:10 160:9 163:9

**day-note-by-day-note**(1) 45:11
**days**(9) 39:7 56:24 57:5 100:6 137:17 137:18 137:19 137:20 137:21
**de-designated**(1) 48:10
**deafening**(1) 154:14
**deal**(6) 19:18 68:10 91:3 118:7 121:11 127:3

**dealing**(2) 14:2 16:20
**dealt**(2) 129:14 157:19
**death**(1) 83:17
**deb**(1) 68:6
**debate**(2) 74:15 155:6

**debenture**(45) 1:25 2:19 3:21 4:23 4:25 20:2 24:7 24:9 56:6 56:8 56:11 56:19 68:2 72:10 74:10 74:15 74:22 76:6 77:13 78:4 79:5 87:20 90:9 90:23 92:10 95:3 95:16 100:21 101:4 102:6 103:1 106:10 106:11 109:7 122:3 122:15 125:12 125:16 125:19 143:8 145:15 154:6 159:3 159:7 161:12

**debenture's**(7) 72:10 77:9 94:6 109:1 154:6 154:19 161:11

**debt**(7) 7:9 10:22 11:7 37:15 47:10 47:10 159:16

**debtor**(6) 33:23 39:25 40:10 40:13 42:24 156:2

**debtors**(25) 1:12 6:7 6:11 6:15 6:19 7:10 9:5 10:10 10:14 10:17 20:15 20:17 30:22 32:23 34:22 40:7 40:17 41:11 45:21 45:25 60:3 135:12 136:6 149:21 156:8

**decades**(1) 10:13
**december**(14) 43:15 76:16 92:7 92:15 109:2 109:4 109:7 109:11 109:14 109:22 110:5 111:1 112:16 143:24

**decide**(4) 16:18 121:12 148:12 164:7
**decided**(1) 84:13
**deciding**(1) 165:1
**decision**(36) 14:16 14:21 16:3 18:8 18:10 23:10 23:15 25:18 25:18 25:19 26:20 26:21 26:22 33:15 33:22 34:5 37:11 37:19 40:3 42:22 43:4 49:5 119:17 123:17 124:13 124:17 124:18 124:19 124:20 126:5 127:4 133:22 138:15 142:2 155:5 157:15

**decision-making**(2) 76:19 76:20
**decisions**(2) 12:16 124:24
**decrease**(1) 161:21
**decreased**(2) 147:10 161:14
**decreases**(1) 152:20
**deemed**(2) 90:9 102:6
**deeply**(1) 35:3
**default**(1) 10:7
**defending**(4) 20:13 127:11 127:16 157:8
**defense**(5) 47:11 143:23 145:13 145:15 155:16

**deficiencies**(1) 162:11
**deficient**(8) 85:16 85:19 85:23 88:2 99:22 99:24 162:6 162:9

**definition**(3) 22:8 157:10 164:9
**degree**(1) 122:9
**delaware**(11) 1:12 1:12 2:22 3:1 3:20 18:1 20:4 21:16 108:25 112:15 122:15

**deliberations**(1) 71:6
**demanded**(2) 12:13 120:7
**demands**(3) 8:15 152:5 152:9
**demonstrate**(4) 6:14 46:9 149:3 163:19
**demonstrates**(2) 10:3 12:1
**denied**(2) 19:25 143:23
**dent**(2) 123:8 124:8
**deny**(2) 138:3 138:7
**depart**(1) 48:25
**departure**(1) 49:1
**dependent**(1) 127:10
**deposed**(3) 62:19 62:22 62:23
**deposition**(30) 10:24 11:24 42:15 42:16 57:16 58:15 60:14 60:15 62:15 62:16 63:4 63:17 63:22 68:12 73:5 74:20 78:9 79:13 82:2 82:23 102:13 105:3 110:18 112:4 113:25 124:24 133:6 147:24 148:8 148:11

**depositions**(16) 17:4 17:6 34:11 35:3 42:17 50:16 51:2 57:9 57:12 57:21 57:25 58:3 104:15 130:1 138:17 148:15

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| describe(2) 46:14 95:14 | | direct(28) 9:17 10:1 18:11 23:12 23:21 | | doesn't(19) 20:20 24:24 49:4 49:20 49:21 | | e-y(1) 126:15 | |
| described(2) 92:16 100:4 | | 24:5 27:23 30:9 37:11 44:23 46:7 52:18 | | 68:23 109:14 111:13 125:13 127:25 127:25 | | each(4) 49:9 51:19 51:21 51:22 52:9 | |

describe(2) 46:14 95:14
described(2) 92:16 100:4
describing(1) 160:11
description(1) 77:16
despite(2) 56:23 68:25
destined(1) 29:8
detail(3) 95:7 95:20 95:23
detailed(1) 160:9
determination(1) 27:22
determine(3) 5:3 11:20 132:14
determined(2) 123:20 157:16
determining(3) 125:1 125:2 159:25
developed(1) 10:13
dewey(58) 2:43 4:20 4:22 19:9 19:10 31:22 37:8 38:10 66:7 67:2 67:12 78:2 78:7 79:3 79:6 79:12 79:25 80:6 80:13 80:17 80:21 82:3 82:21 83:10 83:12 83:17 83:19 84:15 84:18 84:25 87:24 96:3 96:4 106:12 109:21 109:25 118:25 119:25 120:2 144:11 144:12 144:16 144:23 145:5 145:7 147:3 150:16 152:23 152:24 153:2 153:13 153:15 153:21 154:1 154:15 154:16 159:23 159:24
dewey's(5) 82:17 84:4 84:9 111:3 153:24
diaz(1) 1:36
dictates(1) 14:21
did(146) 8:9 12:5 13:5 14:9 14:15 16:19 17:1 17:2 18:17 20:23 24:12 25:12 25:14 27:2 28:14 34:9 34:17 36:23 37:12 45:6 45:7 45:12 45:15 46:9 47:18 53:6 56:2 56:8 56:14 56:15 56:16 57:16 58:2 59:13 59:14 59:16 59:17 61:12 61:13 61:15 61:16 61:17 61:18 63:3 63:20 64:10 65:8 65:13 66:1 66:4 66:6 66:9 66:18 67:15 67:16 68:15 68:20 70:18 71:16 71:17 71:20 71:21 74:6 75:8 75:11 75:25 76:4 76:6 76:7 78:3 78:8 79:6 79:7 80:23 80:24 81:3 81:11 83:11 84:18 84:19 84:20 85:2 85:6 85:7 85:8 85:9 85:11 85:18 86:14 86:19 86:22 87:2 87:13 87:24 92:19 94:12 94:13 94:18 94:21 94:21 96:12 96:13 96:14 97:1 97:12 97:13 97:14 97:16 97:22 97:23 99:14 99:24 100:9 100:12 100:15 100:24 101:1 101:2 101:2 103:19 104:3 104:10 104:12 104:13 104:23 105:1 106:11 106:14 109:8 109:25 112:15 119:4 119:12 120:9 120:19 122:15 125:19 125:21 129:11 135:21 136:22 136:23 138:6 138:10 148:21 151:2 163:21
didn't(77) 16:7 17:6 18:20 21:2 28:5 30:6 32:24 35:8 35:15 36:2 42:17 55:25 59:11 59:13 60:4 60:15 61:11 63:2 63:16 65:25 66:3 66:8 66:14 66:17 68:13 68:19 69:17 71:5 74:9 75:7 75:10 78:2 78:7 78:23 79:5 81:2 81:7 81:9 81:19 82:13 83:10 83:20 84:4 85:1 85:5 85:8 85:17 86:18 86:20 87:8 87:25 99:25 100:1 104:18 109:7 109:10 119:22 126:16 128:13 128:16 128:11 138:5 143:14 143:14 145:9 146:17 146:19 148:20 148:25 150:9 154:3 154:15 162:9 162:19 163:6 164:15 164:17
difference(5) 43:21 44:12 48:5 133:3
different(12) 19:23 21:4 28:1 32:24 43:13 43:14 63:8 79:25 85:1 123:17 137:1 161:4
differently(1) 54:18
difficult(7) 6:24 51:9 74:25 142:22 142:24 145:8 164:22
difficulty(1) 8:6
diligently(1) 84:3
diminish(1) 126:17
dire(1) 133:24

direct(28) 9:17 10:1 18:11 23:12 23:21 24:5 27:23 30:9 37:11 44:23 46:7 52:18 54:18 69:5 108:1 110:7 114:22 132:16 132:17 134:3 140:17 147:16 148:25 149:12 150:12 157:17 160:10 160:20
directed(3) 52:20 83:9 125:7
directing(2) 69:5 82:15
direction(9) 11:18 11:20 18:23 20:25 21:3 52:17 84:25 85:5 85:16 94:23 98:3 98:20 98:21 99:5 99:21 99:24 100:6 100:10 100:16 103:6 123:16 145:9 146:6 162:5 162:6 162:7 162:8 162:19
directly(13) 36:2 105:23 126:21 127:23 128:22 129:6 129:15 131:17 133:2 134:15 140:20 157:2 159:14
director(2) 20:2 20:4
disagree(4) 48:23 59:13 124:21 162:2
disagreed(1) 59:16
disagreement(4) 59:18 86:17 86:25 124:25
disagrees(2) 124:22 124:24
disallow(1) 127:20
disassemble(1) 73:13
disbursements(1) 10:15
discharge(3) 133:10 135:21 146:19
discharged(2) 22:17 22:23
discharging(3) 41:20 143:2 147:14
discount(3) 84:18 129:19 129:20
discovery(5) 17:3 34:11 35:4 42:14 138:15
discrete(1) 29:9
discretion(1) 114:7
discuss(4) 51:15 56:2 75:7 92:12
discussed(5) 84:24 112:18 123:12 125:25 129:13
discussing(1) 74:12
discussion(5) 16:17 47:14 78:9 132:11
discussions(6) 32:19 74:10 74:12 97:17 144:11 144:16
dismiss(1) 138:2
displeasure(1) 145:19
dispute(28) 3:5 6:21 14:20 22:5 22:6 22:7 22:8 22:10 22:12 22:13 25:23 32:22 33:14 37:10 49:22 50:19 51:9 101:7 112:23 113:6 115:11 143:10 146:13 151:2 156:13 157:4 157:17 158:1
disputes(2) 47:9 121:9
disregards(1) 11:16
disserved(1) 111:25
distinction(1) 161:1
distressed(1) 11:7
distributed(1) 66:13
distribution(11) 30:12 38:14 38:16 46:8 132:25 149:7 150:7 151:23 156:17 157:1 165:5
distributions(4) 29:17 149:2 150:18 151:11
district(2) 1:2 25:20
divided(3) 30:1 30:2 63:5
division(1) 109:1
docket(5) 32:22 51:21 44:9 87:19 144:15 158:19 67:19 78:11 78:15 78:15 78:20 78:22 79:2 89:17 89:24 91:21 92:2 92:25 93:6 93:11 98:11 98:12 101:25 108:4 115:3 115:7 115:13 160:24 161:1
document(28) 32:4 52:9 54:20 54:22
documents(12) 40:22 52:2 58:15 73:6 73:16 73:20 84:11 84:15 84:16 91:12 98:7 132:2
does(29) 9:11 11:4 49:8 49:11 51:3 63:9 68:24 70:6 70:9 79:2 90:12 90:14 90:15 95:17 97:5 97:7 124:20 124:21 124:25 125:11 127:3 127:5 127:7 134:7 141:22 133:25 153:25 157:3 157:16

doesn't(19) 20:20 24:24 49:4 49:20 49:21 68:23 109:14 111:13 125:13 127:25 127:25 130:16 140:19 146:5 147:4 148:24 150:3 157:5 157:20
doing(15) 12:4 15:1 15:5 21:4 26:22 35:21 68:4 94:11 98:16 134:23 140:10 140:19 150:24 153:19 162:22
dollar(1) 153:1
dollars(8) 31:14 34:10 43:1 71:16 71:25 138:8 138:16 147:13
don't(85) 6:12 6:12 10:14 16:8 17:21 18:7 18:16 19:18 19:24 20:15 36:12 41:4 44:3 46:12 46:14 47:22 47:23 47:23 48:3 54:15 55:15 55:17 59:5 60:17 60:20 62:19 67:10 70:7 70:10 72:2 72:22 72:23 73:3 75:22 82:8 86:6 88:5 88:7 97:10 100:17 102:16 105:8 105:14 105:15 105:23 107:1 107:4 112:7 113:1 113:11 117:5 122:20 123:2 130:20 130:21 133:7 138:9 138:7 139:8 140:6 141:25 142:3 143:1 145:7 148:3 148:20 148:21 148:23 149:14 150:15 150:18 151:21 152:13 152:21 153:4 153:19 154:16 157:4 157:5 157:10 158:8 158:9 161:8 165:5
done(27) 5:6 5:22 12:11 12:13 12:20 13:5 15:4 16:11 16:12 17:7 37:14 37:20 44:22 76:24 77:19 77:22 90:2 98:15 120:7 129:22 142:6 146:18 150:8 153:20 156:25 160:18 164:6
doubt(4) 6:25 8:4 14:9 32:3
down(15) 9:5 18:23 20:10 20:25 31:16 33:17 47:21 79:20 107:17 113:24 116:11 131:21 143:24 145:14 146:2
dozen(1) 105:4
draft(2) 17:2 38:8
drawn(1) 161:1
drive(1) 84:16
drives(1) 163:1
dropped(3) 13:16 13:18 43:6
due(2) 52:3 74:9
dumb(1) 122:21
duplicate(2) 9:11 130:15
duplicating(3) 41:13 41:23 139:4
duplication(7) 9:3 9:7 19:20 19:24 22:25 84:19 133:12
duplicative(6) 43:11 130:13 130:19 130:20 137:12 162:1
during(25) 5:14 21:22 51:22 53:14 56:16 59:23 78:9 88:10 89:6 95:2 108:10 106:10 106:21 124:24 123:13 128:15 137:6 137:7 137:17 142:12 146:11 147:5 147:24 152:21 154:4
duties(10) 11:16 22:13 23:8 23:20 28:11 122:6 122:7 127:13 133:10 135:21
duty(13) 22:16 22:17 22:22 23:19 24:6 41:21 132:12 142:25 143:3 143:4 146:19 147:14 163:16
dvd(1) 52:5
dx-1(2) 58:6 139:22
dx-10(1) 87:14
dx-2(1) 60:11
dx-20(1) 87:13
dx-3(3) 67:18 69:8 69:10
dx-4(2) 69:7 69:12
dx-5(1) 73:8
dx-6(1) 73:8
dx-7(2) 77:5 77:6
dx-8(1) 78:18
dx-9(1) 79:11

e-y(1) 126:15
each(4) 49:9 51:19 51:21 51:22 52:9 54:21 56:24 66:13 73:6 79:17 79:22 150:9 153:8 153:3 155:25 160:14 163:18
ear(1) 65:1
earlier(12) 48:2 48:6 74:21 91:15 99:16 106:21 128:11 143:13 144:2 144:17 148:2 162:5
early(2) 4:23 13:14
earned(4) 5:24 20:23 21:7 159:8
easier(1) 73:14
easily(3) 37:20 42:25 44:21
easy(2) 142:10 142:11
economic(1) 50:5
economically(1) 50:22
ecro(1) 1:34
edge(1) 16:8
educate(1) 42:19
effect(3) 29:7 49:12 158:3
effective(1) 165:5
efficacy(1) 29:6
efficiencies(2) 14:10 14:12
efficient(2) 9:12 148:11
efficiently(1) 10:2
effort(1) 15:2
efforts(6) 40:22 41:13 41:24 139:4 146:4 165:12
eight(13) 5:23 6:3 6:13 6:25 7:4 12:22 15:6 16:10 128:18 128:18 137:18 137:19 159:4
eight-year(1) 9:16
either(13) 6:6 15:16 31:24 48:16 52:10 71:18 85:8 100:24 101:2 103:25 104:18 111:3 120:1
electronic(2) 1:42 165:17
elements(2) 8:23 10:3
elevated(1) 26:11
ellis(1) 85:3
else(10) 8:12 8:13 67:5 100:20 103:24 103:24 120:11 120:11 123:9 123:11
elsewhere(10) 105:4
email(35) 12:15 47:24 52:1 59:10 60:13 60:17 60:22 68:22 87:11 87:18 90:4 92:4 92:17 93:15 93:18 93:25 94:2 94:14 99:9 99:13 99:16 102:4 102:9 102:12 102:18 103:23 104:2 139:22 144:2 144:24 145:17 145:18 145:25 147:20 148:2
emails(18) 11:23 27:6 27:9 30:19 32:16 48:2 48:5 57:14 105:4 105:8 105:9 105:11 138:20 147:21 147:22 148:22 151:5 152:17
emanuel(4) 2:5 94:20 163:4 163:20
emea(1) 9:5
emerge(1) 47:18
emphasize(1) 140:2
enable(1) 133:5
end(4) 11:8 76:13 82:17 86:20
endeavor(1) 165:7
ending(2) 58:19 86:23
engage(1) 26:22
engaged(3) 34:13 135:6 144:11
engages(1) 28:10
engaging(2) 35:3 137:24
enhancing(1) 105:24
enough(4) 19:25 34:8 142:10 142:11
ensure(1) 22:19
entails(1) 47:2
enter(1) 47:10
entered(1) 42:7
entire(5) 16:22 95:17 124:16 128:9 128:23
entirety(1) 159:21
entities(1) 28:22

| Word | Page:Line |
|---|---|
| **entitled**(11) 28:25 32:24 33:20 53:18 62:6 62:11 63:10 63:11 125:19 127:24 133:19 | |
| **entitlement**(1) 143:11 | |
| **entitles**(1) 121:16 | |
| **entity**(1) 22:15 | |
| **entries**(24) 29:24 36:23 43:12 43:12 43:16 45:1 45:10 79:15 79:15 106:17 106:20 119:13 119:16 120:22 130:14 130:15 130:18 134:6 140:23 140:25 150:15 150:15 151:13 151:16 | |
| **entry**(3) 106:24 150:17 150:25 | |
| **equal**(1) 124:25 | |
| **equinox**(2) 149:24 149:24 | |
| **equities**(1) 21:7 | |
| **esoteric**(1) 44:4 | |
| **especially**(2) 32:8 50:6 | |
| **esq**(10) 1:27 1:28 1:29 2:6 2:7 2:14 2:21 2:28 2:36 2:45 | |
| **essence**(2) 86:14 136:22 | |
| **essentially**(2) 8:21 14:15 | |
| **establish**(4) 28:14 46:12 140:15 151:24 | |
| **established**(2) 86:9 146:12 | |
| **establishing**(3) 24:14 149:14 150:13 | |
| **estate**(8) 4:20 6:11 6:15 7:1 19:13 20:19 24:7 156:6 | |
| **estimate**(1) 135:10 | |
| **estimates**(1) 101:10 | |
| **estimation**(2) 135:17 135:25 | |
| **evaluate**(1) 164:7 | |
| **even**(29) 6:12 10:20 13:22 13:24 14:1 18:7 19:18 24:23 27:24 44:6 46:14 58:2 64:11 65:6 65:11 79:6 82:8 97:11 101:6 117:15 119:16 125:5 125:6 143:6 143:14 146:13 148:13 151:14 163:17 | |
| **event**(4) 6:15 86:7 128:15 156:5 | |
| **events**(5) 126:2 126:3 126:8 128:21 137:1 | |
| **ever**(13) 34:17 57:5 59:19 82:5 82:11 95:20 100:9 100:12 100:15 100:24 101:8 106:11 120:17 | |
| **every**(31) 9:21 15:10 28:2 28:2 30:3 32:4 34:11 36:24 37:17 42:6 44:22 58:7 58:7 65:24 66:20 77:12 80:5 80:17 81:2 81:6 81:13 104:25 105:16 123:25 124:1 128:2 133:5 133:6 133:7 133:13 153:12 | |
| **everybody**(3) 8:12 67:5 136:15 | |
| **everyone**(11) 3:3 3:11 30:20 40:25 117:25 118:3 123:9 123:11 151:9 151:20 165:9 | |
| **everyone's**(1) 9:23 | |
| **everything**(7) 10:6 13:6 17:6 55:3 108:14 120:11 120:11 | |
| **evidence**(18) 51:20 51:23 52:3 93:8 98:14 99:25 119:19 120:20 120:25 130:14 130:17 130:18 144:19 145:24 146:7 149:8 160:3 160:17 | |
| **evolution**(2) 133:25 147:2 | |
| **evolving**(1) 133:20 | |
| **exactly**(6) 44:16 122:14 130:12 155:20 156:7 165:6 | |
| **examination**(10) 54:18 55:9 88:21 89:1 93:1 100:19 108:12 116:12 116:4 116:9 | |
| **examined**(4) 23:11 48:22 84:12 130:2 | |
| **examines**(1) 25:6 | |
| **examining**(1) 52:11 | |
| **example**(9) 42:8 48:9 70:18 70:22 72:9 147:25 148:17 153:13 153:20 | |
| **example's**(1) 152:10 | |

| Word | Page:Line |
|---|---|
| **examples**(6) 18:3 38:9 42:11 72:22 152:6 152:15 | |
| **excellent**(1) 53:19 | |
| **except**(2) 13:4 128:2 | |
| **exception**(4) 51:1 155:7 155:9 157:14 | |
| **exceptions**(2) 13:4 111:21 | |
| **excessive**(2) 14:25 137:2 | |
| **exchange**(6) 41:1 47:24 69:14 69:17 139:23 145:5 | |
| **exclusion**(1) 60:4 | |
| **exclusively**(1) 153:20 | |
| **exercise**(10) 20:15 22:18 26:8 48:14 48:16 122:7 122:9 122:10 127:12 164:9 | |
| **exercising**(1) 12:1 | |
| **exhibit**(22) 52:6 54:21 54:24 54:25 58:7 60:15 89:24 90:4 93:7 95:10 95:15 95:24 98:12 98:13 98:18 98:19 99:18 100:4 100:6 102:17 106:16 106:24 | |
| **exhibits**(6) 51:19 51:21 52:23 98:15 99:16 108:4 | |
| **exigency**(1) 137:14 | |
| **exigent**(1) 39:14 | |
| **expect**(2) 59:5 140:6 | |
| **expected**(1) 15:12 | |
| **expects**(1) 68:8 | |
| **expense**(1) 22:25 | |
| **expenses**(13) 23:22 25:7 25:10 34:10 36:4 43:14 49:17 49:19 77:14 115:5 127:11 127:16 155:16 | |
| **expensive**(1) 6:23 | |
| **experience**(4) 20:3 20:5 23:4 82:3 | |
| **expert**(4) 8:7 43:2 96:10 151:5 | |
| **experts**(3) 18:4 42:14 43:2 | |
| **explain**(3) 33:7 45:5 120:7 | |
| **explained**(1) 151:14 | |
| **explaining**(1) 45:11 | |
| **explains**(1) 46:5 | |
| **explanation**(1) 133:3 | |
| **explicit**(2) 49:14 49:23 | |
| **explicitless**(1) 49:23 | |
| **explicitness**(2) 49:24 156:14 | |
| **express**(2) 119:12 155:17 | |
| **expressed**(1) 49:15 | |
| **expresses**(2) 87:18 119:11 | |
| **expressing**(1) 59:19 | |
| **expression**(1) 120:12 | |
| **expressly**(1) 49:1 | |
| **extent**(2) 10:15 152:9 | |
| **extraordinary**(1) 77:13 | |
| **extremely**(3) 135:14 152:25 153:8 | |
| **eyes**(1) 109:15 | |
| **face**(1) 41:11 | |
| **facing**(1) 14:19 | |
| **fact**(38) 8:23 12:17 15:6 18:15 24:22 25:14 27:22 34:19 35:14 41:1 56:11 57:2 58:2 59:18 62:4 62:9 63:8 67:11 67:14 68:25 70:1 80:5 84:9 92:19 99:15 102:5 105:15 105:19 111:25 112:19 112:23 113:2 119:14 119:15 130:18 145:19 153:24 163:9 | |
| **factors**(1) 8:3 | |
| **facts**(2) 21:7 119:13 | |
| **factual**(1) 120:21 | |
| **failed**(2) 85:20 85:24 | |
| **fair**(2) 34:8 70:12 | |
| **fairly**(1) 29:9 | |
| **fait**(1) 86:15 | |
| **fall**(2) 37:13 45:1 | |
| **falls**(2) 41:18 41:22 | |
| **familiar**(2) 42:18 133:21 | |
| **familiarize**(1) 98:14 | |
| **fancy**(1) 50:16 | |
| **far**(2) 51:22 114:5 | |

| Word | Page:Line |
|---|---|
| **farnan**(1) 17:19 | |
| **favor**(1) 95:10 | |
| **feature**(2) 32:14 33:18 | |
| **february**(11) 1:14 3:1 15:18 15:19 16:12 20:11 29:23 52:17 113:2 113:9 163:12 | |
| **fee**(37) 3:5 5:4 8:24 19:13 20:18 28:5 37:24 38:23 45:8 47:19 50:8 50:9 52:1 89:7 100:13 100:19 100:24 101:2 101:10 112:6 113:6 119:14 119:14 121:9 123:2 124:20 128:9 128:12 131:9 155:21 159:5 160:17 161:14 161:22 162:4 162:11 163:1 | |
| **feel**(3) 40:1 64:6 141:1 | |
| **fees**(128) 5:23 5:25 6:2 6:3 6:13 6:15 6:17 6:18 7:2 9:5 9:15 9:23 10:17 11:3 12:21 20:7 20:10 20:23 21:7 23:1 23:5 23:22 24:3 24:15 24:15 25:1 25:6 25:6 25:9 25:13 25:15 26:23 26:24 31:4 31:5 31:12 31:12 31:13 31:20 34:10 35:25 36:13 41:16 43:5 45:23 46:13 49:6 49:10 49:17 49:22 50:6 50:7 50:7 50:17 50:22 50:24 51:4 59:18 62:6 62:11 62:13 63:10 63:12 63:16 63:18 63:21 71:20 71:23 71:25 72:3 73:24 74:3 74:17 75:7 76:8 77:13 97:3 100:20 101:3 101:9 101:9 101:15 104:11 115:4 126:5 127:1 127:20 127:20 130:9 132:14 132:18 132:20 132:22 132:23 132:24 133:20 134:2 134:12 134:18 134:20 138:9 138:11 140:16 142:12 146:11 150:6 152:25 153:16 154:17 155:4 155:17 155:25 156:2 156:21 156:23 157:4 157:8 157:16 158:3 158:6 159:3 159:3 159:7 159:25 160:1 160:18 161:21 163:19 | |
| **fees-on-fees**(1) 48:19 | |
| **feld**(2) 2:27 53:12 | |
| **felt**(3) 65:18 84:20 111:25 | |
| **few**(11) 3:24 5:8 5:13 9:24 19:4 19:5 44:22 131:18 132:2 137:7 153:2 | |
| **fiduciary**(16) 22:15 23:8 23:16 23:18 24:1 24:6 28:12 41:17 41:18 41:21 47:4 87:4 132:11 141:10 142:25 143:4 | |
| **fifth**(1) 42:9 | |
| **fight**(1) 142:9 | |
| **figure**(4) 18:13 19:20 25:2 121:13 | |
| **file**(3) 28:16 43:15 140:12 | |
| **filed**(6) 25 6:25 31:22 31:22 32:5 32:9 32:11 33:5 33:8 33:8 34:2 37:24 61:9 76:5 87:20 118:16 135:9 135:9 135:11 141:14 143:25 145:20 146:21 152:3 | |
| **filing**(3) 29:7 69:22 102:21 | |
| **final**(2) 50:9 108:9 | |
| **finally**(7) 51:25 67:21 67:22 67:25 68:2 68:6 129:21 | |
| **financial**(2) 14:13 72:6 | |
| **financing**(1) 28:21 | |
| **find**(10) 35:23 42:4 61:22 78:4 78:10 79:9 99:21 99:24 156:19 158:4 | |
| **findings**(1) 160:13 | |
| **fine**(8) 19:14 45:18 115:22 118:22 119:9 123:4 138:6 158:8 | |
| **fineness**(1) 122:20 | |
| **finger**(1) 46:22 | |
| **finished**(3) 117:24 132:15 158:14 | |
| **firm**(35) 4:25 12:7 12:7 17:13 19:10 19:10 19:12 21:18 24:12 31:24 32:8 37:9 40:17 40:18 40:19 66:20 67:3 78:2 85:1 85:3 94:20 101:13 120:7 125:13 136:9 137:13 143:20 144:11 144:16 144:23 145:5 145:7 145:12 153:18 153:21 | |
| **firm-by-firm**(1) 20:7 | |

| Word | Page:Line |
|---|---|
| **firms**(12) 8:5 19:8 38:8 60:2 67:13 83:19 84:21 106:12 106:14 109:24 137:25 138:12 | |
| **first**(30) 10:15 11:11 13:13 16:7 24:6 25:6 27:23 31:20 36:1 37:1 37:8 41:16 43:19 43:20 46:14 49:11 51:18 53:7 69:20 73:24 93:14 98:11 101:7 101:25 121:12 121:15 123:1 135:18 143:21 148:12 148:12 160:10 163:10 | |
| **five**(8) 6:11 7:11 9:15 13:6 87:3 88:9 100:6 137:19 | |
| **fix**(1) 18:5 | |
| **fixed**(1) 135:12 | |
| **flatly**(1) 143:23 | |
| **flip**(5) 95:12 122:5 125:3 126:19 159:12 | |
| **floor**(1) 2:8 | |
| **florence**(1) 165:22 | |
| **focused**(2) 33:21 40:21 | |
| **focusing**(1) 10:20 | |
| **follow**(1) 153:12 | |
| **followed**(5) 25:17 63:12 92:17 94:23 103:5 | |
| **following**(3) 86:25 111:12 129:14 | |
| **foolhardy**(1) 18:24 | |
| **for**(256) 1:2 1:25 2:4 2:12 2:19 2:26 2:34 2:42 3:14 3:20 5:3 5:3 5:23 5:23 6:3 6:3 6:16 6:23 7:4 7:5 7:8 7:14 7:17 7:21 8:1 8:6 8:7 8:16 9:21 10:13 11:3 11:5 11:5 11:7 11:19 11:26 12:8 13:4 13:15 14:3 14:12 14:15 17:13 17:18 17:23 18:6 18:9 18:25 19:1 19:8 19:9 19:12 19:12 20:13 22:2 22:15 23:1 23:16 23:18 24:1 24:10 25:2 25:24 26:1 26:12 26:16 27:1 29:8 29:16 31:2 33:6 33:9 34:3 34:6 35:2 36:3 37:22 37:25 37:25 39:4 39:24 40:19 40:20 41:5 43:5 43:15 43:43 44:9 44:10 48:10 48:12 48:14 49:9 49:17 51:6 51:7 51:8 51:25 53:23 54:9 55:11 55:18 55:19 58:18 59:1 64:6 64:11 64:21 65:6 65:11 66:8 66:11 73:23 74:16 74:21 75:6 75:12 76:10 76:12 77:13 77:22 78:1 79:8 79:15 80:2 80:5 81:21 81:23 81:24 83:13 84:3 84:20 84:21 87:3 87:4 87:7 87:19 90:20 90:22 90:23 92:9 94:20 95:3 95:12 95:14 95:16 95:17 95:23 96:17 100:6 101:13 102:12 102:13 102:25 104:7 105:2 105:3 105:3 105:10 105:24 107:1 107:7 107:23 109:7 111:6 111:11 112:5 112:18 112:23 113:1 113:4 113:9 114:13 115:17 116:4 116:6 118:6 118:16 118:18 118:19 118:24 119:3 119:5 120:16 120:18 123:1 124:7 126:1 126:9 127:16 127:19 128:2 128:14 128:17 128:23 130:9 130:24 131:3 131:9 131:10 131:22 132:25 133:13 135:25 136:6 136:15 136:18 138:11 140:1 140:2 140:12 140:19 141:19 142:15 142:19 143:7 143:22 145:5 145:13 145:14 145:21 146:7 146:10 147:12 148:4 148:19 148:20 148:21 149:20 151:20 151:25 152:20 152:25 154:3 154:13 155:16 155:25 156:22 156:25 157:2 157:5 157:7 157:8 157:9 157:22 158:9 159:4 159:10 163:3 163:12 163:22 163:22 163:23 164:15 164:25 165:5 | |
| **forced**(3) 40:3 84:9 84:19 | |
| **foregoing**(1) 165:16 | |
| **foresaw**(1) 52:24 | |
| **form**(2) 126:18 162:19 | |
| **formal**(3) 47:17 146:8 146:14 | |
| **former**(1) 80:12 | |
| **formerly**(1) 3:21 | |
| **forth**(8) 18:10 47:7 140:1 142:7 143:15 150:12 152:18 160:17 | |
| **forward**(4) 51:5 51:7 71:8 137:25 | |
| **forwarding**(1) 147:21 | |
| **found**(4) 25:8 25:11 25:14 36:3 | |

| Word | Page:Line |
|---|---|
| **four**(12) 6:10 7:2 9:19 24:5 28:7 30:1 36:7 46:1 63:5 67:13 84:3 106:12 | |
| **four-and**(1) 60:25 | |
| **fours**(2) 24:20 134:15 | |
| **fourth**(3) 24:15 39:2 43:5 | |
| **framed**(2) 10:6 164:25 | |
| **frankly**(3) 118:24 123:16 124:19 | |
| **freedom**(1) 125:14 | |
| **freight**(3) 50:18 50:24 158:9 | |
| **friday**(3) 13:19 137:16 137:19 | |
| **friend**(1) 158:24 | |
| **from**(90) 4:14 4:23 6:9 9:5 10:22 11:9 19:9 20:1 21:4 21:18 23:10 24:18 26:24 28:21 32:8 32:8 33:2 37:3 37:8 37:19 41:18 42:4 42:21 47:16 47:20 48:25 49:8 50:16 53:25 59:10 60:18 62:6 62:11 63:10 63:12 63:19 66:19 71:14 75:3 75:11 77:1 77:12 77:12 78:1 79:25 81:11 81:24 82:5 82:11 84:1 84:4 85:5 89:3 92:5 93:15 94:17 100:10 100:13 100:16 102:18 103:22 105:9 107:11 109:14 109:17 110:25 126:5 129:6 131:10 139:6 142:21 145:2 145:22 148:14 149:1 149:16 149:17 153:25 154:15 155:23 156:1 156:3 156:22 158:6 159:2 159:8 159:23 159:24 160:4 165:17 | |
| **front**(7) 54:22 61:19 73:16 78:15 108:3 108:4 158:21 | |
| **fulfillment**(1) 110:16 | |
| **full**(4) 8:18 9:23 11:18 46:17 | |
| **fully**(6) 40:25 129:10 129:23 130:3 136:23 138:23 | |
| **function**(2) 56:20 56:23 | |
| **fund**(1) 119:6 | |
| **fundamental**(1) 24:5 | |
| **further**(2) 88:5 113:11 | |
| **g-u-i-n**(1) 126:14 | |
| **game's**(1) 16:5 | |
| **gave**(13) 18:9 20:24 38:5 44:3 44:8 44:9 44:10 56:5 73:1 78:20 83:12 129:24 129:24 | |
| **general**(21) 21:19 44:24 46:14 87:6 87:7 92:12 92:16 102:21 103:4 103:19 104:1 104:5 104:7 104:13 104:21 144:1 146:4 149:4 152:1 162:4 | |
| **generally**(7) 28:12 30:16 38:1 45:17 61:25 111:21 112:11 | |
| **generated**(1) 122:1 | |
| **generic**(1) 141:3 | |
| **get**(46) 10:18 15:15 15:23 18:11 22:20 28:3 32:8 32:9 33:14 33:23 52:3 52:5 64:16 74:6 74:9 74:13 84:3 84:3 114:9 114:4 114:5 123:16 123:23 123:23 125:5 125:6 140:16 145:6 145:9 147:4 150:1 151:20 151:21 153:16 153:18 153:21 154:15 156:21 156:25 157:4 157:5 158:10 158:12 160:1 160:6 165:7 | |
| **gets**(8) 10:19 32:9 35:22 49:6 51:4 128:12 153:14 158:3 | |
| **getting**(5) 14:11 113:4 138:17 153:23 156:22 | |
| **ginger**(1) 1:34 | |
| **give**(5) 12:5 11:18 21:2 32:10 33:9 61:21 74:22 84:18 113:16 120:14 146:5 146:14 | |
| **given**(18) 11:6 11:14 15:2 18:23 57:5 57:11 83:21 93:2 112:6 112:15 118:13 125:1 125:2 125:17 143:13 143:17 152:6 152:15 | |
| **gives**(2) 11:17 20:12 | |
| **giving**(3) 32:3 48:12 98:4 | |
| **glossy**(1) 50:16 | |
| **goal**(2) 60:2 60:6 | |
| **goes**(10) 23:9 32:12 69:25 136:20 136:21 137:10 149:22 149:25 150:19 151:20 | |
| **going**(84) 5:11 6:14 12:11 13:10 15:24 16:6 17:12 18:5 20:6 21:23 27:12 30:7 36:6 42:3 42:19 43:19 44:7 45:10 45:16 45:16 48:4 48:4 50:15 50:17 50:18 50:20 54:24 57:15 62:16 64:16 64:20 68:2 68:6 68:9 72:1 73:4 73:7 78:18 84:1 88:25 89:1 89:3 101:24 104:10 104:11 113:2 114:9 114:10 114:12 116:23 117:1 117:1 118:14 118:17 118:22 126:15 129:7 131:10 132:2 133:7 133:8 134:1 134:3 136:3 138:1 139:11 139:24 143:9 144:24 144:25 147:14 148:5 148:7 148:9 148:10 148:13 148:17 149:8 155:9 155:18 155:21 156:15 164:22 | |
| **going-forward**(2) 34:2 87:7 | |
| **gone**(4) 31:16 45:4 48:13 110:25 | |
| **good**(40) 2:36 3:3 3:9 3:10 3:17 3:18 4:6 4:13 4:15 4:18 4:21 21:10 21:11 21:11 21:13 21:15 21:17 25:18 47:5 51:13 51:14 53:8 53:10 54:5 55:23 88:23 88:24 108:25 114:24 116:1 116:2 118:5 119:10 128:3 131:24 131:25 137:19 154:12 162:21 165:10 | |
| **got**(10) 3:16 21:3 50:23 54:15 83:20 85:15 89:2 116:21 130:21 135:13 | |
| **gotten**(1) 15:8 | |
| **gottlieb**(1) 40:17 | |
| **govern**(1) 129:17 | |
| **governed**(3) 50:12 23:24 24:2 | |
| **governing**(5) 23:8 23:22 121:10 121:11 127:6 | |
| **graciously**(2) 19:10 135:12 | |
| **granted**(5) 17:16 90:8 90:23 102:5 102:10 | |
| **granular**(2) 35:4 47:1 | |
| **granularity**(1) 30:8 | |
| **grateful**(1) 118:10 | |
| **gray**(1) 48:9 | |
| **great**(4) 20:23 116:18 117:19 117:20 | |
| **greater**(2) 31:11 31:14 | |
| **gross**(7) 1:19 21:11 59:4 90:8 102:5 131:24 140:6 | |
| **grossly**(2) 11:16 14:18 | |
| **ground**(2) 47:15 147:4 | |
| **group**(7) 8:21 30:23 38:13 41:12 47:11 134:20 136:8 | |
| **guaranteed**(1) 7:25 | |
| **guarantor**(2) 121:18 127:23 | |
| **guard**(1) 122:18 | |
| **guess**(2) 114:3 116:5 | |
| **guiney**(3) 118:22 126:12 126:14 | |
| **gump**(3) 2:27 27:18 32:9 37:21 40:18 53:11 65:22 66:13 81:6 97:9 97:13 111:12 | |
| **had**(83) 7:22 8:14 8:15 8:19 9:20 11:9 13:2 15:10 16:2 16:18 17:7 17:15 17:16 18:5 18:22 19:22 22:1 28:20 29:12 30:3 33:13 34:8 34:13 35:1 35:5 35:9 41:9 42:24 44:11 52:6 60:2 65:18 66:19 66:25 67:3 74:20 76:15 78:9 80:24 81:15 81:20 81:24 83:21 85:24 86:8 87:20 89:7 95:23 90:23 91:12 91:15 92:1 93:11 95:3 95:21 101:15 112:1 117:14 119:25 120:7 122:2 123:10 123:17 123:17 124:2 124:6 134:17 134:20 134:22 135:3 135:7 136:8 136:16 136:17 138:9 142:8 142:9 142:19 143:13 144:14 153:18 153:21 | |
| **hadn't**(3) 86:9 102:22 145:23 | |
| **half**(1) 16:7 34:9 43:1 87:4 138:8 138:16 147:13 | |
| **hand**(10) 4:1 5:6 5:7 5:8 5:11 55:10 98:6 143:9 153:15 154:3 | |
| **handed**(6) 33:17 36:10 54:20 102:1 121:2 157:25 | |
| **handful**(1) 105:3 | |
| **handing**(1) 93:6 | |
| **handled**(3) 10:2 10:2 137:13 | |
| **handout**(1) 154:19 | |
| **happen**(2) 17:12 18:22 | |
| **happened**(8) 16:6 18:4 40:2 42:20 109:15 120:7 120:19 129:6 | |
| **happening**(2) 27:20 120:8 | |
| **happens**(2) 147:1 153:13 | |
| **happy**(1) 36:14 | |
| **hard**(4) 7:1 15:1 15:22 28:21 | |
| **harder**(1) 73:4 | |
| **harrisburg**(1) 1:38 | |
| **has**(56) 6:1 7:12 10:19 13:19 19:10 20:4 24:11 25:23 28:11 28:14 28:21 28:22 32:13 37:22 39:19 40:10 40:13 43:15 43:16 44:19 48:20 49:5 49:14 49:15 50:23 53:17 67:5 73:16 86:5 100:1 111:17 111:21 112:1 119:1 119:10 119:11 120:1 120:17 120:25 125:14 127:1 129:20 130:14 134:4 134:10 139:21 140:24 149:17 155:20 156:25 157:2 159:7 160:7 160:21 160:24 161:24 | |
| **hasn't**(2) 25:17 50:10 | |
| **hat**(2) 23:17 24:1 | |
| **hats**(1) 23:14 | |
| **hauer**(2) 2:27 53:11 | |
| **have**(225) 5:8 5:23 5:24 6:7 8:11 10:15 10:21 11:10 11:23 12:5 12:15 13:15 13:17 13:20 14:10 14:17 14:23 15:1 15:7 16:11 16:12 16:13 16:15 16:17 17:7 17:12 18:6 18:20 18:24 19:18 19:22 20:14 20:20 22:9 25:24 26:1 27:25 29:13 30:2 31:4 31:16 32:16 33:7 34:9 35:21 35:22 36:6 37:3 37:20 39:1 39:25 42:8 42:17 42:25 43:20 44:3 44:21 45:3 45:4 45:21 45:25 46:9 47:5 47:11 49:7 50:7 51:18 52:10 52:20 52:22 53:19 53:21 54:21 55:11 57:19 57:20 58:8 60:6 60:9 61:19 64:7 64:20 64:20 64:22 65:1 65:18 67:1 67:7 67:8 67:9 67:10 69:19 71:7 71:22 73:22 74:22 74:25 75:4 79:5 81:20 81:23 82:1 82:14 84:22 84:22 84:23 86:2 86:10 86:12 88:5 90:8 93:5 93:11 93:13 94:22 95:23 96:2 98:13 98:18 101:18 102:5 104:2 107:6 108:4 109:13 109:20 109:24 110:4 110:7 110:8 112:2 112:5 112:14 113:11 113:14 113:20 116:3 116:19 117:14 119:7 119:15 121:3 121:7 122:23 123:7 123:13 123:15 123:25 124:12 124:16 124:24 127:6 127:7 128:13 128:14 128:16 128:17 128:23 129:1 129:1 129:18 130:10 130:16 131:6 132:5 133:1 133:5 135:11 135:19 137:15 138:2 139:3 140:22 140:23 141:20 142:9 142:10 142:11 142:22 142:23 143:11 143:13 143:17 146:18 146:21 147:13 148:12 150:11 150:15 150:23 151:13 151:14 151:23 152:21 153:7 153:9 153:11 154:17 155:20 156:15 157:25 158:7 159:5 159:6 159:16 160:18 160:20 162:4 162:13 163:8 163:9 163:14 163:15 164:6 164:8 164:15 164:23 | |
| **haven't**(9) 15:4 52:5 73:20 97:4 107:3 110:25 111:3 111:10 119:18 | |
| **having**(9) 50:13 59:19 65:5 65:10 67:12 121:21 122:22 148:10 148:12 | |
| **he'll**(1) 17:19 | |
| **he's**(10) 20:1 23:4 41:17 119:6 119:9 119:10 119:10 126:16 154:11 154:12 | |
| **head**(1) 80:12 | |
| **headed**(1) 47:14 | |
| **heads**(1) 15:2 | |
| **heaney**(55) 14:6 20:1 30:18 51:15 52:16 52:21 53:5 54:7 54:9 54:24 54:25 55:18 55:20 55:23 58:5 58:14 62:20 62:23 64:16 72:6 72:20 73:5 73:21 87:16 88:11 88:23 89:23 92:1 97:20 101:23 107:7 107:11 107:13 107:15 107:17 111:13 119:9 122:12 123:10 123:18 124:15 124:17 124:18 125:22 125:25 126:10 126:11 129:12 130:4 136:15 143:6 154:8 154:12 154:15 160:11 | |
| **heaney's**(5) 11:24 32:17 75:17 146:13 151:17 | |
| **hear**(2) 20:1 53:25 | |
| **heard**(8) 7:20 53:7 68:10 97:4 136:14 138:11 145:2 152:3 | |
| **hearing**(10) 18:18 31:8 50:13 60:21 61:1 61:3 61:7 113:4 165:10 165:13 | |
| **hearings**(1) 11:22 | |
| **hedge**(1) 119:6 | |
| **held**(7) 7:9 11:15 51:2 142:13 142:14 159:17 163:11 | |
| **help**(5) 14:8 14:17 50:21 62:1 132:6 | |
| **helped**(1) 17:2 | |
| **her**(4) 122:11 122:14 123:21 155:3 | |
| **here**(60) 3:5 8:5 8:23 10:17 11:9 12:25 14:5 16:10 19:14 20:18 21:2 21:7 22:10 23:3 27:18 28:4 29:20 30:12 32:4 35:17 36:7 37:7 37:19 42:8 43:13 46:24 48:6 53:20 70:17 77:18 87:23 88:9 105:3 105:12 118:14 121:12 126:1 127:7 127:18 128:19 128:24 129:9 131:5 131:17 132:6 135:24 140:11 141:18 141:19 144:2 144:19 145:6 147:19 148:6 154:1 154:10 154:14 162:11 164:5 165:4 | |
| **here's**(2) 38:9 148:16 | |
| **hereunder**(1) 127:13 | |
| **hesitate**(1) 36:3 | |
| **hide**(1) 162:9 | |
| **high**(1) 35:25 | |
| **higher**(2) 17:7 47:20 | |
| **highest**(1) 7:14 | |
| **highlight**(3) 138:19 151:2 153:2 | |
| **highlighted**(5) 36:25 126:20 135:7 137:3 151:13 | |
| **highlighting**(1) 14:23 | |
| **him**(26) 26:11 52:22 52:22 59:13 59:16 73:17 86:22 86:23 86:25 87:5 87:21 88:1 94:19 99:15 103:20 103:20 104:10 104:13 104:14 143:12 145:20 146:14 161:25 162:18 | |
| **himself**(2) 81:21 119:23 | |
| **hindsight**(16) 15:15 16:11 21:2 26:7 26:17 26:20 128:10 122:18 129:16 129:22 132:10 132:12 132:13 133:10 164:5 164:9 | |
| **hire**(6) 24:11 85:1 86:12 86:13 87:25 | |
| **hired**(5) 81:16 83:17 85:12 86:3 87:25 | |
| **hiring**(1) 85:15 | |
| **his**(42) 10:24 15:11 17:5 22:18 52:22 60:22 68:13 73:13 87:25 88:2 103:10 103:19 103:25 118:23 119:1 119:11 119:12 119:23 119:24 120:4 120:4 120:20 122:11 122:13 122:25 123:20 124:14 125:9 126:22 129:12 130:5 145:19 145:21 145:24 146:17 154:14 155:3 159:12 162:16 162:21 163:4 163:5 | |

| Word | Page:Line |
|------|-----------|

**historically**(1) 128:21
**history**(2) 116:9 135:1
**hits**(1) 144:15
**hoc**(12) 6:17 9:8 96:22 96:25 97:2 121:23
121:25 134:20 136:8 161:20 162:23 164:1

**hodara**(1) 149:23
**hold**(4) 7:9 116:23 134:19 153:22
**hold-up**(1) 84:9
**holder**(5) 10:22 11:11 74:17 75:1 163:10
**holders**(24) 6:19 7:17 11:5 11:5 11:7 11:8
11:19 12:8 12:13 12:25 12:16 14:3 14:18 16:1
17:18 18:6 20:24 24:7 24:9 68:16 68:20
84:20 93:22 94:11 142:13

**holdings**(2) 99:25 146:7
**holdless**(1) 7:10
**holds**(2) 7:11 7:11
**holmes**(2) 25:19 44:24
**home**(1) 163:1
**honest**(1) 106:14
**honestly**(1) 63:1
**honor**(273) 3:7 3:18 3:23 4:13 4:22 5:3
5:20 6:21 6:24 7:5 8:1 8:8 8:10 8:15 8:18
8:23 9:1 9:11 9:13 9:16 9:25 10:4 11:23
12:3 12:13 12:19 12:24 12:25 13:4 13:13
14:5 14:22 15:4 15:5 15:13 15:17 15:20
15:23 16:16 16:18 16:21 16:23 17:8 17:15
17:22 17:25 18:3 18:8 18:15 18:19 19:4
19:14 19:25 20:6 20:7 20:9 20:22 21:6
21:17 21:22 22:5 23:13 24:21 25:22 26:9
26:17 27:5 27:11 28:20 29:19 29:23 31:4
31:6 32:7 32:22 33:14 34:3 34:15 34:18
35:6 36:9 36:18 37:7 38:4 38:10 38:20
39:9 39:16 39:19 40:1 40:2 41:16 42:8
42:18 43:5 43:19 44:15 44:16 44:18 44:21
45:19 46:4 46:20 46:23 47:6 47:16 48:5
48:7 48:14 48:18 50:9 51:5 51:10 51:14
52:3 52:4 52:15 53:3 53:4 53:5 53:8
53:14 53:15 53:23 54:6 54:10 54:13 54:17
55:6 55:8 55:15 55:20 58:7 58:11 62:15
64:21 69:10 71:2 71:4 71:9 72:12 73:12
77:4 77:6 78:19 88:6 88:17 88:20 89:17
89:20 91:1 91:9 91:22 93:2 97:18 98:7
98:9 101:19 106:4 107:5 107:18 107:20
107:24 108:20 113:12 113:20 114:6 114:9
114:15 115:17 115:24 116:3 116:18 117:5
117:9 117:10 117:13 117:20 118:5 118:20
118:25 119:1 119:12 119:15 119:21 121:1
121:12 123:17 123:24 124:4 124:5 124:6
124:19 125:3 125:11 127:4 128:8 128:10
128:12 128:24 129:16 129:18 130:12
130:19 130:23 131:18 132:1 132:9 133:21
133:21 134:3 134:15 134:25 135:24 136:19
137:4 137:10 138:1 138:14 138:19 138:20
139:15 139:17 139:19 140:9 140:24 141:13
141:19 142:10 143:18 143:19 144:18
144:20 145:11 145:16 146:8 147:1 147:19
148:16 149:8 149:11 149:12 149:16 149:17
150:2 150:19 150:22 151:4 152:2 152:9
152:16 152:24 154:5 154:16 154:19 154:24
156:17 157:13 158:4 158:14 158:19 159:2
159:13 160:23 161:9 162:17 164:3 164:6
164:7 164:12 164:14 165:8 165:11

**honor's**(9) 7:20 26:10 33:15 33:22 40:3
42:21 43:4 52:17 119:22

**honorable**(1) 1:19
**hope**(2) 123:21 123:22
**hopeful**(1) 53:21
**horwitz**(17) 14:6 20:3 107:21 107:22
107:23 108:3 108:25 113:14 113:17 113:18
113:21 113:23 113:24 114:1 122:13
123:19 160:11

**hot**(1) 150:21
**hotel**(1) 36:6
**hour**(1) 76:15

**hourly**(3) 8:4 12:21 36:16
**hours**(11) 9:1 39:5 82:21 82:24 83:1 83:4
137:2 137:8 153:3 153:4 164:8

**housekeeping**(1) 51:15
**how**(46) 3:15 5:4 10:1 10:2 12:2 17:19
27:2 27:11 35:8 36:17 38:24 45:7 45:11
45:14 46:5 46:14 47:12 52:24 52:25 80:22
81:11 81:16 105:19 114:5 116:21 117:22
131:14 134:9 141:5 143:16 146:4 147:17
147:18 147:25 148:1 149:22 149:25 150:13
151:8 151:15 152:21 153:13 159:25
159:25 161:12 163:21

**however**(2) 14:7 114:7
**humbled**(1) 40:1
**humility**(1) 8:8
**hundred**(1) 31:13
**hung**(3) 86:20 86:24 103:20
**hypotheticals**(2) 161:10 161:11
**i'd**(19) 3:24 4:1 19:3 31:18 48:7 48:8
64:18 72:14 89:16 91:20 92:24 98:6
115:17 119:3 121:1 132:22 145:16 152:15
155:1
**i'll**(20) 3:14 3:15 4:4 5:6 5:7 5:8 5:12 6:5
28:3 29:12 33:7 48:2 52:23 61:21 71:9
101:23 103:6 115:23 123:16 158:19
**i'm**(79) 5:11 10:3 19:3 20:17 21:13 21:23
36:13 40:1 40:1 40:3 42:19 43:13 48:4
48:4 48:15 48:15 50:9 51:12 53:21 54:24
57:19 59:22 60:12 62:15 63:14 64:20
64:24 71:8 73:9 75:3 75:12 75:16 75:19
78:1 79:7 79:18 81:19 82:1 88:25 89:3
90:3 102:4 103:5 113:14 113:16 113:18
116:9 116:23 117:1 117:1 118:14 118:17
118:22 121:24 122:19 122:19 122:20 125:6
126:12 126:15 130:1 132:1 134:13 135:20
139:10 139:17 139:18 139:19 141:19
146:25 151:18 151:19 153:5 154:22 155:14
155:23 156:3 158:14 164:22
**i've**(13) 31:2 39:18 54:15 54:20 89:1 94:2
94:5 108:3 118:13 130:19 130:21 142:20
145:2
**idea**(12) 11:9 17:12 34:13 101:15 122:23
138:3 144:14 146:9 146:10 146:11 147:14
157:18
**identified**(8) 31:2 37:12 45:1 134:6 150:10
150:10 150:14 152:20

**identify**(1) 13:2
**ignored**(1) 83:13
**ignores**(1) 161:15
**imagine**(3) 110:19 123:18 124:4
**immersed**(1) 34:12
**impact**(5) 123:14 127:5 128:1 128:22
**impacted**(2) 37:15 129:15
**implicate**(1) 27:13
**implication**(1) 89:13
**implications**(2) 44:4 50:4
**implicit**(1) 136:25
**imploded**(1) 4:24
**important**(12) 11:4 33:17 48:20 52:13
57:21 57:25 118:11 126:16 144:10 148:19
156:17 164:24

**importantly**(1) 164:4
**imposed**(2) 22:14 125:13
**improper**(1) 144:5
**imprudent**(2) 25:24 26:1
**inapplicable**(1) 24:25
**inappropriate**(3) 92:10 102:25 104:9
**inc**(1) 1:8
**include**(2) 97:24 155:15
**included**(1) 20:10
**includes**(3) 11:21 33:4 33:5
**including**(7) 44:1 49:19 91:16 118:9
127:10 127:11 159:22

**incorrect**(1) 164:4
**increases**(2) 147:7 152:19
**incredibly**(2) 9:14 18:24
**incumbent**(1) 143:1
**incur**(2) 34:9 84:19
**incurred**(18) 6:19 20:10 20:24 25:7 25:10
26:24 74:17 97:3 100:21 101:4 101:16
127:1 132:14 134:18 150:23 155:16 159:3
163:19
**incurrence**(3) 26:23 72:3 75:1
**incurring**(2) 71:20 71:25
**incurs**(1) 49:18
**indemnification**(4) 20:13 159:10 159:11
159:22

**indemnified**(1) 127:24
**indemnify**(4) 49:17 127:15 154:23 156:10
**indemnifying**(3) 17:13 155:13 155:15
**indemnity**(9) 11:18 21:2 21:3 49:16 49:16
85:24 86:9 100:1 154:18

**indenture**(141) 5:13 6:2 6:5 7:12 7:23
10:5 10:7 10:8 10:9 10:10 10:12 10:23
11:5 11:15 11:17 12:4 13:14 13:21 13:24
14:7 14:9 16:24 20:12 22:14 22:20 23:1
23:5 23:13 23:22 24:3 24:4 24:6 24:10
25:4 26:3 26:16 27:1 30:25 32:13 33:12
49:2 49:3 49:4 49:11 49:11 49:14 50:3
51:1 54:9 54:25 55:23 61:10 61:14 61:25
62:4 62:5 62:9 62:10 63:8 63:9 63:18
64:7 64:15 65:19 66:23 69:23 71:14 81:14
81:18 88:3 89:8 90:9 107:21 107:23
110:11 110:19 110:20 115:5 118:18 118:19
119:24 121:5 121:13 121:14 121:17 121:19
122:4 122:8 123:1 123:4 123:6 126:20
127:1 127:5 127:8 127:19 127:21 127:23
129:3 129:11 130:3 130:6 130:24 131:1
131:2 131:3 131:6 131:8 131:13 131:27
133:19 138:23 146:20 152:4 156:11 156:12
156:19 156:20 156:22 156:24 157:21
158:1 158:22 159:13 160:7 160:12 160:15
161:16 161:16 161:17 162:2 162:8 162:9
162:14 162:15 162:18 162:21 163:5 163:15
163:16 163:20

**indentured**(2) 3:20 9:19
**independent**(2) 29:11 57:19
**indicated**(1) 148:7
**indicates**(1) 139:7
**indicating**(1) 78:11
**indication**(1) 60:17
**indifferent**(1) 50:22
**indiscernible**(3) 72:15 81:18 150:20
**individual**(5) 23:18 59:6 61:25 125:24
**individually**(1) 44:5
**industry**(2) 20:3 20:5
**infer**(1) 70:2
**information**(11) 72:10 95:1 105:10 120:14
120:21 142:11 143:11 143:17 145:5 152:6
152:7
**informed**(5) 53:15 74:2 89:7 89:11 89:14
**initial**(2) 160:5 160:22
**inside**(2) 115:2 115:2
**insist**(1) 122:21
**instance**(1) 123:1
**instances**(3) 38:10 38:21 72:25
**instruct**(2) 61:13 138:5
**instructed**(4) 91:16 92:19 94:2 94:5
**instruction**(2) 64:22 103:7
**instructions**(1) 93:1
**instrument**(2) 121:10 121:11
**insured**(1) 136:9
**integrity**(2) 22:8 106:15
**interaction**(1) 119:25
**intercompany**(9) 29:5 29:6 31:25 40:14
135:4 135:8 135:11 135:14 135:17

**intercreditor**(1) 68:11

**interest**(16) 7:20 7:21 8:22 24:8 32:16
32:19 32:21 33:5 37:16 38:18 46:17 142:1
150:21 163:8 163:9 163:11

**interested**(2) 2:42 129:7
**interesting**(1) 164:21
**interests**(44) 7:16 24:13 24:16 24:17 24:18
25:12 25:14 27:3 27:3 27:7 27:8 28:15
28:19 29:18 30:11 30:15 30:24 30:24 31:2
31:24 37:4 37:6 37:14 40:16 46:15 59:23
70:2 70:7 70:10 70:13 70:14 94:11 130:6
134:8 136:8 136:9 136:23 137:15 138:9
147:11 149:1 149:4 149:15 162:3

**internal**(5) 27:5 40:22 74:10 74:12 143:9
**interviewing**(5) 37:9 37:9 37:18 37:20 45:6
**into**(24) 13:6 30:1 30:2 30:7 40:13 40:19
47:10 51:20 51:23 52:2 63:5 78:14 78:23
82:10 91:6 93:8 97:10 98:14 104:11
115:18 122:19 138:13 146:9 146:15

**introduced**(1) 51:21
**introductions**(1) 3:24
**inured**(1) 133:2
**inures**(1) 157:2
**invading**(1) 71:6
**invested**(2) 122:8 130:3
**investment**(2) 7:13 24:10
**invoices**(4) 5:22 84:10 84:12 84:14
**invoicing**(1) 43:6
**involve**(1) 15:25
**involved**(18) 8:14 8:17 12:18 14:11 15:10
16:4 16:9 17:20 17:24 18:6 18:13 18:25
76:19 111:6 129:25 132:17 161:19 161:24

**involvement**(1) 16:22
**irony**(3) 12:7 12:7 12:11
**irreconcilable**(2) 22:10
**irrelevant**(2) 15:13 132:16
**isn't**(77) 56:3 56:6 56:17 56:20 57:3 57:6
57:12 57:17 57:21 58:3 58:18 59:25 60:18
62:7 62:12 64:8 65:8 65:13 65:22 66:21
67:4 69:2 69:15 70:12 70:15 70:19 71:1
74:4 74:6 74:10 74:22 76:3 76:16 76:25
77:19 77:23 78:5 80:3 80:6 80:19 81:14
82:6 83:7 83:14 83:23 84:7 84:11 84:16
85:12 85:21 85:24 86:4 87:1 87:12 87:21
88:2 102:15 102:22 103:11 103:16 105:5
105:5 105:12 105:13 106:1 106:21 109:25
110:9 110:13 110:22 111:3 111:18 111:23
112:24 113:4 113:7 154:10

**issuance**(1) 134:22
**issue**(50) 8:24 8:25 10:21 17:10 18:11
19:11 23:11 27:25 28:1 29:14 30:21 30:21
30:22 31:1 32:15 33:7 37:15 37:25 37:25
38:19 40:25 41:7 41:15 42:12 44:25 48:19
48:19 48:21 59:11 65:15 67:3 70:22 71:20
123:22 123:22 129:21 136:19 138:7 138:24
139:10 139:24 142:13 142:20 144:6
144:10 148:4 150:22 153:9 154:18 161:4

**issued**(4) 7:24 98:21 138:15 155:6
**issuer**(5) 10:14 121:14 121:18 154:22
156:10

**issuer's**(1) 159:15
**issuers**(5) 49:17 121:17 127:14 156:8
159:11

**issues**(58) 6:24 8:15 9:20 9:22 14:2 14:14
18:4 27:12 29:8 29:11 29:11 29:15 32:18
35:24 40:9 41:4 42:12 44:6 56:16 59:6
59:7 59:21 59:21 63:24 64:7 64:11 65:5
65:6 65:10 65:11 66:16 67:15 68:10 68:11
80:18 92:22 104:24 121:11 122:23 130:8
134:18 134:21 134:24 135:2 135:5 135:7
140:7 140:8 144:25 151:2 153:2 161:2
161:2 161:5 161:6 161:7 164:24 164:25

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **it's**(95) 12:10 13:20 14:24 15:1 15:13 15:15 15:17 16:1 16:4 19:24 20:15 22:7 22:8 23:7 23:9 24:10 25:19 26:1 26:17 27:24 36:14 38:15 39:10 45:25 46:7 48:15 50:6 50:8 51:3 55:23 60:13 63:5 63:5 63:21 64:6 66:7 66:10 67:20 68:4 70:12 71:24 72:22 73:14 77:9 78:22 82:17 91:3 93:7 105:11 105:19 105:22 108:25 110:11 115:20 115:21 115:22 118:11 119:23 123:2 123:3 123:3 128:10 130:22 132:1 131:14 131:15 132:10 133:23 139:9 140:11 140:11 140:13 143:1 143:16 148:4 148:23 149:1 150:3 150:3 150:5 153:6 153:6 153:23 154:5 156:17 157:12 164:9 164:19 164:19 164:21 164:22 164:22 164:23 165:1 165:6 | | **just**(74) 3:8 3:10 3:14 3:24 5:25 6:20 11:12 12:2 13:15 15:4 15:8 18:19 19:4 19:17 19:24 31:2 36:18 36:22 38:5 38:9 44:7 46:6 51:15 53:22 60:9 64:3 76:6 78:23 83:4 89:2 94:1 95:12 96:2 100:3 107:6 107:14 109:4 111:13 113:7 113:16 114:10 114:25 116:19 116:22 117:21 122:20 123:21 125:7 130:22 130:23 131:18 133:9 135:18 136:8 137:11 138:19 144:15 144:18 145:10 147:11 147:17 148:14 151:22 152:16 153:1 157:12 157:18 161:9 161:19 162:23 163:17 163:17 164:14 164:18 | | **law**(79) 1:25 2:19 3:21 4:23 4:24 10:12 10:13 17:10 20:2 21:6 23:7 25:18 32:8 46:19 56:5 56:8 56:11 56:19 66:20 68:2 68:6 72:10 72:10 74:10 74:15 74:22 76:6 77:9 77:12 78:4 79:5 87:20 90:9 90:23 92:10 94:6 95:3 95:16 100:21 101:4 101:13 102:6 102:25 106:10 106:11 109:1 109:7 122:3 122:14 122:20 125:12 125:13 125:15 125:19 128:4 128:7 129:17 133:20 134:1 137:13 138:12 140:14 140:17 143:2 143:5 143:8 145:15 147:15 150:12 154:6 154:6 154:19 159:3 159:7 160:9 160:15 161:11 161:12 164:10 | | **lied**(1) 106:6<br>**lien**(6) 6:10 10:15 10:22 20:16 159:16 159:21<br><br>**light**(1) 10:7<br>**lightly**(1) 23:6<br>**like**(33) 3:24 4:1 12:21 19:3 27:4 31:18 40:1 41:11 44:11 48:1 48:7 48:8 50:13 54:13 55:19 74:3 76:6 87:24 89:16 91:20 92:1 92:24 98:6 106:6 115:17 117:10 119:3 121:1 126:7 132:9 136:8 138:19 155:1 161:19 162:23<br><br>**likely**(4) 59:5 59:6 140:6 140:7<br>**likewise**(1) 20:4<br>**limit**(1) 64:24<br>**limited**(4) 91:4 121:15 121:19 127:22<br>**line**(8) 15:3 15:3 63:7 119:13 119:16 120:22 151:15 151:15 |
| **it00003378**(1) 60:14<br>**item**(2) 15:3 15:3<br>**item-by-item**(1) 13:3<br>**items**(4) 100:3 100:3 123:12 123:13<br>**its**(65) 4:23 5:20 8:2 11:16 20:13 20:22 23:8 23:18 23:24 23:25 24:1 24:1 24:6 24:11 24:14 24:6 28:10 29:16 29:17 32:1 35:15 41:9 41:12 41:21 41:21 49:4 49:6 49:20 51:4 61:10 64:7 69:23 83:19 86:6 100:2 110:12 110:12 121:22 122:2 122:8 125:10 125:12 125:14 125:15 125:16 125:20 127:12 127:19 127:20 129:4 132:18 134:22 134:23 135:21 136:9 140:13 143:3 147:20 155:12 158:3 160:8 163:8 163:9 163:11 163:16 | **justice**(5) 15:21 16:25 18:9 59:5 102:5<br>**justified**(1) 45:12<br><br>**katherine**(1) 2:36<br>**keep**(9) 3:14 91:17 103:10 104:14 104:22 114:10 114:11 142:22 158:21<br><br>**keeps**(1) 13:13<br>**kennett**(2) 2:15 2:16<br>**kept**(3) 103:15 104:8 104:9<br>**kevin**(1) 1:19<br>**key**(1) 17:1<br>**kicked**(2) 138:11 151:1<br>**kimono**(1) 120:12<br>**kind**(2) 3:14 121:9<br>**king**(1) 2:38<br>**kirkland**(2) 85:3 86:6<br>**kirklin**(1) 1:29 4:17 4:18<br>**knew**(11) 27:6 30:25 35:6 46:23 99:12 112:4 132:20 138:4 138:7 147:17 147:18 | **lawsuit**(1) 49:13<br>**lawyer**(27) 27:21 27:23 27:24 27:25 32:12 41:2 41:3 52:11 56:14 67:6 75:11 75:12 82:1 112:1 118:22 119:10 123:18 123:19 123:24 142:21 145:13 147:20 148:3 148:11 148:12 151:22 162:17<br><br>**lawyers**(48) 8:7 9:15 14:7 14:8 17:25 26:25 27:1 27:6 27:19 28:2 39:4 41:9 41:11 41:13 57:24 58:2 66:19 67:2 67:12 79:25 80:9 80:9 80:17 80:22 81:1 82:6 104:25 105:19 106:6 110:12 110:20 113:3 118:24 120:17 123:7 123:10 123:21 124:6 124:9 124:12 125:12 125:14 126:8 130:2 133:12 138:9 146:17 161:24 | **layers**(1) 120:16<br>**lays**(1) 24:5<br>**lead**(6) 4:23 4:25 76:12 76:18 77:25 79:8<br>**leaders**(1) 27:19<br>**lean**(3) 162:22 163:22 163:25<br>**leaning**(1) 162:23<br>**learned**(1) 73:23<br>**least**(5) 9:15 35:16 90:18 90:22 99:11<br>**leave**(1) 87:19<br>**leaves**(1) 130:8<br>**leblanc**(1) 40:19<br>**leboeuf**(9) 2:43 66:7 79:12 79:25 80:13 80:17 80:21 83:10 109:21<br>**lecture**(1) 40:2<br>**led**(3) 39:12 86:17 145:9<br>**left**(4) 22:1 37:9 43:14 116:21<br>**left-hand**(1) 115:2<br>**legal**(20) 6:24 9:22 15:9 15:13 22:13 49:10 83:11 97:3 101:3 101:9 101:9 120:7 123:19 123:19 124:25 127:19 127:20 150:11 151:6 155:25<br><br>**lehman**(1) 133:21<br>**lender**(1) 2:44<br>**length**(1) 112:7<br>**less**(2) 21:7 162:10<br>**let**(9) 3:15 5:16 8:3 26:6 51:15 90:2 98:15 101:6 160:6 | **litigator**(2) 122:19 122:21<br>**little**(6) 73:4 89:1 117:15 119:8 119:8 119:25<br><br>**lived**(1) 117:2<br>**llp**(2) 2:20 2:27<br>**loan**(4) 29:5 29:7 40:14 135:8<br>**lockbox**(8) 18:12 33:20 33:23 33:24 34:25 35:23 39:24 42:24<br><br>**lodestar**(1) 8:2<br>**long**(7) 73:2 101:24 116:22 117:6 117:22 142:20 164:20<br><br>**longer**(1) 141:23<br><br>**look**(43) 16:11 30:3 30:15 31:15 37:10 38:10 39:5 42:12 47:19 48:1 51:5 51:7 58:14 63:4 63:6 67:21 73:7 77:2 87:10 89:16 89:23 91:21 92:25 93:14 93:25 95:10 99:18 101:25 102:3 102:17 108:9 110:25 125:6 130:20 137:4 140:22 140:24 141:5 143:15 144:19 147:2 154:5 164:6<br><br>**looked**(8) 39:12 60:14 78:1 79:8 106:21 111:3 130:19 155:19<br><br>**looking**(5) 58:22 79:12 90:2 154:22 159:2<br>**looks**(1) 27:21<br>**loop**(7) 91:17 103:11 103:16 104:8 104:10 104:14 104:22<br><br>**loose**(2) 3:14 78:22<br>**lose**(1) 155:4<br>**loses**(1) 49:10<br>**lost**(1) 121:8<br>**lot**(8) 9:3 17:1 17:4 39:13 116:21 132:10 156:18 161:24 |
| **itself**(10) 8:6 8:16 14:21 35:3 35:15 53:16 84:7 121:21 127:16 | **know**(48) 3:12 3:15 4:22 10:23 11:10 16:4 16:5 16:8 18:7 27:2 27:11 28:6 46:23 47:2 47:12 48:11 67:10 71:7 90:2 92:1 96:9 96:15 97:2 98:15 105:23 107:1 107:9 111:6 112:7 113:1 113:9 118:18 120:13 120:20 124:4 128:18 128:20 129:25 132:21 133:7 143:14 143:14 145:7 155:12 163:9 165:4 165:5 | **leaves**(1) 130:8 | | | |
| **j.b**(1) 94:19<br>**james**(7) 1:27 2:6 2:20 4:8 4:14 54:6 54:9<br>**jamie**(1) 147:22<br>**january**(12) 6:9 13:1 13:14 15:20 20:11 31:12 31:13 43:16 112:24 145:17 145:22 145:23<br>**javier**(3) 58:17 58:17 58:24 59:1 59:4 90:5 90:12 90:19 90:19 93:18 94:7 94:8 94:10 94:19 140:5 146:2 146:2 146:5<br><br>**jim**(1) 68:7<br>**joanne**(1) 2:14<br>**job**(1) 128:25 131:14 137:16 161:15<br>**join**(2) 32:24 34:5<br>**joinder**(3) 33:3 44:1 44:10<br>**joinders**(12) 32:19 33:3 33:4 33:5 38:7 43:25 47:23 48:12 76:5 141:14 141:18 142:1<br>**joined**(1) 21:13<br>**joint**(6) 12:9 36:11 47:11 143:23 145:13 145:15<br><br>**jointly**(4) 1:6 127:14 154:23 156:10<br>**jones**(1) 59:24<br>**joyce**(1) 2:13<br>**judge**(18) 1:19 1:20 9:16 9:18 9:22 17:19 21:11 21:13 26:10 37:11 59:4 90:8 90:8 102:5 131:24 132:21 140:5 140:6<br><br>**judgments**(1) 119:1<br>**july**(4) 61:1 73:23 74:2 154:15<br>**jump**(1) 89:3<br>**jumps**(1) 32:11<br>**june**(3) 16:15 79:2 79:5<br>**junior**(3) 81:1 96:15 141:7<br>**jurisdictions**(2) 6:4 60:4 | **knowing**(4) 7:12 35:5 35:9 35:22<br>**knowledge**(22) 35:17 35:18 35:19 35:20 46:24 46:24 46:25 47:1 55:4 55:5 57:19 104:17 104:18 104:20 107:13 108:16 109:13 109:20 109:24 110:2 110:7 112:14<br><br>**known**(1) 41:16<br>**knows**(3) 10:25 131:3 159:2<br>**komboti**(5) 80:14 81:11 96:5 96:8 118:25<br>**kramer**(1) 2:44<br>**lack**(2) 87:24 161:12<br>**lacking**(1) 50:3<br>**lag**(1) 143:8<br>**landscape**(1) 43:3<br>**language**(6) 49:5 49:12 49:16 128:3 156:1 158:3<br><br>**large**(5) 11:11 140:21 149:5 151:18 152:1<br>**larger**(2) 14:19 139:5<br>**larry**(6) 96:5 96:9 96:11 96:13 96:15 118:24<br><br>**last**(15) 13:12 14:13 36:4 52:1 55:1 67:21 72:5 92:9 93:25 102:3 115:12 124:7 139:6 144:24 144:24<br><br>**lastly**(2) 48:7 145:16<br>**late**(3) 35:16 47:18 152:18<br>**later**(4) 82:10 94:19 128:18 128:19<br>**latest**(1) 13:18<br>**laughter**(6) 22:4 26:15 48:17 49:25 116:7 116:15 | **lecture**(1) 40:2 | **levels**(2) 35:17 46:24<br>**levin**(1) 2:44<br>**liability**(5) 12:9 16:14 127:12 127:17<br>**liable**(2) 11:15 127:19<br>**liar**(1) 86:23<br>**library**(1) 16:17 | **level**(21) 28:7 30:7 34:14 35:16 35:23 39:4 42:23 44:22 47:22 49:23 50:19 141:6 146:23 146:25 147:6 147:9 148:6 148:13 152:19 152:19 156:14 | **litigant**(1) 155:3<br>**litigate**(3) 7:22 50:24 158:8<br>**litigated**(1) 136:3<br>**litigating**(2) 50:5 50:22<br>**litigation**(10) 34:24 49:9 51:4 76:5 138:10 147:24 155:22 156:15 159:5 159:8<br><br>**lien** |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**lowenthal**(85) 1:28 3:6 3:7 3:9 3:17 3:18 3:19 4:1 4:4 4:7 4:11 4:14 4:16 4:19 4:22 5:2 5:6 5:10 5:11 5:16 5:18 5:20 12:1 15:17 19:7 21:9 26:10 26:13 36:10 52:4 52:8 53:1 58:17 59:14 60:18 60:21 60:25 65:4 67:1 67:2 67:22 68:13 69:14 69:17 74:2 90:5 90:7 90:12 91:16 92:5 92:19 93:2 93:16 94:3 94:17 94:23 102:18 103:10 103:15 103:23 103:24 104:18 105:10 111:21 118:23 120:4 120:5 120:6 120:9 120:11 120:15 120:16 121:2 122:22 123:23 124:13 125:21 125:25 126:2 126:10 129:23 162:21 163:22 163:23

**lowenthal's**(4) 61:3 61:6 102:3 126:10
**lower**(2) 50:14 51:2
**loyalty**(1) 22:16
**lump**(1) 19:22
**lumped**(1) 13:6
**lunch**(1) 117:8
**ma'am**(1) 108:5
**mace**(1) 1:34
**macquarie**(4) 11:12 142:15 163:11 163:11
**made**(30) 12:20 12:25 18:20 30:8 34:5 37:11 42:15 67:7 67:9 90:23 96:4 100:18 102:22 123:18 124:13 124:17 124:19 124:24 125:4 126:22 128:24 129:18 136:1 138:2 143:7 146:5 146:6 157:6 160:6 162:25
**madison**(1) 2:8
**maintain**(2) 20:8 28:23
**maintains**(1) 53:16
**major**(1) 101:13
**majority**(8) 11:18 68:16 74:16 75:1 93:22 126:9 142:15 163:17

**make**(31) 3:24 10:5 13:7 13:7 15:1 16:3 17:15 21:1 27:21 31:9 32:11 33:18 41:10 41:20 43:24 44:8 45:13 45:16 45:17 48:11 50:11 51:8 78:23 81:15 92:20 114:4 132:15 139:3 143:2 144:8 161:8

**makes**(3) 14:23 23:21 50:25
**making**(4) 14:17 105:10 118:13 161:15
**malik**(3) 12:6 163:3 163:21
**malpractice**(1) 17:13
**man**(2) 119:10 119:10
**manage**(6) 22:18 41:10 41:21 133:11 141:9 143:3

**managed**(5) 22:24 136:12 136:18 139:3 142:6

**management**(5) 2:5 2:13 74:22 92:23
**managers**(1) 37:18
**managing**(4) 20:2 20:3 47:3 106:11
**manifestly**(3) 70:3 70:6 70:9
**many**(13) 12:4 14:13 35:8 38:24 45:10 45:10 63:24 80:22 105:19 121:11 123:12 141:5 159:25

**march**(4) 16:12 90:7 113:10 165:21
**mark**(10) 54:24 58:6 60:10 62:16 67:17 69:7 69:12 78:18 79:11 87:11

**marked**(7) 73:7 89:24 91:21 93:7 98:11 98:12 139:22

**market**(3) 1:11 8:5 11:7
**marshalled**(1) 8:9

**masella**(83) 1:27 4:8 51:13 51:14 51:18 51:25 52:4 52:9 52:14 52:15 52:20 53:3 53:5 54:6 54:10 54:13 54:16 54:17 54:19 55:6 55:7 88:16 88:17 88:20 88:22 89:16 89:20 89:21 89:22 91:8 91:10 91:20 91:25 92:24 93:5 93:10 97:21 98:6 98:9 98:10 101:18 101:20 101:20 102:1 107:18 107:19 107:20 107:24 107:25 108:2 108:18 108:19 113:14 113:16 113:20 114:8 114:9 115:20 116:1 116:3 116:14 116:18 116:24 117:20 117:23 118:4 118:5 118:9 118:12 121:5 121:8 126:12 126:14 128:6 130:12 131:21 131:23 158:18 158:19 158:24 159:2 159:20 164:13

**massive**(1) 6:22
**match**(1) 106:24
**material**(1) 95:24
**matter**(25) 16:7 33:3 55:18 76:19 92:22 104:8 104:8 104:14 104:23 105:16 118:11 118:24 119:9 124:25 128:5 129:7 130:24 143:2 151:9 154:7 159:4 162:4 163:20 165:1 165:18

**matters**(26) 24:17 30:15 37:15 39:14 51:16 91:17 103:11 103:16 103:17 105:18 120:10 120:17 125:20 126:7 129:13 129:14 125:19 129:23 130:9 130:25 131:14 131:15 131:16 131:16 162:16 163:23

**maximizing**(3) 7:17 60:2 60:6
**may**(83) 3:3 5:2 5:7 5:8 19:4 21:23 27:10 27:25 28:20 32:22 39:13 39:14 54:6 54:10 54:12 64:12 65:7 65:12 65:18 65:20 66:23 67:5 76:13 77:12 77:25 78:1 80:3 80:3 82:14 83:9 84:24 85:6 85:8 85:10 85:12 85:15 86:3 87:25 88:15 88:17 88:19 89:17 89:19 89:20 91:22 93:2 94:14 98:7 98:8 99:11 100:9 100:12 100:15 107:17 107:24 107:25 108:20 108:22 113:14 113:24 114:15 114:17 114:20 116:10 118:3 121:3 124:5 125:9 125:10 125:15 129:6 132:1 134:25 135:24 143:20 143:23 145:11 145:22 149:2 149:3 158:21 160:23 162:13

**maybe**(4) 105:4 122:13 123:23 124:12
**mcconnell**(3) 18:4 18:7 42:15
**meal**(1) 28:6
**mean**(12) 37:18 63:9 81:19 121:4 123:8 125:11 126:17 131:12 150:1 150:3 152:25 161:8
**means**(8) 6:8 24:25 25:1 62:5 62:10 113:6 125:11 133:10

**measure**(1) 23:7
**measured**(3) 15:15 15:18 132:12
**measuring**(1) 132:13
**mechanics**(1) 34:15
**mediation**(15) 7:6 15:20 16:2 31:7 47:25 48:1 48:3 68:3 68:7 68:10 68:17 139:9 139:25 148:4 148:17
**mediations**(3) 7:2 17:19 76:3
**mediator**(1) 68:8
**meet**(3) 16:17 34:11 42:13
**meeting**(18) 27:2 27:11 28:2 37:14 37:17 38:25 42:1 42:2 65:24 66:3 66:14 66:17 66:20 67:4 67:8 67:9 75:6 75:10 104:25 105:20 122:24 124:2 125:16 125:17 125:18 128:13 128:14 133:5 133:7 133:13 141:7

**meetings**(14) 30:14 39:3 66:2 97:13 97:14 107:9 123:8 123:13 129:2 136:14 136:16 136:17 141:5 154:2

**mellon**(6) 96:19 96:21 97:6 161:19 162:23 163:25

**member**(24) 23:15 23:16 23:23 25:7 25:10 25:25 34:21 35:18 46:25 48:4 61:11 68:9 68:23 68:25 134:16 139:1 139:11 139:14 140:3 140:14 140:18 141:9 148:5 151:19

**members**(7) 35:7 53:18 80:24 133:18 133:19 136:13 139:4

**membership**(2) 23:19 94:6
**memorial**(1) 137:9
**memory**(10) 57:13 57:18 57:23 58:1 58:4 95:22 97:25 100:11 100:14 101:5

**memos**(1) 31:24
**mention**(2) 42:15 63:16 75:21
**mentioned**(3) 75:13 75:14 160:24
**merely**(1) 137:23
**middle**(1) 76:24
**midway**(1) 140:5
**might**(19) 5:13 11:6 11:8 11:14 29:13 42:9 47:5 68:11 81:16 82:1 110:4 110:4 110:8 117:15 122:24 131:18 132:5 132:6 143:17
**milbank**(8) 15:23 40:18 40:19 59:24 101:13 119:5 136:9 164:1

**miller**(12) 2:21 4:11 4:12 4:13 80:12 81:20 96:5 96:9 96:11 96:13 96:15 118:24
**million**(47) 5:25 6:4 6:7 6:8 6:8 6:9 6:12 6:18 6:18 6:20 7:18 7:19 9:9 9:12 14:20 25:1 31:5 31:19 34:9 38:19 43:1 45:13 45:21 45:22 73:24 76:8 97:3 97:6 104:11 121:23 121:25 121:25 134:12 134:18 136:12 136:18 138:8 138:16 142:4 147:12 148:23 148:24 154:3 163:24 163:25 164:2

**millions**(2) 71:15 71:25
**mind**(3) 42:7 56:19 121:1
**mine**(3) 116:24 117:2 117:5
**miniscule**(1) 9:6
**minor**(1) 13:4
**minute**(2) 35:25 106:13
**minutes**(8) 19:3 19:4 97:14 97:15 97:16 107:8 111:15 131:18

**missing**(2) 148:14 156:1
**mistakenly**(1) 70:1
**mistakes**(1) 14:18
**modesty**(1) 8:8
**modified**(2) 33:15 42:23
**moment**(3) 113:16 119:3 123:17
**monday**(1) 137:16
**money**(12) 14:20 19:9 33:22 40:9 122:18 124:10 130:22 130:23 142:23 159:17 159:25 163:18

**monitoring**(3) 56:20 56:23 137:23
**month**(3) 13:13 18:21 18:21
**monthly**(1) 43:17
**months**(6) 9:18 74:16 84:3 111:7 112:2 144:14

**morawetz**(6) 15:21 16:25 59:5 90:8 102:5 140:6

**more**(42) 7:4 11:22 12:10 19:4 19:5 31:9 34:10 36:13 39:4 42:2 42:16 60:9 64:20 64:25 65:9 69:1 69:3 80:11 81:1 87:4 101:6 101:18 105:4 106:3 106:7 106:9 107:7 111:7 113:7 130:21 130:23 133:3 133:25 137:1 137:22 139:15 142:14 143:6 148:11 159:7 161:13 164:4

**moreover**(1) 125:14

**morning**(29) 3:3 3:9 3:10 3:17 3:19 4:13 4:15 4:18 4:21 14:14 21:10 21:11 21:12 21:13 21:13 21:15 21:17 51:7 51:13 51:14 53:9 53:10 116:1 116:2 120:15 141:24 142:7 149:17 152:4

**morris**(2) 2:20 4:14
**moshe**(7) 96:5 96:8 96:10 96:11 96:13 96:15 118:25
**most**(17) 6:22 14:6 39:5 39:6 50:19 103:16 111:11 112:22 116:25 128:2 129:16 129:16 129:19 129:19 134:25 135:1 142:19
**motion**(11) 31:22 34:3 87:19 135:9 135:9 135:11 135:16 135:17 135:25 143:25 145:19
**motions**(5) 7:4 17:9 17:15 17:18 152:13
**move**(1) 115:17
**moves**(1) 133:25
**much**(28) 3:15 7:21 12:2 12:8 12:10 14:19 17:7 27:25 39:25 40:8 40:8 50:14 50:14 51:10 53:3 88:20 91:8 114:1 114:19 118:7 130:25 132:8 135:15 144:8 153:6 159:7 159:25 164:12

**multimillion-dollar**(1) 129:20
**multiple**(14) 6:25 6:25 35:3 35:3 38:7 38:11 41:25 57:2 66:19 123:10 133:6 133:6 136:16 136:17

**must**(6) 11:13 11:20 24:15 28:10 29:16 120:3

**mutual**(2) 9:19 10:1
**myriad**(1) 32:16
**myself**(2) 22:2 45:9
**name**(3) 44:5 99:12 112:12
**nature**(1) 48:13
**near**(1) 113:5
**near-daily**(1) 113:3
**necessarily**(3) 97:16 97:22 109:17
**necessary**(6) 24:12 71:24 123:15 131:15 137:1 138:18
**need**(18) 16:17 18:9 27:24 37:21 54:15 92:12 121:12 122:25 123:25 125:13 133:8 133:9 133:11 138:16 149:11 150:13 153:9 163:6
**needed**(3) 82:6 84:6 141:24
**needs**(2) 49:5 116:25
**neglected**(1) 63:22
**negligent**(2) 11:16 14:19
**negligible**(1) 134:12
**negotiate**(1) 143:16
**negotiated**(1) 136:5
**neither**(1) 157:3
**networks**(1) 1:8
**never**(29) 12:5 12:20 17:14 20:24 23:4 25:24 26:1 42:24 47:8 47:9 47:13 47:14 56:11 59:15 67:11 67:14 71:14 71:19 80:21 86:25 87:3 87:20 100:19 102:12 103:18 103:19 103:23 104:2 111:25

**new**(31) 1:31 2:9 2:9 3:21 3:21 10:12 18:1 42:23 43:3 75:15 75:21 96:18 96:19 96:21 97:5 121:20 121:21 122:2 127:22 128:4 128:6 128:7 134:14 136:10 136:11 136:17 138:14 143:4 147:15 161:19 162:23 163:24

**newark**(1) 80:13
**newbould's**(1) 18:9
**next**(11) 11:9 16:1 16:2 27:12 69:6 73:6 125:3 145:3 150:25 151:4 159:12

**night**(2) 52:1 124:8
**nine**(1) 16:14

| Word | Page:Line |
|------|-----------|

**nncc**(64) 3:20 6:6 6:19 7:5 7:6 7:8 7:14
7:15 7:17 7:19 14:3 17:23 18:11 22:15
28:19 28:20 28:24 28:24 29:5 29:5 29:10
29:11 29:11 30:21 33:19 33:21 33:25 35:1
39:19 41:6 45:5 46:15 61:2 61:13 70:19
70:23 72:11 91:17 93:23 100:16 101:8
115:4 123:14 128:22 129:15 130:6 131:17
135:2 135:3 135:5 135:5 135:15 135:16
135:16 136:5 136:24 140:2 144:8 151:12
156:8 161:5 161:6 163:8 163:14

**nni**(10) 28:22 28:23 29:4 29:5 33:22 40:9
40:10 40:13 135:4 135:16

**nnl**(1) 29:12

**no-call**(17) 7:22 12:10 32:14 32:14 141:25
152:7 152:11

**nokota**(6) 11:11 93:19 93:22 98:25 99:1
163:10

**non-attorney**(1) 125:24

**non-confidential**(2) 95:1 103:17
**non-conflicted**(1) 7:8
**non-leading**(1) 91:4
**non-legal**(1) 83:1
**none**(3) 8:24 39:25 130:15
**nonetheless**(3) 56:23 64:6 66:19
**nor**(5) 56:16 57:24 61:17 70:22 82:10
**nortel**(10) 1:8 24:22 24:24 50:8 87:19
112:12 134:25 135:14 137:17 144:7

**northern**(5) 121:15 121:15 121:18 127:21
127:22

**not**(301) 5:24 8:7 9:7 9:11 10:17 10:20
10:21 11:4 11:8 12:14 12:21 13:5 14:6
15:8 15:15 16:4 17:4 18:2 18:13 18:14
18:19 18:19 18:23 18:25 19:8 19:17 19:24
20:18 20:19 20:25 22:5 22:7 22:8 22:11
22:23 22:24 23:1 23:5 23:6 23:18 24:7
24:21 25:12 25:18 25:23 25:25 26:2 26:3
26:4 26:7 26:17 26:19 26:21 26:21 27:8
27:12 27:24 27:25 28:4 28:7 28:8 28:16
30:6 30:7 30:7 30:10 30:21 31:1 31:18
31:19 31:21 33:15 33:25 33:25 34:1 34:6
34:9 35:5 35:12 36:5 36:5 36:6 36:14
37:12 37:25 38:4 38:6 38:19 38:23 39:8
41:3 41:5 41:6 41:9 41:13 41:14 41:19
41:21 42:3 42:5 42:6 42:19 42:22 44:7
44:19 45:20 45:21 46:19 46:19 46:20
47:17 48:13 48:14 48:16 48:24 49:11
49:16 50:15 50:17 50:20 50:25 51:2 51:3
52:8 52:11 53:17 53:18 55:17 56:2 56:8
56:14 56:15 57:13 57:14 57:18 57:20
57:23 57:24 58:1 58:2 58:4 59:14 59:17
59:19 59:22 61:2 61:5 61:13 61:16 61:18
62:15 63:9 63:14 64:3 64:15 65:20 66:23
67:5 67:16 68:11 68:21 69:4 69:4 69:5
70:4 70:7 70:10 70:14 70:21 71:17 71:17
71:21 71:24 72:9 72:15 72:25 74:6 74:16
74:21 74:21 74:25 75:3 75:12 76:19 79:7
79:7 79:10 80:24 82:1 84:18 84:20 85:7
85:9 85:11 86:2 86:14 87:2 88:4 88:10
89:7 89:11 90:13 90:15 90:21 91:3 91:11
92:19 94:18 95:22 97:17 99:12 100:11
100:14 101:1 101:5 103:5 104:9 104:12
104:12 104:17 104:20 105:1 105:16 105:18
105:18 105:19 105:22 106:14 106:17
106:24 107:13 110:4 110:18 110:21 111:17
112:4 112:15 116:23 117:1 117:1 117:12
118:14 118:17 118:22 119:4 119:12 119:15
119:17 119:18 119:19 119:20 120:9 120:19
120:21 120:23 120:24 122:19 123:3
123:14 123:18 123:19 123:21 124:5 124:20
124:20 124:21 124:21 124:25 125:1 125:2
127:3 127:5 127:7 127:14 129:7 129:7
129:8 129:20 131:10 131:14 132:13 132:23
133:8 133:13 133:16 133:18 133:19
133:23 133:23 133:24 134:7 134:9 134:10
135:15 135:20 135:21 135:22 136:22
136:23 137:11 137:15

**not**(72) 137:17 138:2 138:8 138:18 138:24
138:9 140:11 140:12 140:25 141:12 141:19
141:23 142:6 142:22 142:23 143:1 143:10
143:17 144:8 145:15 147:14 147:23 147:23
148:4 148:11 149:1 150:3 150:4 150:5
150:7 151:2 151:10 151:12 151:14 151:21
151:21 152:10 152:11 152:11 152:12
152:13 153:5 153:5 153:12 153:13 153:17
153:23 154:14 154:23 155:7 155:24 156:2
156:9 156:9 156:10 156:11 156:21 157:8
157:12 157:16 157:20 158:6 160:3 160:18
160:18 161:23 162:20 163:16 163:17
164:10 164:10 164:11

**note**(10) 29:23 36:23 37:3 38:10 45:10
134:6 137:4 138:24 150:4 151:16

**noted**(3) 63:14 93:5 156:2
**noteholder**(5) 28:19 47:12 99:1 139:10
147:15

**noteholders**(146) 8:20 17:23 18:11 22:11
22:15 22:18 22:22 23:2 23:8 23:18 24:1
24:13 24:16 25:13 25:14 27:4 27:9 28:13
28:13 28:24 29:10 30:11 30:12 31:23
32:18 33:18 33:21 34:17 34:20 34:21
34:22 37:4 37:13 37:16 37:25 40:20 41:17
41:19 41:19 44:20 45:6 45:7 45:15 46:10
46:15 46:22 47:5 47:25 49:13 49:21 56:3
57:15 59:15 61:2 61:13 63:25 64:4 67:11
67:14 68:21 69:4 70:19 70:23 70:25 71:15
71:17 71:23 72:5 75:5 77:23 81:11 81:20
81:23 82:5 82:8 82:11 83:9 83:12 98:3
98:24 100:16 101:8 102:14 105:24 110:4
112:6 112:14 114:13 115:4 123:14 128:22
130:7 131:17 132:18 132:19 133:4 134:8
134:22 134:23 135:6 135:16 136:5 136:24
137:15 138:2 139:8 139:24 140:1 140:20
141:4 141:10 142:25 143:1 146:18 148:3
149:16 149:22 149:25 150:9 150:14 150:18
151:11 151:16 151:23 151:24 152:3 152:16
157:3 157:6 157:11 158:2 161:5 161:6
161:13 161:14 161:17 162:3 163:7 163:7
163:15 163:16

**notes**(72) 3:20 7:8 7:14 7:19 22:20 28:25
31:3 31:8 31:25 32:6 32:12 32:15 32:24
37:6 37:7 37:8 37:23 38:3 38:15 38:15
41:7 45:4 45:14 46:5 46:17 69:1 72:11
74:17 76:13 77:3 81:1 81:4 81:6 81:9
81:12 81:13 81:21 81:24 85:20 86:10 87:4
91:18 92:11 93:23 94:12 103:1 104:15
104:23 105:17 129:15 132:22 137:3 140:2
140:19 141:11 142:21 149:1 149:9 149:12
149:13 149:15 149:20 150:7 150:10 150:19
150:24 151:11 151:12 152:20 153:22
154:6 160:9

**nothing**(13) 37:3 37:22 48:14 119:7
119:20 120:2 120:22 120:24 130:21 133:24
145:2 149:21 149:24

**nothing's**(1) 32:11
**notice**(2) 32:8 32:9
**now**(49) 3:8 3:23 8:1 10:4 11:4 12:12
12:16 13:18 13:19 13:22 13:25 17:7 21:8
29:19 31:10 38:21 39:7 43:19 47:16 59:19
85:12 88:8 91:11 93:14 95:2 96:17 98:1
100:18 111:6 113:24 114:3 114:4 116:16
117:7 122:5 122:16 125:3 128:20 128:20
135:13 135:19 140:11 150:3 154:18 155:5
159:9 162:25 164:5 165:1

**nowhere**(1) 160:19
**number**(13) 14:15 19:16 31:14 31:20
36:14 41:25 58:19 60:12 60:14 75:16
124:11 153:25 160:10

**numbered**(1) 69:20
**numbering's**(1) 52:8
**numbers**(8) 31:10 31:16 36:12 36:16
36:17 43:20 44:13 146:14

**o'clock**(3) 3:11 3:13 114:5
**oath**(2) 62:22 62:23
**object**(22) 6:12 12:12 12:17 16:22 18:17
18:17 23:2 36:23 44:2 47:22 47:23 47:24
53:22 54:1 55:15 141:25 142:3 148:20
148:21 148:23 152:14 153:19

**objected**(6) 13:3 23:5 36:13 43:9 44:12
44:22

**objecting**(17) 31:12 31:19 31:19 31:21
36:5 38:5 38:6 61:2 61:5 105:5 105:13
141:12 152:10 152:11 152:12 152:12
152:13

**objection**(44) 8:25 14:1 16:23 23:6 23:7
26:5 28:8 28:8 30:9 30:12 31:23 32:1
32:2 32:3 32:12 32:14 32:19 32:20 33:3
33:4 33:9 33:11 34:15 36:4 37:1 38:8
38:17 38:18 39:5 39:16 39:17 39:18 46:11
46:12 54:3 91:1 105:25 115:4 115:19
150:12 150:23 151:1 152:19 162:12

**objectionable**(2) 38:19 150:11
**objections**(11) 5:4 12:25 13:8 13:11 36:7
47:19 47:21 136:20 137:2 147:9 161:14

**objectors**(28) 5:4 6:12 6:16 6:17 7:9 8:12
8:24 12:2 12:6 12:20 13:2 20:18 52:1
89:8 100:13 100:24 101:2 119:14 119:15
123:2 128:9 128:13 131:9 159:5 160:17
161:22 162:4 163:1

**obligate**(1) 56:8
**obligated**(2) 22:16 41:19
**obligation**(6) 24:11 41:10 41:18 41:22
110:16 160:22

**obligations**(2) 10:11 159:15
**observations**(1) 37:10
**obtained**(1) 8:18
**obvious**(2) 151:2 153:6
**obviously**(5) 4:11 39:8 48:20 53:20 153:19
**occ**(1) 149:20
**occurred**(1) 80:6
**occurrence**(1) 49:18
**october**(3) 74:6 74:9 75:5
**of-counsel**(1) 153:3
**off**(16) 15:19 19:9 19:17 19:18 47:14
81:19 106:13 130:13 136:18 136:18 147:4
151:1 153:24 157:18 159:23 164:17

**off-agenda**(2) 123:12 123:13
**office**(5) 30:3 30:4 45:8 80:13 120:13
**officer**(5) 45:7 76:12 76:18 77:25 79:9
**offices**(1) 18:1
**official**(12) 2:26 2:34 53:12 64:12 64:12
64:14 65:6 65:7 65:11 65:12 69:21 70:3
**often**(7) 10:17 10:18 11:6 62:4 62:10 63:8
106:7

**oftentimes**(1) 121:8
**okay**(58) 4:17 5:2 5:18 26:17 30:1 31:16
31:20 34:19 34:21 39:21 43:13 44:3 45:23
48:1 48:21 49:1 49:3 51:24 55:9 55:14
58:21 58:23 65:3 67:24 68:5 70:25 71:9
73:12 87:15 88:9 89:4 89:9 90:21 95:13
95:14 96:8 97:11 97:12 97:16 98:1 98:6
98:17 102:2 105:15 120:18 124:3 124:12
129:4 138:6 141:15 141:18 149:23 150:19
151:3 155:1 155:5 155:25 164:19

**old**(1) 25:16
**once**(2) 47:22 106:11
**one**(74) 2:29 4:16 5:7 6:22 8:13 8:25 9:18
11:9 12:20 13:1 14:3 17:12 18:4 20:9
22:2 23:7 27:18 27:21 28:11 28:12 31:9
33:4 33:19 35:2 36:25 38:13 43:11 45:3
45:12 53:14 57:2 58:14 65:9 66:25 67:2
67:21 72:5 80:11 82:5 82:11 84:15 93:22
99:16 103:25 106:3 106:7 106:9 106:9
106:12 111:21 112:1 113:7 113:16 119:16
119:19 121:17 124:8 125:8 128:25 129:8
129:9 131:7 134:25 138:19 139:14 144:14
148:9 148:11 151:4 153:11 160:8 162:25
163:17 164:22

**one-half**(1) 76:15
**one-sentence**(1) 111:14
**ones**(3) 7:24 42:13 157:25

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| only(35) 7:7 7:7 7:15 7:24 8:25 9:10 14:3 17:16 18:15 24:12 37:5 47:2 50:8 63:21 76:15 77:13 84:1 97:6 106:3 111:6 111:22 112:1 120:8 120:9 123:5 123:14 128:18 129:5 130:8 131:6 131:14 134:14 138:4 159:11 161:5 | | own(33) 6:16 13:24 24:11 26:2 28:10 35:15 45:14 47:10 50:18 50:24 53:19 86:6 100:2 108:12 109:15 119:1 122:11 122:18 122:18 122:18 123:21 125:12 125:14 133:17 134:22 134:23 135:6 135:8 136:7 138:6 151:22 163:2 163:2 | | patterson(34) 1:26 3:19 31:23 66:10 67:12 82:10 82:12 82:14 83:8 83:17 84:3 84:6 84:19 85:12 85:15 86:4 103:24 103:25 106:12 109:21 109:25 111:17 111:22 112:1 113:3 120:3 126:9 130:1 143:20 145:12 153:16 153:18 159:24 161:25 | | play(1) 65:1 played(1) 120:12 pleading(5) 32:5 33:8 33:8 44:4 146:20 pleadings(4) 38:8 44:11 135:8 141:13 pleas(1) 23:3 please(14) 3:2 3:25 5:10 15:23 42:5 62:8 70:8 88:14 89:23 97:18 118:2 147:22 158:21 160:23 |
| onus(1) 150:5 open(3) 114:25 120:12 130:8 opening(7) 3:23 5:14 21:22 117:6 125:5 126:22 129:24 | | ownership(2) 145:21 145:24 p.m(2) 30:6 165:13 page(32) 43:8 43:19 55:1 63:4 63:5 63:5 63:6 79:16 79:19 79:20 82:18 82:18 93:14 93:15 94:1 108:9 115:12 115:15 121:13 | | patterson's(2) 110:25 112:18 pay(14) 6:7 10:15 10:17 20:15 49:21 49:21 50:24 83:23 128:14 128:17 128:23 131:10 156:6 156:12 | | pleased(1) 102:4 pleasure(1) 54:17 plus(1) 137:21 pocket(2) 72:2 115:2 podium(1) 55:16 |
| operating(2) 10:7 34:20 operations(1) 39:20 opinion(3) 126:4 164:23 165:7 opinions(1) 43:2 opportunity(1) 93:11 opposing(6) 5:7 5:12 125:4 126:21 126:22 126:23 | | ownership 121:13 122:5 122:6 125:7 134:13 150:16 151:4 152:2 155:14 155:23 156:4 159:10 159:12 pages(3) 63:5 126:19 158:22 paid(25) 5:24 6:9 6:11 10:14 10:18 10:19 10:21 11:3 21:8 63:18 83:20 84:1 131:3 | | paying(4) 6:16 6:20 10:18 158:9 payment(2) 146:10 159:15 pays(2) 49:13 155:3 pbge(3) 12:9 16:14 131:6 pdf(1) 43:15 peculiar(3) 24:17 29:15 37:16 peculiarly(1) 157:2 penalize(1) 124:7 | | point(45) 6:11 25:4 25:5 35:14 38:4 39:15 39:16 39:25 41:1 41:1 46:1 82:9 82:15 83:18 100:18 109:5 119:19 126:21 130:21 130:22 132:10 137:22 138:5 141:20 144:17 145:9 146:8 147:11 147:17 147:17 148:15 149:8 150:2 157:6 159:14 160:6 160:25 |
| options(1) 38:14 order(6) 29:16 29:22 34:7 46:8 132:25 156:14 | | 131:13 140:16 151:20 151:21 153:16 153:23 156:2 156:21 156:23 157:5 158:3 158:7 panoply(1) 38:6 papers(1) 8:10 parachute(2) 18:2 18:13 | | pennsylvania(1) 1:38 people(9) 9:13 28:6 35:8 38:24 106:15 109:18 148:14 158:5 161:21 | | 161:3 161:8 161:9 161:14 161:15 163:1 163:4 163:5 pointing(1) 46:22 points(2) 119:2 162:25 |
| other(48) 5:11 7:9 8:10 11:11 11:19 16:23 17:1 19:7 20:9 28:22 29:4 29:13 37:15 38:9 43:11 44:11 52:15 53:16 57:15 60:4 61:17 66:22 67:13 71:20 72:25 73:6 77:16 80:11 106:12 107:4 109:18 109:24 116:20 121:19 121:22 127:14 133:19 134:13 137:25 138:11 148:21 149:3 153:8 157:25 159:20 160:19 161:18 163:6 | | parachuted(1) 15:7 paragraph(18) 58:16 58:22 61:21 64:8 67:21 69:21 75:13 75:14 75:17 75:21 92:9 93:25 102:3 112:10 119:24 139:6 139:6 146:2 paragraphs(1) 103:9 paralegal(2) 82:24 153:4 | | people's(1) 36:6 per(2) 46:18 63:5 percent(22) 8:22 12:12 13:8 24:22 24:23 24:23 30:24 38:5 41:6 68:20 69:1 69:3 85:20 86:10 127:2 129:13 129:19 138:24 142:13 142:14 142:15 142:20 | | policy(1) 156:18 portfolio(1) 112:16 portion(5) 6:17 25:11 126:20 127:19 position(16) 13:13 25:22 33:16 39:9 40:4 40:6 48:12 63:15 63:18 63:21 103:4 110:11 129:1 132:11 132:11 134:4 151:6 |
| other's(1) 155:25 others(5) 7:15 15:23 44:22 49:10 91:16 otherwise(3) 10:21 137:21 155:5 ought(2) 124:7 158:12 | | park(1) 2:29 parochial(7) 31:2 41:4 59:6 59:20 140:7 161:2 161:4 part(13) 35:5 60:22 64:2 68:11 85:19 | | percentage(1) 137:7 perfectly(2) 13:1 126:5 perform(1) 110:12 performance(2) 20:13 127:13 performed(7) 24:16 37:17 109:21 110:3 | | positions(1) 118:21 possibility(1) 124:5 possible(3) 30:8 40:9 143:17 possibly(3) 35:16 56:19 65:21 post(1) 33:4 |
| our(111) 5:6 5:9 6:13 6:14 8:10 8:13 8:19 9:4 9:15 10:10 14:21 15:1 15:2 16:3 16:22 17:18 18:3 18:6 19:15 19:18 21:1 21:16 21:18 21:19 23:3 25:22 25:25 26:2 27:24 28:1 28:3 28:8 28:8 29:1 29:10 30:9 30:24 31:10 32:23 34:7 35:21 36:7 36:14 36:14 36:15 36:17 37:1 37:5 37:6 37:7 37:23 37:25 38:3 38:15 38:15 38:16 39:8 39:16 39:16 39:18 39:24 40:6 40:9 40:10 40:13 41:7 42:4 42:24 43:20 45:2 45:10 46:11 47:25 48:11 48:13 52:6 52:8 65:19 87:5 88:4 92:23 102:5 107:11 110:16 116:19 120:13 132:20 132:25 133:2 134:8 135:25 136:19 137:2 139:9 140:20 141:2 141:4 147:10 148:2 150:6 150:7 150:12 150:24 151:6 151:7 151:16 153:1 156:9 157:11 157:24 | | 85:23 101:23 104:13 104:21 111:11 116:16 138:17 142:19 participants(2) 134:17 136:13 participate(15) 18:24 19:2 20:25 21:1 38:11 38:13 56:6 124:16 125:23 129:8 131:13 131:15 149:20 150:17 158:5 participated(3) 124:1 125:17 129:23 participating(9) 122:16 129:2 129:10 131:11 133:14 139:1 147:11 162:14 162:16 participation(11) 13:9 30:13 30:14 35:17 39:11 61:3 131:8 136:21 139:13 156:25 162:1 particular(5) 28:6 56:9 56:16 61:7 134:22 particularly(3) 12:6 17:18 131:16 parties(21) 6:23 16:25 17:1 29:13 34:2 34:5 51:18 53:16 53:19 58:8 59:5 76:1 121:13 121:14 121:20 122:3 131:12 140:6 144:20 155:24 156:4 | | 110:8 112:13 137:11 performing(2) 10:9 110:20 performs(1) 110:12 perhaps(8) 27:21 46:6 68:12 117:21 126:8 141:23 145:8 147:5 period(18) 22:24 42:2 46:17 47:17 47:18 47:18 47:20 47:21 95:17 143:8 144:23 145:11 145:22 146:11 147:6 154:4 163:3 163:12 periodic(1) 75:1 periodically(1) 146:7 periods(2) 137:5 152:21 permit(2) 67:5 130:5 permits(1) 128:7 permitted(2) 88:3 164:10 person(5) 15:14 110:17 122:10 124:1 153:11 person's(1) 111:1 personal(3) 72:1 109:20 112:14 personally(2) 122:23 123:8 petition(2) 33:5 118:16 phases(1) 17:24 phone(5) 4:9 86:20 120:14 123:23 123:24 phrase(1) 98:1 | | potentially(1) 16:1 powers(2) 122:8 127:13 ppearances(2) 1:23 2:1 ppi(5) 7:18 38:7 147:24 150:20 151:1 152:7 152:11 practice(5) 14:9 26:3 32:7 64:6 123:4 pragmatic(1) 133:3 pre-hearing(3) 31:7 43:23 43:24 pre-mediation(4) 31:6 31:11 43:22 43:23 pre-petition(2) 7:19 8:22 precise(1) 31:10 precisely(1) 39:9 precision(1) 28:9 predecessor(2) 76:21 127:15 predicate(1) 145:1 prefer(1) 71:7 prejudiced(1) 81:20 premature(1) 50:10 preparation(4) 102:12 102:13 105:2 145:2 prepare(3) 97:13 97:14 149:20 prepared(14) 31:24 43:25 66:2 66:7 66:10 81:1 81:6 81:21 81:24 87:6 97:9 115:10 153:22 162:7 |
| out(37) 7:24 9:2 11:10 15:7 18:2 18:13 19:15 19:21 19:22 20:15 24:5 31:17 32:11 35:23 36:3 36:18 36:22 40:24 42:4 66:16 72:1 83:25 107:7 121:2 121:13 122:2 122:7 124:10 144:13 144:23 145:7 153:14 154:19 155:8 161:9 161:10 165:7 | | pick(1) 123:23 picked(2) 42:25 157:13 piece(2) 120:21 145:2 pike(2) 2:15 2:16 pimple(1) 9:6 pinckney(2) 2:13 2:14 21:16 21:17 pink(2) 14:24 19:23 | | partner(8) 4:8 21:14 80:12 83:6 101:12 119:5 143:11 153:3 partners(1) 96:5 party(40) 2:42 17:16 33:16 34:8 34:13 35:1 35:19 39:23 41:8 41:9 45:20 46:25 49:6 49:13 49:20 51:4 55:24 56:5 89:9 90:10 90:24 102:6 118:19 120:18 121:17 125:18 125:20 129:21 130:5 131:7 136:13 138:3 138:4 138:6 138:15 155:22 156:6 156:13 158:3 162:18 pass(4) 52:23 55:6 108:18 115:23 past(1) 112:1 patience(1) 118:6 pattern(2) 39:5 137:4 | | prepares(1) 105:22 preparing(3) 19:13 81:12 112:23 present(3) 31:5 52:22 124:2 presentation(1) 21:23 presented(2) 86:15 114:25 preserving(1) 53:20 preston(1) 2:35 presumed(1) 10:23 pretrial(1) 17:3 |
| outline(1) 144:25 outset(1) 11:7 outside(1) 9:15 over(36) 13:8 13:12 14:13 20:6 22:24 39:2 39:3 42:2 49:22 52:5 66:3 76:12 76:18 76:24 77:25 79:8 82:23 83:4 83:19 83:22 84:11 84:15 90:2 93:15 109:4 110:24 111:16 111:20 112:1 139:24 143:9 153:15 154:3 157:4 161:12 163:7 | | place(12) 17:17 41:5 94:18 97:17 122:2 128:21 130:1 137:6 142:8 142:9 146:9 146:15 placed(1) 108:3 places(1) 43:14 plainly(1) 160:4 plan(5) 9:23 34:15 45:22 136:7 165:5 planned(1) 68:7 plausible(1) 154:16 | | | | |
| overarching(1) 22:19 overstaffing(4) 38:22 38:23 38:24 147:13 overtime(1) 16:6 owed(1) 86:8 owes(3) 22:15 24:6 163:16 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| prevailing(7) 49:6 49:12 49:20 51:4 155:22 156:13 158:2 | | protocol(25) 15:22 15:24 17:2 47:7 47:11 47:13 87:7 92:12 92:16 102:21 103:5 103:19 104:1 104:5 104:7 104:13 104:21 142:8 142:9 143:16 144:1 146:4 146:9 146:10 146:15 | | raised(7) 18:19 29:10 101:7 136:20 137:3 145:19 156:18 | | reflect(5) 5:22 43:20 151:12 reflected(3) 141:11 148:22 149:15 reflective(2) 39:10 39:10 reflects(2) 139:12 139:22 |
| previously(6) 44:11 89:24 91:21 93:7 98:11 98:12 | | | | rata(3) 33:15 33:15 42:23 rate(2) 36:17 72:3 rates(4) 8:4 8:4 8:5 12:21 | | refresh(1) 79:2 refusal(3) 46:6 46:7 47:10 refused(6) 75:9 83:13 83:19 83:22 86:12 153:15 |
| price(2) 50:23 133:13 prices(1) 129:9 prime(3) 147:25 153:13 153:20 principal(2) 7:19 154:7 principle(3) 8:22 130:24 prior(10) 47:20 76:15 76:18 76:23 79:5 101:2 101:6 109:7 109:10 159:16 | | proud(2) 5:21 8:8 prove(3) 47:10 85:20 134:9 proven(1) 150:4 provide(14) 49:9 51:3 65:5 65:10 74:25 85:24 95:20 95:24 99:25 100:1 112:5 144:25 155:5 158:1 | | rather(7) 46:12 59:6 59:21 132:19 136:15 140:7 164:8 reached(1) 119:1 reaching(1) 144:22 read(12) 10:24 11:21 94:12 95:11 127:9 127:9 140:25 141:2 141:22 141:22 149:11 149:19 151:6 | | regard(4) 94:18 95:7 120:3 129:21 regarding(6) 38:12 38:14 130:15 149:23 150:17 160:7 regardless(5) 37:14 65:15 65:16 66:20 80:18 |
| private(1) 157:20 privilege(8) 53:17 53:17 53:19 53:20 53:21 71:6 118:13 118:15 privileged(1) 120:10 pro(3) 33:15 33:15 42:23 probably(3) 27:18 91:3 156:15 | | provided(9) 7:21 29:23 95:6 100:19 145:22 145:24 152:7 154:20 160:10 provides(5) 125:9 127:8 127:23 128:6 159:10 providing(5) 64:12 65:7 65:12 72:10 | | readily(1) 163:13 reading(5) 94:1 141:1 155:14 155:23 156:3 reads(2) 92:9 127:4 ready(7) 3:6 51:12 90:3 113:4 116:20 132:6 158:12 real(2) 21:4 26:23 | | reimbursement(1) 133:20 reiterate(1) 117:1 relate(6) 15:25 24:15 29:11 38:15 66:23 134:7 related(12) 28:15 29:18 31:1 32:6 33:2 104:8 104:14 104:23 105:16 105:18 112:23 150:6 |
| problem(7) 81:23 135:18 142:5 142:24 148:24 153:6 158:11 problems(3) 14:19 14:20 86:11 proceed(5) 6:14 52:25 88:18 88:19 114:7 proceeding(9) 4:5 5:25 13:10 17:24 20:11 21:1 125:18 127:2 162:1 | | proving(1) 150:6 provision(7) 7:22 12:10 128:1 155:13 155:15 156:11 159:22 provisions(2) 5:13 10:5 prudence(5) 11:1 12:2 22:18 26:19 26:22 prudent(35) 11:1 11:13 11:21 13:17 13:20 14:10 14:16 14:17 15:14 16:18 17:8 17:22 17:23 18:14 19:1 19:1 24:10 64:6 71:22 110:17 112:5 119:18 120:24 122:10 122:25 123:3 123:14 124:16 124:20 125:2 126:5 131:14 132:15 133:10 153:11 | | realized(4) 22:21 47:8 47:9 47:13 really(9) 6:10 14:15 15:3 16:7 16:17 117:12 137:14 139:9 144:9 reason(10) 18:16 35:22 40:20 41:22 42:3 66:25 83:12 86:2 95:11 130:25 reasonable(31) 6:3 6:15 9:23 10:16 11:3 20:8 20:24 23:1 24:15 25:15 45:21 45:22 46:18 62:13 63:15 63:16 63:21 63:22 84:10 84:13 84:14 110:13 110:21 119:18 120:23 124:21 125:1 126:6 138:8 160:5 160:18 | | relates(7) 30:13 32:15 38:15 46:5 140:20 150:24 151:9 relating(1) 120:10 relationship(1) 96:8 relevance(1) 139:2 relevant(8) 17:11 29:14 41:15 63:24 70:23 70:23 125:8 135:5 relied(1) 17:4 |
| proceedings(5) 1:18 1:42 102:7 128:16 165:18 proceeds(8) 33:20 33:24 33:24 35:1 39:23 39:24 42:24 60:3 | | prudently(1) 122:17 public(1) 10:22 pugh(2) 21:18 45:9 pull(2) 136:18 154:19 pulled(3) 36:18 36:22 37:8 purchased(1) 109:1 | | reasonableness(10) 8:1 12:23 24:2 24:3 24:14 46:13 49:22 134:4 160:14 163:19 reasoned(1) 124:18 reasons(3) 33:6 48:10 156:18 | | reluctant(1) 64:24 rely(2) 14:1 14:8 remain(1) 113:13 remark(1) 11:20 remarks(2) 3:24 5:14 |
| process(12) 16:21 16:22 19:1 22:9 35:6 48:6 50:10 129:10 154:10 164:10 164:20 produced(1) 1:43 14:10 78:11 78:23 84:6 145:6 153:15 153:18 153:21 154:3 | | pure(2) 7:8 7:16 purport(3) 42:19 119:14 120:22 purports(1) 98:19 purposes(2) 22:20 23:1 pursuant(1) 10:9 10:23 push(3) 8:15 50:18 150:8 pushed(2) 12:8 137:25 pushing(2) 40:19 41:3 put(10) 15:21 18:3 56:14 63:7 73:5 96:2 146:9 146:15 150:11 160:17 | | rebuttal(1) 131:22 recalcitrance(2) 50:23 158:10 recall(23) 28:20 53:14 62:19 70:21 70:22 72:25 73:23 79:12 82:2 89:9 91:12 91:15 95:8 96:6 96:21 96:24 98:3 100:21 101:7 102:16 105:7 112:8 112:16 | | remedy(4) 28:16 133:23 140:11 140:12 remember(15) 32:6 32:22 40:9 72:9 72:22 73:3 77:18 102:13 104:3 105:8 105:9 135:24 150:22 152:16 153:10 remind(1) 3:10 |
| products(1) 84:4 professional(2) 7:1 23:3 professionally(1) 18:15 professionals(29) 5:21 8:2 9:10 11:2 15:10 19:13 20:19 20:23 22:19 22:23 37:24 38:14 41:10 41:21 47:3 48:22 50:12 50:14 50:20 51:2 133:11 134:13 139:3 141:9 143:3 155:12 155:14 157:10 157:19 | | puts(1) 145:4 qualifications(1) 22:6 quantified(1) 153:1 quarter(1) 79:20 queried(1) 120:5 question(39) 16:13 26:6 26:10 27:10 27:15 35:6 62:8 63:7 65:2 70:8 70:17 71:11 72:14 72:24 91:13 93:1 101:6 101:8 105:11 106:3 106:7 106:9 106:10 107:7 120:15 120:18 122:25 123:6 123:9 124:13 127:7 127:21 127:24 128:11 130:3 133:22 136:25 164:21 164:22 | | receive(4) 12:11 100:9 100:12 100:15 received(5) 5:22 51:20 75:5 94:17 97:8 98:2 100:7 receiving(1) 8:20 recess(3) 88:13 117:25 118:1 recognize(4) 55:1 108:7 108:12 115:7 recognizes(1) 23:13 recollection(2) 57:20 79:2 reconsideration(6) 7:3 17:9 17:14 18:10 34:3 152:12 record(8) 6:23 53:23 93:6 115:18 126:4 129:22 146:12 152:24 | | reminded(1) 28:11 renaissance(1) 2:37 render(1) 24:24 rendered(5) 95:4 95:18 95:21 157:7 157:8 repaid(1) 22:20 repeat(2) 62:8 70:8 replace(2) 83:9 84:25 replied(1) 113:8 reply(1) 63:13 report(3) 96:13 102:4 103:9 reported(2) 68:13 69:17 reporter(1) 155:14 reports(5) 27:22 43:2 90:7 94:17 151:6 represent(3) 70:7 70:10 146:17 representative(7) 75:11 87:3 109:5 110:24 111:16 111:20 124:15 |
| projected(1) 101:9 projects(1) 110:3 promise(2) 77:3 84:10 promptly(1) 165:3 proof(13) 24:14 31:21 31:21 87:19 142:1 142:2 143:25 144:7 144:9 144:12 144:16 145:20 145:21 | | recorded(1) 1:42 recording(2) 1:42 165:17 recovered(1) 50:7 recoveries(4) 7:17 16:1 28:14 84:2 recovery(4) 7:15 8:20 12:12 105:24 recross-examination(1) 101:21 | | | | representatives(1) 14:5 represented(9) 4:23 59:24 67:13 68:21 70:3 106:13 119:25 121:22 163:2 representing(5) 7:16 12:4 81:14 107:10 123:7 represents(1) 160:2 |
| proper(1) 99:25 properly(7) 22:19 22:23 25:23 141:5 142:6 143:3 144:9 | | questionable(2) 119:17 120:23 questioning(1) 9:13 questions(30) 42:16 53:22 57:24 58:3 60:9 64:17 64:17 64:22 72:5 88:6 89:7 89:9 91:5 91:11 95:2 96:3 96:4 96:6 96:18 97:8 98:2 98:3 100:22 101:3 101:18 107:4 113:12 113:15 116:4 160:21 | | redacted(1) 75:4 redaction(1) 58:22 redactions(1) 58:16 redirect(6) 64:17 88:19 88:21 91:4 113:20 116:6 | | reputation(1) 14:21 request(8) 42:4 90:9 90:23 102:5 102:9 143:7 143:22 145:4 |
| property(1) 159:17 propose(1) 52:21 proposed(4) 42:14 87:6 102:21 129:20 proposes(1) 116:17 proposing(1) 87:12 proposition(2) 133:24 157:22 propositions(1) 24:5 prosecuting(2) 138:12 139:5 prospect(1) 50:13 prospective(1) 37:18 prospects(1) 105:24 protect(3) 24:12 53:21 130:6 protected(1) 3:9 protection(1) 163:15 protects(1) 22:17 | | quick(2) 107:7 114:10 quickly(3) 19:8 127:4 165:7 quinn(5) 2:5 12:7 94:20 163:4 163:20 quite(2) 143:16 155:17 quote(4) 6:21 9:2 12:14 155:2 radio(1) 144:13 raise(2) 41:4 86:14 | | reduction(1) 19:11 reductions(1) 31:10 refer(4) 5:13 6:6 21:23 132:2 reference(3) 69:21 69:25 78:10 references(2) 60:21 60:25 referred(1) 96:19 | | requested(1) 42:25 requests(2) 83:13 105:10 required(4) 50:1 147:15 156:14 159:25 requires(2) 24:8 28:23 |

| Word | Page:Line |
| --- | --- |
| **research**(3) 120:7 150:25 163:22 | |
| **reserve**(3) 131:18 136:1 164:23 | |
| **resolution**(1) 50:20 | |
| **resolve**(1) 158:10 | |
| **resolved**(1) 16:6 | |
| **resources**(1) 8:9 | |
| **respect**(23) 6:5 12:15 13:4 13:11 13:12 16:19 18:14 23:24 23:25 44:20 50:12 50:14 92:11 103:1 104:23 105:11 124:23 134:1 134:24 136:2 153:2 153:22 160:14 | |
| **respectfully**(11) 22:22 25:22 44:19 123:8 127:2 140:9 146:12 152:24 158:4 162:2 164:3 | |
| **respective**(1) 159:15 | |
| **respond**(4) 85:5 85:8 87:25 99:18 | |
| **responded**(3) 112:14 144:14 152:8 | |
| **responds**(3) 90:12 92:25 126:21 | |
| **response**(12) 45:3 46:11 48:3 75:5 98:2 134:19 139:10 141:1 141:2 157:23 157:25 157:24 | |
| **responses**(3) 96:6 98:4 148:5 | |
| **responsible**(3) 18:15 49:9 155:25 | |
| **rest**(3) 70:24 70:24 131:22 | |
| **restrictions**(1) 94:6 | |
| **restructuring**(1) 45:6 | |
| **result**(4) 42:22 119:17 120:24 162:5 | |
| **resulting**(2) 33:24 126:5 | |
| **results**(1) 8:17 | |
| **resume**(1) 3:12 | |
| **retain**(4) 11:2 26:2 61:25 133:17 | |
| **retained**(6) 4:25 48:22 50:12 50:14 51:2 73:1 | |
| **retention**(2) 83:25 157:19 | |
| **retired**(2) 20:2 154:11 | |
| **return**(1) 60:6 | |
| **review**(16) 32:2 32:10 35:15 36:15 37:24 40:22 42:14 44:22 48:16 79:6 92:2 93:11 149:23 149:25 160:13 164:9 | |
| **reviewed**(3) 32:4 32:5 160:12 | |
| **reviewing**(7) 43:1 44:9 44:11 47:4 67:15 151:5 159:24 | |
| **ridiculous**(1) 123:24 | |
| **right**(201) 4:3 6:13 10:6 15:8 16:10 20:12 21:9 21:21 23:2 26:14 27:14 27:16 27:16 29:3 33:1 34:4 35:11 35:13 36:7 36:8 37:19 37:23 38:17 39:1 40:12 40:15 43:10 43:15 44:16 44:17 45:24 45:24 46:10 46:20 48:23 51:12 52:8 52:24 53:6 53:24 55:7 55:14 56:3 56:5 56:6 56:12 56:17 56:25 57:3 57:12 57:17 57:22 58:3 58:9 58:10 58:12 59:2 59:8 59:10 60:19 60:23 60:24 61:17 61:23 62:7 62:12 62:17 63:11 63:19 64:9 64:13 65:20 66:21 68:4 69:2 69:9 69:11 70:15 70:20 71:1 71:11 72:19 72:22 73:25 74:4 74:7 74:10 74:18 74:23 75:24 76:10 76:16 76:25 77:5 77:7 77:10 77:20 77:23 78:5 78:13 79:9 79:22 80:3 80:7 80:15 80:19 82:7 82:10 83:5 83:7 83:14 83:24 84:11 84:16 85:13 85:21 85:25 86:4 86:5 86:5 87:1 87:21 88:2 88:7 88:9 91:6 92:3 92:6 93:9 95:5 100:2 101:20 102:15 102:23 103:12 103:16 104:19 105:6 105:20 106:22 107:6 107:15 107:16 107:16 107:22 108:19 109:5 109:11 109:16 109:22 109:23 109:25 110:1 110:5 110:6 110:9 110:10 110:13 110:22 111:1 111:2 111:4 111:5 111:18 111:19 111:23 111:24 112:20 112:21 112:24 113:4 113:7 113:13 113:19 113:22 114:11 115:21 116:5 116:10 116:13 116:17 117:4 117:23 125:22 126:13 130:12 132:7 132:22 140:1 141:18 142:17 145:3 148:8 154:1 158:15 159:11 165:1 165:2 165:9 | |
| **right-hand**(1) 150:20 | |

| Word | Page:Line |
| --- | --- |
| **rights**(4) 10:11 11:17 122:8 136:2 | |
| **rise**(5) 3:2 18:9 26:13 88:14 118:2 | |
| **risk**(2) 14:17 70:1 | |
| **risky**(1) 18:25 | |
| **robert**(2) 2:45 4:20 | |
| **robust**(1) 11:7 | |
| **rockstar**(1) 129:14 | |
| **rocky**(1) 147:5 | |
| **role**(3) 10:9 65:19 72:11 | |
| **room**(4) 30:20 122:19 123:10 123:15 | |
| **rough**(2) 119:8 119:8 | |
| **roughly**(3) 74:16 116:22 116:23 | |
| **routine**(1) 137:12 | |
| **rule**(11) 20:19 48:21 48:25 126:23 126:24 127:7 127:25 155:3 155:8 156:22 157:14 | |
| **ruling**(2) 51:1 131:9 | |
| **run**(4) 19:22 87:20 104:10 117:24 | |
| **runs**(1) 142:25 | |
| **russell**(2) 21:19 114:17 | |
| **ryan**(1) 93:18 | |
| **safeguard**(1) 162:3 | |
| **said**(48) 8:9 13:14 13:16 15:21 15:23 16:16 18:2 18:18 25:18 30:4 33:22 39:19 47:12 47:21 49:8 59:4 63:19 64:8 64:11 68:7 68:7 68:9 70:24 71:5 82:2 84:1 85:16 85:19 85:23 89:11 97:11 102:25 104:9 116:25 116:25 132:19 132:19 132:21 133:16 137:5 139:8 142:24 143:14 146:3 155:13 155:13 155:23 157:7 | |
| **sale**(5) 9:17 60:3 129:14 149:24 149:24 | |
| **salmon**(1) 39:20 | |
| **salmon-colored**(1) 39:21 42:13 | |
| **same**(25) 6:3 9:13 12:13 12:16 17:8 24:9 25:20 35:6 38:16 40:17 40:20 43:15 80:2 80:5 121:17 122:9 131:12 134:23 136:22 138:9 141:1 141:20 155:20 | |
| **sample**(1) 43:8 | |
| **samples**(2) 36:22 37:8 | |
| **sandra**(1) 20:3 107:21 107:23 | |
| **sat**(5) 25:4 75:24 110:20 132:17 132:20 | |
| **satisfactory**(1) 145:24 | |
| **satisfied**(7) 8:23 12:23 12:24 25:8 149:5 160:8 164:11 | |
| **satisfies**(1) 160:15 | |
| **satisfy**(7) 8:3 10:3 50:2 148:24 149:14 152:5 158:7 | |
| **save**(1) 131:22 | |
| **saw**(3) 99:15 118:25 162:5 | |
| **say**(39) 12:3 13:22 16:11 19:16 28:5 36:1 38:22 45:25 47:25 48:2 49:5 49:20 49:21 63:22 64:20 64:20 65:1 69:25 70:12 71:5 103:14 119:7 120:2 122:16 124:3 124:3 125:21 128:13 129:4 130:16 130:21 133:7 136:15 144:12 144:17 147:4 153:23 164:5 164:20 | |
| **saying**(2) 28:19 38:22 38:24 46:22 47:24 128:20 133:9 133:16 133:18 135:20 140:3 140:18 144:24 147:21 150:9 151:21 151:24 151:25 153:15 156:23 158:7 162:11 | |
| **says**(26) 13:25 14:24 14:25 14:25 27:23 45:22 48:23 48:24 49:16 68:22 94:2 102:4 126:24 127:10 131:10 140:17 145:15 147:19 155:2 155:18 156:4 156:6 156:12 159:10 159:14 163:1 | |
| **scene**(1) 145:12 | |
| **schedule**(1) 118:7 | |
| **schedules**(2) 112:6 135:12 | |
| **schemes**(1) 19:21 | |
| **schiffrin**(21) 12:6 58:18 59:1 67:23 67:25 68:4 68:9 69:15 69:20 90:5 90:7 90:12 90:19 90:19 93:18 94:10 94:19 139:8 145:12 163:3 163:21 | |

| Word | Page:Line |
| --- | --- |
| **schiffrin's**(1) 146:3 | |
| **schlop**(1) 157:18 | |
| **schmidt**(3) 2:45 4:20 4:21 | |
| **school**(1) 17:10 | |
| **schuylkill**(1) 1:37 | |
| **screamed**(1) 86:22 | |
| **scrubbed**(2) 31:8 48:13 | |
| **scrubbing**(1) 43:21 | |
| **scrupulous**(1) 134:1 | |
| **scrutiny**(2) 28:7 148:13 | |
| **seat**(2) 16:9 129:1 | |
| **seated**(5) 3:4 88:15 113:14 118:4 | |
| **second**(17) 23:17 24:1 24:10 25:9 28:3 31:7 35:2 36:3 37:7 38:12 93:15 94:1 98:12 122:5 139:6 144:7 148:4 164:8 | |
| **section**(16) 20:14 20:16 48:23 125:4 125:4 125:7 125:9 126:19 127:8 154:24 159:9 159:13 159:14 159:16 159:20 159:21 | |
| **secure**(1) 159:15 | |
| **secured**(2) 2:43 159:21 | |
| **securities**(3) 159:17 163:11 163:12 | |
| **see**(45) 31:6 31:16 32:5 35:14 40:24 47:6 50:15 55:23 58:16 58:24 59:7 60:17 62:1 63:7 69:23 70:4 75:15 78:15 82:18 82:21 87:18 90:5 90:10 90:16 92:4 92:7 92:13 93:16 93:19 102:7 102:19 103:2 108:25 114:4 115:3 115:5 117:22 141:22 143:16 144:22 145:14 146:1 147:22 154:16 154:24 | |
| **seeing**(4) 51:5 105:8 105:9 109:14 | |
| **seek**(1) 133:19 | |
| **seem**(2) 15:4 19:21 | |
| **seen**(9) 9:4 32:16 73:20 97:4 102:12 102:22 103:23 104:2 105:2 | |
| **select**(3) 86:5 100:2 125:12 | |
| **selection**(1) 125:11 | |
| **send**(6) 36:1 78:7 81:12 111:17 133:12 162:19 | |
| **sending**(3) 81:12 81:15 81:16 | |
| **sends**(2) 111:12 145:25 | |
| **senior**(10) 37:15 39:4 42:6 80:9 80:11 80:14 82:6 82:12 96:7 141:8 | |
| **sense**(4) 13:7 14:23 103:6 114:4 | |
| **sensitivity**(1) 165:4 | |
| **sent**(25) 35:10 52:1 56:24 57:2 66:5 78:10 78:12 79:3 80:17 81:4 81:9 84:24 87:12 94:14 99:5 100:6 102:9 106:17 106:20 106:25 107:9 107:14 111:13 162:10 162:12 | |
| **sentence**(3) 58:24 67:25 140:4 | |
| **separate**(2) 24:18 44:4 | |
| **series**(3) 96:18 141:13 152:6 | |
| **serious**(1) 50:4 | |
| **serve**(5) 61:10 61:14 129:4 131:4 131:7 | |
| **served**(2) 9:20 13:17 | |
| **service**(5) 1:36 1:43 1:38 128:24 151:25 | |
| **services**(1) 1:36 157:7 157:7 157:8 157:9 157:10 | |
| **set**(3) 55:11 72:5 153:17 | |
| **sets**(1) 50:15 | |
| **setting**(1) 118:7 | |
| **settled**(6) 16:1 35:24 128:19 136:4 136:4 | |
| **settlement**(4) 32:22 32:25 41:15 136:5 | |
| **seven**(3) 52:1 106:10 112:6 | |
| **seven-year**(2) 22:24 42:2 | |
| **several**(3) 12:9 160:24 161:10 | |
| **severally**(3) 127:14 154:23 156:10 | |
| **shall**(5) 122:7 127:14 154:23 156:10 | |
| **shape**(2) 126:17 162:19 | |
| **share**(2) 120:9 142:11 | |
| **shared**(2) 47:23 95:1 | |

| Word | Page:Line |
| --- | --- |
| **she**(2) 9:24 37:12 | |
| **sheet**(1) 145:4 | |
| **sheets**(2) 95:16 95:17 | |
| **shiffrin**(1) 94:8 | |
| **shift**(1) 134:5 | |
| **shifting**(2) 155:21 160:7 | |
| **shifts**(2) 160:16 160:16 | |
| **short**(3) 116:14 116:14 117:14 | |
| **shortest**(1) 116:8 | |
| **shortly**(1) 61:9 | |
| **should**(30) 6:10 16:4 16:11 16:13 19:11 19:25 20:11 21:8 47:24 48:3 51:1 57:6 57:12 69:4 69:21 88:9 93:5 114:10 116:16 123:6 129:17 139:2 139:9 144:12 144:17 146:18 146:21 147:4 148:4 164:8 | |
| **shouldn't**(16) 13:16 13:23 13:24 14:1 15:1 16:12 16:15 68:12 68:17 69:1 123:7 124:12 128:14 128:17 128:23 129:17 | |
| **show**(14) 27:5 27:6 27:9 29:16 30:16 30:17 30:18 30:19 40:23 46:21 48:2 133:1 151:24 155:20 | |
| **showed**(5) 145:18 148:1 149:16 149:19 152:17 | |
| **showing**(3) 10:19 119:16 160:22 | |
| **shown**(1) 120:25 | |
| **shows**(2) 7:14 126:4 | |
| **shy**(1) 5:25 | |
| **side**(6) 8:10 17:21 113:7 121:18 121:19 150:20 | |
| **sidelines**(3) 12:14 17:21 18:12 | |
| **sideways**(1) 17:14 | |
| **sign**(1) 145:15 | |
| **signature**(4) 55:1 108:10 108:12 115:15 | |
| **signatures**(1) 108:10 | |
| **significant**(6) 17:18 20:4 34:24 92:20 92:21 103:11 | |
| **significantly**(2) 6:1 47:20 | |
| **silence**(1) 154:14 | |
| **silent**(1) 144:13 | |
| **similarly**(6) 72:24 76:23 104:21 109:20 110:2 110:7 | |
| **simple**(1) 160:1 | |
| **simplified**(1) 44:23 | |
| **simply**(2) 45:4 137:22 | |
| **since**(7) 13:20 110:24 111:16 111:20 118:16 119:6 147:23 | |
| **single**(11) 65:24 66:20 101:8 105:16 106:13 119:15 119:20 120:21 123:25 124:2 157:20 | |
| **singularly**(1) 147:10 | |
| **sir**(17) 3:7 3:18 90:5 90:10 90:16 92:7 92:13 92:24 93:12 93:20 94:12 98:14 98:18 107:17 114:24 115:7 116:12 | |
| **sit**(10) 12:14 18:12 20:9 26:20 62:10 63:8 123:1 131:21 156:20 156:24 | |
| **site**(1) 62:5 | |
| **sites**(1) 23:14 | |
| **sits**(4) 23:23 24:4 28:9 61:24 | |
| **sitting**(12) 13:15 13:23 26:4 41:25 53:25 63:12 70:17 77:18 105:12 112:11 123:5 164:5 | |
| **situation**(4) 43:3 127:3 127:5 127:6 | |
| **six**(3) 7:11 28:6 137:16 | |
| **size**(1) 9:7 | |
| **skill**(1) 122:9 | |
| **slide**(7) 37:7 38:10 39:2 42:9 43:13 48:9 149:17 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| slides(9) | 21:23 50:16 121:2 121:4 121:6 122:6 136:19 149:16 151:4 | staffed(4) | 9:14 35:8 39:3 141:5 | such(6) | 12:9 37:17 59:7 122:7 140:8 161:2 | taylor(3) | 1:29 2:35 4:16 |
| slipped(1) | 78:14 | staffing(5) | 11:21 12:21 39:15 42:5 47:12 101:9 104:24 153:7 164:7 | sue(1) | 11:19 | team(7) | 80:24 120:4 124:9 124:14 124:16 126:16 162:21 |
| smack(1) | 164:5 | | | sued(1) | 21:3 | | |
| small(3) | 48:14 48:16 130:22 | | | sufficient(3) | 143:10 160:3 160:9 | tecce(104) | 2:6 21:10 21:11 21:16 21:18 21:22 21:25 22:1 22:5 26:6 26:9 26:12 26:16 26:19 27:5 27:15 27:17 29:4 29:22 30:1 33:2 34:5 34:18 35:12 35:14 36:9 36:12 36:20 36:22 39:23 40:5 40:6 40:13 40:16 42:11 43:8 43:11 44:15 44:18 45:25 46:3 46:4 48:18 49:3 50:1 51:11 60:18 60:22 61:6 94:19 101:24 114:15 114:17 114:19 114:20 114:23 115:17 115:23 116:8 117:5 117:9 117:13 117:17 117:19 117:21 131:24 131:25 132:1 132:5 132:8 137:10 138:23 139:17 139:19 139:21 140:24 141:17 142:18 144:6 144:22 146:19 146:23 147:1 147:9 148:9 149:11 149:19 154:10 154:22 155:1 158:13 158:14 158:16 158:24 159:5 159:10 159:22 160:6 161:10 161:15 162:25 164:14 164:19 165:8 |
| smaller(1) | 24:23 | stake(1) | 45:13 | | | | |
| smallest(1) | 120:6 | stamped(1) | 9:7 | suggest(4) | 97:5 123:9 127:2 128:17 | | |
| smart(1) | 119:10 | stand(7) | 18:23 20:25 54:1 55:18 117:24 122:13 128:7 | suggested(5) | 18:19 18:19 128:11 128:15 163:4 | | |
| so-called(2) | 28:19 39:20 | | | | | | |
| sold(6) | 99:3 163:8 163:9 163:11 163:13 163:14 | standard(15) | 10:23 10:25 11:1 15:9 15:14 17:23 23:25 24:2 25:9 51:2 132:24 134:4 148:25 149:6 158:7 | suggesting(3) | 117:11 141:19 160:17 | | |
| | | | | suggestion(1) | 96:4 | | |
| soldier(1) | 154:12 | standards(1) | 23:22 | suggests(3) | 102:14 119:21 137:23 | | |
| solicited(2) | 60:18 91:12 | standpoint(1) | 75:3 | suit(1) | 17:13 | | |
| solus(51) | 2:4 2:12 11:9 18:16 57:15 58:18 59:1 59:15 70:6 70:9 73:23 74:3 74:6 74:9 74:13 74:20 75:11 84:24 85:5 85:16 85:20 85:23 86:2 86:8 86:14 87:6 87:6 90:20 90:22 91:17 92:12 98:25 102:14 102:21 103:2 103:15 104:8 104:22 105:5 105:12 105:16 106:18 106:20 106:25 107:10 107:10 12:16 142:14 146:5 146:6 163:7 | stands(1) | 157:22 | suite(1) | 2:22 | | |
| | | start(10) | 4:4 5:17 31:18 52:16 117:7 117:8 119:3 121:12 147:5 155:1 | sullivan(1) | 2:5 | | |
| | | | | sum(2) | 59:5 49:7 | | |
| | | started(3) | 5:25 50:10 114:4 | summaries(12) | 66:2 66:8 66:11 97:9 97:11 97:11 97:13 97:24 105:12 107:8 111:14 111:17 | | |
| | | starting(2) | 135:8 152:18 | | | | |
| | | state(3) | 53:23 128:2 128:2 | summarize(2) | 17:5 97:16 | | |
| | | stated(3) | 28:8 39:9 48:1 | summary(3) | 82:19 100:20 111:12 | | |
| solus's(3) | 70:13 70:14 105:9 | statement(5) | 125:5 126:22 129:24 139:24 | sunday(1) | 58:15 | | |
| solved(1) | 135:18 | | | super(1) | 16:5 | | |
| solvency(1) | 28:24 | statements(4) | 19:13 141:15 141:18 145:25 | supervision(1) | 76:23 | | |
| some(33) | 10:4 14:24 14:25 14:25 17:5 18:9 19:9 19:15 19:20 21:23 31:13 31:17 36:22 37:10 38:9 39:1 39:14 43:8 55:19 65:18 65:18 65:20 95:2 96:3 101:15 124:24 128:21 143:21 144:2 144:3 149:3 152:17 165:4 | states(12) | 1:1 1:20 9:9 27:20 34:6 45:9 50:2 50:20 77:13 125:23 128:2 138:13 | support(14) | 7:20 8:14 28:22 28:25 29:6 31:25 40:10 115:4 135:4 135:7 135:10 135:19 135:22 144:9 | tecce's(5) | 159:14 160:25 161:3 161:23 |
| | | | | | | technical(1) | 103:6 |
| | | status(2) | 24:1 135:24 | supporter(1) | 135:22 | telecom(5) | 121:15 121:16 121:18 127:22 127:22 |
| | | statute(4) | 10:8 48:25 155:4 155:19 | supports(1) | 38:1 | | |
| | | statutory(4) | 23:16 23:23 24:4 133:14 | suppose(1) | 116:16 | teleconference(1) | 13:2 |
| somebody(1) | 30:5 | stay(1) | 15:10 | supposed(2) | 47:4 67:6 | telephone(4) | 51:8 118:9 129:3 162:17 |
| somehow(1) | 15:24 | ste(1) | 2:37 | supreme(8) | 48:20 49:4 49:14 50:2 50:25 155:2 155:17 155:19 | telephonic(1) | 53:15 |
| someone(4) | 30:3 71:25 103:24 124:22 | steeped(2) | 23:7 23:9 | | | television(1) | 50:15 |
| something(8) | 17:14 39:10 42:7 45:19 53:25 100:20 129:5 153:12 | step(5) | 107:17 113:24 116:11 122:2 160:10 | sure(27) | 10:5 19:6 22:1 31:9 32:11 33:18 41:10 41:20 43:24 44:8 45:13 48:11 48:15 48:15 74:21 75:4 79:7 81:15 92:20 107:1 117:17 139:3 143:2 143:8 143:14 144:8 146:13 | tell(19) | 17:19 23:4 50:9 50:11 71:22 77:22 98:21 99:21 104:10 104:13 104:24 115:9 117:2 118:15 118:15 118:17 118:22 140:23 154:1 |
| | | stephen(5) | 2:21 4:11 99:12 114:13 115:3 | | | | |
| | | stepped(1) | 122:3 | | | | |
| soon(3) | 35:23 35:23 165:6 | steps(1) | 34:24 | | | | |
| sorry(23) | 20:17 50:9 54:25 57:19 60:12 63:14 71:8 73:9 75:16 75:19 78:1 79:18 81:19 113:14 113:16 113:18 121:24 125:6 126:12 130:1 139:17 139:18 139:19 | steroids(1) | 10:1 | surgical(2) | 9:12 17:3 | tellingly(1) | 12:19 |
| | | steve(5) | 92:5 93:16 119:4 146:2 146:3 | surprise(1) | 87:18 | tells(3) | 49:15 149:22 149:25 |
| | | steven(1) | 21:19 | surround(1) | 161:11 | tension(1) | 152:18 |
| | | still(4) | 86:12 87:23 111:7 142:4 | suspect(3) | 35:22 41:23 42:3 | terminated(1) | 83:23 |
| | | stipulated(3) | 51:19 51:21 52:2 | swear(2) | 108:14 124:11 | terms(8) | 14:20 15:12 46:14 93:1 98:19 121:10 121:10 153:8 |
| sort(3) | 46:21 121:9 144:3 | stipulation(1) | 52:12 | switched(1) | 83:19 | | |
| sought(1) | 127:18 | stop(1) | 46:17 | sworn(5) | 52:22 54:7 54:9 107:23 114:13 | test(5) | 8:1 8:2 12:23 19:1 164:10 |
| sound(2) | 1:42 165:17 | stopped(1) | 162:13 | sync(1) | 52:6 | testified(11) | 63:1 68:12 74:20 112:10 122:12 122:14 123:10 124:17 126:1 129:12 143:6 |
| sounds(1) | 117:10 | straightforward(6) | 28:4 30:8 44:24 44:25 44:25 135:2 | tab(34) | 58:6 58:7 58:14 60:10 60:12 62:14 67:17 69:6 69:7 69:12 77:2 79:11 87:10 87:13 87:14 138:21 139:15 139:17 139:18 139:19 143:19 143:19 144:18 145:3 145:11 145:17 145:18 145:25 146:1 147:19 148:16 148:17 160:24 161:1 | | |
| southern(1) | 15:20 | | | | | testifies(1) | 47:6 |
| speak(6) | 29:12 36:11 74:3 88:10 104:3 126:3 | strategies(1) | 7:13 | | | testify(5) | 33:21 34:18 40:21 61:21 71:4 |
| | | strauss(2) | 2:27 53:11 | | | testifying(2) | 95:8 154:10 |
| speaking(1) | 120:4 | street(3) | 1:11 1:37 2:38 | table(4) | 4:7 19:17 129:2 130:13 | testimony(10) | 30:17 40:24 51:12 52:18 63:6 144:2 151:17 151:17 160:10 160:20 |
| speaks(2) | 8:6 8:16 | structure(1) | 7:10 | tabs(1) | 73:7 | | |
| specific(10) | 11:5 19:25 28:15 30:21 70:18 72:9 73:2 105:5 110:2 141:24 | stuff(4) | 14:25 75:4 117:1 121:9 | tails(1) | 15:2 | texas(1) | 25:20 |
| | | subject(9) | 10:25 11:1 33:3 52:12 94:5 132:10 143:4 144:2 152:23 | take(33) | 3:11 3:13 6:10 8:24 19:4 19:10 19:17 36:14 42:12 51:12 54:3 63:4 63:15 73:6 77:2 87:10 88:8 88:8 89:16 89:23 91:6 91:20 92:24 95:10 101:25 102:17 114:4 117:11 117:23 123:21 144:18 162:20 164:23 | text(1) | 127:9 |
| | | | | | | thaltus(1) | 93:19 |
| specifically(18) | 23:10 24:17 27:8 30:11 32:6 51:3 67:16 70:19 77:19 77:22 98:24 112:13 134:7 136:23 148:2 148:3 148:18 152:22 | submission(1) | 69:22 | | | than(24) | 14:19 34:10 42:2 42:16 51:2 69:1 69:3 73:5 80:11 87:4 105:4 107:7 116:20 130:23 141:10 141:24 142:14 148:11 157:25 159:7 161:4 162:10 164:8 |
| | | submissions(1) | 150:1 | | | | |
| | | submit(12) | 10:1 12:24 13:5 21:7 22:22 44:19 122:12 132:12 140:9 152:24 158:4 164:3 | taken(4) | 31:17 39:15 51:22 130:13 | | |
| specifics(1) | 39:1 | | | takes(2) | 30:20 146:1 | | |
| speed(3) | 80:25 84:7 160:1 | submitted(14) | 11:24 46:10 61:10 119:15 119:19 130:15 130:17 139:25 140:23 160:3 160:8 160:20 160:21 162:8 | taking(7) | 11:19 19:9 28:18 34:23 76:18 76:24 110:24 | thank(81) | 3:4 5:10 5:18 5:19 19:7 21:8 21:9 21:25 22:1 46:4 50:1 51:6 51:7 51:9 51:11 51:11 52:13 52:14 53:3 53:24 54:4 54:16 55:7 55:12 55:14 55:20 71:12 71:12 75:19 78:25 88:7 88:12 88:15 88:17 88:20 89:21 91:7 91:8 91:8 98:9 101:20 107:6 107:16 107:17 107:20 107:25 108:19 113:13 113:22 113:23 113:25 114:1 114:2 114:12 114:14 114:19 114:20 114:20 115:23 115:25 116:12 116:13 118:3 118:5 118:12 131:21 131:23 132:1 132:8 158:15 158:16 158:17 158:19 164:12 164:13 164:14 164:20 165:8 165:9 165:11 165:12 |
| spelled(1) | 122:6 | | | | | | |
| spend(3) | 77:3 138:8 138:16 | | | talented(1) | 50:19 | | |
| spending(2) | 43:1 71:15 | | | talk(5) | 36:2 52:16 101:24 120:13 120:25 | | |
| spent(7) | 30:10 34:16 45:10 106:1 121:23 121:24 142:23 | subsequently(1) | 122:15 | talked(2) | 8:10 106:16 | | |
| | | substance(1) | 49:7 | talking(6) | 23:12 63:15 119:3 147:24 148:17 158:24 | | |
| spiral(1) | 83:18 | substantial(10) | 10:19 28:16 38:2 45:18 133:22 140:13 140:15 149:5 151:25 157:1 | | | | |
| spiraled(1) | 9:2 | | | | | | |
| spirit(1) | 148:22 | substantial-contribution(2) | 23:25 25:9 | task(5) | 56:9 110:11 110:15 110:19 112:12 | | |
| spoke(5) | 86:25 87:3 87:5 103:20 144:24 | substantive(1) | 136:2 | tasks(6) | 37:17 95:7 105:5 109:20 110:2 110:7 | | |
| spoken(2) | 4:8 48:20 | substituted(3) | 142:16 142:18 143:20 | | | | |
| spot(3) | 123:22 123:22 145:8 | succeeded(1) | 154:8 | | | | |
| spring(1) | 4:24 | succeeds(1) | 131:1 | | | thanks(1) | 90:15 |
| stack(1) | 11:23 | successful(1) | 155:16 | | | | |
| staff(3) | 80:22 83:1 133:5 | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|

**that**(301) 5:13 5:16 5:22 5:22 5:23 6:8 6:10 6:18 7:5 7:16 7:20 8:4 8:6 8:16 9:1 9:11 9:14 9:17 9:24 9:24 10:1 10:3 10:5 10:6 10:16 10:20 10:23 10:24 10:25 11:11 11:19 11:21 11:23 12:7 12:11 12:13 12:14 12:15 12:17 12:17 12:24 13:2 13:5 13:6 13:16 13:17 13:18 14:7 15:1 15:4 15:6 15:9 16:5 16:8 16:12 17:2 17:7 17:10 17:16 18:4 18:14 18:14 18:16 18:17 19:11 19:16 19:16 19:18 19:19 19:21 19:25 20:8 20:10 20:15 20:17 20:17 20:20 21:7 22:6 22:14 22:15 22:17 22:17 22:19 22:22 22:22 22:23 23:4 23:6 23:10 23:13 23:14 23:15 23:19 23:21 23:23 24:4 24:8 24:12 24:20 24:21 24:21 24:24 24:25 24:25 24:25 25:1 25:2 25:3 25:4 25:5 25:8 25:13 25:16 25:17 25:24 25:25 26:1 26:2 26:4 26:7 26:21 26:22 27:6 27:7 27:12 27:25 28:1 28:9 28:11 28:14 28:14 28:19 28:23 28:23 28:25 28:25 29:1 29:8 29:11 29:13 29:15 29:17 30:4 30:7 30:10 30:13 30:15 30:20 30:22 31:1 31:1 31:2 31:9 31:20 31:21 31:24 32:4 32:5 32:5 32:11 32:11 32:12 32:16 32:21 32:23 33:2 33:4 33:5 33:9 33:10 33:13 33:14 33:16 33:18 33:18 33:19 33:25 34:7 34:7 34:12 34:13 34:14 34:20 34:20 34:22 34:24 34:25 35:2 35:4 35:5 35:7 35:9 35:19 35:20 35:21 35:21 35:22 35:25 36:3 36:10 36:11 36:25 37:3 37:5 37:10 37:12 38:6 38:14 38:20 39:1 39:6 39:9 40:3 40:7 40:7 40:20 40:25 41:1 41:3 41:5 41:6 41:12 41:14 41:21 41:22 41:23 42:3 42:4 42:5 42:7 42:12 42:16 42:25 43:24 44:5 44:8 44:18 44:19 45:1 45:2 45:3 45:5 45:7 45:11 45:14 45:20 45:22 46:2 46:5 46:6 46:8 46:9 46:9 46:10 46:16 46:21 47:2 47:2 47:2 47:8 47:8 47:11 47:13 47:17 47:20 47:21 48:2 48:9 48:11 48:13 48:21 48:24 49:1 49:9 49:15 49:16 49:18 49:20 49:21 49:22 50:1 50:7 50:8 50:11 50:19 50:23 50:23 50:25 51:1 51:3 51:5 51:19 51:20 51:21 52:11 52:17 52:18

**that**(301) 52:20 53:1 53:16 53:21 53:23 54:6 54:20 54:21 54:24 55:1 55:3 55:18 56:2 56:3 56:6 56:17 56:20 56:23 57:3 57:6 57:8 57:12 57:14 57:15 57:17 57:22 58:3 58:8 58:9 58:9 58:15 58:16 58:24 59:4 59:8 59:10 59:15 59:18 59:20 59:25 60:17 60:18 60:21 60:25 61:2 61:3 61:5 61:6 61:13 61:24 61:25 62:2 62:4 62:5 62:7 62:9 62:10 62:12 63:7 63:8 63:15 63:18 63:23 63:24 64:6 64:8 64:13 64:25 64:25 65:15 65:22 66:7 66:10 66:16 66:21 66:23 66:23 66:25 67:3 67:7 67:11 67:13 67:14 67:16 68:8 68:10 68:11 68:13 68:16 68:20 68:22 69:1 69:2 69:8 69:8 69:8 69:10 69:23 70:1 70:2 70:4 70:6 70:9 71:1 71:6 71:15 72:2 72:14 72:16 73:1 73:1 73:9 73:23 73:24 74:2 74:4 74:7 74:10 74:15 74:18 74:20 74:23 75:9 75:15 76:15 75:20 76:21 76:25 77:11 77:13 77:19 77:20 77:22 77:23 78:5 78:11 78:14 78:18 78:20 79:2 79:2 80:2 80:3 80:6 80:6 80:18 80:19 81:15 81:24 82:1 82:2 82:2 82:5 82:6 82:9 82:15 82:21 82:24 83:7 83:12 83:12 83:14 83:18 83:24 83:25 84:1 84:6 84:6 84:10 84:11 84:13 84:14 84:16 84:19 84:24 85:3 85:13 85:19 85:20 85:21 86:25 87:1 87:4 87:12 87:12 87:20 87:21 88:1 88:2 89:8 89:13 89:13 89:14 90:5 90:8 90:9 90:10 90:16 90:18 90:21 90:22 91:6 91:12 91:13 91:15 92:4 92:7 92:13 92:15 92:20 93:2 93:16 93:18 93:19 93:22 93:25 94:1 94:5 94:11 94:12 94:14 94:18 95:1 95:3 95:7 95:21 96:2 96:5 97:2 97:5 97:9 97:17 97:17 98:2 98:16 98:21 99:5 99:12 99:15 99:21 99:22 100:3 100:19 100:20 101:3 101:6 101:12 101:15 101:15 102:1 102:4 102:6 102:7 102:9 102:13 102:13 102:14 102:15 102:19 102:22 102:22 103:2 103:4 103:4 103:5 103:7 103:10 103:11 103:14 103:18 104:1 104:2 104:3 104:5 104:10 104:15 104:21 104:24 105:4 105:5 105:12 105:13 105:14 105:15 105:23 106:10 106:13

**that**(301) 106:17 106:20 106:21 106:24 106:25 108:4 108:14 108:14 109:3 109:4 109:5 109:6 109:9 109:13 109:25 110:3 110:3 110:8 110:9 110:11 110:12 110:13 110:19 110:20 110:21 110:22 111:3 111:18 111:23 111:25 112:8 112:11 112:12 112:13 112:15 112:16 112:19 112:19 112:22 112:22 112:24 113:1 113:2 113:4 113:6 113:6 113:7 113:18 114:11 114:25 115:2 115:3 115:5 115:7 115:12 115:15 115:15 116:8 116:13 116:14 116:17 116:17 116:20 117:1 117:19 117:20 117:22 118:14 118:17 118:18 118:24 119:11 119:13 119:16 119:17 119:19 119:21 119:24 120:8 120:10 120:22 120:22 121:2 121:7 121:11 121:18 122:12 122:16 122:23 123:3 123:9 123:9 123:11 123:18 123:21 123:22 124:4 124:7 124:8 124:10 124:11 124:15 124:23 124:24 125:9 125:11 125:11 125:12 125:19 125:21 126:1 126:2 126:4 126:6 126:6 126:8 126:17 126:21 127:2 127:4 127:5 127:5 127:17 127:21 127:23 128:1 128:9 128:11 128:14 128:18 128:20 128:21 128:23 128:25 129:1 129:5 129:6 129:8 129:13 129:16 129:18 129:20 129:21 129:22 129:25 130:1 130:3 130:5 130:8 130:14 130:18 131:3 131:10 131:22 132:2 132:5 132:6 132:11 132:12 132:14 132:15 132:17 132:22 133:1 133:10 133:11 133:17 133:18 133:25 134:10 134:11 134:15 135:3 135:13 135:17 136:2 136:2 136:9 136:11 136:15 136:18 136:20 136:25 137:4 137:9 137:10 137:22 137:22 137:23 138:1 138:2 138:3 138:4 138:5 138:6 138:7 138:7 138:10 138:10 138:11 138:18 138:24 138:25 138:25 139:4 139:5 139:12 139:12 139:12 140:5 140:5 140:16 140:17 140:18 140:19 140:20 141:3 141:4 141:13 141:20 141:21 141:21 141:22 142:23 142:24 143:2 143:4 143:6 143:9 143:11 143:17 143:17 143:21 144:2 144:3 144:8 144:10 144:13 144:18 144:23 145:3 145:9 145:19 146:3 146:5 146:6 146:9 146:10 146:11 146:13 146:14 147:11 147:13 147:23 148:13 148:20 148:21 148:23 148:24 149:3 149:4 149:5 149:25 150:3 150:5 150:6 150:8 150:9 150:10 150:11 150:12 150:15 150:15 150:18 150:19 150:21 150:24 150:24

**that**(116) 151:1 151:9 151:14 151:15 151:18 151:21 151:22 152:4 152:6 152:7 152:8 152:9 152:10 152:15 152:20 152:22 152:24 153:7 153:8 153:18 153:19 153:21 153:24 153:25 154:4 154:19 154:23 154:24 155:6 155:9 155:10 155:12 155:13 155:20 155:20 155:24 156:1 156:1 156:1 156:2 156:3 156:5 156:5 156:11 156:12 156:13 156:14 156:18 156:19 156:22 157:2 157:5 157:5 157:6 157:6 157:7 157:7 157:16 157:18 157:22 157:22 157:25 158:1 158:1 158:1 158:3 158:4 158:4 158:9 158:21 158:22 159:7 159:23 159:23 160:1 160:3 160:3 160:6 160:12 160:14 160:17 160:18 160:21 161:1 161:1 161:3 161:9 161:15 161:15 161:22 161:24 162:4 162:5 162:6 162:7 162:8 162:13 162:15 162:18 162:21 162:22 162:24 162:25 163:1 163:5 163:10 163:14 163:21 163:24 164:3 164:8 164:22 164:24 165:3 165:4 165:6 165:16

**that's**(163) 6:13 9:1 9:18 10:13 10:14 10:21 13:25 14:14 15:8 15:12 15:17 16:19 16:23 17:10 17:23 19:14 20:14 20:16 22:3 25:2 26:14 27:15 27:16 27:16 28:7 28:8 30:6 30:7 30:12 34:4 36:17 37:19 38:19 39:9 39:11 39:15 39:15 39:18 39:16 40:15 44:12 44:15 44:16 45:2 45:15 45:18 45:24 46:6 46:18 46:18 46:19 46:19 46:20 48:6 50:10 52:9 52:13 52:24 52:24 56:1 56:13 56:18 57:1 57:7 57:10 58:17 59:2 59:21 60:8 62:15 64:1 64:2 64:5 64:14 65:8 65:13 65:23 66:12 66:15 71:9 76:17 78:6 78:21 80:20 86:1 86:5 87:11 94:2 94:8 94:16 96:18 99:7 99:23 102:17 105:25 106:17 110:1 110:10 111:19 111:24 112:21 113:19 115:21 119:21 120:19 121:14 121:17 121:22 121:24 122:14 123:24 123:25 124:11 125:13 125:17 127:18 128:7 128:17 128:23 129:8 129:11 132:15 133:13 133:22 135:1 137:11 137:13 139:2 139:24 143:3 143:21 146:2 146:9 146:11 146:15 147:14 147:14 147:22 148:15 148:22 148:23 148:24 149:15 152:9 153:13 153:17 155:17 156:7 156:8 156:8 156:9 156:9 156:9 157:21 158:8 159:11 159:12 160:2 160:19 160:22 161:4 161:14 164:10

**the**(301) 1:1 1:2 1:19 1:30 2:37 3:2 3:3 3:5 3:8 3:10 3:14 3:20 3:20 3:25 4:3 4:4 4:6 4:8 4:10 4:12 4:15 4:18 4:19 4:20 4:21 5:1 5:4 5:5 5:10 5:11 5:13 5:15 5:18 5:20 5:22 5:23 6:1 6:2 6:3 6:5 6:6 6:6 6:6 6:7 6:8 6:9 6:11 6:11 6:12 6:15 6:16 6:17 6:17 6:18 6:19 6:19 6:21 6:22 7:5 7:5 7:6 7:6 7:7 7:7 7:7 7:8 7:9 7:10 7:11 7:14 7:14 7:15 7:15 7:16 7:17 7:18 7:19 7:20 7:22 7:23 7:24 7:24 8:1 8:2 8:2 8:3 8:4 8:4 8:5 8:6 8:6 8:8 8:9 8:9 8:12 8:13 8:13 8:15 8:16 8:16 8:17 8:17 8:17 8:18 8:20 8:21 8:24 9:1 9:2 9:3 9:4 9:5 9:5 9:5 9:8 9:9 9:13 9:14 9:19 9:20 9:23 10:4 10:6 10:8 10:8 10:10 10:10 10:11 10:12 10:13 10:14 10:14 10:15 10:22 10:24 10:25 11:3 11:4 11:5 11:7 11:8 11:8 11:8 11:9 11:11 11:12 11:15 11:15 11:17 11:17 11:19 11:20 11:25 12:2 12:6 12:6 12:7 12:7 12:7 12:8 12:10 12:11 12:12 12:12 12:13 12:14 12:15 12:15 12:20 12:20 12:21 12:22 12:23 13:2 13:7 13:9 13:11 13:12 13:14 13:16 13:17 13:20 13:21 13:22 13:24 13:25 14:3 14:3 14:3 14:4 14:5 14:7 14:8 14:11 14:11 14:12 14:13 14:15 14:16 14:21 14:23 15:6 15:8 15:9 15:13 15:15 15:18 15:19 15:21 15:23 16:2 16:5 16:5 16:6 16:7 16:8 16:9 16:14 16:14 16:16 16:16 16:17 16:18 16:19 16:20 16:21 16:22 16:24 17:1 17:15 17:16 17:18 17:19 17:20 17:21 17:23 17:23 17:24 18:1 18:4 18:11 18:12 18:12 18:15 18:16 18:17 18:18 18:25 18:25 19:1 19:2 19:6 19:8 19:10 19:17 19:21 19:24 20:1 20:3 20:6 20:6 20:7 20:10 20:10 20:12 20:15 20:15 20:16 20:17 20:17 20:17 20:17 20:20 20:24 20:25 21:1 21:4 21:6 21:6 21:7 21:7 21:9 21:15 21:19 21:20 21:21 21:25 22:3 22:6 22:9 22:10 22:10

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**the**(301) 22:10 22:11 22:11 22:13 22:15 22:16 22:17 22:19 22:20 22:20 22:22 23:1 23:2 23:7 23:8 23:12 23:17 23:17 23:21 23:22 24:2 24:2 24:3 24:6 24:6 24:7 24:7 24:8 24:8 24:9 24:9 24:10 24:12 24:13 24:13 24:13 24:14 24:15 24:16 24:16 24:22 24:24 24:25 25:2 25:4 25:5 25:6 25:6 25:7 25:8 25:9 25:10 25:12 25:13 25:14 25:14 25:16 25:19 25:19 25:20 25:24 25:25 26:1 26:3 26:4 26:6 26:11 26:14 26:16 26:18 26:19 26:20 26:20 26:21 26:22 26:23 26:25 26:25 26:25 27:1 27:1 27:3 27:3 27:3 27:3 27:4 27:6 27:7 27:7 27:8 27:8 27:14 27:16 27:17 27:19 27:19 27:21 27:22 27:22 27:24 28:5 28:7 28:12 28:13 28:13 28:14 28:15 28:18 28:19 28:24 29:1 29:3 29:4 29:5 29:5 29:6 29:6 29:7 29:7 29:10 29:11 29:13 29:15 29:16 29:19 29:21 29:25 30:4 30:10 30:11 30:12 30:12 30:15 30:17 30:18 30:19 30:22 30:23 30:23 30:25 31:1 31:3 31:4 31:5 31:6 31:7 31:8 31:10 31:11 31:12 31:13 31:15 31:16 31:20 31:23 31:25 31:25 32:1 32:2 32:3 32:3 32:4 32:6 32:9 32:10 32:10 32:13 32:15 32:15 32:17 32:20 32:21 32:23 32:23 32:25 33:1 33:6 33:6 33:7 33:8 33:11 33:12 33:12 33:13 33:14 33:17 34:1 34:1 34:2 34:4 34:5 34:6 34:6 34:8 34:9 34:11 34:17 34:17 34:19 34:19 34:20 34:21 34:22 34:22 34:22 34:23 35:6 35:7 35:11 35:12 35:13 35:15 35:16 35:18 35:20 35:25 35:25 36:1 36:1 36:2 36:8 36:10 36:10 36:12 36:15 36:16 36:16 36:19 36:21 36:23 37:1 37:1 37:2 37:3 37:4 37:4 37:6 37:7 37:8 37:8 37:9 37:10 37:11 37:13 37:13 37:14 37:15 37:16 37:19 37:21 37:23 37:23 37:24 38:5 38:6 38:8 38:10 38:12 38:16 38:16 38:17 38:18 38:21 38:23 39:1 39:4 39:4 39:5 39:9 39:12 39:13 39:14 39:15 39:15 39:20 39:21 39:22 39:23 39:24 39:25 40:2 40:5 40:6 40:7 40:7 40:10 40:12 40:14 40:15 40:17 40:17 40:18 40:19 40:19 40:20 40:22 40:22 40:24 41:2 41:2 41:5

**the**(301) 41:8 41:8 41:9 41:11 41:11 41:12 41:12 41:13 41:14 41:15 41:15 41:17 41:17 41:18 41:18 41:18 41:19 41:23 41:23 41:25 42:10 42:13 42:15 42:17 42:17 42:18 42:21 42:22 43:3 43:3 43:5 43:6 43:7 43:9 43:10 43:11 43:13 43:14 43:14 43:15 43:15 43:16 43:20 43:21 43:21 43:21 43:25 44:1 44:2 44:4 44:5 44:9 44:11 44:12 44:14 44:17 44:19 44:20 44:20 44:25 45:5 45:6 45:7 45:8 45:8 45:14 45:15 45:16 45:21 45:22 45:24 45:25 46:2 46:5 46:7 46:8 46:9 46:9 46:11 46:12 46:13 46:14 46:15 46:15 46:16 46:17 46:18 46:19 46:19 46:21 46:21 46:22 46:22 47:1 47:3 47:4 47:5 47:10 47:10 47:18 47:19 47:21 47:25 48:1 48:3 48:3 48:6 48:15 48:18 48:19 48:20 48:21 48:24 48:25 48:25 49:1 49:2 49:2 49:3 49:3 49:5 49:7 49:8 49:9 49:9 49:11 49:11 49:16 49:17 49:18 49:19 49:19 49:20 49:21 49:22 49:22 49:24 50:2 50:2 50:6 50:7 50:8 50:8 50:9 50:12 50:13 50:19 50:20 50:23 50:25 50:25 51:6 51:11 51:17 51:18 51:18 51:19 51:21 51:22 51:24 51:25 52:7 52:10 52:11 52:12 52:13 52:15 52:17 52:19 52:22 52:23 52:23 52:24 53:2 53:4 53:6 53:10 53:12 53:14 53:16 53:16 53:16 53:17 53:19 53:19 53:20 53:21 53:23 53:24 54:3 54:5 54:8 54:10 54:12 54:15 55:1 55:4 55:5 55:6 55:7 55:11 55:14 55:16 55:17 55:18 55:23 55:24 56:2 56:5 56:5 56:6 56:11 56:14 56:16 56:20 57:25 58:7 58:7 58:8 58:9 58:12 58:15 58:16 58:16 58:19 58:22 58:22 58:24 59:7 59:15 59:18 59:20 59:20 59:20 59:21 59:23 59:23 60:2 60:3 60:3 60:3 60:6 60:7 60:10 60:12 60:13 60:21 60:22 61:2 61:9 61:9 61:11 61:13 61:14 61:14 61:25 62:4 62:6 62:8 62:9 62:11 62:13 62:16 62:17 63:1 63:4 63:6 63:6 63:7 63:8 63:10 63:13 63:14 63:15 63:17 63:18 63:19 63:21 63:22 63:23 63:24 64:2 64:3 64:3 64:8 64:11 64:14 64:14

**the**(301) 64:15 64:16 64:24 65:2 65:6 65:11 65:15 65:16 66:2 66:3 66:7 66:10 66:16 66:16 66:17 66:21 66:23 67:2 67:2 67:3 67:3 67:7 67:9 67:11 67:11 67:13 67:13 67:14 67:14 67:14 67:15 67:17 67:20 67:21 67:21 67:22 67:25 67:25 68:4 68:6 68:8 68:16 68:17 68:20 68:25 69:1 69:3 69:6 69:8 69:11 69:20 69:21 69:25 70:1 70:2 70:3 70:6 70:8 70:9 70:13 70:14 70:18 70:19 70:19 70:23 70:23 70:24 70:24 70:24 70:25 71:3 71:5 71:7 71:10 71:11 71:11 71:14 71:15 71:17 71:19 71:22 72:3 72:6 72:6 72:11 72:11 72:13 72:14 72:16 72:19 73:1 73:2 73:5 73:6 73:13 73:15 73:18 73:23 74:3 74:16 74:17 74:17 74:18 75:1 75:3 75:6 76:5 75:11 75:15 75:16 75:19 75:24 76:1 76:5 76:12 76:13 76:15 76:16 76:19 76:23 76:24 76:24 77:5 77:7 77:11 77:11 77:18 77:23 77:23 78:1 78:9 78:12 78:14 78:15 78:20 78:20 78:22 78:23 78:25 79:3 79:12 79:15 79:15 79:16 79:18 79:20 79:20 80:2 80:2 80:5 80:11 80:12 80:12 80:18 80:21 80:22 81:1 81:1 81:11 81:17 81:18 81:19 81:20 81:21 81:21 81:23 81:24 81:24 81:24 82:3 82:3 82:5 82:6 82:6 82:8 82:10 82:11 82:12 82:14 82:17 82:17 82:18 83:9 83:12 83:22 83:25 84:1 84:2 84:11 84:14 84:19 84:20 85:5 85:16 85:20 86:5 86:5 86:10 86:12 86:20 86:20 87:3 87:4 87:11 87:13 87:15 87:18 87:19 87:24 87:25 88:3 88:3 88:4 88:7 88:9 88:10 88:12 88:14 88:15 88:19 89:7 89:8 89:13 89:17 89:19 89:21 90:9 90:15 91:2 91:6 91:17 91:17 91:24 92:9 92:11 92:22 93:4 93:5 93:9 93:14 93:14 93:15 93:22 93:23 93:25 94:1 94:2 94:6 94:11 94:12 94:19 95:2 95:11 95:14 95:17 95:18 95:21 95:24 96:4 96:8 96:18 96:21 96:22 96:24 97:2 97:10 97:16 97:17 97:19 98:1 98:8 98:11 98:12 98:23 99:8 99:16 99:21 99:24 100:1 100:2 100:6 100:13 100:16 100:20 100:24 101:2 101:3 101:8 101:23 101:25 102:3 102:4 102:6 102:14 102:17 103:1 103:5 103:6 103:11 103:16 104:1

**the**(301) 104:5 104:8 104:9 104:11 104:13 104:14 104:14 104:15 104:21 104:22 104:23 104:24 104:24 105:16 105:22 105:23 105:25 106:5 106:12 106:17 106:20 106:20 106:24 106:25 106:25 107:6 107:8 107:8 107:9 107:12 107:14 107:16 107:19 107:20 107:22 107:25 108:9 108:12 108:15 108:18 108:19 108:20 108:21 108:22 108:25 109:10 109:20 109:24 110:3 110:4 110:8 110:11 110:16 110:19 111:6 111:11 111:12 111:17 111:21 111:25 112:1 112:1 112:5 112:6 112:6 112:7 112:12 112:13 112:15 112:15 112:19 113:1 113:6 113:9 113:13 113:19 113:22 113:24 114:2 114:4 114:8 114:11 114:14 114:16 114:18 114:20 114:25 115:2 115:12 115:17 115:18 115:19 115:21 115:23 115:25 116:5 116:8 116:10 116:13 116:16 116:21 116:26 117:2 117:4 117:7 117:12 117:16 117:18 118:2 118:3 118:8 118:11 118:13 118:13 118:15 118:16 118:18 118:19 118:19 118:24 119:6 119:9 119:13 119:13 119:14 119:16 119:24 120:1 120:6 120:7 120:7 120:8 120:9 120:10 120:12 120:14 120:22 120:24 120:25 121:2 121:2 121:4 121:4 121:7 121:9 121:10 121:10 121:10 121:11 121:12 121:13 121:14 121:14 121:14 121:15 121:16 121:17 121:17 121:18 121:19 121:19 121:19 121:20 121:20 121:23 121:25 121:25 122:3 122:3 122:5 122:5 122:6 122:6 122:7 122:9 122:10 122:11 122:13 122:20 122:24 122:25 123:1 123:1 123:1 123:2 123:4 123:5 123:6 123:10 123:14 123:15 123:23 123:24 124:1 124:8 124:9 124:9 124:12 124:13 124:15 124:15 124:16 124:19 124:24 125:3 125:7 125:9 125:10 125:12 125:20 125:23 126:4 126:5 126:9 126:11 126:13 126:20 126:21 126:23 126:24 126:25 127:1 127:6 127:7 127:8 127:9 127:9 127:10 127:10 127:11 127:12 127:14 127:15 127:18 127:18 127:23 127:25 128:4 128:9 128:9 128:12 128:15 128:19 128:22 128:23 128:24 128:25 129:2 129:3 129:4 129:8 129:9 129:9 129:10 129:11 129:13 129:13 129:14 129:15 129:15 129:16 129:17 129:18 129:19 129:20 129:21 129:22 130:3 130:4 130:5 130:6 130:6 130:9 130:10 130:13 130:13 130:15 130:18 130:21 130:24 130:25 130:25 131:2 131:5 131:7 131:8 131:8 131:9 131:12 131:17 131:20 131:22 131:23 131:25 132:2 132:4 132:5 132:7 132:9 132:10 132:11

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**the(301)** 132:11 132:13 132:18 132:19 132:19 132:20 132:23 132:24 132:2 133:3 133:3 133:4 133:4 133:10 133:13 133:16 133:20 133:21 133:24 134:1 134:4 134:4 134:4 134:5 134:5 134:6 134:6 134:7 134:8 134:8 134:9 134:9 134:10 134:11 134:11 134:12 134:12 134:14 134:14 134:16 134:17 134:18 134:19 134:20 134:21 134:23 134:25 134:25 135:5 135:7 135:8 135:10 135:11 135:11 135:12 135:15 135:16 135:16 135:17 135:18 135:19 135:20 135:20 135:21 135:22 135:25 136:4 136:5 136:6 136:6 136:8 136:8 136:9 136:10 136:11 136:11 136:12 136:15 136:19 136:19 136:22 136:23 136:23 137:3 137:4 137:4 137:5 137:6 137:7 137:7 137:8 137:9 137:11 137:12 137:14 137:15 137:17 137:20 137:22 137:23 137:24 138:1 138:3 138:3 138:4 138:5 138:7 138:9 138:10 138:11 138:11 138:13 138:15 138:15 138:22 138:23 139:1 139:2 139:4 139:4 139:6 139:6 139:6 139:7 139:8 139:9 139:10 139:11 139:12 139:13 139:14 139:16 139:18 139:20 139:23 139:23 139:25 140:1 140:2 140:2 140:3 140:3 140:4 140:8 140:9 140:14 140:17 140:18 140:20 140:22 140:22 141:1 141:6 141:6 141:7 141:9 141:9 141:10 141:12 141:14 141:16 141:18 141:20 141:20 141:23 142:2 142:5 142:5 142:5 142:11 142:12 142:15 142:15 142:17 142:19 142:19 142:20 142:22 142:24 142:25 142:25 142:25 143:1 143:2 143:4 143:4 143:7 143:7 143:15 143:15 143:16 143:19 143:20 143:21 144:1 144:2 144:5 144:5 144:6 144:6 144:7 144:9 144:11 144:12 144:15 144:16 144:16 144:17 144:17 144:19 144:20 144:21 144:23 144:23 144:25 144:25 145:1 145:3 145:5 145:7 145:8 145:8 145:9 145:11 145:12 145:12 145:14 145:14 145:18 145:19 145:19 145:20 145:21 145:23 145:25 146:1 146:8 146:9 146:10 146:10 146:11 146:11 146:12 146:14 146:16 146:16 146:16 146:20 146:22 146:25 147:2 147:4 147:5 147:6 147:6 147:8 147:9 147:12 147:12 147:17 147:17 147:20 147:21 147:22 147:24 148:1 148:3 148:5 148:7 148:8 148:14 148:15 148:18 148:21 148:23 148:24 148:25 149:1 149:2 149:3 149:4 149:6 149:8 149:9 149:10 149:12 149:12 149:13 149:13 149:13 149:14 149:15 149:15 149:16 149:18 149:19 149:24 150:1 150:4

**the(246)** 150:4 150:5 150:5 150:6 150:8 150:8 150:10 150:11 150:12 150:14 150:14 150:16 150:17 150:18 150:19 150:20 150:23 150:25 151:1 151:1 151:4 151:10 151:11 151:12 151:16 151:17 151:18 151:18 151:23 151:24 151:24 151:25 152:2 152:2 152:3 152:4 152:5 152:5 152:6 152:8 152:9 152:9 152:14 152:15 152:17 152:19 152:19 152:20 152:22 152:23 152:24 152:25 153:5 153:5 153:6 153:7 153:9 153:11 153:16 153:17 153:19 153:20 153:20 153:21 153:21 153:22 153:24 154:2 154:3 154:4 154:6 154:7 154:9 154:13 154:13 154:16 154:18 154:18 154:19 154:21 154:22 154:23 154:25 155:7 155:5 155:7 155:10 155:10 155:13 155:17 155:18 155:19 155:19 155:20 155:20 155:22 155:22 155:25 156:1 156:2 156:2 156:2 156:2 156:4 156:5 156:5 156:5 156:6 156:8 156:8 156:9 156:10 156:10 156:12 156:12 156:13 156:14 156:15 156:16 156:19 157:1 157:3 157:3 157:5 157:6 157:6 157:8 157:9 157:10 157:12 157:14 157:14 157:14 157:15 157:15 157:16 157:18 157:19 157:21 157:25 158:2 158:2 158:7 158:9 158:12 158:15 158:17 158:22 158:23 159:1 159:3 159:5 159:7 159:9 159:11 159:12 159:13 159:15 159:16 159:17 159:19 159:20 159:21 159:22 159:23 159:24 160:1 160:2 160:4 160:6 160:7 160:9 160:11 160:12 160:12 160:16 160:16 160:16 160:16 160:25 161:5 161:6 161:8 161:13 161:13 161:14 161:15 161:16 161:16 161:17 161:20 161:22 161:24 162:1 162:2 162:3 162:3 164:2 164:8 162:8 162:9 162:10 162:11 162:11 162:12 162:13 162:14 162:15 162:16 162:17 162:17 162:20 162:21 162:23 162:25 163:1 163:5 163:8 163:10 163:14 163:15 163:15 163:16 163:17 163:18 163:19 163:19 163:20 163:25 164:7 164:8 164:10 164:10 164:13 164:17 164:21 164:25 165:5 165:9 165:12 165:13 165:17 165:17 165:18

**their(97)** 5:4 5:21 6:3 7:13 7:13 8:25 9:1 9:9 12:3 12:25 13:8 13:10 13:13 13:18 14:1 14:13 16:23 17:8 17:8 22:7 22:8 23:1 24:17 24:18 25:1 27:23 28:15 28:20 30:23 34:20 35:2 35:24 36:13 36:14 40:21 41:16 41:20 41:20 44:2 44:5 45:4 47:4 47:25 48:2 53:19 56:3 59:5 62:1 63:12 70:7 70:10 76:8 83:21 83:22 84:10 99:25 104:4 113:3 122:9 123:5 124:4 127:15 131:14 132:14 132:22 132:23 133:20 134:20 135:6 135:7 135:8 135:9 135:10 136:1 136:6 136:7 136:7 138:4 138:6 140:7 142:20 146:7 146:19 147:14 148:20 148:21 149:14 155:16 156:21 156:23 157:21 158:6 160:13 160:22 163:2 163:2 164:11

**them(81)** 5:7 8:24 9:21 12:4 15:3 17:15 17:16 22:16 30:2 31:9 31:13 32:3 32:10 33:9 39:3 39:8 39:15 40:23 40:24 41:22 43:16 44:3 44:8 44:9 44:10 49:9 62:1 63:16 65:18 65:20 71:19 74:23 76:10 78:4 79:8 79:9 83:23 83:23 84:4 86:14 89:11 104:24 105:24 106:14 111:14 113:9 118:20 118:25 120:9 123:21 124:7 126:19 128:16 128:23 130:16 130:17 130:19 130:20 133:5 137:3 141:1 141:1 141:2 141:6 141:22 142:19 142:21 142:22 143:9 143:13 143:13 145:13 148:19 148:19 150:23 155:15 156:13 158:8 162:12 163:13 164:25

**themselves(1)** 53:18

**then(40)** 3:12 4:4 5:8 5:16 11:11 11:12 13:16 17:20 18:8 18:13 19:1 25:13 27:21 35:20 43:16 47:1 51:25 52:23 63:13 84:15 86:23 88:1 90:18 99:18 106:9 117:18 117:21 117:24 132:15 139:4 140:16 142:18 144:12 144:15 145:3 145:10 147:5 153:11 160:16 163:3

**theory(3)** 37:5 150:11 161:23

**there(127)** 6:13 6:24 9:3 10:19 15:25 16:15 17:14 18:22 19:7 27:25 28:1 28:6 28:7 29:13 30:7 32:5 32:16 32:22 34:8 34:25 36:6 36:16 37:19 37:21 38:9 39:2 39:13 41:5 42:14 42:15 42:24 46:5 46:10 47:6 47:9 47:11 47:13 47:17 49:5 50:4 50:4 55:19 60:25 64:25 66:25 67:4 67:4 67:5 68:8 69:21 70:1 70:12 70:13 70:22 74:15 79:17 79:17 79:22 81:23 82:24 83:1 83:4 83:6 86:2 96:7 111:7 111:8 115:2 123:16 123:25 125:6 125:6 126:3 126:6 126:8 126:8 128:20 129:6 129:25 130:14 131:6 133:9 136:25 137:5 137:14 137:16 138:15 138:16 138:17 138:20 141:8 141:13 141:14 142:7 142:8 142:12 142:12 143:7 143:9 143:10 143:21 143:22 144:3 145:14 146:9 146:16 146:20 147:2 152:3 152:4 152:9 152:10 153:2 153:3 153:6 153:6 153:11 155:6 155:7 155:9 155:11 155:13 156:18 157:15 160:12 163:6 165:4

**there's(81)** 11:6 14:24 17:10 19:20 23:15 23:17 31:5 33:9 33:11 33:22 35:17 35:18 35:19 35:20 37:23 41:1 41:22 42:2 42:3 43:8 45:20 46:4 46:24 46:24 46:25 47:17 47:22 47:24 48:5 50:21 55:18 66:22 68:20 77:16 92:12 93:15 108:9 110:18 116:5 119:20 120:15 120:20 120:21 124:4 126:6 126:9 126:20 127:17 127:20 128:1 129:5 130:2 130:17 130:18 135:13 139:25 141:21 142:6 145:3 145:5 145:22 146:8 146:14 147:3 147:5 148:6 149:21 149:24 152:17 155:21 156:11 157:4 157:20 157:22 157:23 157:24 157:24 159:13 160:2 161:1 161:22

**thereafter(2)** 94:17 100:9
**therefore(7)** 21:6 128:22 161:4 161:13 161:25 163:5 165:6

**thereof(1)** 161:12
**thereto(1)** 54:21
**these(53)** 7:23 8:15 12:13 14:2 14:14 22:7 26:24 29:9 29:15 30:1 33:16 37:22 38:9 42:11 42:13 43:11 43:12 43:16 43:18 44:12 47:19 55:10 73:20 79:11 79:12 97:10 98:13 120:16 121:5 121:9 122:6 123:13 124:9 124:16 126:2 134:1 134:13 134:24 136:21 139:13 141:17 141:19 142:12 144:19 148:22 150:6 151:2 151:5 151:11 151:15 163:13 164:24

**they(251)** 4:24 5:8 7:14 7:24 9:16 10:14 10:16 10:17 10:18 11:2 11:6 11:10 11:17 12:12 13:3 13:5 13:5 13:5 13:14 13:15 13:16 13:17 13:19 13:22 14:7 14:9 14:23 15:3 15:4 16:21 16:21 18:7 18:17 19:8 19:12 19:16 19:21 19:22 20:8 21:2 25:12 25:14 27:2 27:2 27:6 27:8 28:16 29:8 29:9 33:8 34:12 34:13 34:24 35:1 35:4 35:5 35:7 35:22 35:23 35:24 36:1 36:1 36:2 36:3 36:13 40:19 40:24 44:10 45:3 46:12 46:14 46:15 56:15 56:16 56:23 57:2 57:6 59:6 60:4 60:6 61:15 61:16 61:17 61:18 64:22 65:24 65:25 66:1 66:2 66:3 66:4 66:5 66:6 66:6 66:9 66:14 66:17 66:18 67:15 69:4 69:5 70:3 74:13 75:6 75:7 75:8 75:24 75:25 76:1 76:2 76:3 76:4 76:5 76:7 76:8 79:25 80:10 80:22 80:24 81:7 81:9 81:9 82:1 82:5 82:11 82:13 82:15 83:10 83:11 83:20 83:20 83:21 83:22 84:1 84:4 84:10 84:13 84:25 85:1 85:2 86:8 86:9 86:10 86:11 86:13 87:8 89:13 95:25 96:7 96:23 96:24 97:1 97:11 97:11 97:12 97:22 97:23 99:3 99:5 101:1 102:22 102:25 104:1 106:7 106:25 107:14 110:20 112:19 119:18 120:5 120:6 120:7 120:22 122:1 123:3 123:3 123:4 123:22 123:22 124:3 124:3 124:6 128:15 128:16 128:17 128:18 128:24 130:20 131:14 131:17 132:14 133:18 134:9 134:16 134:16 134:17 134:18 134:19 135:9 136:7 136:7 136:12 136:13 136:14 136:18 137:19 138:2 138:3 138:4 138:5 138:6 138:12 138:12 138:25 138:25 138:25 139:3 140:7 141:7 141:20 142:19 143:13 144:8 145:8 145:20 146:3 146:14 146:18 146:19 146:21 147:10 147:17 149:6 150:5 150:7 151:14 152:8 153:7 154:1 154:3 154:4 155:15 156:21 157:9 158:7 158:8 160:18 162:10 163:21 163:22 164:4

**they're(22)** 9:6 9:6 10:10 12:11 12:16 14:6 24:2 28:16 29:9 35:24 35:25 46:18 47:20 61:5 63:11 79:19 111:14 128:20 133:23 144:24 147:23 161:8

**they've(5)** 43:6 46:1 51:21 150:7 164:10
**thin(1)** 152:25
**thing(18)** 5:11 13:1 14:17 16:19 20:9 36:1 40:17 40:20 52:15 71:22 74:25 95:11 120:8 120:9 127:9 131:12 134:23 144:15
**things(16)** 4:2 15:24 19:5 35:20 38:6 43:9 48:9 48:12 66:22 66:25 86:3 120:6 141:25 147:2 148:21 163:6

**think(61)** 8:16 14:21 19:3 19:11 35:2 36:12 36:13 39:18 42:12 44:23 44:24 44:25 45:1 45:12 48:3 65:1 70:17 71:4 71:24 73:13 82:8 96:4 101:15 101:17 106:2 114:9 114:10 116:22 117:5 117:6 117:13 117:14 118:25 119:1 121:8 126:4 127:4 129:22 133:2 138:1 139:9 140:4 140:24 143:12 144:3 147:1 148:4 150:1 150:18 154:14 158:5 158:12 160:4 160:25 162:25 163:4 163:5 163:18 164:24 165:2

**thinks(1)** 154:1
**third(3)** 24:13 25:13 156:6
**third-to-last(1)** 82:18

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **this**(239) 5:21 5:24 6:14 6:23 7:6 7:23 8:7 8:10 8:14 8:19 8:21 9:7 9:14 9:14 9:16 9:25 9:25 10:2 10:2 11:4 12:4 13:19 14:19 15:1 15:7 15:8 15:24 16:11 17:1 17:20 17:24 18:5 19:15 20:11 20:21 21:4 21:13 22:9 22:11 22:13 22:23 23:5 23:10 23:11 24:20 24:23 25:3 25:16 25:17 25:18 25:23 26:7 28:5 28:6 28:22 29:19 30:8 30:19 30:20 30:25 31:1 31:1 31:4 31:14 32:13 34:19 35:23 35:25 36:4 36:5 36:20 37:2 37:22 37:22 38:17 38:23 39:3 39:20 40:21 40:25 41:4 43:18 44:23 45:20 47:7 47:12 48:9 48:14 48:19 48:21 48:24 49:8 50:3 50:9 50:11 50:13 51:6 51:9 52:5 58:14 58:19 59:10 60:14 60:14 60:17 60:18 62:19 65:8 65:13 67:18 67:23 68:22 69:14 69:17 69:22 72:24 73:4 74:3 75:16 76:10 77:5 77:6 80:13 82:23 86:23 89:23 91:22 92:2 92:12 92:16 92:16 93:6 93:6 93:11 94:14 94:23 99:5 99:8 101:7 101:18 102:9 102:21 105:2 106:11 108:7 108:15 112:23 113:4 113:6 114:9 115:10 115:10 116:4 117:13 118:7 118:16 118:17 119:9 120:15 121:9 121:13 121:20 122:8 124:3 124:17 124:18 125:8 126:16 126:24 127:1 127:21 127:21 128:1 128:3 128:4 128:7 128:12 130:23 130:24 130:25 131:1 131:10 131:25 133:8 133:15 133:16 133:20 133:25 134:22 136:3 139:21 139:22 140:4 140:15 141:2 141:24 142:7 142:9 142:13 144:1 144:15 145:11 145:17 145:25 146:11 146:12 146:17 147:18 147:18 147:19 147:24 147:25 148:1 149:17 150:13 151:5 151:6 151:6 151:10 151:18 152:4 154:7 155:6 155:8 155:24 156:4 156:8 156:11 156:15 157:16 158:1 159:4 159:5 159:8 159:9 159:16 162:12 163:20 164:6 | | **time**(95) 3:14 3:16 13:12 13:22 14:25 15:18 15:21 16:9 16:20 18:22 18:23 21:4 22:24 26:24 30:3 30:10 31:9 32:4 34:15 37:2 37:3 37:5 38:5 39:7 39:13 39:17 43:12 43:12 43:22 43:22 43:23 43:24 44:9 44:10 47:19 51:8 59:13 61:13 61:17 65:9 67:10 73:24 80:14 82:16 82:24 83:2 83:4 83:7 93:22 95:16 95:17 101:19 105:25 106:13 110:25 111:3 112:22 116:4 116:21 117:15 118:7 118:17 119:22 123:22 129:6 129:6 131:19 131:22 131:25 137:6 137:23 140:22 143:21 144:23 145:8 145:11 146:11 147:6 148:20 148:21 150:23 151:10 152:16 153:3 153:4 153:19 154:4 161:12 163:3 163:7 163:8 163:12 163:14 164:15 165:4 | | **tries**(1) 134:11<br>**true**(11) 55:3 56:21 56:22 65:15 80:2 80:5 135:11 135:1 139:2 150:3 152:9<br><br>**trust**(19) 3:21 3:21 4:20 6:2 10:8 10:12 20:4 38:17 49:19 76:12 76:18 77:25 79:9 86:7 109:1 109:1 112:15 122:15 151:1<br><br>**trustee**(198) 1:26 2:20 3:20 5:20 6:2 6:5 6:6 6:6 7:5 7:7 7:12 7:16 8:2 8:18 9:2 9:3 10:7 10:13 10:19 11:4 11:5 11:9 11:13 11:15 11:17 11:19 11:20 13:24 13:16 13:25 18:1 18:25 19:2 20:12 20:22 22:10 22:14 22:16 23:14 23:15 23:17 23:23 24:4 24:6 24:11 24:13 24:25 25:2 25:4 25:16 25:24 26:2 26:17 27:1 28:9 28:12 28:18 29:16 30:25 32:1 33:8 33:13 34:1 34:8 34:9 35:2 35:15 36:2 39:4 40:23 41:8 41:9 41:17 41:18 41:20 41:20 42:17 43:6 45:9 46:21 47:3 48:24 49:14 49:17 50:7 51:1 54:9 54:25 55:24 61:10 61:14 61:24 63:8 64:7 64:15 65:19 66:24 67:13 69:23 71:14 72:11 81:14 86:5 89:8 100:1 107:21 107:23 109:5 110:11 110:19 110:20 110:24 111:16 111:20 112:5 115:5 118:18 118:19 119:25 120:11 121:20 122:2 122:6 122:7 123:1 123:5 123:6 124:15 125:9 125:10 125:12 127:1 127:15 127:19 127:24 129:3 129:11 130:3 130:16 130:24 131:1 131:2 131:3 132:17 132:19 134:4 134:5 134:10 134:10 134:11 134:19 136:15 138:3 138:4 138:5 138:23 139:2 139:7 139:23 140:3 140:9 142:25 143:2 145:15 145:24 146:16 147:20 147:21 149:3 150:5 152:3 152:4 154:23 156:11 156:12 156:19 156:24 157:21 158:2 159:16 159:18 160:7 160:12 161:16 161:16 161:17 162:2 162:8 162:9 162:14 162:15 162:18 162:22 163:5 163:15 163:16 163:20 | | **unacceptable**(1) 153:23<br>**under**(23) 11:14 23:24 24:2 24:2 40:10 40:14 42:22 62:23 122:10 126:24 126:24 129:17 132:13 134:4 136:6 146:19 147:15 150:11 150:12 153:17 160:9 160:14 164:10<br><br>**underbrush**(1) 19:15<br>**understand**(20) 9:9 15:16 43:6 46:2 51:9 89:14 101:12 105:14 105:15 124:23 130:11 130:21 137:9 140:25 142:14 153:7 154:11 161:8 164:19 164:25<br><br>**understanding**(9) 41:6 92:15 94:22 94:25 98:18 103:15 105:12 139:12 154:11<br><br>**understood**(14) 30:20 30:25 34:22 34:25 40:25 52:7 59:10 80:16 108:25 138:22 138:25 138:25 140:9 151:8 162:15<br><br>**undertake**(1) 56:8<br>**undertaken**(1) 95:7<br>**undivided**(1) 22:16<br>**unique**(3) 7:18 7:23 151:12<br>**uniqueness**(1) 140:2<br>**united**(10) 1:1 1:20 9:9 27:19 34:6 45:9 50:2 50:20 125:23 138:13<br><br>**universally**(1) 151:8<br>**unless**(3) 48:25 50:6 155:4<br>**unprecedented**(1) 6:22<br>**unquote**(2) 9:2 12:14<br>**unreasonable**(1) 25:12<br>**unsecured**(13) 2:27 2:35 23:16 24:18 28:11 30:15 45:17 53:12 64:3 149:4 151:9 152:1 161:7<br><br>**until**(19) 3:11 3:13 4:24 26:24 35:15 41:14 71:14 74:6 74:9 77:11 77:12 83:20 83:23 83:25 112:16 113:9 117:24 147:11 154:15<br><br>**update**(3) 60:18 74:21 146:7<br>**updated**(2) 72:3 105:16<br>**updates**(2) 75:1 120:8<br>**upend**(1) 131:2<br>**upon**(1) 125:13<br>**urban**(1) 2:13<br>**urquhart**(1) 2:5<br>**use**(7) 13:9 13:23 13:24 118:14 118:17 122:9 122:10 |
| **those**(85) 5:25 7:4 7:17 8:23 10:3 17:5 25:8 25:11 25:15 27:9 29:7 29:10 29:18 41:10 41:13 45:1 46:13 48:5 49:6 52:3 57:11 57:20 57:25 58:3 60:2 64:1 65:6 65:11 66:5 66:25 72:3 74:12 79:24 80:9 81:4 81:9 84:12 86:3 86:10 89:9 95:17 96:6 96:6 98:4 100:3 100:21 100:22 105:11 107:9 111:10 118:21 119:2 121:16 121:20 122:3 122:7 123:13 125:15 125:21 130:2 131:16 135:5 135:6 137:2 137:19 140:25 141:4 141:11 141:17 141:18 141:18 141:21 149:22 151:13 152:8 152:21 154:17 155:21 157:4 157:10 160:17 161:11 163:7 163:12 164:6 | | **too**(4) 50:4 69:17 101:24 126:16<br>**took**(17) 9:17 17:17 23:6 76:12 77:25 79:8 94:18 97:17 109:4 111:16 111:20 121:25 128:21 129:25 130:1 137:6 141:23<br><br>**top**(3) 31:6 108:12 156:3<br>**top-heavy**(1) 153:8<br>**topic**(2) 89:3 89:3<br>**topics**(3) 12:9 75:14 89:2<br>**torch**(2) 7:5 14:3<br>**toronto**(1) 15:20<br>**torres**(1) 59:24<br>**total**(3) 6:9 31:5 82:21<br>**totally**(1) 132:16<br>**tough**(1) 9:22<br>**tower**(1) 2:30<br>**trade**(1) 7:10<br>**tradeable**(1) 163:13<br>**traded**(1) 11:10<br>**trained**(1) 17:10<br>**training**(2) 123:19 123:20<br>**tranches**(2) 7:9 7:11<br>**transcriber**(1) 165:22<br>**transcript**(4) 1:18 1:43 62:15 165:17<br>**transcription**(3) 1:36 1:36 1:43<br>**transcripts**(1) 62:16<br>**transitional**(1) 144:13<br>**transitioning**(1) 19:9<br>**treatment**(3) 29:1 32:24 136:6<br>**tremendous**(1) 141:21<br>**trial**(52) 7:3 12:19 15:22 15:24 16:2 16:2 16:16 17:2 17:8 17:9 17:11 20:6 33:6 33:7 40:3 41:24 42:18 42:18 42:21 44:2 44:6 54:24 54:25 55:25 56:6 56:12 56:14 56:17 56:20 56:25 57:3 57:6 57:9 57:16 57:21 57:25 59:20 59:23 60:22 76:1 104:11 104:16 110:9 125:24 131:13 131:15 134:17 136:13 136:21 147:12 148:14 161:24 | | **try**(3) 19:14 24:21 148:7<br>**trying**(4) 15:5 122:17 138:13 161:8<br>**tube**(3) 49:8 155:10 155:23<br>**tuesday**(2) 3:1 27:12<br>**turn**(21) 10:4 58:5 60:10 62:14 67:17 69:6 79:11 79:15 82:17 83:19 83:22 84:11 115:12 121:2 138:21 143:19 145:11 145:16 147:19 150:16 160:23<br><br>**turned**(2) 83:21 84:15<br>**tweed**(4) 40:18 101:13 19:5 164:1<br>**twice**(2) 43:18 86:23<br>**two**(50) 6:11 7:2 7:3 13:7 18:3 23:14 23:20 28:1 28:11 31:5 31:13 31:16 35:17 39:4 42:5 42:15 43:14 43:20 44:12 46:24 51:15 73:6 79:24 80:9 80:17 81:1 82:6 82:11 98:6 104:25 108:10 111:21 121:16 126:8 126:8 131:5 133:6 133:12 135:3 135:3 135:15 138:20 142:13 142:19 153:12 155:24 156:4 160:8 160:10<br><br>**two-minute**(1) 16:7<br>**tyler**(2) 1:26 3:20<br>**type**(4) 15:9 34:7 141:20 143:22<br>**typically**(2) 10:16 32:8<br>**u.s**(12) 6:19 7:24 13:21 17:15 30:20 34:1 39:24 59:23 60:3 60:7 139:5 149:20<br><br>**ultimately**(3) 31:14 84:9 145:10<br>**unable**(1) 145:6 | | **used**(3) 52:9 58:15 98:1<br>**useful**(1) 112:11<br>**using**(2) 103:5 120:12<br>**usually**(1) 66:19<br>**utterly**(1) 132:16<br>**valid**(1) 20:15<br>**valuation**(2) 6:24 9:22<br>**value**(1) 125:22<br>**various**(5) 7:13 8:5 89:2 91:12 130:1<br>**vast**(1) 126:9<br>**version**(1) 149:13<br>**versus**(1) 7:15<br>**very**(38) 5:15 5:21 25:20 28:4 51:10 52:13 53:2 53:3 53:8 77:3 78:25 88:20 91:8 114:10 114:10 114:19 116:24 117:3 118:10 126:16 132:8 135:1 136:1 137:7 138:2 141:23 141:24 142:22 142:24 144:7 144:10 150:21 153:6 156:17 158:19 163:24 164:12 165:7<br><br>**video**(2) 7:3 50:16<br>**view**(7) 34:19 59:20 62:4 62:9 130:5 132:14 151:7<br><br>**viewed**(3) 26:17 59:11 121:21<br>**views**(3) 8:13 119:11 119:11<br>**virtually**(3) 80:17 112:22 120:5<br>**voluntarily**(1) 100:19<br>**waive**(1) 53:18 |
| **though**(5) 13:24 67:8 70:17 141:11 148:10<br>**thought**(7) 37:12 45:3 69:1 69:4 125:25 136:14 151:13<br><br>**thoughts**(1) 116:20<br>**thousand**(1) 31:14<br>**three**(25) 6:4 8:21 9:5 16:24 19:7 19:22 25:6 28:1 41:24 42:5 50:17 74:16 82:14 100:3 104:25 111:7 112:2 124:6 124:12 126:7 133:7 133:12 137:20 137:22 153:12<br><br>**three-month**(1) 143:8<br>**threw**(1) 161:10<br>**through**(32) 6:9 6:14 8:3 9:22 13:25 14:8 28:5 30:17 30:18 31:8 31:18 36:24 39:18 40:24 45:10 45:14 48:5 48:13 68:16 87:5 95:12 117:2 124:7 125:9 125:15 125:24 129:12 140:5 143:24 150:9 151:15 160:11<br><br>**throughout**(1) 67:13<br>**thumb**(1) 84:15<br>**thus**(1) 68:11 | | **tried**(1) 28:4 | | **timekeeper's**(1) 82:18<br>**times**(14) 19:12 28:24 45:10 66:22 70:7 70:10 70:12 70:14 98:1 106:24 106:25 123:12 124:8 160:25<br><br>**timing**(1) 8:15<br>**title**(1) 99:13<br>**titled**(1) 115:3<br>**to-last**(1) 159:10<br>**today**(25) 8:7 10:6 10:20 15:18 20:1 26:24 30:13 52:9 63:21 70:17 77:18 96:19 99:1 102:12 105:3 105:12 118:14 126:1 128:11 144:3 154:10 154:12 156:18 160:25 162:5<br><br>**today's**(1) 22:5<br>**together**(4) 51:20 87:7 96:24 122:1<br>**told**(30) 15:3 17:21 35:24 35:25 46:23 49:4 58:17 58:24 59:4 59:15 68:8 71:19 74:17 82:5 82:6 86:8 86:23 88:1 102:14 109:17 113:1 120:15 130:4 140:5 146:13 147:22 148:3 148:18 148:19 | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **waived**(1) 53:17 | | **way**(30) 7:12 9:14 22:17 22:24 35:5 35:9 35:21 36:25 63:8 79:20 92:11 103:1 109:10 119:16 119:18 120:23 120:23 126:17 129:8 133:11 141:8 142:5 143:4 143:20 144:19 147:13 149:3 160:21 161:22 162:19 | | **were**(167) 5:25 6:18 6:24 7:23 7:24 9:11 9:12 9:18 16:24 17:3 17:8 17:9 17:20 17:21 18:23 21:4 22:24 25:1 25:11 25:13 26:24 27:6 27:8 28:6 29:8 29:8 29:10 29:13 30:24 31:9 32:24 33:11 34:12 34:13 34:13 34:23 35:5 35:7 35:8 35:10 35:19 39:2 39:3 40:16 40:19 40:21 41:13 41:14 42:15 42:16 47:9 59:23 61:9 62:22 62:22 62:23 62:23 63:18 66:16 67:12 67:15 69:4 71:17 71:23 73:24 74:12 74:18 76:1 76:2 76:8 76:18 78:12 79:17 79:22 79:24 80:2 80:9 80:18 84:1 84:10 84:13 84:14 87:4 88:3 89:2 89:6 91:11 92:21 93:1 95:2 95:6 95:7 95:18 95:20 96:3 96:5 96:7 96:17 96:23 97:9 97:17 100:21 101:3 101:16 102:14 103:18 104:1 104:10 104:12 104:25 107:8 107:9 107:14 110:3 112:19 117:11 119:13 120:9 120:10 122:1 122:16 122:17 122:19 122:21 123:11 123:12 126:7 126:9 128:20 129:25 134:16 134:16 135:2 135:5 136:12 136:13 137:1 137:2 137:5 137:14 137:16 137:19 137:21 138:12 138:25 139:5 141:4 141:5 141:7 141:13 141:14 141:22 142:12 142:13 144:24 145:1 145:8 148:7 150:21 156:18 156:18 159:25 160:1 162:22 163:2 163:13 163:22 | | **which**(86) 6:5 7:21 11:12 15:22 16:20 17:3 19:13 22:14 22:22 23:9 23:17 25:20 27:18 30:13 30:16 33:6 34:12 36:15 39:6 39:10 44:2 44:11 48:2 48:10 52:2 54:1 57:5 57:11 58:6 60:10 64:11 65:6 65:11 69:7 69:22 70:3 72:25 73:7 79:11 79:16 87:10 89:2 89:17 89:24 91:21 92:25 94:1 98:24 101:25 104:13 105:16 116:16 117:2 125:4 125:7 126:21 127:16 128:11 128:21 129:17 130:8 130:10 132:25 136:22 137:17 137:24 141:2 142:21 143:23 145:9 145:18 145:21 152:16 152:23 156:15 157:15 159:5 159:9 160:9 160:12 160:21 160:24 160:24 161:5 163:25 164:1 |
| **walk**(2) 30:19 48:4 | | | | | | | |
| **walking**(1) 122:19 | | | | | | | |
| **wall**(1) 41:11 | | | | | | | |
| **wallet**(1) 122:18 | | | | | | | |
| **walrath**(4) 9:18 9:22 37:11 132:21 | | | | | | | |
| **walrath's**(1) 9:16 | | | | | | | |
| **want**(30) 7:14 10:4 10:5 17:6 36:2 44:8 45:19 47:12 48:11 52:16 59:6 72:2 89:2 97:10 114:7 117:7 117:8 117:16 120:13 120:14 132:22 140:7 144:18 145:7 146:5 153:5 156:7 158:8 161:20 161:21 | | **ways**(1) 160:8 | | | | **while**(6) 24:10 34:12 41:8 80:6 110:20 119:24 |
| | | **we'd**(3) 17:7 48:1 132:12 | | | | | |
| | | **we'll**(27) 3:11 3:11 3:12 3:13 5:16 19:17 27:5 30:19 33:9 34:19 40:24 58:6 67:17 69:7 69:12 70:25 79:11 87:11 88:8 91:6 114:11 117:18 117:24 117:24 120:13 120:14 129:4 | | | | **whimsical**(1) 23:6 |
| | | | | | | **whiteford**(1) 2:35 | |
| **wanted**(17) 30:3 40:8 40:17 53:22 82:3 82:11 86:13 136:1 141:24 144:8 146:3 161:9 162:20 162:22 162:24 164:14 164:20 | | | | | | **who**(21) 9:13 10:22 12:8 18:7 20:4 22:9 47:9 58:18 59:1 90:19 98:21 105:22 121:13 124:1 131:7 136:5 138:9 139:8 161:18 165:2 165:2 | |
| | | **we're**(79) 3:5 6:13 8:8 10:7 10:20 10:25 11:1 15:24 17:9 17:16 20:6 21:2 23:12 26:19 26:20 26:21 26:23 28:4 28:19 30:7 31:12 31:18 31:19 31:21 32:3 35:12 36:5 36:6 38:4 38:6 38:22 38:23 38:24 38:25 44:7 45:12 48:11 48:12 50:16 54:24 58:22 59:18 68:8 78:18 87:11 101:23 105:24 114:3 114:6 116:20 117:24 118:10 128:19 129:7 129:7 131:10 132:15 132:23 132:24 133:9 133:16 133:18 139:11 140:3 140:18 141:11 148:5 148:17 151:21 151:21 151:22 152:10 152:10 152:11 152:12 152:13 153:23 156:21 156:23 | | | | **who's**(3) 145:13 165:1 165:1 | |
| **wants**(4) 65:1 140:1 161:17 161:18 | | | | | | **whoever**(2) 11:6 11:14 | |
| | | | | | | **whole**(4) 13:20 16:5 95:11 127:9 | |
| **warning**(1) 16:7 | | | | | | **whom**(1) 4:8 | |
| **was**(299) 5:22 6:21 7:5 7:7 7:15 7:16 8:12 8:18 9:3 11:11 12:19 14:10 14:16 14:16 14:16 15:19 16:20 17:12 17:17 17:22 18:5 19:1 19:16 22:23 24:21 29:1 30:20 30:21 30:22 30:22 30:22 31:1 31:22 32:4 32:4 32:5 32:5 32:22 33:15 33:16 33:17 33:18 33:19 33:21 33:25 34:12 34:20 34:25 35:2 35:3 36:25 37:21 38:18 39:25 40:6 40:25 41:5 41:6 41:8 41:9 42:6 42:14 42:22 42:22 43:3 45:8 45:13 45:14 47:6 47:8 47:8 47:13 47:13 47:17 48:14 52:17 56:11 56:19 57:5 57:11 57:15 58:9 59:20 60:25 62:25 63:15 63:17 65:15 65:16 65:22 66:3 66:21 69:8 69:8 70:10 70:18 70:22 71:15 71:20 71:25 72:1 72:8 73:1 73:5 73:9 74:15 75:16 76:10 76:21 76:22 76:24 77:13 77:19 77:22 78:23 79:3 80:6 80:11 80:12 80:13 80:14 81:12 81:15 81:16 82:24 83:1 83:4 83:6 83:12 83:17 84:6 84:8 84:19 84:20 85:3 85:16 85:19 85:23 86:2 86:14 86:22 86:23 88:2 89:13 89:24 90:15 90:22 90:22 91:21 92:17 92:20 93:6 93:7 93:22 94:1 96:4 96:8 96:10 96:15 96:16 96:21 98:11 98:12 100:6 100:7 100:18 101:7 101:12 101:25 102:9 102:9 102:21 103:15 103:21 104:14 105:16 106:10 106:16 106:17 106:20 106:20 106:25 112:11 112:23 116:8 116:13 116:14 118:16 118:18 119:5 119:8 119:17 119:25 120:4 120:8 123:14 123:15 124:9 124:15 124:18 124:19 125:19 126:1 129:2 129:9 129:25 130:3 130:5 130:13 131:5 131:7 135:17 135:22 136:3 136:4 136:4 137:7 137:14 137:17 137:23 137:25 138:3 138:4 138:5 138:8 138:15 138:16 138:18 138:24 139:10 140:10 141:2 141:3 141:3 141:6 141:6 141:7 141:23 142:6 142:6 142:7 142:23 143:7 143:7 143:9 143:9 143:10 143:21 143:22 143:23 144:2 144:3 144:5 144:10 144:11 144:13 144:15 144:22 145:20 146:9 146:20 148:5 148:9 148:18 148:19 150:25 151:8 152:4 152:6 152:7 154:6 154:7 155:6 155:6 155:7 155:11 155:13 156:1 156:1 157:6 158:24 160:13 161:23 162:1 162:2 162:6 162:6 162:7 162:9 162:12 162:14 162:15 162:17 162:23 163:3 163:4 163:5 163:25 165:10 165:13 | | **we've**(22) 5:6 12:24 15:2 31:16 45:1 48:9 48:13 52:2 53:1 68:7 116:25 128:19 134:6 136:20 137:3 137:3 137:5 138:11 150:14 152:3 152:20 152:25 | | | | **whose**(1) 43:2 |
| | | | | | | **why**(22) 6:14 19:22 28:3 29:12 35:7 45:5 45:6 88:7 97:5 99:24 119:4 119:21 120:19 121:22 121:24 122:16 122:22 123:25 125:21 130:4 130:25 162:19 | |
| | | **wears**(1) 23:14 | | **what**(110) 7:13 7:14 11:13 11:21 11:22 13:3 13:5 14:9 15:4 15:11 15:12 15:12 15:25 16:6 16:19 17:17 18:5 18:13 18:21 19:15 19:21 20:14 21:4 22:13 23:13 23:21 24:12 24:25 25:3 26:23 27:23 28:18 31:18 31:18 32:9 33:20 33:21 36:5 38:22 38:24 40:2 42:19 43:21 45:12 46:13 46:15 48:18 48:23 48:24 49:5 52:21 65:8 65:13 66:21 71:5 71:17 71:23 74:17 75:16 81:5 81:15 94:25 95:14 96:8 97:10 98:19 105:2 109:13 109:17 109:24 113:1 113:9 115:9 116:17 116:25 118:15 118:22 119:12 120:8 120:25 121:8 122:14 122:23 124:3 124:11 125:11 125:19 128:17 129:11 131:9 132:21 133:9 139:22 140:9 140:17 140:23 141:6 143:19 144:12 144:16 147:1 153:25 154:1 155:12 155:17 156:7 156:23 160:1 160:2 160:18 | | **will**(49) 6:9 19:16 23:4 27:9 30:16 30:17 30:18 33:20 34:18 40:21 40:23 41:1 49:9 49:17 49:21 49:21 50:5 52:3 52:4 52:10 52:11 53:14 54:2 54:3 60:10 70:1 77:6 89:23 116:22 116:24 117:3 117:5 125:3 127:4 130:19 131:2 131:21 145:15 147:23 147:23 150:22 155:25 156:5 156:6 156:12 158:5 159:6 165:3 165:6 |
| | | **webb**(2) 1:26 3:19 | | | | | |
| | | **week**(3) 137:6 137:7 162:10 | | | | | |
| | | **weekend**(2) 39:7 39:14 | | | | | |
| | | **weekends**(2) 39:8 137:8 | | | | | |
| | | **weekly**(3) 38:12 39:10 111:7 | | | | | |
| | | **weidinger**(1) 2:13 | | | | | |
| | | **weigh**(1) 81:16 | | | | | |
| | | **weight**(1) 138:10 | | | | **what's**(6) 11:21 15:18 17:12 27:20 31:20 150:4 | | **willfully**(1) 11:16 |
| | | **welcome**(1) 114:2 | | | | | **willing**(3) 95:24 131:7 153:24 |
| | | **well**(33) 5:15 11:3 11:17 13:15 15:8 17:11 20:12 21:18 27:10 33:13 44:15 52:13 53:2 53:15 64:24 69:25 76:10 78:25 90:18 116:8 124:3 124:7 125:5 125:8 126:24 128:13 134:19 134:21 136:16 159:11 163:1 164:21 164:25 | | **whatever**(2) 103:20 108:14 | | **wilmington**(7) 1:12 2:23 2:39 3:1 6:2 38:17 151:1 |
| | | | | **when**(62) 4:24 12:10 12:11 12:19 14:1 16:13 16:16 20:6 23:19 26:25 26:25 28:9 28:10 33:17 35:24 36:3 37:6 37:10 41:14 41:22 45:13 46:16 47:6 47:23 47:24 48:1 50:24 51:3 61:24 62:22 62:23 63:17 70:12 70:14 77:25 79:3 79:8 79:8 81:12 82:10 83:19 90:2 93:6 95:17 98:15 101:7 106:7 131:16 135:2 137:6 138:9 138:14 140:18 140:25 141:2 143:6 143:11 144:24 152:6 153:13 162:17 165:6 | | **win**(2) 155:4 156:5 |
| | | | | | | **winkler**(1) 15:19 |
| | | | | | | **wish**(1) 53:6 |
| | | **went**(22) 17:4 17:14 26:25 27:1 31:8 32:3 44:3 45:13 68:19 68:22 68:25 69:3 74:15 82:23 102:22 109:4 109:13 124:7 141:4 144:14 151:16 151:18 | | | | **wished**(1) 89:8 |
| | | | | **whenever**(1) 161:21 | | | |
| | | | | **where**(24) 9:4 9:19 13:19 13:21 17:21 29:13 53:25 66:22 70:18 70:22 70:24 73:5 103:24 126:8 127:6 133:25 134:6 145:4 145:18 145:23 146:1 148:2 153:25 159:23 | | | |
| **washington**(2) 9:19 10:1 | | | | | | | |
| **wasn't**(19) 13:17 15:9 48:15 70:23 72:7 76:21 85:3 86:15 102:10 124:17 129:3 136:4 143:8 143:14 144:1 146:13 148:10 155:9 164:17 | | | | **whereupon**(1) 165:13 | | | |
| | | | | **whether**(33) 16:3 18:11 27:2 27:12 37:14 44:5 47:17 49:12 57:20 57:24 65:16 67:10 74:12 74:16 74:21 89:7 91:11 94:22 95:6 96:21 96:24 112:4 123:6 133:8 136:25 137:1 137:11 138:7 140:25 142:7 143:10 155:7 164:7 | | | |
| **waste**(1) 119:22 | | | | | | | |
| **watching**(2) 16:5 16:8 | | | | | | | |
| **water**(2) 55:16 55:19 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

**with**(215) 4:4 4:7 4:8 6:5 6:18 8:13 8:24 10:10 11:18 11:24 12:2 12:5 12:15 12:25 13:4 13:11 13:12 14:2 14:12 15:22 16:3 16:6 16:19 16:20 16:25 17:8 17:25 18:4 18:14 19:19 19:24 20:2 20:11 21:1 23:23 23:25 24:9 24:20 28:8 28:23 29:22 30:9 30:15 30:24 31:18 33:6 33:7 34:3 34:24 35:21 35:24 36:17 37:1 37:4 37:5 37:22 38:8 38:11 38:13 39:7 40:7 41:20 42:12 42:18 42:23 44:1 44:5 44:18 44:20 44:21 46:2 46:11 47:7 48:8 48:8 48:11 48:24 49:18 50:11 50:13 51:5 52:10 52:16 52:21 54:14 55:9 55:24 56:2 59:13 59:16 61:6 62:1 63:23 68:10 70:6 70:9 70:13 70:14 72:2 75:24 76:3 82:8 82:24 85:24 86:15 86:17 87:24 88:10 88:19 89:2 90:18 90:21 92:11 92:21 92:23 94:7 94:10 94:18 95:7 95:25 96:11 96:22 96:24 98:15 99:11 99:15 103:1 103:2 104:23 105:11 106:15 106:25 108:4 108:9 109:14 110:8 110:12 111:6 111:21 113:3 115:10 118:7 119:8 120:1 120:3 120:9 120:16 120:17 121:11 121:12 121:18 121:23 122:5 122:22 123:4 123:15 123:21 124:5 124:10 124:11 124:14 124:14 124:18 124:21 124:22 124:22 124:24 125:3 125:17 125:19 125:25 127:3 127:12 128:14 128:16 129:14 129:21 133:6 133:21 134:1 134:23 136:2 136:5 137:7 137:12 139:13 139:25 142:21 144:6 144:21 144:16 145:19 146:4 147:21 149:20 149:23 150:20 150:23 152:15 153:2 153:8 153:22 155:1 156:6 157:19 159:12 160:14 161:13 161:17 161:18 161:19 161:21 164:9 165:5

**withdraw**(1) 71:10

**withdrawn**(3) 43:7 71:11 130:10

**within**(4) 37:13 45:2 74:15 162:10

**without**(8) 28:16 43:1 92:11 103:2 124:17 133:23 140:11 140:12

**witness**(21) 40:24 42:17 52:10 52:23 54:9 54:11 55:6 56:18 56:11 63:14 64:24 64:25 73:13 88:9 89:18 107:23 108:18 108:21 114:13 115:23 132:3

**witnesses**(5) 42:18 50:17 56:14 129:25 130:2

**won't**(6) 53:21 77:3 113:8 127:9 131:4 156:20

**wonderful**(1) 5:19

**worcester**(51) 2:7 21:14 21:15 55:8 55:13 55:15 55:22 58:5 58:11 58:13 62:14 62:18 64:21 65:3 69:6 69:10 69:12 69:13 71:9 71:13 72:17 72:21 73:12 73:16 73:19 75:17 75:20 77:2 77:6 77:8 78:18 78:22 79:1 87:14 87:17 88:5 91:1 91:3 97:18 101:22 106:3 106:6 106:8 107:4 108:20 108:24 113:11 113:23 114:6 117:10 143:12

**worchester**(2) 58:10 72:16
**word**(3) 84:16 103:5 127:10
**words**(7) 49:6 127:14 149:22 155:20 155:21 157:25 159:20

**work**(98) 5:21 5:22 5:23 7:1 8:9 9:11 12:12 12:12 12:19 15:24 18:16 19:17 20:23 23:24 24:16 28:14 29:18 31:20 31:24 32:13 33:2 33:12 33:13 37:14 38:1 39:6 39:6 39:6 39:8 39:14 43:21 43:25 44:3 45:5 45:14 45:17 46:9 46:14 62:1 62:7 62:12 63:11 70:18 71:16 72:5 77:18 83:20 83:22 84:4 84:6 94:7 94:10 109:7 109:10 110:13 131:2 131:3 133:1 134:7 137:11 137:13 140:19 141:2 141:3 141:3 141:12 141:21 141:21 141:25 142:1 142:2 142:2 142:23 142:6 145:6 148:14 149:14 150:14 150:15 150:15 151:20 151:24 152:10 152:11 152:12 152:13 152:14 152:22 153:15 153:18 153:18 153:20 153:21 154:3 156:25 157:2 159:4 162:21

**worked**(13) 9:10 12:2 12:5 15:22 32:14 80:24 84:3 96:11 96:24 120:16 120:17 121:23 150:22

**working**(9) 9:15 9:21 14:12 15:25 38:13 87:7 113:3 122:1 130:9

**works**(1) 129:8
**world**(3) 119:6 138:14 149:13
**worldwide**(19) 9:17 9:25 23:12 23:21 24:5 27:23 30:9 37:11 44:23 46:7 132:16 132:17 134:3 140:17 147:16 148:25 149:12 150:12 151:7

**would**(91) 6:17 7:18 31:19 129:19 18:22 18:24 24:20 26:7 26:9 26:9 27:2 38:15 45:3 45:4 45:12 45:13 52:18 52:20 52:25 54:13 55:19 63:4 63:23 67:10 69:19 71:6 72:2 72:4 72:17 73:12 74:3 74:13 74:17 74:22 74:25 75:1 75:4 80:22 81:17 81:19 81:20 81:23 84:11 84:22 84:23 90:18 90:21 90:21 91:4 92:10 95:9 95:23 96:1 96:2 99:11 99:12 101:17 102:25 104:9 110:17 110:21 111:14 112:5 114:3 116:18 117:19 117:20 117:21 117:22 122:10 122:21 122:22 130:5 131:6 131:17 132:15 133:5 137:15 138:19 141:8 141:22 142:10 142:10 142:21 142:23 143:13 146:14 151:13 151:14 153:15

**wouldn't**(8) 25:3 63:23 67:1 71:22 84:22 121:1 142:9 153:16

**wound**(1) 57:21
**wrap**(1) 158:12
**write**(4) 119:17 106:13 153:24 164:23
**write-off**(1) 160:2
**writes**(3) 67:22 69:20 90:15
**written**(2) 43:25 44:2
**wrong**(4) 127:3 130:22 165:2 165:2
**wrote**(2) 58:17 159:23
**www.diaztrans.com**(1) 1:40
**yank**(1) 101:24
**yeah**(1) 139:10
**year**(8) 16:1 18:20 18:21 18:21 18:21 112:7 137:22 144:17

**years**(23) 5:23 6:3 7:1 7:4 9:24 12:3 12:22 14:14 14:16 15:6 16:10 20:2 23:4 23:9 25:16 75:12 87:3 101:13 106:10 119:6 128:18 128:19 159:4

**yellow**(6) 14:24 19:23 30:13 37:2 38:21 39:20

**yes**(161) 3:7 3:18 3:25 4:10 5:1 5:5 11:25 17:9 21:25 22:3 26:18 29:21 29:25 36:8 36:21 39:22 42:10 47:25 51:17 52:19 54:8 54:12 55:11 56:4 56:7 56:22 58:11 58:20 58:25 59:12 60:5 60:16 61:4 61:20 62:3 62:25 63:13 63:14 63:19 64:18 64:18 64:22 64:23 64:25 65:14 65:18 66:6 66:22 67:20 69:10 69:16 69:19 70:11 70:16 71:3 72:15 72:17 72:24 73:15 73:18 74:5 74:8 74:14 74:24 76:11 77:15 78:17 78:22 79:4 79:14 79:21 80:1 81:5 82:4 82:20 82:22 82:3 83:15 83:25 84:8 84:12 85:4 86:12 86:16 87:16 88:3 89:10 89:12 89:19 89:21 90:25 91:2 91:14 91:24 92:18 92:22 93:18 93:19 93:23 94:1 94:13 94:14 94:17 94:18 94:22 95:2 95:6 95:7 95:11 95:14 95:20 95:21 95:23 95:23 95:24 96:2 96:2 96:3 96:6 96:9 96:16 96:17 96:21 96:24 97:2 97:5 97:8 98:1 98:2 98:3 98:6 98:8 98:9 98:14 98:18 98:21 99:5 99:8 99:1 99:12 99:15 99:18 99:18 99:21 99:21 99:24 100:3 100:9 100:12 100:15 100:19 100:21 100:24 101:3 101:7 101:8 101:12 101:15 101:20 102:1 102:3 102:7 102:13 102:19 103:2 103:4 103:10 103:14 103:18 103:18 103:19 103:19 103:20 104:2 104:10 104:10 104:13 104:21 104:22 104:23 105:8 105:15 105:15 105:19 107:2 107:6 107:9 107:14 107:10 107:17 107:17 107:20 107:25 107:25 108:3 108:4 108:5 108:7 108:9 108:12 108:14 108:19 108:22 108:25 109:4 109:7 109:8 109:10 109:13 109:20 109:24 110:7 110:18 110:19 110:21 110:24 111:3 111:10 111:12 111:16 111:20 112:2 112:4 112:4 112:7 112:8 112:10 112:12 112:12 112:14 112:16 113:1 113:1 113:13 113:22 113:23 113:24 113:25 114:1 114:2 114:7 114:12 114:14 114:19 114:20 114:21 114:24 114:25 115:3 115:5 115:7 115:9 115:12 115:23 115:25 116:10 116:12 116:13 116:22 116:23 117:2 117:2 117:7 117:7 117:11 117:16 118:3 118:3 118:6 118:12 118:15 118:15 118:17 118:17 118:22 119:3 120:13 120:14 120:14 120:15 121:1 121:1 121:4 122:12 123:15 123:25 124:4 124:6 126:19 127:4 127:9 127:9 129:24 131:21 131:23 132:1 132:5 132:8 132:19 132:20 132:20 132:21 132:22 132:23 132:25 133:25 133:5 133:9 133:10 133:12 133:17 137:4 137:14 138:21

**yesterday**(3) 5:3 78:11 78:23
**yet**(5) 5:24 5:24 12:16 50:10 52:6
**york**(28) 1:31 2:9 2:31 3:22 10:12 18:1 75:15 75:21 96:18 96:19 96:21 97:6 121:20 121:21 122:2 127:22 128:4 128:6 128:7 134:14 136:10 136:11 136:17 143:5 147:15 161:19 162:23 163:24

**you**(301) 3:3 3:4 3:12 3:15 3:15 4:18 4:22 5:3 5:8 5:10 5:18 5:19 6:14 11:23 12:15 13:23 13:23 14:1 14:25 15:2 15:3 16:4 16:5 16:8 16:11 16:12 16:13 16:14 16:15 16:17 17:11 17:12 17:19 19:7 20:14 20:14 21:8 21:9 21:25 22:1 23:4 25:2 26:6 26:7 27:5 27:9 27:10 27:11 27:17 27:24 28:6 30:19 31:2 31:15 31:16 32:7 32:9 32:10 32:12 32:16 33:23 35:8 35:18 35:19 36:20 36:24 37:10 38:6 38:16 39:5 39:12 39:12 40:22 40:23 41:2 41:5 42:5 42:12 42:19 42:25 45:13 45:13 45:15 46:4 46:8 46:9 46:22 46:23 46:23 47:2 47:10 47:19 48:1 48:1 48:2 48:3 48:4 48:10 48:2 48:24 49:4 49:15 50:1 50:9 50:11 50:13 50:18 50:21 50:24 50:24 51:6 51:6 51:7 51:9 51:11 51:11 52:14 52:14 52:16 52:20 53:3 53:6 53:24 53:25 54:1 54:4 54:12 54:16 54:20 54:21 54:22 54:25 55:7 55:11 55:12 55:14 55:15 55:16 55:19 55:19 55:20 55:23 56:2 57:9 57:19 57:20 58:5 58:14 58:16 58:24 59:7 59:10 59:11 59:13 59:13 59:15 59:15 59:16 59:21 60:10 60:17 61:1 61:19 61:19 61:21 61:21 62:1 62:8 62:19 62:19 62:22 62:22 62:22 62:23 62:23 62:24 63:1 63:2 63:4 63:6 63:7 63:11 63:13 63:17 63:19 63:23 63:23 64:6 64:8 64:11 64:17 64:18 65:8 65:13 66:5 66:8 66:11 66:19 67:1 67:7 67:8 67:11 67:11 67:14 67:15 67:17 67:20 68:12 68:12 68:13 68:14 68:16 68:16 68:19 68:19 68:22 68:25 69:1 69:20 70:6 70:6 70:7 70:9 70:10 70:17 70:22 71:7 71:7 71:12 71:12 72:2 72:2 72:2 72:7 72:9 72:11 72:22 72:24 72:25 73:1 73:5 73:6 73:20 73:23 74:2 74:3 74:6 74:7 74:13 74:20 75:9 75:10 75:13 75:14 75:15 75:19 75:21 75:22 75:24 76:3 76:12 76:15 76:18 76:24 77:18 77:22 77:25 78:1 78:2 78:4 78:7 78:7 78:7 78:15 78:16 78:20 78:25 79:8 79:8 79:9 79:12 80:21 80:23 81:4 81:9 81:12 81:13 81:19 81:24 81:25 82:2 82:2 82:2 82:5 82:11 82:17 82:18 82:21 82:23 83:9

**you'd**(3) 92:1 93:2 104:15
**you'll**(9) 20:1 31:6 35:14 47:5 63:7 122:5 144:22 146:1 159:12

**you're**(44) 13:23 14:2 14:3 16:4 16:8 16:8 16:9 16:10 32:7 35:20 42:5 43:17 43:17 45:16 45:16 46:16 46:16 46:25 46:25 47:3 47:12 50:15 50:18 50:22 53:25 57:8 57:14 58:2 59:19 61:1 61:5 74:21 90:2 98:15 114:2 116:13 132:22 140:18 142:4 146:20 156:23 158:6 158:7 158:9

**you've**(19) 31:16 4:8 5:22 9:4 26:11 51:20 73:20 92:1 102:12 103:23 104:2 105:2 109:17 111:6 111:10 111:25 113:2 116:21 164:24

| Word | Page:Line |
|---|---|

**your**(301) 3:7  3:18  3:23  4:13  4:22  5:2
5:20  6:21  6:23  7:4  7:20  8:1  8:8  8:10  8:14
8:18  8:23  9:1  9:11  9:13  9:16  9:25  10:4
11:23  12:3  12:13  12:19  12:23  12:25  13:4
13:13  13:24  14:5  14:21  15:4  15:5  15:13
15:17  15:20  15:23  16:9  16:16  16:18  16:21
16:23  17:8  17:11  17:15  17:22  17:25  18:3
18:8  18:8  18:10  18:15  18:18  19:4  19:14
19:25  20:6  20:7  20:9  20:22  21:6  21:17
21:22  22:5  23:13  24:21  25:22  26:9  26:10
26:17  27:5  27:10  27:11  27:13  27:15  27:17
27:20  28:20  29:19  29:22  29:22  31:4  31:6
32:6  32:12  32:22  33:14  33:15  33:22  33:23
34:3  34:15  34:18  35:6  35:6  36:9  36:18
37:7  38:4  38:10  38:19  39:9  39:16  39:19
40:1  40:2  40:3  41:4  41:16  42:8  42:18
42:21  43:4  43:5  43:17  43:19  44:15  44:16
44:18  44:20  45:14  45:15  45:19  46:4  46:17
46:20  46:23  47:3  47:6  47:16  48:5  48:7
48:12  48:14  48:18  50:8  50:18  50:22  50:24
50:24  51:5  51:7  51:10  51:14  52:3  52:4
52:15  52:17  53:3  53:4  53:5  53:8  53:14
53:15  53:23  54:3  54:6  54:10  54:13  54:17
54:21  55:1  55:4  55:6  55:8  55:15  55:20
56:14  56:19  57:8  57:12  57:14  57:24  58:2
58:6  58:6  58:11  58:15  60:15  61:19  62:4
62:9  62:14  62:15  62:15  63:1  63:17  63:21
64:8  64:16  64:21  65:5  65:10  66:19  67:12
68:12  68:21  69:6  69:10  69:22  70:2  71:2
71:4  71:9  71:23  72:1  72:1  72:5  72:12
73:12  73:24  74:20  75:5  75:13  75:14  75:21
76:21  77:2  77:4  77:6  78:11  78:14  78:19
79:2  79:13  82:2  82:23  87:10  88:1  88:6
88:17  88:20  89:6  89:9  89:17  89:20  91:1
91:9  91:22  92:15  93:2  94:25  95:3  95:10
95:25  97:18  98:7  98:9  99:12  99:12  99:13
100:18  101:19  102:13  103:4  103:9  103:9
103:14  103:14  104:18  105:3  105:12  106:4
106:16  106:21  107:5  107:18  107:20  107:24
108:3  108:7  108:12  108:15  108:20  109:15
110:11  110:18  112:4  112:10  113:12  113:20
114:6  114:6  114:9  114:15  115:15  115:17
115:24  116:3  116:18  116:22  117:5  117:9
117:10  117:13  117:20  118:5  118:6

**your**(116) 118:7  118:20  118:25  119:1
119:12  119:15  119:21  119:22  121:1  122:12
123:17  123:24  124:4  124:5  124:5  124:19
125:3  125:7  125:11  127:4  128:7  128:10
128:11  128:24  129:16  129:18  130:12
130:19  130:23  131:18  132:1  132:9  133:1
133:10  133:11  133:17  133:21  133:21  134:3
134:15  134:25  135:24  136:19  137:4
137:10  138:1  138:10  138:14  138:19  138:20
138:20  139:15  139:17  139:19  140:9
140:16  140:24  141:1  141:13  141:19  142:10
143:18  143:18  143:19  144:18  144:19
145:11  145:16  146:8  147:1  147:19  148:16
149:8  149:11  149:12  149:16  149:17  150:2
150:13  150:19  150:22  151:4  151:22  151:25
152:2  152:9  152:15  152:24  154:5  154:16
154:18  154:24  155:18  156:17  156:25  157:9
157:13  158:4  158:10  158:11  158:14
158:19  159:2  159:13  160:23  161:9  162:17
164:3  164:6  164:7  164:12  164:14  164:15
165:8  165:11  165:12

**yourself**(5) 51:8  91:16  92:5  98:14  102:18
**zero**(2) 132:22  132:24
**zurich**(3) 157:13  157:14  157:23