## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------

|  |  |  |
|---|---|---|
| *In re* | ) | Chapter 11 |
|  | ) |  |
| Nortel Networks Inc., *et al.,*[1] | ) | Case No. 09-10138 (KG) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |
|  | ) | **Hearing date: March 28,  2017, 10:00 AM (ET)** |
|  | ) | **Objections due: March 21, 2017 4:00 PM (ET)** |

------------------------------------------------------------

### DEBTORS' MOTION PURSUANT TO SECTION 502(c) AND 105(a) OF THE BANKRUPTCY CODE FOR ENTRY OF AN ORDER ESTIMATING THE WANLAND CLAIM FOR PURPOSES OF ALLOWANCE AND DISTRIBUTION UNDER THE PLAN

Nortel Networks Inc. ("NNI"), on behalf of itself and certain of its affiliates, the

debtors and debtors in possession in the above-captioned cases, (collectively, the "Debtors")[2]

hereby moves (the "Motion") for entry of an order, pursuant to sections 502(c) and 105(a) of title

11 of the United States Code (the "Bankruptcy Code"), substantially in the form attached hereto

as Exhibit A (the "Proposed Order"), estimating the unliquidated, disputed claim number 3911

filed by Wanland & Associates, Inc. (the "Wanland Claim") for purposes of allowance and

distribution under the *Amended Joint Chapter 11 Plan of Nortel Networks Inc. and Certain of its*

*Affiliated Debtors* (the "Plan"), as confirmed by the Bankruptcy Court through a confirmation

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567), Nortel Networks (CALA) Inc. (4226), and Nortel Networks India International Inc. (8667). Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

[2]     Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Plan.

order dated January 24, 2017 [D.I. 17795].  In support of this Motion, the Debtors respectfully

represent as follows:

## JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper

pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates and support for this Motion are Bankruptcy Code

sections 105 and 502(c).

3.      Pursuant to Rule 9013-1(f) of the Local Rules for the United States

Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the

entry of a final judgment or order with respect to this Motion if it is determined that this Court

would lack Article III jurisdiction to enter such final order or judgment absent the consent of the

parties.

## BACKGROUND

### A.      The Debtors' Chapter 11 Cases and Plan

4.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel

Networks (CALA) Inc. and Nortel Networks India International Inc.,[3] filed voluntary petitions

for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural

purposes only. The Debtors continue to operate as debtors in possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code.

---

[3]      Nortel Networks (CALA) Inc. and Nortel Networks India International Inc. filed voluntary petitions for
relief under chapter 11 of the Bankruptcy Code on July 14, 2009 and July 26, 2016, respectively, each of which was
consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I.
1098; D.I. 17090].

5.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group"). A consortium of creditors holding trade claims (the "Trade Claims Consortium") has also been organized.

6.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, the "Nortel Group"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[4] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of the Nortel Group's European affiliates (collectively, the "EMEA Debtors")[5] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel Group affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

---

[4]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation, as well as Nortel Communications Inc., Architel Systems Corporation and Northern Telecom Canada Limited, which subsequently commenced their own Canadian Proceedings.

[5]      The EMEA Debtors include the following entities: NNUK, Nortel Networks (Ireland) Limited ("NNIR"), Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V, but does not include, for the purposes of this Motion, NNSA.

7.      Since the Petition Date, the Nortel Group has sold its business units and other assets to various purchasers.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

8.      On December 1, 2016, the Debtors filed the Plan with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").  The Plan was subsequently amended and an amended version of the Plan dated January 23, 2017 was filed with the Bankruptcy Court. [D.I. 17763].  On January 24, 2017, the Court confirmed the Plan for all Debtors except Nortel Networks India International Inc. [D.I. 17795].

9.      Section 11.6 of the Plan provides for the establishment of a Disputed Claims Reserve and provides, *inter alia*, that the Plan Administrator shall reserve an aggregate amount of cash sufficient to pay to each holder of a Disputed Claim the amount of any Distributions that such holder would have been entitled to receive under the Plan if such Claim had been an Allowed Claim.  Section 11.6 further provides that the amount of such Disputed Claim is to be determined, solely for purposes of establishing reserves and for maximum distribution purposes, to be the lesser of (a) the asserted amount of the Disputed Claim filed with the Bankruptcy Court as set forth in the non-duplicative Proof of Claim or (b) the amount, if any, estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Court or ordered by other order of the Bankruptcy Court or (c) the amount otherwise agreed to by the Debtors or the Plan Administrator, as applicable, in consultation with the Holder of such Disputed Claim for distribution purposes.  The Plan further provides that, with respect to all Disputed Claims that are unliquidated or contingent and/or for which no dollar amount is asserted on a Proof of Claim, the Wind-Down Debtors or Plan Administrator, as applicable, will

4

reserve Cash equal to the amount reasonably determined by the Debtors, Wind-Down Debtors or Plan Administrator.

**B.      The Wanland Claim and Preliminarily Approval of the $500,000 Settlement**

10.      On September 27, 2004, plaintiffs ("Plaintiffs") in the case Wanland & Associates Inc. v. Nortel Networks Limited et al., [No. 3:05-cv-01191 (D.N.J.)] (the "Wanland Litigation") commenced the Wanland Litigation as a purported class action against NNC et al. in the Superior Court of the State of New Jersey for the County of Ocean.  NNC timely removed the action to the United States District Court for the District of New Jersey ("New Jersey District Court") on February 8, 2005.  Soon after, Plaintiffs filed an amended complaint substituting NNL and NNI as defendants in place of NNC and added additional defendants.

11.      On June 20, 2005, the New Jersey District Court entered an order determining that the Wanland Litigation was related to the Chapter 7 bankruptcy case In re NORVERGENCE, Inc., No. 04-32079 (the "Norvergence Bankruptcy Case") pending in the United States Bankruptcy Court for the District of New Jersey (the "New Jersey Court")  and referred the action to the New Jersey Court as Adversary Proceeding No. 05-02439-RG. Following the Debtors' voluntary filing of petitions for relief under chapter 11 of the Bankruptcy Code on January 14, 2009, the New Jersey Court stayed the Wanland Litigation with respect to NNI and NNL.

12.      On or about September 28, 2009, Plaintiffs filed the Wanland Claim in the amount of $360,000,000.00 against NNI.  The Wanland Claim is based on the Wanland Litigation and seeks the same relief sought in the Wanland Litigation.

13.     NNI disputes the validity of these claims,[6] and, absent settlement, would vigorously defend against the allowance of such claims. However, as a result of extensive arms-length negotiations, NNI and the Plaintiffs entered into a proposed settlement agreement (the "Wanland Settlement") which provides, *inter alia*, that the Wanland Claim will be allowed as a single General Unsecured Claim against NNI in the aggregate amount of $500,000, including a General Unsecured Claim in an amount not to exceed $100,000 for attorney fees and expenses and in the amount of $400,000 for ultimate distribution to the settlement class, which claim is subject to the terms and conditions of the Wanland Settlement.

14.     Upon the motion of the Debtors seeking preliminary approval of the Wanland Settlement pursuant to Bankruptcy Rule 9019 [D.I. 17226], the Wanland Settlement was preliminarily approved by the Bankruptcy Court through an order dated October 24, 2016 [D.I. 17299].  The Wanland Settlement also was preliminarily approved by the New Jersey Court through an order dated December 7, 2016 (the "New Jersey Preliminary Approval Order") [N.J. D.I. 153][7] and the Debtors understand that notice of the proposed Wanland Settlement has been provided to potential settlement class members by KCC LLC ("KCC"), a claims and administration agent retained by counsel to the Plaintiffs pursuant to the terms of the Wanland Settlement.

15.     The New Jersey Preliminary Approval Order provided that all objections and opt-outs to the Wanland Settlement were required to be sent to KCC and postmarked no later than February 27, 2017.  KCC has informed the Debtors that only one entity, RCVIDEO, timely

---

[6]     Additional detail regarding the Wanland Claim can be found in the Wanland Proof of Claim filed on September 23, 2009, available on the website of the Debtors' claims agent at http://dm.epiq11.com/#/case/NNI/claims.

[7]     "N.J. D.I." refers to the docket of Adversary Proceeding No. 05-02439-RG pending in the Norvergence Bankruptcy Case (No. 04-32079 (RG)).

returned a notice of opt-out to the Wanland Settlement and that no timely objections to the

Wanland Settlement have been received.[8]

16.      A hearing to finally approve the Wanland Settlement has been scheduled

by the New Jersey Court for May 24, 2017, at 10:00 a.m. EST.

## RELIEF REQUESTED

17.      By this Motion, the Debtors seek entry of an order, pursuant to

Bankruptcy Code sections 502(c) and 105, estimating the Wanland Claim for purposes of

allowance and distribution under the Plan at $500,000, the same claim amount contemplated

under the Wanland Settlement, as preliminarily approved by the Bankruptcy Court and the New

Jersey Court, subject to the occurrence of the Effective Date of the Plan.

## BASIS FOR RELIEF

18.      The Debtors' request for estimation of the Wanland Claim for purposes of

allowance and distribution under the Plan is squarely consistent with applicable law and the

pending settlement between the parties.

19.      Bankruptcy Code section 502(c)(1) provides:

> (c)      There shall be estimated for purpose of allowance under this
> section –
>> (1)      any contingent or unliquidated claim, the fixing or
>> liquidation of which, as the case may be, would unduly delay the
>> administration of the case.

---

[8]      Although the opt-out notice filed by RCVIDEO also includes a statement that the notice "serves as a request for the Court to respectfully deny approval of settlement," the New Jersey Preliminary Approval Order provides that any entity that chooses to opt-out of the settlement cannot also object to the Settlement. See New Jersey Preliminary Approval Order, ¶10(a) ("Any Settlement Class member who has not timely submitted a written request for exclusion from the Settlement Class may object to or otherwise comment on the fairness, reasonableness or adequacy of the proposed class settlement, or Class Counsel Fees and Costs Claim."). Accordingly, Plaintiff's counsel has informed the Debtors that Plaintiff's counsel will not treat the RCVIDEO notice as an objection to the Wanland Settlement.

11 U.S.C. § 502(c) (2009).  See 4 Collier on Bankruptcy ¶502.04 (quoting H.R. No. 595, 95th Cong., 1st Sess. 354 (1977), Rep. 989, 95th Cong., 2d Sess. 65 (1978) ("The essence of section 502(c) is that 'all claims against the debtor be converted into dollar amounts'")).

20.    In enacting the Bankruptcy Code, Congress intended that all claims, including unliquidated and contingent claims, be "dealt with" in the bankruptcy proceeding.  See In re Brints Cotton Marketing, Inc., 737 F.2d 1338 (5th Cir. 1984) (citing S. Rep. No. 989, 95th Cong., 2d Sess. 22, reprinted in 1978 U.S. Code Cong. & Ad. News 5787, 5808) (court reiterated that in enacting the Bankruptcy Code, Congress intended that "all claims against the debtor be converted into dollar amounts").  Id.  Therefore, the Bankruptcy Code provides that a claim which is "contingent or unliquidated" shall be "estimated," if the "fixing or liquidation of [the claim] . . . would unduly delay the closing of the case."  Id. at 1340-41; 11 U.S.C. § 502(c)(1).

21.    Bankruptcy Code section 502(c)(1) serves two purposes – first, it avoids the need to wait for the resolution of pending lawsuits to determine issues of liability or amounts owed by means of anticipating and estimating the likely outcome of these actions and, second, it promotes a fair distribution to creditors through a realistic assessment of uncertain claims.  See In re Ford, 967 F.2d 1047, 1053 (5th Cir. 1992).  To estimate a claim, the bankruptcy court should use "whatever method is best suited to the circumstances."  Id. at 1341.  Section 105(a) of the Bankruptcy Code provides that "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

22.    The Wanland Claim is subject to a pending settlement, where the only remaining condition to the settlement is the final approval of the settlement by the New Jersey Court on May 24, 2017.  That being said, for purposes of the Plan, the Wanland Claim is an unliquidated claim within the meaning of section 502(c)(1) pending final approval of the

8

Wanland Settlement.  While the Debtors are prepared to reserve an amount of $500,000 with regard to the Wanland Claim, consistent with the Wanland Settlement, the filed amount of the Wanland Claim is $360,000,000, an amount which the Debtors believe is vastly disproportionate to any reasonable allowed amount of the claim, especially in light of the amount of the Wanland Settlement.

23.     The Debtors believe the claim estimation is necessary to prevent excess funds from being unnecessarily tied up and withheld from distributions to other creditors before final approval of the Wanland Settlement by the New Jersey Court.  While the Plan gives the Plan Administrator discretion to establish a Disputed Claims Reserve for unliquidated disputed claims such as the Wanland Claim, the Debtors are filing this estimation motion in an abundance of caution and to ensure that adequate notice of such estimation is given to the relevant notice parties.

24.     With respect to the one entity that opted out of the proposed settlement, the opt-out notice did not identify or quantify any claims that the entity may have against the Debtors or set forth any reasons for its decision to opt-out of the proposed settlement. Moreover, the entity did not file any direct claims against the Debtors prior to the relevant bar dates in these cases.  Accordingly, the Debtors do not propose to reserve any additional amounts relating to such entity under the Plan or otherwise.

25.     What constitutes "undue delay" of bankruptcy reorganization efforts "ultimately rests on the exercise of judicial discretion in light of the circumstances of the case, particularly the probable duration of the liquidation process as compared with the future uncertainty due to the contingency in question." In re Roman Catholic Archbishop of Portland in Oregon, 339 B.R. 215 (Bankr. D. Or. 2006) (citing 3 Collier on Bankruptcy ¶ 502.03 (15th ed.

1991)).  Here, the relevant inquiry is not the number of months in an absolute sense, but rather the expectation that requiring the Debtors to set a reserve in excess of the Wanland Settlement amount would tie up substantial additional funds that otherwise could be distributed to other creditors under the Plan. The Debtors and Wanland & Associates have agreed to the Wanland Settlement Amount, which was the result of extensive arms-length negotiation and which has already been preliminarily approved as fair and reasonable by both the Bankruptcy Court and the New Jersey Court.  Estimating the Wanland Claim for reserve, distribution and allowance purposes at the mutually agreed-upon, preliminarily approved settlement amount of $500,000 is a logical way to close off this issue under the Plan and enables the Debtors to maximize anticipated distributions to other similarly situated creditors while avoiding the delay and prejudice that would result if the Debtors were required to reserve amounts above the Wanland Settlement amount. Estimation avoids the need to wait for the resolution of pending lawsuits — or here, the finalization of the Wanland Settlement — to determine amounts owed by anticipating and estimating the *likely outcome* of these actions.  See In re Ford, 967 F.2d 1047, 1053 (5th Cir. 1992).  The likely outcome of the Wanland Settlement is final allowance of the Wanland Claim and the distribution of funds on account of that $500,000 general unsecured claim.

26.     The Debtors have consulted with counsel to the Plaintiffs prior to the filing of this Motion and understand that counsel to the Plaintiffs does not plan to oppose the relief sought herein.

### RESERVATION OF RIGHTS

27.     The Debtors expressly reserve the right to amend, modify, or supplement this Motion and to file additional objections to the Wanland Proof of Claim or any other Claims (filed or not) which may be asserted against the Debtors.  Should one or more of the grounds for

estimation stated in this Motion be dismissed, the Debtors reserve their right to object on other stated grounds or on any other grounds that they discover during the pendency of these Chapter 11 Cases.  In addition, the Debtors reserve the right to seek further reduction of the Wanland Claim to the extent that such Claim has been paid.

**NOTICE**

28.     Notice of the Motion has been given via first class mail to (i) counsel to Wanland & Associates; (ii) the U.S. Trustee; (iii) counsel to the Committee; (iv) counsel to the Bondholder Group; (v) the general service list established in these chapter 11 cases and (vi) members of the Wanland class, as such class was identified for purposes of serving the preliminary approval motion in the New Jersey Court.  The Debtors submit that under the circumstances no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request the Court enter an order

estimating the Wanland Claim at $500,000 for purposes of allowance and distribution under the

Plan, and granting such other and further relief as the Court deems just and proper.

Dated:    Wilmington, Delaware
          March 7, 2017

CLEARY, GOTTLIEB, STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and –

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Tamara K. Minott*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Andrew R. Remming (No. 5120)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors and Debtors-in-Possession*