## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------- X

*In re*

Nortel Networks Inc., *et al.,*[1]

                Debtors.

------------------------------------------------------- X

: Chapter 11

: Case No. 09-10138(KG)

: Jointly Administered

: **Hearing date: April 11, 2017 at 10:00 a.m. (ET)**
: **Responses due: March 31, 2017 at 4:00 p.m. (ET)**

## DEBTORS' FORTY-SEVENTH OMNIBUS OBJECTION (SUBSTANTIVE) TO CERTAIN CLAIMS PURSUANT TO 11 U.S.C. § 502, FED. R. BANKR. P. 3007 AND DEL. L.R. 3007-1 (NON-DEBTOR LIABILITY CLAIMS, MODIFIED, RECLASSIFIED AND ALLOWED CLAIMS, NO-BASIS AND RELEASED CLAIMS, NO-BASIS EQUITY CLAIMS, NO-BASIS RETIREE CLAIMS AND REDUNDANT CLAIMS)

**TO THE CLAIMANTS LISTED IN <u>EXHIBIT A</u> ATTACHED TO THIS OBJECTION:**

- **CLAIMANTS' RIGHTS MAY BE AFFECTED BY THIS OBJECTION AND BY ANY FUTURE OBJECTION(S) THAT MAY BE FILED BY THE DEBTORS.**

- **THE RELIEF SOUGHT HEREIN IS WITHOUT PREJUDICE TO THE DEBTORS' RIGHTS TO PURSUE FURTHER SUBSTANTIVE OR NON-SUBSTANTIVE OBJECTIONS AGAINST THE CLAIMS LISTED IN <u>EXHIBIT A</u>.**

- **CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES AND CLAIMS IN <u>EXHIBIT A</u>.**

- **BY THIS OBJECTION, THE DEBTORS ARE NOT SEEKING TO AFFECT ANY RIGHTS THAT CLAIMANTS HOLDING CLAIMS LISTED IN <u>EXHIBIT A</u> MAY HAVE TO PARTICIPATE IN**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567), Nortel Networks (CALA) Inc. (4226) and Nortel Networks India International Inc. (8667).  Contact information for the Debtors and their petitions are available athttp://dm.epiq11.com/nortel.

**DISTRIBUTIONS FROM THE PENSION BENEFIT GUARANTY CORPORATION WITH REGARDS TO THE NORTEL NETWORKS RETIREMENT INCOME PLAN.**

- **BY THIS OBJECTION, THE DEBTORS ARE NOT SEEKING TO AFFECT ANY RIGHTS THAT CLAIMANTS HOLDING CLAIMS LISTED IN <u>EXHIBIT A</u> MAY HAVE TO DISTRIBUTIONS UNDER THE DEFERRED COMPENSATION SETTLEMENT AGREEMENT OR THE RETIREE WELFARE SETTLEMENT AGREEMENT (AS DEFINED BELOW).**

Nortel Networks Inc. ("<u>NNI</u>") and certain of its affiliates, as debtors and debtors-in-possession (collectively, the "<u>Debtors</u>"), hereby object (this "<u>Objection</u>"), pursuant to section 502 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), to those certain claims listed in **Exhibit A** attached hereto and incorporated by reference.  In support of this Objection, the Debtors submit the Declaration of John J. Ray, III in Support of Debtors' Forty-Seventh Omnibus Objection (Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502, Fed. R. Bankr. P. 3007 and Del.  L.R. 3007-1  (Non-Debtor Liability Claims, Modified, Reclassified and Allowed Claims, No-Basis and Released Claims, No-Basis Equity Claims, No-Basis Retiree Claims and Redundant Claims) (the "<u>Ray Declaration</u>"), attached hereto as **Exhibit B** and incorporated by reference, and respectfully state as follows:

<u>**Jurisdiction**</u>

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 502 and 503 of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007-1.

## Background

### A.      Procedural History

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc. ("NN CALA") and Nortel Networks India International Inc. ("NNIII"),[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only [D.I. 36].  The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").  A consortium of creditors holding unsecured claims, including but not limited to trade (supplier) claims and employee severance and pension claims has also been organized (the "Trade Claims Consortium").

5.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors

---

[2]      Nortel Networks (CALA) Inc. and Nortel Networks India International Inc. filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on July 14, 2009 and July 26, 2016, respectively, which were consolidated and are being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098]; [D.I. 17090].

[3]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation, as well as Nortel Communications Inc., Architel Systems Corporation and Northern Telecom Canada Limited, which subsequently commenced their own Canadian Proceedings.

Arrangement Act (Canada) (the "<u>CCAA</u>"), seeking relief from their creditors (collectively, the "<u>Canadian Proceedings</u>") and a Monitor, Ernst & Young Inc. (the "<u>Monitor</u>"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "<u>EMEA Debtors</u>")[4] into administration (the "<u>English Proceedings</u>") under the control of individuals from Ernst & Young LLP (collectively, the "<u>Joint Administrators</u>").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6.      Soon after the commencement of these insolvency proceedings, the Debtors and their various affiliates conducted an extensive series of court-approved sale transactions (the "<u>Sales Transactions</u>") generating in excess of $7.3 billion in net sale proceeds (the "<u>Sale Proceeds</u>").  In furtherance of the Sales Transactions, the Debtors, the Joint Administrators, the Committee and the Monitor entered into various court-approved escrow agreements with JP Morgan Chase Bank, N.A. and Citibank, N.A., as escrow agents (the "<u>Escrow Agreements</u>") to hold all Sale Proceeds in escrow accounts (the "<u>Distribution Escrow Accounts</u>"), pending either the agreement of the relevant parties or filed decisions of this Court and the Canadian Court regarding the allocation of the Sale Proceeds.

7.      Despite early and repeated efforts at mediation (including before all of the asset sales were consummated), the key parties were unable to reach an agreement as to the distribution of the Sale Proceeds, and proceeded to engage in litigation before this Court and the

---

[4]      The EMEA Debtors include the following entities: NNUK, Nortel Networks (Ireland) Limited ("NNIR"), Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V, but does not include, for the purposes of the SPSA and this Objection, NNSA.

Canadian Court (the "Allocation Dispute").  On May 12, 2015, this Court and the Canadian

Court simultaneously issued opinions deciding the Allocation Dispute (the "Allocation

Decisions").  Numerous parties appealed this Court's Allocation Decision to the United States

District Court for the District of Delaware.  During the pendency of the appellate process, the

parties engaged in court-supervised mediation.  The Debtors, their foreign affiliates and other

key parties agreed upon a proposed settlement of the Allocation Dispute as well as various other

inter-estate matters and claims, through the terms of a fully integrated settlement, as

memorialized in the Settlement and Plans Support Agreement executed on October 12, 2016

[D.I. 17249] (the "SPSA").  Further information regarding the history of the Debtors' cases, the

SPSA and various claims and disputes resolved thereunder is contained in the Disclosure

Statement (as defined below).

8.    On December 1, 2016, the Debtors filed their amended First Amended Joint

Chapter 11 Plan of Nortel Networks Inc. and Certain of its Affiliated Debtors [D.I. 17501] (the

"Plan") on behalf of all Debtors (other than NNIII), along with an amended Proposed Disclosure

Statement for the First Amended Joint Chapter 11 Plan of Nortel Networks Inc. and Certain of its

Affiliated Debtors [D.I. 17502] (the "Disclosure Statement").  The Court held a hearing to

consider the adequacy of the Disclosure Statement, and on December 1, 2016 entered an order

approving the adequacy of the Disclosure Statement for the solicitation of votes on the Plan.

[D.I. 17516].[5]  On January 24, 2017, the Bankruptcy Court confirmed the Plan for all Debtors

except Nortel Networks India International Inc. [D.I. 17795].

9.    For further information regarding these chapter 11 cases, reference may be made

to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

---

[5]    As set forth in the Plan and Disclosure Statement, the Plan does not include a Plan for Nortel Networks India International Inc., which intends to file its own Chapter 11 plan in its Chapter 11 case.

**B.    Bar Date and Schedules**

7.    On April 20, 2009 and May 29, 2009, the Debtors (other than NN CALA and NNIII) filed their Schedules of Assets and Liabilities and Statements of Financial Affairs (the "Original Schedules") [D.I.s 616-627, 801-810].  On September 11, 2009, the Debtors filed Schedules of Assets and Liabilities and Statements of Financial Affairs for NN CALA (the "NN CALA Schedules") [D.I. 1477, 1478] and on July 26, 2016, the Debtors filed Schedules of Assets and Liabilities and Statements of Financial Affairs for NNIII (the "NNIII Schedules) [No. 16-11714-KG, D.I. 9-10].  On November 4, 2009, the Debtors (other than NN CALA and NNIII) filed their Amended Schedules of Assets and Liabilities and Amended Statements of Financial Affairs (together with the NN CALA Schedules and NNIII Schedules, referred to as the "Amended Schedules") [D.I.s 1811-1825].

8.    On August 4, 2009, the Court entered an order (the "Bar Date Order") establishing September 30, 2009 at 4:00 p.m. (Eastern Time) (the "General Bar Date") as the last date for all creditors holding a "claim" against the Debtors (other than NN CALA and NNIII) to file and serve a written proof of claim, subject to certain enumerated exceptions set forth in the Bar Date Order [D.I. 1280].  On December 3, 2009, the Court entered an order establishing January 25, 2010 at 4:00 p.m. (Eastern Time) (the "CALA Bar Date") as the general claims bar date for all creditors holding a claim against NN CALA to file and serve written proofs of claim [D.I. 2059]. On August 16, 2016, the Court entered an order establishing September 19, 2016 at 4:00 p.m. (Eastern Time) (the "NNIII Bar Date) as the general claims bar date for all non-governmental creditors holding a claim against NNIII to file and serve written proofs of claim [No. 16-11714-KG, D.I. 16]. The Court also entered an order fixing November 15, 2011 at 4:00 p.m. (Eastern Time) as the bar date for filing proofs of claim in respect of certain Non-Canadian intercompany and director and officer claims [D.I. 6464].

9.      On each of October 31, 2011, November 7, 2011, November 15, 2011 and November 21, 2011, the Debtors filed amended versions of Schedules E and F of the Original Schedules and Amended Schedules of NNI, Nortel Altsystems Inc. ("Nortel Altsystems") and NN CALA [D.I. 6702, 6719, 6780, 6827] (collectively, the "Second Amended Schedules through the Fifth Amended Schedules").[6]  The Second Amended Schedules through the Fifth Amended Schedules amend previously filed Schedules E and F to modify the priority and amount of the scheduled severance claims for certain individuals terminated prior to the applicable Petition Date.

10.     On December 10, 2014, NNI and Nortel Networks Capital Corporation ("NNCC") filed amended versions of Schedules F of their Original Schedules, Amended Schedules, Second Amended Schedules through Fifth Amended Schedules and Sixth Amended Schedules (collectively, the "Seventh Amended Schedules" and together with the Original Schedules, the Amended Schedules, the Second Amended Schedules through the Fifth Amended Schedules and the Sixth Amended Schedules, the "Schedules").  The Seventh Amended Schedules amend previously filed Schedules F to modify the amount and  characterization of certain scheduled intercompany payable claims.

## C.      The Employee Claims Resolution Process

11.     In the ordinary course of business, the Debtors maintain books and records (the "Books and Records") that reflect, among other things, the Debtors' liabilities and the amounts owed to their creditors.

12.     The Debtors' claims, notice and balloting agent, Epiq Bankruptcy Solutions, LLC, has prepared and maintains a register (the "Claims Register") of all proofs of claim filed against

---

[6]      Additionally, on February 21, 2012, the Debtors filed an amended version of NNI's Schedule F (the "Sixth Amended Schedules") [D.I. 7240].  The Sixth Amended Schedules amend NNI's previously filed Schedule F to modify the amount of certain scheduled trade payable claims.

the Debtors in these chapter 11 cases.  The Debtors and their advisors are comprehensively

reviewing and reconciling all claims, including both the claims listed on the Schedules and the

claims asserted in the proofs of claim (including any supporting documentation).  The Debtors

are also comparing the claims asserted in the proofs of claim with the Books and Records to

determine the validity of the asserted claims.

13.     This reconciliation process includes identifying particular categories of claims

that may be targeted for disallowance, reduction and allowance or reclassification and allowance.

To reduce the number of claims, and to avoid possible double recovery or otherwise improper

recovery by claimants, the Debtors continue to file omnibus objections to such categories of

claims if and where warranted.  This Objection is one such omnibus objection.

14.     On December 14, 2009, the Court entered an order granting the Debtors relief

from the requirements of Bankruptcy Rule 3007(e)(6) and Local Rule 3007-1(f) (the "Original

Rule 3007 Order") [D.I. 2125].

15.     On September 16, 2010, the Court entered an order authorizing and approving

omnibus settlement procedures to settle certain prepetition claims (the "Settlement Procedures")

[D.I. 3953].

16.     Also on September 16, 2010, the Court entered an order approving a cross-border

claims protocol (the "Claims Protocol") establishing procedures to promote coordination and

cooperation between the Debtors and the Canadian Debtors in the resolution of certain claims

filed in these chapter 11 cases and the Canadian Proceedings that raise cross-border issues [D.I.

3956].

17.     On February 7, 2012, the Court entered an order modifying the application of

Local Rule 3007-1 and the Original Rule 3007 Order [D.I. 7178].

18.     On February 19, 2016, the Court entered an order authorizing and approving procedures to resolve or otherwise settle all disputed proofs of claims or interest (the "Omnibus Settlement Procedures"). [D.I. 16551]. The Omnibus Settlement Procedures superseded the Original Settlement Procedures.

**D.     Nortel Networks U.S. Deferred Compensation Plan**

19.     Prior to the Petition Date, on or about January 1, 2000, NNI established the Nortel Networks U.S. Deferred Compensation Plan (as amended, supplemented or modified, the "Deferred Compensation Plan").[7]  In connection with the establishment of the Deferred Compensation Plan, NNI as guarantor and U.S. Bank, National Association as trustee established an irrevocable trust (the "Plan Trust") pursuant to the Nortel Networks U.S. Deferred Compensation Plan Trust Agreement dated January 1, 2000 (as amended, the "Trust Agreement").

20.     From late 2010 through late 2012, the Debtors and various participants and beneficiaries of the Deferred Compensation Plan (all of the participants in or beneficiaries of such Plan, collectively, the "Participants") litigated the disposition of the assets held by the Plan Trust pursuant to the Trust Agreement (the "Trust Assets").  Such litigation resulted in a negotiated settlement (the "Deferred Compensation Settlement Agreement")[8] of all Participants' claims against the Debtors under the Deferred Compensation Plan.  Among other things, pursuant to the Deferred Compensation Settlement Agreement, an aggregate of $31,166,369.13 was paid to Participants or their transferees in satisfaction of their claims against the Debtors and

---

[7]     The description of the Deferred Compensation Plan is for background purposes only and is subject in all respects to the terms of the Deferred Compensation Plan.

[8]     The description of the Deferred Compensation Settlement Agreement is for background purposes only and is subject in all respects to the terms of the Deferred Compensation Settlement Agreement.

other third parties with respect to the Deferred Compensation Plan (the "Deferred Compensation Claims") and such Participants released all of their Deferred Compensation Claims.

21.     The Deferred Compensation Settlement Agreement was proposed to the Bankruptcy Court pursuant to the Joint Motion For Order:  (I) Approving Compromise Among The Debtors, The Official Committee Of Unsecured Creditors, And The Ad Hoc Group Of Beneficiaries Of The Nortel Networks U.S. Deferred Compensation Plan (For Themselves And All Similarly Situated Participants In And Beneficiaries Of The Nortel Networks U.S. Deferred Compensation Plan) Pursuant To Rule 9019 Of The Federal Rules Of Bankruptcy Procedure; (II) Directing Payments Pursuant To 11 U.S.C. § 503(B)(1)(A) And Rule 9019; (III) Directing U.S. Bank National Association To Turn Over Assets To The Debtors; And (IV) Releasing And Settling Claims Of The Deferred Compensation Plan Participants [D.I. 9127] (the "Deferred Compensation Settlement Motion"), and was approved by the Bankruptcy Court pursuant to the Order (I) Approving Compromise Among The Debtors, The Official Committee Of Unsecured Creditors, And The Ad Hoc Group Of Beneficiaries Of The Nortel Networks U.S. Deferred Compensation Plan (For Themselves And All Similarly Situated Participants In And Beneficiaries Of The Nortel Networks U.S. Deferred Compensation Plan) Pursuant To Rule 9019 Of The Federal Rules Of Bankruptcy Procedure; (II) Directing Payments Pursuant To 11 U.S.C. § 503(B)(1)(A) And Rule 9019; (III) Directing U.S. Bank National Association To Turn Over Assets To The Debtors; And (IV) Releasing And Settling Claims Of The Deferred Compensation Plan Participants [D.I. 9323].  More information about the Deferred Compensation Plan and the Deferred Compensation Settlement Agreement is available in the Deferred Compensation Settlement Motion [D.I. 9127].

22.     Because claims under the Deferred Compensation Plan have been released pursuant to the Deferred Compensation Settlement Agreement, the Debtors now seek the disallowance of such claims.

**E.     Nortel Networks Severance Plans**

23.     <u>Nortel Networks Severance Allowance Plan</u>.  The Nortel Networks Severance Allowance Plan (the "<u>Severance Plan</u>")[9] provided a severance allowance to employees whose employment was terminated in the context of a workforce reduction, a reclassification of the employee's current position, or termination by the employer without cause.  Severance benefits were available to employees with six months or more of service with NNI, or any NNI subsidiary that adopted the Severance Plan ("the <u>Employer</u>"), who were not parties to a separate severance agreement.  The Severance Plan provided for a benefit of four weeks of base salary, plus one week of base salary for every year of service, and continued medical, dental, and life insurance benefits, with additional periods of base salary payable at the Employer's discretion, up to a maximum of two times the employee's total annual compensation for the prior year.  Additional severance benefits accrued on the anniversary of the date on which each eligible employee accrued an additional year of service under the plan (the "<u>Severance Eligibility Date</u>"), as determined by the Employer.  As of the applicable Petition Dates, no further benefits have been paid under the plan.

24.     <u>Nortel Networks Enhanced Severance Allowance Plan</u>.  The Nortel Networks Enhanced Severance Allowance Plan (the "<u>Enhanced Severance Plan</u>")[10] provided a severance allowance to certain terminated employees who had three months or more of service with the

---

[9]     The description of the Severance Plan is for background purposes only and is subject in all respects to the terms of the Severance Plan.

[10]     The description of the Enhanced Severance Plan is for background purposes only and is subject in all respects to the terms of the Enhanced Severance Plan.

Employer and were not parties to a separate severance agreement with the Employer, and whose employment was terminated as part of a workforce reduction, due to a reclassification of the employee's current position, or by the employer without cause.  The Enhanced Severance Plan provided for a benefit of twelve months' of continued base salary, plus additional amounts of base salary payable at the Employer's discretion up to a maximum of two times the employee's total annual compensation, and medical, dental, and life insurance benefits.

25.    <u>Other Termination Benefits</u>.  Prior to the applicable Petition Date, certain employees of NNI were provided with 60 days' non-working notice prior to their date of termination of employment, during which time such employees were eligible to receive salary, medical, dental, and life insurance benefits, and matching contributions to NNI's 401(k) plan.  In the case where employees were then terminated on the applicable Petition Date prior to the end of the 60-day period, they have asserted claims for the remaining salary and benefits.

26.    In connection with the claims reconciliation process described above, the Debtors reviewed their Books and Records to determine the amount and priority classification of employees' termination-related benefits, including those described above.  The Second Amended Schedules through the Fifth Amended Schedules amended the scheduled priority and amount of the claims of several employees relating to such severance and other termination-related benefits to reflect the Debtors' Books and Records.  The Debtors now object to certain claims filed with respect to severance and other termination-related benefits, which claims were filed prior to and following the filing of the Second Amended Schedules through the Fifth Amended Schedules.

**F.    Nortel Networks Retirement Income Plan**

27.    NNI sponsored the Nortel Networks Retirement Income Plan (the "<u>Defined Benefit Pension Plan</u>"), a tax-qualified, single-employer, defined benefit pension plan covered by Title IV of the Employee Retirement Income Security Act of 1974 (as amended, "<u>ERISA</u>"), to

provide retirement benefits for certain of its employees.  See 29 U.S.C. §§ 1301(a)(13), 1321(a).
As of January 1, 2009, there were approximately 22,220 present and former employees of the
Debtors (and their beneficiaries) that were entitled to receive pension benefits under the terms of
the Defined Benefit Pension Plan.

28.     The Defined Benefit Pension Plan was terminated under § 4042(c) of ERISA,
effective July 17, 2009, pursuant to an agreement between the Pension Benefit Guaranty
Corporation (the "PBGC") and the Retirement Plan Committee of the Defined Benefit Pension
Plan as the plan administrator (the "Trusteeship Agreement").  The Trusteeship Agreement also
appointed the PBGC as statutory trustee of the Defined Benefit Pension Plan.  On August 31,
2009, this Court entered an order authorizing the Debtors to take all necessary or appropriate
actions in furtherance of the implementation of the Trusteeship Agreement [D.I. 1406].[11]

### G.     Nortel Networks Retiree Welfare Plans

29.     On June 21, 2011, an Official Committee of Retired Employees (the "Retiree
Committee") was appointed in the Debtors' chapter 11 cases relating to the potential
modification or termination of certain retiree benefits the Debtors historically provided to their
retired employees through various retiree welfare plans and other programs [D.I 5783] (the
"Retiree Welfare Plans").[12]  After more than a year of negotiations with the Retiree Committee,

---

[11]     By Order dated September 24, 2009, this Court approved a Stipulation Regarding Filing Claims By Pension Benefit
Guaranty Corporation, pursuant to which each proof of claim filed by the PBGC shall be deemed to be filed in each of the sixteen
Debtors' chapter 11 cases [D.I. 1540]. On September 29, 2009, the PBGC filed four proofs of claim against each of the Debtors,
as either sponsor or a controlled group member of a sponsor of the Defined Benefit Pension Plan, with respect to the Defined
Benefit Pension Plan. The PBGC asserted claims for (i) the unfunded benefit liabilities of the Defined Benefit Pension Plan; (ii)
contributions necessary to satisfy the minimum funding standards of the Defined Benefit Pension Plan; (iii) insurance premiums,
interest and penalties with respect to the Defined Benefit Pension Plan; and (iv) shortfall and waiver amortization charges.  The
respective proofs of claim have been assigned numbers 4735, 4736, 4737 and 4738 in the Debtors' Claims Register (collectively,
the "PBGC Claims").  On January 6, 2017, this Court entered an Order Approving the Settlement Agreement By and Among the
Debtors and the Pension Benefit Guaranty Corporation with Respect to the PBGC Claims and Related Issues [D.I. 17679], which
resolved the PBGC Claims by, inter alia, allowing the PBGC Claims as a single general unsecured claim against each of the U.S.
Debtors.

[12]     The description of the Retiree Welfare Plans is for background purposes only and is subject in all respects to the terms
of the Retiree Welfare Plans.

13

including negotiations under the supervision of a Bankruptcy Court-appointed mediator, the

parties reached a settlement agreement (the "Retiree Welfare Settlement Agreement") providing

for the termination of the Retiree Welfare Plans and the discontinuance of the benefits provided

thereunder and a release of the Debtors and other third parties from liability related to Retiree

Claims (as defined in the Retiree Welfare Settlement Agreement) in exchange for a settlement

payment to the Retiree Committee.

30.      The Retiree Welfare Settlement Agreement was proposed to the Bankruptcy

Court on December 31, 2012 pursuant to the Debtors' Motion for Entry of Orders Pursuant to

11 U.S.C. § § 105, 363 and 1114 and Fed. R. Bankr. P. 9019 (A) Approving Settlement

Notification Procedures and, Subsequently (B) Approving a Settlement Agreement with the

Official Committee of Retired Employees [D.I. 9224] (the "Retiree Welfare Settlement

Motion"), and was approved by the Bankruptcy Court on April 2, 2013 [D.I. 9938].  By

agreement of the Debtors and the Retiree Committee, and as authorized by the Retiree Welfare

Settlement Agreement, the Retiree Welfare Plans were terminated in their entirety as of June 30,

2013, and a payment was made to the Retiree Committee in the amount of $66,172,000

[D.I. 9962].  More information about the Retiree Welfare Settlement Agreement is available in

the Retiree Welfare Settlement Motion.

**Relief Requested**

31.      For the reasons set forth below, the Debtors object to each of the claims identified

in **Exhibit A**.  By this Objection, the Debtors respectfully request that the Court enter an order

pursuant to section 502(b) of the Bankruptcy Code, Bankruptcy Rule 3007 and Local

Rule 3007-1 reducing, modifying, reclassifying or disallowing in full, as applicable, the claims

identified in **Exhibit A**:

a.    Certain of the claims identified in **Exhibit A** should be disallowed in full as claims for which the Debtors are not liable because the claims assert liabilities that are not liabilities of any of the Debtors and appear to relate to transactions with an affiliate which is not a Debtor in these chapter 11 cases (the "<u>Non-Debtor Liability Claims</u>").

b.    Certain of the claims identified in **Exhibit A** should be reduced and allowed, adjusted and allowed, and/or reclassified and allowed in the amount identified under the column labeled "Modified Claim Amount or Disallowed Claim" for one or more of the following reasons: (i) part of the claimed amount is neither supported by the documentation or other evidence provided by the claimant, if any, nor by the Debtors' Books and Records, (ii) part of the claimed amount relates to benefits or assertions for which the Debtors' Books and Records indicate that no amounts are due and owing, (iii) the claimed amount is lower than the amount supported by the Debtors' Books and Records, (iv) the claim asserts a liability that is not a liability of any of the Debtors and the Books and Records indicate a different liability owed to the claimant, (v) the claimed amount asserts an unsupported secured claim pursuant to section 506 of the Bankruptcy Code, (vi) the claimed amount asserts an incorrect or improper classification, in part or in full pursuant to sections 503(b)(9), 507(a)(4) or 507(a)(5) of the Bankruptcy Code, and/or (vii) certain invoices related to the claim have already been paid pursuant to one or more payment orders and/or in the ordinary course of business (the "<u>Modified, Reclassified, and Allowed Claims</u>")

c.    Certain of the claims identified in **Exhibit A** should be disallowed in full as claims for which the Debtors are not liable because, based on careful review of the Debtors' Books and Records, their Schedules, and the proofs of claim, including any supporting documentation provided by the claimants, the Debtors have determined that there is no amount due and owing by any of the Debtors to the claimants because the claims, asserted by affiliates, lack a proper or valid basis, and otherwise have been released (the "<u>No-Basis and Released Claims</u>").

d.    Certain of the claims identified in **Exhibit A** should be disallowed in full as a claim for which the Debtors are not liable because the claim does not meet the requirements of section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007 (the "<u>No-Basis Equity Claims</u>").

e.    Certain of the claims identified in **Exhibit A** should be disallowed in full as a claim for which the Debtors are not liable because the claim asserts liability under the Retiree Welfare Plan and was released and satisfied pursuant to the Retiree Welfare Settlement Agreement (the "<u>No-Basis Retiree Claims</u>").

      f.      Certain of the claims identified in **Exhibit A** should be disallowed in full as claims for which the Debtors are not liable because the claims are redundant of other claims filed asserting the same purported liability (the "Redundant Claims").

## Basis for Relief

32.      Pursuant to section 101 of the Bankruptcy Code, a creditor holds a claim against a bankruptcy estate only to the extent that (a) it has a "right to payment" for the asserted liabilities and (b) the claim is otherwise allowable.  11 U.S.C. §§ 101(5) and 101(10).

33.      When asserting a claim against a bankrupt estate, a claimant must allege facts that, if true, would support a finding that the debtor is legally liable to the claimant.  See In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992); In re Int'l Match Corp., 69 F.2d 73, 76 (2d Cir. 1934) (finding that a proof of claim should at least allege facts from which legal liability can be seen to exist).  Where the claimant alleges sufficient facts to support its claim, its claim is afforded *prima facie* validity.  In re Allegheny Int'l, Inc., 954 F.2d at 173.  A party wishing to dispute such a claim must produce evidence in sufficient force to negate the claim's *prima facie* validity.  Id.  In practice, the objecting party must produce evidence that would refute at least one of the allegations essential to the claim's legal sufficiency.  Id. at 173-74.  Once the objecting party produces such evidence, the burden shifts back to the claimant to prove the validity of his or her claim by a preponderance of the evidence.  Id.  The burden of persuasion is always on the claimant.  Id.

## A.      Non-Debtor Liability Claims

34.      The Debtors object to the Non-Debtor Liability Claims identified in **Exhibit A** and respectfully request that the Non-Debtor Liability Claims be disallowed in full.  The Debtors and/or their advisors have reviewed the Books and Records, the Schedules, the Proofs of Claim, including the alleged underlying liabilities, and the related supporting documentation provided

16

by each Claimant, if any, and have determined that the Non-Debtor Liability Claims are not a valid liability of any Debtor and appear to relate to transactions with an affiliate which is not a Debtor in these chapter 11 cases.

**B.      Modified, Reclassified and Allowed Claims**

35.     The Debtors also object to a certain claim identified in **Exhibit A** because certain invoices related to the claim have already been paid pursuant to one or more payment orders and/or in the ordinary course of business.  The claim should be reduced by the amount already paid and allowed in the modified amount listed in **Exhibit A.**

**C.      No-Basis and Released Claims**

36.     The Debtors object to certain of the claims identified in **Exhibit A** because, based on careful review of the Debtors' Books and Records, their Schedules, and the proofs of claim, including any supporting documentation provided by the claimants, the Debtors have determined that there is no amount due and owing by any of the Debtors to the claimants because the claims, asserted by affiliates, lack a proper or valid basis, and otherwise have been released.  The Debtors respectfully request that these claims be disallowed in full

**D.      No-Basis Equity Claims**

37.     The Debtors object to the No-Basis Equity Claims identified in **Exhibit A** because they should not be allowed either as claims or interests under section 502 of the Bankruptcy Code.  11 U.S.C. § 502.

38.     The Debtors and/or their advisors have reviewed the Claims Register and each Equity Claim, including supporting documents attached thereto, if any.  Based on this review, the Debtors have determined that the Equity Claims are based on a Claimant's purported ownership of equity interests in the Canadian Debtors.  The Claimants do not state a legal basis by which

the Debtors would be liable for any loss of value in those equity interests, and the Debtors assert

that no such basis exists.

39.     However, even if any such claim could exist, it would not lie against the Debtors

given that public common equity of Nortel was issued by NNC, a Canadian Debtor that is the

ultimate corporate parent of the Debtors.  Accordingly, such Equity Interest Claims are not

properly asserted against any of the Debtors in these chapter 11 cases.[13]

40.     For the reasons set forth above, the Debtors respectfully submit that each of the

Equity Claims does not meet the standards for *prima facie* validity nor can the Equity Claims be

reclassified as equity interests in any of the Debtors.  Each of the Equity Claims should therefore

be disallowed in full.

**E.      No-Basis Retiree Claims**

41.     The Debtors object to the No-Basis Retiree Claims identified in **Exhibit A**

because each asserts a claim for benefits under the Retiree Welfare Plan which claims were

released and satisfied pursuant to the Retiree Welfare Settlement Agreement.  Accordingly, each

No-Basis Retiree Claim should be disallowed in its entirety and expunged.  The disallowance of

the No-Basis Retiree Claims is necessary to prevent double recovery by a claimant or a successor

thereof for the same claim— once under  Retiree Welfare Settlement Agreement and once under

the filed No-Basis Retiree Claims.  **By this Objection, the Debtors are not seeking to affect**

**any rights that claimants holding No-Basis Retiree Claims were given, if any, to participate**

**in distributions under the Retiree Welfare Settlement Agreement.**

---

[13]     To the extent the Claimants assert any claims based on their equity ownership, such as misrepresentation, such
allegations are conclusory and do not allege any particularized claim against the Debtors and therefore must be disallowed.

**F.      Redundant Claims**

42.      Exhibit A also lists and seeks to disallow any Redundant Claims filed by a claimant or a successor thereof related to the same liability.  In addition to listing the modified claims, Exhibit A also lists the claim number for such Redundant Claims, and notes that such claims will be disallowed as redundant of or superseded by the remaining claims.  The disallowance of the Redundant Claims is necessary to prevent double recovery by a claimant or a successor thereof for the same claim.

**Separate Contested Matters**

43.      To the extent that a response is filed regarding any claim identified in **Exhibit A** and the Debtors are unable to resolve the response, such claim, and the objection to such claim asserted by the Debtors herein, shall constitute a separate contested matter as contemplated by Bankruptcy Rule 9014.  Any order entered by the Court regarding an objection asserted in this Objection shall be deemed a separate order with respect to each claim.

**Responses to Omnibus Objection**

44.      To contest this Objection, a claimant must file and serve a written response to this Objection (a "Response") so that it is received no later than **4:00 p.m. (prevailing Eastern Time) on March 31, 2017** (the "Response Deadline").  Every Response must be filed with:

> The Office of the Clerk
> The United States Bankruptcy Court for the District of Delaware
> 824 Market Street
> Wilmington, Delaware 19801

and served upon the following entities so that the Response is received no later than the Response Deadline, at the following addresses:

> Cleary Gottlieb Steen & Hamilton LLP
> One Liberty Plaza
> New York, New York 10006
> Attn:  Lisa M. Schweitzer

-and-

Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street, P.O. Box 1347
Wilmington, Delaware 19899-1347
Attn: Derek C. Abbott

45.     Every Response to this Objection must contain, at a minimum, the following

information:

a.      A caption setting forth the name of the Court, the name of the Debtors, the case number, and the title of this Objection;

b.      The name of the claimant, the claim number, and a description of the basis for the amount of the claim;

c.      The specific factual basis and supporting legal argument upon which the party will rely in opposing this Objection;

d.      Any supporting documentation, to the extent that it was not included in the proof of claim previously filed with the clerk or claims agent, upon which the claimant intends to rely to support the basis for and amounts asserted in the proof of claim; and

e.      The name, address, telephone number and fax number of the person(s) (which may be the claimant or the claimant's legal representative) with whom counsel for the Debtors should communicate with respect to the claim or this Objection and who possesses authority to reconcile, settle, or otherwise resolve the objection to the disputed claim on behalf of the claimant.

46.     If a claimant fails to file and serve a timely Response by the Response Deadline,

the Debtors may present to the Court an appropriate order modifying, reclassifying or

disallowing the claim, without further notice to the claimant or a hearing.

**Replies to Responses**

47.     The Debtors may, at their option, file and serve a reply to any Response so that it

is received by the claimant (or the claimant's counsel, if represented) no later than three (3) days

prior to the hearing.

**Adjournment of Hearing**

48.     The Debtors reserve the right to seek an adjournment of the hearing on any

Responses to this Objection.  In the event that the Debtors seek such an adjournment, it will be

noted on the notice of agenda for the hearing, and such agenda will be served on the affected

claimant by serving the person designated in the Response.

**Reservation of Rights**

49.     The Debtors expressly reserve the right to amend, modify or supplement this

Objection.  Should one or more of the grounds of objection stated in this Objection be dismissed

or overruled, the Debtors reserve the right to object to each of the claims on any other grounds

that the Debtors discover or elect to pursue.  This Objection sets out substantive and non-

substantive objections to the claims identified in **Exhibit A**.  The Debtors reserve their right to

assert one or more other legal, factual, procedural, substantive and non-substantive objections to

claims identified in **Exhibit A** at a later time.  The Debtors also reserve the right to withhold all

applicable federal, state and local withholding taxes from distributions (if any) that would be

made with respect to the claims addressed in this Objection.

**No Prior Request**

50.     No prior request for the relief sought herein has been made to this or any other

court.

**Notice**

51.     Notice of this Objection has been given via first class mail or overnight delivery

to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group;

(iv) each of the parties listed in **Exhibit A** and (v) the general service list established in these

chapter 11 cases.  In light of the nature of the relief requested, the Debtors submit that no other

or further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto as **Exhibit C**, sustaining this Objection in all respects and granting such other and further relief as the Court deems just and proper.

Dated:  March 10, 2017
        Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York  10006
Telephone:  (212) 225-3505
Facsimile:  (212) 225-3999


MORRIS, NICHOLS, ARSHT & TUNNELL LLP

   */s/ Tamara K. Minott*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware  19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors-in-Possession*