IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NORTEL NETWORKS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 09-10138 (KG)<br>Jointly Administered<br><br>**Response Date: March 31, 2017 (extended by Debtors to April 3,2017**<br>**Hearing Date: April 11, 2017@10:00 a.m.**<br>**Re: D.I.'s 18009** |

**RESPONSE OF WILLIAM A. OWENS IN OPPOSITION TO DEBTORS'
FORTY-SEVENTH OMNIBUS OBJECTION (SUBSTANTIVE) TO
CERTAIN CLAIMS PURSUANT TO 11 U.S.C. § 502, FED. R. BANKR.
P. 3007 AND DEL. L.R. 3007-1 (NON-DEBTOR LIABILITY CLAIMS,
MODIFIED, RECLASSIFIED AND ALLOWED CLAIMS,
NO-BASIS AND RELEASED CLAIMS, NO-BASIS EQUITY CLAIMS,
<u>NO-BASIS RETIREE CLAIMS AND REDUNDANT CLAIMS)</u>**

Comes Now, William A. Owens, by and through the undersigned counsel and hereby files this Response of William A. Owens In Opposition to Debtors' Forty-Seventh Omnibus Objection (Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502, Fed. R. Bankr. P. 3007 and L.R. 3007-1(Non-Debtor Liability Claims, Modified, Reclassified and Allowed Claims, No-Basis Equity Claims, No-Basis Retiree Claims and Redundant Claims) and in furtherance thereof states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

{00181815.DOCX; 1}    1

1. On August 31, 2004, William A Owens was appointed by Nortel as the President and Chief Executive Officer of Nortel Networks Corporation and Nortel Networks Limited, which employment provided for a salary which was paid for by Nortel Networks, Inc. in U.S. dollars. Mr. Owens' employment agreement also provided that he was eligible to participate in all employee benefit plans of the Nortel Networks, Inc. (See, Form 8-K filed by Nortel Networks Corporation dated August 31, 2004 attached hereto as Exhibit "A" and incorporated herein by reference.)

2. Mr. Owens was terminated pursuant to a Letter Agreement dated November 21, 2005 (the "Termination Agreement"). A copy of the Termination Agreement is attached hereto as Exhibit "B" and is incorporated herein by reference.)

3. The Termination Agreement was sent by and signed by William J. Donovan, Senior Vice President of Human Resources for NNI. (See, Exhibit "B")

4. The Termination Agreement records the arrangements between Mr. Owens and Nortel Networks (the "Corporation"). The Corporation is defined in the Termination Agreement as, Nortel Networks, Inc., its parent, subsidiaries, affiliates (including, but not limited to, Nortel Networks Corporation and Nortel Networks Limited), predecessors, successors and assigns. (See, Exhibit "B" at §1)

5. The Termination Agreement provides that it shall be governed by the laws of the state of North Carolina. (See, Exhibit "B" at §11)

6. The Termination Agreement provides that the Corporation, as previously defined as NNI and including NNC and NNL, will provide payments and benefits identified in the

Termination Agreement. (See, Exhibit "B" at § 4) 7.The Termination Agreement provides for specified compensation that, according to the Termination Agreement, would only be available to Mr. Owens if he signed the Termination Agreement and complied with all terms of the Termination Agreement, including, but not limited to covenants not to compete. (See, Exhibit "B" at §§ 4,6 & 9)

8. One of the benefits provided to Mr. Owens under the Termination Agreement, which under the Termination Agreement would only be available to Mr. Owens if he executed the Termination Agreement, was a Special Pension Arrangement for a guaranteed period of five years commencing with a payment of $703,913.00 in June 2006 and equal monthly payments of $99,073.00 thereafter through and including November 2010. (the "Termination Benefits" See, Ex. "B" at § 4(d).)

9. Mr. Owens received an initial payment of $703,913.00 in U.S. dollars in June 2006. The initial payment of $703,913 was a combined payment for 6 months to comply with the waiting period required by IRS Code § 409A.

10. Mr. Owens continued to receive monthly payments of $99,073.00 in U.S. dollars through and including December, 2009.

11. On January 14, 2009 NNI and its related U.S. Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, which cases were consolidated for procedural purposes only (the "U.S. Proceedings"). Also on January 14, 2009, the ultimate corporate parent NNC and the direct corporate parent of the NNL and their affiliates commenced a proceeding with the Ontario Superior Court of Justice under the Companies' Arrangement Act (the "Canadian Proceedings").

12. Mr. Owens ceased receiving Termination Benefits after the commencement of the U.S. and Canadian Proceedings.

13. Mr. Owens initially filed a proof of claim against NNI, claim # 703, on March 24, 2009 in the amount of $2,179,606.00, which represented the Termination Benefits due and unpaid as of the date of the proof of claim. Thereafter, on September 2, 2009, Mr. Owens filed proof of claim # 2506 against NNI, in the amount of $2,278.679.00, which superseded claim #703 and represented the full unpaid Termination Benefits due Mr. Owens.

14. On July 11, 2011, Mr. Owens timely filed a proof of claim against the Canadian Debtors. (A copy of the Canadian Proof of Claim is attached hereto as Exhibit "C" and is incorporated herein by reference.)

15. On November 15, 2016, the Canadian Monitor filed a Notice of Disallowance (Proof of Claim) Reference /ID Number 26765, alleging, according to the Canadian Debtors' records, that Mr. Owens was not an employee of any of the Debtors at the time of his termination. (A copy of the Notice of Disallowance is attached hereto as Exhibit "D" and is incorporated herein by reference.)

16. Mr. Owens' Canadian counsel timely filed a Dispute Notice to the Notice of Disallowance. (A copy of the Dispute Notice is attached hereto as Exhibit "E" and is incorporated herein by reference.)

17. Mr. Owen's U.S. counsel, Edwin Sato, exchanged numerous emails and had discussions with U.S. Debtor representatives regarding allowance of the claim against NNI and it appeared that the U.S. Debtors were going to allow the claim, subject, possibly, to a limited present value discount. However, in December 2016 Mr. Sato was advised that NNI was going to

take the position that Mr. Owens' Termination Benefits were solely a liability of the Canadian Debtors.

18. On March 10, 2017, the US Debtors filed the Forty-Seventh Omnibus Objection to claims which included an objection to Mr. Owens' claims on two grounds.

19. First, the U.S. Debtors alleged that Mr. Owens' claim was a claim asserting liability for a pension benefit and that the Nortel Networks U.S. Deferred Compensation Plan Trust beneficiary claims had been resolved pursuant to a Settlement. However, Mr. Owens' claim is not, and never has been, part of the claims related to the U.S. Deferred Compensation Plan established for specified Participants, a rabbi trust ("Plan Trust").  Mr. Owens' claim is based on a special plan created for him and detailed in his Termination Agreement. And, in fact, the Termination Agreement alleges that Mr. Owens would only be eligible for the Termination Benefit if he executed the Termination Agreement.

20. The U.S. Debtors also allege a general books and records objection to the claim, broadly claiming that Mr. Owens' claim is a Non-Debtor Liability Claim. Other than this single allegation the debtor provides no evidence in support of this allegation. However, as set forth above, while employed by Nortel Mr. Owens was paid by the U.S. entities, was paid in U.S. dollars and was entitled to U.S. benefits. Furthermore, NNI is expressly a party to Mr. Owens' Termination Agreement, the Termination Agreement was signed by the Senior Vice President of Human Resources for NNI, and the Termination Agreement is expressly governed by the laws of North Carolina.

21.  Under the express terms of the Termination Agreement, both the U.S. Debtors and the Canadian Debtors are liable to Mr. Owens for his Termination Benefits and both the Canadian Monitor and the U.S. Debtor are disputing his claim causing Mr Owns to incur

expenses on both sides of the border for a claim clearly identified in his Termination Agreement as a liability of both the U.S. Debtors and the Canadian Debtors.

WHEREFORE, Mr. Owens requests that this Honorable Court deny the U.S. Debtors' request for disallowance of his claim and that he be granted such other and further relief as is just and equitable.

Dated: April 3, 2017    **MONZACK, MERSKY, MCLAUGHLIN AND BROWDER, P.A.**

*/s/ Rachel B. Mersky*
Rachel B. Mersky (DE #2049)
1201 N. Orange Street, Suite 400
Wilmington, DE  19801
Tel:    (302) 656-8162
Fax:    (302) 656-2769
Email: *rmersky@monlaw.com*

**ATTORNEY FOR WILLIAM A. OWENS**