# EXHIBIT E

## DISPUTE NOTICE (PROOF OF CLAIM)

Regarding Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Global Corporation, Nortel Networks International Corporation and Nortel Networks Technology Corporation

**Name of claimant:**
    William A. Owens
    c/o Shaun Laubman
    Lax O'Sullivan Lisus Gottlieb LLP
    145 King St. W., Suite 2750
    Toronto ON M5H 1J8

**Reference/ID Number[1]:**  26765

I hereby give you notice of my intention to dispute the Notice of Disallowance/Partial Disallowance (Proof of Claim).

**Reasons for Dispute** (attach additional sheet and copies of all supporting documentation if necessary):

The creditor, William Owens, disputes the disallowance of his claim against the Debtors, including Nortel Networks Limited ("NNL"), Nortel Networks Corporation ("NNC") and their affiliates and subsidiaries.

Owens was employed by NNL and NNC as President and CEO and then Vice-Chairman and CEO until the time of his termination.  He relocated to Ontario, Canada during his employment.  Owens' termination letter from Nortel, dated November 21, 2005, attached hereto at Tab 1 (the "Termination Letter"), recognizes that Owens was employed by the Debtors.

The Termination Letter expressly includes both NNL and NNC in the definition of "Corporation" at paragraph 1 and makes them jointly and severally liable for payment of the special pension arrangement owed to Owens in connection with the cessation of his employment by the Debtors.

Furthermore, NNL and NNC's public filings acknowledged and recognized that Owens was an employee of the Debtors and their obligation to pay him the special pension payments as set out in his Proof of Claim.  A representative selection of the public filings is attached hereto at Tab 2.

Accordingly, Owens disputes the disallowance of his claim and maintains that his Proof of Claim is valid, in all respects, against the Debtors, subject only to deduction for any amounts recovered from the U.S. debtors in the chapter 11 proceeding.

_(signature)_

Dec. 9/16

(Signature of individual completing this Dispute Notice)  Date

Shaun Laubman counsel for William A. Owens

(Please print name)

Telephone Number:  416-360-8481
E-mail Address:  slaubman@counsel-toronto.com

Facsimile Number:  416-598-3730
Full Mailing Address:  Lax O' Sullivan Lisus Gottlieb LLP
145 King St. W., Suite 2750
Toronto, ON M5H 1J8

THIS FORM IS TO BE RETURNED BY ORDINARY MAIL, COURIER, PERSONAL DELIVERY OR ELECTRONIC OR DIGITAL TRANSMISSION AND MUST BE RECEIVED BY THE MONITOR NO LATER THAN 4:00 P.M. ON THE DAY THAT IS TWENTY-EIGHT (28) CALENDAR DAYS AFTER THE NOTICE OF DISALLOWANCE/PARTIAL DISALLOWANCE (PROOF OF CLAIM) WAS SENT TO YOU BY THE MONITOR, TO:

ERNST & YOUNG INC.
Court-appointed Monitor of Nortel Networks Corporation & others
222 Bay Street, P.O. Box 251
Toronto, Ontario
Canada M5K 1J7

Attention:  Nortel Claims
Telephone:  1-416-943-4439 or 1-866-942-7177
E-mail:  nortel.monitor@ca.ey.com
Fax:  1-416-943-2808

Please note: A copy of this Dispute Notice (Proof of Claim) will also be sent to your Representative Legal Counsel.

# TAB 1



# N**ORTEL**

CONFIDENTIAL-SPECIAL HANDLING

November 21, 2005

William A. Owens
Vice Chairman and Chief Executive Officer
Nortel Networks Corporation and
Nortel Networks Limited
8200 Dixie Road, Suite 100
Brampton, Ontario
L6T 5P6

Dear Bill:

This letter ("Agreement") records the arrangements between you and Nortel Networks (the "Corporation") concerning the cessation of your employment. The arrangements are as follows:

Cessation of Employment

1.  As used in this Agreement, the term "Corporation" shall mean Nortel Networks Inc., its parent, subsidiaries, affiliates (including, but not limited to, Nortel Networks Corporation and Nortel Networks Limited), predecessors, successors and assigns and all past and present officers, directors, employees and agents (in their individual and representative capacities only) of Nortel Networks Inc., its parent, subsidiaries, affiliates, predecessors, successors and assigns, in every case individually and collectively.

2.  Your employment relationship with the Corporation shall cease on November 18, 2005 ("Employment Termination Date"). It is agreed and understood that as of the close of business on November 18, 2005, you are no longer expected to perform any duties or responsibilities on behalf of the Corporation. All external responsibilities which you had prior to this date will be assumed by a person designated by the Corporation, including any participation in industry or other associations representing the Corporation. In addition, you agree to resign from your position as a member of the Board of Directors of the Corporation, effective as of or before the Employment Termination Date.

William J. Donovan
Senior Vice President
Human Resources
Nortel
8200 Dixie Road  Suite 100  Brampton  ON  Canada  L6T 5P6  T 905.863.1100  F 905.863.8412  E billdono@nortel.com

William A. Owens
November 21, 2005
Page 2



<u>Revocation Clause</u>

3.  You acknowledge that you received this document on or about November 21, 2005, and have twenty-one (21) days commencing on or about November 21, 2005, at your discretion, to consider whether to accept this Agreement. In addition, you shall have seven (7) calendar days following your execution of this document to revoke this Agreement by written notice. To be valid, the letter of revocation must be received by William J. Donovan ("me") at Nortel Networks, 4006 E. Chapel Hill-Nelson Highway, Research Triangle Park, North Carolina 27709, not later than the close of business seven (7) calendar days after you sign this Agreement. The terms and conditions of this Agreement shall become operative seven (7) days after you execute and deliver this Agreement to me, provided that you are in compliance with all terms and conditions of this Agreement and that you have not revoked this Agreement pursuant to the provisions set forth above in this paragraph.

<u>Post Termination Payments/Benefits ("PTPB") To Be Provided by the Corporation</u>

4.  The Corporation will provide you the payments and benefits set out in this paragraph 4(a) through (k) below, in addition to the applicable payments and benefits set forth in paragraph 5 of this Agreement, conditional upon (i) your signing and returning to me a copy of this Agreement; (ii) your compliance with all terms and conditions of this Agreement and those terms and conditions of your Employment Agreement and all other employment-related writings that you entered into with the Corporation (collectively, the "Employment Documents"); (iii) you not revoking this Agreement pursuant to paragraph 3 above; (iv) you not soliciting, either directly or indirectly for employment any employee(s) currently employed by the Corporation; (v) you not electing to accept employment with, or serve as a consultant, contractor or representative for, a company in competition with the Corporation, without the written consent of the Corporation and (vi) the Corporation's execution of this Agreement. You agree that, in the absence of written consent by the Corporation, any company will be deemed to be a prohibited company under (v) above, and also agree that the PTPB set forth in this paragraph 4 are dependent upon your compliance with these conditions and the PTPB will cease immediately upon your lack of compliance. The Corporation's response and consent referenced in (v) above will not be unreasonably withheld. So long as you comply, the Corporation will:

*(Severance Allowance)*

(a)  pay you, on or before the first pay period following the Employment Termination Date, severance allowances consisting of two (2) years of annual base salary plus a special

William A. Owens
November 21, 2005
Page 3



award equivalent to two (2) years of annual bonus paid at target ("Severance Pay"), in the total lump sum amount of Five Million Four Hundred Thousand Dollars ($5,400,000). Your Severance Pay is an individually negotiated amount to be paid in a different manner than and in lieu of any severance allowance benefit payable under the Nortel Networks Enhanced Severance Allowance Plan. By this Agreement you expressly waive any right to receive a benefit under the terms of the Nortel Networks Enhanced Severance Allowance Plan;

*(2005 SUCCESS Incentive Plan)*

(b)    consider you to be eligible to receive an incentive award payment under the 2005 SUCCESS Incentive Plan (the "Plan"). Any payment under the Plan will be determined by the Corporation based on the terms and conditions of the Plan in effect at the relevant time, will be pro rated for the period you were employed during 2005, and will be made using an Individual Performance Factor (IPF) of 1.0. Eligibility shall not be construed as a right to such payment, and any such payment will be made to you in a lump sum on the earlier of (i) the date any incentive award payment is made by the Corporation to employees generally under the terms of the Plan, provided such date is on or before March 15, 2006, or (ii) May 15, 2006.

*(Insurance Benefits)*

(c)    allow you to elect to: (i) obtain at your own expense continued health coverage, as required by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), for a period generally extending for eighteen (18) months from your Employment Termination Date; (ii) exercise your right to obtain Retiree Medical Plan coverage, at your own expense, in accordance with the provisions of the Nortel Networks Retiree Medical Plan; or (iii) revoke all group life insurance and health coverages (medical, dental, vision, hearing, Employment Assistance Program and Health Care Reimbursement Account ("HCRA") and AD&D coverage in which you and your covered eligible dependants, if any, are enrolled on the Employment Termination Date. If you elect (iii), your life and AD&D coverages will terminate effective 12:01 a.m. on November 19, 2005 and your health coverages, with the exception of HCRA, will terminate at the end of the month in which your employment relationship ceases (November, 2005). Irrespective of your selection of one of the foregoing options, at the time your group life insurance coverages terminate, you may convert appropriate coverages to applicable individual policies. AD&D cannot be converted to an individual policy. Please make your election in the space provided at the end of this Agreement concerning your decision to elect or decline the benefits set forth in this paragraph 4(b);

William A. Owens
November 21, 2005
Page 4



*(Special Pension Arrangements)*

(d)    pay you, as previously authorized by the Board of Directors and disclosed by the Corporation, a pension benefit over a guaranteed period of five (5) years commencing with a payment of Seven Hundred Three Thousand Nine Hundred Thirteen Dollars ($703,913.00) to be made in June, 2006 and equal monthly payments thereafter in the amount of Ninety Nine Thousand Seventy Three Dollars ($99,073.00) through and including November, 2010;

*(Stock Options)*

(e)    consider you ineligible for consideration for any future grant(s) of stock options. As authorized by the Board of Directors, all stock options previously granted to you have vested.  Your right to exercise any vested Nortel Networks stock options after the Termination Date (including during the Severance Period) will be determined in accordance with the provisions of the stock option plan under which the stock options were granted and the instrument of grant evidencing the options.

*(Deferred Share Units)*

(f)    settle the Deferred Share Units ("DSUs") which were awarded to you as an independent director of the Corporation prior to becoming an employee;

*(Relocation Costs)*

(g)    arrange and pay for the shipment of your household goods and vehicle(s) from Canada to the U.S. subject to the terms, limits and exclusions of the Nortel Networks International Assignment Long-Term Program, and pay you, on or before the first pay period following the Employment Termination Date, a lump sum Relocation Cost Allowance of twenty thousand dollars ($20,000.00) which amount will be grossed up for applicable taxes;

*(Outplacement Assistance)*

(h)    make available to you, should you elect, executive outplacement services to assist you in securing new employment, including as a member of a Board of Directors, and pay the professional fees for such services as are reasonably incurred;

William A. Owens
November 21, 2005
Page 5



*(Tax Equalization)*

(i)    provide you with any tax equalization benefits in accordance with the provisions of the Nortel Networks International Assignment Long-Term Program;

*(Withholdings)*

(j)    with respect to any monies or monetary equivalents to be paid hereunder, in its reasonable discretion, withhold appropriate amounts concerning any and all applicable federal, state or local tax withholding; and

*(Tax Preparation)*

(k)    pay the cost of personal income tax preparation for calendar years 2005 and 2006 and, at the Corporation's sole discretion, for additional years through 2010, provided there are tax credits available to the Corporation after 2006. Such tax preparation services will be provided by the service provider selected by the Corporation, in accordance with the provisions of the Nortel Networks International Assignment Long-Term Program.

## Benefits and Payments Available to You Without Signing this Agreement

5.    The following payments and benefits shall be provided to you by the Corporation, as applicable, without the requirement that you sign this Agreement:

*(Pension Benefits), if applicable*

(a)    you are eligible to elect to receive an estimated Seventy Three Thousand Five Hundred Dollars ($73,500.00) which is the combined benefit payable as a lump sum in December, 2005 as a result of your participation in the Nortel Networks Retirement Income Plan and the Restoration Plan;

*(Nortel Networks Long Term Investment Plan ("LTIP")), as applicable*

(b)    contributions made by you and any amounts that have vested in your LTIP account will be maintained or distributed pursuant to your direction(s) as permitted by the terms and conditions of the LTIP; and

*(Vacation Benefits)*

(c)    you will be paid, on or before the first pay period following the Employment Termination Date, a lump sum amount of One Hundred Seventy-Three Thousand Seventy-Six Dollars ($173,076.00) which is the equivalent of nine (9) weeks of base salary representing your

William A. Owens
November 21, 2005
Page 6



current accrued but unused vacation benefit, with no further vacation accrual subsequent to Employment Termination Date.

<u>Obligations of William A. Owens</u>

6.    Your signature herein is required to receive the PTPB set forth in paragraph 4.  Additionally, your signature will evidence your agreement to accept the following additional obligations:

*(Expense Accounts)*

(a)    you shall reconcile and settle your employee expense account, and any advances made to you by the Corporation, as soon as possible but not later than the Employment Termination Date;

*(Inventions/Confidentiality)*

(b)    you acknowledge that you continue to be bound by the terms of the Employment Documents, which you executed during the course of your hiring and employment by the Corporation.  You confirm that your entire right, title, and interest to all Inventions as generally described in such agreements with the Corporation are assigned to the Corporation regardless of the exact terms in, or the existence of, such an agreement between you and the Corporation.

With respect to Inventions as described in the above paragraph, you have disclosed or will promptly disclose them in writing to the Corporation, and you will, on the Corporation's request, promptly execute a specific assignment of title to the Corporation or its designee, and do anything else reasonably necessary to enable the Corporation to secure a patent or other form of protection for such Inventions in the United States and in other countries.  Any information pertaining to such an Invention is considered the confidential information of the Corporation until and unless such Invention is patented or published by the Corporation.

Also, you shall continue to maintain the confidentiality of all trade secrets and confidential, proprietary, commercial, technical or other information; and specifically you agree that you shall not at any time during or following your employment with the Corporation, disclose, other than to the Corporation's authorized personnel, or otherwise use for non-Corporation purposes, any confidential or proprietary information or know-how of any nature (whether or not a trade secret) relating to an activity of the Corporation or to any invention, which is owned or licensed by the Corporation.  Further, you agree, except as required by law or judicial process, not to reveal, disclose, or cause to be revealed or disclosed, anything with respect to the Corporation that could be reasonably expected to be injurious or harmful to any of its interests, or the interests of its

William A. Owens
November 21, 2005
Page 7



employees, officers or directors.  In addition, for a period of two (2) years from the
Employment Termination Date, you shall issue no public statement on the business
affairs, policies or the like of the Corporation without the prior written consent of the
Corporation and without limiting the foregoing, you shall not disparage the Corporation;

*(Notice)*

(c)     upon the occurrence of any contingency which affects your rights in or to any subsequent
payment or benefit, or affects the Corporation's rights under this Agreement, including
without limitation, your obtaining new employment and/or the commencement of
coverage under a new employer's benefit plan(s), you shall, within ten (10) days of such
occurrence, give written notice to the Corporation of that event.  Such notice shall be sent
to me in writing;

*(Advice and Assistance)*

(d)     you shall be generally available to assist the Corporation with any matters with which
you are personally familiar.  In the event it is necessary for you to provide the
aforementioned services, then the Corporation shall reimburse you for authorized,
reasonable and documented travel expenses, including, but not limited to, transportation,
lodging and meals, but not including attorneys' or other professional fees incurred
without the prior approval of the Nortel Networks Corporation Chief Legal Officer;

*(Company Property and Information Preservation)*

(e)     prior to your Employment Termination Date and before receiving any monies pursuant to
this Agreement, you shall return to the Corporation any and all property of the
Corporation currently in your possession and/or subject to your control, whether such
material shall be written instruments or tapes in electronic and/or recorded format.  For
your convenience, you may continue to retain the laptop computer and mobile phone
provided to you by the Corporation for a period of twelve (12) months following your
Employment Termination Date.

The Corporation's Corporate Procedure 206.01 states that "all documents, messages or
data composed, sent, or received through the network of Nortel Networks in any form are
and remain at all times the property of Nortel Networks".  In addition, all work product
that you have produced during your employment with the Corporation is the property of
the Corporation.    Therefore, all information, (however recorded or stored)
("Information") in your possession and/or that you have created in the course of your
employment with the Corporation (whether or not currently in your possession or control)
is the property of the Corporation.

William A. Owens
November 21, 2005
Page 8



You are aware that Nortel Networks has received a formal order of investigation from the United States Securities and Exchange Commission ("SEC") that requires the preservation and collection and disclosure of certain Information to the SEC. The Corporation is also a party to various civil lawsuits and other investigations and may need access to certain Information for those matters as well. Therefore, you agree to take affirmative steps to preserve all Information in your possession, custody and control (including information controlled by your assistant, if any).

As a result, you have the responsibility to secure relevant Information.

You agree to gather (including from on-site and off-site storage) and return to the Corporation all physical copies of Information (for example and without limitation, computer discs, Jaz Drive tapes, paper copies) and arrange for this information to be provided to your manager. In addition, the Corporation will take possession of your computer and preserve all electronic Information on your computer, as well as any related servers on which you have Information stored, at the time your computer is turned into the Corporation. Any Information located in your home, including on a home personal computer, must be returned to the Corporation and deleted from your home computer.

Compliance with this requirement is not optional. Given the penalties which the law provides, it is in everyone's interest to comply as quickly and completely as possible. None of these materials should be destroyed, even if they are a printout of something on a hard drive, until the investigations and all of the ongoing litigation is concluded. Should you have any questions regarding the implementation of these preservation instructions, please contact me, without delay.

The Information will be used by the Corporation for general business purposes and may also be provided by the Corporation to regulatory authorities in response to their requests or disclosed in any relevant private litigation to which the Corporation is a party. Also, the Information may be used by and provided to other entities within the Nortel Networks group and/or the Corporation's external advisors. In some instances, the recipients of this Information will be located outside your geographic area. To the extent that the Information contains any personal information, you consent to the collection, transfer and disclosure of that information by the Corporation to Nortel Networks entities, third parties and regulatory authorities within and outside of your geographic area for the purposes set out above;

William A. Owens
November 21, 2005
Page 9



*(Stock Insider)*

(f)     you understand and agree that if you have the designation of either "Reporting" or "Non-Reporting" Insider pursuant to Corporate Policy 320.28 of Nortel Networks Corporation (and under applicable Canadian/US securities legislation for Reporting Insiders), you will cease to have this designation effective on the Employment Termination Date. Notwithstanding the fact that you will no longer have this designation, if you are in possession of material non-public information relating to Nortel Networks, you are prohibited from trading in Nortel Networks securities (or informing another person of the material non-public information) in accordance with applicable laws. If you are a "Reporting" Insider, you understand that you are required to amend your insider profile within ten (10) days of your termination date on the Canadian System for Electronic Disclosure by Insiders (SEDI) to indicate that you are no longer a "Reporting" Insider of Nortel Networks. You should contact the Insider Reporting Department at (905) 863-1220 and fax (905) 863-8524 for assistance in amending the SEDI profile; and

*(Completion of Forms/Paperwork)*

(g)     you agree to complete such documentation/forms and paperwork that may be necessary to commence benefits provided to you under this Agreement.

Cessation of Benefits

7.     All company benefits not expressly extended to you pursuant to this Agreement shall be terminated effective 12:01 a.m. on the day after the Employment Termination Date.

Securities Indemnification

8.     The Corporation shall indemnify you in accordance with section 124 of the Canada Business Corporations Act and the Corporation's By-Laws.    Subject to and without limiting the foregoing, the Corporation's legal counsel will represent you in respect of any civil, criminal, administrative, investigative (including any internal investigation or independent review being conducted by the Corporation's Board of Directors or a Committee thereof) or other proceeding in Canada, the United States or other applicable jurisdiction in which you are involved (including as a witness) because of your association with the Corporation (hereafter, a "Matter").    However, in the event that the Corporation's counsel cannot represent you in a Matter because of a conflict, the Corporation agrees to advance monies to pay your reasonable and actual legal expenses in that Matter provided you agree that you will not settle the Matter, retain defense counsel or expert witnesses or consultants, or incur any defense costs without obtaining the Corporation's prior consent, which consent will not be unreasonably withheld.

William A. Owens
November 21, 2005
Page 10



<u>Release</u>

9.    IN CONSIDERATION OF THE FOREGOING PAYMENTS AND BENEFITS DETAILED
ABOVE, FOR WHICH YOU WOULD OTHERWISE BE INELIGIBLE, YOU HEREBY
FULLY AND UNCONDITIONALLY RELEASE AND FOREVER DISCHARGE THE
CORPORATION (EXCEPT FOR THE PROMISES AND COMMITMENTS CONTAINED
HEREIN) TO THE EXTENT PERMITTED BY LAW, FROM ANY AND ALL CLAIMS,
INCLUDING WITHOUT LIMITATION, PROVISIONS FOR SALARY, INCENTIVE
COMPENSATION, VACATION PAY, SEVERANCE PAY UNDER THE NORTEL
NETWORKS EXECUTIVE MANAGEMENT TEAM SEVERANCE ALLOWANCE PLAN,
NORTEL NETWORKS ENHANCED SEVERANCE ALLOWANCE PLAN, NORTEL
NETWORKS CORPORATION SPECIAL RETENTION PLAN, COMMISSIONS, PENSION
OR OTHER BENEFITS OR OTHER COMPENSATION AND PERQUISITES AND ANY
AND ALL REAL OR PRETENDED CLAIMS, CAUSES OF ACTION, OR DEMANDS,
INCLUDING, WITHOUT LIMITATION, THOSE FROM RIGHTS UNDER ANY
FEDERAL, STATE, AND LOCAL LAW, INCLUDING, WITHOUT LIMITATION, THE
WORKER ADJUSTMENT AND RETRAINING NOTIFICTION ACT ("WARN") AND
THOSE PROHIBITING DISCRIMINATION ON ANY BASIS, INCLUDING SEX, AGE,
RELIGION, SEXUAL ORIENTATION, DISABILITY, RACE, NATIONAL ORIGIN, AS
MAY BE PROHIBITED UNDER SUCH LAWS AS THE AGE DISCRIMINATION ACT OF
1967, THE OLDER WORKERS BENEFIT PROTECTION ACT (OWBPA), THE CIVIL
RIGHTS ACT OF 1964, THE AMERICANS WITH DISABILITIES ACT, THE EQUAL PAY
ACT AND THE FAMILY AND MEDICAL LEAVE ACT, INCLUDING ANY
AMENDMENTS TO THOSE LAWS  (INCLUDING, BUT NOT LIMITED TO, YOUR
RIGHT TO MAKE A CLAIM IN YOUR OWN RIGHT OR THROUGH A SUIT BROUGHT
BY ANY THIRD PARTY ON YOUR BEHALF) OR ANY COMMON LAW CLAIMS OF
ANY KIND, INCLUDING, BUT NOT LIMITED TO, CONTRACT, TORT, AND
PROPERTY RIGHTS INCLUDING, BUT NOT LIMITED TO, BREACH OF CONTRACT,
FRAUD,    DECEIT,    NEGLIGENCE,    NEGLIGENT    MISREPRESENTATION,
DEFAMATION,    NEGLIGENT    SUPERVISION,    BREACH    OF    PRIVACY,
MISREPRESENTATION, WRONGFUL TERMINATION, INVASION OF PRIVACY,
INTENTIONAL OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS, BREACH
OF FIDUCIARY DUTY, VIOLATION OF PUBLIC POLICY AND ANY OTHER
COMMON LAW CLAIM OF ANY KIND WHATSOEVER AS OF THE DATE OF THIS
AGREEMENT WHICH YOU EVER HAD OR NOW HAVE, DIRECTLY OR INDIRECTLY,
BASED UPON ANY FACT, MATTER, EVENT OR CAUSE, WHETHER KNOWN OR
UNKNOWN, ARISING OUT OF OR RELATING TO YOUR EMPLOYMENT BY THE
CORPORATION AND YOUR SEPARATION THEREFROM, OR YOUR RELATIONSHIP
WITH THE CORPORATION OR THE TERMS OF ANY WRITTEN OR ORAL
EMPLOYMENT ARRANGEMENTS OR THE LIKE THAT YOU MAY HAVE ENTERED
INTO WITH THE CORPORATION.  THIS AGREEMENT MAY NOT BE USED TO

William A. Owens
November 21, 2005
Page 11



INTERFERE WITH YOUR RIGHT TO FILE A CHARGE OR PARTICIPATE IN AN INVESTIGATION OR PROCEEDING CONDUCTED BY THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION OR ANY OTHER APPROPRIATE AGENCY. HOWEVER, YOU UNDERSTAND AND AGREE THAT THE CORPORATION WILL USE THIS AGREEMENT AS A DEFENSE TO ANY SUCH CHARGE YOU FILE, INVESTIGATION OR PROCEEDING IN WHICH YOU PARTICIPATE, OR REMEDY WHICH YOU SEEK. YOU AGREE THAT THIS RELEASE SHALL BE BINDING UPON YOU AND YOUR HEIRS, ADMINISTRATORS, REPRESENTATIVES, EXECUTORS, SUCCESSORS AND ASSIGNS, AND ITS ENFORCEABILITY SHALL NOT BE CHALLENGED. YOU ACKNOWLEDGE THAT YOU HAVE READ THIS AGREEMENT AND THAT YOU UNDERSTAND ALL OF ITS TERMS AND EXECUTE IT VOLUNTARILY WITH FULL KNOWLEDGE OF ITS SIGNIFICANCE AND THE CONSEQUENCES THEREOF. FURTHER, YOU ACKNOWLEDGE THAT YOU HAVE HAD AN ADEQUATE OPPORTUNITY TO REVIEW AND CONSIDER THE TERMS OF THIS AGREEMENT INCLUDING, AT YOUR DISCRETION, THE RIGHT TO DISCUSS THIS AGREEMENT WITH LEGAL COUNSEL OF YOUR CHOICE. YOU HEREBY ACKNOWLEDGE THAT YOU INTEND TO GRANT TO THE CORPORATION A FULL AND FINAL RELEASE AS SET FORTH HEREIN. FINALLY, YOU UNDERSTAND AND AGREE THAT THE CORPORATION MAY DEDUCT FROM  ANY PAYMENT PROVIDED TO YOU UNDER THIS AGREEMENT ANY AMOUNTS (INCLUDING, BUT NOT LIMITED TO, ANY ADVANCE, LOANS, OVERPAYMENT, TAX EQUALIZATION PAYMENTS OR OTHER MONIES) THAT THE CORPORATION DETERMINES THAT YOU OWE THE CORPORATION.

10. This Agreement constitutes the entire understanding of the parties with respect to your prior employment, including termination thereof, and there are no promises, understandings or representations other than those set forth herein. This Agreement may be modified only with a written instrument duly executed by you and Corporation.

11. This Agreement shall be governed by the laws of North Carolina without regard to any provisions concerning conflict of laws. This Agreement may be delivered by facsimile and executed in counterparts, all of which, taken together, shall constitute one and the same original instrument.

12. The parties agree that should any provision of this Agreement be declared or be determined by any court to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby and said illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement.

William A. Owens
November 21, 2005
Page 12



Please acknowledge that the foregoing correctly and completely sets forth your understanding of the arrangements and commitments, and your acceptance thereby, by signing, dating and returning this Agreement to me.

Yours truly,




William J. Donovan
Senior Vice President, Human Resources

WJL/jld


IN WITNESS WHEREOF, intending to be legally bound, the parties have executed this Agreement as set forth below.

PLEASE INDICATE BELOW YOUR
ELECTIONS REGARDING:

- Insurance Benefits.
  I elect the provisions of (CIRCLE ONE)

  1. 4(b)(i) [COBRA Coverage];

  2. 4(b)(ii) [Nortel Retiree Medical Coverage]; or

  3. Revoke all group life insurance and health coverages in which I am currently enrolled.


  _____
  INITIALS

NORTEL NETWORKS INC.                    WILLIAM A. OWENS

By: _____            _____
Title: _____          Date: _____
Date: _____

# TAB 2

# Tab A

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

# FORM 10-K

☑     **Annual report pursuant to Section 13 or 15(d) of**
**the Securities Exchange Act of 1934**
For the fiscal year ended **December 31, 2003**

☐     Transition report pursuant to Section 13 or 15(d) of
the Securities Exchange Act of 1934
For the transition period from _____ to _____

Commission file number **000-30758**

# Nortel Networks Limited

(Exact name of registrant as specified in its charter)

**Canada**                                      **62-12-62580**
(State or other jurisdiction of incorporation or organization)      (I.R.S. Employer Identification No.)

**8200 Dixie Road, Suite 100, Brampton, Ontario, Canada**      **L6T 5P6**
(Address of principal executive offices)                        (Zip Code)

Registrant's telephone number including area code: **(905) 863-0000**

Securities registered pursuant to Section 12(b) of the Act:

**Title of each class**                        **Name of each exchange on which registered**
Guarantees of Nortel Networks Corporation's      New York Stock Exchange
4.25% Convertible Senior Notes Due 2008

Securities registered pursuant to Section 12(g) of the Act:

**Title of each class:**    Common Shares without nominal or par value

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to filing requirements for the past 90 days. Yes     No ✓

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☐

Indicate by check mark whether the registrant is an accelerated filer (as defined in Rule 12b-2 of the Act). Yes ✓     No

At December 31, 2004, 1,460,978,638 common shares of Nortel Networks Limited were issued and outstanding, all of which were held by Nortel Networks Corporation. The common shares of the registrant are not traded on any stock exchange.

4.92 years of United States service for Mr. Debon; $708,816 and 27.50 years of Canadian service for Mr. McFadden; and $823,931 and 5.58 years of Canadian pensionable service for Mr. DeRoma. Mr. DeRoma is also eligible to receive additional credited pensionable service, up to a maximum of 8.125 years, under the terms of his employment agreement. See "Certain Employment Arrangements". The approximate total eligible earnings and years of credited pensionable service for Mr. Bolouri at December 31, 2003 was $696,984 and 22 years of Canadian service.

**Table I**

| Total Earnings | Years of Service | | | | |
|---|---|---|---|---|---|
| | 15 | 20 | 25 | 30 | 35 |
| $600,000 | $138,578 | $169,034 | $207,612 | $235,023 | $273,602 |
| 700,000 | 161,674 | 197,206 | 242,215 | 274,194 | 319,202 |
| 800,000 | 184,770 | 225,379 | 276,817 | 313,365 | 364,802 |
| 900,000 | 207,866 | 253,551 | 311,419 | 352,535 | 410,403 |
| 1,000,000 | 230,963 | 281,724 | 346,021 | 391,706 | 456,003 |
| 1,100,000 | 254,059 | 309,896 | 380,623 | 430,876 | 501,603 |
| 1,200,000 | 277,155 | 338,058 | 415,225 | 470,047 | 547,203 |
| 1,300,000 | 300,251 | 366,241 | 449,827 | 509,217 | 592,804 |
| 1,400,000 | 323,348 | 394,413 | 484,429 | 548,388 | 638,404 |
| 1,500,000 | 346,444 | 422,585 | 519,031 | 587,558 | 684,004 |
| 1,600,000 | 369,540 | 450,758 | 553,633 | 626,729 | 729,605 |
| 1,700,000 | 392,636 | 478,930 | 588,235 | 665,900 | 775,205 |
| 1,800,000 | 415,733 | 507,102 | 622,837 | 705,070 | 820,805 |
| 1,900,000 | 438,829 | 535,275 | 657,439 | 744,241 | 866,406 |
| 2,000,000 | 461,925 | 563,447 | 692,042 | 783,411 | 912,006 |

Table II estimates the benefits calculated under the United States Cash Balance Plan formula under the Nortel Networks Retirement Income Plan for participating employees and executives, payable as a straight life annuity.

The approximate benefits for Mr. Owens and Ms. Spradley's service are shown in Table II. The approximate total eligible earnings and years of credited service at December 31, 2004 for Mr. Owens was $680,328 and .75 years of United States service and $1,139,325 and 16.67 years of United States service for Ms. Spradley. As Mr. Owens and Ms. Spradley are in the Cash Balance Plan, eligible earnings for 2004 reflect 2004 base salary and for Ms. Spradley it also included the one-time award paid during 2004 under the SUCCESS Plan. Mr. Owens is also eligible for a Special Pension Arrangement. See "Certain Employment Arrangements".

161

Table II

| Total Earnings | Years of Service | | | | | | |
|---|---|---|---|---|---|---|---|
| | 5 | 10 | 15 | 20 | 25 | 30 | 35 |
| $600,000 | $10,330 | $20,659 | $30,989 | $41,318 | $51,648 | $61,978 | $72,308 |
| 700,000 | 12,051 | 24,102 | 36,153 | 48,204 | 60,256 | 72,307 | 84,359 |
| 800,000 | 13,773 | 27,546 | 41,318 | 55,091 | 68,864 | 82,637 | 96,411 |
| 900,000 | 15,494 | 30,989 | 46,483 | 61,977 | 77,472 | 92,967 | 108,462 |
| 1,000,000 | 17,216 | 34,432 | 51,648 | 68,863 | 86,080 | 103,296 | 120,513 |
| 1,100,000 | 18,938 | 37,875 | 56,813 | 75,750 | 94,688 | 113,626 | 132,565 |
| 1,200,000 | 20,659 | 41,318 | 61,977 | 82,636 | 103,296 | 123,956 | 144,616 |
| 1,300,000 | 22,381 | 44,762 | 67,142 | 89,522 | 111,904 | 134,285 | 156,667 |
| 1,400,000 | 24,103 | 48,205 | 72,307 | 96,409 | 120,512 | 144,615 | 168,719 |
| 1,500,000 | 25,824 | 51,648 | 77,472 | 103,295 | 129,120 | 154,945 | 180,770 |
| 1,600,000 | 27,546 | 55,091 | 82,636 | 110,181 | 137,728 | 165,274 | 192,821 |
| 1,700,000 | 29,267 | 58,534 | 87,801 | 117,068 | 146,336 | 175,604 | 204,873 |
| 1,800,000 | 30,989 | 61,978 | 92,966 | 123,954 | 154,944 | 185,933 | 216,924 |
| 1,900,000 | 32,711 | 65,421 | 98,131 | 130,840 | 163,552 | 196,263 | 228,975 |
| 2,000,000 | 34,432 | 68,864 | 103,296 | 137,727 | 172,160 | 206,593 | 241,027 |

On April 27, 2004, the Company and Nortel Networks Corporation terminated for cause the employment of each of their then president and chief executive officer, chief financial officer and controller. On August 19, 2004, Nortel Networks Corporation announced that seven individuals with, or who had, significant responsibilities for financial reporting at the line of business and regional levels were terminated for cause and that Nortel Networks will demand repayment of payments made under bonus plans in respect of 2003. As a result, where applicable and permitted under applicable law, the pension benefits for the terminated executives were recalculated to include base salary only in 2003.

As a result of the termination of Mr. Dunn's employment for cause on April 27, 2004, he was no longer eligible for any SERP benefit that would have otherwise applied as a result of his past election to remain in Part I of the pension plan. Upon the termination of his employment for cause, Mr. Dunn received Cdn$2,416,517.18 representing the commuted value of the pension benefits accrued pursuant to the Nortel Networks Limited Managerial and Non-Negotiated Pension Plan. The payment was calculated based on Mr. Dunn's 27.92 years of service in accordance with the Part I formula described under "Defined Benefit Pension Plan — Canada".

## Certain employment arrangements

On August 31, 2004, the Company and Nortel Networks Corporation entered into an employment agreement with William A. Owens confirming Mr. Owens' appointment as President and Chief Executive Officer of the Company and Nortel Networks Corporation as of April 27, 2004. The agreement provides that Mr. Owens will receive a base salary of $1,000,000 and will be eligible for a targeted annual bonus of 170% of base salary under the Nortel Networks Limited SUCCESS Incentive Plan. Under the agreement, Mr. Owens will receive a special pension benefit that will accrue ratably over the first five years of his employment as President and Chief Executive Officer. Assuming retirement at the end of such five years, Mr. Owens will receive an estimated monthly pension benefit of $33,540, payable over the five year period following his retirement.

Mr. Owens is based at the registrant's offices in Ontario, Canada. In connection with his relocation to Ontario, Mr. Owens will be eligible for certain benefits under the Nortel Networks-International Assignment Relocation program, in accordance with the generally applicable terms of such program and consistent with his senior executive position.

Mr. DeRoma entered into an employment agreement in April 1997, prior to commencing employment as Vice-President and Deputy General Counsel. Pursuant to the agreement, the Company agreed to make a gross-up payment to Mr. DeRoma for calendar years 1997 through 2000. The gross-up payment was intended to place Mr. DeRoma in the same after-tax position with respect to his base salary and any annual incentive award as if he were a

Nortel Networks Limited filed a Current Report on Form 8-K dated August 19, 2004 related to a press release providing a status update on its financial restatement process and other related matters.

Nortel Networks Limited filed a Current Report on Form 8-K dated August 20, 2004 related to a press release announcing a new waiver from Export Development Canada.

Nortel Networks Limited filed a Current Report on Form 8-K dated September 2, 2004 related to a press release providing a status update on its financial restatement process and other related matters.

Nortel Networks Limited filed a Current Report on Form 8-K dated September 2, 2004 related to an employment agreement with William Owens, President and Chief Executive Officer.

Nortel Networks Limited filed a Current Report on Form 8-K dated September 16, 2004 related to a press release providing a status update on its financial restatement process and other related matters.

Nortel Networks Limited filed a Current Report on Form 8-K dated September 30, 2004 related to a press release providing a status update on its financial restatement process and announcing a new waiver from Export Development Canada.

Nortel Networks Limited filed a Current Report on Form 8-K/A dated September 30, 2004 amending details of its previously announced work plan contained in a press release dated August 19, 2004.

Nortel Networks Limited filed a Current Report on Form 8-K dated October 14, 2004 related to a press release providing a status update on its financial restatement process and other related matters.

Nortel Networks Limited filed a Current Report on Form 8-K/A dated October 18, 2004 amending certain information concerning the timing and implementation of certain matters under the existing agreement with Flextronics International Ltd. contained in a press release dated June 29, 2004.

Nortel Networks Limited filed a Current Report on Form 8-K dated October 27, 2004 related to a press release providing a status update on its financial restatement process and other matters.

Nortel Networks Limited filed a Current Report on Form 8-K dated November 2, 2004 related to a press release announcing a new waiver from Export Development Canada.

Nortel Networks Limited filed a Current Report on Form 8-K dated November 12, 2004 related to a press release providing a status update on its financial restatement process and other matters.

Nortel Networks Limited filed a Current Report on Form 8-K dated November 19, 2004 related to a press release announcing a new waiver from Export Development Canada.

Nortel Networks Limited filed a Current Report on Form 8-K dated November 24, 2004 related to a press release providing a status update on its financial restatement process and other matters.

Nortel Networks Limited filed a Current Report on Form 8-K dated November 30, 2004 updating certain information concerning Nortel Networks Corporation's Annual Shareholders' Meeting.

Nortel Networks Limited filed a Current Report on Form 8-K dated December 8, 2004 related to a press release providing a status update on its financial restatement process and other matters.

Nortel Networks Limited filed a Current Report on Form 8-K dated December 10, 2004 related to a press release announcing a new waiver from Export Development Canada.

Nortel Networks Limited filed a Current Report on Form 8-K dated December 16, 2004 related to a press release providing limited estimated unaudited financial results for the third quarter of 2004, and updated limited estimated unaudited results for the first and second quarters of 2004 and for the years 2001, 2002 and 2003.

Nortel Networks Limited filed a Current Report on Form 8-K dated December 22, 2004 related to a press release providing a status update on its financial restatement process and other related matters.

# Tab B

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

# FORM 10-K

☑     **Annual report pursuant to Section 13 or 15(d) of
the Securities Exchange Act of 1934**
For the fiscal year ended **December 31, 2003**

☐     **Transition report pursuant to Section 13 or 15(d) of
the Securities Exchange Act of 1934**
For the transition period from _____ to _____

Commission file number **001-07260**

# Nortel Networks Corporation

(Exact name of registrant as specified in its charter)

| | |
|---|---|
| **Canada** | **Not Applicable** |
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |
| **8200 Dixie Road, Suite 100, Brampton, Ontario, Canada** | **L6T 5P6** |
| (Address of principal executive offices) | (Zip Code) |

Registrant's telephone number including area code: **(905) 863-0000**

**Securities registered pursuant to Section 12(b) of the Act:**

| Title of each class | Name of each exchange on which registered |
|---|---|
| Common Shares without nominal or par value | New York Stock Exchange |
| 4.25% Convertible Senior Notes Due 2008 | New York Stock Exchange |

The common shares are also listed on the Toronto Stock Exchange in Canada

**Securities registered pursuant to Section 12(g) of the Act:** None

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to filing requirements for the past 90 days. Yes    **No** ✓

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☐

Indicate by check mark whether the registrant is an accelerated filer (as defined in Rule 12b-2 of the Act). Yes ✓    No

On December 31, 2004, 4,268,236,086 common shares of Nortel Networks Corporation were issued and outstanding. Non-affiliates of the registrant held 4,261,699,641 common shares having an aggregate market value of $14,788,097,754 based upon the last sale price on the New York Stock Exchange on December 31, 2004, of $3.47 per share; for purposes of this calculation, shares held by directors and executive officers have been excluded.

2003

| Name And Principal Position | Year | Annual Compensation | | | Long Term Compensation | | All Other Compensation ($) |
|---|---|---|---|---|---|---|---|
| | | | | | Awards | Payouts | |
| | | Salary ($) | Bonus ($)(1) | Other Annual Compensation ($) | Securities Underlying Options (#) | LTIP Payouts (#) | |
| F.A. Dunn* President and Chief Executive Officer | 2003 | 868,750 | – (2) 3,540,000(6)(7) | – | 225,000(3) | 745,000(7)(8) | 26,145(4)(5) |
| | 2002 | 825,000 | – | – | 750,000(9) | – | 24,747(4)(5) |
| | 2001 | 564,833 | – | – | 1,500,000(9)(10) | – | 16,806(4)(5) |
| P. Debon** President, Wireless Networks | 2003 | 590,000 | 743,400(11) 1,475,000(6)(14) | – | 90,000(3) | 745,000(8) | 92,346(12)(13) |
| | 2002 | 537,143 | – | – | 250,000 | – | 125,875(12)(13)(15) |
| | 2001 | 440,417 | – | 68,713(15)(16) | 650,000 | – | 332,020(13)(15) |
| S.L. Spradley** President, Wireline Networks | 2003 | 496,667 | 609,325(11) 1,285,000(6)(14) | – | – | 575,000(8) | 6,000(17) |
| | 2002 | 354,275 | – | – | 291,999(18) | – | 5,500(17) |
| | 2001 | 269,026 | – | – | – (19) | – | 5,100(17) |
| C. Bolouri** President, Global Operations | 2003 | 510,000 | 589,050(11) 1,275,000(6)(14) | – | 135,000(3) | 535,000(8) | 63,404(4)(5) |
| | 2002 | 510,000 | – | – | 250,000 | – | 18,358(4)(5) |
| | 2001 | 459,000 | – | – | 700,000 | – | 27,440(4)(5) |
| N.J. DeRoma Chief Legal Officer | 2003 | 526,000 | 524,685(11) 1,315,000(6)(14) | – | – | 135,000(3) 535,000(8) | 54,494(4)(5) |
| | 2002 | 526,000 | – | 24,038(5)(20) | 250,000 | – | (17,885)(4)(5) |
| | 2001 | 493,750 | – | 62,921(5)(20) | 650,000 | – | 27,642(4)(5) |

\*   On April 27, 2004, Mr. Dunn's employment as President and Chief Executive Officer of the Company and Nortel Networks Limited was terminated for cause and Mr. W.A. Owens was appointed President and Chief Executive Officer of the Company and Nortel Networks Limited. The compensation for his successor Mr. W.A. Owens, President and Chief Executive Officer of the Company and Nortel Networks Limited, is described below under "Certain employment arrangements".

\*\*  In accordance with the corporate reorganization announced by the Company on August 19, 2004, effective October 1, 2004, Messrs. Debon and Bolouri and Ms. Spradley were, respectively, appointed to the positions of: President, Carrier Networks; President, Global Services; and President, Global Operations,

(1)  Incentive cash awards for each fiscal year under the Nortel Networks Limited SUCCESS Incentive Plan (or SUCCESS Plan), including payments made in connection with the "Return to Profitability" bonus program component of that plan, in respect of each of the fiscal years, whether or not deferred by the named executive officer. On April 27, 2004, the Company and Nortel Networks Limited terminated for cause the employment of each of their then president and chief executive officer, chief financial officer and controller. On August 19, 2004, the Company announced that seven individuals with, or who had, significant responsibilities for financial reporting at the line of business and regional levels were terminated for cause. Nortel Networks has demanded from these individuals repayment of any payments made under bonus plans in respect of 2003, including any awards under the SUCCESS Plan. See footnotes (6) and (7) below.

(2)  Mr. Dunn did not receive any annual incentive bonus under the SUCCESS Plan with respect to 2003. See footnotes (1), (6) and (7).

(3)  Represents the number of restricted stock units issued and settled in respect of restricted stock units allocated under the 2001 program of the Nortel Networks Limited Restricted Stock Unit Plan (or RSU Plan). Restricted stock units allocated in 2001 had a two year performance period that was divided into five shorter performance segments. The performance criteria included resizing activity targets for the first segment, and corporate performance objectives

149

Pension benefits from the SERP are funded from the general assets of, respectively, Nortel Networks Limited and NNTC in Canada and Nortel Networks Inc. in the United States.

The following tables show the aggregate approximate annual retirement benefits for an eligible executive officer for certain compensation and years of service categories assuming retirement at age 65, and assuming grandfathering provisions do not apply.

Table I estimates the total retirement benefit (including the SERP) for all participating United States executives (PSP formula members), and for participating Canadian executives who elected and continue to participate in Part II of the Nortel Networks Limited Managerial and Non-Negotiated Pension Plan. It estimates the benefit payable as a life annuity with a 60 percent survivor pension.

The approximate benefits for the service of Messrs. Debon, McFadden and DeRoma (named executive officers in 2004) and Mr. Bolouri (a named executive officer in 2003, along with Messrs. Debon and DeRoma) are shown in Table I. The approximate total eligible earnings and years of credited pensionable service at December 31, 2004 was: $808,525 and 4.92 years of United States service for Mr. Debon; $708,816 and 27.50 years of Canadian service for Mr. McFadden; and $823,931 and 5.58 years of Canadian pensionable service for Mr. DeRoma. Mr. DeRoma is also eligible to receive additional credited pensionable service, up to a maximum of 8.125 years, under the terms of his employment agreement. See "Certain Employment Arrangements". The approximate total eligible earnings and years of credited pensionable service for Mr. Bolouri at December 31, 2003 was $696,984 and 22 years of Canadian service.

### Table I

| Total Earnings | Years of Service | | | | |
|---|---|---|---|---|---|
| | 15 | 20 | 25 | 30 | 35 |
| $600,000 | $138,578 | $169,034 | $207,612 | $235,023 | $273,602 |
| 700,000 | 161,674 | 197,206 | 242,215 | 274,194 | 319,202 |
| 800,000 | 184,770 | 225,379 | 276,817 | 313,365 | 364,802 |
| 900,000 | 207,866 | 253,551 | 311,419 | 352,535 | 410,403 |
| 1,000,000 | 230,963 | 281,724 | 346,021 | 391,706 | 456,003 |
| 1,100,000 | 254,059 | 309,896 | 380,623 | 430,876 | 501,603 |
| 1,200,000 | 277,155 | 338,068 | 415,225 | 470,047 | 547,203 |
| 1,300,000 | 300,251 | 366,241 | 449,827 | 509,217 | 592,804 |
| 1,400,000 | 323,348 | 394,413 | 484,429 | 548,388 | 638,404 |
| 1,500,000 | 346,444 | 422,585 | 519,031 | 587,558 | 684,004 |
| 1,600,000 | 369,540 | 450,758 | 553,633 | 626,729 | 729,605 |
| 1,700,000 | 392,636 | 478,930 | 588,235 | 665,900 | 775,205 |
| 1,800,000 | 415,733 | 507,102 | 622,837 | 705,070 | 820,805 |
| 1,900,000 | 438,829 | 535,275 | 657,439 | 744,241 | 866,406 |
| 2,000,000 | 461,925 | 563,447 | 692,042 | 783,411 | 912,006 |

Table II estimates the benefits calculated under the United States Cash Balance Plan formula under the Nortel Networks Retirement Income Plan for participating employees and executives, payable as a straight life annuity.

The approximate benefits for Mr. Owens and Ms. Spradley's service are shown in Table II. The approximate total eligible earnings and years of credited service at December 31, 2004 for Mr. Owens was $680,328 and .75 years of United States service and $1,139,325 and 16.67 years of United States service for Ms. Spradley. As Mr. Owens and Ms. Spradley are in the Cash Balance Plan, eligible earnings for 2004 reflect 2004 base salary and for Ms. Spradley it also included the one-time award paid during 2004 under the SUCCESS Plan. Mr. Owens is also eligible for a Special Pension Arrangement. See "Certain Employment Arrangements".

Table II

| Total Earnings | Years of Service | | | | | | |
|---|---|---|---|---|---|---|---|
| | 5 | 10 | 15 | 20 | 25 | 30 | 35 |
| $600,000 | $10,330 | $20,659 | $30,989 | $41,318 | $51,648 | $61,978 | $72,308 |
| 700,000 | 12,051 | 24,102 | 36,153 | 48,204 | 60,256 | 72,307 | 84,359 |
| 800,000 | 13,773 | 27,546 | 41,318 | 55,091 | 68,864 | 82,637 | 96,411 |
| 900,000 | 15,494 | 30,989 | 46,483 | 61,977 | 77,472 | 92,967 | 108,462 |
| 1,000,000 | 17,216 | 34,432 | 51,648 | 68,863 | 86,080 | 103,296 | 120,513 |
| 1,100,000 | 18,938 | 37,875 | 56,813 | 75,750 | 94,688 | 113,626 | 132,565 |
| 1,200,000 | 20,659 | 41,318 | 61,977 | 82,636 | 103,296 | 123,956 | 144,616 |
| 1,300,000 | 22,381 | 44,762 | 67,142 | 89,522 | 111,904 | 134,285 | 156,667 |
| 1,400,000 | 24,103 | 48,205 | 72,307 | 96,409 | 120,512 | 144,615 | 168,719 |
| 1,500,000 | 25,824 | 51,648 | 77,472 | 103,295 | 129,120 | 154,945 | 180,770 |
| 1,600,000 | 27,546 | 55,091 | 82,636 | 110,181 | 137,728 | 165,274 | 192,821 |
| 1,700,000 | 29,267 | 58,534 | 87,801 | 117,068 | 146,336 | 175,604 | 204,873 |
| 1,800,000 | 30,989 | 61,978 | 92,966 | 123,954 | 154,944 | 185,933 | 216,924 |
| 1,900,000 | 32,711 | 65,421 | 98,131 | 130,840 | 163,552 | 196,263 | 228,975 |
| 2,000,000 | 34,432 | 68,864 | 103,296 | 137,727 | 172,160 | 206,593 | 241,027 |

On April 27, 2004, the Company and Nortel Networks Limited terminated for cause the employment of each of their then president and chief executive officer, chief financial officer and controller. On August 19, 2004, the Company announced that seven individuals with, or who had, significant responsibilities for financial reporting at the line of business and regional levels were terminated for cause and that Nortel Networks will demand repayment of payments made under bonus plans in respect of 2003. As a result, where applicable and permitted under applicable law, the pension benefits for the terminated executives were recalculated to include base salary only in 2003.

As a result of the termination of Mr. Dunn's employment for cause on April 27, 2004, he was no longer eligible for any SERP benefit that would have otherwise applied as a result of his past election to remain in Part I of the pension plan. Upon the termination of his employment for cause, Mr. Dunn received Cdn$2,416,517.18 representing the commuted value of the pension benefits accrued pursuant to the Nortel Networks Limited Managerial and Non-Negotiated Pension Plan. The payment was calculated based on Mr. Dunn's 27.92 years of service in accordance with the Part I formula described under "Defined Benefit Pension Plan — Canada".

## Certain employment arrangements

On August 31, 2004, the Company and Nortel Networks Limited entered into an employment agreement with William A. Owens confirming Mr. Owens' appointment as President and Chief Executive Officer of the Company and Nortel Networks Limited as of April 27, 2004. The agreement provides that Mr. Owens will receive a base salary of $1,000,000 and will be eligible for a targeted annual bonus of 170% of base salary under the Nortel Networks Limited SUCCESS Incentive Plan. Under the agreement, Mr. Owens will receive a special pension benefit that will accrue ratably over the first five years of his employment as President and Chief Executive Officer. Assuming retirement at the end of such five years, Mr. Owens will receive an estimated monthly pension benefit of $33,540, payable over the five year period following his retirement.

Mr. Owens is based at the registrant's offices in Ontario, Canada. In connection with his relocation to Ontario, Mr. Owens will be eligible for certain benefits under the Nortel Networks-International Assignment Relocation program, in accordance with the generally applicable terms of such program and consistent with his senior executive position.

Mr. DeRoma entered into an employment agreement in April 1997, prior to commencing employment as Vice-President and Deputy General Counsel. Pursuant to the agreement, the Company agreed to make a gross-up payment to Mr. DeRoma for calendar years 1997 through 2000. The gross-up payment was intended to place Mr. DeRoma in the same after-tax position with respect to his base salary and any annual incentive award as if he were a resident of the State of Connecticut and a taxpayer in the United States. After June 2000, this gross-up was subject to annual review by the joint

158

Nortel Networks Corporation filed a Current Report on Form 8-K dated August 19, 2004 related to a press release providing a status update on its financial restatement process and other related matters.

Nortel Networks Corporation filed a Current Report on Form 8-K dated August 20, 2004 related to a press release announcing a new waiver from Export Development Canada.

Nortel Networks Corporation filed a Current Report on Form 8-K dated September 2, 2004 related to a press release providing a status update on its financial restatement process and other related matters.

Nortel Networks Corporation filed a Current Report on Form 8-K dated September 2, 2004 related to an employment agreement with William Owens, President and Chief Executive Officer.

Nortel Networks Corporation filed a Current Report on Form 8-K dated September 16, 2004 related to a press release providing a status update on its financial restatement process and other related matters.

Nortel Networks Corporation filed a Current Report on Form 8-K dated September 30, 2004 related to a press release providing a status update on its financial restatement process and announcing that Nortel Networks Limited had obtained a new waiver from Export Development Canada.

Nortel Networks Corporation filed a Current Report on Form 8-K/A dated September 30, 2004 amending details of its previously announced work plan contained in a press release dated August 19, 2004.

Nortel Networks Corporation filed a Current Report on Form 8-K dated October 14, 2004 related to a press release providing a status update on its financial restatement process and other related matters.

Nortel Networks Corporation filed a Current Report on Form 8-K/A dated October 18, 2004 amending certain information concerning the timing and implementation of certain matters under the existing agreement with Flextronics International Ltd. contained in a press release dated June 29, 2004.

Nortel Networks Corporation filed a Current Report on Form 8-K dated October 27, 2004 related to a press release providing a status update on its financial restatement process and other matters.

Nortel Networks Corporation filed a Current Report on Form 8-K dated November 2, 2004 related to a press release announcing a new waiver from Export Development Canada.

Nortel Networks Corporation filed a Current Report on Form 8-K dated November 12, 2004 related to a press release providing a status update on its financial restatement process and other matters.

Nortel Networks Corporation filed a Current Report on Form 8-K dated November 19, 2004 related to a press release announcing a new waiver from Export Development Canada.

Nortel Networks Corporation filed a Current Report on Form 8-K dated November 24, 2004 related to a press release providing a status update on its financial restatement process and other matters.

Nortel Networks Corporation filed a Current Report on Form 8-K dated November 30, 2004 updating certain information concerning on the Corporation's Annual Shareholders' Meeting.

Nortel Networks Corporation filed a Current Report on Form 8-K dated December 8, 2004 related to a press release providing a status update on its financial restatement process and other matters.

Nortel Networks Corporation filed a Current Report on Form 8-K dated December 10, 2004 related to a press release announcing a new waiver from Export Development Canada.

Nortel Networks Limited filed a Current Report on Form 8-K dated December 16, 2004 related to a press release providing limited estimated unaudited financial results for the third quarter of 2004, and updated limited estimated unaudited results for the first and second quarters of 2004 and for the years 2001, 2002 and 2003.

# Tab C

# UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## FORM 8-K

### CURRENT REPORT

#### Pursuant to Section 13 OR 15(d) of The Securities Exchange Act of 1934

Date of Report (Date of earliest event reported) _____ **AUGUST 31, 2004** _____

**NORTEL NETWORKS CORPORATION**
(Exact name of registrant as specified in its charter)

| **CANADA** | **001-07260** | **NOT APPLICABLE** |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (IRS Employer Identification No.) |

**8200 DIXIE ROAD, SUITE 100, BRAMPTON, ONTARIO, CANADA**        **L6T 5P6**
(Address of principal executive offices)                                                    (Zip Code)

Registrant's telephone number, including area code _____ **905-863-0000** _____

_____
(Former name or former address, if changed since last report.)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (see General Instruction A.2. below):

[ ] Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

[ ] Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

[ ] Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

[ ] Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

**Item 1.01   Entry into a Material Definitive Agreement**

On August 31, 2004, the registrant and its subsidiary, Nortel Networks Limited ("NNL"), entered into an employment agreement with William Owens confirming Mr. Owens' appointment as President and Chief Executive Officer of the registrant and NNL, as of April 27, 2004, and setting forth certain terms of Mr. Owens' employment. The agreement provides that Mr. Owens will receive a base salary of U.S.$1,000,000 and will be eligible for a target annual bonus of 170% of base salary under the annual bonus plan of NNL (known as the SUCCESS Incentive Plan), based on the generally applicable performance criteria under such plan. The agreement also specifies that Mr. Owens will be eligible to participate in all of the employee benefit plans of the registrant's U.S. subsidiary, Nortel Networks Inc., and the registrant's Executive Retention and Termination Plan in accordance with the generally applicable terms of such plans. Under the agreement, Mr. Owens will receive a special pension benefit that will accrue ratably over the first five years of his employment as President and Chief Executive Officer. Assuming retirement at the end of such five years, Mr. Owens will receive an estimated monthly pension benefit of U.S.$33,540, payable over the five year period following his retirement.

Mr. Owens will be based at the registrant's offices in Ontario, Canada. In connection with his relocation to Ontario, Mr. Owens will be eligible for certain benefits under the Nortel Networks-International Assignment Relocation program, in accordance with the generally applicable terms of such program and consistent with his senior executive position.

# Tab D

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

**FORM 8-K**

**CURRENT REPORT**

**Pursuant to Section 13 OR 15(d) of The Securities Exchange Act of 1934**

Date of Report (Date of earliest event reported) _____ **AUGUST 31, 2004** _____

**NORTEL NETWORKS LIMITED**
(Exact name of registrant as specified in its charter)

| **CANADA** | **000-30758** | **62-12-62582** |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (IRS Employer Identification No.) |

**8200 DIXIE ROAD, SUITE 100, BRAMPTON, ONTARIO, CANADA** **L6T 5P6**
(Address of principal executive offices) (Zip Code)

Registrant's telephone number, including area code _____ **905-863-0000** _____

(Former name or former address, if changed since last report.)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (see General Instruction A.2. below):

[ ] Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

[ ] Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

[ ] Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

[ ] Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

**Item 1.01    Entry into a Material Definitive Agreement**

On August 31, 2004, the registrant and its parent, Nortel Networks Corporation (the "Company"), entered into an employment agreement with William Owens confirming Mr. Owens' appointment as President and Chief Executive Officer of the registrant and the Company, as of April 27, 2004, and setting forth certain terms of Mr. Owens' employment.  The agreement provides that Mr. Owens will receive a base salary of U.S.$1,000,000 and will be eligible for a target annual bonus of 170% of base salary under the annual bonus plan of the registrant (known as the SUCCESS Incentive Plan), based on the generally applicable performance criteria under such plan. The agreement also specifies that Mr. Owens will be eligible to participate in all of the employee benefit plans of the Company's U.S. subsidiary, Nortel Networks Inc., and the Company's Executive Retention and Termination Plan in accordance with the generally applicable terms of such plans. Under the agreement, Mr. Owens will receive a special pension benefit that will accrue ratably over the first five years of his employment as President and Chief Executive Officer. Assuming retirement at the end of such five years, Mr. Owens will receive an estimated monthly pension benefit of U.S.$33,540, payable over the five year period following his retirement.

Mr. Owens will be based at the registrant's offices in Ontario, Canada. In connection with his relocation to Ontario, Mr. Owens will be eligible for certain benefits under the Nortel Networks-International Assignment Relocation program, in accordance with the generally applicable terms of such program and consistent with his senior executive position.

# Tab E

**NORTEL NETWORKS CORPORATION**

**MANAGEMENT'S DISCUSSION AND ANALYSIS OF
FINANCIAL CONDITION AND RESULTS OF OPERATIONS
FOR THE THREE AND NINE MONTHS
ENDED SEPTEMBER 30, 2004 – CANADIAN SUPPLEMENT**

This document contains an MD&A Supplement pursuant to
s. 5.2 of National Instrument 51-102 – Continuous Disclosure Obligations.
Please refer to the heading "Canadian supplement" on page 111.

## ITEM 6.    Exhibits

*10.1    Master Facility Agreement dated February 14, 2003 as amended July 10, 2003 between Nortel Networks Limited and Export Development Canada, amended by Letter Agreement dated March 29, 2004, May 28, 2004, August 20, 2004 and September 29, 2004 (filed as Exhibit 99.2 to Nortel Networks Corporation's Current Report on Form 8-K dated September 30, 2004).

10.2    William A. Owens, President and Chief Executive Officer Employment Letter dated as at August 31, 2004.

10.3    Resolutions of the Board of Directors of Nortel Networks Corporation dated July 30, 2004, related to the remuneration of the chairman of the board, members of a board committee, chairman of a board committee (other than the audit committee) and chairman of the audit committee, effective July 1, 2004.

10.4    Resolutions of the Board of Directors of Nortel Networks Limited dated July 30, 2004, related to the remuneration of the chairman of the board, directors, members of a board committee, chairman of a board committee (other than the audit committee) and chairman of the audit committee, effective July 1, 2004.

31.1    Certification of the President and Chief Executive Officer pursuant to 18 U.S.C. Section 1350 as adopted pursuant to Section 302 of the Sarbanes-Oxley Act of 2002.

31.2    Certification of the Chief Financial Officer pursuant to 18 U.S.C. Section 1350 as adopted pursuant to Section 302 of the Sarbanes-Oxley Act of 2002.

32    Certification of the President and Chief Executive Officer and Chief Financial Officer pursuant to 18 U.S.C. Section 1350 as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002.

---

*  Incorporated by reference.

148

# Tab F

Table of Contents

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

# FORM 10-K

☑    **Annual report pursuant to Section 13 or 15(d) of**
**the Securities Exchange Act of 1934**
For the fiscal year ended December 31, 2004

☐    **Transition report pursuant to Section 13 or 15(d) of**
**the Securities Exchange Act of 1934**
For the transition period from _____ to ___.

Commission file number 000-30758

# Nortel Networks Limited

(Exact name of registrant as specified in its charter)

| | |
|---|---|
| **Canada** | **62-12-62580** |
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |
| **8200 Dixie Road, Suite 100, Brampton, Ontario, Canada** | **L6T 5P6** |
| (Address of principal executive offices) | (Zip Code) |

Registrant's telephone number including area code: **(905) 863-0000**

Securities registered pursuant to Section 12(b) of the Act:

| **Title of each class** | **Name of each exchange on which registered** |
|---|---|
| Guarantees of Nortel Networks Corporation's | New York Stock Exchange |
| 4.25% Convertible Senior Notes Due 2008 | |

Securities registered pursuant to Section 12(g) of the Act:

**Title of each class:** Common Shares without nominal or par value

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to filing requirements for the past 90 days. Yes ✓    No

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☑

Indicate by check mark whether the registrant is an accelerated filer (as defined in Rule 12b-2 of the Act). Yes ✓    No

**At March 31, 2005, 1,460,978,638 common shares of Nortel Networks Limited were issued and outstanding, all of which were held by Nortel Networks Corporation. The common shares of the registrant are not traded on any stock exchange.**

Table of Contents

2004

| Name And Principal Position | Year | Annual Compensation | | | Long Term Compensation | | All Other Compensation ($) |
|---|---|---|---|---|---|---|---|
| | | | | | Awards | Payouts | |
| | | Salary ($) | Bonus ($)(1) | Other Annual Compensation ($) | Securities Underlying Options (#) | LTIP Payouts (#) | |
| W.A. Owens* President and Chief Executive Officer | 2004 | 681,818 | – | – | – | – | 70,298(2) |
| | 2003 | – | – | 10,445(3) | – | – | – |
| | 2002 | – | – | – | – | – | – |
| P. Debon** President, Carrier Networks | 2004 | 590,000 | – | – | – | 90,000(7) | 85,577(4)(5) |
| | 2003 | 590,000 | 743,400(6) 1,475,000(8)(9) | – | – | 745,000(10) | 92,346(4)(5) |
| | 2002 | 537,143 | – | – | 250,000 | – | 125,875(4)(5)(11) |
| B.W. McFadden** Chief Technology Officer | 2004 | 530,000 | – | – | – | 90,000(7) | 38,601(12)(13) |
| | 2003 | 501,667 | 528,675(6) 1,291,000(8)(9) | – | – | 745,000(10) | 65,430(12)(13) |
| | 2002 | 458,545 | – | – | 250,000 | – | 16,503(12)(13) |
| S.L. Spradley** President, Global Operations | 2004 | 530,000 | – | – | – | 575,000(10) | 6,500(14) |
| | 2003 | 496,667 | 609,325(6) 1,285,000(8)(9) | – | – | – | 6,000(14) |
| | 2002 | 354,275 | – | – | 291,999(15) | – | 5,500(14) |
| N.J. DeKoma Chief Legal Officer | 2004 | 526,000 | – | – | – | 135,000(7) | 31,960(12)(13) |
| | 2003 | 526,000 | 524,685(6) 1,315,000(8)(9) | – | – | 535,000(10) | 54,494(12)(13) |
| | 2002 | 525,000 | – | 24,038(13)(16) | 250,000 | – | 17,885(12)(13) |
| F.A. Dunn* Former President and Chief Executive Officer | 2004 | 417,043(17) | – | – | – | – | 9,138(12)(13) |
| | 2003 | 868,750 | – (18) 3,540,000(8)(19) | – | – | 225,000(7) | 26,145(12)(13) |
| | 2002 | 825,000 | – | – | 750,000(20) | 745,000(10)(19) | 24,747(12)(13) |

\*    On April 27, 2004, Mr. Dunn's employment as President and Chief Executive Officer of the Company and Nortel Networks Corporation was terminated for cause and Mr. Owens was appointed President and Chief Executive Officer of the Company and Nortel Networks Corporation. Effective March 14, 2005, Mr. Owens became Vice-Chairman and Chief Executive Officer of the Company and Nortel Networks Corporation. The compensation for Mr. Owens is described below under "Certain Employment Arrangements".

\*\*    Prior to the change in positions effective October 1, 2004 in accordance with the corporate reorganization announced by Nortel Networks Corporation on August 19, 2004, Messrs. Debon and McFadden and Ms. Spradley held, respectively, the positions of: President, Wireless Networks; President, Optical Networks; and President, Wireline Networks. Effective October 1, 2004, Mr. McFadden was appointed Chief Technology Officer, a position he held until his appointment, effective April 4, 2005, to the position of Chief Research Officer of the Company and Nortel Networks Corporation.

(1)    Incentive cash awards for each fiscal year under the Nortel Networks Limited SUCCESS Incentive Plan (or SUCCESS Plan), including payments made in connection with the "Return to Profitability" bonus program component of that plan, in respect of each of the fiscal years, whether or not deferred by the named executive officer. On April 27, 2004, the Company and Nortel Networks Corporation terminated for cause the employment of each of its then president and chief executive officer, chief financial officer and controller. On August 19, 2004, Nortel Networks Corporation announced that seven individuals, each of its then president and chief executive officer, chief financial officer and controller who each had their employment terminated for cause, the Company and Nortel Networks Corporation have commenced legal proceedings for the recovery of such bonus payments. See footnotes (8) and (19) below.

Table of Contents

**2003**

| Name And Principal Position | Year | Annual Compensation | | | Long Term Compensation | | All Other Compensation ($) |
|---|---|---|---|---|---|---|---|
| | | Salary ($) | Bonus ($)(1) | Other Annual Compensation ($) | Awards — Securities Underlying Options (#) | Payouts — LTIP Payouts (#) | |
| F.A. Dunn* President and Chief Executive Officer | 2003 | 868,750 | –(2) 3,540,000(6)(7) | – | – | 225,000(3) 745,000(7)(8) | 26,145(4)(5) |
| | 2002 | 825,000 | – | – | 750,000(9) | – | 24,747(4)(5) |
| | 2001 | 564,833 | – | – | 1,500,000(9)(10) | – | 16,806(4)(5) |
| P. Debou** President, Wireless Networks | 2003 | 590,000 | 743,400(11) 1,475,000(6)(14) | – | – | 90,000(3) 745,000(8) | 92,346(12)(13) |
| | 2002 | 537,143 | – | – | 250,000 | – | 125,875(12)(13)(15) |
| | 2001 | 440,417 | – | 68,713(15)(16) | 650,000 | – | 332,020(13)(15) |
| S.L. Spradley** President, Wireline Networks | 2003 | 496,667 | 609,325(11) 1,285,000(6)(14) | – | – | 575,000(8) | 6,000(17) |
| | 2002 | 354,275 | – | – | 291,999(18) | – | 5,500(17) |
| | 2001 | 269,026 | – | – | –(19) | – | 5,100(17) |
| C. Bolouri** President, Global Operations | 2003 | 510,000 | 589,050(11) 1,275,000(6)(14) | – | – | 135,000(3) 535,000(8) | 63,404(4)(5) |
| | 2002 | 510,000 | – | – | 250,000 | – | 18,358(4)(5) |
| | 2001 | 459,000 | – | – | 700,000 | – | 27,440(4)(5) |
| N.J. DeRoma Chief Legal Officer | 2003 | 526,000 | 524,685(11) 1,315,000(6)(14) | – | – | 135,000(3) 535,000(8) | 54,494(4)(5) |
| | 2002 | 526,000 | – | 24,038(5)(20) | 250,000 | – | 17,885(4)(5) |
| | 2001 | 493,750 | – | 62,921(5)(20) | 650,000 | – | 27,642(4)(5) |

\*  On April 27, 2004, Mr. Dunn's employment as President and Chief Executive Officer of the Company and Nortel Networks Corporation was terminated for cause and Mr. W.A. Owens was appointed President and Chief Executive Officer of the Company and Nortel Networks Corporation. Effective March 14, 2005, Mr. Owens became Vice-Chairman and Chief Executive Officer of the Company and Nortel Networks Corporation. The compensation for Mr. Owens is described below under "Certain Employment Arrangements".

\*\*  In accordance with the corporate reorganization announced by Nortel Networks Corporation on August 19, 2004, effective October 1, 2004, Messrs. Debou and Bolouri and Ms. Spradley were, respectively, appointed to the positions of: President, Carrier Networks; President, Global Services; and President, Global Operations.

(1)  Incentive cash awards for each fiscal year under the Nortel Networks Limited SUCCESS Incentive Plan (or SUCCESS Plan), including payments made in connection with the "Return to Profitability" bonus program component of that plan, in respect of each of the fiscal years, whether or not deferred by the named executive officer. On April 27, 2004, the Company and Nortel Networks Corporation terminated for cause the employment of each of their then president and chief executive officer, chief financial officer and controller. On August 19, 2004, Nortel Networks Corporation announced that seven individuals with, or who had, significant responsibilities for financial reporting at the line of business and regional levels were terminated for cause. Nortel has demanded from these individuals repayment of all payments made under bonus plans in respect of 2003, including any awards under the SUCCESS Plan. In the case of the former president and chief executive officer, chief financial officer and controller who each had their employment terminated for cause, the Company and Nortel Networks Corporation have commenced legal proceedings for the recovery of such bonus payments. See footnotes (6) and (7) below.

(2)  Mr. Dunn did not receive any annual incentive bonus under the SUCCESS Plan with respect to 2003. See footnotes (1), (6) and (7).

(3)  Represents the number of restricted stock units issued and settled in respect of restricted stock units allocated under the 2001 restricted stock unit program, or 2001 RSU program, of the Nortel Networks Limited Restricted Stock Unit Plan (or RSU Plan). Restricted stock units allocated in 2001 had a two year performance period that was divided into five shorter performance segments. The performance criteria included realizing activity targets for the first segment, and corporate performance objectives under the incentive plan for the remaining four segments. Although the joint leadership resources committee determined that certain of the distinct performance objectives were not achieved, it exercised its discretion in May 2003 to authorize the issuance and settlement in the form of common shares of Nortel Networks Corporation (net of withholding taxes) of 90 percent of the restricted stock units allocated under the 2001 RSU program based on its consideration of the improved financial performance of Nortel Networks Corporation during the two-year performance period and Nortel Networks Corporation's overall performance over that period as compared to comparator companies. The total before tax value of the restricted stock units that were issued and settled, using the purchase price of common shares of Nortel Networks Corporation on the date of purchase, was: Cdn$945,293 ($672,902) for Mr. Dunn; $274,050 for Mr. Debou; Cdn$567,176 ($403,741) for Mr. Bolouri; and Cdn$567,176 ($403,741) for Mr. DeRoma. Amounts have been converted using the exchange rates in footnote (5) below.

151

Table of Contents

Table I

| Total Earnings | Years of Service | | | | |
|---|---|---|---|---|---|
| | 15 | 20 | 25 | 30 | 35 |
| $600,000 | $138,578 | $169,034 | $207,612 | $235,023 | $273,602 |
| 700,000 | 161,674 | 197,206 | 242,215 | 274,194 | 319,202 |
| 800,000 | 184,770 | 225,379 | 276,817 | 313,365 | 364,802 |
| 900,000 | 207,866 | 253,551 | 311,419 | 352,535 | 410,403 |
| 1,000,000 | 230,963 | 281,724 | 346,021 | 391,706 | 456,003 |
| 1,100,000 | 254,059 | 309,896 | 380,623 | 430,876 | 501,603 |
| 1,200,000 | 277,155 | 338,068 | 415,225 | 470,047 | 547,203 |
| 1,300,000 | 300,251 | 366,241 | 449,827 | 509,217 | 592,804 |
| 1,400,000 | 323,348 | 394,413 | 484,429 | 548,388 | 638,404 |
| 1,500,000 | 346,444 | 422,585 | 519,031 | 587,558 | 684,004 |
| 1,600,000 | 369,540 | 450,758 | 553,633 | 626,729 | 729,605 |
| 1,700,000 | 392,636 | 478,930 | 588,235 | 665,900 | 775,205 |
| 1,800,000 | 415,733 | 507,102 | 622,837 | 705,070 | 820,805 |
| 1,900,000 | 438,829 | 535,275 | 657,439 | 744,241 | 866,406 |
| 2,000,000 | 461,925 | 563,447 | 692,042 | 783,411 | 912,006 |

Table II estimates the benefits calculated under the United States Cash Balance Plan formula under the Nortel Networks Retirement Income Plan for participating employees and executives, payable as a straight life annuity.

The approximate benefits for Mr. Owens and Ms. Spradley's service are shown in Table II. The approximate total eligible earnings and years of credited service at December 31, 2004 for Mr. Owens was $680,328 and .75 years of United States service and $1,139,325 and 16.67 years of United States service for Ms. Spradley. As Mr. Owens and Ms. Spradley are in the Cash Balance Plan, eligible earnings for 2004 reflect 2004 base salary and, for Ms. Spradley, also includes an award paid during 2004 under the SUCCESS Plan. Mr. Owens is also eligible for Special Pension Arrangements. See "Certain Employment Arrangements".

Table II

| Total Earnings | Years of Service | | | | | | |
|---|---|---|---|---|---|---|---|
| | 5 | 10 | 15 | 20 | 25 | 30 | 35 |
| $600,000 | $10,330 | $20,659 | $30,989 | $41,318 | $51,648 | $61,978 | $72,308 |
| 700,000 | 12,051 | 24,102 | 36,153 | 48,204 | 60,256 | 72,307 | 84,359 |
| 800,000 | 13,773 | 27,546 | 41,318 | 55,091 | 68,864 | 82,637 | 96,411 |
| 900,000 | 15,494 | 30,989 | 46,483 | 61,977 | 77,472 | 92,967 | 108,462 |
| 1,000,000 | 17,216 | 34,432 | 51,648 | 68,863 | 86,080 | 103,296 | 120,513 |
| 1,100,000 | 18,938 | 37,875 | 56,813 | 75,750 | 94,688 | 113,626 | 132,565 |
| 1,200,000 | 20,659 | 41,318 | 61,977 | 82,636 | 103,296 | 123,956 | 144,616 |
| 1,300,000 | 22,381 | 44,762 | 67,142 | 89,522 | 111,904 | 134,285 | 156,667 |
| 1,400,000 | 24,103 | 48,205 | 72,307 | 96,409 | 120,512 | 144,615 | 168,719 |
| 1,500,000 | 25,824 | 51,648 | 77,472 | 103,295 | 129,120 | 154,945 | 180,770 |
| 1,600,000 | 27,546 | 55,091 | 82,636 | 110,181 | 137,728 | 165,274 | 192,821 |
| 1,700,000 | 29,267 | 58,534 | 87,801 | 117,068 | 146,336 | 175,604 | 204,873 |
| 1,800,000 | 30,989 | 61,978 | 92,966 | 123,954 | 154,944 | 185,933 | 216,924 |
| 1,900,000 | 32,711 | 65,421 | 98,131 | 130,840 | 163,552 | 196,263 | 228,975 |
| 2,000,000 | 34,432 | 68,864 | 103,296 | 137,727 | 172,160 | 206,593 | 241,027 |

On April 27, 2004, the Company and Nortel Networks Corporation terminated for cause the employment of each of their then president and chief executive officer, chief financial officer and controller. On August 19, 2004, Nortel Networks Corporation announced that seven individuals with, or who had, significant responsibilities for financial reporting at the line of business and regional levels were terminated for

Table of Contents

cause and that Nortel would demand repayment of payments made under bonus plans in respect of 2003. Further to that announcement, a demand for repayment was made and, in the case of the former president and chief executive officer, chief financial officer and controller who each had their employment terminated for cause, the Company and Nortel Networks Corporation have commenced legal proceedings for the recovery of such bonus payments. As a result, where applicable and permitted under applicable law, the pension benefits for the terminated executives were recalculated to include base salary only in 2003.

As a result of the termination of Mr. Dunn's employment for cause on April 27, 2004, he was no longer eligible for any SERP benefit that would have otherwise applied as a result of his past election to remain in Part I of the pension plan. Upon the termination of his employment for cause, Mr. Dunn received Cdn$2,416,517.18 representing the commuted value of his pension benefits accrued pursuant to the Nortel Networks Limited Managerial and Non-Negotiated Pension Plan. The payment was calculated based on Mr. Dunn's 27.92 years of service in accordance with the Part I formula described under "Defined Benefit Pension Plan — Canada".

## Certain employment arrangements

On August 31, 2004, the Company and Nortel Networks Corporation entered into an employment agreement with Mr. Owens confirming his appointment as President and Chief Executive Officer of the Company and Nortel Networks Corporation as of April 27, 2004. The agreement provides that Mr. Owens will receive a base salary of $1,000,000 and will be eligible for a targeted annual bonus of 170% of base salary under the Nortel Networks Limited SUCCESS Incentive Plan (or SUCCESS Plan). Under the agreement, Mr. Owens will receive a special pension benefit that will accrue ratably over the first five years of his employment as President and Chief Executive Officer. Assuming retirement at the end of such five years, Mr. Owens will receive an estimated monthly pension benefit of $33,540, payable over the five year period following his retirement. Mr. Owens is based at the Company's offices in Ontario, Canada. In connection with his relocation to Ontario, Mr. Owens was eligible for certain benefits under the Nortel Networks-International Assignment Relocation program, in accordance with the generally applicable terms of such program and consistent with his senior executive position. Mr. Owens' agreement also confirms his eligibility to participate in certain employee and executive plans and programs, including the Nortel Networks Corporation Executive Retention and Termination Plan (or ERTP) described below. Effective March 14, 2005, Mr. Owens became Vice-Chairman and Chief Executive Officer of the Company and Nortel Networks Corporation. On March 22, 2005, the joint leadership resources committee of the boards of directors of the Company and Nortel Networks Corporation and the independent members of the boards of directors of the Company and Nortel Networks Corporation approved an additional special pension benefit of $4.5 million to compensate Mr. Owens for equity compensation that he forfeited upon his resignation from the boards of directors of various other companies in connection with his appointment as President and Chief Executive Officer. The additional special pension benefit vested immediately upon approval and will be paid in accordance with the terms of the original arrangement. Upon retirement, Mr. Owens will receive an additional monthly pension benefit of $86,247 as a result of the revised arrangement. The revised total monthly pension benefit will be $119,787, payable over the five years following his retirement. Mr. Owens' compensation arrangements are also discussed under "Report on 2004 and 2003 Executive Compensation".

Effective March 4, 2005, Nortel Networks Corporation entered into an employment agreement with Gary J. Daichendt, 53, in connection with his appointment as President and Chief Operating Officer of the Company and Nortel Networks Corporation, effective March 14, 2005. The agreement provides that Mr. Daichendt will receive a base salary of $800,000. Mr. Daichendt will be eligible for a target annual bonus of 125% of base salary under the SUCCESS Plan, based on the generally applicable performance criteria under such plan. For 2005, Mr. Daichendt will receive a guaranteed annual bonus under the SUCCESS Plan of at least 125% of base salary. The agreement also specifies that, once the suspension on the grant of options caused by the delay of certain regulatory filings by the Company and Nortel Networks Corporation ends, the Company intends to recommend for approval a new hire grant of 500,000 stock options of Nortel Networks Corporation for Mr. Daichendt, subject to the terms and conditions of the applicable stock option plan of Nortel Networks Corporation. The agreement also provides that Nortel Networks Corporation intends to award to Mr. Daichendt a 2005 long term incentive package valued at the time of award equivalent to $3.75 million and conditional upon shareholder and all other required approvals having been obtained prior to the award. Mr. Daichendt will also be eligible to participate in the employee benefit plans of Nortel Networks Inc. and Nortel Networks Corporation, including the ERTP, in accordance with the generally applicable terms of such plans. Mr. Daichendt will also, in certain circumstances, be entitled to certain involuntary separation awards in the event certain aspects of his position change after the effective date of his employment or Nortel Networks Corporation initiates the separation of his employment as President and Chief Operating Officer, although such involuntary separation awards would preclude any awards under the ERTP. Such involuntary separation awards include the equivalent of two years' base salary and one year of SUCCESS Plan payment at target, and continued vesting of outstanding stock options during the two-year salary continuance period.

162

# Tab G

**NORTEL NETWORKS LIMITED**

**MANAGEMENT'S DISCUSSION AND ANALYSIS OF
FINANCIAL CONDITION AND RESULTS OF OPERATIONS
FOR THE YEAR ENDED DECEMBER 31, 2005
- CANADIAN SUPPLEMENT -**

This document contains an MD&A Supplement pursuant to
s. 5.2 of National Instrument 51-102 – Continuous Disclosure Obligations.
Please refer to the heading "Canadian supplement" on page 114.

## Summary compensation table

The following table sets forth the compensation awarded to, earned by, or paid to each of the Company's named executive officers for services rendered by them to Nortel in 2005, 2004 and 2003.

| Name and Principal Position | Year | Annual Compensation | | | Long-Term Compensation | | | All Other Compensation ($) |
|---|---|---|---|---|---|---|---|---|
| | | | | | Awards | | Payouts | |
| | | Salary ($) | Bonus ($)[1] | Other Annual Compensation ($)[4] | Restricted Stock Unit Awards ($)[3] | Securities Underlying Options (#) | LTIP Payouts (#) | |
| M.S. Zafirovski* President and Chief Executive Officer | 2005 2004 2003 | 252,381 — — | — — — | 11,995,981[4] — — | 6,953,550 — — | 5,000,000 — — | — — — | 11,690,542[5] — — |
| P.W. Currie Executive Vice-President and Chief Financial Officer | 2005 2004 2003 | 527,500 — — | 850,000[6] — — | — — — | 1,530,000 — — | 1,000,000 — — | — — — | 26,167[7][8] — — |
| S.C. Pusey Executive Vice-President and President, Eurasia | 2005 2004 2003 | 558,904[9] 520,000 501,250 | 233,227[10][11] — 546,000[11] 1,277,500[17][18] | 52,335[10][12] — 3,633[15] | 1,520,000 — — | 875,000 — — | — 67,500[16] 620,000[19] | 71,654[10][13] 1,150[14] 2,665[14] |
| D.C. Joannou President, North America | 2005 2004 2003 | 441,667 375,000 300,000 | 183,150[11] — 374,063[11] 450,000[17][18] | 195[20] 45,857[20] — | 912,000 — — | 750,000 — — | — — 300,000[19] | 8,885[21] 12,590[21] 20,830[21] |
| S.F. Slattery President, Enterprise Solutions and Packet Networks | 2005 2004 2003 | 445,833 350,000 350,000 | 158,175[11] — 300,000[11] 525,000[17] | 1,383[22] — — | 975,000 — — | 750,000 — — | — — 300,000[19] | 8,400[23] 7,800[23] 7,200[23] |
| W.A. Owens* Former Vice-Chairman and Chief Executive Officer | 2005 2004 2003 | 886,364 681,818 — | 518,925[24] — — | 304,497[25] 209,355[25] — | — — — | 2,900,000 — — | — — — | 5,670,085[26] 70,298[26] — |

* Mr. Zafirovski was appointed as President and Chief Executive Officer of the Company and Nortel Networks Corporation effective November 15, 2005. Mr. Owens, who was President and Chief Executive Officer of the Company and Nortel Networks Corporation from April 27, 2004 until becoming Vice-Chairman and Chief Executive Officer effective March 15, 2005, retired as an officer and director of the Company and Nortel Networks Corporation effective November 14, 2005. The compensation for Mr. Zafirovski and the terms of Mr. Owens' retirement/severance agreement are described below under "Certain Employment Arrangements".

(1) Incentive cash awards for each fiscal year under the Nortel Networks Limited SUCCESS Incentive Plan (or SUCCESS Plan), including payments made in 2003 in connection with the "Return to Profitability" bonus program component of that plan, whether or not deferred by the named executive officer. See footnotes (17) and (18) below.

(2) Where applicable, amounts reported in this column are inclusive of perquisites if a named executive officer was paid a total of $50,000 or more in perquisites.

(3) The following time based restricted stock units (or RSUs) were awarded to the named executive officers in 2005: 2,265,000 awarded to Mr. Zafirovski on November 15, 2005; 500,000 awarded to Mr. Currie on September 6, 2005; 500,000 awarded to Mr. Pusey on November 22, 2005; 300,000 awarded to Mr. Joannou on November 22, 2005; and 300,000 awarded to Mr. Slattery on September 28, 2005. Except for Mr. Zafirovski's RSUs, which are scheduled to vest in equal annual installments over five years, each of the named executive officers' RSUs are scheduled to vest in equal annual installments over three years. The aggregate value as at December 31, 2005 of the RSUs awarded to the named executive officers in 2005 was $11,826,900. As required by applicable securities laws, the amounts reported in this column were determined by multiplying the number of RSUs by the closing market price on the dates of the awards.

(4) Amounts paid: (i) by Nortel on behalf of Mr. Zafirovski for taxes associated with the reimbursement by Nortel of a payment made in connection with the settlement of litigation commenced by Motorola, Inc. (or Motorola) ($11,902,523) and Company-paid travel expenses incurred prior to Mr. Zafirovski's impending relocation to Canada ($18,179); and (ii) as perquisites, including the incremental cost of the use of the Company aircraft ($75,139). It is expected that the amount paid for taxes associated with the settlement of the Motorola litigation will be reduced by approximately $4.3 million due to a reduction of already remitted taxes related to Mr. Zafirovski's employment with Motorola. In addition, the amount paid for taxes may be further reduced as a result of additional reductions or refunds arising out of future related filings with relevant taxing authorities. See footnote (5) below.

(5) Represents the reimbursement of a payment made by Mr. Zafirovski to Motorola in connection with the settlement of litigation ($11.5 million) and the payment of Mr. Zafirovski's legal expenses and cash disbursements incurred in connection with the Motorola litigation ($169,447) and in connection with the agreement on the terms of his appointment ($21,095). See "Certain Employment Arrangements — Current Executives".

(6) Represents a special bonus of $300,000 paid within 60 days of the commencement of employment plus a guaranteed 2005 SUCCESS Plan bonus paid at the target value of 100% of salary, pro-rated for the number of months of active service.

(7) Represents contributions made under the Nortel Networks Limited Investment Plan for Employees — Canada.

(8) Represents the United States dollar equivalent of payments actually earned or paid in Canadian dollars. Amounts have been converted using the average of the exchange rates in effect during each year equal to US$1.00 = Cdn$1.2113 for 2005, US$1.00 = Cdn$1.2978 for 2004 and US$1.00 = Cdn$1.4048 for 2003.

(9) Represents United States dollar salary paid until September 1, 2005 and United States dollar equivalent of Mr. Pusey's salary which was adjusted and set in United Kingdom pounds on September 1, 2005. See footnote (10) below.

(10) Certain payments in United Kingdom pounds have been converted and included in this amount. Payments have been converted using the average of the exchange rates in effect during each year equal to US$1.00 = UK£0.5497 for 2005, US$1.00 = UK£0.5470 for 2004 and US$1.00 = UK£0.6084 for 2003.

(11) Represents a SUCCESS Plan annual incentive award.

(12) Represents an auto benefit allowance ($36,977) available to certain United Kingdom based employees generally and a corporate club membership fee ($15,358).

(13) Represents a special one-time payment to compensate for fluctuations in currency exchange rates.

(14) Represents expenses relating to Mr. Pusey's prior long-term international assignment during the period from 1999 to 2001.

(15) Amounts paid by Nortel on behalf of Mr. Pusey for taxes associated with the 2001 and 2000 tax years.

(16) Represents the number of RSUs issued and settled in respect of RSUs allocated under the 2001 restricted stock unit program (or 2001 RSU program) of the Nortel Networks Limited Restricted Stock Unit Plan (or RSU Plan). RSUs allocated in 2001 had a two-year performance period that was divided into five shorter performance segments. The performance criteria included resizing activity targets for the first segment, and corporate performance objectives under the incentive plan for the remaining four segments. Although the compensation and human resources committee determined that certain of the distinct performance objectives were not achieved, it exercised its discretion in May 2003 to authorize the issuance and settlement in the form of common shares of Nortel Networks Corporation (net of withholding taxes) of 90% of the RSUs allocated under the 2001 RSU program based on its consideration of the improved financial performance of Nortel Networks Corporation during the two-year performance period and Nortel Networks Corporation's overall performance over that period as compared to comparator companies. The total before tax value of the RSUs that were issued and settled, using the purchase price of our common shares on the date of purchase, was $205,538 for Mr. Pusey.

(17) Represents a Return to Profitability program award under the SUCCESS Plan. See footnote (18) below.

(18) Messrs. Pusey and Joannou have voluntarily undertaken to pay to Nortel Networks Corporation over a three-year period an amount equal to their Return to Profitability program bonus awarded in 2003 (net of any taxes deducted at source).

(19) Represents the number of RSUs issued and settled in respect of RSUs allocated under the 2003 restricted stock unit program (or 2003 RSU program) of the RSU Plan. Each unit entitled the holder to receive one common share of Nortel Networks Corporation or, subject to certain conditions, a cash payment equal to the common share value. In respect of payments made under the 2003 RSU program, each named executive officer received in July 2003 RSUs in connection with the achievement of the first performance threshold as at the end of the second fiscal quarter of 2003 (100% in the form of common shares) and in February 2004 RSUs in connection with the achievement of the second performance threshold as at the end of the third fiscal quarter of 2003 (50% in the form of common shares and 50% in the form of cash). These individuals continue to hold the common shares received as a result of the settlement of their RSUs. The before tax total value of such RSUs issued and settled was: $3,148,887 for Mr. Pusey; $1,523,655 for Mr. Joannou; and $1,528,778 for Mr. Slattery. RSUs are valued using the purchase price of our common shares on the date of purchase (for share settlement) and on the average price for the specified 20-day trading period for cash settlement (where applicable).

(20) Amounts paid by Nortel on behalf of Mr. Joannou for taxes ($195 for 2005 for Company-paid club membership dues and $45,857 paid by Nortel in 2004 in respect of the 2002 tax year associated with a United Kingdom tax-related refund of $114,938 paid to Nortel by taxing authorities).

(21) Represents contributions under the Nortel Networks Long-Term Investment Plan ($8,400 in 2005, $7,800 in 2004 and $7,200 in 2003) and expenses relating to Mr. Joannou's prior long-term international assignment from 2000 to 2002 ($485 in 2005, $4,790 in 2004 and $13,630 in 2003).

(22) Amounts paid by Nortel on behalf of Mr. Slattery for taxes associated with Company-paid club membership dues.

(23) Represents contributions under the Nortel Networks Long-Term Investment Plan.

(24) Represents a pro rata payment under the SUCCESS Plan in accordance with the terms of a letter agreement with Mr. Owens regarding the cessation of his employment. See "Certain Employment Arrangements — Former Executives".

(25) For 2005, consists of: (i) tax reimbursement paid by Nortel to Mr. Owens ($1,172) and taxes paid by Nortel on behalf of Mr. Owens ($41,523), both incurred in connection with Company-paid expatriate expenses; and (ii) amounts paid as perquisites, including the incremental cost of the use of the Company aircraft ($244,802). For 2004, represents the incremental cost of the use of the Company aircraft.

(26) For 2005, consists of: (i) a severance payment ($5,400,000); (ii) vacation entitlement ($173,077); (iii) expatriate expenses related to Mr. Owens' responsibilities as President and Chief Executive Officer ($89,687); (iv) retirement gifts ($6,167); and (v) contributions under the Nortel Networks Long-Term Investment Plan (or NNLTIP) ($1,154). For 2004, consists of: (i) expatriate expenses related to Mr. Owens' responsibilities as President and Chief Executive Officer ($43,588);

companies, some of which are our customers, and limitations on his ability to advise us on competitive strategy or analysis relative to Motorola for a defined period. In connection with the settlement, Mr. Zafirovski repaid Motorola $11.5 million, which is part of his separation payment from Motorola, and Nortel fully reimbursed him for this amount and for selected legal costs and expenses.

Nortel Networks Corporation entered into an employment agreement with Mr. Currie in connection with his appointment as Chief Financial Officer of the Company and Nortel Networks Corporation, as of February 14, 2005. The agreement provides that Mr. Currie is to receive a base salary of $600,000 and also provides for a one-time bonus of $300,000 which was paid within 60 days of commencing employment. Mr. Currie is also eligible for a target annual value of 100% of base salary under the SUCCESS Plan, based on the generally applicable performance criteria under such plan. For 2005, Mr. Currie received a guaranteed annual bonus under the SUCCESS Plan at the target annual value, pro-rated for the number of months of active employment. Mr. Currie is also eligible to participate in certain employee benefit plans and the ERTP in accordance with the generally applicable terms of such plans. Mr. Currie subsequently became Executive Vice-President and Chief Financial Officer of the Company and Nortel Networks Corporation effective March 14, 2005. Mr. Currie's salary was subsequently increased by $25,000, effective March 20, 2006.

On October 4, 2005, Nortel entered into a letter agreement with Mr. Pusey, Executive Vice-President and President, Eurasia of the Company and Nortel Networks Corporation, in support of his continued employment, providing for the payment to Mr. Pusey of a special bonus of £525,000 in the event he remains with the Company and Nortel Networks Corporation for a defined two-year period. The special bonus will be paid in two equal installments, the first of which will be paid within 30 days of August 1, 2006 and the second of which will be paid within 30 days of August 1, 2007.

On October 4, 2005, Nortel entered into a letter agreement with Mr. Joannou, in support of his continued employment, providing for the payment to Mr. Joannou of a bonus of $750,000 in the event he remains with the Company and Nortel Networks Corporation for a defined two-year period. The special bonus will be paid in two equal installments, the first of which will be paid within 30 days of August 1, 2006 and the second of which will be paid within 30 days of August 1, 2007.

In addition to the satisfaction of certain performance and other requirements upon which the payment of each of the respective special bonuses to Messrs. Pusey and Joannou are conditional, the two installments will only be paid if Messrs. Pusey and Joannou remain in active employment from August 1, 2005 through July 31, 2006 (in the case of the first installment) and from August 1, 2005 through July 31, 2007 (in the case of the second installment). A pro rata portion of the special bonus, calculated based on the number of days of active service during the two-year retention period, will be paid in certain situations where employment is terminated involuntarily without cause or due to death or if an approved leave of absence occurs.

### Former executives

On December 1, 2005, Nortel entered into a letter agreement with Mr. Owens concerning the cessation of his duties as an officer and director effective November 15, 2005. The agreement provided that Mr. Owens was entitled to: (i) a lump sum of $2.0 million as severance allowance representing two years' base salary; (ii) a lump sum equal to nine weeks of base salary representing all of Mr. Owens' accrued but unused vacation benefit; (iii) an additional lump sum amount equal to two times Mr. Owens' targeted annual bonus of 170% of base salary under the SUCCESS Plan, as a special award; (iv) a pro rata payment under the SUCCESS Plan in the event a payment under the SUCCESS Plan is made to employees generally in respect of 2005; (v) acceleration of the vesting of all of Mr. Owens' 2.9 million options to acquire common shares of Nortel Networks Corporation, and (vi) certain relocation costs and tax preparation services. Mr. Owens will also receive a pension benefit over a guaranteed period of five years commencing with a payment of $703,913 to be made in June 2006 and equal monthly payments thereafter in the amount of $99,073 through November 2010. Under the agreement with Mr. Owens, Nortel has agreed to provide indemnification in accordance with applicable Canadian law. In addition, Mr. Owens will have certain non-disclosure and non-compete obligations.

On September 8, 2005, Nortel Networks Corporation entered into a letter agreement with Nicholas J. DeRoma concerning the cessation of Mr. DeRoma's responsibilities as Chief Legal Officer of the Company and Nortel Networks Corporation effective September 9, 2005. The agreement originally provided that Mr. DeRoma was entitled to: (i) the sum of $43,833 per month as salary continuance for the period commencing on September 10, 2005 and ending on September 9, 2007 (the "Salary Continuation Period"); (ii) a lump sum equivalent to ten weeks of base salary representing all of Mr. DeRoma's accrued but unused vacation benefit; (iii) an additional lump sum amount equivalent to 100% of Mr. DeRoma's annual base salary as an incentive award; (iv) continued participation during the Salary Continuation Period of certain benefits and accrual of pensionable service under the pension plans in which Mr. DeRoma

(3) 2003 Bonus includes $374,063 under the SUCCESS Plan annual incentive award and $450,000 under the Return to Profitability program under the SUCCESS Plan. Mr. Joannou has voluntarily undertaken to pay to Nortel over a three-year period an amount equal to his Return to Profitability program bonus awarded in 2003 (net of any taxes deducted at source).

(4) 2005 grant represents the value of 300,000 RSUs awarded pursuant to the SIP that vest in three equal annual installments beginning on November 22, 2006 and that will be settled in common shares of Nortel Networks Corporation upon vesting, net of tax withholding. As required by applicable securities laws, the amount reported in this column was determined by multiplying the number of RSUs by the closing market price of Nortel Networks Corporation's common shares on the date of the award.

(5) Represents the Black-Scholes value of 750,000 options granted pursuant to the Nortel Networks Corporation 1986 Stock Option Plan. Awards vest in four equal annual installments beginning on the first anniversary of the grant date.

(6) Represents the value of the settlement of RSUs awarded under the 2003 RSU program of the RSU Plan.

(7) Annual pension service cost was determined based on the accounting disclosure assumptions.

| S.F. Slattery | 2005 ($) | 2004 ($) | 2003 ($) |
|---|---|---|---|
| **CASH** | | | |
| Annualized Base Salary[1] | 445,833 | 350,000 | 350,000 |
| Cash Bonus | 158,175[2] | — | 825,000[2] |
| Total Cash | 604,008 | 350,000 | 1,175,000 |
| **EQUITY** | | | |
| Restricted Stock Units | 975,000[3] | — | — |
| Stock Options | 1,645,650[4] | — | — |
| LTIP Payouts | — | — | 1,528,778[5] |
| Total Equity | 2,620,650 | — | 1,528,778 |
| Total Direct Compensation | 3,224,658 | 350,000 | 2,703,778 |
| Annual Pension Service Cost[6] | 56,280 | 17,221 | 12,715 |
| Total | 3,280,938 | 367,221 | 2,716,493 |

(1) Based on an annual base salary rate of $350,000 through December 31, 2004. Mr. Slattery's salary was increased to $425,000 on January 1, 2005 and $475,000 on August 1, 2005.

(2) 2005 Bonus represents a SUCCESS Plan annual incentive award. 2003 Bonus includes $300,000 under the SUCCESS Plan annual incentive award and $525,000 under the Return to Profitability program under the SUCCESS Plan.

(3) 2005 grant represents the value of 300,000 restricted stock units awarded pursuant to the SIP that vest in three equal annual installments beginning on September 28, 2006 and that will be settled in common shares of Nortel Networks Corporation upon vesting, net of tax withholding. As required by applicable securities laws, the amount reported in this column was determined by multiplying the number of RSUs by the closing market price of Nortel Networks Corporation's common shares on the date of the award.

(4) Represents the Black-Scholes value of 750,000 options granted pursuant to the Nortel Networks Corporation 1986 Stock Option Plan. Awards vest in four equal annual installments beginning on the first anniversary of the grant date.

(5) Represents the value of the settlement of RSUs awarded under the 2003 RSU program of the RSU Plan.

(6) Annual pension service cost was determined based on the accounting disclosure assumptions.

| W.A. Owens | 2005 ($) | 2004 ($) | 2003 ($) |
|---|---|---|---|
| **CASH** | | | |
| Annualized Base Salary[1] | 886,364 | 681,818 | — |
| Cash Bonus | 518,925[2] | — | — |
| Total Cash | 1,405,289 | 681,818 | — |
| **EQUITY** | | | |
| Restricted Stock Units | 6,363,180[3] | — | — |
| Stock Options | — | — | — |
| LTIP Payouts | — | — | — |
| Total Equity | 6,363,180 | — | — |
| Total Direct Compensation | 7,768,469 | 681,818 | — |
| Annual Pension Service Cost[4] | 4,762,500 | 262,500 | — |
| Total | 12,530,969 | 944,318 | — |

(1) Mr. Owens was appointed President and Chief Executive Officer effective April 27, 2004 with an annual base salary of $1,000,000.

(2) Represents a pro rata payment under the SUCCESS Plan in accordance with the terms of a letter agreement with Mr. Owens regarding the cessation of his employment. See "Certain Employment Arrangements — Former Executives".

(3) Represents the Black-Scholes value of 2,900,000 options granted pursuant to the Nortel Networks Corporation 2000 Stock Option Plan. Awards vest in four equal annual installments beginning on the first anniversary of the grant date. The terms of the 2000 Plan provide that these options will expire 36 months after retirement, rather than at the end of the otherwise applicable ten-year term.

(4) Represents the special pension arrangement, as described under "Certain Employment Arrangements — Former Executives".

## Compensation of directors

Each non-employee director of the Company and Nortel Networks Corporation may elect to receive all compensation for services rendered as a member of the board of directors of the Company and Nortel Networks Corporation, any committees thereof, and as board or committee chairperson, in the form of share units, in cash or in a combination of share units and cash, under the Directors' Deferred Share Compensation Plans maintained by the Company and Nortel Networks Corporation. The share units are settled a specified number of trading days following the release of the Company's financial results after the director ceases to be a member of the applicable board, and each share unit entitles the holder to receive one common share of Nortel Networks Corporation. Administrative fees, including applicable brokers' commissions, are paid by Nortel under the terms of the Directors' Deferred Share Compensation Plans.

The compensation of directors is considered on a combined basis in light of the overall governance structure of the Company and Nortel Networks Corporation. Director compensation is set solely on an annual fee basis (paid quarterly in arrears) and fees are not paid for board or committee meeting attendance. From January 1, 2002 to June 29, 2005, directors of the Company and Nortel Networks Corporation, who were not salaried employees of Nortel Networks Corporation or any of its subsidiaries, received an annual Company board retainer of $50,000, an annual committee membership retainer of $12,500 (or $6,250 each for membership on the same committee of the boards of the Company and Nortel Networks Corporation) and, except as noted below, an annual committee chairperson fee of $7,500 (or $3,750 each for chairing the same committee of the boards of the Company and Nortel Networks Corporation). Effective July 25, 2002 to June 29, 2005, the fee for the audit committee chairperson was $17,500 (or $8,750 for each audit committee of the Company and Nortel Networks Corporation) in recognition of the significant responsibilities assumed by the audit committee chairperson.

The nominating and governance committee (formerly the committee on directors) recommended and on June 29, 2005 the boards of directors of the Company and Nortel Networks Corporation approved the following changes to the compensation of directors: (i) an increase of the annual committee chairperson fee (other than audit committee chairperson fee) to $15,000 or $7,500 each for chairing the same committee of the boards; (ii) an increase of the annual audit committee chairperson fee to $35,000 or $17,500 each for chairing the same committee of the boards; and (iii) the payment of a Nortel Networks Limited long-term incentive fee of $75,000. The long-term incentive fee is payable over four fiscal quarters commencing the third fiscal quarter of 2005. The payment of these fees may, at the election of each director, be deferred in accordance with the Nortel Networks Corporation Directors' Deferred Share Compensation Plan and the Nortel Networks Limited Directors' Deferred Share Compensation Plan.

The Company maintains, at its cost, life insurance for directors, who are not salaried employees of the Company or Nortel Networks Corporation. Such insurance coverage is for Cdn$100,000 while a director and Cdn$75,000 following retirement at or after age 65 or, at any lesser age after ten years of board membership (including Company board membership).

Directors entitled to the above remuneration are also reimbursed for reasonable travel and living expenses properly incurred by them in attending any meetings of the boards of directors of the Company and Nortel Networks Corporation or their committees or for performing services as directors.

Effective January 1, 2004, amended share ownership guidelines adopted by the boards of directors of the Company and Nortel Networks Corporation require each non-chairperson director to own, directly or indirectly, common shares of Nortel Networks Corporation having a fair market value of at least $300,000 within five years from the earlier of the date he or she was first elected or appointed to the boards of directors of the Company or Nortel Networks Corporation. Share ownership guideline compliance must thereafter be maintained during an individual's tenure as a director. The chairperson of the board must own, directly or indirectly, common shares of Nortel Networks Corporation having a fair market value of at least $1,600,000 within five years from the earlier of the date he or she was first appointed as chairperson of the boards of directors of the Company or Nortel Networks Corporation. Directors are expected to continue to comply with these share ownership guidelines during the balance of their tenures as directors. Share units credited under the Directors' Deferred Share Compensation Plans are included in the calculation of the number of common shares of the Company owned by a director for this purpose.