## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 09-10138 (KG) |
| Nortel Networks Inc., *et al.*,[1] | (Jointly Administered) |
| Debtors. | Re: Doc. No.: 18009 |
| | **Hearing Date: May 16, 2017 at 10:00 a.m. (ET)** |
| | **Responses Due: April 14, 2017 at 4:00 p.m. (ET)[2]** |

**RESPONSE AND OBJECTION OF NETAS TELEKOMUNIKASYON A.S. TO DEBTORS' FORTY-SEVENTH OMNIBUS OBJECTION (SUBSTANTIVE) TO CERTAIN CLAIMS PURSUANT TO 11 U.S.C. § 502, FED. R. BANKR. P. 3007 AND DEL. L.R. 3007-1 (NON-DEBTOR LIABILITY CLAIMS, MODIFIED, RECLASSIFIED AND ALLOWED CLAIMS, NO-BASIS AND RELEASED CLAIMS, NO-BASIS EQUITY CLAIMS, NO-BASIS RETIREE CLAIMS AND REDUNDANT CLAIMS)**

Netas Telekomunikasyon A.S. ("Netas") by and through its undersigned counsel, hereby submits this response objection (the "Response") to the *Debtors' Forty-Seventh Omnibus Objection (Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502, Fed. R. Bankr. P. 3007 and Del. L.R. 3007-1 (Non-Debtor Liability Claims, Modified, Reclassified and Allowed Claims, No-Basis and Released Claims, No-Basis Equity Claims, No-Basis Retiree Claims and*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (20763), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567), Nortel Networks (CALA) Inc. (4226) and Nortel Networks India International Inc. (8667). Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

[2] The original hearing date and response deadline were April 11, 2017 and March 31, 2017, respectively. However, these dates have been consensually extended to the dates captioned above.

*Redundant Claims)* [Doc. No. 18009] (the "Objection").  In support of this Response, Netas respectfully states as follows:[3]

## PRELIMINARY STATEMENT

1.      Netas is a business formed under the laws of the Republic of Turkey and was formerly known as Nortel Networks Netas Telekomunikasyon A.S.  At one time, Netas was a non-debtor affiliate of the Debtors and provided software development and support services to Nortel Networks Inc. ("NNI").  Netas provided those services to NNI both prior to the Petition Date (as defined below) and after the Petition Date.  As outlined below, NNI would submit purchase orders to Netas and, after completing the services, Netas would send invoices to NNI for payment.  Although NNI historically made payments on account of the purchase orders and invoices, as of the Petition Date, NNI had not made payment with respect to certain services provided by Netas.

2.      During the Debtors' chapter 11 cases, Netas timely filed proofs of claims against NNI for the balance due, in the respective amounts of $14,261,663.01 and $87,760.50.  These claims—which were sworn to under oath—included more than sufficient supporting information and documentation to substantiate their *prima facie* validity and amount, as contemplated by Fed. R. Bankr. P. 3001(f).  *In re Allegheny Intern., Inc.*, 854 F.2d 167, 173 (3d Cir. 1992) (a claim that alleges facts sufficient to support a legal liability to the claimant is entitled to *prima facie* validity).  Here, Netas attached to each of its claims, true and accurate copies of purchase orders from NNI to Netas and invoices from Netas to NNI which support each claim. Accordingly, Netas provided sufficient documentation and alleged more than sufficient facts to support a legal liability from NNI to Netas.

---

[3] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Objection.

3.      In order to rebut the *prima facie* validity of the claims, the Debtors must provide, at minimum, evidence "equal in force" to the evidence provided in the claims.  *See In re Allegheny Intern., Inc.*, 854 F.2d at 173.  They have not done so. Not only have the Debtors failed to provide evidence in equal force, the Debtors provide no admissible evidence to rebut the *prima facie* validity or amount of Netas' claims.  Rather, the Debtors simply make the following generalized blanket assertion:

> Based on a careful review of the Debtors' Books and Records, their Schedules, and the proofs of claim, including any supporting documentation provided by the claimant, the Debtors have determined that there is no amount due and owing by any of the Debtors to the claimant because the claim, asserted by an affiliate, lacks a proper or valid basis, and otherwise has been released.

*See* Objection, Ex. A., pp. 2–4.  This form objection is plainly deficient, because it fails to address with any specificity any particular purchase order or invoice.  Given that Netas attached purchase orders from NNI to Netas and invoices from Netas to NNI which correspond to and support the amounts claimed by Netas, the Debtors cannot expunge the claims based solely on the bald statement that they reviewed their books and records and that each claim "lacks a proper or valid basis, and otherwise has been released."  This type of bald assertion, in the face of clear and concrete documentation supporting the claims, is simply insufficient to rebut the *prima facie* validity or amount of Netas' claims.  On this basis alone, the Objection should be denied and the claims should be allowed in full.

4.      In the event, however, that the Court determines that the Objection sufficiently rebuts the *prima facia* validity of the claims, Netas respectfully requests, pursuant to Local Rule 3007-1(i), a hearing to present evidence as necessary to fully respond to the Objection. Furthermore, because the Objection and this Response give rise to a contested matter under

Bankruptcy Rule 9014, Netas reserves the right to request discovery in connection with the Objection and this Response.

## FACTUAL BACKGROUND

5.      On January 14, 2009, (the "Petition Date"), the Debtors, other than NN CALA and NNIII,[4] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are being jointly administered for procedural purposes only.

6.      On August 4, 2009, the Court entered its *Order Establishing Deadlines for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof* [Doc. No. 1280] (the "Bar Date Order"), establishing that, generally, proofs of claims must be filed on or before September 30, 2009, at 4:00 p.m. (ET) (the "General Bar Date").

## I.      Netas and Its Claims

7.      Netas, a business formed under Turkish law, was formerly known as Nortel Networks Netas Telekomunikasyon A.S. and was an affiliate of the Debtors until December 22, 2010, when the shares of Netas held by Nortel Networks International Finance and Holdings B.V. were sold to Netas' current shareholder, One Equity Partner.  Following this sale, Netas changed its name from Nortel Networks Netas Telekomunikasyon A.S. to Netas Telekomunikasyon A.S.  Netas has not been a debtor in these chapter 11 cases nor in any other insolvency or restructuring proceedings.

8.      Netas provided NNI with software development and support services prior to the Petition Date and continued to provide the same type of services post-petition.  The last invoice issued by Netas to NNI was dated November 4, 2010.  Historically, NNI would issue purchase

---

[4] NN CALA and NNIII filed their chapter 11 petitions on July 14, 2009 and July 26, 2016, respectively.  The chapter 11 cases of NN CALA and NNIII were consolidated and are being jointly administered with the other Debtors' chapter 11 cases for procedural purposes only.

orders to Netas, Netas would perform the services and then issue invoices directly to NNI.  NNI

would then remit payment to Netas.

9.      On September 10, 2009 (prior to Netas' name-change), Netas filed four proofs of

claims against NNI in NNI's chapter 11 case for certain unpaid invoices for services rendered

prior to the Petition Date.  Claim Nos. 2878 and 2876,[5] sworn to under oath by both the chief

financial officer and controller of Netas, are in the respective amounts of $14,261,663.01 and

$87,760.50.  Attached to Claim 2878 are true and accurate copies of numerous purchase orders

sent by NNI to Netas and the 65 invoices sent by Netas to NNI which give rise to the claim,

along with a summary sheet detailing each invoice amount.[6]  Though some of the invoices

underlying Claim 2878 are dated after the Petition Date, these invoices are on account of services

rendered prepetition.  Similarly, attached to Claim 2876 are true and accurate copies of the four

purchase orders sent by NNI to Netas and the two invoices sent by Netas to NNI which give rise

to the claim, along with a summary sheet detailing each invoice amount.  Claim Nos. 2876 and

2878 are attached hereto as Exhibits A and B.

10.     On the same day, Netas also filed Claim Nos. 2877 and 2875—which are

included in Section 503(b)(9) Claim Request Forms in the respective amounts of $14,261,663.01

and $87,760.50.  Claim Nos. 2877 and 2875 are duplicative of Claim Nos. 2878 and 2876 and

include the identical supporting documentation included in Claim Nos. 2878 and 2876.  Netas is

---

[5] Netas filed two separate claims because the purchase orders included under Claim No. 2876 are from "Nortel Networks Inc. (Egypt Branch)," while the purchase orders included under Claim No. 2878 are from "Nortel Networks Inc."  Similarly, the invoices included under Claim No. 2876 are addressed to "Nortel Networks Inc. (Egypt Branch)," while the invoices included under Claim No. 2878 are addressed to "Nortel Networks Inc."

[6] The amounts reflected under the purchase orders are sometimes greater than the amounts reflected in their coinciding invoices because NNI may have already paid for certain of the services that were performed by Netas pursuant to the purchase orders.  The amount of the invoices attached to the claims, however, accurately represents the unpaid prepetition amounts due to Netas as reflected in the filed claims.

not seeking duplicative recoveries and seeks only the allowance one set of its claims.   In addition, Netas is not seeking priority status under section 503(b)(9) of the Bankruptcy Code.

11.     On November 3, 2011, Netas filed Claim No. 8038 in the amount of $14,261,663.01, and Claim No. 8037 in the amount of $87,760.50.   Attached to each of these claim are the same purchase orders and invoices that are attached to the other claims referenced in ¶¶ 9 and 10 above.   Again, as noted above, Netas is not seeking to allow duplicate claims or asserting priority under section 503(b)(9) of the Bankruptcy Code.

## II.    **The Debtors' Objection**

12.     On March 10, 2017, more than eight years after filing the original claims and six years after Netas filed its last claims, the Debtors filed the Objection, seeking to disallow certain claims, including all of the claims filed by Netas.

13.     The sole basis for the Objection to Claim Nos. 8038 and 8037 is as follows:

> Based on a careful review of the Debtors' Books and Records, their Schedules, and the proofs of claim, including any supporting documentation provided by the claimant, the Debtors have determined that there is no amount due and owing by any of the Debtors to the claimant because the claim, asserted by an affiliate, lacks a proper or valid basis, and otherwise has been released.

*See* Objection, Ex. A., pp. 2–3.   The Debtors do not address any of the purchase orders or invoices attached to the claims nor do they provide any explanation whatsoever as to why the purchase orders and invoices are not valid or accurate.

14.     Similarly, with respect to Claim Nos. 2875, 2876, 2877, and 2878, the Debtors assert, in addition to the boilerplate books and records objection, that these claims are redundant. *See* Objection, Ex. A., pp. 2–3.   Moreover, the Debtors contend that Netas' Claims are not entitled to priority status under section 503(b)(9) of the Bankruptcy Code.   *See* Objection, ¶ 31.b.

15.     In support of the Objection, the Debtors also filed a barebones, four paragraph declaration of John. J. Ray [Doc. No. 18009-3] (the "Ray Declaration"), who identifies himself as the "Principal Officer" of the Debtors.  A copy of the Ray Declaration is annexed hereto as Exhibit C.  The Ray Declaration does not assert that Mr. Ray has any personal knowledge with respect to Netas' claims or the facts giving rise to Netas' claims.  Rather, the Ray Declaration only makes the generalized assertion that Mr. Ray, "or one or more of the Debtors' consultants or advisors," has reviewed the claims mentioned in the Objection and that Mr. Ray "submit[s] that the facts and circumstances set forth in the Objection are true and accurate to the best of [Mr. Ray's] knowledge, information and belief."  *Id.*, ¶ 4 (emphasis added).  As noted above, the Objection does not set forth any "facts and circumstances" in support of the Objection.  And, the Ray Declaration itself does not provide any facts based on anyone's personal knowledge regarding the validity and amount of the Netas claims.

## **ARGUMENT**

### I.     **Netas' Claims Are *Prima Facie* Valid and the Debtors Have Offered No Evidence to the Contrary**

16.     A proof of claim filed in accordance with section 501 of the Bankruptcy Code and the Bankruptcy Rules constitutes "prima facie evidence of the validity and amount of the claim." Fed R. Bankr. P. 3001(f).  "[A] claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward."  *In re Allegheny Intern., Inc.*, 854 F.2d at173.

17.     The submission of invoices along with a claim is sufficient to establish *prima facie* validity of the claim.  *See, e.g., In re Russell Cave Co., Inc.*, 253 B.R. 815, 819 (Bankr. E.D. Ky. 2000) (finding that invoices submitted along with creditor's claim were sufficient to establish *prima facie* validity of claim).  In fact, the claim form used in the present case explicitly

states, under item 7, "Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts . . . and security agreements.  You may also attach a summary."

18.     Here, there is no question that Netas provided sufficient information and documentation establishing the *prima facie* validity of the claims.  Netas attached to its claims, which were sworn to under oath by both its CFO and controller, true and accurate copies of every purchase order and invoice supporting the validity and amount of each claim, as well as summary sheets prepared in the ordinary course of business detailing the amounts owed.  Thus, the claims are undeniably entitled to *prima facie* validity.[7]

19.     Once the claimant has met its initial burden, the burden shifts to the objecting party to "produce evidence equal in force to the prima facie case."  *Id*. (emphasis added).  The objecting party "must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency."  *In re LandSource Communities Development LLC*, 485 B.R. 310, 317 (Bankr. D. Del. 2013) (quoting *Allegheny*, 954 F.2d at 173-174).  Only if and when the objecting party provides sufficient evidence to rebut one or more of the sworn facts in the proof of claim does the burden revert to the claimant to prove the validity of the claim by a preponderance of the evidence.  *LandSource Communities Development*, 485 B.R. at 317 (quoting *Allegheny*, 854 F.2d at 174); *In re Refco Public Commodity Pool, L.P.*, 554 B.R. 736, 741 (Bankr. D. Del. 2016) (same).

20.     Third Circuit law requires the Debtors to provide evidence "equal in force" to that provided by Netas to rebut the *prima facie* validity of the Claim.  *Allegheny*, 854 F.2d at 173.

---

[7] Even assuming—*arguendo*—that Netas had failed to attach sufficient supporting documentation to the Claim, such failure would not, by itself, warrant disallowance of the Claim.  *See In re Kincaid,* 388 B.R. 610, 614 (Bankr. E.D. Pa. 2008).  Rather, the failure to provide supporting documentation would only disqualify the Claim from the presumption of *prima facie* validity, and would merely result in Netas carrying the burden of going forward in establishing the validity of the Claim.  *Id.*

"The objector must produce actual evidence; mere allegations, unsupported by evidence, are insufficient to rebut the movant's *prima facie* case."  *In re F-Squared Investment Management, LLC*, 546 B.R. 538, 544 (Bankr. D. Del. 2016) (marks and citations omitted).  If the objecting party fails to meet its burden of production, its objection should be dismissed.  *Id.*

21.     The Debtors have failed to provide evidence equal in force to the numerous purchases orders and invoices provided by Netas.  In fact, the Debtors have provided no admissible or concrete evidence whatsoever.  The Ray Declaration does not assert that Mr. Ray or any of the Debtors' "consultants or advisors" has personal knowledge with respect to the facts underlying the invoices Netas attached to its Claims or the legitimacy of the invoices.  A declaration submitted in support of a pleading must be made on personal knowledge.  *See, e.g.,* Fed. R. Evid. 602; *see also In re Delta Air Lines, Inc.*, 381 B.R. 57, 79-80 (Bankr. S.D.N.Y. 2008), *aff'd,* 2008 WL 4444001 (S.D.N.Y. Sept. 29, 2008), *rev'd on other grounds,* 608 F.3d 139 (2d Cir. 2010) (noting that, despite being based on personal knowledge of "Books and Records," a declaration was not testimony or evidence because the declaration was "expressed exclusively in generalities and [did] no more than parrot the arguments ably advanced by . . . counsel").

22.     Nothing in the Ray Declaration indicates that Mr. Ray or any of the Debtors' "consultants and advisors" has personal knowledge of NNI's historical relationship with Netas or with any of the purchase orders or invoices which are attached to the claims.  Mr. Ray simply expresses a generalized and blanket denial and does nothing more than parrot the boilerplate, one sentence reason for disallowance forth in the Objection.  Furthermore, the Ray Declaration expressly states that it is only based on "the best of [Mr. Ray's] knowledge, information and belief[,]" rather than on personal knowledge as required by the Federal Rules of Evidence.  *See* Fed. R. Evid. 602.

23.     In sum, the only so-called "evidence" the Debtors present is the bald and generalized statement (one sentence in length) contained in the Objection and parroted in the Ray Declaration that Netas' claims have no basis in the Debtors' books and records.  This is not "equal in force" to the various purchase orders, 67 invoices, and summary sheets that Netas provided in support of its claims, which were sworn to under oath by the Chief Financial Officer and Controller of Netas.  Accordingly, the Debtors have failed to overcome the *prima facie* validity of Netas' claims, and the Objection must be overruled.

## II.     Netas' Claims Are Valid and Should be Allowed

24.     As set forth above, the claims are based on software development and support services provided to NNI prior to the Petition Date.  The purchase orders, invoices, and summary sheet attached to Claim No. 8038 clearly support that Netas has an unpaid claim for such prepetition services in the amount of $14,261,663.01.  Further, the purchase orders, invoices, and summary sheet attached to Claim No. 8037 clearly support that Netas has an unpaid claim for such prepetition services in the amount of $87,760.50.  Both the CFO and controller of Netas, who no doubt have personal knowledge of Netas' business records, represented those facts under oath.

25.     As noted, the Debtors have not offered sufficient evidentiary support to rebut the validity or amount of the claims.  Accordingly, the claims asserted by Netas should be allowed as general unsecured claims in the amounts of $14,261,663.01 and $87,760.50, respectively.

## RESERVATION OF RIGHTS

26.     In the event that the Court finds that the Debtors sufficiently rebutted the *prima facie* validity of Netas' claims (which they have not), Netas respectfully requests a hearing, pursuant to Local Rule 3007-1(i), to present evidence as necessary to fully respond to the Objection.  Moreover, because the Objection and this Response give rise to a contested matter

under Bankruptcy Rule 9014, Netas reserves the right to request discovery in connection with the Objection and this Response.

## CONCLUSION

For the foregoing reasons, Netas respectfully requests that the Court overrule the Objection, allow Claim No. 8038 as a general unsecured claim against NNI in the amount of $14,261,663.01, allow Claim No. 8037 as a general unsecured claim against NNI in the amount of $87,760.50, and grant Netas such additional and further relief as the Court deems just and proper.

Dated: April 14, 2017

**LOWENSTEIN SANDLER LLP**
Zachary D. Rosenbaum, Esq.
Paul Kizel, Esq.
Michael Papandrea, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068
Telephone:  (973) 597-2500
Facsimile:  (973) 597-2400
E-mail: zrosenbaum@lowenstein.com
           pkizel@lowenstein.com
           mpapandrea@lowenstein.com

*Counsel for Netas Telekomunikasyon A.S.*

**- and –**

**POLSINELLI PC**

*/s/ Christopher A. Ward, Esq.*
Christopher A. Ward, Esq.
222 Delaware Avenue
Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
E-mail: cward@polsinelli.com

*Delaware Counsel for Netas
Telekomunikasyon A.S.*