# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ------------------------------------------------ X | : | |
| *In re* | : | Chapter 11 |
| | : | |
| Nortel Networks Inc., *et al.*,[1] | : | Case No. 09-10138(KG) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| | : | |
| | : | Hearing date: April 25, 2017 at 10 a.m. (ET) |
| | : | RE: D.I.s 18009; 18056 |
| ------------------------------------------------ X | | |

## DEBTORS' REPLY IN FURTHER SUPPORT OF DEBTORS' FORTY-SEVENTH OMNIBUS OBJECTION (SUBSTANTIVE) TO CERTAIN CLAIMS

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), hereby submit this Reply (the "Reply") in further support of the *Debtors' Forty-Seventh Omnibus Objection (Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502, Fed. R. Bankr. P. 3007 and Del. L.R. 3007-1 (Non-Debtor Liability Claims, Modified, Reclassified and Allowed Claims, No-Basis and Released Claims, No-Basis Equity Claims, No-Basis Retiree Claims, and Redundant Claims)*, March 10, 2017 [D.I. 18009] (the "Objection") and in reply to the *Response of William A. Owens in Opposition to Debtors' Forty-Seventh Omnibus Objection (Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502, Fed. R. Bankr. P. 3007 and Del. L.R. 3007-1 (Non-Debtor Liability Claims, Modified, Reclassified and Allowed Claims, No-Basis and Released Claims, No-Basis Equity Claims, No-Basis Retiree Claims, and Redundant Claims)*, April 3, 2017 [D.I. 18056] (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567), Nortel Networks (CALA) Inc. (4226) and Nortel Networks India International Inc. (8667). Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

"Response"). In support of this Reply, the Debtors rely on the Declaration of Mary Cilia, dated April 20, 2017 attached hereto as **Exhibit A** (the "Cilia Declaration"). In further support of this Reply, the Debtors respectfully represent as follows:

## Reply

1. Through the Objection, the Debtors seek the disallowance of claim number 2506 filed by Mr. William A. Owens asserted in the amount of $2,278,679.00 (the "Owens Claim")[2] relating to certain benefits Mr. Owens claims he is entitled to pursuant to his termination agreement, dated November 21, 2005 (the "Termination Agreement," attached hereto as **Exhibit C**). Specifically, Mr. Owens seeks allowance of a claim against NNI for the remaining payments owed under the Special Pension Arrangement provided for in his Termination Agreement. The Owens Claim should be disallowed against NNI because it is not a valid claim against NNI, the Monitor has informed the Debtors that the Canadian Debtors are prepared to allow the Owens Claim against the Canadian Debtors subject to such claims being disallowed or withdrawn against NNI, and Mr. Owens has not provided any grounds in his Response for him to be granted superior rights over other former Nortel executives, who have been limited to a single claim against either NNI or the Canadian Debtors.

2. Pursuant to section 101 of the Bankruptcy Code, a creditor holds a claim against a bankruptcy estate only to the extent that (a) it has a "right to payment" for the asserted liabilities and (b) the claim is otherwise allowable. 11 U.S.C. §§ 101(5) and 101(10).

3. When asserting a claim against a bankrupt estate, a claimant must allege facts that, if true, would support a finding that the debtor is legally liable to the claimant. See In re

---

[2] Claim number 2506 was filed by Mr. Owens to amend claim number 703, which had previously been filed in the amount of $2,179,606.00. The amount in the amended claim includes one additional month of Special Pension Arrangement payments. Through the Objection, the Debtors seek the formal disallowance of claim number 703 and claim number 2506 and all references to the "Owens Claim" shall include claim number 703, as amended by claim number 2506.

2

Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992); In re Int'l Match Corp., 69 F. 2d 73, 76 (2d Cir. 1934) (finding that a proof of claim should at least allege facts from which legal liability can be seen to exist). Where the claimant alleges sufficient facts to support its claim, its claim is afforded *prima facie* validity. In re Allegheny Int'l, Inc., 954 F.2d at 173. A party wishing to dispute such a claim must produce evidence in sufficient force to negate the claim's *prima facie* validity. Id. In practice, the objecting party must produce evidence that would refute at least one of the allegations essential to the claim's legal sufficiency. Id. at 173-74. Once the objecting party produces such evidence, the burden shifts back to the claimant to prove the validity of his or her claim by a preponderance of the evidence. Id. The burden of persuasion is always on the claimant. Id.

4. The Debtors, in consultation with their advisors, have carefully reviewed their books and records, their bankruptcy schedules and the Owens Claim, including supporting documentation provided by Mr. Owens, and remain steadfast in their conclusion that the Owens Claim asserts liabilities for which the Debtors have no obligation.

5. The Debtors' Objection is premised on certain central facts: (1) Mr. Owens was employed by and an officer of Nortel Networks Corporation ("NNC") and Nortel Networks Limited ("NNL"), (2) while Mr. Owens asserts a claim against NNI based on the Termination Agreement, documents preceding his initial June 2006 Special Pension Arrangement payment (attached hereto as Attachment 1 to the Cilia Declaration – the "Payment Agreement" – and discussed in further detail below) confirm that Mr. Owens's Special Pension Arrangement was to be paid from the Canadian pension payroll, and it *was* paid from the Canadian pension payroll for more than two years between June, 2006 and December, 2008, prior to the creditor protection cases being commenced, (3) the Monitor has agreed to allow Mr. Owens's claim against a

3

Canadian Debtor, contingent upon the disallowance or withdrawal of his claim against the Debtors; and (4) Mr. Owens has not offered any valid reason why he should be given preferential treatment as compared to other former employees whose claims have been allowed against only one Nortel entity. Mr. Owens is no different from the other former employees in any way that affects the treatment of his claim. He is, however, different in that, unlike most of the other former employees who have appeared in these cases, the majority of Mr. Owens's Special Pension Arrangement – upwards of $3 million– was already paid prior to the creditor protection cases being commenced. Moreover, those pension-related payments were paid by the Canadian Debtors. Not only would it be illogical to allow the Owens Claim against the Debtors where even the Monitor agrees it is a liability only properly owed by the Canadian estate, it would also create an unfair inconsistency with respect to the treatment of the claims of Mr. Owens compared to other former Nortel employees and executives, without rational basis.

**A.   Mr. Owens's Claim Properly Rests Against the Canadian Estate and the Canadian Debtors Have Conditionally Agreed to Allow His Claim**

6.   Mr. Owens was a Canadian employee whose Termination Agreement was addressed to him as the Vice Chairman and Chief Executive Officer of NNC and NNL. *See* Termination Agreement at p.1. Mr. Owens does not dispute that his employment was with the two Canadian Debtors. Response at ¶ 1. The Termination Agreement thus recorded the arrangements concerning the cessation of his employment with those Canadian Debtor companies. Termination Agreement at ¶ 2.[3]

7.   At the time the Termination Agreement was entered into, NNC, one of the Canadian Debtors, also disclosed the agreement in a filing with the U.S. Securities and Exchange

---

[3] The Termination Agreement states that effective on November 18, 2005, Mr. Owens's "employment relationship with the Corporation shall cease" and he is "no longer expected to perform any duties or responsibilities on behalf of the Corporation," which duties and responsibilities would previously have been to the companies by which he was employed, NNC and NNL.

4

Commission ("SEC") through the filing of a Form 8-K.[4] Referring to the Termination Agreement, the filing states that *NNC* "entered into a letter agreement (the 'Agreement') with William A. Owens, former Vice-Chairman and Chief Executive Officer of the registrant [NNC] and Nortel Networks Limited ('NNL')." The filing specifically refers to Mr. Owens Special Pension Arrangement saying that, "Mr. Owens will also receive a pension benefit over a guaranteed period of five years commencing with a payment of $703,913 to be made in June 2006 and equal monthly payments thereafter of $99,073 through November 2010. Nortel has agreed to indemnify Mr. Owens in accordance with the applicable Canadian laws."). NNC Form 8-K, at 1.01. This disclosure by NNC clearly demonstrates that NNC viewed the Special Pension Arrangement as a liability of NNC and also establishes that the Special Pension Arrangement was publicly known to be a liability of NNC.

8. In addition to publicly disclosing that Mr. Owens's Special Pension Arrangement was a liability of NNC, prior to the initial Special Pension Arrangement payment the Canadian Debtors and Debtors also memorialized an agreement that unequivocally provided that Mr. Owens's Special Pension Arrangement, the only severance benefit outstanding to Mr. Owens as of the petition date and the only severance benefit on which Mr. Owens's claim is based, was to be paid by the Canadian Nortel affiliates. Specifically, the Payment Agreement acknowledges that, "Mr. Owens resides in the US, and was paid from the US payroll when he was active," but confirms that "the special pension arrangement is to be *paid from Canada (Canadian pension payroll)*, out of general revenues, and *charged fully to the Canadian company*." Payment Agreement at 1 (emphasis added). Internal emails between Nortel tax and executive compensation employees provide additional confirmation that there was an explicit agreement

---

[4] See Nortel Networks Co., Current Report (Form 8-K) (December 1, 2005) at 1.01. (the "NNC Form 8-K"). A copy of the NNC Form 8-K is attached as **Exhibit D**.

5

for the Canadian company to bear the entire cost of Mr. Owens's Special Pension Arrangement. See Payment Agreement at 5 ("As requested, I'm writing to confirm that Bill's pension arrangement is to be paid over a 5 year period, that the costs are being borne completely by the Canadian company and that a 25% non-resident withholding tax is applicable, not a reduced rate of 15%."). Given this documentation, the Debtors and the Monitor have conferred and agreed that Mr. Owens's Special Pension Arrangement is solely a liability of the Canadian Debtors.

9.      The Canadian Debtors' liability for the claim is further reinforced by the fact that not only was there an agreement for the Canadian Debtors to pay the Special Pension Arrangement, but it was in fact paid by the Canadian Debtors for two and a half years, in the period prior to the commencement of their CCAA proceedings. While the Response suggests that Mr. Owens initial payment of $703,913.00 in June 2006 and monthly payments of $99,073.00 through and including December, 2009 were paid in U.S. dollars, Response at ¶¶ 9-10, the Debtors' records indicate that those payments were converted into and paid in Canadian dollars. See Cilia Decl., Attach. 2. The response is also conspicuously silent as to the source of those payments. Response at ¶¶ 9-10. As Mr. Owens would have been well aware, having received thirty-one payments in Canadian Dollars totaling the equivalent of $3,676,103 U.S. Dollars, those payments were paid by the Canadian Nortel affiliates. See Cilia Decl., Attach. 2 and Attach. 3. Indeed, after conferring with counsel to Mr. Owens, the Debtors do not believe there is any dispute on this point. Mr. Owens has produced no evidence in the Response, or otherwise, indicating that the Debtors ever paid any portion of the Special Pension Arrangement and the Debtors have no record of making payments to Mr. Owens on account of his Special Pension Arrangement – to the best of the Debtors' knowledge, such payments were made exclusively by Canadian Nortel entities. Cilia Decl. at ¶11.

10. Mr. Owens has not provided any rationale for why now, when the Nortel entities have liquidated and their respective creditors must seek recourse against limited pools of assets, there would be any basis for NNI to assume these additional obligations. The fact that NNI historically may have paid other amounts to Mr. Owens is irrelevant to this question.

11. To the extent that Mr. Owens asserts in the Response that "[B]oth the Canadian Monitor and the U.S. Debtor are disputing his claim causing Mr. Owns [sic] to incur expenses on both sides of the border for a claim clearly identified in his Termination Agreement as a liability of both the U.S. Debtors and the Canadian Debtors," the Debtors and Canadian Debtors have confirmed that while both estates are opposed to providing Mr. Owens with two sources of recovery, which would be inconsistent with the treatment granted to other former employees, the Canadian Debtors would be prepared to allow Mr. Owens's claim if it is disallowed in NNI's case. Response at ¶21.

### B. Mr. Owens, Like All Other Former Employees, Is Entitled To A Single Recovery For His Claim

12. Without reference to a single term or paragraph of the Termination Agreement, the Response alleges that "[u]nder the express terms of the Termination Agreement, both the U.S. Debtors and the Canadian Debtors are liable to Mr. Owens for his Termination Benefits. . ." Response at ¶ 21. For this statement, the Debtors can only assume that Mr. Owens is relying on the definition of the term "Corporation" in the Termination Agreement,[5] the same or similar iterations of which appears in dozens of former employees' termination agreements. As the Court is aware, this is not the first time that a creditor has tried to use similarly broad

---

[5] The Termination Agreement provides that "[t]he Corporation will provide you the payments and benefits set out in this paragraph," including the Special Pension Arrangements. Termination Agreement at ¶ 4. Under the Termination Agreement, the term "Corporation" appears to be defined as "Nortel Networks Inc., its parent, subsidiaries, affiliates (including but not limited to, Nortel Networks Corporation and Nortel Networks Limited), predecessors, successors and assigns and all past and present officers, directors, employees and agents (in their individual and representative capacities only) of Nortel Networks Inc., its parent, subsidiaries, affiliates, predecessors, successors and assigns, in every case individually and collectively." Termination Agreement at ¶ 1.

7

Corporation language to argue for joint and several liability. However, as the Court is also aware, such arguments have never previously been successful.[6]

13. Such a reading of the term Corporation is unworkable for several reasons. *First*, the definition of Corporation included in the Termination Agreement as read by Mr. Owens is overly broad and would impose liability for Mr. Owens's Special Pension Arrangement not only on all Nortel affiliates worldwide, but also on every employee of Nortel, including Mr. Owens himself. As used in other termination agreements, it would also impose liability on Mr. Owens for the termination benefits of his former colleagues. Such a reading, or any argument that this language was intentionally negotiated by Mr. Owens to secure joint and several liability, strains credulity, as this language is not unique to his agreement and all former employees with this language would have been imposing liability on themselves and all of their peer employees in agreeing to receive their termination benefits. The Debtors and Canadian Debtors have consistently objected to any attempt by former employees to seek compensation from multiple Nortel estates based on such language. To do otherwise would grant employees like Mr. Owens an opportunity to "double dip" — to recover from both the U.S. and Canadian Nortel affiliates, thereby receiving a much higher overall recovery — at the expense of all other former employee creditors who were granted an allowed claim against a single Nortel estate. In addition, it would create uncertainty as to the rights of creditors and could lead to the litigation of a single claim against numerous parties.

---

[6] See e.g., *Motion of Ad Hoc Committee of Canadian Employees Terminated Pre-Petition for Entry of an Order Allowing Late Filed Claims* [D.I. 9362] at ¶ 12 ("The Termination Agreement Letter states that 'the term "Corporation" shall mean Nortel Network Corporation, its subsidiaries and affiliates, their successors and assigns and all of their past and present officers, directors, employees and agents (in their individual and representative capacities), in every case, individually and collectively.") (hereinafter, the "Late Filed Claims Motion"). The Debtors note that irrespective of which Nortel affiliate is named in the definition of Corporation, the principle remains true that the formulation of the term in the various termination agreements does not provide joint and several liability.

14. The Debtors objected to the claims of other former Canadian employees who sought claims against the Debtors based on similar types of agreements where the Canadian Debtors had previously allowed an identical claim based on the same facts and circumstances. Cilia Decl., at ¶5. Similarly, the Debtors are unaware of any claim of a former employee allowed by the Canadian Debtors after allowance of an identical claim against the Debtors.

15. While the Debtors do not dispute that Mr. Owens's Special Pension Arrangement is unique in terms of the amount of payments and the timing of such payments, any argument that the language in Mr. Owens's agreement defining Corporation is somehow unique is flatly contradicted by the record in these cases. In fact, multiple other former employees, many of whom were represented by the same counsel as Mr. Owens's counsel, have filed claims or litigated issues related to similar Corporation language; none of these former employees have been granted joint and several claims against both the Debtors and the Canadian Debtors based on such language.[7] As such, the Debtors strongly object to the possibility that Mr. Owens – the former CEO of NNC and NNL – would receive allowed claims against multiple Nortel estates when no other former employee with similar Corporation language has received such treatment.

16. *Second*, notwithstanding the fact that no employee would logically agree to hold themselves liable for their own termination benefits or to be liable for all of their former colleagues' termination benefits, the definition of Corporation in the Termination Agreement, if read to include all of the listed entities simultaneously, is illogical when used in the remainder of the Termination Agreement itself. In just one example of how this definition of "Corporation" cannot be interpreted to be as expansive as it appears, section 4 of the Termination Agreement

---

[7] See, e.g., Claim No. 6263 filed by Lauren Flaherty, at 5, ¶1. ("As used in this Agreement, the term 'Corporation' shall mean Nortel Networks Corporation, its subsidiaries and affiliates, their successors and assigns, and all of their past and present officers, directors, employees and agents (in their individual and representative capacities), in every case, individually and collectively"); Late Filed Claims Motion, at ¶12.

9

provides that "[T]he Corporation will:… (k) pay the cost of personal income tax preparation for calendar years 2005 and 2006 and, at the Corporation's sole discretion, for additional years through 2010, provided there are tax credits available to the Corporation after 2006." Termination Agreement, at ¶4(k). It cannot be the case that the "Corporation" – defined to include all subsidiaries, affiliates, and present and former employees, directors and officers of multiple Nortel entities – could elect to take an action in its "sole discretion." If this definition of Corporation were applied, any current or former employee, director, or officer of any of the named companies could elect for the Corporation to pay Mr. Owens's personal tax preparation expenses through 2010, which simply cannot be what was contemplated by the agreement. The document is replete with examples of the use of Corporation that do not make sense using the provided definition of Corporation.[8] To argue that the definition of Corporation provided in the Termination Agreement was intentional or negotiated by Mr. Owens defies logic. Mr. Owens should not be permitted to use such an expansive and incoherent definition of Corporation to recover from multiple Nortel estates when both the Debtors and Canadian Debtors agree that Mr. Owens's claim should properly be allowed against the Canadian Debtors.

17. Any argument that Mr. Owens may try to make that he is distinguishable from other former employees because he specifically negotiated the benefits in his Termination Agreement, has no bearing on his (lack of) entitlement to joint and several claims against the Debtors and Canadian Debtors. The Termination Agreement does not include, nor has Mr. Owens argued that he negotiated for, a group guarantee of his Special Pension Arrangement. The only language on which he relies to claim joint and several liability is not unique to his

---

[8] See, e.g., ¶2 (resignation from Board of Directors of the Corporation – "[Y]ou agree to resign from your position as a member of the Board of Directors of the Corporation, effective as of or before the Employment Termination Date."); ¶6(b) (disclosure of Inventions and assignment of title to the Corporation – "With respect to Inventions as described in the above paragraph, you have disclosed or will promptly disclose them in writing to the Corporation, and you will, on the Corporation's request, promptly execute a specific assignment of title to the Corporation or its designee…").

agreement and has not afforded any other former employee with multiple recoveries. In addition, Mr. Owens only filed a claim against NNI, rather than all of the Debtors, which belies his argument that it is the Corporation language that enables him to recover from both NNI and the Canadian Debtors, because, if correct, his reading of that language would enable him to recover from all of the other Debtors as well. Simply put, while his Termination Agreement differs from other former employees in some respects, it does not differ in any way that justifies providing Mr. Owens with multiple recoveries to the exclusion of all other former employees.

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto as **Exhibit B**, sustaining this Objection in all respects and granting such other and further relief as the Court deems just and proper.

Dated: April 20, 2017
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York  10006
Telephone: (212) 225-3505
Facsimile: (212) 225-3999

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

  /s/ Tamara K. Minott
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware  19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors-in-Possession*