IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------X
:
*In re*                                                   :   Chapter 11
                                                          :
Nortel Networks Inc., *et al.*,[1]                        :   Case No. 09-10138 (KG)
                                                          :
                    Debtors.                              :   Jointly Administered
                                                          :
                                                          :   RE: D.I. 17432, 17433, 17836,
                                                          :        17838, 18020, 18094
                                                          :
----------------------------------------------------- X

**DEBTORS' SUR-REPLY IN FURTHER OPPOSITION TO THE MOTION OF SNMP RESEARCH INTERNATIONAL, INC. AND SNMP RESEARCH, INC. TO AMEND PROOFS OF CLAIM AND ADD SNMP RESEARCH, INC. AS CLAIMANT**

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567), Nortel Networks (CALA) Inc. (4226) and Nortel Networks India International Inc. (8667). Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

Capitalized terms not defined here have the same meaning as in the Debtors' Memorandum of Law in Opposition to the Motion of SNMP Research International, Inc. and SNMP Research, Inc. to Amend Proofs of Claim and Add SNMP Research Inc. as Claimant (the "Opposition") [D.I. 17836].

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... i

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ............................................................................................................................ 3

    I.   THE PROPOSED CLAIMS BY INC. ARE NEW CLAIMS BY A NEW CLAIMANT THAT CANNOT BE INTRODUCED THROUGH AN AMENDMENT ......................... 3

        A.  Even If The So-Called "Nelson" Test Applied, SNMP Research Could Not Satisfy It ................................................................................................. 4

        B.  The Plain Language of Rule 15 Does Not Permit the Addition of Plaintiffs ............... 8

        C.  The Bankruptcy Decisions Cited In The Reply Do Not Support The Attempt To Add New Claims By Inc. ............................................................................................... 9

        D.  An Attempt By International To Assert Copyrights Belonging To Inc. Would Lack Constitutional Standing And Therefore Cannot Serve As A Predicate For A Motion To Amend ................................................................................................. 12

    II.  INC. DOES NOT EVEN ATTEMPT TO SATISFY THE EXCUSABLE NEGLECT STANDARD THAT IS REQUIRED FOR A NEW CLAIMANT TO ASSERT A NEW CLAIM AFTER THE BAR DATE ............................................................................... 15

CONCLUSION ..................................................................................................................... 15

## **TABLE OF AUTHORITIES**

Page(s)

**Rules and Statutes**

Fed. R. Civ. P. 15(c)(1)(C) .................................................................................................. 8

**Cases**

Allen v. Wright,
468 U.S. 737 (1984) ........................................................................................................... 13

Clamp-All Corp. v. Foresta (In re Clamp-All Corp.),
235 B.R. 137 (B.A.P. 1st Cir. 1999) .................................................................................. 10-11

DaimlerChrysler Corp. v. Cuno,
547 U.S. 332 (2006) ........................................................................................................... 13-14

Gardner v. State Farm Fire & Casualty Co.,
544 F.3d 553 (3d Cir. 2008) ............................................................................................... 8

Heady v. PNC Bank N.A. (In re Community Bank of Northern Virginia),
622 F.3d 275 (3d Cir. 2010) ............................................................................................... 9

Henglein v. Colt Indus. Operating Corp.,
91 F. App'x 762 (3d Cir. 2004) ......................................................................................... 9

In re Bender Shipbuilding & Repair Co.,
2012 WL 4086445 (Bankr. S.D. Ala. 2012) ...................................................................... 10

In re Klingler,
301 B.R. 519 (Bankr. N.D. Ill. 2003) ................................................................................ 13

Lans v. Gateway 2000, Inc.,
84 F. Supp. 2d 112 (D.D.C. 1999) .................................................................................... 12

Lewis v. Casey,
518 U.S. 343 (1996) ........................................................................................................... 13

Lorenz v. CSX Corp.,
1 F.3d 1406 (3d Cir. 1993) ................................................................................................. 7

Monahan v. City of Wilmington,
2004 WL 758342 (D. Del. 2004) ....................................................................................... 9

Nelson v. County of Allegheny,
  60 F.3d 1010 (3d Cir. 1994) .................................................................................. 4-5, 6, 7

Painter Family Invs., Ltd., LLP v. Underwriters at Lloyds, Syndicate 4242,
  836 F. Supp. 2d 484 (S.D. Tex. 2011) ............................................................... 13

Unioil, Inc. v. Elledge (In re Unioil, Inc.),
  962 F.2d 988 (10th Cir. 1992) ........................................................................... 10

Vianix Delaware LLC v. Nuance Communications Inc.,
  2009 WL 1364346 (D. Del. 2009) .................................................................... 2, 12

The Debtors file this sur-reply (the "Sur-reply") in accordance with the Court's order dated April 13, 2017 [Bankr. D.I. 18094] and in opposition to SNMP Research's reply filed in support of its Motion to Amend [Bankr. D.I. 18069] (the "Reply", and the Reply together with the Motion to Amend, the "Motion"), and respectfully state as follows:

## PRELIMINARY STATEMENT

1. No matter how hard Inc. and International seek to obscure the fact, the so-called Motion to Amend does not involve an amendment of an existing claim. Rather, it entails a wholesale attempt, more than seven years after the bar date, to withdraw one claim by one party and replace it with a completely different claim by a different party – and through this fundamental and dramatic change to increase the alleged damages by nearly ***1,000 percent***.

2. Specifically, International now seeks to withdraw the contractual claims that it previously made in every single one of the multiple proofs of claim that it has filed over a period of more than six years. And in place of its abandoned contractual claim, International now seeks to have Inc. introduce itself as a new claimant in order to make a new claim under copyrights belonging to Inc. – claims that International never made and could not have made. Through this wholesale overhaul – bringing in a different claimant, with a different claim and a different damages theory – International and Inc. seek to discard a contractual claim by International for just over $8 million (itself a grossly overstated amount) and replace it with a copyright infringement claim by Inc. in excess of $80 million (a baseless and vastly exaggerated claim).

3. Even if the Motion merely involved an existing claimant seeking to assert a new damages theory on an existing claim (and it does not), the Court should deny the attempt by International to change the nature and size of its damages claim in such a dramatic and

prejudicial way. But the Motion seeks to do something far worse in seeking to introduce Inc. as a new claimant and have it assert a new claim – a claim under Inc.'s copyrights.

4. International's proofs of claim indisputably did not and could not assert a claim under Inc.'s copyrights. And if International had tried to do so, the claim could only have been dismissed as a nullity for lack of constitutional standing. As the Court made clear in <u>Vianix Delaware LLC v. Nuance Communications Inc.</u>, it is impermissible to do what International seeks here: to use a claim that lacks constitutional standing as a basis for bringing in the proper plaintiff through an amendment. 2009 WL 1364346, at *2 (D. Del. 2009). Instead, because a claim that lacks constitutional standing is a nullity and can only be dismissed, the proper plaintiff must start from scratch, filing its own new claim in a new suit. <u>Id.</u> at *3.

5. Thus, if Inc. wished to assert a claim under Inc.'s copyrights, it would need to candidly recognize that effort for what it is: an attempt to introduce a late claim, years after the bar date. To do so would require Inc. to confront and satisfy the stringent "excusable neglect" standard. But evidently recognizing it cannot meet that standard, Inc. expressly disclaims any attempt to do so. As the Reply confirms, Inc. "is not even asking the Court to consider excusable neglect in the alternative in its request to be added to the Proposed Claim." Reply ¶ 81. Instead, Inc. strains to find some backdoor way to inject its new claim under its own copyrights. As set forth below, the Reply, like the opening brief, fails to identify any precedent or establish any valid basis for what the Motion seeks to do.

**ARGUMENT**

**I. THE PROPOSED CLAIMS BY INC. ARE NEW CLAIMS BY A NEW CLAIMANT THAT CANNOT BE INTRODUCED THROUGH AN AMENDMENT**

6. The claims that Inc. now proposes to assert are new claims by a new claimant that simply cannot be injected into International's Proofs of Claim through an amendment.

7. To begin, International's Proofs of Claim unquestionably did not assert any claims belonging to Inc. International was the only claimant, and the passing reference to a copyright claim could only have related to International's copyrights. The Proofs of Claim made no reference to Inc. And they made no reference to any copyrights or trade secrets or anything else belonging to Inc. Thus, the Proofs of Claim cannot possibly be construed as having asserted a claim under copyrights or anything else belonging to Inc.

8. This is not a semantic or technical point. Each specific copyright represents a distinct and independent legal right, and a claim under a specific copyright constitutes a distinct and independent claim. The Motion to Amend itself highlights this fundamental point. It confirms that "[International's] copyrights are distinct from those of [Inc.]," and thus the "independent and distinct copyright infringement claims" of Inc. must be distinguished from those of International. Mot. to Am. ¶¶ 68, 7. The Motion further emphasizes that, as a result of this difference between the copyrights, "it is possible that [International's] prepetition copyright claims could fail and [Inc.'s] prepetition copyright claims could succeed." Mot. to Am. ¶ 68. Indeed, the Motion concedes that International's claims are likely to fail, because "the copyrighted material owned by [Inc.] was what Nortel [allegedly] shipped." Id.

9. Thus, there is a fundamental and important difference between a claim under International's copyrights and a claim under Inc.'s copyrights. And International's Proofs of Claim unquestionably did not assert or mention any claim under Inc.'s copyrights. Yet the

3

Motion now seeks, through an amendment, to add Inc. as a new claimant in order to have it assert the new claims under Inc.'s copyrights.

      **A.    Even If The So-Called "Nelson" Test Applied, SNMP Research Could Not Satisfy It**

10.      The Motion seeks to justify the addition of a new claimant making a new claim by invoking the so-called <u>Nelson</u> relation-back test. <u>See</u>, <u>e.g.</u>, Mot. to Am. ¶¶ 73-83 (citing <u>Nelson v. County of Allegheny</u>, 60 F.3d 1010 (3d Cir. 1994)). As discussed in the Opposition and below, the Third Circuit subsequently made clear that Rule 15, by its express terms, cannot be used to add plaintiffs. <u>See</u> Opposition ¶ 57; <u>infra</u> Section B. Thus, the <u>Nelson</u> argument fails at the threshold.

11.      But even if SNMP Research could invoke the <u>Nelson</u> test, it would fail to satisfy it. The <u>Nelson</u> test emphasized that, when a new plaintiff seeks to be added to a proceeding, it is not enough to satisfy the so-called "conduct test" – that the proposed new claims relate back to the same conduct that is the subject of the existing claims. <u>Nelson</u>, 60 F.3d at 1014. Indeed, the <u>Nelson</u> court found that the proposed new claims by the would-be new plaintiffs there *did* satisfy the conduct test, but it rejected the proposed amendment nonetheless. <u>Id.</u> Nor is it enough for the court also to find that Defendants would not be prejudiced by having to present a defense on the merits to the newly-added claims (though this would be one of the required findings). <u>Id.</u> at 1014-15.

12.      Beyond those required showings, the would-be new plaintiffs must also show that they "have not slept on their rights" and that the defendants knew or should have known that, but for a mistake concerning the proper party, the new claims would have been brought with the original claim. <u>Id.</u> at 1014. Where the new plaintiffs "were aware of their right to bring the[ir] claims" but "[n]evertheless, . . . failed to add their names to the complaint until after the

4

expiration of the statute of limitations," the plaintiffs could not satisfy Rule 15(c) because they could not show their failure to assert their claims "was due to mistake." Id. at 1015. The Nelson court emphasized that the reason to erect a high hurdle against the addition of new plaintiffs is that "[e]ven if, as here, there were no showing of specific prejudice in the sense of lost or destroyed evidence, defendants would still be deprived of their interest in repose." Id. (citation omitted).

13.     Seeking to satisfy these standards, SNMP Research offers up a so-called "mistake": that Dr. Case, an employee of Inc., purportedly held the mistaken belief that International was legally entitled to assert claims under copyrights belonging to Inc. See, e.g., Mot. to Am. ¶ 82 ("Dr. Case believed that [International] could enforce its own and [Inc.'s] rights under the copyright law."). As the Debtors showed in their opposition, this "mistake" argument fails for multiple reasons. And SNMP Research's Reply confirms it cannot overcome these failures.

14.     First, the mistake argument fails on its own terms. The purported mistake argument depends on two premises: 1) that International's earlier proof of claims actually *did* assert claims under Inc.'s copyrights; and 2) that Dr. Case purportedly held the mistaken belief that International was legally entitled to do so. But the first premise is plainly untrue: International's proofs of claim did *not* assert claims under Inc.'s copyrights. They make no reference whatsoever to Inc. or Inc.'s copyrights. The Debtors' opposition brief pointed out this fundamental defect in SNMP Research's argument. See Opposition ¶¶ 42-44. Yet SNMP Research's Reply offers no response. This simple and fundamental failure defeats SNMP Research's attempt to add Inc. as a claimant.

5

15. Second, as in <u>Nelson</u>, the mistake argument fails because Inc. was previously "aware of [its] right to bring these claims" and "slept on [its] rights." <u>Nelson</u>, 60 F.3d at 1014, 15. Indeed, in the adversary complaint filed in November 2011, more than five years ago, Inc. *did* appear as a plaintiff in order to bring claims under its own copyrights. In the period leading up to that November 2011 filing, Inc. and International were focused on their copyrights and their relation to them. They filed their applications for copyright registrations in January and February of 2011. And, having realized that they did not have a license in place, they executed a license in September 2011 – which made International a non-exclusive licensee, with the result that it had no right to assert Inc.'s copyrights. Case Decl. Ex. 1, Nov. 23, 2016 [Bankr. D.I. 17433]. And, again, in the adversary complaint filed in November 2011, Inc. did appear as a plaintiff to assert its own copyrights. As Dr. Case conceded in his deposition, Inc. was included as a plaintiff, because, as he put it, "I thought it was better to have both parties present."

16. Thus, Inc. (and Dr. Case) knew, no later than November 2011 and presumably much earlier, that Inc. could and should be the plaintiff/claimant if there was to be a claim under Inc.'s copyrights. But Inc. did *not* attempt to introduce itself as a claimant in a proof of claim at that time, either through its own proof of claim or an attempted amendment of International's Proof of Claim. Nor did it do so when International filed an amended proof of claim in December 2012. Nor did it do so when International filed yet another amended proof of claim in October 2015. Instead, after delaying more than five years after November 2011 and more than seven years after the bar date, Inc. sought for the first time, in the Motion to Amend, to introduce itself as a claimant in the proof of claim.

17. Thus, it was only after a delay of multiple years, during which there were numerous opportunities to try to introduce Inc. as a claimant, that Inc. and International suddenly

6

changed their strategy. They now seek to discard the contractual claim that had been the focus of all of International's many Proofs of Claim and replace it with a new claim by Inc. under Inc.'s copyrights. This belated change of strategy reflects bad faith and dilatory tactics. But regardless of the motivation, Inc. plainly "slept on its rights" all of these many years, despite its numerous opportunities to seek to add its claims, and therefore it cannot now "seek to take advantage of the [relation-back] rule to perform an end run on the [time bar] that bars [its] claims." Nelson, 60 F.3d at 1014-15; see also Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993) (lapse of three years before seeking proposed amendment was "unreasonable" delay where plaintiff had "numerous opportunities" to amend).

18.     Third, for a single individual to claim that he personally did not know the governing law cannot suffice to establish a legitimate basis to open the door to the belated amendment that Inc. now is attempting. See Opposition at 21-27 (§ III). And the purported mistake that SNMP Research offers here is especially unpersuasive. International's proofs of claim were filed by counsel, including the same counsel who continue to represent it today. The bare claim that Dr. Case, individually and as a layman (who holds himself out as an expert on various intellectual property-related subjects in this case), held the subjective and mistaken belief that International could assert Inc.'s copyrights – which SNMP Research admits is contrary to well-established black letter law – simply does not suffice. And, again, this "mistake" argument is inherently defective: International did *not* assert claims under copyrights belonging to Inc. – and so the question of whether Dr. Case purportedly believed that International had the right to do so, when in fact it did not do so, is irrelevant.

19.     Finally, the necessary "hook" for SNMP Research's "mistake" argument is that International's Proofs of Claim actually attempted to assert a claim based on Inc.'s copyrights.

7

As shown, that simply is not so. But as discussed in the Opposition and again below in Section D, if International had attempted to assert a claim under Inc.'s copyrights, the claim would lack constitutional standing and would have to be dismissed. Because a claim that lacks constitutional standing is a nullity, it cannot serve as a predicate on which a party can base a motion to amend.

### B. The Plain Language of Rule 15 Does Not Permit the Addition of Plaintiffs

20. As set forth above, SNMP Research cannot satisfy the so-called "Nelson" test, even if it were established that Fed. R. Civ. P. 15(c)(1)(C) could serve as a proper avenue for adding a plaintiff (or claimant). But in fact, as explained in the Opposition, Rule 15(c)(1)(C) – which, by its terms, applies only to changes to "the party against whom the claim is asserted" – does not permit the addition of a new plaintiff or claimant. The Third Circuit made this clear in Gardner v. State Farm Fire & Casualty Co., in which the Court expressly addressed Rule 15(c)(1)(C) – and in doing so rejected the notion that it applies to the party advancing a claim, rather than defending against it. See Gardner, 544 F.3d 553, 562 (3d Cir. 2008) (rejecting argument by plaintiff that an assignment of rights that afforded her standing to bring otherwise untimely claims should relate back under Rule 15(c)(1)(C), because "Rule 15(c)(1) is simply not applicable" to amendments changing plaintiffs).

21. Notably, the Gardner Court acknowledged the Advisory Committee Notes to Rule 15(c)(1)(C), which mention the possible extension of the defendant-focused rule to plaintiffs "[only] by analogy." Id. at 561-62 (inserted language in original). It declined to so extend the rule within the Third Circuit, however – and did not cite Nelson, which pre-dates it, as having done so already. And, again, the Nelson Court did not actually apply Rule 15(c)(1)(C) to allow the addition of a plaintiff but instead declined to add the would-be new plaintiffs. See id.

22. To the extent SNMP Research reads Heady v. PNC Bank N.A. (In re Community Bank of Northern Virginia), 622 F.3d 275, 297 (3d Cir. 2010), to suggest otherwise, it is simply incorrect, particularly considering that the Heady statement SNMP Research cites in the Reply related to Rule 15(c)(1)(C) is indisputably dicta. See Heady, 622 F.3d at 300 (stating that the Court "need not resolve the difficult question[]" presented there about whether "a substituted named plaintiff in a class action may file an amended pleading that relates back to the initial pleading only if he or she can satisfy the requirements of Rule 15(c)(1)(C)"). In sum, SNMP Research has not identified any decision in which the Third Circuit has applied Rule 15(c)(1)(C) to permit the addition of new plaintiffs (or claimants).[2]

### C. The Bankruptcy Decisions Cited In The Reply Do Not Support The Attempt To Add New Claims By Inc.

23. Evidently aware that they are unlikely to succeed based on the arguments set forth in their opening brief, International and Inc. try a new tack in their Reply: they cite a handful of bankruptcy decisions as purported support for the attempt to add a new claimant that will assert a new claim. See Reply ¶ 59. It is improper to try to introduce a new argument in a reply brief, but in any event the new argument fails.

24. None of the new decisions supports what Inc. and International are attempting to do here: to bring in Inc. as a new claimant that is seeking to assert a claim that is different from the claims asserted in the prior proofs of claim. Again, each copyright is a distinct and

---

[2] SNMP cites two cases it says stand for this proposition. See Reply ¶ 70. But in the first, the Third Circuit actually rejected the would-be new plaintiffs' argument that their claims should relate back under 15(c)(1)(C). See Henglein v. Colt Indus. Operating Corp., 91 F. App'x 762, 765 (3d Cir. 2004) (concluding that the new plaintiffs impermissibly "sat on their rights"). And the second is in a decision by the district court, not the Court of Appeals. See Monahan v. City of Wilmington, 2004 WL 758342 (D. Del. 2004). Notably, Monahan and the other district court-level cases SNMP Research identifies that do authorize the addition of plaintiffs pursuant to Rule 15(c)(1)(C) all pre-date Gardner – binding Third Circuit precedent – and so are obsolete.

independent legal matter, and a claim under International's copyrights unquestionably is different from a claim under Inc.'s copyrights. And, as shown, International's proofs of claims made no reference to Inc. or any Inc. copyright. Thus, for Inc. to now seek to be added in order to assert a claim under its copyrights plainly would constitute a new and different claim.

25.     By contrast, none of the decisions cited in the Reply involve a new claim. All but two involve the wholesale substitution of one claimant for another in order for the new claimant to assert the same claim as originally asserted. As the court in Unioil, Inc. v. Elledge (In re Unioil, Inc.) explained, such an amendment is permissible only where "the content [of the proof of claim] was unaltered by the amendment," "[t]he only change was in the replacement" and substitution of a trust for an individual claimant that had filed the interest on the trust's behalf, leaving "asserted the same substantive interest as the original proof of claim" after "merely substitut[ing] the [t]rust as the proper claimant." 962 F.2d 988, 992-93 (10th Cir. 1992). That plainly is not what Inc. and International seek to do here.

26.     Only two SNMP Research citations feature the addition of new claimants, but in those cases the claims asserted by the new claimants were the same claims asserted by the existing claimants. Neither involves the addition of a new claimant *and* new and different claims. For example, in In re Bender Shipbuilding & Repair Co., the court emphasized that "the issue is whether the amendment substantively changes the claim or not." 2012 WL 4086445, at *2-*3 (Bankr. S.D. Ala. 2012). The court allowed the amendment, only after confirming that "amending [the] proof of claim by adding [creditor two] does not substantively change the claims made against" the debtor. Id. at *3. And in Clamp-All Corp. v. Foresta (In re Clamp-All Corp.), the court allowed a claim to be bifurcated and a new creditor to assert a part of the newly bifurcated claim after a state court decided, post-claim filing, that the sole interest asserted in the

proof of claim should be shared by two parties. 235 B.R. 137, 141 (B.A.P. 1st Cir. 1999). The claim asserted against the estate had not changed. Having recognized that "[p]ost-bar date amendments should be scrutinized to ensure that the amendment is not making a new claim against the estate," id. at 140, the court held that such a "simple substitution of the real party in interest" was a permissible amendment, particularly where the amended claim was "substantially less than the . . . claim was as filed." Id. at 141.

27.     But here, Inc. is not asserting the same claim as International: it asserts its own claim, under its own independent and distinct copyrights. Thus, Inc. seeks to be added as an additional claimant, and it would also be adding a new claim – as the Motion itself describes it, a claim that constitutes Inc.'s "independent and distinct copyright infringement claim[]." Mot. to Am. ¶ 7. In fact, the likelihood that International's distinct and different copyright claims may fail is the reason Inc. now demands to add itself as a new claimant in order to bring its new and different claim. See Mot. to Am.¶ 68 ("[International's] copyrights are distinct from those of [Inc.], and thus it is possible that [International's] pre-petition copyright claims could fail and [Inc.'s] prepetition copyright claims could succeed.").

28.     As Inc. and International themselves admit, the cases they cite could support an amendment only if "it does not assert a 'new claim' and there is no unfair prejudice or bad faith present." Reply ¶ 59. As a result, their argument fails at the threshold, because the claims by Inc. under Inc.'s copyrights plainly are a "new claim" that is distinct and independent from the claim by International under International's copyrights. And, as shown in our Opposition, the Motion should be rejected for the additional reasons that it would impose unfair prejudice on the Debtors and their creditors and the attempt to now dramatically change the proofs of claim is motivated by bad faith. See generally Opposition ¶¶ 71-84.

11

### D. An Attempt By International To Assert Copyrights Belonging To Inc. Would Lack Constitutional Standing And Therefore Cannot Serve As A Predicate For A Motion To Amend

29. Even if the Motion to Amend could overcome all of the other defects outlined above and in the Opposition, it would fail for another fundamental reason: an attempt by International to assert a claim based on copyrights belonging to Inc. would lack constitutional standing and so cannot serve as a predicate for a motion to amend.

30. As discussed, the Motion hinges on the premise that International's prior proofs of claim asserted a claim under Inc.'s copyrights and that this purportedly-asserted claim can serve as a predicate for Inc. now asserting its claim under Inc.'s copyrights. Again, this is the linchpin of Inc.'s "mistake" argument: that 1) International's proofs of claim sought to assert Inc.'s copyrights and 2) Dr. Case purportedly believed that International was legally entitled to do so. Without the premise that International previously asserted Inc.'s copyrights, International and Inc. would have to admit that the attempt by Inc. to assert Inc.'s copyrights now would be a new claim.

31. But, in addition to the fact that International's prior proofs of claim unquestionably did not assert Inc.'s copyrights, their argument faces another fundamental problem. It is well-established that an attempt by a non-exclusive licensee such as International to assert a claim for infringement of the licensed copyrights is a nullity, based on the lack of constitutional standing to assert such a claim. Thus, the only result if International had asserted claims under Inc.'s copyrights (which it did not do) would be to dismiss those claims for lack of constitutional standing. The District of Delaware's decision in <u>Vianix</u> makes this clear: "Because [the copyright plaintiff] did not have standing to assert its claims when it filed suit, the Court does not have subject matter jurisdiction to entertain anything filed thereafter, including the amended complaint." 2009 WL 1364346, at *2; <u>see also</u> <u>Lans v. Gateway 2000, Inc.</u>, 84 F.

12

Supp. 2d 112, 115 (D.D.C. 1999) (plaintiff lacked standing to enforce a patent, where he had assigned it to another entity, and could not seek to "retroactively create jurisdiction" by substituting in the assignee); Painter Family Invs., Ltd., LLP v. Underwriters at Lloyds, Syndicate 4242, 836 F. Supp. 2d 484, 500 (S.D. Tex. 2011) ("One plaintiff without standing to assert another plaintiff's claims cannot attempt to do so and thereby toll the statute of limitations on the latter's claims.").

32. Accordingly, any assertion by International of Inc.'s copyrights would have to be dismissed for lack of constitutional standing. As a result, such a nullity could not serve as a predicate for the attempt to now inject claims by Inc. under Inc.'s copyrights under the framework of a claim amendment. Importantly, and unsurprisingly, none of the decisions cited in the Motion or Reply involve a circumstance like here: where the prior claim that serves as a predicate for a motion to amend must be dismissed for lack of constitutional standing.

33. The attempts by Inc. and International to distinguish Vianix fail. First, they argue that if International had standing to bring *other* claims, then it does not matter that it had no standing to assert a claim under Inc.'s copyrights. Reply ¶¶ 77-78. But "[s]tanding is not dispensed in gross," Lewis v. Casey, 518 U.S. 343, 358 n.6 (1996). Rather, "the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the *particular plaintiff* is entitled to an adjudication of the *particular claims* asserted." Allen v. Wright, 468 U.S. 737, 752 (1984) (emphasis supplied). Because standing must be satisfied party-by-party and claim-by-claim, International's standing to assert International's own claims cannot have conferred standing on it to assert claims belonging to Inc. See also DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 351-52 (2006) (rejecting plaintiffs' claim that subject matter jurisdiction extends to all claims related to a claim "within Article III[,] . . . regardless of the

13

nature of the deficiency that would keep the former claims out of federal court if presented on their own," and observing that "a plaintiff must demonstrate standing separately for each form of relief sought") (citation omitted).  Nothing in Vianix – in which the court does not even mention that the plaintiff asserted only one claim, let alone cite this fact as a basis for concluding that it lacked subject matter jurisdiction to entertain the plaintiff's amended complaint – can be read to suggest otherwise.

34. Next, the Reply argues that Vianix "deals with federal question jurisdiction, as opposed to bankruptcy jurisdiction." Reply ¶ 79.  This too is simply wrong.  Vianix addressed whether an asserted claim satisfied the requirement for constitutional standing, which is necessary for any federal court to have subject matter jurisdiction over the claim.  It is axiomatic that "[t]he limits Article III imposes on federal jurisdiction apply equally to bankruptcy courts."  In re Klingler, 301 B.R. 519, 523 & n.6 (Bankr. N.D. Ill. 2003) (observing that "[t]he bankruptcy court is a unit of the district court, exercising the district court's bankruptcy jurisdiction," and so necessarily "has no broader jurisdiction than the district court itself").

35. A bankruptcy court, like any other court, lacks jurisdiction to entertain claims, like Inc.'s, for which subject matter jurisdiction is absent based on a failure to establish constitutional standing.  See id. at 525 (dismissing plaintiff's adversary complaint for lack of constitutional standing notwithstanding the court's bankruptcy jurisdiction over the underlying proceedings).  SNMP Research cites absolutely no authority for the contrary proposition.  See Reply ¶¶ 79-80.  And it simply makes no sense to suggest that a bankruptcy court can exercise jurisdiction over a claim as to which there is a lack of constitutional standing.

36. Thus, the Motion fails for this additional reasons:  that if International actually had attempted to assert a claim under Inc.'s copyright claims (which it did not do), that claim

14

would have to be dismissed as a nullity for lack of constitutional standing and therefore could not serve as a predicate for an amendment.

## II. INC. DOES NOT EVEN ATTEMPT TO SATISFY THE EXCUSABLE NEGLECT STANDARD THAT IS REQUIRED FOR A NEW CLAIMANT TO ASSERT A NEW CLAIM AFTER THE BAR DATE

37. Despite all of the strained and convoluted and ultimately unsuccessful arguments by Inc. and International, the simple fact is that the claims that Inc. now proposes to assert under its copyrights are new claims. These claims were not made, and could not have been made, in International's proofs of claim. The upshot is that Inc. must do what any party must do when it seeks to add a new claim, years after the bar date: establish excusable neglect in order to justify the late introduction of the claim.

38. But Inc. expressly disclaims any attempt to demonstrate that it should be permitted to introduce these late-filed claims based on excusable neglect: "[Inc.] is not even asking the Court to consider excusable neglect in the alternative in its request to be added to the Proposed Claim." Reply ¶ 81. Inc. could not do so even if it tried, as it evidently recognizes. That it expressly disclaims any attempt to do so makes the result here simple: the attempt to introduce Inc. as a new claimant making new claims under Inc.'s copyrights must be denied.

## CONCLUSION

For the reasons set forth above and in their Opposition, the Debtors respectfully request that the Court deny the Motion to Amend and the Motion to Amend Reply and grant such other relief as the Court deems just and proper.

Dated: April 26, 2017
Wilmington, Delaware

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Lisa M. Schweitzer (admitted *pro hac vice*)
David H. Herrington (admitted *pro hac vice*)
One Liberty Plaza
New York, New York  10006
Telephone: (212) 225-2000
Fax: (212) 225-3999

-and-

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Tamara K. Minott*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Tamara K. Minott (No. 5643)
Andrew J. Roth-Moore (No. 5988)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*