IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---

| | |
|---|---|
| In re | Chapter 11 |
| Nortel Networks Inc., *et al.*, | Case No. 09-10138 (KG) |
| Debtors.[1] | Jointly Administered |
| | **Re: Docket Nos. 17432, 17836, 18069, 18088, & 18131** |

**JOINDER OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF NORTEL NETWORKS, INC., ET AL.
TO DEBTORS' OPPOSITION TO MOTION OF SNMP RESEARCH
INTERNATIONAL, INC. TO AMEND PROOFS OF CLAIM**

The Official Committee of Unsecured Creditors (the "Committee") of Nortel Networks, Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby files this joinder (the "Joinder") to Debtors' *Memorandum of Law in Opposition to the Motion of SNMP Research International, Inc. and SNMP Research, Inc. to Amend Proofs of Claim and Add SNMP Research Inc. as Claimant* (D.I. 17836) (the "Opposition")[2] and to Debtors' *Sur-Reply in Further Opposition to the Motion of SNMP Research International, Inc. and SNMP Research, Inc. to Amend Proofs of Claim and Add SNMP*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. ("NNI") (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Opposition.

1

2243373v1

*Research Inc. as Claimant* (D.I. 18131). In support its Joinder, the Committee respectfully states as follows:

## JOINDER

1. On September 29, 2009, SNMP Research International, Inc. ("International") filed 15 proofs of claim in these cases, seeking $22,281.00 for unpaid royalties from the fourth quarter of 2008 and the early part of the first quarter of 2009. (POCs 4624 – 4638.) Now, more than seven years after the bar date, International seeks leave to file a Sixth Amended Proof of Claim, adding as a claimant a separate entity, SNMP Research, Inc. ("Inc." and together with International, "SNMP Research") and asserting more than $81 million in prepetition damages. (D.I. 17432.)

2. Shortly before the hearing on confirmation of the Debtors' Plans this year, the Debtors, International, and Inc. entered into a stipulation pursuant to which International is deemed to have a disputed administrative claim of $55 million at the NNI estate, a disputed general unsecured claim of $85 million at the NNI estate, and a disputed $2.8 million general unsecured claim at the NN CALA estate. (D.I. 17707.) The Committee was unhappy with these grossly inflated numbers, but agreed to the entry of this stipulation so that the confirmation hearing could proceed without objection, in the hope of reaching an earlier Effective Date.

3. But enough is enough. Over the years, International has objected repeatedly and obstructed these proceedings in the hope of extracting "hold-up" value from these estates. When the Debtors sought to sell their Lines of Business ("LOBs") in 2009 and 2010, International objected. The sales documents carefully carved out from the LOB sales any transfer of the right to use any SNMP software embedded in Nortel products. The Court patiently heard International's objections, and entered orders approving the LOB sales with language

2

2243373v1

specifically disclaiming that the LOB buyers were receiving any right to use SNMP software. The LOB buyers subsequently entered into "accession agreements" and licenses with International.

4. Nevertheless, International and Inc. pursued litigation on this "improper transfer" theory. But in early 2016, on cross-motions for partial summary judgment, the Court expressed skepticism of SNMP Research's ability to obtain damages under the "improper transfer" theory. The Court said: "Although Nortel might have transferred the software to the purchasers, either inadvertently or with purpose, the purchasers appear not to have paid Nortel for the software. If so, the transfers of SNMP software were not used to generate income. Without demonstrating sales of the SNMP software, SNMP is unlikely to prevail on its Profits Claim under Section 504(b) of the Copyright Act." (Adv. Proc. D.I. 359, at 19.) On cross-motions for clarification, the Court entered an order and memorandum opinion describing SNMP Research's burden of proof. (Adv. Proc. D.I. 466, at 7.)

5. And now International seeks to file its Sixth Amended Proofs of Claim, abandoning the "improper transfer" theory, adding Inc. as a claimant, and having Inc. assert copyright damages under a "usage" theory. It is obvious to the Committee that International's tactic was a direct response to the Court's opinions regarding its "improper transfer" theory. It is also clear that International seeks to add Inc. as a claimant because International cannot successfully assert copyright damages. As the Debtors have argued, International licensed the SNMP software to Nortel, but International is a non-exclusive licensee of Inc., the owner of the software. It is blackletter law that a non-exclusive licensee lacks standing to assert copyright damages, and so International's latest version of its claim will fail.

2243373v1

6.      It also cannot be overlooked that SNMP Research is now targeting the Debtors for its full recovery of its alleged claims against the entire global Nortel group, after Justice Newbould similarly dispensed with its claims against the Canadian Debtors in the parallel Canadian proceeding.  The timeline again tells the story.  On April 26, 2016, Justice Newbould dismissed SNMP Research's "profits" claim against the Canadian Debtors and expressed skepticism about SNMP Research's claims.  See Endorsement Re Nortel Networks Corp., 2016 ONSC 2732 (Newbould, J.), Court File No. 09-CL-7950 (Can. Apr. 26, 2016) (Adv. D.I. 418-1), a copy of which is attached hereto as Exhibit 1.  Justice Newbould cautioned SNMP Research that its apparent "fishing expedition" would be done "at its peril" and held SNMP Research's remaining damages claim against the Canadian Debtors in abeyance for six months.  Id. at 20.  The Canadian abeyance period expired on or about October 26, 2016.  Less than a month later, on November 23, 2016, SNMP Research filed the Motion to Amend that is now before this Court, trying to increase its damages tenfold.  (D.I. 17432.)  And on January 27, 2017, SNMP Research revealed that it had settled its claims against the Canadian Debtors — the *same* claims it has asserted against the Debtors — for the paltry sum of U.S. $3,500.  (*See* D.I. 17987-1.)

7.      It is far too late after the bar date for International to be permitted to transmogrify its claims.  The Committee hopes and expects that the Debtors' Effective Date will occur soon, and payments finally will be made to the Debtors' creditors.  But it is highly prejudicial to those creditors that $142.8 million (the staggering sum of SNMP Research's pre- and post-petition damages claims) will be held back for International's disputed claims of which $81 million in alleged prepetition damages is the subject of the Motion to Amend.  International flippantly argues that prejudice is absent because "unsecured creditors might receive a slightly reduced distribution (55.1% versus 53.5%) if the Motion to Amend is granted and the claims are allowed

in their full amount." (D.I. 18069, 18088, ¶83.) International's statement is insulting to all unsecured creditors that asserted valid and timely claims against these estates. The payment of anything in respect of an untimely, baseless, shape-shifting claim is prejudicial to all unsecured creditors. This is particularly the case where International, suffering from setbacks before Justice Newbould, seeks to make up for its past litigation losses from the pockets of the Debtors' unsecured creditors.

8. The Committee also fully adopts and joins in the Debtors' arguments in their opposition memorandum and sur-reply.

*[Remainder of Page Intentionally Left Blank]*

**CONCLUSION**

WHEREFORE, the Committee respectfully urges the Court to (i) deny International's motion to amend its proofs of claim; and (ii) grant such other and further relief as may be just, proper, and equitable.

Dated: April 26, 2017
       Wilmington, Delaware

*/s/ Katherine Good*
Christopher M. Samis (No. 4909)
L. Katherine Good (No. 5101)
Whiteford, Taylor & Preston LLC
The Renaissance Centre
405 North King Street, Suite 500
Wilmington, DE  19801
Telephone:  (302) 353-4144

-and-

David H. Botter (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
Robert A. Johnson (admitted *pro hac vice*)
Brad M. Kahn (admitted *pro hac vice*)
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY  10036
Telephone:  (212) 872-1000

*Co-counsel to the Official Committee of Unsecured Creditors*