## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X

:

*In re*                               :     Chapter 11

:

Nortel Networks Inc., *et al.*,[1]       :     Case No. 09-10138 (KG)

:

                   Debtors.     :     Jointly Administered

:

:     **Hearing Date: May 5, 2017 at 2:00 PM (ET) [Proposed]**

:     **Objections Due: At or prior to the Hearing [Proposed]**

---------------------------------------------------------X

## DEBTORS' MOTION PURSUANT TO SECTIONS 105(a) AND 1142 OF THE BANKRUPTCY CODE FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING THE DEBTORS' ENTRY INTO THE WAIVER AND RESERVE AGREEMENT

Nortel Networks Inc. ("NNI"), on behalf of itself and certain of its affiliates, as debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), hereby moves this Court (the "Motion") for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a) and 1142 of title 11 of the United States Code (the "Bankruptcy Code") (a) authorizing and approving the Debtors' entry into that certain Waiver and Reserve Agreement, dated April 26, 2017, between and among the Debtors, the Canadian Debtors,[2] the Monitor, the EMEA Debtors, and Nortel Networks S.A. ("NNSA" and, collectively, the "Waiver Parties"), attached hereto as Exhibit B (the "Waiver Agreement"), in

---

[1]     The debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567), Nortel Networks (CALA) Inc. (4226) and Nortel Networks India International Inc. (8667). Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

[2]     Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the First Amended Joint Chapter 11 Plan of the Debtors, other than Nortel Networks India International Inc. ("NNIII"), which intends to file its own Disclosure Statement and Chapter 11 plan in the near-term.

furtherance of the Debtors' implementation of the Plan, and (b) granting them such other and further relief as the Court deems just and proper.  In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory basis for the relief requested herein is sections 105(a) and 1142 of the Bankruptcy Code.

## BACKGROUND

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc. and NNIII,[3] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court"), which cases are consolidated for procedural purposes only.  The Debtors continue as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Nortel affiliates has also been organized (the

---

[3]      Nortel Networks (CALA) Inc. and Nortel Networks India International Inc. each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009 and July 26, 2016, respectively, each of which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes. [D.I. 1098; D.I. 17090].

"Bondholder Group").  A consortium of creditors holding trade claims (the "Trade Claims Consortium") has also been organized.

5.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[4] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada), seeking relief from their creditors and a monitor, Ernst & Young Inc., was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors"),[5] into administration under the control of individuals from Ernst & Young LLP.  Other Nortel Group affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6.      Since the Petition Date, the Nortel Group has sold its business units and other assets to various purchasers, generating proceeds of over $7.3 billion that have been placed in escrow accounts pending allocation ("Sale Proceeds").  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

---

[4]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[5]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

7.      On December 1, 2016, the Debtors, other than NNIII, filed the Plan with the Court (such Debtors, the "Plan Debtors").  The Plan was subsequently amended and an amended version of the Plan, dated January 23, 2017, was filed with the Court. [D.I. 17763].  On January 24, 2017, the Court confirmed the Plan [D.I. 17795].  Among other things, the Plan integrates and implements the Settlement and Plans Support Agreement (the "SPSA"), dated October 12, 2016 between and among the Debtors, the Canadian Debtors, the EMEA Debtors and certain other parties.  The SPSA resolves all appeals and controversies regarding the dispute among the various Nortel entities as to the allocation of the Sale Proceeds.  Also on January 24, 2017, the Canadian Court approved the Canadian Plan, which similarly implements the SPSA, and entered the Sanction Order and the Canadian Escrow Release Order.

8.      On February 14, 2017, two former employees of the Canadian Debtors (the "Canadian LTD Objectors") sought leave to appeal the Sanction Order and the Canadian Escrow Release Order to the Ontario Court of Appeal (the "LTD Leave Application" and together with any leave to appeal, appeal or other review to the Supreme Court of Canada by the Canadian LTD Objectors, an "LTD Appeal"), which leave motion was dismissed by the Ontario Court of Appeal on March 13, 2017.  The Canadian LTD Objectors have until May 12, 2017 to seek leave to appeal to the Supreme Court of Canada.

9.      Section 12.3(i) of the Plan provides that it is a condition to the effectiveness of the Plan that the Sanction Order shall have become a Final Order, within the meaning under the Plan (the "Plan Final Order Condition").  It is also a condition to effectiveness of the Canadian Plan that each of the Sanction Order and the Canadian Escrow Release Order shall have become Final Orders, within the meaning under the Canadian Plan (the "Canadian Plan Final Order Conditions").  Finally, it is a condition to the SPSA that (i) the Sanction Order shall have become

a Final Order, with the meaning under the SPSA (the "SPSA Final Order Condition"); and (ii) the Plans Effective Date shall have occurred by no later than August 31, 2017.

10.    As a result of the LTD Leave Application and the possibility of further LTD Appeals, each of the Sanction Order and the Canadian Escrow Release Order is not, as at the date hereof, a Final Order within the meaning of the Plan or the Canadian Plan.  Accordingly, the Waiver Parties have entered into the Waiver Agreement, pursuant to which, among other things, (i) the Waiver Parties agree to waive the SPSA Final Order Condition solely as it relates to the Sanction Order not yet being a Final Order (within the meaning under the SPSA), subject to the approval of both the Court and the Canadian Court;[6] (ii) the Plan Debtors waive, subject to the approval of this Court, the Plan Final Order Condition solely as it relates to the Sanction Order not yet being a Final Order (within the meaning of the Plan) as a result of any LTD Appeal (the "Plan Waiver"); and (iii) subject to the approval of the Canadian Court, the Monitor waives the Canadian Plan Final Order Conditions solely as it relates to the Sanction Order and Canadian Escrow Release Order not yet being Final Orders (within the meaning of the Canadian Plan) as a result of any LTD Appeal.  The Waiver Agreement does not impact the payments and distributions to be made to any of the SPSA Parties pursuant to Section 2 of the SPSA or modify any other rights of the SPSA Parties under the SPSA.

11.    The Waiver Agreement also provides for the establishment of a reserve by the Canadian Debtors in the amount of CA$44 million (the "Appeal Reserve"), which is the maximum additional amount that may be paid to the Canadian Debtors' former LTD beneficiaries on account of their claims beyond *pro rata* distributions on account of such claims that are Proven Claims under the Canadian Plan.  Under the Waiver Agreement, the Appeal

---

[6]    The Debtors may waive a condition to effectiveness of the SPSA, subject to the prior consent of the Committee and the Bondholder Group acting reasonably and in good faith, pursuant to Section 9(a) of the SPSA.

Reserve will be funded solely from payments to the Canadian Debtors pursuant to the SPSA, provided that the Waiver Agreement preserves all rights of the Waiver Parties to oppose the LTD Appeal and challenge the entitlement of the LTD Beneficiaries to any payment beyond *pro rata* distributions on account of their Proven Claims under the Canadian Plan.

## RELIEF REQUESTED

12.    By this Motion, the Debtors seek, pursuant to sections 105(a) and 1142 of the Bankruptcy Code, entry of an order (i) authorizing and approving the Debtors' entry into the Waiver Agreement; and (ii) granting them such other and further relief as the Court deems just and proper.

## BASIS FOR RELIEF

13.    The relief sought by this Motion is authorized by sections 105(a) and 1142 of the Bankruptcy Code.  Section 105(a) provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Section 1142 of the Bankruptcy Code provides that an entity responsible for carrying out a chapter 11 plan "shall carry out the plan and shall comply with any orders of the court." 11 U.S.C. § 1142(a).

14.    Although the Plan Debtors are authorized by Section 12.4 of the Plan to waive Section 12.3(i) of the Plan "without notice, leave, hearing or order" of the Court, the Debtors nevertheless seek the Court's authorization and approval to enter into the Waiver Agreement in light of the Canadian Debtors' efforts to seek corresponding approval from the Canadian Court. Approval of the Debtors' entry into the Waiver Agreement is consistent with the broad equitable authority of the bankruptcy courts, in furtherance of section 1142 of the Bankruptcy Code.  See, e.g., United States v. Energy Res. Co., 495 U.S. 545, 549 (1990); In re Kaiser Aluminum Corp.,

456 F.3d 328, 340 (3d Cir. 2006) ("[B]ankruptcy courts have broad authority to act in a manner that will prevent injustice or unfairness in the administration of bankruptcy estates.").

15.      The Waiver Agreement furthers the implementation of the Plan for the benefit of all of the Debtors' creditors and stakeholders, and is supported by both the Committee and the Bondholder Group.  In the absence of the Waiver Agreement, the conditions precedent to the effectiveness of the Plan would not be satisfied until final resolution of the LTD Appeal, the timing of which is uncertain, especially in the event the Canadian LTD Objectors seek leave to appeal to the Supreme Court of Canada.  The Debtors' entry into the Waiver Agreement therefore allows the Debtors to continue to progress the Plan toward effectiveness and their cases towards resolution, in the interests of all their stakeholders.  Prior to agreeing to the terms of the Waiver Agreement, the Debtors consulted at length with their creditor constituencies, including the Committee, the Bondholder Group, and the Trade Claims Consortium.

16.      Moreover, all rights and defenses of the Debtors and other Waiver Parties with respect to the LTD Appeal are preserved under the Waiver Agreement, and the Canadian Debtors and Monitor may not settle with or pay any amount to the LTD Beneficiaries without the consent of the Debtors, the Committee and the Bondholder Group, among others.  These were important rights and protections for the Debtors to secure because the Debtors believe that the LTD Objectors' arguments on appeal lack merit, as evidenced by the denial of leave to appeal by the Ontario Court of Appeal on March 13, 2017, and any settlement with the LTD Beneficiaries relating to the LTD Appeal would decrease the recoveries of both NNI and the Bondholder Group on their substantial claims against the Canadian Debtors, which would consequently decrease recoveries of the Debtors' unsecured creditors.  These provisions were especially important to include in the Waiver Agreement because (i) the Debtors have not been provided

with any information that would support the assertion of the LTD Beneficiaries' CA$44 million claim even if their legal theory were valid (which it is not) and (ii) the LTD Objectors seek to improve recoveries not only for themselves, but also for the other LTD Beneficiaries, all of whom voted in favor of the Canadian Plan.

17.     Given the circumstances, including the nature of the LTD Appeal, the Debtors believe that it is in the best interests of the Debtors' estates and stakeholders to waive the Plan Condition to ensure that the Plans Effective Date occurs in advance of the August 31, 2017 deadline, and to allow distributions to be made promptly to the Debtors' creditors and bring these cases to a conclusion.

## NOTICE

18.     Notice of the Motion has been given via electronic transmission, first class mail, hand delivery or overnight mail to (i) counsel to the Committee; (ii) counsel to the Bondholder Group; (iii) counsel to the Trade Claims Consortium; (iv) counsel to the Monitor; (v) counsel to the Canadian Debtors; (vi) counsel to the Joint Administrators; (vii) the U.S. Trustee; and (viii) the general service list established in these chapter 11 cases.  Accordingly, the Debtors submit that under the circumstances no other or further notice is necessary.

## NO PRIOR REQUEST

19.     No prior request for the relief sought herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached as Exhibit A hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  April 27, 2017
        Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


   */s/ Tamara K. Minott*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*