**<u>EXHIBIT A</u>**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------X
                                                      :
                                                      :        Chapter 11
                                                      :
In re                                                 :
                                                      :        Case No. 09-10138 (KG)
Nortel Networks Inc., et al.,¹                        :
                                                      :        Jointly Administered
                          Debtors.                    :
                                                      :
                                                      :        RE: D.I. _____
                                                      :
------------------------------------------------------X
```

**ORDER AUTHORIZING AND APPROVING THE DEBTORS'
ENTRY INTO WAIVER AND RESERVE AGREEMENT**

Upon the motion dated April 27, 2017 (the "<u>Motion</u>"),[2] of Nortel Networks Inc. ("<u>NNI</u>"),

and certain of its affiliates, as debtors and debtors in possession in the above-captioned cases

(collectively, the "<u>Debtors</u>"), for entry of an order, as more fully described in the Motion,

pursuant to sections 105(a) and 1142 of the Bankruptcy Code, (i) authorizing and approving the

Debtors' entry into the Waiver Agreement, attached hereto as <u>Exhibit 1</u>, and (ii) granting them

such other and further relief as the Court deems just and proper; and this Court having

determined that adequate notice of the Motion has been given as set forth in the Motion; and that

no other or further notice is necessary; and this Court having jurisdiction to consider the Motion

and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended

---

[1]      The debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567),  Nortel Networks (CALA) Inc. (4226) and Nortel Networks India International Inc. (8667). Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

[2]      Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

Standing Order of Reference from the District Court dated February 29, 2012; and this Court having determined that consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having determined that the Debtors have demonstrated sound business justifications for entering into the Waiver Agreement and the legal and factual bases set forth in the Motion and presented on the record establish just cause for the relief requested in the Motion; and upon the record in these proceedings; and after due deliberation;

IT IS HEREBY ORDERED THAT:

1.      The Motion is **GRANTED** as set forth herein.

2.      The Debtors are authorized to enter into the Waiver Agreement and to take any and all actions that may be reasonably necessary or appropriate to perform their obligations arising under the Waiver Agreement, and to enforce their rights arising under the Waiver Agreement, in each case on the terms and conditions contained therein.

3.      The Waiver Agreement and this Order shall be binding upon the Debtors and all parties-in-interest in these chapter 11 cases, and any of their respective successors and assigns.

4.      The Debtors, the Debtors' claim agent, Epiq Bankruptcy Solutions, LLC, and the Clerk of this Court are authorized to take all necessary and appropriate actions to give effect to the Waiver Agreement.

5.      The failure specifically to describe or include any particular provision of the Waiver Agreement in this Order shall not diminish or impair the effectiveness of such a provision, it being the intent of this Court that the Waiver Agreement be approved in its entirety.

6.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.  To the extent any provisions of this Order shall be inconsistent with the Motion or Waiver Agreement, the terms of this Order shall control.


Dated: _____, 2017
          Wilmington, Delaware          _____
                                        THE HONORABLE KEVIN GROSS
                                        UNITED STATES BANKRUPTCY JUDGE

## **Exhibit 1**

**Waiver and Reserve Agreement**

## WAIVER AND RESERVE AGREEMENT

This **WAIVER AND RESERVE AGREEMENT** is dated as of the ___26th___ day of April, 2017, by and among (i) Nortel Networks Limited and the other Canadian Debtors; (ii) Nortel Networks Inc. and the other U.S. Debtors; (iii) Nortel Networks U.K. Limited (in administration) and the other EMEA Debtors; (iv) Nortel Networks S.A. (in administration and *liquidation judiciaire*); and (v) Ernst & Young Inc. in its capacity as Monitor of the Canadian Debtors.

A.   **WHEREAS** the Canadian Debtors, the U.S. Debtors, the EMEA Debtors and certain other parties are party to that certain Settlement and Plans Support Agreement dated as of October 12, 2016 (the "**Settlement and Support Agreement**");

B.   **AND WHEREAS** pursuant to Section 9(a)(ix) of the Settlement and Support Agreement it is a condition to the effectiveness of the Settlement and Support Agreement that the Sanction Order shall have been issued by the CCAA Court by no later than February 17, 2017 and entered and thereafter shall have become a Final Order (the "**SPSA Sanction Order Condition**");

C.   **AND WHEREAS** pursuant to Section 9.2(b) and (c) of the Canadian Plan (being, for the avoidance of doubt, the Plan of Compromise and Arrangement pursuant to the *Companies' Creditors Arrangement Act* concerning, affecting and involving the Canadian Debtors dated November 30, 2016) it is a condition to the effectiveness of the Canadian Plan that each of the Sanction Order and the Canadian Escrow Release Order shall have been issued and entered and shall have become Final Orders (the "**Canadian Plan Final Order Conditions**");

D.   **AND WHEREAS** pursuant to Section 12.3(i) of the U.S. Plans it is a condition to the effectiveness of the U.S. Plans that the Sanction Order shall have been issued and entered and shall have become a Final Order (the "**U.S. Plans Final Order Condition**");

E.   **AND WHEREAS** the Sanction Order and the Canadian Escrow Release Order were issued by the CCAA Court and entered on January 24, 2017;

F.   **AND WHEREAS** on February 14, 2017, Joseph Greg McAvoy and Jennifer Holley (the "**LTD Objectors**") sought leave to appeal the Sanction Order and the Canadian Escrow Release Order to the Ontario Court of Appeal (the "**LTD Leave Application**" and together with any leave to appeal, appeal or other review to the Supreme Court of Canada by the LTD Objectors in respect of the Sanction Order and/or the Canadian Escrow Release Order, an "**LTD Appeal**"), which leave motion was dismissed by the Ontario Court of Appeal on March 13, 2017 (the "**OCA Decision**");

- 2 -

G.     **AND WHEREAS** the LTD Objectors have until May 12, 2017, to seek leave to appeal to the Supreme Court of Canada;

H.     **AND WHEREAS** as a result of the LTD Leave Application and the possibility of further LTD Appeals each of the Sanction Order and the Canadian Escrow Release Order is not, as at the date hereof, a Final Order within the meaning of the Settlement and Support Agreement and the Canadian Plan;

I.     **AND WHEREAS** through the LTD Appeal the LTD Objectors seek payment of CA$44 million from the Canadian Estate "…for full payment of the Nortel LTD income and medical and dental claims…" (collectively, the "**LTD Obligations**") they allege to be owing to the Canadian Debtors' former LTD beneficiaries (the "**LTD Beneficiaries**");

J.     **AND WHEREAS** it is a condition to the Settlement and Support Agreement that the Plans Effective Date shall have occurred by no later than August 31, 2017;

K.     **AND WHEREAS** notwithstanding the Sanction Order and Canadian Escrow Release Order not yet being Final Orders, the undersigned are desirous of each of the Canadian Plan and the Settlement and Support Agreement becoming effective so that they can be implemented in accordance with their respective terms and distributions made to creditors;

L.     **AND WHEREAS** the Canadian Debtors, the U.S. Debtors, EMEA Debtors and NNSA are desirous of waiving (and have received the requisite creditor consents to do so under the Settlement and Support Agreement), upon and subject to the terms set out herein, the SPSA Sanction Order Condition solely as it relates to the Sanction Order not yet being a Final Order as a result of any LTD Appeal;

M.     **AND WHEREAS**, subject to the approval of the CCAA Court, the Monitor is desirous of waiving, upon and subject to the terms set out herein, the Canadian Plan Final Order Conditions solely as they relate to the Sanction Order and Canadian Escrow Release Order not yet being Final Orders (within the meaning of the Canadian Plan) as a result of any LTD Appeal;

N.     **AND WHEREAS**, subject to the approval of the Bankruptcy Court, the U.S. Debtors are desirous of waiving (and have received the requisite consent to do so under the U.S. Plans), upon and subject to the terms set out herein, the U.S. Plans Final Order Condition solely as it relates to the Sanction Order not yet being a Final Order (within the meaning of the U.S. Plans) as a result of any LTD Appeal.

- 3 -

**NOW THEREFORE**, the undersigned Parties, intending to be legally bound, hereby agree and acknowledge as follows:

1.    **Definitions**. Capitalized terms used herein and not otherwise defined shall have the meaning given to them in the Settlement and Support Agreement or, if not defined therein, the Canadian Plan.

2.    **Agreement re: Appeal Reserve and Reservation of Rights**.

    (a)    Subject to: (i) the LTD Objectors consenting to the issuance of an Order of the CCAA Court substantially in the form attached as Appendix "A" hereto (the "**Waiver and Reserve Approval Order**"); and (ii) the Waiver and Reserve Approval Order being issued by the CCAA Court and entered, the undersigned agree to the establishment of a reserve by the Canadian Estate in the amount of CA$44 million (the "**Appeal Reserve**") in respect of the maximum additional amount that may be paid to the LTD Beneficiaries on account of the LTD Obligations beyond *pro rata* distributions on account of the LTD Obligations that are Proven Affected Unsecured Claims under the Canadian Plan.

    (b)    The Appeal Reserve shall be funded from the payments to be made to the Canadian Estate pursuant to the Settlement and Support Agreement, and shall be held by the Canadian Estate as part of the Administrative Reserve.  The sole purpose of the Appeal Reserve shall be to pay any additional payments determined by the Canadian Court to be due to the LTD Beneficiaries beyond *pro rata* distributions on account of the LTD Obligations that are Proven Affected Unsecured Claims under the Canadian Plan. In the event: (i) leave to appeal the order of the Ontario Court of Appeal arising from the endorsement of the Ontario Court of Appeal dated March 13, 2017 (Docket: M47511) (the "**OCA Order**") to the Supreme Court of Canada ("**SCC**") is not sought on or before May 12, 2017 (or such later date as may be permitted by the SCC); (ii) any such leave to appeal application is dismissed by the SCC; or (iii) any appeal of the OCA Order heard by the SCC is dismissed and the Sanction Order is upheld, the Appeal Reserve shall be immediately terminated and all amounts held in respect thereof shall become Available Cash of the Canadian Estate.

    (c)    The Canadian Estate and the Monitor agree not to settle with the LTD Objectors or pay any amount to the LTD Objectors (excluding, for the avoidance of doubt, *pro rata* distributions to the LTD Objectors as holders of Proven Affected Unsecured Claims under the Canadian Plan) without the prior consent of the U.S. Debtors, the UCC, the Bondholder Group, the EMEA Debtors, the UKPI and the CCC.

- 4 -

(d)     The undersigned reserve all rights to continue to oppose any LTD Appeal and to otherwise challenge any entitlement of the LTD Beneficiaries to any payment or distribution from the Canadian Estate beyond *pro rata* distributions on account of the LTD Obligations that are Proven Affected Unsecured Claims under the Canadian Plan, including, without limitation, the calculation of the amount alleged to be owing for payment in full of the LTD Obligations.

3.      **Waiver of SPSA Sanction Order Condition**.

(a)     Subject to: (i) the LTD Objectors consenting to the issuance of the Waiver and Reserve Approval Order by the CCAA Court; and (ii) the Waiver and Reserve Approval Order being issued by the CCAA Court and entered and not being stayed or subject to leave to appeal, appeal or other review, the Canadian Debtors, U.S. Debtors, EMEA Debtors and NNSA hereby waive the SPSA Sanction Order Condition solely as it relates to the Sanction Order not yet being a Final Order (within the meaning of the Settlement and Support Agreement) as a result of any LTD Appeal (the "**SPSA Waiver**").

(b)     The Canadian Debtors represent and warrant to the other undersigned Parties that they have obtained the prior consent of the CCC to the SPSA Waiver and this Waiver and Reserve Agreement.

(c)     The U.S. Debtors represent and warrant to the other undersigned Parties that they have obtained the prior consent of the UCC and the Bondholder Group to the SPSA Waiver and this Waiver and Reserve Agreement.

(d)     NNUK represents and warrants to the other undersigned Parties it has obtained the prior consent of the U.K. Pension Trustee and the PPF to the SPSA Waiver and this Waiver and Reserve Agreement.

4.      **Waiver of Canadian Plan Final Order Conditions by Monitor**.

(a)     Subject to: (i) the LTD Objectors consenting to the issuance of the Waiver and Reserve Approval Order by the CCAA Court; and (ii) the Waiver and Reserve Approval Order being issued by the CCAA Court and entered and not being stayed or subject to leave to appeal, appeal or other review, the Monitor hereby waives the Canadian Plan Final Order Conditions solely as they relate to the Sanction Order and the Canadian Escrow Release Order not yet being Final Orders (within the meaning of the Canadian Plan) as a result of any LTD Appeal.

- 5 -

5.  **Waiver of U.S. Plans Final Order Condition by U.S. Debtors**.

   (a)    Subject to: (i) the LTD Objectors consenting to the issuance of the Waiver and Reserve Approval Order by the CCAA Court; and (ii) the granting of an order of the Bankruptcy Court approving this waiver, which order shall not be the subject of a stay, the U.S. Debtors hereby waive the U.S. Plans Final Order Condition solely as it relates to the Sanction Order not yet being a Final Order (within the meaning of the U.S. Plans) as a result of any LTD Appeal.

6.  **Miscellaneous.**

   (a)    Except for the express waivers contained in Sections 3(a), 4(a) and 5(a) hereof, this Waiver and Reserve Agreement shall not constitute a waiver, amendment, supplement or other modification of any condition or other term or provision of the Settlement and Support Agreement, the Canadian Plan or the U.S. Plans and shall not be construed as a waiver, amendment, supplement, other modification or consent to anything that would require an amendment, supplement, waiver or consent under the Settlement and Support Agreement, the Canadian Plan or the U.S. Plans. Except as expressly waived hereby, the provisions of the Settlement and Support Agreement, the Canadian Plan and the U.S. Plans are and shall remain in full force and effect.

   (b)    For the avoidance of doubt, nothing in this Waiver and Reserve Agreement impacts the payments and distributions to be made to the Canadian Debtors, the U.S. Debtors, the EMEA Debtors and NNSA pursuant to Section 2 of the Settlement and Support Agreement.

   (c)    This Waiver and Reserve Agreement may be executed in counterparts, each of which shall be an original, and such counterparts shall be construed together as one instrument. The signature of any of the undersigned Parties may be evidenced by a facsimile, scanned email or internet transmission copy of this Waiver and Reserve Agreement.

   (d)    As relates to the Settlement and Support Agreement, this Waiver and Reserve Agreement shall be interpreted, construed and enforced in accordance with the laws of the State of New York without giving effect to the choice of law provisions thereof that would result in the application of the law of another jurisdiction. The provisions of Sections 15(d) and 15(e) of the Settlement and Support Agreement shall apply *mutatis mutandis* to any claim, action or

- 6 -

proceeding arising under or in connection with this Waiver and Reserve Agreement to the extent related to the Settlement and Support Agreement.

(e)    As relates to the Canadian Plan, this Waiver and Reserve Agreement shall be interpreted, construed and enforced in accordance with the laws of the Province of Ontario and the federal laws of Canada applicable therein without giving effect to the choice of law provisions thereof that would result in the application of the law of another jurisdiction. The provisions of Section 1.4 of the Canadian Plan shall apply *mutatis mutandis* to any claim, action or proceeding arising under or in connection with this Waiver and Reserve Agreement to the extent related to the Canadian Plan.

(f)    As relates to the U.S. Plans, this Waiver and Reserve Agreement shall be interpreted, construed and enforced in accordance with the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.  The provisions of Section 15.12 of the U.S. Plans shall apply *mutatis mutandis* to any claim, action or proceeding arising under or in connection with this Waiver and Reserve Agreement to the extent related to the U.S. Plans.

[*remainder of page left intentionally blank*]

**IN WITNESS WHEREOF** the undersigned Parties have executed this Waiver and Reserve Agreement as of the date first written above.

## CANADIAN DEBTORS

**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION, NORTEL NETWORKS TECHNOLOGY CORPORATION, NORTEL COMMUNICATIONS INC., ARCHITEL SYSTEMS CORPORATION AND NORTHERN TELECOM CANADA LIMITED.**

By: _____

Name: Tanecia Wong Ken

Title: Authorized Representative

## U.S. DEBTORS

**NORTEL NETWORKS INC., NORTEL NETWORKS CAPITAL CORPORATION, NORTEL ALTSYSTEMS INC., NORTEL ALTSYSTEMS INTERNATIONAL INC., XROS, INC., SONOMA SYSTEMS, QTERA CORPORATION, CORETEK, INC., NORTEL NETWORKS APPLICATIONS MANAGEMENT SOLUTIONS INC., NORTEL NETWORKS OPTICAL COMPONENTS INC., NORTEL NETWORKS HPOCS INC., ARCHITEL SYSTEMS (U.S.) CORPORATION, NORTEL NETWORKS INTERNATIONAL INC., NORTHERN TELECOM INTERNATIONAL INC., NORTEL NETWORKS CABLE SOLUTIONS INC., NORTEL NETWORKS (CALA) INC. AND NORTEL NETWORKS INDIA INTERNATIONAL INC.**

By: _____

Name: John J. Ray III

Title: U.S. Principal Officer

**IN WITNESS WHEREOF** the undersigned Parties have executed this Waiver and Reserve Agreement as of the date first written above.


## CANADIAN DEBTORS

**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION, NORTEL NETWORKS TECHNOLOGY CORPORATION, NORTEL COMMUNICATIONS INC., ARCHITEL SYSTEMS CORPORATION AND NORTHERN TELECOM CANADA LIMITED.**

By:_____
Name:  Tanecia Wong Ken
Title:   Authorized Representative


## U.S. DEBTORS

**NORTEL NETWORKS INC., NORTEL NETWORKS CAPITAL CORPORATION, NORTEL ALTSYSTEMS INC., NORTEL ALTSYSTEMS INTERNATIONAL INC., XROS, INC., SONOMA SYSTEMS, QTERA CORPORATION, CORETEK, INC., NORTEL NETWORKS APPLICATIONS MANAGEMENT SOLUTIONS INC., NORTEL NETWORKS OPTICAL COMPONENTS INC., NORTEL NETWORKS HPOCS INC., ARCHITEL SYSTEMS (U.S.) CORPORATION, NORTEL NETWORKS INTERNATIONAL INC., NORTHERN TELECOM INTERNATIONAL INC., NORTEL NETWORKS CABLE SOLUTIONS INC., NORTEL NETWORKS (CALA) INC. AND NORTEL NETWORKS INDIA INTERNATIONAL INC.**

By:_____
Name:  John J. Ray III
Title:  U.S. Principal Officer

**EMEA DEBTORS**

**NORTEL NETWORKS UK LIMITED (IN ADMINISTRATION)**

_____

acting by
:_____*Alan Robert Bloom*_____

as joint administrator (acting as agent and without personal liability)

**NORTEL NETWORKS (IRELAND) LIMITED (IN ADMINISTRATION)**

_____

acting by
:_____

as joint administrator (acting as agent and without personal liability)

**NORTEL NETWORKS NV (IN ADMINISTRATION)**

_____

acting by
:_____*Alan Robert Bloom*_____

as joint administrator (acting as agent and without personal liability)

**NORTEL NETWORKS SPA (IN ADMINISTRATION)**

_____

acting by
:_____*Alan Robert Bloom*_____

as joint administrator (acting as agent and without personal liability)

**NORTEL NETWORKS B.V. (IN ADMINISTRATION)**

_____

acting by
:_____*Alan Robert Bloom*_____

as joint administrator (acting as agent and without personal liability)

**NORTEL NETWORKS POLSKA SP Z.O.O. (IN ADMINISTRATION)**

_____

acting by
:_____*Alan Robert Bloom*_____

as joint administrator (acting as agent and without personal liability)

**EMEA DEBTORS**

**NORTEL NETWORKS UK LIMITED (IN ADMINISTRATION)**

_____

acting by
:_____

as joint administrator (acting as agent and without personal liability)

**NORTEL NETWORKS NV (IN ADMINISTRATION)**

_____

acting by
:_____

as joint administrator (acting as agent and without personal liability)

**NORTEL NETWORKS B.V. (IN ADMINISTRATION)**

_____

acting by
:_____

as joint administrator (acting as agent and without personal liability)

**NORTEL NETWORKS (IRELAND) LIMITED (IN ADMINISTRATION)**

_____

acting by DAVID HUGHES
:_____

as joint administrator (acting as agent and without personal liability)

**NORTEL NETWORKS SPA (IN ADMINISTRATION)**

_____

acting by
:_____

as joint administrator (acting as agent and without personal liability)

**NORTEL NETWORKS POLSKA SP Z.O.O. (IN ADMINISTRATION)**

_____

acting by
:_____

as joint administrator (acting as agent and without personal liability)

**NORTEL NETWORKS HISPANIA SA (IN ADMINISTRATION)**

acting by
: _Alan Robert Bloom_

as joint administrator (acting as agent and without personal liability)

**NORTEL NETWORKS (AUSTRIA) GMBH (IN ADMINISTRATION)**

acting by
: _Alan Robert Bloom_

as joint administrator (acting as agent and without personal liability)

**NORTEL NETWORKS S.R.O. (IN ADMINISTRATION)**

acting by
: _Alan Robert Bloom_

as joint administrator (acting as agent and without personal liability)

**NORTEL NETWORKS ENGINEERING SERVICE KFT (IN ADMINISTRATION)**

acting by
: _Alan Robert Bloom_

as joint administrator (acting as agent and without personal liability)

**NORTEL NETWORKS PORTUGAL SA (IN ADMINISTRATION)**

acting by
: _Alan Robert Bloom_

as joint administrator (acting as agent and without personal liability)

**NORTEL NETWORKS SLOVENSKO S.R.O. (IN ADMINISTRATION)**

acting by
: _Alan Robert Bloom_

as joint administrator (acting as agent and without personal liability)

**NETWORKS ROMANIA SRL (IN ADMINISTRATION)**

acting by
: _Alan Robert Bloom_

as joint administrator (acting as agent and without personal liability)

**NORTEL GMBH (IN ADMINISTRATION)**

acting by
: _Alan Robert Bloom_

as joint administrator (acting as agent and without personal liability)

**NORTEL NETWORKS OY (IN ADMINISTRATION)**

acting by
:    *Alan Robert Bloom*

as joint administrator (acting as agent and without personal liability)

**NORTEL NETWORKS INTERNATIONAL FINANCE & HOLDING B.V. (IN ADMINISTRATION)**

acting by
:    *Alan Robert Bloom*

as joint administrator (acting as agent and without personal liability)

**NORTEL NETWORKS AB (IN ADMINISTRATION)**

acting by
:    *Alan Robert Bloom*

as joint administrator (acting as agent and without personal liability)

**NORTEL NETWORKS FRANCE S.A.S. (IN ADMINISTRATION)**

acting by
:    *Alan Robert Bloom*

as joint administrator (acting as agent and without personal liability)

**NORTEL NETWORKS S.A.**
**(IN ADMINISTRATION AND IN**
*LIQUIDATION JUDICIAIRE***)**

acting by:   Alan Robert Bloom

as joint administrator (acting as agent and
without personal liability)

acting by: Stephen Jonathan Taylor

as NNSA Conflicts Administrator (acting as
agent and without personal liability)

acting by: Maître Cosme Rogeau as French
Liquidator (acting as agent and without personal
liability)

**NORTEL NETWORKS S.A.**
**(IN ADMINISTRATION AND IN**
*LIQUIDATION JUDICIAIRE*)

_____

acting by:_____

as joint administrator (acting as agent and
without personal liability)

_____

acting by: Stephen Jonathan Taylor

as NNSA Conflicts Administrator (acting as
agent and without personal liability)

_____

acting by: Maître Cosme Rogeau as French
Liquidator (acting as agent and without personal
liability)

**NORTEL NETWORKS S.A.**
**(IN ADMINISTRATION AND IN**
*LIQUIDATION JUDICIAIRE***)**

_____

acting by:_____

as joint administrator (acting as agent and
without personal liability)

_____

acting by: Stephen Jonathan Taylor

as NNSA Conflicts Administrator (acting as
agent and without personal liability)

_____

acting by: Maître Cosme Rogeau as French
Liquidator (acting as agent and without personal
liability)



**ERNST & YOUNG INC. IN ITS CAPACITY AS MONITOR OF THE CANADIAN DEBTORS AND NOT IN ITS PERSONAL CAPACITY**

Per: _____

Name: Murray McDonald

Title:  President

**APPENDIX "A"**

**FORM OF WAIVER AND RESERVE APPROVAL ORDER**

**[ATTACHED]**

Court File No. 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE MR. JUSTICE | ) | MONDAY, THE 1ST DAY OF |
| | ) | |
| NEWBOULD | ) | MAY, 2017 |
| | ) | |

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION, NORTEL NETWORKS
TECHNOLOGY CORPORATION, NORTEL COMMUNICATIONS INC.,
ARCHITEL SYSTEMS CORPORATION AND NORTHERN TELECOM CANADA
LIMITED**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**ORDER**
**(Waiver and Reserve Approval Order)**

**THIS MOTION** made by Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation, Nortel Networks International Corporation, Nortel Communications Inc., Architel Systems Corporation and Northern Telecom Canada Limited (collectively, the "**Canadian Debtors**") jointly with Ernst & Young Inc. in its capacity as monitor of the Canadian Debtors (the "**Monitor**") for the relief set out in the Notice of Motion dated April 26, 2017, was heard this day at 330 University Avenue, Toronto, Ontario.

**ON READING** the One Hundred and Thirty Eighth Report of the Monitor dated April 26, 2017 (the "**Report**") and the Notice of Intention to Appear and Submission for Anticipated January 24, 2017 Fairness Hearing to Sanction the Nortel CCAA Plan from Greg

- 2 -

McAvoy and Jennifer Holley (the "**LTD Objectors**"), and on hearing submissions of counsel for the Monitor, counsel for the CCC, counsel for the U.S. Debtors, counsel for the UCC, counsel for the Bondholder Group, counsel for the EMEA Debtors, counsel for the UKPI and counsel for those other parties present and Greg McAvoy and Jennifer Holley (collectively, the "**LTD Objectors**") appearing on their own behalf, no one appearing for any other person on the service list although duly served as appears from the affidavit of ● sworn ●, filed.

       **AND UPON BEING ADVISED** the LTD Objectors consent to this Order.

**SERVICE AND DEFINITIONS**

1.     **THIS COURT ORDERS** that the time for the service of the Notice of Motion and the Motion Record is hereby abridged and validated so that this motion is properly returnable today and hereby dispenses with further service thereof.

2.     **THIS COURT ORDERS** that capitalized terms used herein and not otherwise defined shall have the meaning given to them in the Waiver and Reserve Agreement or the Plan (each as defined below).

**APPROVAL OF WAIVER AND RESERVE AGREEMENT RE: FINAL ORDER CONDITION**

3.     **THIS COURT ORDERS** that the Waiver and Reserve Agreement dated April 26, 2017 (the "**Waiver and Reserve Agreement**"), a copy of which is attached as Schedule "A" hereto, be and is hereby approved.

4.     **THIS COURT ORDERS** that, without limiting the generality of the foregoing paragraph 3, pursuant to Section 9.6 of the Plan of Compromise and Arrangement pursuant to the *Companies' Creditors Arrangement Act* concerning, affecting and involving the Canadian Debtors dated November 30, 2016 and approved by this Court in its Sanction Order dated January 24, 2017 (the "**Plan**"), the waiver by the Monitor contained in Section 4(a) of the Waiver and Reserve Agreement be and is hereby approved and the Monitor be and is hereby authorized to take such steps as

- 3 -

may be necessary to effect and implement the Plan, the Settlement and Support Agreement and the Waiver and Reserve Agreement.

**APPEAL RESERVE AND CAP**

5.      **THIS COURT ORDERS** that the Canadian Estate be and is hereby authorized and directed to establish a reserve in the amount of CA$44 million (the "**Appeal Reserve**" and the "**Appeal Reserve Amount**", respectively) in respect of the maximum additional amount that may be determined by the Canadian Court to be due on account of the LTD Obligations beyond *pro rata* distributions on account of the LTD Obligations that are Proven Affected Unsecured Claims under the Plan.

6.      **THIS COURT ORDERS** that the Appeal Reserve shall be funded from the payments to be made to the Canadian Estate pursuant to the Settlement and Support Agreement, and shall be held by the Canadian Estate as part of the Administrative Reserve.  The sole purpose of the Appeal Reserve shall be to fund any additional payments determined by the Canadian Court to be due to the LTD Beneficiaries beyond *pro rata* distributions on account of the LTD Obligations that are Proven Affected Unsecured Claims under the Plan. In the event: (i) leave to appeal the order of the Ontario Court of Appeal arising from the endorsement of the Ontario Court of Appeal dated March 13, 2017 (Docket: M47511) (the "**OCA Order**") to the Supreme Court of Canada ("**SCC**") is not sought on or before May 12, 2017 (or such later date as may be permitted by the SCC); (ii) any such leave to appeal application is dismissed by the SCC; or (iii) any appeal of the OCA Order heard by the SCC is dismissed and the Sanction Order is upheld, the Appeal Reserve shall be immediately terminated and all amounts held in respect thereof shall become Available Cash of the Canadian Estate.

7.      **THIS COURT ORDERS** that the establishment of the Appeal Reserve shall not constitute a trust in favour of the LTD Beneficiaries or any other Person and all amounts held in respect of the Appeal Reserve shall remain the exclusive property of the Canadian Estate.

- 4 -

8.    **THIS COURT ORDERS** that the maximum additional entitlement that may be established on account of the LTD Obligations against the Canadian Estate beyond *pro rata* distributions on account of the LTD Obligations that are Proven Affected Unsecured Claims under the Plan be and is hereby capped at the Appeal Reserve Amount. None of the LTD Objectors, any other LTD Beneficiary or any other Person shall be permitted to establish (or seek to establish) any additional entitlement, Claim, Post-Filing Claim, or other obligation or liability of the Canadian Estate (whether pursuant to the Plan or otherwise) on account of the LTD Obligations in excess of the Appeal Reserve Amount and any such entitlement, Claim, Post-Filing Claim or other obligation or liability of the Canadian Estate in excess of the Appeal Reserve Amount be and is hereby forever barred, released, extinguished and discharged.

9.    **THIS COURT ORDERS** that the releases provided for in Section 7.1 of the Plan shall be applicable to any entitlement, Claim or Post-Filing Claim of the LTD Beneficiaries on account of the LTD Obligations in excess of the Appeal Reserve Amount.

10.    **THIS COURT ORDERS** that the rights of all parties in interest in the CCAA Proceedings (including, without limitation, the Canadian Estate, the Monitor, the U.S. Debtors and the EMEA Debtors) to continue to oppose any LTD Appeal and to otherwise challenge any entitlement of the LTD Beneficiaries to any payment or distribution from the Canadian Estate beyond *pro rata* distributions on account of the LTD Obligations that are Proven Affected Unsecured Claims under the Plan be and are hereby reserved. Without limiting the generality of the foregoing, the rights of all parties in interest in the CCAA Proceedings to challenge the calculation of the amount alleged to be owing for payment in full of the LTD Obligations be and are hereby reserved.

- 5 -

**MISCELLANEOUS**

11.    **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the Canadian Debtors (including the Canadian Estate), the Monitor and their respective agents in carrying out the terms of this Order.  All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Canadian Debtors (including the Canadian Estate) and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Canadian Debtors  (including the Canadian Estate) and the Monitor and their respective agents in carrying out the terms of this Order.

12.    **THIS COURT ORDERS** that each of the Canadian Debtors  (including the Canadian Estate) and the Monitor be at liberty and are hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

_____

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED
AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION et al.

Court File No.  09-CL-7950

|  | |
|---|---|
|  | *ONTARIO*<br>**SUPERIOR COURT OF JUSTICE**<br>**(COMMERCIAL LIST)**<br>**Proceeding commenced at Toronto** |
|  | **ORDER**<br>**(Waiver and Reserve Approval Order)** |
|  | **GOODMANS LLP**<br>Barristers & Solicitors<br>Bay Adelaide Centre<br>333 Bay Street, Suite 3400<br>Toronto, ON  M5H 2S7<br>**Jay A. Carfagnini**  LSUC#: 22293T<br>**Joseph Pasquariello**  LSUC#: 38390C<br>**Christopher G. Armstrong**  LSUC#: 55148B<br>Tel: 416.979.2211<br>Fax: 416.979.1234<br>Lawyers for the Monitor, Ernst & Young Inc. |

6662409