## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- X
                      :

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| | : | |
| Nortel Networks Inc., *et al.*,[1] | : | Case No. 09-10138 (KG) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| | : | **RE: D.I. 18009, 18056, 18117, 18127** |

-------------------------------------------------------- X

## RESPONSE OF THE DEBTORS TO EMERGENCY MOTION OF WILLIAM A. OWENS FOR CONTINUANCE ON THE HEARING OF DEBTORS' FORTY-SEVENTH OMNIBUS OBJECTION TO CERTAIN CLAIMS [D.I. 18127]

The Debtors respectfully submit this response (the "Response") to the Emergency Motion of William A. Owens for a Continuance on the Hearing of Debtors' Forty-Seventh Omnibus Objection (Substantive) to Certain Claims [D.I. 16638] (the "Emergency Motion") and in further support of the Debtors' Reply in Further Support of Debtors' Forty-Seventh Omnibus Objection (Substantive) to Certain Claims [D.I. 18117] (the "Reply").[2]

In support thereof, the Debtors respectfully respond as follows:

1.      The Debtors' respect and understand the Court's decision to continue the scheduled hearing on this matter in light of the Emergency Motion, filed near the close of business the afternoon before the scheduled hearing. Because of the late hour of the filing, the

---

[1]      The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567), Nortel Networks (CALA) Inc. (4226) and Nortel Networks India International Inc. (8667). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

[2]      Capitalized terms not defined herein are defined in the Reply.

Debtors were not given reasonable time by Mr. Owens's counsel to file a response and to address the allegations made by counsel.  The Debtors therefore file this response to address certain factual misstatements made in the Emergency Motion and to seek certain relief, including reimbursement for reasonable travel expenses of the Debtors' witness.  Moreover, since the Court adjourned the hearing, Mr. Owens's counsel has not made any effort to communicate with the Debtors and rather just yesterday emailed formal discovery requests to the Debtors' counsel and asked the Debtors to consent to responding to those requests on an expedited basis.  The Debtors are disappointed by this strategic use of the adjournment and seek protection from such overbroad and procedurally improper requests.

I.    **The Emergency Motion Miscasts the Events Leading up to the Original Hearing Date**

    A.    **The Debtors Were Not Late or Deficient In Providing Documents to Mr. Owens**

    2.    While Mr. Owens sought delay of the scheduled hearing on the purported basis that his counsel had just received allegedly new information and would need a full opportunity to evaluate such information, the facts are otherwise.  As an initial matter, neither the Debtors nor Mr. Owens had served formal discovery requests with respect to the litigation of Mr. Owens's claim prior to the hearing scheduled for April 25, 2017.[3]  As such, any suggestion that the Debtors were "late," Emergency Motion ¶ 16, or deficient in their production of documents is without basis as Mr. Owens had not propounded any discovery related to the dispute.  In fact, prior to the afternoon of Friday, April 21st, the only specific document requested by Mr. Owens was a copy of Mr. Owens's own employment agreement, and this request was made on

---

[3]    On the afternoon of April 27, 2017, counsel to Mr. Owens sent counsel to the Debtors certain requests for production and requests for admission (the "April 27 Requests").  As detailed herein, the Debtors assert that the April 27 Requests are wholly inappropriate given their timing and scope and given Mr. Owens's prior opportunity to serve formal discovery.  The Debtors therefore  request that the Court enter an order granting the Debtors relief from the April 27 Requests and prohibiting Mr. Owens from making any future discovery requests.

Thursday, April 20, 17 days after the April 3 filing date of Mr. Owens' response [D.I. 18056] to

the Debtors' Objection and only three business days before the scheduled hearing.[4] (A copy of

that email is attached hereto as <u>Exhibit B</u> and is incorporated herein by reference).  While the

Debtors and Mr. Owens had agreed to exchange exhibits upon which each party would rely at

the hearing in advance of the hearing, no other requests for documents, formal or informal, were

communicated to the Debtors until April 21,[5] after the Debtors had followed up on an informal

request they had made for certain Canadian tax documents and personnel information for Mr.

Owens which they had not been able to identify or were not available in their records. (Copies of

those emails are attached hereto as <u>Exhibit C</u> and incorporated herein by reference).  As such,

Mr. Owens's position that the Emergency Motion "is borne as a result of documents obtained

between April 20, and April 23, 2017," is entirely of Mr. Owens's own doing as that is when his

informal (and arguably untimely) requests for certain documents were first made.  Emergency

Motion ¶ 1.  Upon receiving Mr. Owens's Friday afternoon request, the Debtors searched for the

documents over the weekend and provided them to Mr. Owens as they were located. (Copies of

emails from the Debtors' counsel to Mr. Owens's counsel providing documents are attached as

<u>Exhibit D</u> and incorporated by reference herein). As such, the Debtors' production of documents

on the Sunday and Monday prior to the hearing was reasonable and indeed extraordinarily

expeditious given the timing of the request.

       3.       In addition, prior to the filing of the Emergency Motion, the Debtors provided to

Mr. Owens's counsel all records they were able to locate in their possession responsive to Mr.

---

[4]      In fact, the Debtors did not locate the Employment Agreement in their own books and records and rather found it in the Canadian Debtors' historic SEC filings, which are in the public domain and equally accessible to Mr. Owens.

[5]      This initial request is referred to in the Emergency Motion in paragraph 7: "Counsel for Mr. Owens requested that Debtors provide all records of payment to Mr. Owens."  However, the date of that request is conspicuously omitted.

Owens's request.  Statements in the motion that "Debtors have not completed a review of their records," Emergency Motion ¶ 3, are simply not true.  At the time, Debtors had completed a review of their readily available records for the documents that Mr. Owens had requested.  The Debtors have not undertaken a review of their records for the new and additional documents requested by Mr. Owens in the requests emailed yesterday, nor do they think such a review is appropriate.  Given the fact that the Debtors no longer have employees and additional discovery is extremely unlikely to uncover additional relevant documents, the Debtors object to these and any other additional request for discovery by Mr. Owens, as set forth below.  In serving these requests, Mr. Owens is attempting to prolong this dispute and use document requests as a fishing expedition to create issues of fact in what otherwise is a relatively straightforward dispute.

4.     In the same vein, the assertion that Mr. Owens's counsel required additional time to "evaluate the documents relevant to this matter," Emergency Motion ¶ 14, strains credulity because all of the documents provided to Mr. Owens's counsel in the lead up to the hearing contained information that was either (i) contained in documents already in Mr. Owens's counsel's possession,[6] (ii) publicly available and/or (iii) not in dispute and therefore of no consequence to the timing of the hearing.  In addition, the documents at issue comprise no more than 25 pages collectively and surely could have been reviewed in the time prior to the hearing, for instance during the time used to draft an Emergency Motion.

5.     *First*, the documents provided did not include new information.  Mr. Owens does not seem to contest that the NNI records of Mr. Owens's W-2s provided to his counsel on April

---

[6]     The only possible documents containing new evidence are those the Debtors received from the Canadian Debtors evidencing additional details regarding the timing of payments to Mr. Owens by Canadian entities.  These documents do not however present new information but merely confirm points already made in the Debtors Reply and that were reflected in Mr. Owens's own Canadian tax forms and reflect facts not in dispute.  See, e.g., Response at ¶ 9 ("As Mr. Owens would have been well aware, having received thirty one payments in Canadian Dollars totaling the equivalent of $3,676,103 U.S. Dollars, those payments were paid by the Canadian Nortel affiliates."); Response, Cilia Decl., at Attach. 3 (Canadian Payment Records).

24, 2017 are duplicative of W-2's he had already obtained from Deloitte, but maintains that such documents containing duplicative information nevertheless leave Mr. Owens's counsel with certain "concerns." Emergency Motion ¶ 16. Mr. Owens also complains that a screen shot document produced on Sunday, April 23 is incomplete, but acknowledges that any information purportedly missing from that document, is known "from the W2 statements obtained from Deloitte." Emergency Motion ¶ 9. Further, Mr. Owens alleges that "records located and produced by the Debtors yesterday [April 23, 2017] afternoon," show that NNI treated Mr. Owens's Special Pension Arrangement payments as wages for purposes of the U.S. Medicare tax. While the Debtors take no position on the appropriate U.S. or Canadian tax treatment of Mr. Owens's payments from the Canadian Nortel entities, especially given the fact that such arguments were raised  for the first time by Mr. Owens in the Emergency Motion,[7] it is nevertheless incorrect for Mr. Owens to imply that the delay of the hearing is premised on the provision of documents on April, 23 when the very same referenced information is included in the 2005 W-2 forms that Mr. Owens provided to the Debtors on Friday, April 21, 2017, and apparently didn't think were relevant enough to obtain from his own accountants until the Debtors informally asked if he had such documents. (Copies of emails from Mr. Owens's counsel providing the Debtors with Mr. Owens's W-2 forms are attached hereto as Exhibit D and incorporated by reference herein).

6. *Second*, with respect to Mr. Owens's Employment Agreement, his counsel acknowledges that "at counsel for Mr. Owens' request, Debtors produced Mr. Owens' Employment Agreement *from an SEC filing*." Emergency Motion ¶ 6 (emphasis added). Should

---

[7] In any event, arguments about Medicare tax withholding are a red herring to the issue of which Nortel entity is properly responsible for unpaid Special Pension Arrangement amounts, where the Employment Agreement, the historic payment information and a Nortel memorandum consistently demonstrate that the Canadian Debtors obligated themselves to make such payments and did in fact make such payments.

Mr. Owen's have desired a copy of this *publicly available* document at any time earlier, he certainly could have obtained it.

7.      *Third*, and relatedly, the facts purportedly "revealed" in the publicly available employment agreement are not in dispute and therefore did not warrant either a delay or the right to propound new discovery, *even if* apparently they were a surprise to Mr. Owens's counsel. That Mr. Owens was paid by NNI and that he served as the CEO of NNC and NNL, Emergency Motion ¶ 6, are both facts contained in the Debtors' Reply.  Reply ¶¶ 6, 8, 10.  The Debtors' previous reference to Mr. Owens as a "Canadian employee," Reply ¶ 6, is based on his position as President and CEO of the Canadian parents, NNL and NNC.  To the extent that Mr. Owens was not aware, having worked as Nortel's President and CEO for a year, that he was an NNI employee, and his allegation that such fact only  "c[a]me to light" when the Debtors provided the Employment Agreement, Emergency Motion ¶ 3, speaks volumes about who Mr. Owens really worked for as Nortel's CEO.

8.      *Finally*, where, as has previously been established, the documents provided to Mr. Owens's counsel contained largely known information and such documents comprised less than 25 pages – including 5 pages of publicly available SEC filings and 12 pages of NNI's W-2 forms that mirrored Mr. Owens's own W-2 forms – it's not reasonable to believe that counsel could not have "evaluated[d]" the documents prior to the hearing.  Emergency Motion ¶14.  The Debtors are sympathetic to the Court's adjournment of the original hearing date based on the late-hour Emergency Motion and the manner in which the facts were cast therein, but now are concerned that Mr. Owens is using that adjournment to obtain a second bite at the apple at raising new arguments and obfuscate the true nature of the dispute between the parties.

**B.      Contrary to Mr. Owens's Argument, The Basis For The Debtors' Objection Remains Unchanged**

9.      The statement in the Emergency Motion that "[i]t appears that the Debtors are now pivoting their defense" is simply untrue, and frankly confounding to the Debtors. Emergency Motion, at ¶11.  Among the "undisputable facts" listed in the Emergency Motion is that "NNI made payments under the Termination Letter, *with the possible exception of the Special Pension Arrangement . . . .*" ¶ 11(3).  The Emergency Motion acknowledges that "Mr. Owens's claim [is] for his Special Pension Payment," ¶ 15, and, therefore, the Debtors would have expected it to be obvious that this "possible" exception is, and always has been, the basis of the Debtors' objection to Mr. Owens's claim.  The Debtors' books and records objection was based on the Debtors' review of the records the Debtors had previously identified related to the Special Pension Payment and their correspondence with the Canadian Monitor regarding the claim (which also is asserted against the Canadian Debtors).  All relevant documents indicate the Canadian Debtors were the appropriate Nortel entity against which the Owens Claim should be allowed. The Debtors are not pivoting in any direction on their argument.

**II.      As a Result of Mr. Owens's Eleventh Hour Emergency Motion and the Debtors' Prior Preparation for the Hearing, the Debtors Request Certain Relief**

10.      The Debtors seek certain relief based on the costs and expenses incurred by the Debtors and to ensure that the adjournment does not create unnecessary additional burden on the Debtors.

11.      *First*, the Debtors request reimbursement from Mr. Owens for the travel costs and accommodations for the Debtors' witness, Ms. Mary Cilia, who had travelled to Wilmington, Delaware from Houston, Texas on Monday, April 24th in anticipation of a Tuesday morning hearing.  Mr. Owens' counsel was aware that Ms. Cilia had traveled to the East Coast for the hearing prior to filing the Emergency Motion.  For the reasons enumerated above, to the extent

Mr. Owens or his counsel concluded at the last minute that they could not adequately prepare for the hearing, that was no fault of the Debtors.  Mr. Owens only first made informal requests for certain documents on the Friday afternoon before the hearing, and he would have had to know both that such requests were arguably untimely and that to the extent the Debtors' chose to comply with them, the only window in which those documents could be provided would be the three days leading up to the hearing.  If Mr. Owens had planned to cancel or seek adjournment of the hearing, Mr. Owens should have relayed that intention to the Debtors by Friday at the latest, so that these issues could have been considered on a non-emergency basis and, to the extent the Court would have been inclined to adjourn the hearing once aware of the total facts and circumstances, the Debtors could have ensured that their witness did not travel across the country for a hearing that was not going to occur.  Given these facts, the Debtors respectfully request entry of an order providing for the reimbursement of Ms. Cilia's reasonably incurred travel and accommodation costs by Mr. Owens.

12.     *Second*, the Debtors request that the Court enter an order limiting discovery to the informal request made prior to the date of the previously scheduled hearing, April 25, 2017 and denying the April 27 Requests.  Though the Court's email of April 24, indicated its intention that "[t]he adjournment will provide the parties with the opportunity to discuss the claim and the objection to it," Mr. Owens's counsel made no attempt to communicate with the Debtors and rather sent the Debtors unduly broad and *post hoc* discovery requests.  Email from the Hon. J. Gross to counsel, April 24, 2017.  The Debtors have already expended time and resources searching their records for documents related to Mr. Owens and the Owens Claim and have taken appropriate steps to ensure that relevant documents related to the Owens Claim within the Debtors' existing records have been exchanged with counsel to Mr. Owens.  The information

8

sought via the April 27 Requests is either duplicative and unnecessary, relating to largely undisputed points, or so broad that responses to the requests are unlikely to yield additional information that reasonably would help resolve the dispute.  In addition, the inappropriateness of the requests given the timing cannot be overstated.  The originally scheduled date for the hearing is now three days past.  It is inconceivable that Mr. Owens should now think formal discovery is required when in the ample time leading up the hearing, no such requests were made.  The last minute Emergency Motion should not act as a backdoor means of permitting Mr. Owens to burden the Debtors with additional formal or informal discovery while delaying the resolution of his claim.  Such additional discovery will only expend unnecessary estate resources and the Debtors therefore seek relief from the Court from any additional discovery.

13.    *Third*, the Debtors ask that the Court prohibit Mr. Owens from testifying as a witness on his own behalf at the hearing.  In preparation for the hearing and to ensure adequate time for hearing, on Monday April 24, 2017, counsel for the Debtors asked counsel for Mr. Owens whether Mr. Owens would act as a witness at the hearing and received no reply. (A copy of that email is attached hereto as Exhibit F and incorporated by reference herein).  Absent any response indicating otherwise, the Emergency Motion less than 18 hours before the scheduled hearing suggests that Mr. Owens did not intend to appear at the hearing since such a last minute adjournment would otherwise be a substantial inconvenience to Mr. Owens.  Though the Emergency Motion has extended Mr. Owens's counsel's opportunity to prepare for the hearing, it should not enable him to change his argument at the hearing.  The Debtors therefore request that the Court not permit Mr. Owens to appear as a witness at the rescheduled hearing.  If the Court is inclined to allow Mr. Owens to testify, the Debtors respectfully request that Mr. Owens be required to immediately notify the Debtors of his intention to testify and that he not be

allowed to testify without providing the Debtors an opportunity to depose him in advance of any such testimony.

## RESERVATION OF RIGHTS

14.    The Debtors reserve their right to amend and/or supplement this Response, including to the extent the relief set forth in the proposed order were not granted or any party in interest were to seek alternative relief from the Court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court (i) grant the relief proposed in the Debtors' proposed order attached hereto as **Exhibit A** and (ii) grant such other and further relief as the Court deems just and proper.

Dated:  April 28, 2017
        Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

– and –

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

   */s/ Tamara K. Minott*
Derek C. Abbott (No. 3376)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*