IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
:
: Chapter 11
:
*In re* :
: Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1] :
: (Jointly Administered)
Debtors. :
: Hearing date: May 31, 2017 10:00 AM (ET)
: Objections due: May 19, 2017 4:00 PM (ET)
---------------------------------------------------------X

**DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019
FOR ENTRY OF AN ORDER APPROVING SETTLEMENTS
WITH (I) EXPORT DEVELOPMENT CANADA (CLAIM NO. 3948)
AND (II) ACE AMERICAN INSURANCE COMPANY (CLAIM NO. 7056)**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a) and 502 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing the Debtors to enter into and approving settlements with (a) Export Development Canada ("EDC"), in the form attached hereto as **Exhibit B** (the "EDC Stipulation"), deeming EDC's proof of claim no. 3948 filed against NNI as allowed up to a certain agreed-upon amount, as discussed below and (b)

---

[1] In addition to Nortel Networks Inc. ("NNI"), the Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567), Nortel Networks (CALA) Inc. (4226) and Nortel Networks India International, Inc. (8667). Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

Westchester Fire Insurance Company ("Westchester Fire"), ACE American Insurance Company and other members of the ACE Group of Companies (including Westchester Fire), (collectively, "ACE") in the form attached hereto as **Exhibit C** (the "ACE Stipulation," and together with the EDC Stipulation, the "Stipulations"), deeming ACE's proof of claim no. 7056 filed against NNI as allowed up to a certain agreed-upon amount, as discussed below, where the Debtors have agreed to the terms of the Stipulations as related settlements and accordingly seek approval of both together; and (ii) granting such other and further relief as the Court (the "Court" or the "Bankruptcy Court") deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 502 of the Bankruptcy Code and Bankruptcy Rule 9019.

## Background

3. On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc. and Nortel Networks India International Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural

---

[2] Nortel Networks (CALA) Inc.filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, Chapter 11 Voluntary Pet., In re Nortel Networks (CALA) Inc., (Bankr. D. Del. filed July 14, 2009) [D.I. 1], which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes. Order Directing Joint Administration, July 17, 2009 [D.I. 1098]. NNIII filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 26, 2016, Chapter 11 Voluntary Pet., In re Nortel Networks India International, Inc., (Bankr. D. Del. filed July 26, 2016) [D.I. 1], which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes. Order Directing Joint Administration, August 16, 2016 [D.I. 17090].

purposes only. The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142].

5. On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada), seeking relief from their creditors and a monitor (the "Monitor"), Ernst & Young Inc., was appointed by the Canadian Court.

6. Since the Petition Date, Nortel has sold its business units and other assets to various purchasers, generating proceeds of over $7.3 billion that have been placed in escrow accounts pending allocation among the various selling entities. The only task remaining for these Debtors is the distribution of their assets to their creditors. For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

7. On December 1, 2016, the Debtors filed the amended *First Amended Joint Chapter 11 Plan of Nortel Networks Inc. and Certain of its Affiliated Debtors* [D.I. 17501] (the "Plan") on behalf of all Debtors (other than Networks India International Inc. ("NNIII")) with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The

---

[3] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

Plan was subsequently amended and an amended version of the Plan dated January 23, 2017 was filed with the Bankruptcy Court. [D.I. 17763]. On January 24, 2017, the Court confirmed the Plan for all Debtors except NNIII [D.I. 17795].

### Facts Relevant to this Motion

8.      From time to time, various Nortel affiliates arranged for the posting by financial institutions and surety companies of bonds and letters of credit to secure those affiliates' obligations with certain of their suppliers and customers. On December 14, 2007, EDC and NNL entered into that certain Master Facility Agreement (as has been amended and restated from time to time, the "EDC Facility Agreement"), pursuant to which EDC issued certain guarantees to certain financial institutions in respect of letters of credit or letters of guarantee issued by such financial institutions and reinsured certain surety bonds issued by certain surety companies. Also on December 14, 2007, EDC and NNL entered into that certain Indemnity Agreement (as has been amended and restated from time to time, the "EDC Indemnity Agreement").

9.      EDC asserts that pursuant to the EDC Facility Agreement and the EDC Indemnity Agreement, NNL is obliged to indemnify EDC against certain claims and demands made against it. EDC further asserts that pursuant to a Guarantee Agreement dated as of July 4, 2006 among NNI, NNL and EDC (the "EDC Guarantee"), NNI agreed to unconditionally guarantee (the "EDC Guarantee Obligations"), as primary obligor and not merely as surety, certain of NNL's obligations under the EDC Facility Agreement, the EDC Indemnity Agreement or applicable law.

10.     By proof of claim dated September 25, 2009 (Reference # 1485) filed against NNL in the CCAA Proceedings, EDC has asserted unsecured claims against NNL in relation to support outstanding prior to the Petition Date in the following amounts: (i) £150,000; (ii)

4

€14,098,468.46; (iii) $84,198,009.08; and (iv) CAD$300,000 (as supplemented and updated by a letter from EDC to the Monitor dated July 10, 2012, the "EDC Primary Claim").

11.     EDC also filed a proof of claim dated September 28, 2009 (claim No. 3948), against NNI in the asserted amount of $98,957,440.74 based on the EDC Guarantee (the "EDC Guarantee Claim").

12.     On February 1, 2010, ACE, filed several proofs of claim (collectively, the "ACE Claims") as contingent, unliquidated claims against a number of the Debtors, including Claim No. 7056 (the "Remaining ACE Claim," and together with the EDC Guarantee Claim, the "Settled Claims") against NNI, which relates to certain surety bonds issued prior to the Petition Date by Westchester Fire (the "Prepetition Surety Bond Program").

13.     Subsequently, ACE withdrew all of the ACE Claims other than the Remaining ACE Claim. ACE informed the Debtors that while it received full payment from EDC on the Remaining ACE Claim, it is unwilling to withdraw the Remaining ACE Claim without consent from EDC due to the fact that the EDC Guarantee Claim includes a claim relating to the Prepetition Surety Bond Program which is the subject of one of the claims in the Remaining ACE Claim.

14.     On August 27, 2013, EDC and NNL entered into that certain Agreement Re: Deposit and Release, pursuant to which NNL delivered to EDC a notice of disallowance (the "EDC Notice of Disallowance") which allowed the EDC Primary Claim as a general unsecured claim against NNL in the amount of: (i) $20,072,381.05, plus (ii) £100,000 ((i) and (ii), collectively, the "EDC Primary Claim Initial Allowed Amount").

15.     By letter dated January 4, 2017, from EDC's counsel to the Monitor, EDC provided updated information concerning payments received by it that reduced the Primary

Claim Initial Allowed Amount to (i) $19,016,586.05, plus (ii) £100,000 ((i) and (ii), collectively, the "EDC Primary Claim Amount").

16. EDC has agreed to the resolution of the EDC Guarantee Claim on the terms set forth in the EDC Stipulation, including the allowance of the EDC Guarantee Claim in the amount of $19,162,246.05 against NNI, in full satisfaction of the EDC Guarantee Claim (the "Allowed EDC Guarantee Claim"). EDC has further agreed to provide a release to the Debtors as set forth in the EDC Stipulation and to make potential reductions in the amount of the Allowed EDC Guarantee Claim under the limited circumstances set forth in the EDC Stipulation.

17. ACE is prepared to agree to the resolution of the Remaining ACE Claim on certain terms, including the allowance of the Remaining ACE Claim in the amount of $26,000.00 for indemnification of certain of ACE's legal fees incurred in connection with the Remaining ACE Claim, against NNI, in full satisfaction of the Remaining ACE Claim. ACE has further agreed that it will not amend or re-file any of the ACE Claims (including the Remaining ACE Claim) if so allowed.

18. The Debtors believe that the simultaneous resolution of the Settled Claims through the Stipulations is an exercise of their reasonable business judgment and appropriate and in the best interest of both their estates and their creditors, as it will avoid potentially substantial and burdensome costs and risks associated with litigating the Settled Claims, add certainty to the potential size of claims asserted against the estates, preserve value of the Debtors' estates for the benefit of all of their stakeholders and meaningfully advance the Debtors' claims reconciliation and resolution process. Additionally, due to the interconnected nature of the Settled Claims, the Debtors believe that the burdensome costs and risks associated with litigating the Settled Claims would be greater if either one of the Settled Claims was resolved independently of the other.

**Relief Requested**

19. By this Motion, the Debtors seek an order, pursuant to sections 105(a) and 502 of the Bankruptcy Code and Bankruptcy Rule 9019, (i) authorizing the Debtors' entry into and approving the Stipulations, and (ii) granting them such other and further relief as the Court deems just and proper.

**Basis for Relief**

20. The Debtors seek authorization to enter into the Stipulation under sections 105(a), 547, and 550 of the Bankruptcy Code and Bankruptcy Rule 9019. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019.

21. Citing this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy." Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy"). Additionally, the Third Circuit has recognized that "'(i)n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.'" In re Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)). Courts in this District also have recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. See, e.g., In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

22.     Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate." In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)).  Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." TMT Trailer Ferry, 390 U.S. at 424-25.  The court need not be convinced that the settlement is the best possible compromise in order to approve it.  In re Coram Healthcare Corp., 315 B.R. at 330. Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing Matter of Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at 330.

23.     The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal (the "Martin Factors"):  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

24.     The Debtors respectfully submit that the Martin Factors weigh in favor of approving the Stipulations.  The Debtors believe that the EDC Stipulation represents a fair resolution of the EDC Guarantee Claim and that the Debtors would be unlikely to obtain materially better results through litigation.  While the Debtors are prepared to litigate their

liability to ACE for indemnification of any of ACE's legal fees and believe they would prevail in such litigation, litigation carries with it inherent uncertainties and costs that, taken together with the efficiencies of resolving the Remaining ACE Claim and the EDC Guarantee Claim together, do not justify the burden, time and costs of continuing litigation.  Such litigation would be disruptive of the estates' efforts to bring finality to these cases and which, given the total amount in dispute, would likely not yield a materially better result for the Debtors' creditors even if successful.  Accordingly, the Debtors request that the Debtors' entry into the Stipulations be authorized under Bankruptcy Rule 9019.  Together, the Stipulations provide the Debtors with necessary certainty with respect to the Settled Claims.  Such a resolution will bring valuable and significant reductions in cost, time and uncertainty on account of the Settled Claims and represents the valid, fair and reasonable business judgment of the Debtors.

25. Finally, the interests of the creditors militate in favor of approval of both Stipulations together.  The Debtors believe that the interests of their creditors are served by the prompt and efficient resolution of the Settled Claims and the avoidance of legal expenses that would be incurred if the Settled Claims were to be litigated or if other causes of action related to or arising from the Settled Claims were asserted.  Moreover, the Debtors believe that such expenses would be exacerbated should either of the Settled Claims be resolved independently of the other.

26. In light of the foregoing, the Debtors respectfully seek authorization to enter into the Stipulations and approval of the Stipulations.

## Notice

27. Notice of the Motion has been given via first class mail to (i) EDC; (ii) ACE (iii) the U.S. Trustee; (iv) counsel to the Committee; (v) counsel to the Bondholder Group; and (vi)

the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

28. No prior request for the relief sought herein has been made to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached as **Exhibit A** hereto; and (iii) grant such other and further relief as it deems just and proper.

| | |
|---|---|
| Dated:  May 5, 2017<br>Wilmington, Delaware | CLEARY GOTTLIEB STEEN & HAMILTON LLP<br><br>James L. Bromley (admitted pro hac vice)<br>Lisa M. Schweitzer (admitted pro hac vice)<br>One Liberty Plaza<br>New York, New York 10006<br>Telephone:  (212) 225-2000<br>Facsimile:  (212) 225-3999<br><br>- and -<br><br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>  */s/ Tamara K. Minott*  <br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Tamara K. Minott (No. 5643)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, Delaware 19801<br>Telephone:  (302) 658-9200<br>Facsimile:  (302) 658-3989<br><br>*Counsel for the Debtors*<br>*and Debtors in Possession* |