**EXHIBIT B**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
:
*In re*                                                  :   Chapter 11
                                                         :
Nortel Networks Inc., *et al.*,[1]                       :   Case No. 09-10138 (KG)
                                                         :
                                    Debtors.             :   Jointly Administered
                                                         :
---------------------------------------------------------X

**STIPULATION RESOLVING CLAIM NO. 3948 BY AND
BETWEEN THE DEBTORS AND EXPORT DEVELOPMENT CANADA**

This stipulation (the "Stipulation") is entered into by and between NNI and the above-captioned debtors and debtors in possession (collectively, the "Debtors") and Export Development Canada ("EDC", and together with the Debtors, the "Parties"). The Parties hereby stipulate and agree as follows:

WHEREAS, on January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc. and Nortel Networks India International Inc.,[2] filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the

---

[1] In addition to Nortel Networks Inc. ("NNI"), the Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567), Nortel Networks (CALA) Inc. (4226) and Nortel Networks India International, Inc. (8667). Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

[2] Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, Chapter 11 Voluntary Pet., In re Nortel Networks (CALA) Inc., (Bankr. D. Del. filed July 14, 2009) [D.I. 1], which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes. Order Directing Joint Administration, July 17, 2009 [D.I. 1098]. NNIII filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 26, 2016, Chapter 11 Voluntary Pet., In re Nortel Networks India International, Inc., (Bankr. D. Del. filed July 26, 2016) [D.I. 1], which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes. Order Directing Joint Administration, August 16, 2016 [D.I. 17090].

United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") (Case No. 09-10138 (KG) (Jointly Administered)); and

WHEREAS, the Bankruptcy Court established the general bar date of September 30, 2009 (other than for claims against Nortel Networks (CALA) Inc. and Nortel Networks India International Inc.) for filing proofs of claim in these cases; and

WHEREAS, on February 18, 2016 the Court entered an Order Approving Debtors' Motion for an Order Establishing Procedures to Further the Resolution of Claims (the "Omnibus Settlement Procedures Order") which requires the Debtors to seek Bankruptcy Court approval pursuant to Bankruptcy Rule 9019 for any claim proposed to be allowed in an amount equal to or greater than $4,000,000. [D.I. 16551]; and

WHEREAS, Nortel Networks Limited ("NNL") and certain of its affiliates (collectively, the "Canadian Debtors") commenced proceedings (the "CCAA Proceedings") under the Companies' Creditors Arrangement Act (Canada) on January 14, 2009 (the "NNL Filing Date"), before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") and a monitor (the "Monitor"), Ernst & Young Inc., was appointed by the Canadian Court.; and

WHEREAS, EDC asserts that on December 14, 2007, EDC and NNL entered into that certain Master Facility Agreement (as has been amended and restated from time to time, the "Facility Agreement"), pursuant to which EDC issued certain guarantees to certain financial institutions in respect of letters of credit or letters of guarantee issued by such financial institutions and reinsured certain surety bonds issued by certain surety companies; and

WHEREAS, EDC asserts that also on December 14, 2007, EDC and NNL entered into that certain Indemnity Agreement (as has been amended and restated from time to time, the "Indemnity Agreement"); and

WHEREAS, EDC asserts that pursuant to the Facility Agreement and Indemnity Agreement, NNL is obliged to indemnify EDC against certain claims and demands made against it; and

WHEREAS, EDC asserts that pursuant to a Guarantee Agreement dated as of July 4, 2006 among NNI, NNL and EDC (the "EDC Guarantee"), NNI agreed to unconditionally guarantee (the "EDC Guarantee Obligations"), as primary obligor and not merely as surety, certain of NNL's obligations under the Facility Agreement, the Indemnity Agreement or applicable law; and

WHEREAS, EDC filed a proof of claim dated September 25, 2009 (Reference # 1485) against NNL in the CCAA Proceedings in an unliquidated amount, as amended and replaced by a proof of claim dated September 29, 2009, pursuant to which EDC asserted the following unsecured claims against NNL in relation to support outstanding prior to the NNL Filing Date: (i) £150,000; (ii) €14,098,468.46; (iii) $84,198,009.08; and (iv) CAD$300,000 (as supplemented and updated by a letter from EDC to the Monitor dated July 10, 2012, the "EDC Primary Claim"); and

WHEREAS, on or about September 28, 2009, EDC timely filed proof of claim No. 3948 against NNI in the asserted amount of $98,957,440.74 (the "EDC Guarantee Claim"); and

WHEREAS, on August 27, 2013, EDC and NNL entered into that certain Agreement Re: Deposit and Release, pursuant to which NNL delivered to EDC a notice of disallowance (the "Notice of Disallowance"), which allowed the EDC Primary Claim as a general unsecured claim against NNL in the amount of: (i) twenty-million, seventy-two thousand, three-hundred and eighty-one U.S. dollars and five cents ($20,072,381.05), plus (ii) one-hundred thousand pound sterling (£100,000) ((i) and (ii), collectively, the "Primary Claim Initial Allowed Amount"); and

3

WHEREAS, by letter dated January 4, 2017 from EDC's counsel to the Monitor, EDC provided updated information concerning payments received by it that reduced the Primary Claim Initial Allowed Amount to (i) nineteen-million, sixteen-thousand, five-hundred and eighty-six U.S. dollars and five cents ($19,016,586.05), plus (ii) one-hundred thousand pound sterling (£100,000) ((i) and (ii), collectively, the "Primary Claim Amount"); and

WHEREAS, in order to resolve any disputes or objections concerning the EDC Guarantee Claim, the Parties have agreed, subject to the terms and conditions hereof, that the EDC Guarantee Claim should be allowed as a general unsecured claim against NNI in the amount of nineteen-million, one-hundred and sixty-two thousand, two-hundred and forty-six U.S. dollars and five cents ($19,162,246.05).

NOW, THEREFORE, the Parties agree and stipulate as follows:

1.  Resolution of the EDC Guarantee Claim. Upon the Effective Date (defined below), this Stipulation shall be effective and binding, by its terms, upon the Parties, and their respective successors and assigns, including, without limitation, any trustee or receiver that may hereafter be appointed in the Debtors' Chapter 11 cases. Upon the entry by the Bankruptcy Court of an order approving this Stipulation, and the settlement reflected herein pursuant to Bankruptcy Rule 9019 becoming a Final Order (defined below) (hereinafter, the "Effective Date"), the EDC Guarantee Claim (Claim No. 3948) shall be allowed as a general unsecured claim against NNI in the amount of nineteen-million, one-hundred and sixty-two thousand, two-hundred and forty-six U.S. dollars and five cents ($19,162,246.05) (as the same may be modified or adjusted further pursuant to the terms of this Stipulation, the "Allowed EDC Guarantee Claim"), in full satisfaction of any and all claims that have been or could have been asserted in the EDC Guarantee Claim or otherwise against the Debtors, including, without limitation, in

respect of the Facility Agreement, the Indemnity Agreement, the EDC Guarantee, the EDC Guarantee Obligations, or the EDC Primary Claim, and such Allowed Claim shall be classified as a Class A-3B Claim under the First Amended Joint Chapter 11 Plan of Nortel Networks Inc. and Certain of Its Affiliated Debtors [D.I. 17501] (as amended or supplemented, the "Plan")[3]. Notwithstanding anything herein to the contrary, and for the avoidance of doubt, this Stipulation shall not affect the allowance or treatment of Claim No. 1274 in the amount of $123,140.09, which is classified as a Class A-3A Claim under the Plan. Except as otherwise set forth herein, EDC shall not have any claims against the Debtors.

2. Release of Debtors.

(a) Effective upon the Effective Date, EDC releases and forever discharges the Debtors and their respective current and former subsidiaries, directors, officers, employees, agents, and attorneys, and each of their personal representatives, predecessors, successors and assigns (collectively, the "Debtor Releasees"), from any and all claims, rights, defenses, demands, liabilities, obligations, damages, actions, suits, causes of action, setoffs, recoupments, costs and expenses (including, without limitation, attorneys' fees), whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that EDC now has, had, may have had, or hereafter may have against any of the Debtor Releasees including but not limited to claims arising from or related to the the Facility Agreement, the Indemnity Agreement, the EDC Guarantee, the EDC Guarantee Obligations, the EDC Primary Claim and the EDC Guarantee Claim, *provided that*, EDC does not waive, release or discharge the Debtor Releasees from any of their obligations under the Stipulation.

---

[3] Capitalized terms used herein but not defined shall have the same meaning as in the Plan.

5

(b)  **WITH RESPECT TO THE RELEASES PROVIDED HEREIN, EDC FURTHER ACKNOWLEDGES AND EXPRESSLY WAIVES THE BENEFIT OF ANY STATUTORY PROVISION OR COMMON LAW RULE THAT PROVIDES THAT A RELEASE DOES NOT EXTEND TO CLAIMS WHICH A PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN ITS FAVOR AT THE TIME OF EXECUTION, INCLUDING, WITHOUT LIMITATION, THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542.**

3.  <u>No Further Claims</u>.  Upon the Effective Date, EDC shall be forever barred from (i) amending the EDC Guarantee Claim or (ii) filing or otherwise asserting any further claim arising from or relating to the EDC Guarantee Claim, or the facts underlying the EDC Guarantee Claim or the EDC Primary Claim, against any of the Debtors in the Debtors' chapter 11 cases. Notwithstanding the foregoing or anything to the contrary in this Stipulation, in the event EDC has actual notice that (a) it is likely to receive a payment related to the facts and circumstances underlying the EDC Primary Claim from and after the date hereof, other than EDC's receipt of distributions made pursuant to this Stipulation, under the Plan, or in the Canadian Proceeding (a "<u>Potential Payment</u>"), or (b) the amount of the EDC Primary Claim is likely to be reduced for any reason (a "<u>Primary Claim Reduction</u>"), EDC shall as soon as reasonably practicable provide written notice (a "<u>Potential Reduction Notice</u>") to the Debtors of such Potential Payment or Primary Claim Reduction, as applicable, setting forth a reasonable description of such Potential Payment or Primary Claim Reduction and the amount thereof.  In the event EDC actually receives payment of a Potential Payment or a Primary Claim Reduction becomes legally binding and effective (in each case, a "<u>Reduction Event</u>," and the amount thereof, the "<u>Reduction Amount</u>"), EDC shall provide written notice to the Debtors within 10 business days of such

Reduction Event and the Allowed EDC Guarantee Claim shall be reduced by the Reduction Amount without the need for further Bankruptcy Court approval (a "Guarantee Claim Reduction"). To the extent EDC has received distributions with respect to the Allowed EDC Guarantee Claim, at the time of any such Guarantee Claim Reduction, in excess of those to which it would have been entitled had the Allowed EDC Guarantee Claim been allowed net of the Reduction Amount prior to such distribution (any such excess, an "Excess Distribution"), EDC shall promptly, but in no event later than 10 business days from the date of the Guarantee Claim Reduction, return such Excess Distribution to the Debtors. Additionally, if a Reduction Event occurs following the payment in full of EDC's Allowed EDC Guarantee Claim, any Reduction Amounts in excess of the Allowed EDC Guarantee Claim, net of any fees, costs, expenses or other amounts spent by EDC in order to obtain such Reduction Amount, shall be turned-over to the Debtors promptly, but in no event later than 10 business days from the date on which EDC receives such Reduction Amount.

4.   Entire Claim. EDC represents that, with respect to the Allowed EDC Guarantee Claim, EDC owns the entirety of the claims (as "claim" is defined in section 101(5) of the Bankruptcy Code) asserted in such Allowed EDC Guarantee Claim.

5.   No Waiver. Nothing herein shall be deemed to constitute a waiver of (and the Debtors expressly reserve) any subrogation rights the Debtors may have with respect to the Canadian Debtors as contemplated by the Plan), the CCAA Plan of compromise or arrangement (including any exhibits, annexes and schedules thereto) for the Canadian Debtors filed in the CCAA Court on November 30, 2016, as it may be modified or supplemented in accordance with its terms or otherwise.

6. _Payment in Full._ EDC acknoweldges that for purposes of determining whether and when its Allowed EDC Guarantee Claim against NNI has been paid in full, NNI may account for payments received by EDC from the Canadian Debtors in respect of the EDC Primary Claim, including as contemplated under section 7.9 of the Plan.

7. _Binding Effect._ This Stipulation and the Order approving the Stipulation shall be binding upon any successors or assigns of the Parties, including any trustee or receiver subsequently appointed in the Debtors' chapter 11 cases.

8. _Entire Agreement._ This Stipulation constitutes the entire agreement between the Parties and supersedes all prior or contemporaneous written or oral communications, understandings, and agreements with respect to the subject matter hereof and this Stipulation cannot be amended except by an authorized written agreement between the Parties.

9. _No Transfer to a Third Party._ EDC represents that they have not sold, assigned or otherwise transferred the Allowed EDC Guarantee Claim or any of the claims being released pursuant to this Stipulation to a third party.

10. _No Admissions._ Other than to the extent necessary to implement this Stipulation upon the occurrence of its Effective Date, each Party acknowledges and agrees that nothing in this Stipulation constitutes an admission or concession of any legal issue raised in or relating to the Allowed EDC Guarantee Claim.

11. _Costs and Expenses._ Each Party agrees to bear its own costs, expenses and attorneys' fees incurred in connection with the negotiations related to and in preparation of this Stipulation and to not seek from each other reimbursement of any such costs, expenses or attorneys' fees.

12. <u>Jurisdiction</u>. The Bankruptcy Court shall retain jurisdiction over the implementation of this Stipulation and any disputes arising hereunder.

13. <u>Manner of Execution</u>. This Stipulation may be executed in counterparts, each of which shall be an original, and such counterparts shall be construed together as one instrument. Facsimile or pdf signatures shall be deemed original signatures.

14. <u>Court Approval</u>. All provisions of this Stipulation are subject to the approval of the Bankruptcy Court. In the event this Stipulation is not approved, the Debtors reserve all of their rights and defenses with respect to the EDC Guarantee Claim and this proposed settlement shall not constitute an admission by the Debtors or their affiliates regarding the validity of the EDC Guarantee Claim or that they have any liability thereunder.

15. <u>Claims Register</u>. The Debtors, the Debtors' claims agent, Epiq Bankruptcy Solutions, LLC, and the Clerk of the Court are authorized to take all necessary and appropriate actions to give effect to this Stipulation.

**[Rest of Page Intentionally Left Blank; Signature Page Follow]**

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed this Stipulation.

Dated: May _3_, 2017

| | |
|---|---|
| On behalf of Nortel Networks Inc., Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc. Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc., Nortel Networks (CALA) Inc., and Nortel Networks India International Inc.<br><br>By: _[signature]_<br>Name: John J. Ray III<br>Title: Principal Officer | Export Development Canada<br><br>By: _[signature]_<br>Name: Luc Froment<br>Title: Manager, Claims & Recoveries<br><br>and<br><br>By: _[signature]_<br>Name: DOMINIQUE PROULX<br>Title: MANAGER, Claims & Recoveries |

*Signature Page to Stipulation Resolving Claim No. 3948 by and between the Debtors and Export Development Canada*