## Exhibit A

**Agreement Settling US Claims Litigation**

## AGREEMENT SETTLING US CLAIMS LITIGATION

This agreement (the "Settlement Agreement") is entered into by and among Nortel Networks Inc. ("NNI"), certain of NNI's United States affiliates listed on Schedule A and Nortel Networks CALA, Inc. ("NN CALA") (collectively, the "US Debtors"), the entities listed on Schedule B (including their respective branch offices, the "US Non-Filed Entities" and, together with the US Debtors, collectively referred to herein as the "US Entities"), the Official Committee of Unsecured Creditors of the US Debtors (the "Committee" and, together with the US Entities, the "US Interests"), Nortel Networks UK Limited ("NNUK") and the entities listed on Schedule C hereto (collectively, the "EMEA Debtors"), the entities listed on Schedule D hereto (the "EMEA Non-Filed Entities"), Nortel Networks Optical Components Limited ("NNOCL"), Northern Telecom France SA ("NTF"), the Joint Administrators (as defined below), the Liquidator (as defined below, collectively with the EMEA Debtors, the EMEA Non-Filed Entities, NNOCL, NTF and the Joint Administrators (the "EMEA Parties")), the French Liquidator (as defined below), Nortel Networks UK Pension Trust Limited (as trustee, the "UK Pension Trustee," of the Nortel Networks UK Pension Plan, the "UK Pension Plan") and the Board of the Pension Protection Fund (the "PPF" and, together with the UK Pension Trustee, the "UK Pension Parties" (and with the US Interests, the EMEA Parties, the French Liquidator and the UK Pension Parties each being a "Party" and collectively, the "Parties")).  The Joint Administrators, the Liquidator and the French Liquidator in their individual capacities shall also be party to this Settlement Agreement solely for the purposes of Section 8.14 and references to the Parties shall be construed accordingly.

## RECITALS

On January 14, 2009 (the "Filing Date"), the US Debtors other than NN CALA filed voluntary petitions for protection under chapter 11 ("Chapter 11") of title 11 of the United States Code (the "Bankruptcy Code") before the United States Bankruptcy Court for the District of Delaware (respectively, the "US Court" and together with the NN CALA Proceeding (defined below), the "US Proceedings").  On July 14, 2009, NN CALA filed a voluntary petition for protection under Chapter 11 before the US Court (the "NN CALA Proceeding").  On January 22, 2009, the Office of the United States Trustee for the District of Delaware appointed the Committee in respect of the U.S. Debtors.

The US Non-Filed Entities have not filed Chapter 11 petitions and are under majority ownership of NNI.

On the Filing Date, the EMEA Debtors commenced administration proceedings (the "UK Proceedings") before the High Court of Justice in London, England (the "English Court"), represented by Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson, and Stephen John Harris (the "EMEA Administrators"), and in the case of Nortel Networks (Ireland) Limited ("NNIR") only, Alan Robert Bloom and David Martin Hughes (the "NNIR Administrators"), serving as administrators in the UK Proceedings (the EMEA Administrators

and the NNIR Administrators collectively, the "Joint Administrators").  On July 29, 2011, NNOCL commenced a creditors' voluntary liquidation, represented by Kerry Trigg (the "Liquidator").

The EMEA Non-Filed Entities have not commenced administration proceedings, but are under the control of their respective directors as identified on Schedule D.

Subsequent to the Filing Date, Nortel Networks S.A. ("NNSA") commenced secondary insolvency proceedings within the meaning of Article 27 of the European Union's Council Regulation (EC) 1346/2000 on Insolvency Proceedings in the Republic of France (the "French Secondary Proceedings") pursuant to which a liquidator and an administrator have been appointed by the Versailles Commercial Court (the "French Court") (Docket No. 2009P00492) for NNSA.

NTF is in voluntary liquidation.  Maître Cosme Rogeau (the "French Liquidator") has been appointed Liquidateur amiable of NTF and Mandataire Liquidateur of NNSA.

On the Filing Date, Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL") and certain of NNC's and NNL's Canadian affiliates (collectively, the "Canadian Debtors") commenced creditor protection proceedings before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (respectively, the "Canadian Proceedings" and "CCAA") in connection with which Ernst & Young Inc. was appointed monitor (the "Monitor").

Prior to the Filing Date, the US Debtors, the EMEA Debtors, the Canadian Debtors, the EMEA Non-Filed Entities, the US Non-Filed Entities and certain other non-filed entities around the world were part of the Nortel group of companies (the "Nortel Group") of which NNC was the ultimate corporate parent.

In the US Proceedings, the Joint Administrators on behalf of the EMEA Debtors, NNOCL, NTF and the EMEA Non-Filed Entities timely filed proofs of claim against certain of the US Debtors and such claims are designated on the US Debtors' official claims register as claim numbers 7750 through 7783 and 7785, 7786 and 7787 (as supplemented or amended, including on or about June 3, 2011, and collectively with any and all other claims filed by the EMEA Parties against the US Debtors, the "US EMEA Filed Claims").

In the US Proceedings, the French Liquidator timely filed a proof of claim on behalf of NNSA against NNI and such claim is designated on the US Debtors' official claims register as claim number 7784 (as supplemented or amended, and together with any and all other claims filed by the French Liquidator against the US Debtors, the "US French Liquidator Claim").

In the US Proceedings, the UK Pension Parties timely filed certain proofs of claim on behalf of the UK Pension Trustee and the PPF against NNI and NN CALA and such claims are designated on the US Debtors' official claims register as claim numbers 8357 and 8358 (as supplemented or amended, including on or about September 5, 2012, and collectively with any and all other

claims filed by the UK Pension Parties against the US Debtors, the "US UK Pension Claims").  For the avoidance of doubt, the US UK Pension Claims referred to herein shall not include any allegations made against any member of the Nortel Group other than the US Entities, and do not impact in any manner the Canadian UK Pension Claims, as defined herein.

In July 2011, the US Debtors and the Committee jointly objected to and moved to dismiss the US EMEA Filed Claims of NNUK, NNIR and NNSA and the French Liquidator Claim.  Certain of those US EMEA Filed Claims were dismissed by Order of the US Court dated March 20, 2012 [D.I. 7404] (the "US EMEA Claims Dismissal Order").

On May 14, 2013, the US Debtors and the Committee jointly objected to the US UK Pension Claims.

The EMEA Parties may have the right to allege certain claims, whether through set off or otherwise, against the US Non-Filed Entities and/or claims against certain of the US Debtors for ordinary course trading claims (the "US EMEA Non-Filed Claims" and, together with the US EMEA Filed Claims, the "US EMEA Claims").

In the French Secondary Proceedings, NNI timely filed a proof of claim against NNSA (the "NNI Claim").

The US Entities have not filed, but may have the right to allege, certain claims, whether through set off or otherwise, against the EMEA Debtors, as to which the final date for the filing of claims (a "bar date") has yet to be established (the "US Non-Filed Claims" and, together with the NNI Claim, the "US Claims").

The EMEA Parties, the French Liquidator and the UK Pension Parties have claims against one or more of the Canadian Debtors, including, but not limited to, claims in the Canadian Proceedings (the "Canadian EMEA Claims", the "Canadian French Liquidator Claims" and the Canadian UK Pension Claims" respectively), which claims are wholly separate and distinct from the US EMEA Claims, the US French Liquidator Claim and the US UK Pension Claims referenced herein.

After the Filing Date, the US Debtors, the EMEA Parties and the Canadian Debtors cooperated in selling businesses and assets by Nortel Group entities that raised over US$7,500,000,000 in sale proceeds, upon which interest has accrued (the "Sale Proceeds"), with respect to which each Nortel Group entity that satisfied the definition of "Nortel Seller" (as set forth in the Interim Funding and Settlement Agreement dated on or about June 9, 2009 [D.I. 5308-1] (the "IFSA")) is entitled to participate in the allocation of the Sale Proceeds.

The allocation of the Sale Proceeds among the various Nortel Sellers is the subject of litigation pending before the US Court and the Canadian Court (the "Allocation Dispute"), with such litigation having been ordered by the US Court by an Order dated April 3, 2013 [D.I. 9947] (as supplemented by further orders, collectively, the "US Allocation Dispute Order") and directed

by endorsements of the Canadian Court dated March 8, 2013 and April 3, 2013 (the "<u>Canadian Allocation Endorsements</u>").

The EMEA Debtors have maintained that the Allocation Dispute must be arbitrated and have filed an appeal of the US Allocation Dispute Order (the "<u>US Appeal</u>"), with respect to which the United States Court of Appeals for the Third Circuit issued an Opinion and Judgment on December 6, 2013 (the "<u>Third Circuit Decision</u>"), and have filed a motion for leave to appeal the Canadian Allocation Endorsements to the Supreme Court of Canada (the "<u>Canadian Motion for Leave</u>").

The US EMEA Claims, the US French Liquidator Claim and the US UK Pension Claims are the subject of litigation pending before the US Court (the "<u>US Claims Litigation</u>").

The Canadian EMEA Claims, the Canadian French Liquidator Claims and the Canadian UK Pension Claims that have been filed in the Canadian Proceedings (the "<u>Filed Canadian Claims</u>") are the subject of litigation pending before the Canadian Court (the "<u>Canadian Claims Litigation</u>").

The US Court and the Canadian Court have entered separate orders providing that the trials of the Allocation Dispute, the US Claims Litigation and the Canadian Claims Litigation will be conducted before both Courts commencing on or about May 12, 2014.

The Parties all acknowledge and agree that the ultimate outcome of the US Claims Litigation is uncertain, that appeals in respect of such litigation are likely, that the cost of such litigation is both substantial and burdensome on each of the Parties, that such cost will continue to increase absent a final and binding resolution of the US Claims Litigation and that the nature of the allegations and the position of the US Debtors in respect of the matters underlying the US Claims Litigation are very different from the nature of the allegations against and the position of the Canadian Debtors in respect of the matters underlying the Canadian Claims Litigation. Settlement of the US Claims Litigation will facilitate a narrowing of the issues in dispute and minimize the ongoing substantial costs of litigation.  It will also permit the Parties to focus on the Allocation Dispute, and will permit the EMEA Parties, the French Liquidator and the UK Pension Parties to focus on the Canadian EMEA Claims, the Canadian French Liquidator Claims and the Canadian UK Pension Claims.  As such the Parties have agreed to settle finally the US Claims Litigation and to settle and release additional claims on the terms and conditions set forth in this Agreement.

NOW THEREFORE, IN LIGHT OF THE FOREGOING RECITALS, AND FOR GOOD AND VALUABLE CONSIDERATION, THE VALUE OF WHICH IS HEREBY AGREED, THE PARTIES HEREBY FURTHER AGREE, SUBJECT TO THE SATISFACTION OF ALL CONDITIONS SET FORTH HEREIN THAT:

1.    **INTERPRETATION**

1.1.   The Recitals set forth above form an integral part of this Settlement Agreement and are incorporated fully herein.

2.    **THE ALLOWED CLAIMS**

2.1.   On the Effective Date (as defined below):

   2.1.1.   the Joint Administrators, on behalf of the EMEA Parties, shall have an allowed administrative expense priority claim, pursuant to section 503 of the Bankruptcy Code, against NNI in the amount of US$37,500,000 at a level of priority afforded under section 507(a)(2) of the Bankruptcy Code (the "EMEA Allowed Claim"); and

   2.1.2.   the UK Pension Parties shall have an allowed administrative expense priority claim, pursuant to section 503 of the Bankruptcy Code, against NNI in the amount of US$37,500,000 at a level of priority afforded under section 507(a)(2) of the Bankruptcy Code (the "UK Pension Parties' Allowed Claim" and, together with the EMEA Allowed Claim, the "Allowed Claims").

2.2.   NNI shall pay the EMEA Allowed Claim in full in immediately available funds, without any deduction, setoff, recoupment or withholding for tax purposes to an account designated by the Joint Administrators in writing, on or before three (3) business days from the Effective Date (for purposes of this Settlement Agreement, a business day is a day that banks are open for business in New York, New York) (the date on which payment in respect of the EMEA Allowed Claim is made by NNI, the "EMEA Payment Date").

2.3.   NNI shall pay the UK Pension Parties' Allowed Claim in full in immediately available funds, without any deduction, setoff, recoupment or withholding for tax purposes to an account designated by the UK Pension Parties in writing, on or before three (3) business days from the Effective Date (the date on which payment in respect of the EMEA Allowed Claim is made by NNI, the "UK Pension Payment Date").

3.    **WITHDRAWAL AND DISMISSAL OF CLAIMS AND APPEALS**

3.1.   On the EMEA Payment Date, the US EMEA Filed Claims shall be deemed withdrawn, with prejudice, and the US EMEA Non-Filed Claims shall be deemed waived and the EMEA Debtors, the EMEA Non-Filed Entities, NNOCL, NTF, the Joint Administrators and the Liquidator shall be forever barred from asserting against any of the US Entities in any forum any further claims arising from or related to the matters herein resolved.  The US Debtors' claims register shall be amended to reflect this withdrawal.

3.2.   For the avoidance of any doubt, NNUK, NNIR and NNSA agree that they will not take any steps to appeal or otherwise challenge the US EMEA Claims Dismissal Order.

3.3.   On the UK Pension Payment Date, the US UK Pension Claims shall be deemed withdrawn, with prejudice, and the UK Pension Parties shall be forever barred from asserting against any of the US Entities in any forum any further claims arising from or related to the matters herein resolved. The US Debtors' claims register shall be amended to reflect this withdrawal.

3.4.   On the Effective Date, the US French Liquidator Claim shall be deemed withdrawn, with prejudice, and the French Liquidator shall be forever barred from asserting against any of the US Entities in any forum any further claims arising from or related to the matters herein resolved. The US Debtors' claims register shall be amended to reflect this withdrawal.

3.5.   Upon completion of the payments made pursuant to Sections 2.2 and 2.3, the NNI Claim shall be deemed withdrawn, with prejudice, and the US Non-Filed Claims shall be deemed waived and the US Entities shall be forever barred from asserting against any of the EMEA Debtors, the EMEA Non-Filed Entities, NTF, NNOCL, the Joint Administrators, the French Liquidator or the UK Pension Parties in any forum any further claims arising from or related to the matters herein resolved.

3.6.   From the Effective Date, the Joint Administrators, on behalf of the EMEA Debtors, agree that they shall not appeal from or seek reconsideration of the Third Circuit Decision.

3.7.   Promptly following the Effective Date, the Joint Administrators, on behalf of the EMEA Debtors, shall discontinue the Canadian Motion for Leave.

3.8.   For the avoidance of any doubt, nothing in this Section 3 concerning waiver of appeals shall prevent or in any way inhibit the Parties from pursuing any appeal or making any arguments whatsoever in respect of the determinations reached by the Canadian and/or US Court following trial of the Allocation Dispute.

## 4.   **RELEASES**

4.1.   Nothing in this Settlement Agreement (in particular in Section 3, this Section 4, or Section 5) shall constitute a release or waiver or discharge (in whole or in part) of (i) the Canadian EMEA Claims, the Canadian French Liquidator Claims or the Canadian UK Pension Claims or in respect of the Canadian Claims Litigation; (ii) any claims of the EMEA Debtors and/or the EMEA Non-Filed Entities and/or NNOCL against the current or former directors and officers (in their capacities as such) of the Canadian Debtors; (iii) any claims of the EMEA Debtors and/or EMEA Non-Filed Entities and/or NTF and/or NNOCL against the current or former directors and officers (in their capacities as such) of the EMEA Debtors or the EMEA Non-Filed Entities or NTF or NNOCL (including for the avoidance of any doubt any

such directors or officers even if they were also directors or officers of any of the US Debtors or the Canadian Debtors); (iv) any right of any Party to assert or defend against any allocation position or advance or defend against any arguments as to entitlement to Sale Proceeds in the Allocation Dispute; (v) any claim, right or entitlement of any Party to Sale Proceeds in the Allocation Dispute; or (vi) any claim of the UK Pension Parties against any of the EMEA Debtors and/or the EMEA Non-Filed Entities and/or NTF and/or NNOCL and/or the Joint Administrators and/or the French Liquidator or any defence that the EMEA Debtors and/or the EMEA Non-Filed Entities and/or NTF and/or NNOCL and/or the Joint Administrators and/or the French Liquidator might have against any claim of the UK Pension Parties.  Nothing in this Settlement Agreement shall prevent or in any way inhibit the EMEA Parties, the French Liquidator or the UK Pension Parties from making any arguments in respect of, or pursuing any appeal of any determinations of the Canadian and/or US Court with respect to the Canadian EMEA Claims, the Canadian French Liquidator Claims or the Canadian UK Pension Claims or in respect of the Canadian Claims Litigation.  Furthermore, nothing in this Settlement Agreement shall operate as or constitute any admission with respect to the merits of any allegations or arguments underlying the Canadian EMEA Claims, the Canadian French Liquidator Claims or the Canadian UK Pension Claims or the Canadian Claims Litigation.

4.2.    For the avoidance of any doubt, nothing in this Settlement Agreement shall constitute a release or waiver or discharge of any rights created under this Settlement Agreement, any claim of any Party to enforce such rights, or a release of any claims for facts or events occurring or actions taken after the date of this Settlement Agreement, nor shall this Settlement Agreement be used, referred to or contended by any Party to have any relevance or probative value in connection with any claims not released herein.

4.3.    **EMEA Debtors, Joint Administrators, Liquidator, NNOCL and EMEA Non-Filed Entities**:  Subject to Sections 4.1 and 4.2, on the Effective Date, and without the need for additional documentation or the entry of any additional orders, each of the EMEA Debtors, each of the EMEA Non-Filed Entities, NNOCL, the Liquidator in her representative capacity, and the Joint Administrators in their representative capacities, and (to the extent under the control of the Liquidator or the Joint Administrators (as the case may be)) the respective current and former affiliates, subsidiaries, employees, officers, directors, agents, advisors, attorneys, representatives, successors and assigns of the foregoing, release and forever discharge the US Interests and their employees, officers, directors, agents, advisors, attorneys, successors and assigns (but for greater certainty not including any member of the Nortel Group other than the US Entities) from any and all liability for claims, defenses, demands, liabilities, obligations, damages, actions, contribution, subrogation, causes of action, setoffs, recoupments, costs and expenses (including, without limitation, attorneys' or other fees or expenses), the foregoing terms to be construed as broadly as possible and to include the definition of "claim" provided in Section 101(5) of the Bankruptcy Code, whether known or unknown, past or present, fixed or contingent, liquidated or unliquidated, which each of the EMEA Debtors, each of the EMEA Non-Filed Entities, NNOCL, the Liquidator in her

representative capacity, and the Joint Administrators in their representative capacities, now have, had, may have had or hereafter may have however so arising, including, but not limited to, claims arising from or related to the US EMEA Claims or the facts and circumstances that were alleged to provide a basis for the US EMEA Claims (the "US EMEA Releases").

4.4.  **UK Pension Parties**:  Subject to Sections 4.1 and 4.2, on the Effective Date, and without the need for additional documentation or the entry of any additional orders, each of the UK Pension Parties and (to the extent under the control of the UK Pension Parties) their respective current and former affiliates, subsidiaries, shareholders (but not including any member of the Nortel Group) and the employees, officers, directors, agents, advisors, attorneys, representatives, successors and assigns of the foregoing release and forever discharge the US Interests and their employees, officers, directors, agents, advisors, attorneys, successors and assigns (but for greater certainty not including any member of the Nortel Group other than the US Entities) from any and all liability for claims, defenses, demands, liabilities, obligations, damages, actions, contribution, subrogation, causes of action, setoffs, recoupments, costs and expenses (including, without limitation, attorneys' or other fees or expenses), the foregoing terms to be construed as broadly as possible and to include the definition of "claim" provided in Section 101(5) of the Bankruptcy Code, whether known or unknown, past or present, fixed or contingent, liquidated or unliquidated, which each of the UK Pension Parties, now have, had, may have had or hereafter may have however so arising, including, but not limited to, claims arising from or related to the US UK Pension Claims or the facts and circumstances that were alleged to provide a basis for the US UK Pension Claims (the "US UK Pension Releases").

4.5.  **French Liquidator**:  Subject to Sections 4.1 and 4.2, on the Effective Date, and without the need for additional documentation or the entry of any additional orders, the French Liquidator, on behalf of NNSA and NTF, and (to the extent under the control of the French Liquidator) their respective current and former affiliates, subsidiaries,  employees, officers, directors, agents, advisors, attorneys, representatives, successors and assigns of the foregoing release and forever discharge the US Interests and their employees, officers, directors, agents, advisors, attorneys, successors and assigns from any and all liability for claims, defenses, demands, liabilities, obligations, damages, actions, contribution, subrogation, causes of action, setoffs, recoupments, costs and expenses (including, without limitation, attorneys' or other fees or expenses), the foregoing terms to be construed as broadly as possible and to include the definition of "claim" provided in Section 101(5) of the Bankruptcy Code, whether known or unknown, past or present, fixed or contingent, liquidated or unliquidated, which the French Liquidator, on behalf of NNSA and NTF, now have, had, may have had or hereafter may have however so arising, including, but not limited to, claims arising from or related to the US French Liquidator Claim or the facts and circumstances that were alleged to provide a basis for the US French Liquidator Claim (the "US French Liquidator Releases").

4.6. **US Interests**:  Subject to Sections 4.1 and 4.2, on the Effective Date, and without the need for additional documentation or the entry of any additional orders, the US Interests, and (to the extent under the control of the US Entities) their respective current and former affiliates, subsidiaries,  employees, officers, directors, agents, advisors, attorneys, representatives, successors and assigns of the foregoing release and forever discharge the EMEA Debtors, the EMEA Non-Filed Entities, NTF, NNOCL, the UK Pension Parties, the Joint Administrators, the Liquidator, and the French Liquidator, in their respective representative capacities, and their employees, officers, directors, agents, advisors, attorneys, successors and assigns from any and all liability for claims, defenses, demands, liabilities, obligations, damages, actions, contribution, subrogation, causes of action, setoffs, recoupments, costs and expenses (including, without limitation, attorneys' or other fees or expenses), the foregoing terms to be construed as broadly as possible and to include the definition of "claim" provided in Section 101(5) of the Bankruptcy Code, whether known or unknown, past or present, fixed or contingent, liquidated or unliquidated, which the US Interests now have, had, may have had or hereafter may have however so arising (the "US Releases," and together with the US EMEA Releases, the US UK Pension Releases and the US French Liquidator Releases, the "Releases").

4.7. For the avoidance of any doubt, the Releases shall include releases in respect of any and all claims in respect of costs, expenses and fees (including but not limited to attorneys' fees, experts' fees, and other professional fees) incurred by any of the Parties in connection with the US EMEA Claims, the US UK Pension Claims, the US French Liquidator Claim and the US Appeal.

## 5. CANADIAN EMEA CLAIMS AND CANADIAN UK PENSION CLAIMS

5.1. In light of the settlement and withdrawal of the US EMEA Claims and the US UK Pension Claims against the US Debtors, the US Interests agree that they will not hereafter oppose or object to the Filed Canadian Claims, provided, however, that nothing herein shall constitute a release or waiver or discharge of any right of the US Interests to assert or defend against any allocation position or advance or defend against any arguments as to entitlement to Sale Proceeds in the Allocation Dispute.

## 6. ALLOCATION DISPUTE

6.1. Each of the US Debtors, the Committee, the UK Pension Parties, the Joint Administrators on behalf of the EMEA Debtors, the Liquidator on behalf of NNOCL and the EMEA Non-Filed Entities recognize that the Allocation Dispute will continue notwithstanding this settlement of the US Claims Litigation.  In light of this fact, the US Debtors, the Committee, the UK Pension Parties, the Joint Administrators on behalf of the EMEA Debtors, the Liquidator on behalf of NNOCL and the EMEA Non-Filed Entities agree that they will work in good faith commencing on the date of execution of this Agreement by all of the Parties (with the exception of the US Non-Filed Entities) (the "Allocation Cooperation Period") in an effort to see if they can develop a common allocation position

and other agreements related to the conduct of the trial.  To that end, such Parties will use commercially reasonable best efforts during the Allocation Cooperation Period to coordinate and co-operate in respect of (a) discussion of experts on allocation methodologies in connection with the Allocation Dispute and preparation of submissions and reports regarding the same; (b) remaining depositions and discovery; (c) conduct of the trial of the Allocation Dispute; (d) pre-trial motion practice and pre and post-trial briefing in respect of the Allocation Dispute; and (e) appeals, if any, from determinations in respect of the Allocation Dispute at or following trial.

6.2.   Any Party may bring to an end its involvement in the co-operation arrangement under Section 6.1 (including at any time following execution of this Agreement and prior to the Effective Date) by providing the other Parties with five (5) business days' written notice of its intention to do so.  Where a Party exercises its rights to end its involvement pursuant to this Section 6.2, the rights and obligations of all the other Parties to each other under Section 6.1 shall remain, and such termination of a Party's rights and obligations under Section 6.1 shall have no impact on the settlement of the US Claims Litigation or the Parties' obligations as provided in the other Sections of this Agreement.

6.3.   The foregoing shall not create any affirmative obligation on the part of the US Interests, the Joint Administrators, the EMEA Debtors, the EMEA Non-Filed Entities, the Liquidator, NNOCL or the UK Pension Parties to support any particular legal or valuation theories in respect of the Allocation Dispute, nor shall it prevent any of them from advocating any particular legal or valuation theories in respect of the Allocation Dispute.

6.4.   Subject to Section 5 hereof in respect of the US Interests, the foregoing shall not create any affirmative obligation on the part of the US Interests, the EMEA Parties or the UK Pension Parties in respect of the Canadian Claims Litigation.

6.5.   The obligations of the Parties in this Section 6 and the Parties' compliance, non-compliance or alleged non-compliance with any of those obligations shall in no way affect the rights and obligations of any of the Parties set out in any other sections of this Agreement (in particular, NNI's obligations under Section 2 in respect of the Allowed Claims and the Parties' obligations in Sections 3 and 4).

6.6.   Nothing in this Settlement Agreement shall affect the rights of the US Interests, the Joint Administrators on behalf of the EMEA Debtors, the EMEA Non-Filed Entities, the Liquidator on behalf of NNOCL or the UK Pension Parties to seek information, disclosure, or discovery from one another in connection with the Allocation Dispute pursuant to any applicable order or endorsement of the US Court or the Canadian Court, provided that, prior to issuance of any formal or informal process, demand or request, counsel for the US Interests, the Joint Administrators on behalf of the EMEA Debtors and the EMEA Non-Filed Entities, the Liquidator on behalf of NNOCL and the UK Pension Parties shall consult in good faith with respect to any information or disclosure sought and cooperate to the extent reasonable as agreed in such consultations.

## 7. EFFECTIVENESS

7.1.   The agreements, acknowledgments and obligations contained herein are expressly contingent upon, and shall become effective only upon the occurrence of all of the conditions to effectiveness below in this Section 7 (each a "Condition" and collectively, the "Conditions," the date on which the last of the Conditions provided in Sections 7.2, 7.3, 7.4 and 7.5, is satisfied, the "Effective Date"), provided, however, that the occurrence of the Condition provided in Section 7.6 shall only be a condition to the effectiveness of this Settlement Agreement solely with respect to the US Non-Filed Entities.

7.2.   **US Court Approval**.  Approval of the US Debtors' entry into and performance under this Settlement Agreement by Final Order in the US Proceeding is a condition to the effectiveness of this Settlement Agreement.  The US Debtors will move promptly for, and use their commercially reasonable best efforts to obtain, approval of this Settlement Agreement under Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (respectively, "Rule 9019(a)," and the "Bankruptcy Rules"), which will include a request for waiver of the fourteen (14) day stay set forth in Bankruptcy Rule 6004(h) (the "9019 Motion").  The other Parties agree to use their best efforts to support the US Debtors in obtaining US Court approval of this Settlement Agreement.  "Final Order" shall mean an order or judgment of the US Court, as entered on the docket of such court, the operation or effect of which has not been stayed, reversed, modified or amended, and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing has been filed or, if filed, remains pending, provided, however, that no order shall fail to be a final order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure, Rule 9024 of the Bankruptcy Rules, any similar local bankruptcy rule or any similar state statute or rule may be filed with respect to such order.  The EMEA Debtors and the UK Pension Parties shall have an opportunity to review the draft motion materials to be filed by the US Debtors, which will not be served or filed with the Court until the EMEA Debtors and the UK Pension Parties have approved the contents of same.

7.3.   **English Court Approval**.  If the Joint Administrators choose to seek directions from the English Court in relation to the Joint Administrators, on behalf of the EMEA Debtors, entering into and performing under this Settlement Agreement, the Joint Administrators shall do so by December 20, 2013 and the US Debtors, the French Liquidator and the UK Pension Parties agree to use commercially reasonably best efforts to support the Joint Administrators in obtaining approval of this Settlement Agreement, provided, however, that such requirement may be waived by the Joint Administrators if the Joint Administrators decide that they do not wish to seek directions from the English Court.

7.4.   **Beddoe Order**.  The UK Pension Parties require an order of the English Court (a "Beddoe Order") as a condition to the effectiveness of this Settlement Agreement with respect to

the UK Pension Parties.  The UK Pension Parties shall file materials seeking a Beddoe Order no later than December 20, 2013, and shall use their commercially reasonable best efforts to obtain such approval.  The Joint Administrators, on behalf of the EMEA Debtors, and the US Debtors agree to use their commercially reasonable best efforts to support the UK Pension Parties in obtaining approval of this Settlement Agreement, provided, however, that the US Debtors and the Joint Administrators' support is dependent upon having received and approved the relevant pleadings, submissions and materials (but for the avoidance of doubt, nothing in this Settlement Agreement shall oblige the UK Pension Parties to provide any pleadings, submissions or other materials connected with the seeking of the Beddoe Order to any other Party).  The UK Pension Parties will use their commercially reasonable best efforts to secure the support of The Pensions Regulator to the execution of this Settlement Agreement by the UK Pension Parties and will provide such evidence as may be available to the US Debtors and Joint Administrators of any such support, and will likewise communicate any such support to the English Court.

7.5.  **French Court Approval**.  The French Liquidator represents that approvals of the French Supervisory Judge (*Juge-commissaire*) appointed for NNSA and of the French Court are required in order for the French Liquidator, on behalf of NNSA, to enter into and perform under this Settlement Agreement. The French Liquidator shall file materials for such purposes by no later than December 20, 2013 and shall use his commercially reasonable best efforts to obtain such approvals and the Joint Administrators, on behalf of the EMEA Debtors, the US Debtors, and the UK Pension Parties agree to use their commercially reasonable best efforts to support the French Liquidator in obtaining approval of this Settlement Agreement.

7.6.  **Execution by the US Non-Filed Entities**.  The Execution of the Settlement Agreement by the US Non-Filed Entities prior to the Effective Date is a condition to the effectiveness of this Settlement Agreement solely with respect to each of the US Non-Filed Entities.  Upon execution of this Settlement Agreement, the US Non-Filed Entities shall be Parties to this Settlement Agreement for the benefits provided and the burdens imposed by the provisions of this Settlement Agreement expressed to be conferred on or given to the US Non-Filed Entities.  For the avoidance of doubt, nothing in this Section 7.6 shall constitute a condition to the effectiveness of this Settlement Agreement with respect to the US Debtors, the Committee, the Joint Administrators, the EMEA Debtors, the EMEA Non-Filed Entities, NNOCL, the Liquidator, the UK Pension Parties, or the French Liquidator.

## 8.   MISCELLANEOUS

8.1.  **Administrative Expenses/Expenses of Administration**.  The obligations under Section 2 of this Settlement Agreement shall constitute administrative expenses/expenses of administration of each of the US Debtors under section 503 of the US Bankruptcy Code.

8.2.  **Binding Effect**.  This Settlement Agreement, the order of the US Court, and, if applicable, the orders of the English and/or French Courts,  approving the entry into and

performance under this Settlement Agreement by, respectively, the US Debtors and the UK Pension Parties, shall be binding upon any successors or assigns of the Parties.

8.3.  **Claims Register**.   The US Debtors, the US Debtors claims' agent, Epiq Bankruptcy Solutions, LLC, and the Clerk of the US Court shall take all necessary and appropriate actions to give effect to this Settlement Agreement.

8.4.  **Confidentiality**.   Unless otherwise agreed by the Parties, the substance and existence of this Settlement Agreement shall be kept strictly confidential until the filing of a motion with the US Court and the English Court to seek approval of this Settlement Agreement, provided, however, that: (i) the US Interests shall have the right to have discussions regarding the Settlement Agreement with representatives of the ad hoc group of bondholders participating in the US Proceedings; (ii) the UK Pension Parties shall have the right to have discussions regarding the Settlement Agreement with the representative beneficiary and his advisors in the context of the English Court proceedings and for the purposes of discussions with The Pensions Regulator as contemplated by Section 7.4 hereof.

8.5.  **Costs and Expenses**.   Each Party agrees to bear its own costs, expenses and attorneys' fees incurred in connection with the negotiations related to and preparation of this Settlement Agreement and to not seek from each other reimbursement of any such costs, expenses or attorneys' fees.

8.6.  **Further Assurances**.   The Parties will cooperate in good faith to effectuate the terms of this Settlement Agreement.

8.7.  **Governing Law**.   Save as provided in Section 8.14, this Settlement Agreement shall be governed and construed in accordance with the laws of the State of New York without giving effect to the conflict of laws principles thereof.

8.8.  **Individual Enforcement**.   Notwithstanding the fact that a Party executes this Settlement Agreement on behalf of another Party, each and every Party shall be entitled to enforce this Settlement Agreement as though they had each individually executed the Settlement Agreement.

8.9.  **Integration**.   This Settlement Agreement constitutes the entire agreement between the Parties and supersedes all prior or contemporaneous written or oral communications, understandings, and agreements with respect to the subject matter hereof.   This Settlement Agreement may not be amended, supplemented or modified except by a written instrument executed by each of the Parties to this Settlement Agreement.   For the avoidance of doubt, unless explicitly stated herein, this Settlement Agreement does not supersede either the IFSA or the Final Canadian Funding and Settlement Agreement dated as of December 23, 2009, both of which remain in full force and effect.

8.10. **Non-Severability**.  Subject to the provisions of Sections 6.2, 6.5 and 7.6, each of the provisions of this Settlement Agreement is an integrated, essential and non-severable part of this Agreement.

8.11. **Jurisdiction**.  The Parties agree to the exclusive jurisdiction of the US Court and the United States District Court for the District of Delaware in respect of any dispute arising out of or in connection with this Settlement Agreement or its subject matter or formation.

8.12. **Manner of Execution**.  The Parties may execute this Settlement Agreement in counterparts, each of which shall be an original, and all executed counterparts shall collectively be deemed to be one and the same instrument.  Facsimile or pdf signatures shall be deemed original signatures, and the Parties may exchange signature pages via mail, courier, facsimile or email.

8.13. **No Admissions**.  Each Party acknowledges and agrees that nothing in this Settlement Agreement constitutes an admission or concession in respect of any legal issue raised in any claim asserted by any of the Parties hereto or any defense raised in connection therewith by any of the Parties.

8.14. **No Personal Liability of the Joint Administrators, the Liquidator and the French Liquidator**.  The Joint Administrators are a Party to this Settlement Agreement:  (a) as agents of the respective EMEA Debtors of which they are administrators; and (b) in their own capacities solely for taking the benefit of the statutory charges under Paragraph 99(3) of Schedule B 1 of the United Kingdom Insolvency Act 1986 and enforcing the obligations of the US Debtors hereunder.  Notwithstanding anything else to the contrary herein, any claim, action or proceeding against the Joint Administrators in their personal capacities (and not as agents for any of the EMEA Debtors) under this Agreement shall be governed exclusively by English law and subject to the exclusive jurisdiction of the English courts.  None of the Joint Administrators, their firm, partners, employees, advisors, representatives or agents shall incur any personal liability whatsoever whether on their own part or in respect of any failure on the part of any Nortel group company to observe, perform or comply with any of its obligations under this Agreement or under or in relation to any associated arrangements or negotiations.

The Liquidator is a Party to this Agreement: (i) as an agent of NNOCL in such appointed capacity; and (ii) in their own capacity solely for taking the benefit of this Section and enforcing the obligations of the other Parties to this Agreement.  Notwithstanding anything else to the contrary herein, any claim, action or proceeding against the Liquidator in their personal capacity (and not as agent for NNOCL) under this Agreement shall be governed exclusively by English law and subject to the exclusive jurisdiction of the English Courts.  None of the Liquidator, its firm, partners, employees, advisors, representatives or agents shall incur any personal liability whatsoever whether on their own part or in respect of any failure on the part of any Nortel group company to observe,

perform or comply with any of its obligations under this Agreement or under or in relation to any associated arrangements or negotiations.

The French Liquidator is a Party to this Agreement: (i) as an agent of NNSA and NTF in such appointed capacity; and (ii) in his own capacity solely for taking the benefit of this Section and enforcing the obligations of the other Parties to this Agreement. Notwithstanding anything else to the contrary herein, any claim, action or proceeding against the French Liquidator in his personal capacity (and not as agent for NNSA or NTF) under this Agreement shall be governed exclusively by French law and subject to the exclusive jurisdiction of the French Courts.  None of the French Liquidator, its firm, partners, employees, advisors, representatives or agents shall incur any personal liability whatsoever whether on their own part or in respect of any failure on the part of any Nortel group company to observe, perform or comply with any of its obligations under this Agreement or under or in relation to any associated arrangements or negotiations.

8.15. **No Third-Party Beneficiaries**.  This Settlement Agreement is not intended to, and shall not, create rights in any person or entity not a Party hereto.

8.16. **No Transfer of Claims between Parties and Authority**.  Each of the US Interests, the Joint Administrators, the EMEA Debtors, the EMEA Non-Filed Entities, NNOCL, the Liquidator, the UK Pension Parties and the French Liquidator, on behalf of NNSA, represents that it has not sold, assigned or otherwise transferred their respective claims being released pursuant to this Settlement Agreement to a third party, that each has full power and authority to enter into this Settlement Agreement and that it will not sell, assign or otherwise transfer their respective claims prior to the order of the US Court approving this Settlement Agreement becoming final and non-appealable, and thereafter, only on written notice to the US Debtors and where the transferee signs a written undertaking in favor of the US Debtors agreeing to be bound by this Settlement Agreement.

8.17. **Non-Effectiveness**.  In the event this Settlement Agreement does not become effective, the Parties reserve all of their rights and defenses with respect to the claims resolved by this Settlement Agreement and this proposed settlement shall not constitute an admission by any Party regarding the validity of the claims or defenses resolved by this Settlement Agreement or that they have any liability in connection with such claims or defenses.

8.18. **Participation in Drafting**.  Each Party (except for the US Non-Filed Entities and the EMEA Non-Filed Entities) represents and warrants that it has participated in the drafting and preparation of this Settlement Agreement and has been represented by sophisticated and experienced counsel in so doing.  In any construction of this Settlement Agreement, the Settlement Agreement shall not be construed for or against any Party, but the same shall be construed fairly according to its plain meaning.

8.19. **Representative Capacity**.   Each person executing this Settlement Agreement in a representative capacity represents and warrants that he or she is empowered to do so.

8.20. **Simultaneous Occurrence**.  All material acts provided hereunder that are to occur on the Effective Date are deemed to occur simultaneously.

8.21. **Successors and Assigns**.   This Settlement Agreement shall inure to the benefit of, and shall be binding upon, each Party and its respective agents, successors and assigns.

[*Signature Pages to Follow*]

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed this Settlement Agreement.

**NORTEL NETWORKS INC.**

By: _____

Name: John Ray

Title: Principal Officer

**ARCHITEL SYSTEMS (U.S.) CORPORATION**

By: _____

Name: John Ray

Title: Principal Officer

**CORETEK, INC.**

By: _____

Name: John Ray

Title: Principal Officer

**NORTEL ALTSYSTEMS INC.**

By: _____

Name: John Ray

Title: Principal Officer

**NORTEL ALTSYSTEMS INTERNATIONAL INC.**

By: _____

Name: John Ray

Title: Principal Officer

**NORTEL NETWORKS APPLICATIONS**
**MANAGEMENT SOLUTIONS INC.**

By:_____
Name: John Ray
Title: Principal Officer

**NORTEL NETWORKS CABLE SOLUTIONS INC.**

By:_____
Name: John Ray
Title: Principal Officer

**NORTEL NETWORKS CAPITAL CORPORATION**

By:_____
Name: John Ray
Title: Principal Officer

**NORTEL NETWORKS HPOCS INC.**

By:_____
Name: John Ray
Title: Principal Officer

**NORTEL NETWORKS INTERNATIONAL INC.**

By:_____
Name: John Ray
Title: Principal Officer

**NORTEL NETWORKS OPTICAL COMPONENTS INC.**

By:_____
Name: John Ray
Title: Principal Officer

**NORTHERN TELECOM INTERNATIONAL INC.**

By:_____
Name:  John Ray
Title:  Principal Officer

**QTERA CORPORATION**

By:_____
Name:  John Ray
Title:  Principal Officer

**SONOMA SYSTEMS**

By:_____
Name:  John Ray
Title:  Principal Officer

**XROS, INC.**

By:_____
Name:  John Ray
Title:  Principal Officer

**NORTEL NETWORKS (CALA) INC.**

By:_____
Name:  John Ray
Title:  Principal Officer

**NORTEL NETWORKS INDIA INTERNATIONAL INC.**

By:_____
Name:  Luis Fernando Guerra Sanz
Title:  President

**NORTEL TECHNOLOGY EXCELLENCE CENTRE
PRIVATE LTD**

By:_____
Name:  Luis Fernando Guerra Sanz
Title:  Director

**THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF NORTEL NETWORKS INC., ET. AL.**

**BY: AKIN GUMP STRAUSS HAUER & FELD LLP,
AS COUNSEL TO THE COMMITTEE AND
AUTHORIZED SIGNATORY AND NOT IN ITS
INDIVIDUAL CAPACITY**

By: _____

Name: Fred S. Hodara
Title: Partner

**SIGNED by ALAN ROBERT BLOOM in his own
capacity and on behalf of the JOINT
ADMINISTRATORS without personal liability as
provided in Section 8.14 of this Settlement
Agreement and solely for the benefit of the
provisions of this Settlement Agreement
expressed to be conferred on or given to the Joint
Administrators**

By:_____

**Name:  Alan Robert Bloom**
**Title:  Joint Administrator**

in the presence of:

**Witness signature**

**Name:**  DAN MINDEL
**Address:** 1 MORE LONDON PLACE

**SIGNED for and on behalf of NORTEL NETWORKS
UK LIMITED (in administration) by** A R Bloom **as**
**Joint Administrator (acting as agent and without
personal liability) in the presence of:**

)
)
)
)
)

**Witness signature**

**Name:**  DAN MINDEL
**Address:** 1 MORE LONDON PLACE

)
)
)

**SIGNED** for and on behalf of **NORTEL NETWORKS**
NV (in administration) by _A R Bloom_ as Joint
Administrator (acting as agent and without
personal liability) in the presence of:

)
)
)
)
)

Witness signature

Name: Dan Mindel
Address: 1 More London Place

)
)
)

**SIGNED** for and on behalf of **NORTEL
NETWORKS SPA** (in administration) by
_A R Bloom_ as Joint Administrator
(acting as agent and without personal liability)
in the presence of:

)
)
)
)
)

Witness signature

Name: Dan Mindel
Address: 1 More London Place

)
)
)

**SIGNED** for and on behalf of **NORTEL
NETWORKS (IRELAND) LIMITED** (in
administration) by _A R Bloom_ as Joint
Administrator (acting as agent and without
personal liability) in the presence of:

)
)
)
)
)

Witness signature

Name: Dan Mindel
Address: 1 More London Place

)
)
)

**SIGNED** for and on behalf of **NORTEL NETWORKS FRANCE S.A.S. (in administration)** by ~~A.R.Bloom~~ acting ~~as authorised~~ ~~representative for~~ _____ as Joint Administrator (acting as agent and without personal liability) in the presence of:

)
)
)
)
)
)
)

Witness signature

Name: _Dan Mindel_
Address: _1 More London Place_

)
)
)

**SIGNED** for and on behalf of **NORTEL NETWORKS S.A. (in administration and secondary proceedings)** by _A R Bloom_ as Joint Administ (acting as agent and without personal liability) in the presence of:

)
)
)
)
)

Witness signature

Name: _Dan Mindel_
Address: _1 More London Place_

)
)
)

**SIGNED** for and on behalf of **NORTEL NETWORKS BV (in administration)** by _A R Bloom_ as Joint Administrator (acting as agent and without personal liability) in the presence of:

)
)
)
)
)

Witness signature

Name: _Dan Mindel_
Address: _1 More London Place_

)
)
)

Signature Page to Agreement Settling US Claims Litigation

SIGNED for and on behalf of **NORTEL**
**NETWORKS POLSKA SP Z.O.O.** (in
administration) by _AR Bloom_ as Joint
Administrator (acting as agent and without
personal liability) in the presence of:

)
)
)
)
)

Witness signature

)
Name: Dan Mindel )
Address: 1 More London Place )

SIGNED for and on behalf of **NORTEL**
**NETWORKS HISPANIA S.A.** (in administration)
by _A R Bloom_ as Joint Administrator
(acting as agent and without personal liability)
in the presence of:

)
)
)
)
)

Witness signature

)
Name: Dan Mindel )
Address: 1 More London Place )

SIGNED for and on behalf of **NORTEL**
**NETWORKS (AUSTRIA) GMBH** (in
administration) by _A R Bloom_ as Joint
Administrator (acting as agent and without
personal liability) in the presence of:

)
)
)
)
)

Witness signature

)
Name: Dan Mindel )
Address: 1 More London
Place )

SIGNED for and on behalf of NORTEL          )
NETWORKS PORTUGAL SA (in administration)    )
by _A_ _R_ _Bloom_ as Joint Administrator   )
(acting as agent and without personal liability)  )
in the presence of:                         )

Witness signature

..........................................

Name: _Dan_ _Mindel_                        )
Address: _1_ _More_ _London_ _Place_        )
                                            )

SIGNED for and on behalf of NORTEL GMBH (in )
administration) by _A_ _R_ _Bloom_ as Joint )
Administrator (acting as agent and without  )
personal liability) in the presence of:     )

Witness signature

..........................................

Name: _Dan_ _Mindel_                        )
Address: _1_ _More_ _London_ _Place_        )
                                            )

SIGNED for and on behalf of NORTEL          )
NETWORKS SLOVENSKO S.R.O. (in               )
administration) by                          )
_A_ _R_ _Bloom_                             )
as Joint Administrator (acting as agent and )
without personal liability) in the presence of:  )

Witness signature

..........................................

Name: _Dan_ _Mindel_                        )
Address: _1_ _More_ _London_                )
              _Place_                        )

SIGNED for and on behalf of **NORTEL**
**NETWORKS S.R.O. (in administration) by**                    )
*A R Bloom*                                                    )
                                                              )
as Joint Administrator (acting as agent and                   )
without personal liability) in the presence of:               )

Witness signature

Name: *Dan Mindel*                                            )
Address: *1 More London Place*                               )

SIGNED for and on behalf of **NORTEL**                        )
**NETWORKS ROMANIA S.R.L. (in**                              )
**administration) by**                                        )
*A R Bloom*                                                   )
as Joint Administrator (acting as agent and                   )
without personal liability) in the presence of:               )

Witness signature

Name: *Dan Mindel*                                            )
Address: *1 More London Place*                                )

SIGNED for and on behalf of **NORTEL**                        )
**NETWORKS AB (in administration) by**                        )
*A R Bloom* as Joint Administrator (acting                    )
as agent and without personal liability) in the              )
presence of:                                                  )

Witness signature

Name: *Dan Mindel*                                            )
Address: *1 More London*                                      )
*Place*                                                       )

**SIGNED** for and on behalf of **NORTEL
NETWORKS ENGINEERING SERVICE KFT** (in
administration) by _A R Bloom_ as Joint
Administrator (acting as agent and without
personal liability) in the presence of:

)
)
)
)
)

Witness signature

Name: _Dan Mindel_
Address: _1 More London Place_

)
)
)

**SIGNED** for and on behalf of **NORTEL
NETWORKS OY** (in administration) by
_A R Bloom_ as Joint Administrator (acting
as agent and without personal liability) in the
presence of:

)
)
)
)
)

Witness signature

Name: _Dan Mindel_
Address: _1 More London Place_

)
)
)

**SIGNED** for and on behalf of **NORTEL
NETWORKS INTERNATIONAL FINANCE &
HOLDING BV** (in administration) by
_A R Bloom_ as Joint Administrator (acting
as agent and without personal liability) in the
presence of:

)
)
)
)
)

Witness signature

Name: _Dan Mindel_
Address: _1 More London Place_

)
)
)

**SIGNED** for and on behalf of **NORTEL**
**NETWORKS AS** by _DAVID QUANE_
in the presence of:

)
)
)
)
)

Witness signature

Name: _DEIRDRE LARKIN_
Address: _SOLICITE_
_THE SQUARE_
_GORT_
_CO. GALWAY._

)
)
)

**SIGNED** for and on behalf of **NORTEL**
**NETWORKS AG** by _DAVID QUANE_
in the presence of:

)
)
)
)

Witness signature

Name: _DEIRDRE LARKIN_
Address: _SOLICITE_
_THE SQUARE,_
_GORT,_
_CO. GALWAY._

)
)
)

**SIGNED** for and on behalf of **NORTEL**                    )
**NETWORKS SOUTH AFRICA (PTY) LIMITED** by    )
DAVID QUANE   in the presence of:    )
                                                                                          )
                                                                                          )

Witness signature

.................................................    )
Name:   DEIRDRE LARKIN    )
Address:  SOLICITOR    )
              THE SQUARE,
              GORT
              CO. GALWAY.

**SIGNED** by Maître Cosme ROGEAU in his own
capacity solely for taking the benefit of this Section
8.14 of this Settlement Agreement and enforcing
the obligations of the other Parties to this
Agreement as provided in Section 8.14 of this
Settlement Agreement

By: _____
Name:  Cosme Rogeau
Title:  Mandataire Liquidateur/Liquidateur Amiable

in the presence of:

Witness signature

L. AUGER
Name:
Address: 26 Rue Hoche  78 000 Versailles

**SIGNED** for and on behalf of **NORTEL**
**NETWORKS SA** (in administration and             )
secondary proceedings) by Maître Cosme
ROGEAU as Mandataire Liquidateur (acting as
agent and without personal liability and subject
to approval by Order of the French *Juge-*
*commissaire* and to confirmation by Judgment
of the Versailles (France) *Tribunal de*
*Commerce*) in the presence of:

                                                              )
                                                              )
                                                              )
                                                              )

Witness signature

L. AUGER
Name:
Address: 26 Rue Hoche  78 000 Versailles

SIGNED for and on behalf of **NORTHERN**              )
**TELECOM FRANCE SA** (in voluntary liquidation)      )
by Maître Cosme ROGEAU as Liquidateur
amiable, acting as agent and without personal
liability, in the presence of:



                                                       )
                                                       )
                                                       )
                                                       )

Witness signature

......).....L.AUFER..........................          )
Name:                                                  )
Address: 26  Rue   Hoche   78000   Versailles

**SIGNED** for and on behalf of **NORTEL**
**NETWORKS OPTICAL COMPONENTS LIMITED**
(in liquidation) by Kerry Trigg, as liquidator
(acting as agent and without personal liability
as provided for by section 8.14 of this
Settlement Agreement), in the presence of:

)
)
)
)
)

Witness signature

Name:

Address:

)
)
)

**SIGNED** by KERRY TRIGG in her own capacity
without personal liability as provided in Section
8.14 of this Settlement Agreement and solely for
the benefit of the provisions of this Settlement
Agreement expressed to be conferred on her as
provided by Section 8.14 of this Settlement
Agreement

By:

Name: Kerry Trigg

Title: Liquidator

in the presence of:

Witness signature

Name:

Address:

**NORTEL NETWORKS UK LTD PENSION TRUST LIMITED**

By: _____

Name: D W DAVIES

Title: CHAIRMAN

**THE BOARD OF THE PENSION PROTECTION FUND**

By: _____

Name:

Title:

**NORTEL NETWORKS UK LTD PENSION TRUST LIMITED**

By:_____
Name:
Title:

**THE BOARD OF THE PENSION PROTECTION FUND**

By:   *Malcolm S Weir*
Name:   MALCOLM WEIR
Title:   HEAD OF RESTRUCTURING & INSOLVENCY.

Case 09-10138-KG    Doc 12618-3    Filed 12/17/13    Page 37 of 40

## SCHEDULE A

**The US Debtors**

Nortel Networks Inc.

Architel Systems (U.S.) Corporation

CoreTek, Inc.

Nortel Altsystems Inc. (previously "Alteon WebSystems, Inc.")

Nortel Altsystems International Inc. (previously "Alteon WebSystems International, Inc.")

Nortel Networks Applications Management Solutions Inc.

Nortel Networks Cable Solutions Inc.

Nortel Networks Capital Corporation

Nortel Networks (CALA) Inc.

Nortel Networks HPOCS Inc.

Nortel Networks International Inc.

Nortel Networks Optical Components Inc.

Northern Telecom International Inc.

Qtera Corporation

Sonoma Systems

Xros, Inc.

## SCHEDULE B

### The US Non-Filed Entities

Nortel Networks India International Inc.

Nortel Technology Excellence Centre Private Ltd

## SCHEDULE C

### The EMEA Debtors

Nortel Networks UK Limited (In Administration)

Nortel Networks (Ireland) Limited (In Administration)

Nortel Networks S.A. (In Administration)

Nortel Networks NV (In Administration)

Nortel Networks SpA (In Administration)

Nortel Networks BV (In Administration)

Nortel Networks Polska Sp. z.o.o. (In Administration)

Nortel Networks Hispania, SA (In Administration)

Nortel Networks (Austria) GmbH (In Administration)

Nortel Networks, sro (In Administration)

Nortel Networks Engineering Service Kft (In Administration)

Nortel Networks Portugal SA (In Administration)

Nortel Networks Slovensko, sro (In Administration)

Nortel Networks Romania Srl (In Administration)

Nortel GmbH (In Administration)

Nortel Networks Oy (In Administration)

Nortel Networks AB (In Administration)

Nortel Networks International Finance & Holding BV (In Administration)

Nortel Networks France S.A.S. (In Administration)

## SCHEDULE D

**The EMEA Non-Filed Entities**

| The EMEA Non-Filed Entities | Relevant Officers of the EMEA Non-Filed Entities |
|---|---|
| Nortel Networks AS | David Quane and Simon Freemantle (Directors) |
| Nortel Networks AG | David Quane and Simon Freemantle (Directors) |
| Nortel Networks South Africa (Pty) Limited | David Quane and Simon Freemantle (Directors) |