## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------- X
: 
*In re*                                               :    Chapter 11
:
Nortel Networks Inc., *et al.,*[1]                    :    Case No. 09-10138(KG)
:
    Wind-Down Debtors and Debtor-In-                 :    Jointly Administered
    Possession.                                      :
:
:    **Re: Docket No.: 18098, 18009, 18288**
:
:    **Hearing Date: TBD**
:
---------------------------------------------------- X

## DEBTORS' REPLY IN FURTHER SUPPORT OF DEBTORS' FORTY-SEVENTH OMNIBUS OBJECTION (SUBSTANTIVE) TO CERTAIN CLAIMS

Nortel Networks Inc. ("NNI") and certain of its affiliates, as wind-down debtors and

debtor-in-possession, respectively, in the above-captioned case (collectively, the "Debtors"),

hereby submit this Reply (the "Reply") in further support of the *Debtors' Forty-Seventh*

*Omnibus Objection (Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502, Fed. R. Bankr.*

*P. 3007 and Del. L.R. 3007-1 (Non-Debtor Liability Claims, Modified, Reclassified and Allowed*

*Claims, No-Basis and Released Claims, No-Basis Equity Claims, No-Basis Retiree Claims and*

*Redundant Claims)*, dated March 10, 2017 [D.I. 18009] (the "Objection") and in reply to the

*Response and Objection of Netas Telekomunikasyon A.S. to Debtors' Forty-Seventh Omnibus*

*Objection (Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502, Fed. R. Bankr. P. 3007*

*and Del. L.R. 3007-1 (Non-Debtor Liability Claims, Modified, Reclassified and Allowed Claims,*

---

[1]     The Wind-Down Debtors in these chapter 11 cases, along with the last four digits of each Wind-Down Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567), and Nortel Networks (CALA) Inc. (4226). Nortel Networks India International Inc. (8667) remains a Debtor-In-Possession. Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

*No-Basis and Released Claims, No-Basis Equity Claims, No-Basis Retiree Claims and Redundant Claims)*, dated April 14, 2017 [D.I. 18098] (the "<u>Response</u>").  In further support of this Reply, the Debtors respectfully represent as follows:

<u>**Reply**</u>

1.      Through the Objection, the Debtors seek the disallowance of claims 8037 and 8038 asserted by Netas Telekomunikasyon A.S. ("<u>Netas</u>") in the amount of $87,760.50 and $14,261,663.01, respectively, filed against NNI (together, the "<u>Netas Claims</u>") relating to certain software development and support services that Netas purports to have provided to NNI prior to the Petition Date.  The Netas Claims should be disallowed as against NNI because they are not valid obligations of NNI (or any of the other Debtors).  The Debtors have thoroughly reviewed their books and records and have identified no record of Netas providing any services to the Debtors, or even of any benefit accruing to the Debtors from any services purportedly provided by Netas that serve as the basis for the Netas Claims.  Moreover, Netas has failed to put forward any evidence demonstrating any such benefits, instead relying on invoices and purchase orders in its Response in support of its claims.  Accordingly, NNI has no obligation on account of the Netas Claims and the Court should disallow such claims.

2.      Simply put, through the Netas Claims, Netas attempts to burden NNI with liabilities purportedly arising from services that did not provide any benefit to NNI, but which yielded value to other members of the Nortel group, including as a result of the sale of Netas by the EMEA Debtors.  Moreover, at the time of that sale, the EMEA Debtors steadfastly maintained that NNI had absolutely no interest whatsoever in the sale proceeds.  That position should similarly be enforced in the context of the disallowance of claims asserted against NNI

that have been in essence diverted from the Nortel affiliates that kept all profits and upside from the sale of Netas for themselves.

3.      A party wishing to dispute a *prima facie* claim must produce evidence in sufficient force to negate the claim's *prima facie* validity.  In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992).  In practice, the objecting party must produce evidence that would refute at least one of the allegations essential to the claim's legal sufficiency.  Id. at 173-74.  Once the objecting party produces such evidence, the burden shifts back to the claimant to prove the validity of his or her claim by a preponderance of the evidence.  Id.  The burden of persuasion is always on the claimant.  Id.

4.      Pursuant to section 101 of the Bankruptcy Code, a creditor holds a claim against a bankruptcy estate only to the extent that (a) it has a "right to payment" for the asserted liabilities and (b) the claim is otherwise allowable.  11 U.S.C. §§ 101(5) and 101(10).  Far from establishing an allowable payment obligation of the Debtors, the invoices and purchase orders that Netas attached to its proofs of claim do nothing more than attempt to invoice NNI for services that were apparently provided on account of other Nortel group members and which did not inure to the benefit of the Debtors.  Notably, Netas is unable to show that NNI received any revenue related to the services that Netas alleges give rise to the liabilities with which it seeks to burden NNI alone.

5.      To the extent Netas provided any services to members of the Nortel group other than the Debtors, such services were provided pursuant to that certain Master Technology Development and Technical Support Agreement, dated July 7, 1997, between Netas and Northern Telecom Limited ("Northern Telecom"), a predecessor to Canadian Debtor Nortel Networks Limited ("NNL"), attached hereto as Exhibit A (the "Netas Agreement").  A plain

3

review of the Netas Agreement makes clear that NNI lacks any contractual obligation to Netas under that agreement.  Accordingly, the Netas Claims must be disallowed.

6.      Nor do the invoices and purchase orders attached to the Netas Claims salvage the Netas Claims.  Those documents — Netas' sole support for its nearly $15 million claims against NNI — merely evidence that *NNL* conducted its business with Netas pursuant to the Netas Agreement and that at least in certain instances, invoices were directed to NNI for such services. They do not create or evidence an obligation of *NNI* to Netas.  Without evidence that Netas performed services for the Debtors or that the Debtors benefitted from services provided by Netas, it would be inequitable for the Debtors to be obligated to pay Netas for such services.  Nor can Netas show that NNI received any revenue related to these transactions.  Netas also cannot save its claims merely by noting that NNI had paid certain earlier invoices for other services – to the extent NNI may have in the past paid Netas for services it never itself received or benefitted from, that fact would weight <u>against</u>, not in favor of, allowing these and any additional claims asserted by Netas against NNI.  Netas seems to presume that pre-petition circumstances in which NNI was improperly used to pay liabilities for which it received no benefit should be ratified by the Court in these chapter 11 cases.

7.      The inequity of such a result is underscored by the nearly nine-year history of these chapter 11 cases and the positions regarding the allocation of assets and liabilities among the Nortel group members post-Petition Date that were advanced throughout the dispute and trial as to the allocation of sale proceeds among the various Nortel entities (the "<u>Allocation Dispute</u>"). Throughout the Allocation Dispute, the parties repeatedly affirmed that the assets and liabilities of the Nortel group as a whole needed to be attributed to the appropriate Nortel entity based on

documentary evidence, not based on vague understandings as to how business was conducted among the Nortel group members.

8.      Moreover, Netas was majority-owned by the EMEA Debtors until it was sold in 2010 to One Equity Partners, a private equity partnership who purchased Nortel's Carrier VoIP and Applications Solutions ("CVAS") business.  Unlike with sale proceeds attributable to subsidiaries owned by NNI (including NGS and Diamondware, with respect to which one EMEA Debtor claimed an interest under theories of contribution and generally), following the sale of Netas, the EMEA Debtors held the sale proceeds separately and did not account for them in the larger sale proceeds allocation, on the grounds that the Debtors did not have any interest in Netas. Such separateness should be respected and enforced for claims purposes as well.  Consistent with that, and in order for an equitable result to be reached here, NNI should not be held to account for the liabilities to Netas of another Nortel group member, when NNI did not receive any benefit from Netas providing services, if any, to such other member.

### **Reservation of Rights**

9.      The Debtors expressly reserve the right to amend, modify or supplement this Reply and the Objection.  Should one or more of the grounds of objection stated in this Reply or Objection be dismissed or overruled, the Debtors reserve the right to object to each of the claims on any other grounds that the Debtors discover or elect to pursue.  This Reply and the Objection set out substantive and non-substantive objections to the Netas Claims.  The Debtors reserve their right to assert one or more other legal, factual, procedural, substantive and non-substantive objections to the Netas Claims at a later time.

*[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]*

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form attached to the Objection as Exhibit C, sustaining the Objection in all respects with respect to the Netas Claims and granting such other and further relief as the Court deems just and proper.

Dated:  June 30, 2017
         Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York  10006
Telephone:  (212) 225-3505
Facsimile:  (212) 225-3999

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

   */s/ Tamara K. Minott*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware  19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Wind-Down Debtors
and Debtor-in-Possession*