IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> NORTEL NETWORKS, INC., *et al.*,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 09-10138 (KG) <br> Jointly Administered <br><br> **Related to Docket # 18315** |

# MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING THE DEBTORS' OBJECTION TO THE PROOF OF CLAIM OF WILLIAM A. OWENS

Comes Now William A. Owens ("Mr. Owens") and moves this Honorable Court Pursuant to 11 USC § 502(j), FRBP 3008 and FRBP 9024 For Reconsideration Of The Disallowance Of The Claim of William A. Owens and in furtherance thereof states as follows:

## PROCEDURAL BACKGROUND

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

{00184169.DOCX; 1}                                    1

1. Mr. Owens timely filed Proof of Claim #2506 (the "Claim") against Debtors for unpaid portions of a Special Pension due him under a Termination Agreement with NNI.

2. On March 10, 2017, Debtors filed an objection to the Claim asserting that the Claim did not appear on the Debtors' books and records. (Docket # 18009.) On April 3, 2017, Mr. Owens filed his Response in Opposition to the Motion to Disallow Claim. (Docket #18056.) On April 20, 2017, Debtors filed a Reply in Further Support of Debtors' Objection. (Docket # 18117.)

3. On June 13, 2017, a hearing was held at which the Court was asked, based largely on a paper record, to determine if the Claim for Mr. Owens' unpaid Special Pension should be disallowed. On June 20, 2017, the Court issued its Opinion disallowing the Claim. (Docket #18315.)

4. This Motion seeks reconsideration of the Court' decision disallowing the Claim based upon two factors:

    A. The Court should allow the Claim based upon the undisputed evidence that Mr. Owens was an employee of NNI actually paid by NNI. The Court should not base its decision disallowing the Claim based upon the absence of testimony of the specific benefits Mr. Owens provided directly to NNI as the CEO and President of NNI's parent NNC and NNL.

B. The Court should allow the Claim based upon the independent consideration Mr. Owens' provided directly to and for the benefit of NNI in the Termination Agreement; which issue was not addressed in the Court's Order.

5. This Court has the authority to reconsider a claim that has been allowed or disallowed for cause. "A reconsidered claim may be allowed or disallowed according to the equities of the case." *11 USC § 502(j)*. While FRBP 3008 specifically provides for reconsideration of claims Mr. Owens further seeks consideration under FRBP 9024.

**UNDISPUTED FACTUAL BASIS FOR ALLOWANCE OF CLAIM**

**A. THE COURT SHOULD UPHOLD THE CONTEMPORANEOUS DECISION THAT PROVIDED THAT NNI EMPLOY MR OWENS AND NOT IMPOSE AN ADDITIONAL BURDEN, OVER A DECADE AFTER MR. OWENS RETIRED, THAT HE BE REQUIRED TO PRODUCE EVIDENCE OF HIS INDEPENDENT VALUE TO NNI AS AN EMPLOYEE OF NNI.**

6. The Debtors acknowledge that Mr. Owens, while serving as President and Chief Executive Officer of NNC and NNL- the corporate parent of NNI, was an employee of NNI. The following uncontested documentation further establishes his employment by NNI.

- **Mr Owens' Employment Agreement specifically provides that he was an, "employee of Nortel Networks, ("NNI") the Companies principal U.S. operating subsidiary" (Debtors' Ex.1 ¶4.)**

- **Mr. Owens' W-2 for 2004 and 2005 identifies his employer as NNI. (Owens Ex. W-2 Statements.)**

- **The 2005 W-2 Statement and the 2005 Corrected W-2 Statements evidence that Medicare tax was withheld for the earned, but as yet unpaid Special Pension. And, as Mr. Travagliato testified, NNI, as the employer would have paid its portion of the Medicare tax in 2005 on the earned, but unpaid Special Pension included in the NNI W-2.**

- **The Termination Agreement was signed by the SVP of Human Resources for NNI, Mr Owens' employer. (Debtors EX. 3.)**

- **Mr. Owens was required to return the executed Termination Agreement to NNI in North Carolina.**

- **The Termination Agreement was governed by the laws of North Carolina.**

- **The specified benefits identified in the Termination Agreement from NNI, including the Special Pension, were only available to Mr. Owens if he executed the Termination Agreement.**

- **The Termination Agreement imposed significant burdens on Mr. Owens and provided substantial, independent benefits specifically to NNI. (See Argument Below.)**

7.    While the Court concluded, that there was no evidence that Mr. Owens worked for anyone other than NNC and NNL, the Canadian Debtors, that conclusion failed to fully consider the documentary evidence. (Opinion @ 4.) Respectfully, by and through this Motion, Mr. Owens urges that equity requires that the Court consider all the documentary evidence before it. Furthermore, this Court should not retroactively second guess decisions made in 2004, when it is

uncontested that Mr. Owens was retained as an employee of NNI to serve as the President and CEO of NNC and NNL.

> **B. THE COURT DID NOT ADDRESS THE UNCONTESTED FACT THAT NNI WAS THE DIRECT BENEFICIARY OF VALUABLE CONSIDERATION GIVEN TO NNI BY MR. OWENS IN THE TERMINATION AGREEMENT AND FOR WHICH MR. OWENS IS ENTITLED TO A CLAIM AGAINST NNI.**

8. After allowing or disallowing a claim, the court is specifically empowered to reconsider its prior orders, provided that such reconsideration must be for cause "according to the equities of the case". 11 USC §502(j). *See also In re Flagstaff Foodservice Corp.,* 32 B.R. 820, 823 (Bankr.S.D.N.Y.1983); *Karen-Richard Beauty Salon, Inc. v. Fontainebleau Hotel Corp.,* 36 B.R. 896, 898 (Bankr.S.D.Fla.1983). While it is true that a motion for reconsideration should not be used to reargue the facts or applicable law, it is appropriate when the facts were presented but overlooked by the Court. *In re Catholic Diocese of Wilmington, Inc.*, 437 B.R. 488 (Bankr. D. Del. 2010).

9. A manifest injustice would result if the issue of the independent consideration provide by Mr. Owens to NNI in the Termination Agreement is given no weight or consideration. It would be inequitable to allow NNI to have benefitted from the burdens imposed on Mr. Owens without granting him the

Special Pension Benefits provided in exchange for that consideration in the Termination Agreement. *(See*, Termination Agreement ¶¶4&9).

10. The benefits that inured directly to NNI pursuant to the Termination Agreement and that imposed substantial limitations on Mr. Owens include the obligations to:

- **refrain from competition with NNI including not accepting employment with, serving as a consultant or a contractor or representative for a company in competition with NNI without the express written consent of NNI**
- **refrain from soliciting, either directly or indirectly, employees of NNI**
- **release any claims under a litany of U.S. employment laws against NNI**

11. The Termination Agreement is a separate and distinct contract for which NNI attained benefits and which Mr. Owens obtained rights in exchange for granting those benefits.

12. The Termination Agreement is governed by North Carolina law. North Carolina applies basic contract law to Termination Agreements and has held in the context of a Termination Agreement that, "Where the language of a contract is plain and unambiguous, the construction of the agreement is a matter of law; and the court ... must construe the contract as written, in the light of the undisputed evidence as to the custom, usage, and meaning of its terms. ). *KcKinnon v. CV Industries, Inc.*, 713 S.E. 2d. 495, 500 (NC. App. 2011.)

13. Mr. Owens asserts that the Termination Agreement is clear and unambiguous on its face and that his employer and signatory to the Termination Agreement, NNI, is liable to him for the unpaid portion of the Special Pension.

14. To the extent that this Court finds any ambiguity based on its independent questions regarding the reasons for NNI's inclusion in the Termination Agreement however, "it is a fundamental rule of contract construction that the courts construe an ambiguous contract in a manner that gives effect to all of its provisions, if the court is reasonably able to do so." *Id..* Consequently, in order to give effect to all the provisions of the Termination Agreement there is only one conclusion, and that is that NNI is independently liable to Mr. Owens for his Special Pension and the claim against NNI must be allowed.

**Wherefore**, Mr. Owens respectfully prays that this Honorable Court grant the Motion for Reconsideration and Motion Pursuant to FRBP 9024 and allow Mr. Owens' claim.

Dated: July 5, 2017

**MONZACK, MERSKY, MCLAUGHLIN AND BROWDER, P.A.**

*/s/ Rachel B. Mersky*
Rachel B. Mersky (DE #2049)
1201 N. Orange Street, Suite 400
Wilmington, DE  19801
Tel:   (302) 656-8162
Fax:   (302) 656-2769
Email: *rmersky@monlaw.com*

**ATTORNEY FOR WILLIAM A. OWENS**

{00184169.DOCX; 1}    7