## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | ) Chapter 11 |
| | ) Case No. 09-10138 (KG) |
| Nortel Networks Inc., *et al.,*[1] | ) Jointly Administered |
| | ) |
| Debtors. | ) **Objection Deadline:** July 27, 2017 at 4:00 p.m. (ET) |
| | ) **Hearing Date:** Scheduled only if necessary |
| | ) |

**FINAL APPLICATION OF CASSELS BROCK & BLACKWELL LLP
CANADIAN COUNSEL FOR THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS, FOR
ALLOWANCE OF COMPENSATION AND FOR
REIMBURSEMENT OF EXPENSES FOR SERVICES
RENDERED DURING THE PERIOD FROM
MARCH 4, 2014 TO MAY 8, 2017
(All Amounts in Canadian Dollars)**

This is a(n): _____ monthly _____ interim _x_ final application.

| | |
|---|---|
| Name of Applicant: | Cassels Brock & Blackwell LLP |
| Authorized to Provide Professional Services to: | Official Committee of Unsecured Creditors |
| Date of Retention: | March 17, 2014, *Nunc Pro Tunc* to March 4, 2014 |
| Final Period for which Compensation And Reimbursement is sought: | March 4, 2014 to May 8, 2017 |
| Amount of Final Compensation sought as actual, reasonable and necessary: | CDN $7,175,116.75 Equivalent to USD $5,548,517.78[2] |
| Amount of Final Expense Reimbursement sought as actual, reasonable and necessary: | CDN $115,814.59 Equivalent to USD $89,559.42[2] |

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567); and Nortel Networks (CALA) Inc. (4226).

[2] Reuters Exchange Rate on July 6, 2017 was CDN. $1.00 : U.S. $0.7733

**SUMMARY OF LAWYERS AND PARALEGALS
RENDERING SERVICES DURING THE PERIOD
MARCH 4, 2014 THROUGH MAY 8, 2017
(All Amounts in Canadian Dollars)**

| Name of Professional Person | Position of the Applicant, Number of Years in that Position at Current or Prior Firms, Year of Obtaining License to Practice, Area of Expertise[3] | Hourly Billing Rate[4] | Total Billed Hours | Total Compensation Requested |
|---|---|---|---|---|
| Taschina Ashemeade | Student for 1 year; Students Department | $125 | 6.70 | $837.50 |
| Kate Byers | Associate; Lawyer for 2 years; Admitted in 2015; Advocacy Department | $390 | 54.80 | $21,372.00 |
| Robert B. Cohen | Partner; Lawyer for 26 years; Admitted in 1991; Advocacy Departmnet | $915 | 1.20 | $1,098.00 |
| Justin Dick | Student for 1 year; Students Department | $245 | $104.00 | $25,480.00 |
| Jane Dietrich | Partner; Lawyer for 13 years; Admitted in 2004; Financial Restructuring Department | $660 $695 $710 | 219.80 56.80 2.40 | $145,068.00 $39,476.00 $1,704.00 |
| Danielle DiPardo | Student for 1 year; Students Department | $125 | 21.70 | $2,712.50 |
| Hilary Fender | Associate; Lawyer for 2 years; Admitted in 2015; Financial Restructuring Department | $175 $390 | 93.10 45.10 | $16,292.50 $17,589.00 |
| Lauren Grossman | Student for 1 year; Students Department | $125 | 68.50 | $8,562.50 |

[3] The information reflected in this column represents the position and years of experience as of the last interim fee application in which the respective professional or paraprofessional rendered services to the Committee in connection with these chapter 11 cases.

[4] During the Compensation Period, Cassels Brock increased its hourly rates. The compensation totals in this column were calculated using the respective hourly rates in effect at the time the services were rendered.

3.

| Name of Professional Person | Position of the Applicant, Number of Years in that Position at Current or Prior Firms, Year of Obtaining License to Practice, Area of Expertise[3] | Hourly Billing Rate[4] | Total Billed Hours | Total Compensation Requested |
|---|---|---|---|---|
| Stefanie Holland | Associate; Lawyer for 7 years; Admitted in 2010; Advocacy Department | $420 $450 $555 | 904.00 660.30 17.60 | $379,680.00 $297,135.00 $9,768.00 |
| Steven Kennedy | Associate; Lawyer for 8 years; Admitted in 2009; Intellectual Property Department | $450 | 34.40 | $15,480.00 |
| Shayne Kukulowicz | Partner; Lawyer for 27 years; Admitted in 1990; Financial Restructuring Department | $900 $910 $925 | 705.10 547.10 390.30 | $634,590.00 $497,861.00 $361,027.50 |
| Ryan Jacobs | Partner; Lawyer for 13 years; Admitted in 2004; Financial Restructuring Department | $750 $785 $850 | 954.50 534.10 157.10 | $715,875.00 $419,268.50 $133,535.00 |
| Noah Leszcz | Student for 1 year; Students Department | $125 | 113.20 | $14,150.00 |
| Michael Mahoney | Student for 2 years; Students Department | $125 $175 | 67.50 9.10 | $8,437.50 $1,592.50 |
| Deborah McGlynn | Law Clerk for 3 years; Advocacy Department | $320 | 39.30 | $12,576.00 |
| James Morand | Partner; Lawyer for 28 years; Admitted in 1989; Tax Department | $995 | 10.10 | $10,049.50 |
| Matthew Peters | Partner; Lawyer for 15 years; Admitted in 2002; Tax Department | $755 | 1.60 | $1,208.00 |
| J.D. Timothy Pinos | Partner; Lawyer for 37 years; Admitted in 1980; Advocacy Department | $965 | 64.50 | $62,242.50 |
| Rose Plue | Law Clerk for 1 year; Advocacy Department | $320 | 146.80 | $46,976.00 |

4.

| Name of Professional Person | Position of the Applicant, Number of Years in that Position at Current or Prior Firms, Year of Obtaining License to Practice, Area of Expertise[3] | Hourly Billing Rate[4] | Total Billed Hours | Total Compensation Requested |
|---|---|---|---|---|
| Monique Sassi | Associate; Lawyer for 4 years; Admitted in 2013; Financial Restructuring Department | $390<br>$395<br>$420<br>$465 | 575.20<br>144.70<br>121.50<br>17.30 | $224,328.00<br>$57,156.50<br>$51,030.00<br>$8,044.50 |
| Christopher Selby | Associate; Lawyer for 3 years; Admitted in 2014; Advocacy Department | $245<br>$390 | 81.10<br>85.10 | $19,869.50<br>$33,189.00 |
| Geoffrey B. Shaw | Partner; Lawyer for 31 years; Admitted in 1986; Advocacy Department | $945 | 671.70 | $634,756.50 |
| Michelle Sutkiewicz | Student for 1 year; Students Department | $175 | 71.50 | $12,530.00 |
| Kristin Taylor | Partner; Lawyer for 22 years; Admitted in 1995; Employment/Labour Department | $825<br>$850 | 1.00<br>0.80 | $825.00<br>$680.00 |
| Stephanie Voudouris | Associate; Lawyer for 3 years; Admitted in 2014; Advocacy Department | $395<br>$430 | 76.90<br>2.70 | $30,375.50<br>$1,161.00 |
| Daniel Waldman | Associate; Lawyer for 7 years; Admitted in 2010; Advocacy Department | $420 | 197.50 | $82,950.00 |
| Keri Wallace | Associate; Lawyer for 5 years; Admitted in 2012; Financial Restructuring Department | $390 | 19.60 | $7,644.00 |
| Caitlyn Waring | Student for 1 year; Students Department | $245 | 40.30 | $9,873.50 |
| Stephanie Waugh | Law Clerk for 3 years; Financial Restructuring Department | $200 | 1.30 | $260.00 |

5.

| Name of Professional Person | Position of the Applicant, Number of Years in that Position at Current or Prior Firms, Year of Obtaining License to Practice, Area of Expertise[3] | Hourly Billing Rate[4] | Total Billed Hours | Total Compensation Requested |
|---|---|---|---|---|
| Bryan Woodman | Associate; Lawyer for 3 years; Admitted in 2014; Financial Services Department | $245 | 8.00 | $1,960.00 |
| Michael Wunder | Partner; Lawyer for 27 years; Admitted in 1990; Financial Restructuring Department | $795<br>$810<br>$835<br>$850 | 1,131.40<br>693.20<br>629.90<br>134.30 | $899,463.00<br>$561,492.00<br>$525,966.50<br>$114,155.00 |

**[Remainder of Page Intentionally Left Blank]**

6.

| | |
|---|---|
| Total Amount of Fees: | **$7,179,353.50** |
| Less: Non-Working Travel Time Discount (50% of $8,473.50): | **($4,236.75)** |
| Total Amount of Fees after Travel Discount: | **$7,175,116.75** |
| Total Number of Hours: | **10,735.80** |
| Blended Hourly Rate: | **$668.34** |

**COMPENSATION BY PROJECT CATEGORY**
**MARCH 4, 2014 TO MAY 8, 2017**
**(All Amounts in Canadian Dollars)**

| Project Category | Total Hours | Total Fees[5] |
|---|---|---|
| General Case Administration | 0.60 | 483.00 |
| Cassels Brock Fee Application/Monthly Billing Reports | 197.10 | 161,193.00 |
| Creditors Committee Meetings | 374.30 | 300,946.50 |
| Court Hearings | 1,199.10 | 780,307.50 |
| General Claims Analysis/Claims Objections | 842.90 | 610,357.00 |
| CCAA Order/Court-Ordered Charges | 2.90 | 2,262.50 |
| General Adversary Proceedings | 2.40 | 1,851.00 |
| Tax Issues | 18.80 | 17,010.00 |
| Labour Issues/Employee Benefits | 0.50 | 412.50 |
| Plan, Disclosure Statement and Plan Related Documentation | 148.30 | 118,162.50 |
| Asset/Stock Transaction/Business Liquidations | 29.40 | 24,224.00 |
| Travel | 10.70 | 8,473.50 |
| Intercompany Analysis | 5,293.10 | 3,405,205.50 |
| Canadian Proceedings/Matters | 2,611.30 | 1,744,594.50 |
| U.S Proceedings/Matters | 4.40 | 3,870.50 |
| | | |
| **Total** | **10735.8** | **$ 7,179,353.50** |
| *Less: Non-Working Travel Time Discount (50% of $8,473.50)* | | *4,236.75* |
| **TOTAL** | **10735.8** | **$ 7,175,116.75[6]** |

---

[5]  The amounts listed in each project category are approximate and do not reflect downward adjustments for certain time entries that were eliminated pursuant to agreements with the U.S. Trustee and/or the Fee Examiner, or voluntarily omitted from fee applications.

[6]  The total reflects the amount requested in this final Application, which reflects the elimination of certain time entries pursuant to certain agreements with the U.S. Trustee and/or Fee Examiner, or voluntary omissions from fee applications, rather than a sum of the fees allocable to each project category.

**DISBURSEMENT SUMMARY**
**MARCH 4, 2014 TO MAY 8, 2017**
**(All Amounts in Canadian Dollars)**

| | |
|---|---:|
| Agency Fees and Disbursements | 28,113.50 |
| Binding, Tabs, Disks, etc | 3,454.41 |
| Copies | 36,535.00 |
| Corporate Searches | 1,747.60 |
| Courier / Delivery Charges | 1,439.89 |
| Library Computer Searches / Online Searches | 25,118.00 |
| Meals / Beverages | 12,088.22 |
| Minister of Finance | 127.00 |
| Supplies | 122.65 |
| Telephone / Long Distance/Conference Calls | 412.11 |
| Travel / Ground Transportation | 6,656.21 |
| **TOTAL** | **$115,814.59**[7] |

---

[7] The total reflects the amount requested in this final Application, which has been reduced pursuant to agreements with the U.S. Trustee and/or Fee Examiner, or reduced by voluntary omissions from fee applications, rather than a sum of the expenses allocable to each expense category.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------X

|  |  |
|---|---|
| In re | : Chapter 11 |
|  | : Case No. 09-10138 (KG) |
| Nortel Networks Inc., et al., [1] | : Jointly Administered |
|  | : |
| Debtors | :**Objection Deadline:**  July 27, 2017 at 4:00 p.m. (ET) |
|  | :**Hearing Date:** Scheduled only if necessary |

-----------------------------------------------------------X

## FINAL APPLICATION OF CASSELS BROCK & BLACKWELL LLP, CANADIAN COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM MARCH 4, 2014 THROUGH MAY 8, 2017

Cassels Brock & Blackwell LLP ("Cassels Brock" or the "Applicant"), Canadian counsel to the Official Committee of Unsecured Creditors (the "Committee") of Nortel Networks Inc. ("NNI"), et al. (the "Debtors"), hereby submits its final application (the "Application") pursuant to (i) sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), (ii) Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (iii) Rule 2016-2 of the Local Rules of Bankruptcy Procedure for the District of Delaware (the "Local Rules"), (iv) the Administrative Order Pursuant to 11 U.S.C. §§ 105(a) and 331, Fed. R. Bankr. P. 2016 and Del. Bankr. L.R. 2016-2 Establishing Procedures for Interim Compensation and Reimbursement of Fees and Expenses for Professionals and Official Committee Members entered on February 4, 2009 (the "Administrative Fee Order") and (v) the Order Appointing Fee

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567); Nortel Networks (CALA) Inc. ("NN CALA") (4226); and Nortel Networks India International Inc. ("NNIII") (8667).

Examiner and Establishing Related Procedures for Compensation and Reimbursement of

Expenses for Professionals and Consideration of Fee Applications (the "Fee Examiner Order"

and, together with the Administrative Fee Order, the "Fee Orders"), for final allowance of

compensation for services rendered in the aggregate amount of CDN. $7,175,116.75 and for

reimbursement of actual and necessary expenses incurred by Cassels Brock in connection

therewith in the amount of CDN. $115,814.59 for the period from March 4, 2014 through May 8,

2017 (the "Compensation Period").  In support of this Application, Cassels Brock respectfully

states as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and

1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory bases for the relief requested herein

are sections 1103 and 330 of the Bankruptcy Code and Bankruptcy Rules 2002 and 2016(a).

## II.    BACKGROUND

*General Background*

2.    On January 14, 2009 (the "Petition Date"), each of the Debtors filed a voluntary

petition for relief (the "U.S. Proceeding") under chapter 11 of the Bankruptcy Code in the United

States Bankruptcy Court for the District of Delaware (the "Court"), except for NN CALA which

filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009.

3.    Prior to the Effective Date (defined below), the Debtors operated their businesses

and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of

the Bankruptcy Code.  On January 15, 2009, the Court entered an order for the joint

administration of these cases pursuant to Bankruptcy Rule 1015(b) for procedural purposes only.

4.      On January 14, 2009, the Debtors' ultimate corporate parent, Nortel Networks Corporation, together with Nortel Networks Limited ("NNL") and certain of their Canadian affiliates (collectively, the "Canadian Debtors") commenced a proceeding (the "Canadian Proceeding") before the Ontario Superior Court of Justice (the "Canadian Court") for a plan of compromise or arrangement under the Companies' Creditors Arrangement Act (Canada) ("CCAA").  Prior to the Effective Date, the Canadian Debtors operated their businesses and managed their properties and sold the majority of same under the supervision of the Canadian Court, and the Monitor (as that term is defined below).

5.      On January 14, 2009, the High Court of Justice in England (the "U.K. Court") placed nineteen of the Debtors' European affiliates (collectively, the "EMEA Debtors" and, together with the Debtors and the Canadian Debtors, the "Nortel Debtors"), including Nortel Networks U.K. Limited ("NNUK"), into administration (the "European Proceeding" and together with the U.S. Proceeding and Canadian Proceeding, the "Insolvency Proceedings") under the control of individuals from Ernst & Young LLC (the "Administrators").

6.      On January 22, 2009 (the "Committee Formation Date"), pursuant to section 1102 of the Bankruptcy Code, the United States Trustee for the District of Delaware (the "US Trustee") appointed the Committee.  The Committee currently consists of three members, as follows: (i) Delaware Trust, as indenture trustee; (ii) Pension Benefit Guaranty Corporation; and (iii) The Bank of New York Mellon, as indenture trustee.  No trustee or examiner has been appointed in these chapter 11 cases.

7.      On March 5, 2009, the Court authorized the Committee to retain and employ Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") as co-counsel to the Committee, Jefferies & Company, Inc. ("Jefferies") as the Committee's investment banker (the Committee and Jefferies mutually agreed to terminate Jefferies' role as investment banker to the Committee effective as of

August 31, 2012), Capstone Advisory Group, LLC (now Berkeley Research Group, LLC ("BRG") as the Committee's financial advisor, Ashurst LLP ("Ashurst") as the Committee's European counsel, and Kurtzman Carson Consultants, LLC ("KCC") as the Committee's communications agent.

8.    On March 17, 2014, the Court entered an order authorizing the retention of Cassels Brock as Canadian counsel to the Committee, *nunc pro tunc* to March 4, 2014.

9.    On November 4, 2016, the Debtors filed with this Court the *First Amended Chapter 11 Plan of Nortel Networks Inc. and Certain of its Affiliated Debtors* [ECF No. 17347] (as amended from time to time, the "Plan"), and the related *Proposed Disclosure Statement for the First Amended Joint Chapter 11 Plan* [ECF No. 17348] (the "Disclosure Statement"). Following a hearing, on December 1, 2016, this Court entered an order approving the adequacy of the Disclosure Statement and procedures for soliciting votes on the Plan [ECF No. 17516] (the "Disclosure Statement Order").

10.    This Court held a hearing on confirmation of the Plan[2] on January 24, 2017, following which the Court entered the *Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint Chapter 11 Plan of Nortel Networks Inc. and Certain of its Affiliated Debtors* [ECF No. 17795] (the "Confirmation Order").

11.    On May 8, 2017, the Debtors filed the *Notice of Entry of Confirmation Order and Occurrence of Effective Date of First Amended Joint Chapter 11 Plan of Nortel Networks Inc. and Certain Affiliated Debtors* [ECF No. 18176], pursuant to which the Debtors stated that on May 8, 2017 each of the conditions precedent to the effectiveness of the Plan occurred or was waived

---

[2] The final version of the Plan was filed by the Debtors on January 3, 2017 [ECF No. 17763].

in accordance with the provisions of the Plan, and accordingly, the Plan had become effective (such date, the "Effective Date").

*Prior Fee Requests*

12.    On May 30, 2014, Cassels Brock filed its First Interim Fee Application for the Period March 4, 2014 through April 30, 2014 (the "First Interim Application"). In its First Interim Application, Cassels Brock sought the award and allowance of fees in the amount of CDN. $512,610.00 and the reimbursement of expenses in the amount of CDN. $8,055.40. As of the filing of this Application, Cassels Brock has received payment of 100% of the fees and 100% of the expenses requested pursuant to the First Interim Fee Application.

13.    On August 28, 2014, Cassels Brock filed its Second Interim Fee Application for the Period May 1, 2014 through July 31, 2014 (the "Second Interim Application"). In its Second Interim Application, Cassels Brock sought the award and allowance of fees in the amount of CDN. $1,914,760.00 and the reimbursement of expenses in the amount of CDN. $59,471.60. As of the filing of this Application, Cassels Brock has received payment of 100% of the fees and 100% of the expenses requested pursuant to the Second Interim Fee Application.

14.    On November 25, 2014, Cassels Brock filed its Third Interim Fee Application for the Period August 1, 2014 through October 31, 2014 (the "Third Interim Application"). In its Third Interim Application, Cassels Brock sought the award and allowance of fees in the amount of CDN. $802,133.50 and the reimbursement of expenses in the amount of CDN. $19,196.30. As of the filing of this Application, Cassels Brock has received payment of 100% of the fees and 100% of the expenses requested pursuant to the Third Interim Fee Application.

15.    On February 27, 2015, Cassels Brock filed its Fourth Interim Fee Application for the Period November 1, 2014 through January 31, 2015 (the "Fourth Interim Application"). In its Fourth Interim Application, Cassels Brock sought the award and allowance of fees in the

amount of CDN. $235,062.00 and the reimbursement of expenses in the amount of CDN.

$3,354.27. As of the filing of this Application, Cassels Brock has received payment of 100% of

the fees and 100% of the expenses requested pursuant to the Fourth Interim Fee Application.

16.    On May 29, 2015, Cassels Brock filed its Fifth Interim Fee Application for the

Period February 1, 2015 through April 30, 2015 (the "Fifth Interim Application"). In its Fifth

Interim Application, Cassels Brock sought the award and allowance of fees in the amount of

CDN. $220,489,50 and the reimbursement of expenses in the amount of CDN. $882.42. As of

the filing of this Application, Cassels Brock has received payment of 100% of the fees and 100%

of the expenses requested pursuant to the Fifth Interim Fee Application.

17.    On August 31, 2015, Cassels Brock filed its Sixth Interim Fee Application for the

Period May 1, 2015 through July 31, 2015 (the "Sixth Interim Application"). In its Sixth Interim

Application, Cassels Brock sought the award and allowance of fees in the amount of CDN.

$1,054,012.00 and the reimbursement of expenses in the amount of CDN. $5,257.39 (as a result

of a calculation error in its Sixth Interim Application, Cassels Brock agreed with the U.S. Trustee

to reduce its request for fees to CDN. $1,053,742.00). As of the filing of this Application,

Cassels Brock has received payment of 100% of the (reduced) fees and 100% of the expenses

requested pursuant to the Sixth Interim Fee Application.

18.    On November 30, 2015, Cassels Brock filed its Seventh Interim Fee Application

for the Period August 1, 2015 through October 31, 2015 (the "Seventh Interim Application"). In

its Seventh Interim Application, Cassels Brock sought the award and allowance of fees in the

amount of CDN. $688,816.75 and the reimbursement of expenses in the amount of CDN.

$1,999.23. As of the filing of this Application, Cassels Brock has received payment of 100% of

the fees and 100% of the expenses requested pursuant to the Seventh Interim Fee Application.

19.     On February 29, 2016, Cassels Brock filed its Eighth Interim Fee Application for the Period November 1, 2015 through January 31, 2016 (the "Eighth Interim Application").  In its Eighth Interim Application, Cassels Brock sought the award and allowance of fees in the amount of CDN. $245,702.50 and the reimbursement of expenses in the amount of CDN. $511.13.  As of the filing of this Application, Cassels Brock has received payment of 100% of the fees and 100% of the expenses requested pursuant to the Eighth Interim Fee Application.

20.     On May 31, 2016, Cassels Brock filed its Ninth Interim Fee Application for the Period February 1, 2016 through April 30, 2016 (the "Ninth Interim Application").  In its Ninth Interim Application, Cassels Brock sought the award and allowance of fees in the amount of CDN. $201,475.50 and the reimbursement of expenses in the amount of CDN. $573.19.  As of the filing of this Application, Cassels Brock has received payment of 100% of the fees and 100% of the expenses requested pursuant to the Ninth Interim Fee Application.

21.     On August 31, 2016, Cassels Brock filed its Tenth Interim Fee Application for the Period May 1, 2016 through July 31, 2016 (the "Tenth Interim Application").  In its Tenth Interim Application, Cassels Brock sought the award and allowance of fees in the amount of CDN. $581,406.50 and the reimbursement of expenses in the amount of CDN. $2,854.01.  As of the filing of this Application, Cassels Brock has received payment of 100% of the fees and 100% of the expenses requested pursuant to the Tenth Interim Fee Application.

22.     On November 30, 2016, Cassels Brock filed its Eleventh Interim Fee Application for the Period August 1, 2016 through October 31, 2016 (the "Eleventh Interim Application").  In its Eleventh Interim Application, Cassels Brock sought the award and allowance of fees in the amount of CDN. $276,131.00 and the reimbursement of expenses in the amount of CDN. $11,150.34.  As of the filing of this Application, Cassels Brock has received payment of 100% of the fees and 100% of the expenses requested pursuant to the Eleventh Interim Fee Application.

23.     On February 28, 2017, Cassels Brock filed its Twelfth Interim Fee Application for the Period November 1, 2016 through January 31, 2017 (the "Twelfth Interim Application"). In its Twelfth Interim Application, Cassels Brock sought the award and allowance of fees in the amount of CDN. $240,052.00 and the reimbursement of expenses in the amount of CDN. $1,205.84. As of the filing of this Application, Cassels Brock has received payment of 100% of the fees and 100% of the expenses requested pursuant to the Twelfth Interim Fee Application.

24.     On May 19, 2017, Cassels Brock filed its Thirty-Sixth Monthly Application for Interim Allowance of Compensation and Reimbursement of Expenses for Services Rendered During the Period February 1, 2017 through February 28, 2017 (the "Thirty-Sixth Monthly Application"). In its Thirty-Sixth Monthly Application, Cassels Brock sought the award and allowance of fees in the amount of CDN. $84,949.00 and the reimbursement of expenses in the amount of CDN. $226.70. As of the filing of this Application, Cassels Brock has received payment of 80% of the fees and 100% of the expenses requested in the Thirty-Sixth Monthly Application.

25.     On May 26, 2017, Cassels Brock filed its Thirty-Seventh Monthly Application for Interim Allowance of Compensation and Reimbursement of Expenses for Services Rendered During the Period March 1, 2017 through March 31, 2017 (the "Thirty-Seventh Monthly Application"). In its Thirty-Seventh Monthly Application, Cassels Brock sought the award and allowance of fees in the amount of CDN. $51,235.50 and the reimbursement of expenses in the amount of CDN. $984.00. As of the filing of this Application, Cassels Brock has not received payment of the fees and the expenses requested in the Thirty-Seventh Monthly Application.

26.     On May 30, 2017, Cassels Brock filed its Thirty-Eighth Monthly Application for Interim Allowance of Compensation and Reimbursement of Expenses for Services Rendered During the Period April 1, 2017 through April 30, 2017 (the "Thirty-Eighth Monthly

Application"). In its Thirty-Eighth Monthly Application, Cassels Brock sought the award and allowance of fees in the amount of CDN. $51,290.00 and the reimbursement of expenses in the amount of CDN. $84.80. As of the filing of this Application, Cassels Brock has not received payment of the fees and the expenses requested in the Thirty-Eighth Monthly Application.

27.    On May 30, 2017, Cassels Brock filed its Thirteenth Interim Fee Application for the Period February 1, 2017 through April 30, 2017 (the "Thirteenth Interim Application"). In its Thirteenth Interim Application, Cassels Brock sought the award and allowance of fees in the amount of CDN. $187,474.50 and the reimbursement of expenses in the amount of CDN. $1,295.50.

28.    On June 21, 2017, Cassels Brock filed its Thirty-Ninth Monthly Application for Interim Allowance of Compensation and Reimbursement of Expenses for Services Rendered During the Period May 1, 2017 through May 8, 2017 (the "Thirty-Ninth Monthly Application"). In its Thirty-Ninth Monthly Application, Cassels Brock sought the award and allowance of fees in the amount of CDN. $15,261.00 and the reimbursement of expenses in the amount of CDN. $7.97. As of the filing of this Application, Cassels Brock has not received payment of the fees and the expenses requested in the Thirty-Ninth Monthly Application.

### III.    RELIEF REQUESTED

29.    Cassels Brock seeks (i) final allowance and award of compensation for the professional services rendered by Cassels Brock as co-counsel to the Committee during the Compensation Period in the amount of CDN. $7,175,116.75, representing 10,735.80 hours of professional and paraprofessional services; and (ii) reimbursement of actual and necessary expenses incurred by Cassels Brock during the Compensation Period in connection with the rendition of such professional and paraprofessional services in the amount of CDN. $115,814.59.

30.      Cassels Brock has received no payment and no promises for payment from any

source for services rendered in connection with these chapter 11 cases other than in accordance

with the Fee Orders.  There is no agreement or understanding between the Applicant and any

other person (other than members of Cassels Brock) for the sharing of compensation to be

received for the services rendered in these cases.

31.      As stated in the Affirmation of Michael J. Wunder, Esq. (the "Wunder

Affirmation"), annexed hereto as Exhibit A, all of the services for which interim compensation is

sought herein were rendered for or on behalf of the Committee solely in connection with these

cases.

## IV.      SUMMARY OF SERVICES RENDERED

32.      Cassels Brock has rendered professional services to the Committee as requested

and as necessary and appropriate in furtherance of the interests of the Debtors' unsecured

creditors during the Compensation Period.  The variety and complexity of the issues in these

Insolvency Proceedings, including the Canadian Proceeding, and the need to act or respond to

issues on an expedited basis in furtherance of the Committee's needs have required the

expenditure of significant time by Cassels Brock personnel from several legal disciplines.

33.      In the ordinary course of its practice, Cassels Brock maintains written records of

the time expended by lawyers and paraprofessionals in the rendition of their professional

services.  In accordance with the provisions of the Fee Orders, a compilation showing the name

of the lawyer or paraprofessional, and the amount of time spent in performing the services for the

Committee during the Compensation Period is annexed hereto as Exhibit B.

34.      In the ordinary course of its practice, Cassels Brock also maintains records of all

actual and necessary out-of-pocket expenses incurred in connection with the rendition of its

services, all of which are available for inspection. A schedule of the categories of expenses and amounts for which reimbursement is requested is annexed hereto as Exhibit C.

35.    Cassels Brock respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and appropriate, and have directly contributed to the effective administration of these chapter 11 cases, including the Committee's interest in the Canadian Proceeding.

36.    The following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in the monthly fee applications previously filed by Cassels Brock for work completed during the Compensation Period. Rather, it is merely an attempt to highlight certain of those areas in which services were rendered to the Committee, as well as to identify some of the issues that Cassels Brock was required to address.[3]

### Canadian Proceedings

(Fees: CDN. $1,744,594.50; Hours: 2,611.30)

37.    During the Compensation Period, Cassels Brock analyzed court filings and orders sought in connection with various relief being sought in the Canadian Proceeding. Cassels Brock also reviewed and analyzed material filed with the Canadian Court by the Canadian Debtors and Ernst & Young Inc. in its capacity as the CCAA monitor of the Canadian Debtors (the "Monitor") in the Canadian Proceeding. Cassels Brock, with the assistance of Akin Gump, ensured that the Committee had a complete understanding of the Canadian Proceeding and was apprised of all material developments in the Canadian Proceeding through regular updates and, as appropriate, detailed memoranda. Cassels Brock lawyers spent considerable time working

---

[3] To the extent the Court, the U.S. Trustee or the Fee Examiner request copies of the Interim Applications and the prior monthly applications filed by Cassels Brock during these chapter 11 cases, Cassels Brock will provide such parties with requested copies.

with counsel for the material parties involved in the Canadian Proceeding (including Canadian

counsel for the Debtors, the bondholder group, and the Monitor) to protect the interests of the

Debtors and their unsecured creditors.

38.    Cassels Brock spent considerable time in connection with the Canadian

Proceedings during the Compensation Period including litigation in the Canadian Proceeding.

### **Cassels Brock Fee Application/Monthly Billing Rates**

(Fees: CDN. $161,193.00; Hours: 197.10)

39.    This subject matter relates to time spent reviewing invoices and drafting monthly

and interim fee statements as required under the Fee Orders, including paraprofessional and

attorney time to ensure that such materials do not improperly disclose highly confidential

information related to the Debtors' businesses or these chapter 11 cases.

### **Committee Meetings**

(Fees: CDN. $300,946.50; Hours: 374.30)

40.    This subject matter relates to Committee matters, meetings and conference calls

with the Committee as a whole, and with the Committee's other legal and financial advisors.  In

addition, during the Compensation Period, Cassels Brock had numerous telephonic conferences

with Akin Gump and other Committee advisors.

41.    Prior to its meetings with the Committee, Cassels Brock reviewed each pending

matter requiring the Committee's attention and underlying documentation in connection

therewith, including in connection with the Canadian Proceeding.  Thereafter, Cassels Brock

discussed each of these matters with Akin Gump and the Committee's other advisors and the

Committee.  During these discussions, Cassels Brock assisted the Committee in formulating a

position with respect to various pending matters.

42.     During the Compensation Period, Cassels Brock, together with Akin Gump, routinely held meetings with the professionals assigned to this matter to ensure that Cassels Brock was representing the Committee on Canadian issues in an efficient manner to minimize costs to these estates.  Cassels Brock also regularly consulted with Akin Gump and BRG with respect to Canadian legal issues on documents and other information received from the Debtors and their representatives, and other sources.

43.     Through meetings, telephone conferences, and correspondence, Cassels Brock has assisted the Committee in fulfilling its statutory duties to make informed decisions regarding the various issues that have arisen in the Canadian Proceeding, as same relate to the Debtors, to monitor the Debtors' involvement in the Canadian Proceeding, and to reach independent conclusions on the merits of specific matters.

### Court Hearings

(Fees: CDN. $780,307.50; Hours: 1,199.10)

44.     Cassels Brock attorneys appeared at nearly all of the hearings and chambers conferences held before the Canadian Court during the Compensation Period.  In addition, when appropriate and necessary, Cassels Brock appeared before the Canadian appellate courts with respect to the Canadian Proceedings.  Cassels Brock attorneys actively represented the Committee with respect to the matters being considered at these hearings.  Additionally, Cassels Brock attorneys prepared for the hearings by reviewing all applicable motions and briefs filed in connection therewith, including any responses thereto, and consulted with the Committee and the Committee's other advisors, as well as the Debtors' advisors, to formulate appropriate strategies.  Cassels Brock's participation at all hearings was necessary to protect the interests of unsecured creditors of the Debtors.

### General Claims Analysis/Claims Objections

(Fees: CDN. $610,357.00; Hours: 842.90)

45.     This subject matter relates to time spent by Cassels Brock attorneys reviewing and analyzing issues surrounding the claims that have been filed or asserted in the Debtors' chapter 11 cases and in the Canadian Debtors' Canadian Proceeding, and disputes arising therefrom. Cassels Brock's efforts also included considerable time reviewing and analyzing the assets and liabilities for the Debtors to properly understand the magnitude of claims against the estates of the Canadian Debtors, particularly as a result of the large intercompany claim owing by the Canadian Debtors to the Debtors.  Additionally, following the general claims bar date in the Canadian Proceeding, Cassels Brock worked with the Committee's financial advisors to analyze the breadth of claims filed against the Canadian Debtors.

46.     Cassels Brock monitored the attempts of the Canadian Debtors to resolve claims and any motions filed by claimants related to their claims and updated and advised the Committee on all such developments.

### Intercompany Issues

(Fees: CDN. $3,405,205.50; Hours: 5,293.10)

47.     This subject matter relates to time spent by Cassels Brock attorneys reviewing and analyzing certain intercompany issues arising among the various Nortel entities around the world, and the impact of such issues on the Insolvency Proceedings.  Cassels Brock attorneys, along with the Committee's other professionals, spent considerable time during the Compensation Period analyzing and examining issues related to the allocation of the asset sale proceeds and discussing such issues with the Committee and with other parties.  These issues were of paramount importance to these chapter 11 cases and the Canadian Proceeding, and Cassels Brock professionals devoted time to them throughout the course of these proceedings.

48.     Following the failure of the first two mediations to try to settle the dispute regarding the allocation of sale proceeds among the Nortel estates (the "Allocation Dispute"), on March 8, 2013, this Court and the Canadian Court approved a protocol for the litigation of the Allocation Dispute before the two courts in a joint trial (the "Allocation Trial"). The Allocation Trial began on May 12, 2014. The evidentiary portion of the allocation trial concluded on June 24, 2014, and closing arguments concluded on September 24, 2014. Cassels Brock attorneys, on behalf of the Committee, participated in every aspect of the Allocation Trial, advocating for the positions of the U.S. estate and its creditors for the allocation of the proceeds from the sale of the worldwide Nortel assets and business lines.

49.     On May 12, 2015, the Court and the Canadian Court issued decisions (respectively, the "U.S. Allocation Decision" and the "Canadian Allocation Decision" and, collectively, the "Allocation Decisions") allocating the sale proceeds based on a "modified pro-rata" methodology.

50.     Akin Gump, on behalf of the Committee in the U.S. Proceeding, filed a joinder with reservation of rights to the Debtors' motion for reconsideration of the U.S. Allocation Decision and, Cassels Brock, on behalf of the Committee in the Canadian Proceeding, filed a joinder to the Debtors' motion for reconsideration of the Canadian Allocation Decision. On June 25, 2015, the Courts held a joint hearing regarding the motions for reconsideration of the Allocation Decisions. On July 6, 2015, the Courts issued decisions with respect to the reconsideration motions, which upheld the "modified pro rata" allocation methodology. Cassels Brock together with the Committee's other advisors, participated in various appeals and leave to appeal the applications regarding the Allocation Decisions in the U.S. and Canada.

51.     Cassels Brock attorneys carefully considered the issues on the leave to appeal application and coordinated with other parties in interest regarding their approach to the appeals of the Canadian Allocation Decision.

52.     A further mediation ultimately resulted in a proposed settlement of the Allocation Dispute pursuant to the Settlement and Plans Support Agreement (the "<u>SPSA</u>").  During the Compensation Period, Cassels Brock vigorously represented the interests of the Committee in negotiations to prepare and settle the SPSA, which the Committee believed was in the best interest of the Debtors' unsecured creditors.  The terms of the SPSA are incorporated in the Plan and the Canadian Plan, as confirmed and sanctioned, respectively.

<b><u>Plan and Plan Related Documents</u></b>

(Fees: CDN. $118,162.50; Hours: 148.30)

53.     This subject matter relates to time spent by Cassels Brock attorneys related to the Canadian Plan and the Canadian Information Circular, and related documents.  During the Compensation Period, Cassels Brock attorneys communicated and negotiated extensively with the Debtors and the Canadian Debtors and other parties in interest regarding the Canadian Plan and Canadian Information Circular and reviewed, negotiated and provided comments to numerous drafts of each.  Through communications with the full Committee, as well as with individual Committee members, Cassels Brock attorneys kept the Committee apprised of issues raised by the terms of the Canadian Plan and the Canadian Information Circular, and their impact on the Debtors.

54.     During the Compensation Period on December 1, 2016, a motion was heard by the Canadian Court which issued an order (i) accepting the filing of the Canadian Plan, (ii) authorizing the classification of creditors for purposes of voting on the Canadian Plan, (iii) authorizing and directing the Monitor to call, hold and conduct a meeting of affected unsecured

creditors to vote on the Canadian Plan, (iv) authorizing and directing the mailing and distribution of the meeting materials for voting on the Canadian Plan, (v) approving the procedures for the meeting of creditors, and (vi) setting a date for a hearing to approve the Canadian Plan.  After the requisite majorities of creditors of the Canadian Debtors voted to approve the Canadian Plan in accordance with the CCAA, the Canadian Court issued an order on January 24, 2017 approving and sanctioning the Canadian Plan.

55.     After the Canadian Plan and Canadian Information Circular were approved by the Canadian Court, Cassels Brock attorneys reviewed and analyzed potential issues surrounding confirmation of the Canadian Plan and advised the Committee regarding such analysis.

## Non-Working Travel

(Fees: CDN. $8,473.50; Hours 10.70)

56.     During the Compensation Period, Cassels Brock attorneys spent 10.70 non-working hours traveling to court hearings and/or meetings.  Pursuant to Local Rule 2016-2(d)(viii), Cassels Brock has discounted this time by 50% and, accordingly, has billed 4,236.75 working hours traveling for the Compensation Period.

## V.     ALLOWANCE OF COMPENSATION

57.     The professional services rendered by Cassels Brock required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by the Committee could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort.  It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited not only the members of the Committee, but also the unsecured creditor body as a whole and the Debtors' estates.

58.    The allowance of interim compensation for services rendered and reimbursement

of expenses in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> . . . any professional person . . . may apply to the court not more than once every
> 120 days after an order for relief in a case under this title, or more often if the
> court permits, for such compensation for services rendered . . . as is provided
> under section 330 of this title.

11 U.S.C. § 331.  Moreover, this Court has authorized the filing of this Application pursuant to

the Fee Orders and the Plan.

59.    With respect to the level of compensation, 11 U.S.C. § 330(a)(1)(A) provides, in

pertinent part, that the Court may award to a professional person "reasonable compensation for

actual, necessary services rendered . . . ."  11 U.S.C. § 330(a)(1)(A).  Section 330(a)(3), in turn,

provides that:

> In determining the amount of reasonable compensation to be awarded . . . the
> court shall consider the nature, the extent, and the value of such services, taking
> into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or
> beneficial at the time at which the service was rendered toward the
> completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of
> time commensurate with the complexity, importance, and nature of the
> problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board
> certified or otherwise has demonstrated skill and experience in the
> bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary
> compensation charged by comparably skilled practitioners in cases other
> than cases under this title.

11 U.S.C. §330(a)(3).  The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

60.     The total time spent by Cassels Brock lawyers and paraprofessionals during the Compensation Period was 10,735.80 hours.  The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task. Cassels Brock believes that the compensation requested in the Application is based on the customary compensation charged by comparably skilled practitioners in cases other than these cases under Title 11 of the United States Bankruptcy Code.

61.     As shown by this application and supporting documents, Cassels Brock spent its time economically and without unnecessary duplication of time.  Cassels Brock's rates are subject to periodic increases in the normal course of its business.  Attached hereto as <u>Exhibit A</u> is a schedule of the hours expended by the lawyers and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.  In addition, Cassels Brock incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of CDN. $115,814.59 for which Cassels Brock respectfully requests reimbursement in full.

62.     The disbursements and expenses have been incurred in accordance with Cassels Brock's normal practice of charging clients for expenses clearly related to and required by particular matters.  Cassels Brock has endeavored to minimize these expenses to the fullest extent possible.  Expenses for which reimbursement is sought include expenses incurred in prior months, but not previously billed.  This is because expenses are billed in the month processed, which can slightly lag the time of incurrence.

63.    Cassels Brock's billing rates do not include charges for photocopying, telephone and facsimile charges, computerized research, travel expenses, "working meals," postage and certain other office services, since the needs of each client for such services differ.  Cassels Brock believes that it is fairest to charge each client only for the services actually used in performing services for it.  In these proceedings, Cassels Brock charges $.10 per page for internal duplicating.

64.    No agreement or understanding exists between Cassels Brock and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

65.    No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period, other than in accordance with the Fee Orders as describe above.


**[The Remainder of Page Intentionally Left Blank]**

**WHEREFORE**, Cassels Brock respectfully requests that this Court:

(a)    approve the allowance of CDN. $7,175,116.75 (USD$5,548,517.78[4])for

compensation for professional services rendered to the Committee during the Compensation

Period (from March 4, 2014 through and including May 8, 2017); and

(b)    approve the reimbursement of Cassels Brock's out-of-pocket expenses

incurred in connection with the rendering of such services during the Compensation Period in the

amount of CDN. $115,814.59 (USD$89,559.42[4]).


Dated:    Toronto, Ontario
          July 6, 2017

                        **CASSELS BROCK & BLACKWELL LLP**

                        By:_____
                            Michael J. Wunder (*pro hac vice*)
                            A Member of the Firm

                        Suite 2100, Scotia Plaza
                        40 King Street West
                        Toronto, Ontario  M5H 3C2
                        (416) 869-5300
                        Canadian Counsel to the Official Committee of
                        Unsecured Creditors


---

[4] Reuters Exchange Rate on July 6, 2017 was CDN. $1.00 : U.S.$0.7733

Legal*44061220.6