**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTEL NETWORKS INC., *et al.* | ) | Case No. 09-10138(KG) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Re: D.I. 17432** |

**OPINION RE MOTION TO AMEND PROOFS OF CLAIM**

SNMP Research International, Inc. ("SNMPRI") and SNMP Research, Inc. ("SNMPR") (collectively, "SNMP") have moved for (1) authority for SNMPRI to file amended proofs of claim against certain U.S. Debtors, and (2) an Order adding SNMPR as a claimant in the claims. *See* Motion of SNMP Research, Inc. and SNMP Research International, Inc. to Amend Proofs of Claim and Add SNMP Research, Inc. as Claimant, filed on November 23, 2016 (D.I. 17432) (the "Motion to Amend"). The facts are somewhat involved and important to the relief SNMP is seeking and the reasons for the Court's decision. The Court will deny the Motion to Amend, both the filing of SNMPRI's amended proofs of claim (the "Proposed Claims") and adding SNMPR as a claimant. The Court explains its reasons below.

**RELEVANT FACTS**

SNMP are both Tennessee corporations with their principal place of business located in Knoxville, Tennessee. Declaration of Dr. Jeffrey D. Case, dated November 23, 2016 ("Case Dec.") ¶ 1. Jeffrey D. Case ("Dr. Case") owns 100% of SNMPR and his wife, Mary Case, owns 100% of SNMPRI. *Id.* SNMPR owns software (the "Software") which

it licensed to SNMPRI. *Id.* at ¶ 4. SNMPRI sells and licenses the Software to customers. SNMPR owns copyrights in the Software that SNMPRI licenses to customers. *Id.*

The Debtors located in the United States (the "Debtors") executed a license agreement from SNMPRI to use certain of the Software. The date of the license was December 23, 1999 (the "License").

On January 14, 2009, the Debtors (other than two entities) filed for bankruptcy under Chapter 11 of the Bankruptcy Code. The Court thereafter entered an Order on August 4, 2009, setting the deadline to file proofs of claim against the Debtors. The deadline was September 30, 2009 (the "Bar Date").

Prior to the Bar Date, SNMPRI filed proofs of claim (the "Original Claim") against the Debtors on September 29, 2009. Case Dec., ¶ 6. SNMPRI asserted a claim for $22,281.00 for unpaid royalties and other fees under the License. In the Original Claim, SNMPRI added "plus any and all additional amounts associated with royalties that have not been reported by the Debtors," and SNMPRI "reserve[d] the right to modify or amend this proof of claim to assert additional claims as they arise." Case Dec., ¶ 6. The Debtors objected to the Original Claim (D.I. 3507), SNMPRI responded (D.I. 3759) and the parties engaged in discovery. The hearing on the objection was continued.

SNMPRI filed amendments to the Original Claim. The amendments are as follows:

> First Amendment (October 14, 2010). SNMPRI sought $1,517,038 which included the Original Claim plus $1,494,946.00 for licensing fees, royalties and interest for use of the Software in the MG 9000 product. Case Dec., ¶ 8.

Second Amendment (May 5, 2011). SNMPRI sought $5,370,594, which is the amount in the First Amendment plus an additional $3,853,309 for the use of "Bay Products," plus $247 for use in the Universal Signaling Point product. SNMPRI also asserted claims for unknown amounts under the U.S. Copyright Act, trade secret and other laws, and any additional licensing fees and royalties. SNMPRI also reserved the right to modify or amend the Second Amendment. Case Dec., ¶ 9.

Third Amendment (September 9, 2011). SNMPRI asserted a claim for $7,549,323, consisting of the amount in the Second Amendment with an increase for the use of MG9000 from $1,494,946 to $3,673,675. Case Dec., ¶ 13.

Fourth Amendment (December 20, 2012). SNMPRI asserted a claim of $8,414,695, in which it added $865,372 to its Third Amendment for the use of "GEM." Case Dec., ¶ 19.

Fifth Amendment (October 7, 2015). SNMPRI asserted a claim for $8,414,695 (the same amount as in the Fourth Amendment) to add claims for unknown amounts for the use of SMC 2450 and PP8600 products. Case Dec., 20.

SNMP has now sought to file its Proposed Claims. SNMPRI seeks $81,102,247 for violations of the U.S. Copyright Act consisting of actual damages ($33,120,000), profits ($39,270,000), pre-judgment interest ($8,690,000); and unpaid royalties ($22,092).

SNMP are seeking authority to file the Proposed Claims. SNMP are also asking for authority to add SNMPR as a claimant. The reason SNMPRI submits to add SNMPR as a claimant is that "SNMPRI's own copyrights are distinct from those of SNMPR, and thus it is possible that SNMPRI's copyright claims could fail under the facts while SNMPR's copyright claims could succeed." Motion to Amend, page 4.

It is important to recognize that SNMP have an adversary proceeding pending before the Court (Adv. Pro. No. 11-53454) in which SNMP seek damages post-Petition for copyright infringement, misappropriation of trade secrets and breach of contract. In the

adversary proceeding, commenced on November 2, 2011, both SNMPR and SNMPRI are named plaintiffs. The Proposed Claims are an attachment to the Motion to Amend not filed until November 23, 2016, more than seven years after the Bar Date.

**ANALYSIS**

The issues which the Motion to Amend raises are: (1) whether SNMP can file the Proposed Claims, and (2) if SNMP can add SNMPR as a claimant. The answer to both issues is "no."

The Proposed Claims

In its Original Claim, SNMPRI was the sole claimant and articulated a claim for $22,092 for unpaid royalties for the period just prior to the Petition Date and a claim for $247 for unpaid royalties for the Universal Signaling Point product. SNMPRI then amended its claim five times and arrived at $8,414,695 as its alleged contractual royalties claim. In the Proposed Claims, SNMPRI has converted its claim for contractual royalties to a claim for more than $81 million of alleged copyright infringement damages.

The Proposed Claims rely on the report of SNMP's expert, Ian Ratner. The claim amount, $81 million, is almost ten times more than the prior filed proofs of claim (i.e., the Original Claim and the five amendments). SNMPRI is seeking to add SNMPR as a claimant because it may be unable to bring the infringement claims for copyrights it does not own.

The Proposed Claimant

SNMP argues at great length that SNMPR is entitled to be added as a claimant through the Proposed Claims. What compels the Court's decision not to permit the

addition of SNMPR is that SNMP are seeking to add a claimant over seven years after the Bar Date. There is no excusable neglect to justify the late filing. Instead, SNMP baldly asserts:

> ¶ 18. In hindsight, Dr. Case recognizes that he should have asked to file separate proofs of claim for SNMPR when the First Amended NNI Claim was filed by SNMPRI in October 2010 asserting unlicensed uses of the Software, shortly after it was first discovered that the Software was being used outside the scope of the Nortel License. Dr. Case's failure to seek to file separate proofs of claim for SNMPR in October 2010 was based on his mistaken belief at the time that SNMPRI's proofs of claim were sufficient to cover violations of both SNMPRI's and SNMPR's rights in the Software, given that SNMPRI was the party to the Nortel License.

The Motion to Amend, pages 7-8 (citations omitted).

The foregoing "explanation" of why SNMPR did not join in the claims shows that the mistake was not "excusable." Ignorance of the law is not excusable neglect. *See*, *e.g.*, *Rasberry v. Garcia*, 448 F. 3d 1150, 1154 (9th Cir. 2006) (pro se petitioner was not excused from filing a time-barred habeas petition because the absence of legal sophistication was not deemed to be an extraordinary circumstance); *Graphic Commc'ns Int'l Union, Local 12-1 v. Quebecor Printing Providence, Inc.*, 270 F. 3d 1, 6 (1st Cir. 1001) (finding of excusable neglect is not based on misunderstanding of the law); *Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F. 2d 968, 971 (6th Cir. 1974) (misconception of law does not excuse late presentation of a theory of recovery).

In its eighty-two pages of briefing, SNMP do not make a case which justifies the addition of SNMPR. The arguments range from: it will not add to the burden on Debtors because there is the adversary proceeding and the parties have agreed to try the claims and the adversary proceeding together, to excusable neglect, to the importance to SNMP

to permit the addition, to relation back, to Rule 17 allegedly permitting the addition of a new party to a claim, to the "conduct test. All of those arguments are unavailing.

1. *The Adversary Proceeding*

SNMPRI and SNMPR are plaintiffs in an adversary proceeding in which they seek (1) actual damages and profits against Debtors for the improper post-Petition use of Software, (2) profits from Debtors' sale of their business lines, and (3) contributory liability for use by others of the Software. The claims in the adversary proceeding are procedurally consolidated with the proofs of claim so SNMP's argument apparently is, why not allow SNMPR to be added to the pre-Petition proof of claim since the pre-Petition claims can readily be tried with the post-Petition claims. The reason the Court is denying the addition of SNMPR is plain and simple. SNMP missed the Bar Date by seven years. It is not sufficient for SNMP to argue that SNMPR is a plaintiff in the post-Petition Adversary Proceeding. Debtors are correct when they argue that ignorance of the governing law does not amount to excusable neglect or understandable mistake. Further, and perhaps most importantly, SNMPR (along with SNMPRI) filed the adversary proceeding in November 2011. They filed the Proposed Claims and made the effort to add SNMPR five years later.

2. *Bar Date*

Bankruptcy Rule 3003(c)(3) directs the bankruptcy court in which a case is pending to establish a bar date, i.e., the date beyond which proofs of claim are late and to be disallowed, with exception. The bar date is important to the administration of the case as it brings certainty to a debtor's case by enabling the debtor and its creditors to know

the amount of claims which exist. *In re Manville Forest Products Corp.*, 89 B.R. 358, 374 (Bankr. S.D.N.Y. 1988); and *In re Keene Corp.*, 188 B.R. 903, 907 (Bankr. S.D.N.Y. 1995). A bar date can be thought of as akin to a statute of limitations, and must be followed. *United States v. Kolstad* (*In re Kolstad*), 928 F.2d 171, 173 (5th Cir. 1991).

"The decision to grant or deny an amendment to a timely-filed proof of claim rests with the sound discretion of the bankruptcy judge." *In re Enron Corp.*, 328 B.R. 75, 86 (Bankr. S.D.N.Y. 2005). It is vital that the bankruptcy court make certain that the amendment is an amendment and not a new claim. *Id.*

The test for "lateness" and late filing of a claim emanates from *Pioneer Investment Services Co. v. Brunswick Associates L.P.*, 507 U.S. 380 (1993). In *Pioneer*, the Supreme Court set the limits of the "somewhat elastic concept" of excusable neglect. *Id.* at 392. The Supreme Court balanced "neglect" and "excusable neglect." The Supreme Court stated with respect to "neglect" that "reading Rule 9006(b)(1) inflexibly to exclude every instance of an inadvertent or negligent omission would ignore the most natural meaning of the word 'neglect' and would be at odds with the accepted meaning of that word in analogous contexts." *Id.* at 394-95. The Supreme Court did, however, observe that requiring the "neglect" to be "reasonable" would "deter creditors or other parties from freely ignoring court-ordered deadlines in the hopes of winning a permissive reprieve under Rule 9006(b)(1)." *Id.* at 395. In finding what is "excusable neglect," the Supreme Court "conclude[d] that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission . . . ." The circumstances for a court to consider include "the danger of prejudice to the debtor, the length of the

delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395.

In its review of cases, the Court is left to understand that courts take a "hard line" when applying the *Pioneer* test. In *Midland Cogeneration Venture Limited Partnership v. Enron Corp.* (*In re Enron Corp.*), 419 F. 3d 115 (2d Cir. 2005), the Second Circuit Court of Appeals affirmed the bankruptcy and district courts' denial of an effort to amend a proof of claim. The court stated that: "As we observed . . . other courts have, for the most part, adopted a similar 'hard line' to applying *Pioneer* that emphasizes the reason for the delay." *Id.* at 123. The *Enron* court noted that each of the four *Pioneer* factors do not carry equal weight and that the excuse for a late filing is most important. *Id.* The *Enron* court thereupon cited numerous cases from other circuit courts firmly applying the excusable neglect factors. *Id.* at 123-24. *See also Hefta v. Official Committee of Unsecured Creditors* (*In re American Classic Voyages Co.,*), 405 F. 3d 127, 134 (3d Cir. 2005) (there was no excusable neglect because delay was avoidable and within claimant's control); *In re Lehman Brothers Holdings Inc.*, 433 B.R. 113, 127 (Bankr. S.D.N.Y. 2010) (movants' reasons for their late filing "demonstrate a lack of care or thoughtful attention to the preparation and filing of their proofs of claim."); and *In re J.S. II, L.L.C.*, 389 B.R. 563, 569 (no excusable neglect in belated amendment of claim which did not arise from the conduct, transaction or occurrence set out in the original claim). SNMP's neglect in not naming SNMPR in the Original Claim was certainly not excusable. SNMP made a conscious, deliberate decision that they would not name SNMPR as a claimant. The decision "was within the reasonable

control of the movant." Pioneer, 507 U.S. at 395. Then, waiting seven years to seek to add SNMPR by amendment is very much inexcusable.

*3. Relation Back – Rule 15*

SNMP argue that the Court should permit SNMPR to be added to SNMPRI's claim on a relation back theory. SNMP argue that the Proposed Claims and SNMPR's claim relate back to the same conduct that is the subject of the Original Claim and five amendments. SNMP invoke for their relation back test *Nelson v. County of Allegheny*, 60 F. 3d 1010 (3d Cir. 1994), arguing that Nelson held that Rule 15 permits parties to be added by amendment. First, in *Nelson*, the Third Circuit rejected the Rule 15 motion. Second, in *Gardner v. State Farm Fire & Casualty Company*, 544 F. 3d 553, 562 (3d Cir. 2008), the Third Circuit expressly held that Rule 15 does not apply to adding a party but "applies only to amendments to the 'party' . . . against whom a claim is asserted."

The real fallacy in the Rule 15 relation back effort of SNMP is that it requires a showing "that plaintiffs have not slept on their rights." The facts show that the failure of SNMP to name SNMPR as a claimant was deliberate and that when SNMP finally made the effort to add SNMPR, it was more than seven years after the Bar Date and five years after the filing of the Adversary Proceeding. The failure to add SNMPR to the Original Claim and the amendments was based on a "belief" that it was unnecessary. The law is clear: ignorance is not a sufficient reason to permit amendment. *See*, *e.g.*, *Goss v. Revlon, Inc.*, 548 F. 2d 405, 407 (2d Cir. 1976) (ignorance of the law is "an insufficient basis for leave to amend"); *Toxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F. 2d 968, 971 (6th Cir. 1974) ("misconception of the law is not an excuse for the late presentation of an alternative

theory of recovery"). Further, SNMP had legal representation when they filed their Original Claim, and then the five amendments. Lawyers are charged with knowing the law. As for the Proposed Claims, they are an entirely new assertion. They do not relate back to the Original Claim.

*4. Rule 17*

SNMP argue that Bankruptcy Rule 7017 (F.R. Civ. P. 17 applies in adversary proceedings) is a basis to add SNMPR to the Proposed Claims. Here again, the Court will not grant SNMP leave to add SNMPR as a claimant long after the Bar Date and long after the infringement claim SNMPR asserts in the adversary proceeding. SNMPR did, after all, file the adversary proceeding in 2011. SNMPR knew which copyrights it owned and easily could have made the Original Claim itself. As stated earlier, SNMPR was represented by able lawyers and made a decision back in 2009 not to be a claimant. It is too late. Even were the Court to accept the "mistake" argument (which the Court does not accept, because SNMP made a deliberate decision which turned out to be an error in judgment), a mistake does not open the door to an amendment of the long-standing Original Claim filed in 2009. Rule 17 does not provide a remedy for a very late filed claim. The "mistake" in not naming SNMPR as a claimant is not an "understandable mistake." *Lans v. Gateway 2000, Inc.*, 84 F. Supp. 2d 112, 120 (D.D.C. 1999).

*5. New Claim*

The Proposed Claims and Motion to Amend are unquestionably an effort by SNMP to file a new claim rather than to amend an existing claim. Creditors "may not use the claims amendment process to circumvent the claims bar date," *Plains Mktg. L.P. v.*

*Bank of Am., N.A.* (*In re SemCrude, L.P.*), 443 B.R. 472, 477 (Bankr. D. Del. 2011), and the claim must relate back or it will be considered a new claim which courts will not allow. *N.Y.C. Housing Auth. v. G-I Holdings, Inc.* (*In re G-I Holdings, Inc.*), 514 B.R. 720, 755 (Bankr. D.N.J. 2014).

The Court is fully convinced that both the Proposed Claims and the Motion to Amend, including seeking to add SNMPR, are new claims. Debtors have cited three reasons for the "new" claims finding, with which the Court agrees.[1] The reasons are:

> Reason Number 1: The copyrights at issue belong to SNMPR not SNMPRI. SNMPRI alone was a claimant.
>
> Reason Number 2: The Proposed Claims assert a new and different theory of damages. In the Original Claim and the five amendments, SNMPRI makes a claim for contractual royalties, while the Proposed Claims are centered on copyright infringement damages.
>
> Reason Number 3: Less than one-half of the damages in the Fifth Amended Claim are directed toward what is called the "BayStack/ES/ER product." In the Proposed Claims nearly one hundred percent of the damages relate to the product.

It is clear to the Court that the Proposed Claims are new claims and that adding SNMPR as a new claimant is unsustainable.

*6. Prejudice*

The increase in damages in the Proposed Claims is massive. In the Fifth Amended Claim, SNMPRI seeks $8.4 million for its contractual royalties (up from approximately $22,000 in the Original Claim). Now, in the Proposed Claims, SNMP is seeking $81.1

---

[1] *See* Debtors' Memorandum of Law in Opposition to the Motion of [SNMP] to Amend Proofs of Claim and Add SNMP Research, Inc. as claimant, pages 28-29. D.I. 17836.

million, an increase of nearly ten times. When SNMP filed the Motion to Amend on November 23, 2016, Debtors had just filed their proposed plan of reorganization with disclosure statement. The filing of the plan and disclosure statement followed a successful mediation of the bankruptcy case after many months of exhausting negotiations. SNMP is correct that the Debtors revised their disclosure statement to include a summary of the damages in the Ratner Report, the filing of the Motion to Amend and a revised recovery analysis of the amounts creditors would receive if the Motion to Amend were granted and the Court allowed SNMP's pre-Petition claim in full.

The fact that Debtors were able to amend their disclosure statement to include the referenced information does not address or touch the prejudice to them of the enormous increase in the claim amount. The large amount included in the Proposed Claims coming as late as it does is surely prejudicial to Debtors. *See, e.g.*, *Enron,* 370 B.R. at 102-03 (affirmed denial of amendment after bar date because of size of claim -- $12.5 million); *Praedium II Bradstone, LLC v. Wall St. Strategies, Inc.*) 2004 WL 2624678, at *5 (S.D.N.Y. Nov. 18, 2004) (denied post-bar date amendment that would have increased the claim from $91,000 to $1 million); and *In re Am. Intern., Inc.*, 67 B.R. 79, 82 (N.D. Ill. 1986) (for amendment to be permissible it must be of the same type as timely filed claim and should be reasonably within the amount of that claim). The Proposed Claims are just not of the same type as the Original Claim and not anywhere close to the Original Claim in amount.

The nature of the Proposed Claims is also prejudicial to Debtors and their creditors. The Proposed Claims seek $39 million in profit damages. These alleged profits damages –- Debtors' "profits" from a losing venture that went through bankruptcy –- is

more than the damages necessary to compensate for losses. Debtors are correct that their other creditors who suffered loss "have priority of claim over those who suffered no pecuniary loss," quoting *Tex. Am. Oil Corp. v. U.S. Dep't of Energy*, 44 F. 3d 1557, 1569 (Fed. Cir. 1995). SNMP's Proposed Claims and Motion to Amend come far too late, are for too much and are not in the same nature as the Original Claim.

Constitutional Standing

The Court has discussed why it will not grant the Motion to Amend. There is another reason. Debtors' final argument, and a strong one, is this: "an attempt by SNMPRI to assert a claim based on copyrights belonging to SNMPR would lack constitutional standing and so cannot serve as a predicate for a motion to amend." Sur-reply at 12. In *Vianix Delaware LLC v. Nuance Communications Inc.*, 2009 WL 1364346, at *2 (D. Del., May 12, 2009), the District Court had before it the issue of amending a complaint to name as plaintiff the owner of the copyrights. The court accepted the defendants' argument "that plaintiff cannot correct a jurisdictional defect by filing an amended complaint because jurisdiction is determined at the time of the filing of the complaint." *Id.* at * 1. The district court then held that the case had to be dismissed and stated: "Because [the original party] did not have standing to assert its claims when it filed suit, the Court does not have subject matter jurisdiction to consider anything filed thereafter, including the amended complaint." *Id.* at * 2.

It is therefore beyond peradventure that the Court would have to dismiss any claim which SNMPRI would assert for which SNMPRI does not own the associated copyright. SNMPRI lacks constitutional standing to bring any such claim. *See also Abraxis Bioscience, Inc. v. Navinta*, 625 F. 3d 1359, 1364 (Fed. Cir. 2010) (where original plaintiff lacked Article III standing, the jurisdictional defect cannot be cured after the lawsuit has begun). Where SNMPRI lacked standing to assert copyright claims, it cannot substitute SNMPR as the real party in interest. *See Zurich Ins. Co. v. Logitrans, Inc.*, 297 F. 3d 528, 530-31 (6th Cir. 2002) where the court stated:

> An attorney made a mistake and filed the action in the name of Zurich Switzerland, when Zurich Switzerland had no claims whatsoever against the defendants, and no Article III standing to sue. American Guarantee, a totally separate entity, which was not vigilant in protecting its claims, cannot now benefit from Zurich Switzerland's mistake so as to take advantage of the suspension of the limitations period.

*See also Mandelbrot v. Armstrong World Indus. Asbestos Pers. Injury Tr.*, 2014 WL 4626505, at *2 (D. Del. Sept. 12, 2014) (court dismissed case for absence of constitutional standing). It is the Court's ruling, therefore, that if SNMPRI lacks standing to assert claims concerning copyrights it does not own, then the Court cannot allow SNMPRI to "fix" its error by adding SNMPR which owned the copyrights.

## CONCLUSION

The Court is mindful that the Court's decision may appear to be harsh. If so, it is because the Motion to Amend asks for unreasonable relief. The Proposed Claims and the effort to add SNMPR as a claimant are a complete transformation of the Original Claim and five amendments and the Court will not allow it some seven years after the Bar Date. Accordingly, the Court will deny the Motion to Amend and the request to add SNMP as a new claimant.

Dated: June 29, 2017

KEVIN GROSS, U.S.B.J.