**APPENDIX A**

**APPENDIX A**

| Deposition Testimony | Nortel's Objections to SNMP Research's Deposition Designations |
|---|---|
| | Deposition of Pierre Tremblay |
| 8:24–9:16 | **Basis for objection:**  Fed. R. Evid. 401, 402, 403<br><br>Nortel objects to the testimony pursuant to Federal Rules of Evidence 401, 402 and 403 because it is unclear whether Mr. Tremblay is referring to his job responsibilities at Nortel or GENBAND.  *See, e.g.*, 9:10 ("And then there was the ongoing business where new products, so GENBAND would decide to leverage the SNMP Research technology and then I'd put out a schedule ….").  If Mr. Tremblay was referring to his responsibilities at GENBAND, his testimony would be irrelevant and, because his testimony is unclear on this point, any potential probative value is outweighed by the danger of confusion. |
| 10:7–16 | **Basis for objection:**  Fed. R. Evid. 401 and 402<br><br>Nortel objects to the testimony pursuant to Federal Rules of Evidence 401 and 402, because an account of Mr. Tremblay's compliance duties is not relevant to the issues in this case. |
| 70:22–71:6 | **Basis for objection:**  Fed. R. Evid. 401, 402, 403, 602, 701; Fed. R. Civ. P. 26(a)(2)<br><br>Nortel objects to the testimony pursuant to Federal Rule of Evidence 602 because Mr. Tremblay is being asked to offer his view concerning the "purpose" of the master license agreement between Nortel and International. Mr. Tremblay was not involved in negotiating that agreement and, accordingly, has no personal knowledge of its purpose.<br><br>In addition:<br><br>• To the extent Mr. Tremblay's testimony is considered lay opinion testimony, it must be excluded because it is not "helpful … to determining a fact in issue."  Fed. R. Evid. 701(b).  Mr. Tremblay is no better placed to read the license agreement and opine on its purpose than the Court, and his testimony is therefore not helpful, competent or probative on this issue.<br><br>• To the extent Mr. Tremblay is purporting to offer an expert opinion on the master license agreement or "the general legal framework and business framework" that it establishes, this opinion was not disclosed as required under Federal Rule of Civil Procedure 26(a)(2) |

| Deposition Testimony | Nortel's Objections to SNMP Research's Deposition Designations |
|---|---|
| | and it must be excluded on that basis.  Fed. R. Civ. P. 37(c)(1). |
| | Nortel also objects to the testimony pursuant to Federal Rules of Evidence 401, 402 and 403 because Mr. Tremblay's opinion as to the purpose of the master license agreement is irrelevant, given his lack of personal knowledge.  And even if it had any minimal relevance, that would be outweighed by the danger of confusion and/or prejudice.  The concern about prejudice is exacerbated by the fact that Mr. Tremblay met with SNMP Research's counsel in advance of his testimony to discuss issues related to this case pursuant to a settlement agreement between Mr. Tremblay's then employer, GENBAND, and SNMP Research that required GENBAND to cooperate with SNMP Research in this litigation.  In fact, the lawyer representing Mr. Tremblay at his deposition and in preparation for it was being paid by SNMP Research.  152:6-153:15; 156:6-157:19; 181:20-182:2. |
| 89:7–90:7 | **Basis for objection:**  Fed. R. Evid. 401, 402, 403, 602, 701; Fed. R. Civ. P. 26(a)(2)<br><br>Nortel objects to the testimony pursuant to Federal Rule of Evidence 602 because Mr. Tremblay is being asked to opine on the "purpose" of Schedule 1 and the meaning of the language in the "Additional Conditions" section of the schedule.  Mr. Tremblay was not involved in negotiating Schedule 1 and, accordingly, has no personal knowledge of its purpose or what the parties intended any of its language to mean.<br><br>In addition:<br><br>• To the extent Mr. Tremblay's testimony is considered lay opinion testimony, it must be excluded because it is not "helpful … to determining a fact in issue."  Fed. R. Evid. 701(b).  Mr. Tremblay is no better placed to read Schedule 1 and opine on its purpose than the Court, and his testimony is therefore not helpful, competent or probative on this issue.<br><br>• To the extent Mr. Tremblay is purporting to offer an expert opinion on Schedule 1, this opinion was not disclosed as required under Federal Rule of Civil Procedure 26(a)(2) and it must be excluded on that basis.  Fed. R. Civ. P. 37(c)(1).<br><br>Nortel also objects to the testimony pursuant to Federal Rules of Evidence 401, 402 and 403 because Mr. Tremblay's opinion as to the purpose of Schedule 1 is irrelevant, given his lack of personal knowledge.  And even if it had any minimal relevance, that would be outweighed by the danger of confusion and/or prejudice.  The concern about prejudice is exacerbated by |

| Deposition Testimony | Nortel's Objections to SNMP Research's Deposition Designations |
|---|---|
|  | the fact that Mr. Tremblay met with SNMP Research's counsel in advance of his testimony to discuss issues related to this case pursuant to a settlement agreement between Mr. Tremblay's then employer, GENBAND, and SNMP Research that required GENBAND to cooperate with SNMP Research in this litigation.  In fact, the lawyer representing Mr. Tremblay at his deposition and in preparation for it was being paid by SNMP Research.  152:6-153:15; 156:6-157:19; 181:20-182:2. |
| 95:6–13 | **Basis for objection:**  Fed. R. Evid. 401, 402, 403<br><br>Nortel objects to the testimony pursuant to Federal Rules of Evidence 401, 402 and 403.  The testimony concerns an email from Mr. Tremblay in which he stated that, as of August 2003, he had not found products as described in Schedule 1 but that he had "not yet looked very hard."  Ex. D-158.02 at 1.<br><br>Tremblay, who was an employee of Nortel Canada and was based in Brampton, Ontario, was just getting involved in the relationship between Nortel and International at the time.  Tremblay Dep. 7:20-25; Ex. D-132 at 4.  He had not had any involvement in Schedule 1, or with the Bay Networks License, or with the BayStack group, which was located in Santa Clara, California.  And the BayStack group had its own direct relationship and line of communication with International, dating back to the Bay Networks era, as reflected by the numerous communications.  Given this background, and especially in light of his caveat that he had "not yet looked very hard," Mr. Tremblay's email and his testimony concerning this email are irrelevant to whether Nortel products existed in August 2003 that were covered by Schedule 1 or any other issue currently before the Court.<br><br>In addition, Tremblay's testimony about the email, as distinguished from the email itself, cannot be relevant, competent or probative.  In assessing the issues to be addressed, only the parties' objective manifestations – what they actually do together and say to each other – qualify as competent and relevant evidence.  Here, Mr. Tremblay's email to International merely said he had not yet come across products meeting a certain description but he had "not yet looked very hard."  Testimony offered now, nearly 14 years later, about what Tremblay thinks his email meant or what lay behind it, is not relevant, competent or probative.<br><br>At a minimum, any probative value is outweighed by the danger of unfair prejudice.  After introducing Mr. Tremblay's August 2003 email, counsel for SNMP Research asked whether it was correct that "as of August 12, 2003, … [Mr. Tremblay] didn't know of anything that was licensed under Schedule 1."  Neither SNMP Research's counsel in his question nor Mr. Tremblay in his response acknowledged that the email shows Mr. Tremblay |

| Deposition Testimony | Nortel's Objections to SNMP Research's Deposition Designations |
|---|---|
| | had not performed a thorough search before making the statements at issue. The testimony is therefore misleading and the danger of prejudice outweighs any minimal probative value it might have. |

<table>
<tr><td colspan="2" align="center"><strong>Deposition of John Mead</strong></td></tr>
</table>

| Deposition Testimony | Nortel's Objections to SNMP Research's Deposition Designations |
|---|---|
| 28:5–23 | **Basis for objection:** Fed. R. Evid. 401, 402, 403<br><br>Nortel objects to the testimony pursuant to Federal Rules of Evidence 401, 402 and 403 because Mr. Mead's opinion as to the value of the functionality of the SNMP protocol is not relevant to any issue before the Court at this time.   In addition, any potential probative value of this testimony is outweighed by the danger of confusion, because Mr. Mead's answer refers only to the functionality provided by the SNMP protocol in general (which is an industry standard and does not belong to SNMP Research) – not the functionality attributable to SNMP Research's software that assists in the implementation of the SNMP protocol. |
| 80:14–81:9<br><br>246:3–248:9<br><br>256:10–257:15 | **Basis for objection:** Fed. R. Evid. 401, 402, 403<br><br>Nortel objects to the testimony pursuant to Federal Rules of Evidence 401, 402 and 403 because it pertains to purported efforts to identify third-party software in the BayStack/ES/ERS switches prior to the time of the business line sale from Nortel to Avaya, which is not relevant to any issue currently before the Court.  In the alternative, any potential probative value of this testimony is outweighed by the danger of unfair prejudice and/or confusion because Mr. Mead had a poor memory of the events that are the subject of this testimony. He could not remember who had asked him to identify third-party software in the BayStack/ES/ERS switches, what department he/she was in, the details of the request or to whom he provided any information. 80:20-22; 81:13-17; 81:23-82:3. |
| 86:8–86:9<br><br>86:16–86:16<br><br>88:1–89:10<br><br>90:2–90:5<br><br>91:7–92:1 | **Basis for objection:** Fed. R. Evid. 401, 402, 403<br><br>Nortel objects to the testimony pursuant to Federal Rules of Evidence 401, 402 and 403 because it concerns information in Avaya's interrogatory responses that has no relevance to any issue currently before the Court.  The interrogatory responses purport to identify the version of SNMP Research's software used in certain BayStack/ES/ERS switches.  International has argued that this is relevant because it shows that Nortel did not upgrade to later versions of SNMP Research software, which were provided under the Software Service Agreement.  However, as explained in Nortel's Proposed Findings of Fact and Conclusions of Law, International's argument is misguided and does not establish the relevance of Mr. Mead's testimony on |

| Deposition Testimony | Nortel's Objections to SNMP Research's Deposition Designations |
|---|---|
|  | this issue.  Mr. Mead's testimony simply has no bearing on the proper interpretation of Schedule 1.<br><br>In addition, Nortel objects because the answers provided by Mr. Mead indicate that he had never seen Avaya's interrogatory responses before, that people on his team, rather than Mr. Mead himself, collected the information contained in the responses and that he has no personal knowledge of this information.  Therefore, any potential probative value of this testimony is outweighed by the danger of confusion and/or unfair prejudice. |