IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------X
: 
*In re* : Chapter 11
:
Nortel Networks Inc., *et al.*,[1] : Case No. 09-10138 (KG)
:
           Debtors. : Jointly Administered
:
: **Re: D.I. 18315, 18316, 18339**
:
:
---------------------------------------------------------------X


### DEBTORS' OBJECTION TO WILLIAM A. OWENS'S MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING THE DEBTORS' OBJECTION TO THE PROOF OF CLAIM OF WILLIAM A. OWENS

    Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and wind-down debtors (collectively, the "Debtors"), hereby file this objection (the "Objection") to William A. Owens's Motion for Reconsideration of the Court's Order Granting the Debtors' Objection to the Proof of Claim of William A. Owens [D.I. 18339] (the "Motion" or "Mot.")[2] and request that the Court deny the Motion. In support of this Objection, the Debtors respectfully represent as follows:

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567), Nortel Networks (CALA) Inc. (4226) and Nortel Networks India International Inc. (8667). Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

[2]     The Motion seeks reconsideration of the Court's Order Re Claim of William A. Owens [D.I. 18316] (the "Order"). In addition to the Order, the Court also entered an Opinion Re Claim of William A. Owens [D.I. 18315] (the "Opinion" or "Op.").

**PRELIMINARY STATEMENT**

1.  The standards for reconsideration of a court's order, which are extremely high, are not met in this case. In the Motion, Mr. Owens does not clearly articulate which of the several, well-established grounds for reconsideration he believes would support reconsideration of the Court's Opinion and Order. Instead, he only makes general references to equity and manifest injustice in support of his Motion and rehashes arguments already raised and considered by the Court. These arguments simply do not provide grounds for reconsideration of the Court's thoughtful, well-reasoned decision.

2.  The Court's decision took into consideration the ample record with respect to Mr. Owens's Special Pension and liability thereof. After weighing the evidence, which includes Mr. Owens's 2004 Employment Agreement[3] that originally provided that NNC and NNL would "arrange to pay [Mr. Owens] a monthly pension benefit following [his] retirement," Op. at 2-3, DX1[4] at 3 (Employment Agreement); internal letters instructing that the Special Pension was to be paid from Canada, Op. at 4-5, DX5 (Cilia Decl.), Attachment 1; and tax forms indicating that, in fact, such payments were paid by Canada, Op. at 5, DX7 (NR4 Forms), the Court correctly concluded that "Mr. Owens may be entitled to his claim against the Canadian Estate, but not against the U.S. Estate." Op. at 6.

3.  The Motion asks the Court to reconsider the very same evidence already before it and to inexplicably draw a different conclusion. Mr. Owens has not provided a valid basis for

---

[3] All capitalized terms not otherwise defined herein shall have the meaning ascribed in the Debtors' Reply in Further Support of Debtors' Forty-Seventh Omnibus Objection (Substantive) to Certain Claims [D.I. 18117] or the Response of the Debtors to Emergency Motion of William A. Owens for Continuance on the Hearing of Debtors' Forty-Seventh Omnibus Objection to Certain Claims [D.I. 18127], as applicable.

[4] References to "DX_" refer to exhibits introduced by the Debtors at the June 13, 2017 hearing. References to "Owens_" refer to exhibits introduced by Mr. Owens at the June 13, 2017 hearing.

reconsideration and the Debtors therefore respectfully request that the Court deny the Motion and uphold its prior Order.

## ARGUMENT

4.      Mr. Owens's Motion falls far short of the high bar necessary for reconsideration of the Court's final decision. Reconsideration under Rule 502(j) of the Bankruptcy Code requires, as a preliminary matter, that Mr. Owens establish "cause," which he has not done and cannot do.[5] Mr. Owens raises two arguments for reconsideration: (1) Mr. Owens was an NNI employee and that this fact alone entitles him to a claim against NNI; and (2) Mr. Owens provided NNI with allegedly valuable consideration under the Termination Agreement, which entitles Mr. Owens to a claim for his Special Pension. These arguments merely rehash points which have already been considered by the Court and which ignore and are outweighed by the substantial record evidence supporting the Court's decision.

5.      Because Mr. Owens has failed to carry the burden to show that cause exists to reconsider the Order, the Court need not consider his arguments regarding the equities of the case, which, under Rule 502(j), are only reached upon an initial finding of cause. However, to the extent that equity is taken into consideration, it only further reinforces the Court's conclusion that Mr. Owens is entitled to a single claim against NNC and NNL, not NNI.

### I.    The Motion Fails to Meet the Legal Standards Required for Reconsideration of a Disallowed Claim Pursuant to Section 502(j) of the Bankruptcy Code

6.      Given the strong public policy favoring finality of judicial decisions and orders, reconsideration is granted sparingly. In re Syntax-Brillian Corp., 551 B.R. 156, 160 (Bankr. D. Del. 2016) (noting that reconsideration is an extraordinary remedy in part because of "the social

---

[5]    Section 502(j) of the Bankruptcy Code states that "[a] claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case." 11 U.S.C. § 502(j).

3

interest in the finality of litigation.") (quoting Merit Ins. Co. v. Leatherby Ins. Co., 714 F.2d 673, 682 (7th Cir. 1983)); In re Tribune Co., 464 B.R. 208, 213 (Bankr. D. Del. 2011) (motions for reconsideration "should be granted sparingly"). This Court has described a motion for reconsideration as an "extraordinary means of relief in which the movant must do more than simply reargue the facts or law of the case." Mas Litig. Tr. v. Plastech LDM (In re Meridian Automotive Systems-Composite Operations, Inc.), No. 05-11168 (MFW), 2008 WL 141160, at *1 (Bankr. D. Del. Jan. 11, 2008) (Gross, J.). This is not one of those cases "where extraordinary justifying circumstances are present." Amr v. Greenberg Traurig LLP (In re Syntax-Brillian Corp.), No. 13-337 (GMS), 2016 WL 5662074, at *12 (D. Del. Sept. 29, 2016) (citing Pilsco v. Union R.R. Co., 379 F. 2d 15, 16 (3d Cir. 1967)).

7. Mr. Owens acknowledges the requirement to show cause for reconsideration under Rule 502(j).[6] Mot. ¶ 8. However, Mr. Owens does not address any of the statutory FRCP 60(b) standards for reconsideration, appearing to rely on the catchall provision at best.[7] With respect to the standards that courts in this Circuit have adopted for showing cause, namely (1) an intervening change in the controlling law, (2) newly discovered evidence, or (3) the prevention of manifest injustice, Mr. Owens appears to only rely on the final prong. See Max's Seafood Café ex rel. by Lou-Ann, Inc. v. Quinteros, 176 F. 3d 669, 677 (3d Cir. 1999); Mem.

---

[6] Rule 502(j) provides that "[a] claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case." 11 U.S.C. § 502(j).

[7] While neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure define "cause" for purposes of section 502(j), courts, including those in the Third Circuit, generally apply the standard set forth in FRCP 60, as made applicable by Bankruptcy Rule 9024. See In re Lomas Fin. Corp., 212 B.R. 46, 51-52 (Bankr. D. Del. 1997); Hayes v. Genesis Health Ventures, Inc. (In re Genesis Health Ventures, Inc.), 362 B.R. 657, 661 (D. Del. 2007); see also In re Terrestar Networks, Inc., Nos. 10-15446 (SHL), 11-10612 (SHL), 2013 WL 781613, at *2 (Bankr. S.D.N.Y. Feb. 28, 2013). The "movant 'bears a heavy burden'" to show cause under Rule 60(b). See In re Syntax-Brillian Corp., 2016 WL 5662074, at *12 (citing Bohus v. Beloff, 950 F.2d 919, 930 (3d Cir. 1991)). Though considerable for any of the bases for reconsideration under Rule 60(b), the burden is particularly high under the catchall provision of FRCP 60(b)(6), for which the movant must show "extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur." Cox v. Horn, 757 F.3d 113, 115 (3d Cir. 2014) (quoting Sawka v. Healtheast, Inc., 989 F.2d 138, 140 (3d Cir. 1993)).

Order on Mot. for Recons., at 3, Jul. 6, 2015 [D.I. 15830]; see also Calyon N.Y. Branch v. Am. Home Mortg. Corp., 383 B.R. 585, 589 (Bankr. D. Del. 2008) (Motions for reconsideration are not granted unless the moving party can point to something "that might reasonably be expected to alter the conclusion reached by the court.") (citation omitted).  In the context of a motion for reconsideration, manifest injustice requires a showing that "the Court overlooked some dispositive factual or legal matter that was presented to it."  In re Telfair, 745 F. Supp. 2d 536, 561 (D.N.J. 2010), aff'd in part, vacated in part sub nom. Telfair v. Office of U.S. Attorney, 443 F. App'x 674 (3d Cir. 2011).  As discussed in more detail below, Mr. Owens also has not established any manifest injustice that would warrant reconsideration.

### a. Mr. Owens's Arguments Do Not Merit Reconsideration As They Were Previously Raised And Considered By The Court

8. Despite clear judicial guidance that a motion for reconsideration "should not relitigate issues the Court has already decided," Mr. Owens's Motion does precisely that, and nothing more.  In re Filene's Basement, No. 11-13511 (KJC), 2014 WL 172137, at *2 (Bankr. D. Del. Jan. 15, 2014); see also In re W.R. Grace & Co., 398 B.R. 368, 372 (D. Del. 2008) (Litigants who do not "persuade a court to adopt its position may not use a motion for reconsideration either to attempt a new approach or correct mistakes it made in its previous one.") (citation omitted); In re Armstrong Store Fixtures Corp., 139 B.R. 347, 349 (Bankr. W.D. Pa. 1992) ("[A] motion to reconsider may not be used to rehash the same arguments presented the first time or simply to express the opinion that the court was wrong.") (citation omitted).

9. Mr. Owens's argument that his status as an NNI employee in and of itself warrants a claim against NNI, Mot. ¶ 7, has already been raised and rejected.  See Resp. of William A. Owens in Opp'n to Debtors' Forty-Seventh Omnibus Obj., ¶¶ 19-20, Apr. 3, 2017 [D.I. 18056] (the "Response" or "Resp."); June 13, 2017 Hr'g Tr., 37:23-25, 42:20-21, 52:11-14,

5

54:20-25, 55:9-10, 90:14-16.  Oddly, Mr. Owens focuses most of his argument on evidence to show that Mr. Owens was deemed an NNI employee,[8] an undisputed point, rather than showing how this point has any bearing on Mr. Owens's entitlement to a claim against NNI for the Special Pension, let alone how it constitutes a "dispositive factual or legal matter" that the Court overlooked.  In re Telfair, 745 F. Supp. at 561 (D.N.J. 2010).  Far from overlooking this point, the Court acknowledged that certain documents refer to Mr. Owens as an NNI employee.[9]  Nevertheless, based on the remainder of the record, which is discussed in more detail below, the Court correctly concluded that this fact was outweighed by the substantial evidence indicating that NNC and NNL were liable for Mr. Owens's Special Pension, not NNI.  Op. at 7.

10. Mr. Owens likewise made his second argument – that Mr. Owens provided NNI with allegedly valuable consideration by signing the Termination Agreement and therefore NNI is liable for the Special Pension, Mot. ¶¶ 9, 13 – both in prior filings and at argument before this Court.  See Resp. at ¶ 7; June 13, 2017 Hr'g Tr., 59:14-60:5, 83:21-84:6, 91:16-19.  As in this Motion, Mr. Owens has never provided any evidence in support of this claim other than to point to the Termination Agreement itself, and consistently fails to acknowledge the millions of dollars NNI previously paid to Mr. Owens under the Termination Agreement.  The Court's decision demonstrates that it has carefully considered the Termination Agreement, Op. at 3-4, and again, in conjunction with the other record evidence that Mr. Owens continues to ignore (discussed further below), determined that Mr. Owens is not entitled to a claim against NNI.  Id. at 6-7.

---

[8] In particular, he cites to Mr. Owens's Employment Agreement, W-2 forms and Termination Agreement. Mot. ¶ 6.

[9] Op. at 7 (Referring to the Employment Agreement - "Although the [Employment] Agreement makes reference to Mr. Owens being 'an employee of Nortel Networks, Inc. ('NNI'), the Company's principal U.S. operating subsidiary,' it is perfectly clear that Mr. Owens' work was for NNC and NNL alone, not for NNI."); Id. at 5 (Referring to the W-2s - "[w]hile some of the forms in Owens 3 [an exhibit including W-2 forms] make reference to NNI as employer, the fact remains that it was NNC and NNL who employed Mr. Owens as their President and Chief Executive Officer, not NNI."); Id. at 4 (Referring to the Termination Agreement).

Simply put, there is nothing to which Mr. Owens has pointed or can point "that might reasonably be expected to alter the conclusion reached by the court," and therefore, his Motion, which is purely an attempt to relitigate and rehash old arguments, should fail. Calyon, 383 B.R. at 589.

### b. The Record Amply Supports The Court's Conclusion That NNC and NNL, Not NNI, Are Liable For Mr. Owens's Special Pension

11. Though Mr. Owen argues that the Court "failed to fully consider the documentary evidence," Mot. ¶ 7, the Court not only considered the evidence to which Mr. Owens points, but also considered the rest of the record evidence that Mr. Owens ignores, to conclude that Mr. Owens was *not* entitled to a claim.

12. The Court was well aware of the fact that Mr. Owens's Employment Agreement identified him as a NNI employee and that he received other payments from NNI. However, the Court also had before it substantial other record evidence that Mr. Owens ignores, including (i) the provisions of Mr. Owens's Employment Agreement that indicate that he was hired to be the President and Chief Executive Officer of NNC and NNL,[10] that his primary office and work locations were in Ontario, Canada and that he was eligible for certain expatriate and relocation benefits, DX1 (Employment Agreement) at 1, 2, and (ii) that NNC announced the terms of his employment in an SEC filing, NNC Form 8-K, dated December 1, 2005, see Op. at 4; DX4. Based on the full record, the Court concluded that "Mr. Owens' work was for NNC and NNL alone, not for NNI," Op. at 7, and thus that "NNI is the wrong entity for Mr. Owens to file a claim against." Id. This determination, which is a reasonable conclusion from a holistic consideration of the evidence, is a far cry from manifest injustice.

---

[10]    The Debtors note that the reason Mr. Owens was referred to in the Termination Agreement as "Vice Chairman and Chief Executive Officer, Nortel Networks Corporation and Nortel Networks Limited," rather than as "President" was because Mr. Owens assumed the role of Vice Chairman of NNC and NNL on March 14, 2005, prior to the execution of the Termination Agreement. See Nortel Networks Ltd., Annual Report for Fiscal Year Ended Dec. 31, 2004 (Form 10-K), at 152 ("Effective March 14, 2005, Mr. Owens became Vice-Chairman and Chief Executive Officer of the Company and Nortel Networks Corporation.").

13.     Moreover, in using the Termination Agreement to argue that Mr. Owens was an NNI employee, entitled to a claim against NNI for his Special Pension on account of the releases he provided, Mr. Owens oversimplifies the agreement and ignores extrinsic evidence that is necessary to interpret the otherwise ambiguous contract.  <u>Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.</u>, 247 F.3d 79, 93 (3d Cir. 2001) ("[w]here the contract terms are ambiguous and susceptible of more than one reasonable interpretation, . . . the court is free to receive extrinsic evidence.") (citation omitted).  As the Court recognized, the Special Pension, the only item for which Mr. Owens is seeking a claim, was explicitly agreed to be paid by the Canadian Debtors both in Mr. Owens's Employment Agreement and in letters preceding Mr. Owens's initial special pension payment.  Op. at 3-5 (citing DX5 (Cilia Decl.), Attachment 1).  In addition, it is not disputed that the Special Pension *was* paid by the Canadian entities prior to insolvency, as evidenced by Mr. Owens's Canadian NR4 forms.  DX6 (NR4 Forms).

14.     Mr. Owens's argument that the Termination Agreement was signed by William Donovan, allegedly as the SVP of NNI, is likewise unavailing.  First, that Mr. Donovan was listed as an NNI VP is not grounds for reconsideration where the Court explicitly accounted for this fact in its ruling, Op. at 4.  Second, this argument overlooks that elsewhere within the agreement Donovan is listed at a Canadian address, DX3 at 1 (Termination Agreement), and is referred to as the Senior Vice-President, Human Resources for *Nortel Networks Corporation* in contemporaneous filings.  DX4 (NNC, Form 8-K, dated Dec. 1, 2005).

15.     Finally, Mr. Owens chose not to testify in support of his claim and has provided no evidence of the value of any rights that he purportedly relinquished under the agreement, Mot. ¶ 10.  To the extent that these rights had any value (without conceding they do), Mr. Owens would be hard-pressed to demonstrate that their value exceeds the more than $5 million that NNI

has already paid Mr. Owens pursuant to the Termination Agreement. Owens 3 (2005 W-2).[11]

However, the Court need not revisit or review these issues on a reconsideration motion.

16.     Ultimately, after reviewing all of the evidence, including each of the documents cited by Mr. Owens in the Motion as well as all of the documents and testimony that Mr. Owens overlooks, the Court correctly concluded that, "[t]he facts show that Mr. Owens may be entitled to his claim against the Canadian Estate, but not against the U.S. Estate." Op. at 6.

**II.     A Discussion Of Equity Is Moot Absent A Showing Of Cause, But Mr. Owens's Motion Nevertheless Fails To Make Any Equitable Arguments In Favor Of Reconsideration**

17.     Given Mr. Owens's failure to demonstrate any cause for reconsideration, the Court need not consider whether disallowance of his claim is appropriate based on the equities. In re Morningstar, 433 B.R. 714, 719 (Bankr. N.D. Ind. 2010) ("To focus solely on 'the equities' ignores the first part of the rule, the requirement of cause. Absent cause, there is no basis for reconsidering anything.") (citation omitted). However, to the extent that the Court were to find a discussion of the equities warranted, which it is not, such a discussion would only serve to further reinforce the Court's finding that Mr. Owens is not entitled to a claim against NNI. This is not a case where as a result of the Court's disallowance of Mr. Owens's claim he will be deprived of his claim altogether. To the contrary, Mr. Owens will have a claim for pension benefits against the Canadian Debtors. While the Court determined that this did not have an impact on Mr. Owens's legal entitlement to a claim against NNI, Op. at 7, surely it must bear on

---

[11]     Mr. Owens's argument that parties released under the Termination Agreement are obligated to pay the Special Pension strains credulity. The various obligations and releases described in the Termination Agreement make reference to the "Corporation," which encompasses a vast number of individuals and corporate entities, including all former directors and officers of all Nortel affiliates. DX2 ¶¶ 1, 9 ("you hereby fully and unconditionally release and forever discharge the Corporation . . . .") (all caps omitted). It cannot be the case that every released party – including every world-wide former director or officer of any Nortel affiliate (including Mr. Owens) is liable for his Special Pension by virtue of the releases. By extension of that logic, if it were true, Mr. Owens would likewise be liable for all of the benefits promised to other former U.S. employees by virtue of any release granted him as a former director and officer of a Nortel affiliate.

the equities where under the Court's ruling, Mr. Owens is left with no less than any other of the employee claimants in these cases, and in fact, is left with a great deal more.[12]

18. In addition, when taking equity into consideration, it cannot be overlooked that Mr. Owens served as NNC's and NNL's CEO for merely 18 months, during which time he was compensated with an annual salary of $1 million. DX1 at 1. Since leaving the Nortel entities, Mr. Owens has already received more than $8 million in compensation from the Nortel affiliates, more than $5 million of which was already paid by NNI. These large scale payments, coupled with the fact that the Canadian Debtors have acknowledged in court their willingness to allow Mr. Owens's claim for the outstanding portion of his Special Pension, place the equities squarely in favor of disallowance of Mr. Owens's claim against NNI.

19. The Order and Opinion correctly concluded that Mr. Owens's Special Pension is not an NNI liability and there is no reason to reconsider the Order.

### Notice

20. Notice of this Objection has been given via first class mail, facsimile, electronic transmission, hand delivery or overnight mail to (i) counsel to the William A. Owens; (ii) the U.S. Trustee; (iii) counsel to the Canadian Debtors; and (iv) the post-Effective Date service list established in these cases. The Debtors submit that under the circumstances no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request that this Court deny the Motion and the relief requested therein.

---

[12] The Termination Agreement provides that Mr. Owens was entitled to, among other benefits, tax preparation benefits, relocation benefits, certain stock options and outplacement assistance. DX2 ¶ 4. Furthermore, Mr. Owens also received a $5.4 million lump sum severance payment from NNI. Id. ¶ 4(a); DX8.

Dated: July 19, 2017
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Derek C. Abbott*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*