# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 09-10138 (KG) |
| Nortel Networks Inc., et al.,[1] | Jointly Administered |
| Wind-Down Debtors and Debtor-in-Possession. | Re: Doc. No.: 18333 |

## MEMORANDUM OF LAW OF NETAS TELEKOMUNIKASYON A.S. IN OPPOSITION TO DEBTORS' MOTION FOR SUMMARY JUDGMENT

Dated:    July 21, 2017

**LOWENSTEIN SANDLER LLP**
Zachary D. Rosenbaum, Esq.
Paul Kizel, Esq.
Michael Papandrea, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone:  (973) 597-2500
Facsimile:  (973) 597-2400
E-mail: zrosenbaum@lowenstein.com
           pkizel@lowenstein.com
           mpapandrea@lowenstein.com

*Counsel for Netas Telekomunikasyon A.S.*

**POLSINELLI PC**
Christopher A. Ward, Esq. (No. 3877)
222 Delaware Avenue
Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
E-mail: cward@polsinelli.com

*Delaware Counsel for Netas Telekomunikasyon A.S.*

---

[1] The Wind-Down Debtors in these chapter 11 cases, along with the last four digits of each Wind-Down Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567), and Nortel Networks (CALA) Inc. (4226).  Nortel Networks India International Inc. (8667) remains a Debtor-In-Possession.  Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

33704/1
07/21/2017 201001184.3

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

NATURE AND STAGE OF PROCEEDING ................................................................................3

STATEMENT OF RELEVANT UNDISPUTED FACTS .............................................................5

    I.      Netas & Its Claims ...................................................................................................5

    II.     The 2013 Agreement.................................................................................................7

SUMMARY JUDGMENT STANDARD ......................................................................................8

LEGAL ARGUMENT ...................................................................................................................9

    A.     The Netas Claims Were Not Released by the 2013 Agreement Because Netas is Not a Party to the 2013 Agreement and, Therefore, it is Not Binding on Netas ...........................................................9

    B.     Enforcing the 2013 Agreement to Expunge the Netas Claims Would Violate Due Process Because Netas Was Never Given Notice of the 2013 Agreement and Did Not Have Knowledge of the 2013 Agreement Until After the Debtors Filed the Claim Objection on March 10, 2017 ..................................................................12

CONCLUSION............................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)........................................................................................................8

*APL Co. Pte. Ltd. v. Kemira Water Solutions, Inc.*,
    890 F. Spp. 2d 360, 366 (S.D.N.Y. 2012). ..............................................................2, 10, 11

*Bazak Intern. Corp. v. Tarrant Apparel Group*,
    378 F. Supp. 2d 377 (S.D.N.Y. 2005)..............................................................................9

*Benicorp Ins. Co. v. Nat'l Medical Health Card Systems, Inc.*,
    447 F. Supp. 2d 329 (S.D.N.Y. 2006)..............................................................................9

*Chambers v. Sch. Dist. of Phila. Bd. of Educ.*,
    587 F.3d 176 (3d Cir. 2009)............................................................................................9

*Chemetron Corp. v. Jones,*
    72 F.3d 341 (3d Cir. 1995)............................................................................................12

*Corbesco, Inc. v. Local No. 542, Intern. Union of Operating Engineers*,
    620 F. Supp. 1239 (D. Del. 1985)..................................................................................10

*Creasy v. Reliance Standard Ins. Co.*,
    No. 07-cv-3789, 2008 WL 834380 (E.D. Pa. Mar. 26, 2008) .........................................8

*In re Columbia Gas Sys. Inc.*,
    50 F.3d 233 (3d Cir. 1995)..............................................................................................9

*In re Grand Union Co.*,
    204 B.R. 864 (Bankr. D. Del. 1997) .............................................................................12

*In re Nortel Networks Inc.*,
    2016 WL 2584092 (Bankr. D. Del. May 2, 2016).........................................................11

*Kreiss v. McCown DeLeeuw & Co.*,
    37 F. Supp. 2d 294 (S.D.N.Y. 1999)..............................................................................10

*Lomando v. United States*,
    667 F.3d 363 (3d Cir. 2011)............................................................................................8

*Matsushita v. Zenith Ratio Corp.*,
    475 U.S. 574 (1986)........................................................................................................8

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ................................................................................................... 12

*Register.com, Inc. v. Verio, Inc.*,
    356 F.3d 393 (2d Cir. 2004) ......................................................................................... 9

*U.S. v. Harding*,
    No. 13-564, 2013 WL 3989155 (M.D. Pa. Aug. 3, 2013) ........................................... 8

**RULES**

Fed. R. Bankr. P. 7056 ............................................................................................................ 8

Fed. R. Civ. P. 56(e) ............................................................................................................... 8

Netas Telekomunikasyon A.S. (f/k/a Nortel Networks Netas Telekomunikasyon A.S.) ("Netas"), by and through its undersigned counsel, submits this Memorandum of Law in opposition to the Debtors' motion for summary judgment [D.I. 18333] and memorandum of law in support of summary judgment [D.I. 18334] (the "Motion"),[2] which seeks an order expunging the proofs of claim filed by Netas (the "Netas Claims"). The Motion asserts that the Netas Claims were released pursuant to a settlement agreement dated December 17, 2013, notwithstanding that (i) Netas was and is not a party to the agreement and (ii) Netas was not served with nor was aware of the agreement, motion, or order approving the agreement.[3] In addition to this Memorandum of Law, Netas relies upon the *Declaration of Mehmet Ilker Caliskan in Support of the Memorandum of Law of Netas Telekomunikasyon A.S. in Opposition to Debtors' Motion for Summary Judgment Regarding the Netas Claims* (the "Caliskan Declaration") submitted herewith, and respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Motion must be denied because, contrary to the Debtors' assertion, the Netas Claims were not released by Section 4.3 of the 2013 Agreement (defined below) because it is undisputed that Netas was never a party to the 2013 Agreement and neither the EMEA Debtors nor any other entity or party had the authority to unilaterally release the Netas Claims via Section 4.3 of the 2013 Agreement.

2. Although Netas was an affiliate of one of the EMEA Debtors until December 22, 2010, Netas was not an affiliate of any EMEA Debtor or any other Nortel-related entity at the

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

[3] Pursuant to the Scheduling Order (defined in ¶ 14 herein) addressing the process for resolving the objection to the Netas Claims, the only issue before the Court in connection with this Motion is the limited issue of whether the Netas Claims were released by the 2013 Agreement. The Scheduling Order provides that the motion for summary judgment "shall be limited to the issue of whether the Netas Claims were released by that certain settlement agreement dated December 17, 2013 . . . and related issues." *See* Scheduling Order, at ¶ 1.

33704/1
07/21/2017 201001184.3

time the 2013 Agreement was executed or approved by the Court. Therefore, neither the EMEA Debtors (nor the Debtors, other Nortel affiliates or any other party to the 2013 Agreement) had the authority to bind Netas to the 2013 Agreement.

3. Under fundamental rules of contract construction, in order to be bound to a contract, a party to the contract must manifest intent to be bound to such contract. A party to a contract cannot enter into a contract and unilaterally release the claims of a non-party to the contract. *See, e.g., APL Co. Pte. Ltd. v. Kemira Water Solutions, Inc.,* 890 F. Spp. 2d 360, 366 (S.D.N.Y. 2012) ("[A] party cannot unilaterally bind another party to a contract by capturing them within a defined term in that contract.").

4. The Debtors do not argue that Netas manifested intent to be bound to the 2013 Agreement, nor can they. Rather, the Debtors rely on arguments that the plain language of Section 4.3 unequivocally released the claims of the EMEA Debtors' former affiliates and that the EMEA Debtors intended to release the claims their former affiliates. However, the principle of contract construction that the plain language of an agreement best reflects the intent of the parties is not the controlling issue in this case because it is undisputed that Netas was never a party to the 2013 Agreement. Therefore, the intent of the Debtors, the EMEA Debtors, and other parties to the 2013 Agreement is not the issue and their intent cannot bind Netas.

5. Moreover, it is undisputed that Netas was not given notice of the 2013 Agreement or the motion to approve the 2013 Agreement. Netas first learned about the 2013 Agreement and the purported release of the Netas Claims after the Debtors' Claim Objection was filed on March 10, 2017. *See* Caliskan Declaration, at ¶ 15. Therefore, aside from the fact that Netas was not a party to the 2013 Agreement, the failure to provide Netas with notice of the 2013 Agreement

Motion constitutes a violation of fundamental due process rights. Accordingly, the 2013 Agreement cannot act to release the Netas Claims.

6. In short, the Motion should be denied because, at a minimum, there is a genuine issue of material fact as to whether the 2013 Agreement acted to release the Netas Claims. Indeed, the undisputed facts demonstrate that, as a matter of law, the 2013 Agreement did *not* release the Netas Claims.

## NATURE AND STAGE OF PROCEEDING

7. On January 14, 2009 (the "Petition Date") the Debtors, other than Nortel Networks (CALA) and Nortel Networks India International Inc.,[4] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases (the "Chapter 11 Cases") are being jointly administered for procedural purposes only. *See* Motion, at ¶ 2.

8. Various affiliates of the Debtors also became engaged in foreign insolvency proceedings on the Petition Date. *Id.* at ¶ 3. The Debtors' ultimate parent company, NNC, as well as NNI's direct corporate parent, NNL, and certain Canadian Debtors filed an application for relief in the Canadian Court under the Companies' Creditors Arrangement Act (Canada). *Id.* Moreover, the High Court of England and Wales (the "UK Court") placed 19 of Nortel's affiliates (the "EMEA Debtors") into administration under the control of the Joint Administrators. *Id.*

9. As described below, Netas is a former affiliate of one of the EMEA Debtors that provided software and development support services. *See* Caliskan Declaration, at ¶ 3.

---

[4] Nortel Networks (CALA) and Nortel Networks India International Inc. filed their chapter 11 petitions on July 14, 2009 and July 26, 2016, respectively. Their chapter 11 cases were consolidated and are being jointly administered with the other Debtors' chapter 11 cases for procedural purposes only.

-3-

10.  On September 10, 2009, Netas timely filed proofs of claim in the amounts of $14,261,663.01 and $87,760.50 against NNI in NNI's chapter 11 case for certain unpaid invoices for services rendered prior to the Petition Date. *Id.* at ¶ 5-7; Netas Response (defined below), at ¶ 9-10.

11.  On November 3, 2011, Netas filed Claim Nos. 8038 and 8037 in the respective amounts of $14,261,663.01 and $87,760.50. *See* Caliskan Declaration, at ¶ 10; Netas Response (defined below), at ¶ 11. Claim Nos. 8038 and 8037 are substantially similar to the proofs of claim filed on September 10, 2009, but, as explained below, reflect Netas' name-change to its present name, Netas Telekomunikasyon A.S. *See* Caliskan Declaration, at ¶ 10.[5]

12.  On March 10, 2017, the Debtors filed a forty-seventh omnibus objection (substantive) to various claims (the "Claim Objection") [D.I. 18009], in which the Debtors object to various proofs of claim, including the Netas Claims. Specifically, in Exhibit A to the Claim Objection [D.I. 18009-1], the Debtors simply rely upon the following boilerplate statement as the basis for their objection to the Netas Claims:

> Based on a careful review of the Debtors Books and Records, their Schedules, and the proofs of claim, including any supporting documentation provided by the claimant, the Debtors have determined that there is no amount due and owing by any of the Debtors to the claimant because the claim, asserted by an affiliate, lacks a proper or valid basis, and otherwise has been released.

---

[5] Netas has filed six proofs of claim in the NNI's chapter 11 case, with supporting purchase orders and invoices attached to each proof of claim. The claims filed by Netas are: (i) Claim No. 2878, filed on September 10, 2009, in the amount of $14,261,663.01; (ii) Claim No. 2876, filed on September 10, 2009, in the amount of $87,760.50; (iii) Claim No. 2877, filed on September 10, 2009, in the amount of $14,261,663.01 and seeking priority under section 503(b)(9) of the Bankruptcy Code; (iv) Claim No. 2875, filed on September 10, 2009, in the amount of $87,760.50 and seeking priority under section 503(b)(9) of the Bankruptcy Code; (v) Claim No. 8038, filed on November 3, 2011, in the amount of $14,261,663.01; and (vi) Claim No. 8037, filed on November 3, 2011, in the amount of $87,760.50. As explained in the Netas Response (defined in ¶ 13 herein), Netas does not argue that four of these claims are duplicative and Netas is not seeking priority status under section 503(b)(9) of the Bankruptcy Code. Netas is only seeking allowance of Claims 8038 and 8037, in the respective amounts of $14,261,663.01 and 87,760.50. *See* Caliskan Declaration, at ¶¶ 5-7, 10; Netas Response, at ¶¶ 9-11.

*See* Claim Objection, Ex. A, at pp. 2-4. Although this boilerplate language states that the Netas Claims may "otherwise ha[ve] been released," the Claim Objection does not provide any basis whatsoever for this assertion.

13. On April 14, 2017, Netas filed a detailed response to the Claim Objection (the "Netas Response") [D.I. 18098], a copy of which is annexed as Exhibit A to the Caliskan Declaration and which is incorporated by reference herein. The Netas Response demonstrates Debtor NNI issued purchase orders to Netas and that Netas issued corresponding invoices to Debtor NNI, all of which are attached to the Netas Claims. The Netas Response argues that the purchase orders and invoices attached to it are sufficient to establish the validity of the Netas Claims, and that the Debtors have provided no evidence to overcome the presumption that the properly filed Netas Claims are valid. *See generally* Netas Response.

14. On June 30, 2017, the Debtors filed the Motion pursuant to the scheduling order entered by the Court (the "Scheduling Order") [D.I. 18288].[6]

## STATEMENT OF RELEVANT UNDISPUTED FACTS

**I.    Netas & Its Claims**

15. Netas, a business formed under the laws of Turkey, provided certain software and development support services to NNI before and after the Petition Date pursuant to that certain Master Technology Development and Technical Support Agreement dated July 7, 1997 and amended pursuant to a first amending agreement dated October 29, 2008 and payment term

---

[6] Also on June 30, 2017, the Debtors filed the *Debtors' Reply in Further Support of Debtors' Forty-Seventh Omnibus Objection (Substantive) to Certain Claims* (the "Claim Objection Reply") [D.I. 18335]. This memorandum of law only addresses the arguments raised in the Motion, which is the only matter presently before this Court. Netas reserves its rights, pursuant to the terms of the Scheduling Order, to conduct discovery and address the issues raised in the Claim Objection Reply.

variation dated February 23, 2009 (collectively, the "Master Agreement").[7] Caliskan Declaration, at ¶ 3. NNI issued purchase orders to Netas and Netas sent corresponding invoices to NNI. *See* Caliskan Declaration, at ¶ 4; Netas Response, at ¶ 8. NNI would then remit payment to Netas in accordance with such invoices. Caliskan Declaration, at ¶ 4; Netas Response, at ¶ 8.

16. Many of the invoices issued to NNI by Netas remained unpaid as of the Petition Date. *See* Caliskan Declaration, at ¶ 5; Netas Response, at ¶ 9. Accordingly, on September 10, 2009, Netas filed Claim Nos. 2875, 2876, 2877, and 2878 as described above. *See* Caliskan Declaration, at ¶ 5; Netas Response, at ¶¶ 9-10; Netas Claims.

17. At the time Netas filed Claim Nos. 2875, 2876, 2877, and 2878, Netas was known as Nortel Networks Netas Telekomunikasyon A.S. and was an affiliate of one of the EMEA Debtors—Nortel Networks International Finance and Holdings B.V. ("NNIF"). *See* Caliskan Declaration at ¶ 8.

18. NNIF was the parent company of Netas until December 22, 2010, when NNIF sold its entire stake in Netas to OEP Turkey Tech BV. Accordingly, Netas has not been affiliated with any EMEA Debtor or any other Nortel related entity since December 22, 2010. *Id.* at ¶ 9.

19. Following NNIF's sale of its shares in Netas, Netas changed its name to its present name, Netas Telekomunikasyon A.S. On November 3, 2011, Netas filed Claim Nos. 8038 and 8037, which reflect this name change. *Id.* at ¶ 10.

---

[7] In ¶ 8 of the Motion, the Debtors mention that NNI is not a signatory to the Master Agreement, implying that the Master Agreement is not applicable to NNI. This purported fact is not only irrelevant to the limited issue set forth in the Motion (i.e., whether the 2013 Agreement released the Netas Claims), but it also ignores that the Master Agreement is explicitly between Netas and Northern Telecom Limited (now known as NNC) and Northern Telecom Limited's affiliates, which would include NNI.

**II.     The 2013 Agreement**

20.     NNI is a party to a certain Agreement Settling US Claims Litigation dated December 17, 2013 (the "2013 Agreement"),[8] by and between the Debtors, the EMEA Debtors, and other parties in interest in the insolvency proceedings of the Debtors, the Canadian Debtors, and the EMEA Debtors at the time of the 2013 Agreement.[9]

21.     Netas is not a signatory to the 2013 Agreement. *See generally* 2013 Agreement. Netas had absolutely no involvement in the negotiation of the 2013 Agreement and was not aware of the 2013 Agreement until after the Claim Objection was filed on March 10, 2017. *See* Caliskan Declaration, at ¶¶ 14-15.

22.     Netas was not affiliated with the EMEA Debtors, any of the Debtors, or any other Nortel-related entity at the time the 2013 Agreement was entered into, and none of the parties to the 2013 Agreement had the authority to authorize the release of the Netas Claims. *Id.* at ¶ 14. Given that NNIF had sold its entire stake in Netas on December 22, 2010, Netas had not been affiliated with the EMEA Debtors or any other Nortel-related entity for over three years by the time the 2013 Agreement was executed. *Id.* at ¶ 9, 14.

23.     On December 17, 2013, the Debtors filed a motion to approve the 2013 Agreement (the "2013 Agreement Motion") [D.I. 12618]. The Court entered an order granting the 2013 Agreement Motion on January 7, 2014 [D.I. 12785].

24.     Significantly, it is undisputed that Netas was not served with the 2013 Agreement Motion. *See* Copy of the certificate of service for the 2013 Agreement Motion (the "Cert. of

---

[8] The 2013 Agreement is attached as Exhibit A to the Motion.

[9] The Debtors assert in their Statement of Relevant Undisputed Facts that Section 4.3 of the 2013 Agreement "constitutes a broad release by each of the EMEA Debtors and their former affiliates and subsidiaries of any and all claims, liabilities, and obligations against the Debtors . . . ." *See* Motion, ¶ 10. This assertion constitutes a legal conclusion and is refuted by Netas as set forth throughout this Opposition. To the extent the Debtors characterize legal conclusions as undisputed facts in their Motion, Netas respectfully requests that such assertions be construed as the Debtors' legal conclusions rather than undisputed facts.

Service") [Docket. No. 12680], attached hereto as Exhibit A. Netas did not have knowledge of the 2013 Agreement or 2013 Agreement Motion until after the Claim Objection was filed on March 10, 2017—over three years after the 2013 Agreement was executed and approved by the Court. *See* Caliskan Declaration, at ¶ 15.[10]

## SUMMARY JUDGMENT STANDARD

25.     Summary judgment under Rule 56 of the Federal Rules of Civil Procedure, which is incorporated into bankruptcy proceedings through Rule 7056 of the Federal Rules of Bankruptcy Procedure, is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file…show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *U.S. v. Harding*, No. 13-564, 2013 WL 3989155, *2 (M.D. Pa. Aug. 3, 2013). "An issue is 'genuine' if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue." *Creasy v. Reliance Standard Ins. Co.*, No. 07-cv-3789, 2008 WL 834380, at *1 (E.D. Pa. Mar. 26, 2008). "A material fact is one 'that might affect the outcome of the suit under the governing law.'" *Lomando v. United States*, 667 F.3d 363, 371 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

26.     If the moving party demonstrates an absence of disputed material facts, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita v. Zenith Ratio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). In determining whether such relief is warranted, "[t]he evidence of the

---

[10] The Debtors have not submitted evidence that Netas had notice of the 2013 Agreement at the time the 2013 Agreement was executed or approved by the Court. To the extent that the Debtors may introduce arguments and/or evidence in their reply to this memorandum of law that were not previously asserted in the Motion, Netas respectfully requests that such arguments and/or evidence not be considered by the Court or that Netas have an opportunity to respond.

nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 181 (3d Cir. 2009).

## LEGAL ARGUMENT

### A. The Netas Claims Were Not Released by the 2013 Agreement Because Netas is Not a Party to the 2013 Agreement and, Therefore, it is Not Binding on Netas

27. The Debtors argue that the Netas Claims must be disallowed as a matter of law because they were released by Section 4.3 of the 2013 Agreement. The Debtors rely on the fundamental principal of contract law that where the plain language of a contract is unambiguous, the plain language of the contract controls. *See* Motion, at ¶ 14. However, the Debtors *ignore* the threshold principal of contract law that a person or entity cannot be bound to a contract unless that person or entity is a party to the contract and manifests intent to be bound. In this case, Netas was not a party to the 2013 Agreement and did not manifest intent to be bound to the 2013 Agreement.

28. Settlement agreements are construed according to traditional rules of contract construction. *In re Columbia Gas Sys. Inc.*, 50 F.3d 233, 238 (3d Cir. 1995). "To form a valid contract under New York law,[11] there must be an offer, acceptance, consideration, mutual assent and intent to be bound." *Benicorp Ins. Co. v. Nat'l Medical Health Card Systems, Inc.*, 447 F. Supp. 2d 329, 337 (S.D.N.Y. 2006) (citing *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004)). Mutual assent, or a "meeting of the minds," requires some "manifestation or expression of assent . . . by word, act, or conduct which evinces the intention of the <u>parties</u> to contract." *Bazak Intern. Corp. v. Tarrant Apparel Group*, 378 F. Supp. 2d 377, 389 (S.D.N.Y. 2005) (emphasis added). "It is a basic principle of contract law that absent the <u>parties' intent</u> to

---

[11] According to the Debtors, the 2013 Agreement is governed by New York law. *See* Motion, at ¶ 14.

be bound, no contract can be formed." *Kreiss v. McCown DeLeeuw & Co.*, 37 F. Supp. 2d 294, 299 (S.D.N.Y. 1999) (emphasis added).

29. Thus, before interpreting the plain language of Section 4.3, the Court would have to first find that Netas was a party to the 2013 Agreement. It is undisputed that Netas is not a party to the 2013 Agreement. As noted above, as of December 22, 2010—three years prior to the execution of the 2013 Agreement—Netas was no longer affiliated with any EMEA Debtor, the Debtors, or any other Nortel affiliate and no party to the 2013 Agreement had the authority to release the Netas Claims.

30. Nonetheless, the Debtors seek to bind Netas to the release contained in Section 4.3, because the language of Section 4.3 includes a reference to a release of the claims of "former affiliates"[12] of the EMEA Debtors among those claims which the EMEA Debtors agreed to release. However, "a party cannot unilaterally bind another party to a contract by capturing them within a defined term in that contract." *APL Co. Pte. Ltd. v. Kemira Water Solutions, Inc.*, 890 F. Supp. 2d at 366 (emphasis added); *see also Corbesco, Inc. v. Local No. 542, Intern. Union of Operating Engineers*, 620 F. Supp. 1239, 1244 (D. Del. 1985) (refusing to enforce specific terms of unilaterally-written settlement agreement).

31. While the Debtors and the EMEA Debtors may have intended to be bound to the 2013 Agreement, there is absolutely no evidence that Netas intended to be bound to it. This

---

[12] As explained herein, the plain language of Section 4.3 is not applicable because Netas was not a party to the 2013 Agreement. Nonetheless, the Debtors have not demonstrated that the plain language of Section 4.3 would apply to release the Netas Claims. Section 4.3 provides, in pertinent part, that "each of the EMEA Debtors . . . and (**to the extent under the control of the Liquidator or the Joint Administrators (as the case may be)**) the respective current and **former affiliates** . . . of the foregoing" release the Debtors from certain claims. *See* 2013 Agreement, at § 4.3 (emphasis added). Thus, Section 4.3 applies to former affiliates only to the extent such former affiliates were "under the control" of the Joint Administrators and Liquidator (as defined in the 2013 Agreement) in the EMEA Debtors' foreign insolvency proceedings at the time the 2013 Agreement was entered into. Netas was not an affiliate of the EMEA Debtors at the time of the 2013 Agreement and there is no evidence presented by the Debtors that Netas was otherwise under the control of the Joint Administrators or Liquidator at the time the 2013 Agreement was entered into. Accordingly, the plain terms of Section 4.3 do not act to release the Netas Claims.

distinction is clearly illustrated by contrasting from the present matter the Court's Memorandum Opinion entered at D.I. 408 in Adversary Proceeding No. 11-53454, *In re Nortel Networks Inc.*, 2016 WL 2584092 (Bankr. D. Del. May 2, 2016) (the "SNMP Opinion"), which the Debtors rely upon.  In the SNMP Opinion, the Court upheld the validity of the releases contained in the 2013 Agreement, and the Debtors argue that the Court should do the same here.  *See* Motion, at ¶ 1. However, the SNMP Opinion is easily distinguishable from the facts of the present matter.  The SNMP Opinion addressed whether the 2013 Agreement released the EMEA Debtors from claims for contribution asserted by the Debtors.  *See* SNMP Opinion, at p. 7.  Accordingly, the issue was whether the releases contained in the 2013 Agreement were valid and enforceable as against a *party* to the 2013 Agreement, the Debtors.

32. Here, in contrast, the Debtors are trying to enforce the 2013 Agreement against Netas, which was *not* a party to the 2013 Agreement and did not even have knowledge of the 2013 Agreement.  As noted above, the Debtors and/or EMEA Debtors cannot unilaterally bind Netas to the 2013 Agreement simply by including the "former affiliates" of the EMEA Debtors within the ambit of the release contained in Section 4.3.  *See APL Co. Pte. Ltd. V. Kemira Water Solutions, Inc.*, 890 F. Supp. 2d at 366.

33. In sum, the Debtors have not demonstrated that the Netas Claims have been released as a matter of law by virtue of the 2013 Agreement.  Thus, the Motion must be denied. In fact, the undisputed facts demonstrate that, as a matter of law, the 2013 Agreement did *not* release the Netas Claims.

[*Remainder of page intentionally left blank*]

    **B.**    **Enforcing the 2013 Agreement to Expunge the Netas Claims Would Violate Due Process Because Netas Was Never Given Notice of the 2013 Agreement and Did Not Have Knowledge of the 2013 Agreement Until After the Debtors Filed the Claim Objection on March 10, 2017**

34.    Furthermore, the Netas Claims cannot be expunged by the 2013 Agreement because enforcing the 2013 Agreement against Netas would violate Netas' right to due process.

35.    It is a hallmark of chapter 11 cases that a creditor's claim cannot be expunged without proper notice. *See, e.g., Chemetron Corp. v. Jones,* 72 F.3d 341, 346 (3d Cir. 1995) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *In re Grand Union Co.*, 204 B.R. 864, 871 (Bankr. D. Del. 1997) (noting that a creditor who is not apprised of the claims bar date should not have its claim expunged by said bar date). "Inadequate notice is a defect which precludes discharge of a claim in bankruptcy. Due process requires notice that is 'reasonably calculated to reach all interested parties, reasonably conveys all the required information, and permits a reasonable time for a response.'" *Chemetron Corp. v. Jones*, 72 F.3d at 346.

36.    Here, it is undisputed that Netas never received notice of the 2013 Agreement Motion and that Netas had no knowledge of the 2013 Agreement until after the Claim Objection was filed on March 10, 2017. *See* Cert. of Service; Caliskan Declaration, at ¶ 15.

37.    Accordingly, Netas never had any opportunity to respond to the 2013 Agreement Motion. Binding Netas to the terms of the 2013 Agreement would therefore violate due process. Thus, the Motion should be denied.

[*Remainder of page intentionally left blank*]

**CONCLUSION**

For the foregoing reasons, the 2013 Agreement and the purported release contained within it are not binding on Netas or the Netas Claims, and Netas respectfully requests that the Court deny the Motion accordingly. Netas would request that the Court grant summary judgment in its favor with respect to whether the 2013 Agreement released the Netas Claims.

Dated:   July 21, 2017

**LOWENSTEIN SANDLER LLP**
Zachary D. Rosenbaum, Esq.
Paul Kizel, Esq.
Michael Papandrea, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone:  (973) 597-2500
Facsimile:  (973) 597-2400
E-mail: zrosenbaum@lowenstein.com
           pkizel@lowenstein.com
           mpapandrea@lowenstein.com

*Counsel for Netas Telekomunikasyon A.S.*

**- and –**

**POLSINELLI PC**

*/s/ Christopher A. Ward, Esq.*
Christopher A. Ward, Esq. (No. 3877)
222 Delaware Avenue
Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
E-mail: cward@polsinelli.com

*Delaware Counsel for Netas Telekomunikasyon A.S.*