**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-----------------------------------------------------------X

*In re*

Nortel Networks Inc., *et al.*,[1]

        Wind-Down Debtors and
        Debtor-In-Possession.

----------------------------------------------------------- X

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**RE: D.I. 18333, 18334**

**DEBTORS' REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

---

[1]      The Wind-Down Debtors in these chapter 11 cases, along with the last four digits of each Wind-Down Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567), and Nortel Networks (CALA) Inc. (4226).  Nortel Networks India International Inc. (8667) remains a Debtor-In-Possession. Contact information for all Debtors and their petitions are available at http://dm.epiq11.com/nortel.

Nortel Networks Inc. ("NNI") and certain of its affiliates, as wind-down debtors and debtor-in-possession, respectively, in the above-captioned case (collectively, the "Debtors"), submit this reply memorandum of law in further support of the Debtors' Motion for Summary Judgment pursuant to Federal Rule of Bankruptcy Procedure 7056 [D.I. 18333] (the "Motion") and accompanying memorandum of law [D.I. 18334] (the "Debtors' Opening Brief").[2]  In further support of the Motion, the Debtors respectfully state as follows:

**ARGUMENT**

1.      The claims asserted by Netas against NNI in connection with services that neither were provided to NNI nor benefited NNI fail as a matter of law because such claims were expressly released under the unambiguous terms of the EMEA Settlement Agreement, which released, among others, all claims against the Debtors held by former affiliates or subsidiaries of the EMEA Debtors.  It is undisputed that Netas was and is a former subsidiary of the EMEA Debtors.  Through that agreement, the parties' intended to provide a broad release of claims in an effort to fully and finally resolve all outstanding issues that could otherwise have led to litigation and delay.  Indeed, NNI paid the EMEA Debtors $37.5 million in consideration for the release of all claims against NNI and the other Debtors. In addition, in Section 8.16 of the EMEA Settlement Agreement, each party, including the EMEA Debtors, confirmed that it had the "full power and authority to enter into [the] Settlement Agreement," including the releases contained in the agreement.[3]  Consistent with that intent and the express provisions of the EMEA Settlement Agreement, the Debtors have reasonably relied on such a broad release and the acknowledgments thereof by the EMEA Debtors since the EMEA Settlement Agreement was

---

[2]      Capitalized terms not defined herein have the same meaning as in the Debtors' Opening Brief.
[3]      *See* Section 8.16 of the EMEA Settlement Agreement, attached as Exhibit A to the Debtors' Opening Brief.

executed by the parties and approved by this Court.  Allowance of the Netas Claims would contravene the plain terms of the EMEA Settlement Agreement and the parties' intent to effectuate the release of such claims.

2.      Netas' arguments that it cannot be bound by the broad releases granted pursuant to the EMEA Settlement Agreement because it was neither a party to the EMEA Settlement Agreement nor given notice of such agreement are concerns more properly addressed with the EMEA Debtors and do not raise a factual dispute as to whether the Netas Claims against NNI were in fact released under the EMEA Settlement Agreement.  The inclusion of "former subsidiaries" as releasing parties leaves no doubt that the Netas Claims were released pursuant to the EMEA Settlement Agreement and the EMEA Debtors expressly agreed in Section 8.16 of the EMEA Settlement Agreement that they had "full power and authority" to agree to such releases on behalf of their former subsidiaries.  Therefore, the Netas Claims must be disallowed as a matter of law.  Netas' attempt to ignore the broad scope of the releases and read former subsidiaries of the EMEA Debtors out from such releases cannot be a basis for it to obtain a recovery from NNI to which it is otherwise not entitled.  Such efforts should not be countenanced by this Court.

3.      Moreover, not only would imposing liability on NNI for the amounts sought through the Netas Claims disregard the clear language of the EMEA Settlement Agreement, but such liability is also irreconcilable with the way in which the EMEA Debtors have to this point denied the Debtors any benefit from the Nortel group's historical relationship with Netas.  The EMEA Debtors have previously vehemently and successfully argued that the proceeds of the sale of Netas must be excluded from the allocation of the sale proceeds generated by the other Nortel business sales on the grounds that the Debtors did not hold any interest in Netas.  To impose

liability on NNI for the Netas Claims when NNI received no value from Netas' business would result in the Debtors bearing the costs incurred in creating a benefit that inured exclusively to the EMEA Debtors.

4.      Given the history of these cases, to allow Netas to recover from the Debtors here would be inequitable.  The agreement among the EMEA Debtors and the Debtors to release claims of former subsidiaries in the interest of a global settlement must be given its due weight, and the Debtors are entitled to rely on such release.  A dispute between Netas and the EMEA Debtors with respect to the EMEA Debtors' release of claims against NNI should not consume any more resources of the Debtors' estates and cannot be the basis for allowing the Netas Claims against NNI.  Netas shold look to the EMEA Debtors for its allocation share of the $37.5 million of consideration paid by NNI pursuant to the EMEA Settlement Agreement.


[*Remainder of Page Intentionally Left Blank*]

## CONCLUSION

Accordingly, the Debtors respectfully request that this Court (i) grant summary judgment in favor of the Debtors and disallow the Netas Claims; and (ii) grant such other and further relief as it deems just and proper.

Dated:  August 4, 2017          CLEARY GOTTLIEB STEEN & HAMILTON LLP
       Wilmington, Delaware

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

     - and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


 */s/ Tamara K. Minott*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Wind-Down Debtors
and Debtor-in-Possession*

11222460.1