# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------X
: Chapter 11
*In re* :
: Bankr. Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1] :
: (Jointly Administered)
                 Debtors. :
: **RE: D.I. 18318**
-----------------------------------------------------------X
:
SNMP Research International, Inc. :
:
and :
:
SNMP Research, Inc., :
: Adv. Proc. No. 11-53454 (KG)
                 Plaintiffs, :
:
v. :
: **RE: Adv. D.I. 607**
Nortel Networks Inc., *et al.*, :
:
                 Defendants. :
:
-----------------------------------------------------------X

## U.S. DEBTORS' RESPONSE TO SNMP RESEARCH'S
## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

---

[1] In addition to Nortel Networks Inc., the debtors in these Chapter 11 cases are: Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc. and Nortel Networks (CALA) Inc.  Additional information regarding the Debtors can be found in their respective Chapter 11 petitions, which are available at http://chapter11.epiqsystems.com/nortel.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................... ii

I. INTERNATIONAL IGNORES THE RELEVANT NEW YORK PRECEDENT THAT ESTABLISHES AN IMPLIED-IN-FACT CONTRACT HERE.................... 1

II. INTERNATIONAL'S ARGUMENT RELIES ON IRRELEVANT CASE LAW ... 3

III. INTERNATIONAL'S STATUTE OF FRAUDS ARGUMENT FAILS .................. 5

IV. INTERNATIONAL'S CONSIDERATION ARGUMENT FAILS .......................... 6

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Grenawalt v. AT&T Mobility, LLC*,
937 F. Supp. 2d 438,
*overruled on other grounds*, 642 F. App'x 36 (2d Cir. 2016) ............................................. 3

*Harco Nat'l Ins. Co. v. Arch Specialty Ins. Co.*,
2008 WL 1699755 (S.D.N.Y. 2008),
*aff'd*, 328 F. App'x 678 (2d Cir. 2009) ................................................................................ 2, 4

*HCB Contractors v. Rouse Assocs.*,
1992 U.S. Dist. LEXIS 17443 (E.D. Pa. 1992) ................................................................... 3

*In re Penn Cent. Transp. Co.*,
831 F.2d 1221 (3d Cir. 1987) ............................................................................................... 3

*Marcella v. ARP Films, Inc.*,
778 F.2d 112 (2d Cir. 1985) ................................................................................................. 6

*Mellencamp v. Riva Music Ltd.*,
698 F. Supp. 1154 (S.D.N.Y. 1988) .................................................................................... 4

*Millenium Expressions, Inc. v. Chauss Mktg., Ltd.*,
2007 WL 950070 (S.D.N.Y. 2007) ...................................................................................... 5

*N. Am. Hyperbaric Ctr. v. City of New York*,
604 N.Y.S.2d 56 (N.Y. App. Div. 1993) ............................................................................ 2, 4-5

*Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*,
861 F. Supp. 2d 344 (S.D.N.Y. 2012) ................................................................................. 4

*R.G. Grp., Inc. v. Horn & Hardart Co.*,
751 F.2d 69 (2d Cir. 1984) ................................................................................................... 4

*Richmor Aviation, Inc. v. Sportsflight Air, Inc.*,
918 N.Y.S.2d 806 (N.Y. App. Div. 2011) .......................................................................... 2, 5

*Tang v. Jinro Am., Inc.*,
2008 WL 4163183 (S.D.N.Y. 2008) .................................................................................... 4

*Valentino v. Davis*,
703 N.Y.S.2d 609 (N.Y. App. Div. 2000) .............................................................................. 4

*Watts v. Columbia Artists Mgmt. Inc.*,
188 A.D.2d 799 (N.Y. App. Div. 1992) ................................................................................ 5

*Weitnauer Trading Co. v. Annis*,
516 F.2d 878 (2d Cir. 1975) .............................................................................................. 5-6

1.  The U.S. Debtors submit this response to certain new arguments relating to the "implied-in-fact agreement" issue offered by International in its Amended Proposed Findings of Fact and Conclusions of Law Regarding Schedule 1 Issue (Adv. D.I. 607) (the "<u>Int'l Br.</u>").

2.  Nortel has demonstrated that Schedule 1's meaning and effect is to confer the lifetime royalty buy out of the Bay Networks License on "[a]ll products of units and projects originating from what was Bay Networks" in existence during Schedule 1's three-year term. U.S. Debtors' Proposed Findings of Fact and Conclusions of Law (Adv. D.I. 604) (the "<u>Nortel Br.</u>") §§ II, III. This is Nortel's primary position on the Schedule 1 issue. But even if International could succeed on its argument to interpret Schedule 1 as extinguishing all rights to use the covered software in June 2003, the parties' conduct confirmed Nortel's ongoing right to use that software so as to establish an implied-in-fact agreement to that effect. *Id.* §§ VI, VIII.

3.  The implied-in-fact agreement issue is relevant regardless of how the Court rules as to Schedule 1's proper reading. If the Court adopts Nortel's reading, we ask that the Court also find that the record would establish an implied-in-fact agreement to the same effect, as an additional and alternative basis for its ruling. And if the Court were to accept International's contrary interpretation, the implied-in-fact agreement would nevertheless establish Nortel's ongoing right to use the covered software beyond June 2003.

## I.   INTERNATIONAL IGNORES THE RELEVANT NEW YORK PRECEDENT THAT ESTABLISHES AN IMPLIED-IN-FACT CONTRACT HERE

4.  A long and consistent line of New York precedent addresses the exact scenario that would be presented here if International's proposed interpretation of Schedule 1 were accepted: when parties to an agreement continue to perform pursuant to its terms after its stated termination date, an ongoing implied-in-fact contract is formed containing the same terms as the initial agreement. Nortel Br. ¶ 274.

5. "[I]t is well settled in New York that '[w]hen an agreement expires by its terms, if, without more, the parties continue to perform as theretofore, an implication arises that they have mutually assented to a new contract containing the same provisions as the old.'" *N. Am. Hyperbaric Ctr. v. City of New York*, 604 N.Y.S.2d 56, 57 (N.Y. App. Div. 1993) (quoting *Martin v. Campanaro*, 156 F.2d 127, 129 (2d Cir. 1946)); *Richmor Aviation, Inc. v. Sportsflight Air, Inc.*, 918 N.Y.S.2d 806, 808-09 (N.Y. App. Div. 2011) ("[E]vidence that the parties continued to perform after [the contract's] expiration in substantially the same manner as they had performed during the initial term of the contract supports . . . [the] conclusion that the terms of the original contract continued to apply to the parties' subsequent agreement."); *Harco Nat'l Ins. Co. v. Arch Specialty Ins. Co.*, 2008 WL 1699755, at *6 (S.D.N.Y. 2008), *aff'd*, 328 F. App'x 678 (2d Cir. 2009) ("Where the parties continue to do business after the expiration of a contract as though the same contract terms apply, New York Courts will construe their actions as extending the terms of the original contract.").

6. Here, the record emphatically establishes that the parties conducted themselves on the basis that Nortel had an ongoing right to use the software covered by Schedule 1 beyond June 2003. They repeatedly renewed the SSAs that confirmed Nortel's right to use the Schedule 1 software, and International formally confirmed in a January 2006 letter that "Nortel Networks has a license" to use the software "referenced under Nortel Schedule 1." Nortel Br. ¶¶ 43-50, 59-63. ***Everything*** the parties did and said concerning Schedule 1 confirmed Nortel's ongoing right to use the software beyond June 2003, and ***nothing*** they did or said suggested the contrary. This record confirms that Nortel's reading of Schedule 1 is right. And even if International's contrary interpretation of Schedule 1 could be accepted, this record would establish an implied-in-fact agreement confirming Nortel's ongoing right to use the software. *Id.* §§ VI, VIII.

## II.  INTERNATIONAL'S ARGUMENT RELIES ON IRRELEVANT CASE LAW

7. Evidently aware that an implied-in-fact agreement plainly would be established under the relevant New York precedent, International dodges that precedent. It never even mentions the relevant cases. Instead, it seeks to distract and confuse by citing decisions that have no application here.

8. International argues that no implied-in-fact contract could be formed because "the parties have an express agreement dealing with the same subject," and as purported support it cites cases where parties sought to establish that an implied-in-fact agreement coexisted alongside an express written agreement covering the same subject matter. Int'l Br. ¶¶ 170-174; *HCB Contractors v. Rouse Assocs.*, 1992 U.S. Dist. LEXIS 17443, at *17 (E.D. Pa. 1992) (no implied-in-fact contract where party already operating under express written agreement (under Pennsylvania law)); *In re Penn Cent. Transp. Co.*, 831 F.2d 1221, 1228-30 (3d Cir. 1987) (no implied-in-fact contract in part where parties had four express written contracts on the same subject (under federal law)); *Grenawalt v. AT&T Mobility, LLC*, 937 F. Supp. 2d 438, 457-58, *overruled on other grounds*, 642 F. App'x 36 (2d Cir. 2016) (implied-in-fact contract superseded by later written agreement).

9. But, here, the implied-in-fact contract would come into play only if International were to succeed on its argument that Schedule 1 and all rights it conferred came to an end after three years. Nortel Br. ¶ 273. Hence, the only scenario in which an implied-in-fact agreement would arise is where it did so *after* the express written agreement had ended. This is exactly the scenario addressed in the cases Nortel cites: an express agreement exists and it specifies a termination date, but the parties' conduct establishes an ongoing implied-in-fact agreement beyond the termination date. *See* Section I, *supra*; Nortel Br. ¶¶ 273-74. Courts have expressly rejected the argument that finding an implied-in-fact agreement in the circumstances here would

conflict with the prior written agreement, including when the prior agreement provides that any extension or modification must be in writing.  *Harco*, 2008 WL 1699755, at *6 n.4 ("Arch argues that, by the terms of the contract, any extension of the rental agreement would need to be in writing.  New York cases clearly state that a court may consider a contract extended based on the actions of the parties, thus, this argument fails.").

10.     In a similar distraction, International cites cases for the proposition that "a contract may not be implied in fact from the conduct of the parties where it appears that they intended to be bound only by a formal written agreement," suggesting a four-factor test for this determination.  Int'l Br. ¶ 171.  But these decisions address whether parties that engaged in negotiations – but never finalized and executed *any* agreement – intended to be bound without a signed writing.  *Mellencamp v. Riva Music Ltd.*, 698 F. Supp. 1154, 1165-66 (S.D.N.Y. 1988); *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74 (2d Cir. 1984); *Valentino v. Davis*, 703 N.Y.S.2d 609, 612 (N.Y. App. Div. 2000); *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 359 (S.D.N.Y. 2012).  The one decision International cites involving a prior written agreement does not apply the four-factor test and is easily distinguishable:  unlike here, the plaintiff was seeking to add a new provision that was different from the parties' prior agreements, and in any event there was no evidence that the parties had impliedly agreed to the new provision.  *Tang v. Jinro Am., Inc.*, 2008 WL 4163183, at *5 (S.D.N.Y. 2008) (rejecting argument that a new implied-in-fact agreement had been formed "under which plaintiff could be terminated only for cause" because the parties' prior written agreements contained no such term and there was no evidence that they had impliedly agreed to such a term).

11.     Here, the parties did execute a written agreement, and thus International's four-factor test is inapposite.  As set forth in the many decisions Nortel cites, when parties execute a

4

written agreement that specifies a termination date (as International contends here) and then continue to operate under the agreement beyond that date, an ongoing implied-in-fact agreement is established "containing the same provisions as the old." *N. Am. Hyperbaric*, 604 N.Y.S.2d at 57. Thus, the sole relevant inquiry is whether "the parties continued to perform after [the contract's] expiration in substantially the same manner as they had performed during the initial term of the contract." *Richmor Aviation, Inc. v. Sportsflight Air, Inc.*, 918 N.Y.S.2d 806, 808-09 (N.Y. App. Div. 2011); Nortel Br. ¶ 274 (citing cases). The record establishes that they did. Nortel Br. §§ VI, VIII.

### III.    INTERNATIONAL'S STATUTE OF FRAUDS ARGUMENT FAILS

12.    International next argues that an implied-in-fact agreement would be unenforceable under New York's statute of frauds. Int'l Br. ¶ 175. This fails for two reasons. First, International ignores that the parties *did* memorialize the terms of their agreement in writing, namely in Schedule 1 and the key provisions of the Bay Networks License it incorporated. Under New York law, no further writing is required. New York courts addressing this scenario regularly find implied-in-fact contracts that last significantly longer than one year, without requiring an additional writing separate from the original (expired) agreement. *Richmor Aviation*, 918 N.Y.S.2d at 807 (implied-in-fact contract existed from November 2002 to January 2005); *Millenium Expressions, Inc. v. Chauss Mktg., Ltd.*, 2007 WL 950070, at *4-5 (S.D.N.Y. 2007) (January 1997 to August 2002); *Watts v. Columbia Artists Mgmt. Inc.*, 188 A.D.2d 799, 800 (N.Y. App. Div. 1992) (September 1986 to September 1988).

13.    Second, even if there were a requirement for additional writings (and there is not), it would be satisfied here. First, it would be satisfied by International's formal letter in January 2006 expressly confirming that "Nortel Networks has a license" to use the software "referenced under Nortel Schedule 1." Ex. D-78A at 3; *Weitnauer Trading Co. v. Annis*, 516 F.2d 878, 880

5

(2d Cir. 1975) (observing that "documents need not be in existence at the time the contract is made but may be supplied at a later date" and finding party's letter confirming its guaranty obligation sufficient).  Second, the invoices issued by International for the annual renewals of the SSAs, subscribed to by it and on its letterhead, confirmed Nortel's ongoing right to use the Schedule 1 software supplied by International under the SSAs.  Nortel Br. ¶¶ 43-44, 117 (citing record of SSAs).  It is well established that writings need not "be in one document" but instead "may be pieced together out of separate writings."  *Marcella v. ARP Films, Inc.*, 778 F.2d 112, 116 (2d Cir. 1985) (employer's agreement to pay sales commissions evidenced by letters, checks and commission reports).

### IV.    INTERNATIONAL'S CONSIDERATION ARGUMENT FAILS

14.    International next argues that no implied-in-fact contract could be formed because "there is no evidence of adequate and proper consideration."  Int'l Br. ¶ 180.  Again, International ignores the fact that the parties already exchanged consideration in connection with Schedule 1 and the software it covered, including a substantial payment for the right to "distribute in perpetuity an unlimited number of binary copies" of that software.  Nortel Br. ¶¶ 15-16, 18.  None of the many decisions finding an implied-in-fact agreement in the scenario here, where the parties continue to perform under an agreement after its stated termination date, have suggested any need for additional consideration.  And International cites no such authority.

15.    Even if additional consideration were needed (and it is not), it would be supplied by Nortel's payment, in the period after June 2003, of tens of thousands of dollars to International under the repeatedly-renewed SSAs for the Schedule 1 software – payments made on the premise that Nortel was entitled to use that software.  *Id.* ¶¶ 43-44, 117 (describing payments).  International claims these were like payments for the warranty on a car after its lease had expired, contending that while it was eagerly requesting and receiving tens of thousands of

6

dollars from Nortel on the premise that Nortel was entitled to use the software covered by the SSAs, what International was really doing was secretly accumulating an infringement claim against Nortel for the very same software. This self-serving argument makes no sense. International received these SSA payments on the understanding that Nortel had the right to use the software the SSAs covered – and International obviously would not have been paid if it had suggested otherwise. That International received these payments from Nortel, at its repeated request, plainly establishes sufficient consideration to support an implied-in-fact agreement that Nortel had the right to use the software.

16. In sum, International's new and meritless arguments cannot help it here.

Dated: August 10, 2017
Wilmington, Delaware

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Lisa M. Schweitzer (admitted *pro hac vice*)
David H. Herrington (admitted *pro hac vice*)
One Liberty Plaza
New York, New York  10006
Telephone: (212) 225-2000
Fax: (212) 225-3999

-and-

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

   */s/ Tamara K. Minott*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Tamara K. Minott (No. 5643)
Andrew J. Roth-Moore (No. 5988)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*