# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | |
| | ) | Chapter 11 |
| Nortel Networks Inc., *et al.,* | ) | Case No. 09-10138 (KG) |
| | ) | (Jointly Administered) |
| Debtors.[1] | ) | **Related to Docket Nos. 18020, 18086, 18118** |
| SNMP Research International, Inc. | ) | |
| and SNMP Research, Inc., | ) | |
| Plaintiffs, | ) | |
| | ) | Adv. Proc. No. 11-53454 (KG) |
| v. | ) | **Related to Adv. Docket Nos. 540, 542, 547** |
| | ) | |
| Nortel Networks Inc., *et al.*, | ) | |
| Defendants. | ) | |

## SNMP RESEARCH, INC.'S AND SNMP RESEARCH INTERNATIONAL, INC.'S RESPONSE TO DEBTORS' PROPOSED FINDINGS ON SCHEDULE 1 ISSUE

**OF COUNSEL**

Richard S. Busch, Esq.
**King & Ballow Law Offices**
315 Union Street, Suite 1100
Nashville, TN 37201
(615) 259-3456 (Phone)
(615) 726-5417 (Fax)
rbusch@kingballow.com

-and-

John L. Wood, Esq.
**Egerton, McAfee, Armistead & Davis, P.C.**
900 S. Gay Street
Knoxville, TN 37902
(865) 546-0500 (Phone)
(865) 525-5293 (Fax)
jwood@emlaw.com

Dated: August 4, 2017

**COLE SCHOTZ P.C.**

Norman L. Pernick (No. 2290)
Nicholas J. Brannick (No. 5721)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 651-2002 (Phone)
(302) 652-3117 (Fax)
npernick@coleschotz.com
nbrannick@coleschotz.com

-and-

G. David Dean, Esq.
300 E. Lombard Street, Suite 1450
Baltimore, MD 21202
(410) 230-0660 (Phone)
(410) 230-0667 (Fax)
ddean@coleschotz.com

*Counsel for SNMP Research, Inc. and
SNMP Research International, Inc.*

---

[1] In addition to Nortel Networks Inc., the debtors in these Chapter 11 cases are: Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc.; Nortel Networks (CALA) Inc.; and Nortel Networks India International Inc.

SNMP Research, Inc. and SNMP Research International, Inc. (together, "SNMP Research"), by their undersigned counsel, pursuant to the Order of the Court during the July 14, 2017 telephonic hearing, submit the following supplemental memorandum.[2]

I.      *Argument from Counsel Cannot be the Only Foundation for a Purported Finding of Fact or Sole Basis for a Proposed Conclusion of Law.*

While SNMP Research's Proposed Findings of Fact focused on testimony and other evidence introduced at the Hearing (as demonstrated by SNMP Research's citations to the record in each instance), the U.S. Debtors did not cite to the record throughout, but instead used its Proposed Findings of Fact as a vehicle to introduce argument and testimony from counsel under the guise of purported facts.  Given that the task was to provide Proposed Findings of Fact from the record, SNMP Research could not have possibly expected, much less anticipated and addressed, such unsubstantiated argument from counsel as purported "facts." SNMP Research objects to the findings of fact in the U.S. Debtors' Proposed Findings of Fact and Conclusions of Law to the extent that they include numerous purported "facts" that are unsupported by any record evidence, and their proposed conclusions of law that are premised on mischaracterizations of the factual record or unsupported by any law.

Proposed Findings of Fact are not the appropriate vehicle for argument by counsel, and they should not be adopted when argumentative in nature or contrary to the record.  *See, e.g.*, *Columbia Gas Transmission, LLC v. 520.32 Acres*, 188 F. Supp. 3d 500, 502 n.1 (W.D. Pa. 2016).  Such proffered Proposed Findings of Fact sidestep the central purpose of Proposed Findings, which is to assist the Court in organizing the

---

[2] This Response is being filed under seal pursuant to section V.F of the *Stipulation and Agreement Governing Production, Exchange and Filing of Confidential Materials* [Adv. D.I. 237-1].

information in the record.  *See, e.g.*, *Norwest Bank Minn., Nat'l Ass'n v. Blair Rd. Assocs., L.P.*, 252 F. Supp. 2d 86, 89 (D.N.J. 2003) (citing 9A Wright & Miller, FEDERAL PRACTICE AND PROCEDURE Civil 2d § 2578 (1995)).

The Proposed Findings of Fact of the U.S. Debtors are littered with numerous examples of this improper argument under the guise of facts.  For example, in Paragraphs 25 and 26, the U.S. Debtors resort to nothing more than the pronouncement of counsel with respect to Schedule 1A.  Paragraph 25 states "Thus, the provisions of Schedule 1, taken as a whole, provide that…."  Paragraph 26 follows with "As outlined above, the better and more appropriate reading of Schedule 1…."  No evidence at all is cited, however, in support of counsel's conclusions.

Other examples include:  "Case's testimony is especially disingenuous in light of…" (U.S. Debtors' Proposed Findings at ¶ 101); "[a]s with other documentary evidence that refutes its argument, International tried to offer testimony—more than 13 years after the events—to explain away the contemporaneous written record" (*Id.* at ¶ 132); "[e]vidently hoping to deflect attention from the clear and consistent record concerning Schedule 1, International offers…" (*Id.* at ¶ 136); "International's argument depends on ignoring everything the parties said and did concerning Schedule 1 and pointing instead to…" (*Id.* at ¶ 138); "International focuses on the last sentence and suggests that it somehow supports its argument" (*Id.* at ¶ 158); "these emails certainly do not support International's arguments" (*Id.* at ¶ 160); "it is ironic that International would cite this email, because International's statement concerning Schedule 1 supports Nortel's understanding of Schedule 1 and contradicts International's" (*Id.* at ¶ 169); "if International actually had held the understanding of Schedule 1 that it proposes now, it

would have said…" (*Id.* at ¶ 169); "International seeks to ignore that clear statement, and instead it points to…" (*Id.* at ¶ 170); "Tremblay, being new to the relationship and not having been involved … had no basis to respond to Southwood's statement" (*Id.* at ¶ 170); "[i]f there were any doubt about International's actual understanding of Schedule 1, it would be dispelled by the record…" (*Id.* at ¶ 171); "Tollen inappropriately attempts to tell the Court how to read Schedule 1's text" (*Id.* at ¶ 188); "Tollen was forced into implausible interpretative gymnastics" (*Id.* at ¶ 192); "[t]he argument that the first and second paragraphs are referring to different things makes no sense" (*Id.* at ¶ 193); "Tollen evidently had not been made aware of these facts…" (*Id.* at ¶ 195); "[t]hus, the linchpin of International's argument is wrong" (*Id.* at ¶ 200); "if a Temporary License Agreement had been executed, one would expect Schedule 1 to refer to it" (*Id.* at ¶ 204); "International's conduct clearly communicated to Nortel that it had an ongoing right…" (*Id.* at ¶ 210); and, finally, "International continually reaffirmed Nortel's ongoing right…" (*Id.* at ¶ 211).

The list goes on.  In addition to being simply improper, and warranting striking, the primary take-away is this: by resorting to argument by counsel as its "facts," the U.S. Debtors have demonstrated that their factual position is unsupported.

**II.    *SNMP Research was the Only Party to Introduce Testimony from Individuals with Personal Knowledge of the Facts Underlying the Dispute.***

The U.S. Debtors claim that subjective intent is immaterial in construing the terms of an agreement. (*See, e.g.*, U.S. Debtors' Proposed Findings at ¶¶ 247-248).  SNMP Research cited to numerous cases saying otherwise. (*See* SNMP Research Proposed Findings at ¶ 151).  "The better reading of New York law, and certainly the Second Circuit's interpretation of New York law on this point, is that extrinsic evidence of

subjective intent is admissible if a contract term is ambiguous." *Constellation Power Source, Inc. v. Select Energy, Inc.*, 467 F. Supp. 2d 187, 209 (D. Conn. 2006) (citing *Walk-In Medical Centers, Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir. 1987)) (internal citations omitted)); *see also SR Int'l Bus. Ins. Co. v. World Trade Ctr. Properties, LLC*, 467 F.3d 107, 126 (2d Cir. 2006); *GE Funding Capital Mkt. Servs. v. Neb. Inv. Fin. Auth.*, 2017 WL 2880555, at *4 (S.D.N.Y. Jul. 6, 2017).    As Mr. Southwood explained, the internal emails that the U.S. Debtors object to are consistent with what he and Mr. Hyslop discussed, (*See* Hrg. Tr. at 149:22-150:17; 154:15-23; 165:4-166:4), and thus bolster not only the actual communicated intent between SNMP Research and Nortel, but also the fact that Nortel fully understood that it was required, for example, to separately license every Bay Product, containing SNMP Research's Software, on a product-by-product basis.    These emails are thus, as discussed above, undoubtedly admissible, based on the previous ruling that Schedule 1A is ambiguous.

Furthermore, the U.S. Debtors' Proposed Findings of Fact and Conclusions of Law repeatedly refer to "Nortel's understanding" of Schedule 1A.    The U.S. Debtors, however, offered no witness from Nortel to testify as to "Nortel's understanding" of Schedule 1A.    The phrase "Nortel's understanding" used throughout the U.S. Debtors' Proposed Findings of Fact and Conclusions of Law thus appears to be synonymous with the "present arguments of the U.S. Debtors' counsel."    *See, e.g.*, U.S. Debtors' Proposed Findings at ¶¶ 7, 13, 25, 26, 33, 45, 51, 65, 129, 167, 169, 200, 218, 228, 258, 268.

Ultimately, the U.S. Debtors ask this Court to ignore the personal first-hand testimony of Dr. Case and Mr. Southwood, as well as the testimony of Nortel's own former employee, Mr. Tremblay, who was in charge of the SNMP Research relationship

4

after the departure of Mr. Hyslop.  It is baseless to argue Dr. Case, Mr. Southwood, and Mr. Tremblay do not accurately remember events years later, while simultaneously asking the Court to rely on counsel's and Dr. Razgaitis's speculative interpretation of the underlying events and extrinsic evidence.

Both Dr. Case and Mr. Southwood provided credible, and unimpeached, testimony that Nortel, through Mr. Hyslop, was told, and understood, that after the three-year termination of Schedule 1A Nortel would have no rights with respect to products that were not placed on schedules before the three-year termination of Schedule 1A.  Hrg. Tr. at 177:24-178:8; 240:21-242:9; 255:1-9; 256:10-259:16. Additionally, as provided in SNMP Research's Proposed Findings at ¶ 80, Mr. Tremblay testified that the purpose of Schedule 1A's termination clause was to show that "[t]his specific schedule has a lifespan of three years, after which it terminates."  Tremblay Dep. at 89:21-25.  When asked if anything was licensed under Schedule 1A after its three-year termination date, Mr. Tremblay testified, "[a]s contemplated in Schedule 1A that was executed here, this specific schedule was effectively terminated three years after its effective date and the associated license would be terminated."  Tremblay Dep. at 90:4-90:7. The U.S. Debtors fail to address this testimony head-on, or at all.  Mr. Tremblay's testimony is entirely consistent with the actual communicated intent between Dr. Case, Mr. Southwood, and Mr. Hyslop.  Hrg. Tr. at 177:24-178:8; 240:21-242:9; 255:1-9; 256:10-259:16.  It is also consistent with Mr. Southwood's August 2003 email to Mr. Tremblay.  Ex. P-58.

The U.S. Debtors go so far as to claim that "[t]estimony offered now, nearly 14 years later, about what Tremblay thinks his email meant or what lay behind it, is not relevant, competent or probative."  U.S. Debtors' Proposed Findings at Appendix A p. 3.

Implicit in this statement is that the U.S. Debtors' current counsel and/or expert witness are better suited to offer testimony than the Nortel employee who was present at the time and educated first hand on the negotiations and contract. Mr. Tremblay is the only former Nortel employee who testified about Schedule 1A, and, along with Dr. Case and Mr. Southwood, is the best source for Schedule 1A's intended meaning.  Nortel deposed Mr. Tremblay, but not one of his statements is offered in support of their position.

Finally, the irony of the position of the U.S. Debtors is not lost on SNMP Research, and should not, respectfully, be lost on the Court:  The U.S. Debtors opposed SNMP Research's contention that Schedule 1A is unambiguous, and parol evidence inadmissible, while now desperately seeking to exclude Nortel's own internal emails, and claiming that the only Nortel witness who testified in this case does not know what he is talking about.

### III.    *The U.S. Debtors' Assertion that Schedule 1A Incorporates the Royalty Provision of the Bay Networks License is Unfounded.*

Schedule 1A did not incorporate the royalty provision of the Bay Networks License for multiple reasons.  First, the U.S. Debtors mischaracterize SNMP Research's argument concerning the contract principle favoring not construing ambiguous writings to create lifelong promises.  *See* U.S. Debtors' Proposed Findings at p. 76 fn. 17 ("It makes no sense for International to claim such a royalty buy out violates some general rule.").  SNMP Research did not claim all contracts will be construed in a way that avoids lifetime obligations, only that such obligations will not be forced into an agreement, unless the obligation is clearly set forth in the agreement.  It is undisputed that the words "lifetime" or "perpetuity" are not found in Schedule 1A. (SNMP Research's Proposed Findings at ¶ 78).  As such, the Court should not infer a perpetual right in Schedule 1A.

Next, the U.S. Debtors claim that SNMP Research misapplies New York's standard for incorporation by reference, and cite to *Laureate Educ., Inc. v. Ins. Co. of Pa.*, 2014 WL 1345888, at \*7 (S.D.N.Y. Mar. 31, 2014) for support.  Applying *Laureate Educ.* does not support the U.S. Debtors' argument because it cannot be said that the parties assented to incorporate the royalty provision of the Bay Networks License into Schedule 1A.  While SNMP Research addresses this topic in more detail in its Proposed Findings of Fact and Conclusions of Law, had SNMP Research intended to grant Nortel the same license rights as those under the Bay Networks License through an "incorporation" of the Bay Networks License itself, SNMP Research would have simply signed the initial proposal sent by Nortel and there would have been no need for the three-year termination language in Schedule 1A or the months of negotiations that followed Nortel's initial proposal for SNMP Research to assign unconditionally the Bay Networks License rights to Nortel.  Dr. Case testified that the referenced language was included in Schedule 1A because annual payments were still being made on the ARL products under the Bay Networks License at the time Schedule 1A was negotiated, and this money was still owed.  Hrg. Tr. at 252:23-253:12. There is no conflicting evidence in the record.  The mere mention of such royalties in Schedule 1A is insufficient to incorporate the terms of the Bay Networks License into Schedule 1A as a matter of law.

## IV.    *Conclusion*

For the foregoing reasons, as well as the testimony and exhibits in this action, respectfully, this Court should adopt SNMP Research's Proposed Findings of Fact and Conclusions of Law.

Dated:  August 4, 2017

**OF COUNSEL**

Richard S. Busch, Esq.
**King & Ballow Law Offices**
315 Union Street, Suite 1100
Nashville, TN 37201
(615) 259-3456 (Phone)
(615) 726-5417 (Fax)
rbusch@kingballow.com

-and-

John L. Wood, Esq.
**Egerton, McAfee, Armistead & Davis, P.C.**
900 S. Gay Street
Knoxville, TN 37902
(865) 546-0500 (Phone)
(865) 525-5293 (Fax)
jwood@emlaw.com

**COLE SCHOTZ P.C.**

*/s/ Nicholas J. Brannick*
Norman L. Pernick (No. 2290)
Nicholas J. Brannick (No. 5721)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 651-2002 (Phone)
(302) 652-3117 (Fax)
npernick@coleschotz.com
nbrannick@coleschotz.com

-and-

G. David Dean, Esq.
300 E. Lombard Street, Suite 1450
Baltimore, MD 21202
(410) 230-0660 (Phone)
(410) 230-0667 (Fax)
ddean@coleschotz.com

*Counsel for SNMP Research, Inc. and SNMP Research International, Inc.*