IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
:
*In re*                                                  :     Chapter 11
                                                         :
Nortel Networks Inc., *et al.*,[1]                       :     Case No. 09-10138 (KG)
                                                         :
            Wind-Down Debtors.                           :     Jointly Administered
                                                         :
                                                         :     Hearing Date: October 25, 2017 at 10 a.m. (ET)
                                                         :     Objections due: October 6, 2017 at 4 p.m. (ET)
---------------------------------------------------------X

DEBTORS' MOTION FOR ENTRY OF AN
ORDER APPROVING THE DEBTORS' ENTRY INTO
THE EMEA DATA STORAGE TERMINATION AGREEMENT

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion") in furtherance of the *First Amended Joint Chapter 11 Plan of Nortel Networks, Inc. and Certain of Its Affiliated Debtors* (the "Plan"), as confirmed by this Court by order dated January 24, 2017 [D.I. 17795] (the "Confirmation Order") for the entry of an order substantially in the form attached hereto as Exhibit A (the "Proposed Order") authorizing the Debtors to enter into that certain Termination of Work Order ATL 324B (the "EMEA Data Storage Termination Agreement")[2] concerning the return and transfer of certain servers and related data storage equipment from the Debtors to the EMEA Debtors; and granting the Debtors such other and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567), Nortel Networks (CALA) Inc. (4226) and Nortel Networks India International Inc. (8667). Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

[2] A copy of the EMEA Data Storage Termination Agreement is attached to the Proposed Order as Exhibit 1

further relief as the Court deems just and proper.  In support of this Motion, the Debtors respectfully represent as follows:

**Jurisdiction**

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and paragraph 195 of the Confirmation Order, as well as the continuing authority to oversee the implementation of the Plan pursuant to Article XIV of the Plan.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

2.     On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc. ("NN CALA") and Nortel Networks India International Inc. ("NNIII"),[3] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Debtors' cases.

3.     The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], which dissolved pursuant to the terms of the Plan on the Effective Date (other than for certain limited purposes), and an ad hoc group of bondholders has been organized (the "Bondholder Group").

---

[3]     NN CALA filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009 and NNIII filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on July 26, 2016.  Both cases were consolidated and are being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098]; [D.I. 17090] (collectively, the "Chapter 11 Cases").

2

4. On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[4] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court. Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates, including Nortel Networks UK Limited ("NNUK") and certain of its affiliated located in Europe, the Middle East and Africa (collectively, the "EMEA Debtors")[5] into administration under the control of court-appointed administrators and foreign representatives (the "Joint Administrators").

5. On January 24, 2017, the Court entered the Confirmation Order and confirmed the Plan. The Confirmation Order became effective according to its terms on May 8, 2017. See *Notice of Entry of Confirmation Order and Occurrence of Effective Date of First Amended Joint Chapter 11 Plan of Nortel Networks Inc. and Certain of Its Affiliated Debtors* [D.I. 18176].

---

[4] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[5] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

**Facts Relevant to this Motion**

A.      **SAP Applications and the EMEA Data Storage Agreement**

6.      The Debtors and EMEA Debtors have historically hosted and stored certain data using SAP applications, including SAP Foreign Trade ("SAP FT") and SAP Business Warehouse ("SAP BW"). As part of the Nortel estates' continuing wind down and estate-management practices, on August 28, 2012 the Debtors and EMEA Debtors entered into work order ATL324B and an accompanying letter of agreement (together, the "Letter Agreement") to minimize technology costs to the estates, pursuant to which the Debtors agreed, *inter alia*, to continue storing certain applications belonging to the EMEA Debtors. Pursuant to the Letter Agreement, the Debtors hosted certain of the EMEA Debtors' data on three applications belonging to the EMEA Debtors, SAP FT, Sabrix and SAP BW (the "Hosted Servers").

B.      **The EMEA Data Storage Termination Agreement**

7.      As set forth in more detail in the EMEA Data Storage Termination Agreement, now that the Plan has been confirmed and become effective, in furtherance of the continuing wind down of the estates and implementation of the Plan, the Debtors and EMEA Debtors have agreed to take certain actions with respect to the data and applications currently hosted by the Debtors pursuant to the Letter Agreement including, *inter alia*, removing and returning (at the sole expense of the EMEA Debtors) the Hosted Servers to the EMEA Debtors, copying certain extract applications and enabling access to certain tapes.

8.      The EMEA Data Storage Termination Agreement will further the Debtors' and EMEA Debtors' wind-down the respective estates by enabling the return of the EMEA Debtors' property and allowing the Debtors to cease any future performance obligations under the Letter Agreement.

**Relief Requested**

9.  By this Motion, the Debtors seek approval of the Debtors' request to enter into the EMEA Data Storage Termination Agreement, including approval of the return and transfer of all materials set forth in the EMEA Data Storage Termination Agreement, as set forth in detail herein.

**Basis for Relief**

**A.  The Debtors' Confirmed and Effective Chapter 11 Plan Authorizes the Debtors to Enter into the EMEA Data Storage Termination Agreement in Furtherance of Winding Down the Debtors' Estates**

10.  The Plan and Confirmation Order grant the Debtors and the Plan Administrator broad authority to wind down each of the Debtors. Specifically, the Plan provides that the Plan Administrator shall have the authority to "exercise its reasonable business judgment to direct and control the wind-down, liquidation, sale and/or abandonment of the remaining assets of the Debtors under the Plan and in accordance with applicable law as reasonably necessary to maximize distributions to holders of Allowed Claims." Plan, § 6.3(b); cf. Confirmation Order § 15.25 (permitting notice of proposed . . . "disposition of property" on notice).

11.  While such authority authorizes the Debtors to enter into the EMEA Data Storage Termination Agreement without the need for further Court approval, the Debtors file this Motion in an abundance of caution to memorialize their entry into the EMEA Data Storage Termination Agreement and expressly authorize the return of the servers that the Debtors have been storing for nearly five years for the EMEA Debtors.[6] Authorizing such relief will facilitate the wind-

---

[6]  While the Debtors have chosen to file this Motion out of an abundance of caution, the Debtors do so without waiving or in any way limiting their ability to dispose of or abandon their remaining assets or to take any action necessary in furtherance of the wind down of the various Debtors' estates, as set forth in and provided by the Plan and the Confirmation Order, including without further authorization of the Court.

down and further the separation between the various worldwide Nortel estates.  Moreover, the EMEA Debtors fully support the relief requested herein.

**B.     The Requirements of Bankruptcy Rule 6007 Are Not Applicable**

12.     In furtherance of the Debtors' implementation of the confirmed Plan, the Court has authority to approve the Debtors' entry into the EMEA Data Storage Termination Agreement without requiring the Debtors to notice the Motion on all of their creditors under Bankruptcy Rule 6007. Even if the EMEA Data Storage Termination Agreement could be construed to effect an abandonment or disposition of Debtor property, the confirmed Plan states that the Debtors may simply notice such an abandonment on the docket.  See Plan, § 15.25.  In addition to noticing the Motion on the docket, the Debtors will also serve the Notice Parties, including the post-confirmation Rule 2002 service list, as set forth herein.

13.     In this instance, as the Debtors are seeking approval of entry into the EMEA Data Storage Termination Agreement, the Debtors have served the Motion on the Notice Parties (as defined herein below), which will effectuate the goal of providing adequate notice while at the same time advancing the goal of preserving the assets of the Debtors' estates for the benefit of their creditors.   By providing for service upon the Rule 2002 list,[7] the Debtors intend to provide notice to all creditors who have appeared and specifically sought such post-Effective Date notices in these cases.

---

[7]     Pursuant to § 15.24 of the confirmed Plan and ¶ 122 of the Confirmation Order, in an effort to conserve estate resources, after the Effective Date any entity that, prior to the Effective Date, had requested notice from the Debtors or the Debtors' claims agent must renew such request in writing.  Accordingly, in addition to the entities specifically listed in ¶ 141414 or that specifically requested notice concerning document retention issues, Rule 2002 service shall be limited to those entities that have requested to be included on the post-Effective Date Rule 2002 notice list.

**Notice**

14. Notice of this Motion has been given via first class mail to (i) the U.S. Trustee; (ii) counsel to the Bondholder Group; (iii) the Monitor; (iv) the EMEA Debtors; (v) the Joint Administrators; (vi) the post-Effective Date Rule 2002 list maintained in these cases (collectively, the "Notice Parties"). The Debtors submit that under the circumstances no other or further notice is necessary.

**No Prior Request**

15. No prior request for the relief sought herein has been made to this or any other court.

*(Remainder of Page Intentionally Left Blank)*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: September 22, 2017
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Lisa M. Schweitzer (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Tamara K. Minott*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Tamara K. Minott (No. 5643)
1201 North Market Street, 16th Floor
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 425-4663

*Counsel for the Debtors
and Debtors in Possession*