**Exhibit A**

Proposed Order

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------X
:
:      Chapter 11
:
*In re*                                                    :
:      Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1]                         :
:      Jointly Administered
            Wind-Down Debtors.                             :
:
:      **RE: D.I. _____**
:
-----------------------------------------------------------X

**ORDER APPROVING THE DEBTORS' ENTRY
INTO THE EMEA DATA STORAGE TERMINATION AGREEMENT**

Upon the Motion dated September 22, 2017,[2] of Nortel Networks Inc. and certain of its affiliates, as debtors and debtors in possession in the above-captioned cases (the "Debtors"), for entry of an order, as more fully described in the Motion, pursuant to the authority granted to the Debtors in the Plan and Confirmation Order, authorizing the Debtors to transfer to the EMEA Debtors pursuant to the EMEA Data Storage Termination Agreement, a copy of which is attached hereto as Exhibit 1, those servers and related equipment currently stored by the Debtors on behalf of the EMEA Debtors; and adequate notice of the Motion having been given as set forth in the Motion; and it appearing that no other or further notice is necessary; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and Article XIV of the Plan; and the Court having determined that

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567) Nortel Networks (CALA) Inc. (4226) and Nortel Networks India International Inc. (8667). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief requested in the Motion, and that such relief is in the best interests of the Debtors, their estates, their creditors, and the parties in interest; and upon the record in these proceedings; and after due deliberation;

IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED.

2. Pursuant to authority granted to the Debtors in the Plan and the Confirmation Order, the Debtors are authorized to enter into the EMEA Data Storage Termination Agreement and are hereby authorized to take all actions necessary to effectuate and implement the EMEA Data Storage Termination Agreement.

3. Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its entry; (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order; and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

4. The Plan Administrator and the Debtors and their agents, delegates and professionals shall have no liability whatsoever arising from or relating to the implementation, performance or execution of the EMEA Data Storage Termination Agreement, subject to the terms of the EMEA Data Storage Termination Agreement.

5. This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2017
       Wilmington, Delaware

                                                    _____
                                                    THE HONORABLE KEVIN GROSS
                                                    UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

September 22, 2017

The Joint Administrators of Nortel Networks UK Limited (in administration)
and other EMEA Debtors
c/o Ernst & Young LLP
One More London Place
London
SE1 2AF

<u>Re:  Termination of Work Order ATL 324B</u>

Dear Sir or Madam:

  This amendment (the "<u>Amendment</u>") makes reference to the attached work order numbered ATL324B (the "<u>Work Order</u>") and its accompanying letter of agreement dated August 28, 2012 (collectively, the Amendment and the Work Order, the "<u>Letter Agreement</u>").  Pursuant to the Letter Agreement, the U.S. Debtors (as defined therein) agreed to provide, <u>inter</u> <u>alia</u>, certain data hosting services as set forth in the Work Order to the EMEA Debtors (as defined in the Letter Agreement, and the EMEA Debtors together with the U.S. Debtors, the "<u>Parties</u>").  By this Amendment, and notwithstanding the Releases (as defined in the Settlement and Support Agreement among, inter alia, the U.S. Debtors, the Monitor, the EMEA Debtors and the Joint Administrators (as defined therein) dated October 12, 2016), the U.S. Debtors and the EMEA Debtors acknowledge and agree as follows:

I. <u>The Clone Applications</u>

  The servers identified as Zireh0x1, Zireh0x2 and Zireh0xg and the centralized data storage equipmentshare3c6.europe.nortel.com (the "<u>Host Servers</u>") host the following three applications, identified in §3 of the Work Order, on equipment owned by the EMEA Debtors and located at a premises leased by the U.S. Debtors at Data Foundry, Houston 2 Data Centre, 660 Greens Pkwy, Houston, Texas 77067, United States (the "<u>Premises</u>"):

  a. SAP FT;

  b. Sabrix; and

  c. SAP BW,

(SAP FT, Sabrix and SAP BW collectively, the "<u>Clone Applications</u>").  The Parties agree that the Host Servers will be removed by the EMEA Debtors or their nominated representatives and shipped by the EMEA Debtors or their nominated representatives to the EMEA Debtors at a location of the EMEA Debtors' choosing and at the sole cost and expense of the EMEA Debtors as further set forth below:

  1. The U.S. Debtors shall permit the EMEA Debtors (or their nominated representatives), upon the EMEA Debtors' written request (giving at least ten (10)

1

   business days' notice), to access the relevant part of the Premises for the purposes of preparing to transport the Host Servers. This may include, without limitation, inspection of cabling, review of access requirements, review of inventory and creation of back-up media; all such activities to be performed by the EMEA Debtors or their designated representatives at their sole cost and expense. The U.S. Debtors shall not be required to provide access on a date that is a weekend or federal, state or banking holiday unless they specifically consent to do so.

2. The U.S. Debtors shall permit the EMEA Debtors (or their nominated representatives), upon the EMEA Debtors' written request (giving at least ten (10) business days' notice to the U.S. Debtors), to access the relevant part of the Premises for the purposes of shipping the Host Servers to the EMEA Debtors. This may include, without limitation, powering down the Host Servers, de-installation of the Host Servers and loading of the Host Servers onto mechanized transport for the purposes of onward transportation, all such activities to be performed by the EMEA Debtors or their designated representatives at their sole cost and expense. The U.S. Debtors shall not be required to provide access on a date that is a weekend or federal, state or banking holiday unless they specifically consent to do so.

3. All risk in the Host Servers shall pass to the EMEA Debtors upon the powering down or disassembly of the Host Servers in preparation for transport to the EMEA Debtors.

II. The Extract Applications

In relation to the following four applications, identified in §3 of the Work Order:

   a. GCS Case Management Tool;

   b. ICIS2;

   c. IXOS (SAP); and

   d. SAP HRE,

(collectively, the "Extract Applications"), the Parties agree as follows:

1. The U.S. Debtors shall prepare a copy of the Extract Applications and all data thereon and dispatch such copy to the EMEA Debtors via secure courier within ninety (90) days of receipt of a written request from the EMEA Debtors. The EMEA Debtors shall, per payment instructions provided by the U.S. Debtors, pay the U.S. Debtors for all estimated, determinable costs and expenses related thereto no less than ten (10) business days before the U.S. Debtors dispatch the copy of the Extract Applications to the EMEA Debtors. No later than thirty (30) days after the EMEA Debtors' receipt of the Extract Applications, a true-up payment shall be made, either by the EMEA Debtors to the U.S. Debtors if actual costs and expenses exceed the estimated costs and expenses or by the U.S. Debtors to the

2

    EMEA Debtors if the payment received for the estimated costs and expenses exceeds the actual costs and expenses.

2. The U.S. Debtors shall retain the Extract Applications on their servers until the EMEA Debtors have confirmed in writing (which for this purpose shall include email) that they have received a copy of the Extract Applications and that such copy has been successfully loaded and tested. Upon the earlier of receipt of such confirmation or the EMEA Debtors' failure to notify the U.S. Debtors otherwise within thirty (30) days of receipt of the Extract Applications by the EMEA Debtors, the U.S. Debtors will no longer be required to store, maintain or provide access to the Extract Applications and thereafter are permitted to dispose of or otherwise retain or modify the Extract Applications in their sole discretion. Notwithstanding the foregoing, in no event shall the U.S. Debtors be required to retain the Extract Applications later than the date that is six months from the date of shipment of the Extract Applications to the EMEA Debtors and thereafter are permitted to dispose of or otherwise retain or modify the Extract Applications in their sole discretion.

III. <u>The Tapes</u>

In relation to the following two applications, identified in §3 of the Work Order:

    a. SMDB; and

    b. SOE,

(collectively the "<u>Tapes</u>"), the U.S. Debtors shall permit the EMEA Debtors (or their nominated representatives), upon the EMEA Debtors' written request (giving at least ten (10) business days' notice), to access the relevant part of the Premises for the purposes of dispatching relevant portions of the Tapes and any relevant back-ups to the EMEA Debtors. The Parties agree that the Tapes will be removed by the EMEA Debtors or their nominated representatives and shipped to the EMEA Debtors at a location of the EMEA Debtors' choosing and at the sole cost and expense of the EMEA Debtors. All risk in the Tapes shall pass to the EMEA Debtors upon removal of the Tapes by the EMEA Debtors or their nominated representatives.

IV. <u>General Provisions</u>

1. The U.S. Debtors shall provide reasonable access to the EMEA Debtors (or their nominated representatives) in connection with undertaking the activities described above. The EMEA Debtors shall be liable to the U.S. Debtors for any damage to the Premises resulting from the EMEA Debtors undertaking the activities described above. So that the EMEA Debtors (or their nominated representatives) may access the Premises, the U.S. Debtors agree to (i) direct the EMEA Debtors (or their nominated representatives) to the equipment to be removed, (ii) fully power off equipment to be removed by the EMEA Debtors prior to disconnection, and (iii) on request disconnect all physical network and power connections from equipment owned by the EMEA Debtors. For avoidance of doubt, and without limitation of any other provision herein, the U.S. Debtors shall incur no liability to

   the EMEA Debtors in connection with any actions taken related to items (i), (ii) and/or (iii) of this section.

2. Each of the parties to this Letter Agreement confirms that this Letter Agreement represents the entire understanding, and constitutes the whole agreement, in relation to its subject matter and supersedes any previous agreement between the Parties with respect thereto, and that the parties shall have no further obligations to each other with respect to the Work Order, the Host Servers, the Extract Applications, the Clone Applications or the Tapes beyond as set forth herein.

3. All notices and communications provided for in this Letter Agreement shall be in writing and shall be sent in electronic format via email, personally delivered or sent by a reputable overnight courier service (delivery charges prepaid) at the address specified below:

   | Nortel EMEA Debtors<br>c/o Ernst & Young LLP<br>One More London Place<br>London<br>SE1 2AF<br>btucker@uk.ey.com and<br>jhewitt@uk.ey.com | NNI Plan Administrator<br>Greylock Partners, LLC<br>Attn: Kathryn Schultea<br>2600 South Shore Boulevard<br>Suite 312<br>League City, TX  77573<br>kschultea@rlks.net |
   |---|---|

4. This Letter Agreement and any dispute or claim arising out of or in connection with it or its subject matter, existence, negotiation, validity, termination or enforceability (including non-contractual disputes or claims) shall be governed by Delaware law. The United States Bankruptcy Court for the District of Delaware shall have exclusive jurisdiction in relation to any dispute or claim arising out of or in connection with this Letter Agreement.

5. Following receipt, the EMEA Debtors agree to confirm in writing (which for this purpose shall include email) that they have received and successfully tested each of the Host Servers, Clone Applications, the Extract Applications and the Tapes. Upon the earlier of such notification or the EMEA Debtors' failure to notify the U.S. Debtors otherwise within thirty (30) days of receipt of each of the Host Servers, the Clone Applications, the Extract Applications and the Tapes, respectively, the Letter Agreement shall terminate without further action of the Parties and neither Party shall be bound by or required to continue performing in accordance therewith; provided, however, that each of the U.S. Debtors and the EMEA Debtors shall continue to abide by the confidentiality provisions and restrictions contained in the Letter Agreement.

6. Subject to Section II(2) above, in the event that any of the Host Servers, Clone Applications, the Extract Applications or the Tapes are damaged or destroyed in

4

7. Upon termination of the Letter Agreement or June 30, 2018, whichever is earlier, the U.S. Debtors will no longer be required to store, maintain or provide access to any other applications, hardware, clones, extracts, tapes, USB drives or similar hardware  software or data described in the Work Order, including, without limitation, the following:

| Application - ID | Format | Location |
|---|---|---|
| Sabrix | Clone | Zireh0x1 |
| SAP BW | Clone | Zireh0x2 / Zireh0xg |
| SAP FT | Clone | Zireh0x1 |
| GCS Case Mgmt Tool | Extract | Zirevuka |
| ICIS2 | Extract | Zirevuka |
| IXOS (SAP) | Extract | Zirevuka ( E ) |
| SAP HRE | Extract | Zirevuka ( D ) |
| SMDB | Tape | US |
| SOE | Tape | US |
| share3c6.europe.nortel.com | EMC VNX - UKA Owned SAN Storage | |

5

Sincerely,

_____
John J Ray III

*Plan Administrator for U.S. Debtors (except Nortel Networks India International Inc.)*

*Principal Officer of Nortel Networks India International Inc.*

**AGREED AND ACCEPTED** this _____ day of _____ 2017.

**JOINT ADMINISTRATORS for and on behalf of the EMEA Debtors (acting as agents and without personal liability)**

Per: _____
     Name:
     Title:

Sincerely,

John J. Ray III
Principal Officer for each of the U.S. Debtors

AGREED AND ACCEPTED this  22nd  day of  September  2017.

**JOINT ADMINISTRATORS for and on behalf of the EMEA Debtors (acting as agents and without personal liability)**

Per: _____
Name: ALAN ROBERT BLOOM
Title: JOINT ADMINISTRATOR