## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | |
| | ) | Chapter 11 |
| Nortel Networks Inc., *et al.,* | ) | Case No. 09-10138 (KG) |
| | ) | (Jointly Administered) |
| Debtors.[1] | ) | **Related to Docket Nos. 18446, 18455, 18462, 18477** |
| | ) | |
| SNMP Research International, Inc. | ) | |
| and SNMP Research, Inc., | ) | |
| Plaintiffs, | ) | **Hearing Date:  November 15, 2017 at 9:30 a.m.** |
| | ) | |
| v. | ) | Adv. Proc. No. 11-53454 (KG) |
| | ) | **Related to Adv. Docket Nos. 622, 624, 625, 627** |
| Nortel Networks Inc., *et al.,* | ) | |
| Defendants. | ) | |

## REPLY IN FURTHER SUPPORT OF SNMP RESEARCH'S
## MOTION TO RECONSIDER ORDER AND ACCOMPANYING OPINION
## WITH RESPECT TO THE SCHEDULE 1 ISSUE

SNMP Research, Inc. and SNMP Research International, Inc. (together, "SNMP
Research"), by their undersigned counsel, submit this Reply in further support of SNMP
Research's Motion to Reconsider Order and Accompanying Opinion With Respect to the
Schedule 1 Issue [D.I. 18462; Adv. D.I. 625] (the "Motion"),[2] and in response to U.S. Debtors'
Memorandum of Law in Opposition to the Motion to Reconsider [D.I. 18477; Adv. D.I. 627]
(the "Opposition").  In further support of the Motion, SNMP Research respectfully states as
follows:

---

[1] In addition to Nortel Networks Inc., the debtors in these Chapter 11 cases are:  Nortel Networks Capital
Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera
Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical
Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks
International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc.; Nortel Networks
(CALA) Inc.; and Nortel Networks India International Inc.

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

53651/0001-15087048v4

## PRELIMINARY STATEMENT

1.      SNMP Research filed the Motion to obtain guidance from the Court as to the impact of the Opinion on SNMP Research's ability to present evidence of infringing products that were in development or distributed by Nortel after Schedule 1 was signed.  When SNMP Research moved to amend the proofs of claim, the U.S. Debtors were insistent that the hearing on the motion to amend not move forward as a stand-alone hearing.  The U.S. Debtors instead wanted to have a bifurcated trial on all liability issues regarding Schedule 1 and the ES and ERS products, which formed the basis for the vast majority of SNMP Research's pre-petition damages.  In considering the U.S. Debtors' proposal, SNMP Research was willing to agree to have a more limited hearing on Schedule 1 to determine whether any products at all could possibly be covered by Schedule 1 after its termination date.

2.      This is the deal the parties ultimately struck and what the Court approved in the Scheduling Order concerning the May hearing.  The effect of that agreement is that, if the Court ruled in favor of SNMP Research on Schedule 1 in May, then presenting evidence of what specific products were covered by Schedule 1 would have been unnecessary at trial, because none of them would have been covered.  And conversely, if the U.S. Debtors succeeded, and the Court determined that some products were covered, but without deciding which products were in fact covered, then at trial the Court would determine which ES and ERS products were covered under Schedule 1.

3.      When SNMP Research reviewed the extensive findings and conclusions of the Court on the Schedule 1 decision, it became clear that certain findings and conclusions could be read to exclude products from consideration based on the fact that they were in development or distributed by Nortel prior to the June 2003 termination date of Schedule 1.  Had SNMP Research known that the Court's ruling could have had the potential effect of precluding SNMP

2

Research from presenting evidence of any particular ES or ERS products at trial, SNMP Research would not have agreed to combine the motion to amend hearing with a hearing of any kind on Schedule 1, and would have instead insisted that all issues relating to Schedule 1 be presented at the full trial when all of the experts and witnesses would be available and present. It was, and is, unclear to SNMP Research whether the Opinion was intended to have the effect of excluding the presentation of evidence of particular ES or ERS products at trial based on the date they were in development or distributed at Nortel.

4.      If that was not the intention, and SNMP Research will be permitted to present evidence of all ES and ERS products at trial, with the Court ruling on whether the specific products are covered by Schedule 1 or not, then the Motion can be resolved by a simple order clarifying the impact of the Opinion on SNMP Research's ability to present evidence of products at trial.  Indeed, after the Motion was filed and long before the U.S. Debtors' opposition papers were due, SNMP Research offered to discuss a resolution along these lines, but the U.S. Debtors declined, indicating that they did not believe a resolution was possible.

5.      Having declined to even discuss what could have been a simple resolution of the Motion without the U.S. Debtors having to brief or argue opposition to the Motion, the U.S. Debtors now strikingly claim that they will be seeking fees and expenses at the end of the case for having to respond to SNMP Research's request for clarification – a request the U.S. Debtors have made multiple times in the Nortel cases when faced with a ruling they did not like (i.e., the allocation decision and the ruling in this case on partial summary judgment).  Despite their obvious desire to litigate the Motion rather than resolve it through a consensual stipulation, the U.S. Debtors seem to suggest that they are not attempting to prevent SNMP Research from presenting evidence on ES and ERS products as a result of the Schedule 1 Opinion.

6.      While SNMP Research respectfully disagrees with the prior ruling, SNMP Research is not asking this Court to reverse its prior decision on Schedule 1.  SNMP Research is instead simply asking the Court to confirm that the ruling does not preclude the presentation of evidence of products that may have been in development prior to Schedule 1's termination, so that, if the decision on Schedule 1 is reversed, the parties do not have to bring back their fact and expert witnesses on remand for another trial on Schedule 1 products.  Such an outcome would be an enormous waste of time and judicial resources.  The Motion was an attempt to ensure a complete trial record to minimize the possibility of another evidentiary hearing or trial if the Schedule 1 decision is ultimately reversed.  For these reasons, and those set forth in the Motion, the Motion should be granted.

## REPLY

7.      The Court and the parties have long understood that Schedule 1 presented two critical questions of interpretation in these proceedings.  The first issue—the meaning and effect of "terminate" in Schedule 1—would determine whether **any** products were licensed under Schedule 1 after its termination on June 20, 2003.  This was the sole interpretative issue presented at the May 11-12 hearing and the language of the Scheduling Order, among other things, makes this clear.[3]  The second critical interpretative issue—which was not presented at the May 11-12 hearing—is the meaning of the phrase "[a]ll products of units and projects originating from what was Bay Networks," which defines what products and projects were licensed under Schedule 1.

8.      Despite the U.S. Debtors' attempt to interpret the Opinion to decide issues broader than those intended to be decided at the May hearing, the U.S. Debtors were fully aware

---

[3] *See Scheduling Order* [D.I. 540] (Defining the "Schedule 1 Issue" as "whether the SNMP Research Software was licensed for use or distribution under Schedule 1A of the Nortel License **with respect to any products** after June 20, 2003) (emphasis added).

that the Schedule 1 issue was going to have two stages if the Court ruled in their favor at the May hearing.  This issue was discussed at length between the parties in attempting to come up with an agreed way of proceeding in May.  The U.S. Debtors wanted to have a full hearing on all issues relating to Schedule 1, but SNMP Research was hesitant to do that, because such a hearing would have required multiple other experts to appear and testify, and those same experts would likely have had to come back for trial.  In other words, the U.S. Debtors' original approach would have required a much lengthier hearing in May, with no assurances that such a lengthy hearing would have materially reduced the length or number or witnesses needed for trial.

9.      SNMP Research only brought the Motion because the language in the Opinion arguably went beyond interpreting "terminate" and into interpreting the phrase "[a]ll products of units and projects originating from what was Bay Networks."  SNMP Research is specifically concerned with the statement that "Schedule 1's three year term means that any existing product and any development projects originating from Bay Networks that emerged during those three years would have the lifetime royalty buyout until the products aged out of the marketplace." *Opinion* at p. 11.[4]  This language appears to go beyond the issue of whether any product could be possibly covered by Schedule 1 after June 2003 (because it terminated then), and tends to answer the question of what "[a]ll products of units and projects originating from what was Bay Networks" means, which was expressly reserved for trial.

10.      Assuming, arguendo, that the Court did intend to delve into the issue of what specific products were covered by Schedule 1, the Court should still permit SNMP Research to permit evidence of all ES and ERS products (regardless of whether they were in development at Nortel prior to Schedule 1's terminate date).  This will ensure that the Court has a complete

---

[4] *See also id.* at p. 63-64 (Stating that "[a]ny existing products and any development projects originating from Bay Networks that emerged during the three- year term of Schedule 1 would take advantage of the lifetime royalty buy out until the products aged out of the marketplace.").

record for appeal and, as stated in the Motion and above, will lessen the likelihood that a further new trial is needed if the Court's decision on Schedule 1 is reversed on appeal.  Such a ruling would benefit the parties and the Court by potentially brining this matter to an end in the most cost effective and timely manner possible under the circumstances.

11.    In their Opposition, the U.S. Debtors make several incorrect statements regarding the intentions of SNMP Research, which are belied by the record and facts.

12.    First, the U.S. Debtors assert that "International is coy in its motion papers as to precisely how it wishes the Court to change its construction of Schedule 1." *Opposition* at ¶ 21. SNMP Research disagrees; the Motion squarely raised SNMP Research's concerns with the scope of the Opinion in light of the narrow issue agreed to be presented in the Scheduling Order. To be clear, SNMP Research is not asking the Court to reverse its ruling on the issue presented to the Court on Schedule 1; instead, SNMP Research only asks the Court to clarify that its prior decision does not preclude the presentation of evidence of ES and ERS products at trial that may have come into development at Nortel after the June 2003 termination date of Schedule 1. SNMP Research, of course, respectfully disagrees with the decision on Schedule 1 (both on the motion in limine and trial itself), and SNMP Research intends to pursue those issues on appeal after the parties have a complete record following trial.  The point is that the decision should not be used as a sword to preclude a complete record from being developed prior to an appeal of all Schedule 1 issues being taken.  It is as simple as that, and if the U.S. Debtors would have taken SNMP Research up on its offer to discuss a resolution in advance, as opposed to wanting to brief and litigate the matter when SNMP Research offered, the U.S. Debtors would have fully understood SNMP Research's position.

13.    Second, the U.S. Debtors assert that SNMP Research failed to raise this issue "in its pre-trial brief, at the trial itself, in its Proposed Findings of Fact and Conclusions of Law or in

6

its response to Nortel's Proposed Finding of Fact and Conclusions of Law." *Debtors'*
*Memorandum* at ¶ 14, n. 7. That assertion is incorrect. SNMP Research noted the narrowness of
the issue presented to the Court in its pre-trial brief.[5] SNMP Research again noted the
narrowness of the issue presented in its proposed findings of fact and conclusions of law.[6] And
SNMP Research's counsel specifically objected to a question directed at Dr. Case at the May 11-
12 hearing on this basis.[7]

14.    Third, SNMP Research notes that the U.S. Debtors simultaneously claim that the
Order and Opinion are not a final judgment, and therefore should not be certified under Rule
54(b), while also claiming that SNMP Research's motion for reconsideration "cannot justify the
extraordinary remedy of reconsideration." *Opposition* at ¶ 10. But it is well established that the
Court "retains broad power over its interlocutory orders before a final judgment is entered. It
may modify, vacate, or set them aside at any time before the final decree." *Braden v. Univ. of
Pittsburgh*, 552 F.2d 948, 954 (3d Cir. 1977). If the Order was final, then reconsideration is an
extraordinary remedy; but if the Order was interlocutory, then the Court may freely, even *sua
sponte*, reconsider it. Accordingly, the U.S. Debtors' suggestion that the Court should not
entertain reconsideration of the Order because it is interlocutory is wrong.

15.    Finally, the U.S. Debtors assert that SNMP Research plans to argue that variations
on an existing product will not be covered under Schedule 1. *U.S. Debtors Memorandum* at ¶ 6

---

[5] *See SNMP Research's Pre-trial Schedule 1 Brief*, D.I. 18243, Adv. D.I. 566 at ¶ 1 ("The narrow and agreed issue before the Court is whether the SNMP Research Software was licensed for use or distribution under Schedule 1A of the Nortel License (the 'Schedule 1 Issue') with respect to any products after June 20, 2003."); *see also id.* at n. 2 (In confirming the narrow issue before the Court, the Scheduling Order provides that, "the Hearing shall not include consideration of what products might be covered by Schedule 1[A] if the Court were to determine that any license rights under Schedule 1[A] did not terminate on June 20, 2003.").

[6] *See SNMP Research's Amended Proposed Findings of Fact and Conclusions of Law Regarding Schedule 1 Issue*, D.I 18367, Adv. D.I. 610 at ¶ 2 and n. 3 (using language identical to the Pre-Trial Brief to highlight the narrow issue presented).

[7] *See May 12, 2017 Transcript*, D.I. 18220, Adv. D.I. 587 at p. 361, ln. 19-23 ("We specifically said we were not going to discuss what products were and what products were not covered, and that was specifically something that we agreed to before this hearing.").

53651/0001-15087048v4

(Stating that "if an 'ERS 4500' was launched or in development before June 2003 and a new variation, the 'ERS 4510,' was first sold after June 2003, International would argue that the ERS 4510 is a different product and not covered by Schedule 1."). Now is not the time to argue the merits of the arguments to be presented at the upcoming trial, but for now, SNMP Research notes that the U.S. Debtors are mispresenting arguments that SNMP Research has not yet even made.

## <u>CONCLUSION</u>

16.     For the reasons set forth in the Motion and this Reply, SNMP Research respectfully requests that the Court grant the Motion and confirm that the Court has not yet decided the issue of what is meant in Schedule 1 by "[a]ll products of units and projects originating from what was Bay Networks," reserving decision on the meaning of that phrase for trial and permitting SNMP Research to present evidence of all ES and ERS products at trial, or alternatively, (i) certifying the Order (and the underlying order on the motion in limine) for immediate appeal and (ii) continuing the trial pending appeal.

53651/0001-15087048v4

October 30, 2017

**OF COUNSEL**

Richard S. Busch, Esq.
**King & Ballow Law Offices**
315 Union Street, Suite 1100
Nashville, TN 37201
(615) 259-3456 (Phone)
(615) 726-5417 (Fax)
rbusch@kingballow.com

-and-

John L. Wood, Esq.
**Egerton, McAfee, Armistead &
Davis, P.C.**
900 S. Gay Street
Knoxville, TN 37902
(865) 546-0500 (Phone)
(865) 525-5293 (Fax)
jwood@emlaw.com

**COLE SCHOTZ P.C.**

*/s/ Nicholas J. Brannick*
Norman L. Pernick (No. 2290)
Nicholas J. Brannick (No. 5721)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 651-2002 (Phone)
(302) 652-3117 (Fax)
npernick@coleschotz.com
nbrannick@coleschotz.com

-and-

G. David Dean, Esq.
300 E. Lombard Street, Suite 1450
Baltimore, MD 21202
(410) 230-0660 (Phone)
(410) 230-0667 (Fax)
ddean@coleschotz.com

*Counsel for SNMP Research, Inc. and SNMP
Research International, Inc.*

53651/0001-15087048v4