## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------- X
                               :

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| | : | |
| Nortel Networks Inc., *et al.*,[1] | : | Case No. 09-10138(KG) |
| | : | |
| Wind-Down Debtors. | : | Jointly Administered |
| | : | |
| | : | |
| | : | **Hearing date: January 16, 2018 at 10:00 a.m. (ET)** |
| | : | **Responses due: December 1, 2017 at 4:00 p.m. (ET)** |

---------------------------------------------------- X

## WIND DOWN DEBTORS' AND PLAN ADMINISTRATOR'S FIRST POST-EFFECTIVE DATE OMNIBUS OBJECTION (SUBSTANTIVE) TO CERTAIN CLAIMS PURSUANT TO 11 U.S.C. § 502, FED. R. BANKR. P. 3007 AND DEL. L.R. 3007-1 (SATISFIED CLAIMS, NO-BASIS 401(K) CLAIMS, NO-BASIS PENSION CLAIMS, NO-BASIS DEFERRED COMPENSATION CLAIMS, REDUNDANT CLAIMS, WRONG OR NO DEBTOR CLAIMS, MODIFY AND ALLOW CLAIMS, RECLASSIFY AND ALLOW CLAIMS AND NO AMOUNT DUE CLAIMS)

**TO THE CLAIMANTS LISTED IN <u>EXHIBIT A</u> ATTACHED TO THIS OBJECTION:**

- **CLAIMANTS' RIGHTS MAY BE AFFECTED BY THIS OBJECTION AND BY ANY FUTURE OBJECTION(S) THAT MAY BE FILED BY THE PLAN ADMINISTRATOR AND WIND-DOWN DEBTORS.**

- **THE RELIEF SOUGHT HEREIN IS WITHOUT PREJUDICE TO THE PLAN ADMINISTRATOR'S AND WIND-DOWN DEBTORS' RIGHTS TO PURSUE FURTHER SUBSTANTIVE OR NON-SUBSTANTIVE OBJECTIONS AGAINST THE CLAIMS LISTED IN <u>EXHIBIT A</u>.**

- **CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES AND CLAIMS IN <u>EXHIBIT A</u>.**

---

[1] The Wind-Down Debtors in these chapter 11 cases, along with the last four digits of each Wind-Down Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Nortel Networks India International Inc. (8667) remains a debtor-in-possession and does not join in seeking relief from the Court through this Objection. Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

- **BY THIS OBJECTION, THE PLAN ADMINISTRATOR AND THE WIND-DOWN DEBTORS ARE NOT SEEKING TO AFFECT ANY RIGHTS THAT CLAIMANTS HOLDING CLAIMS LISTED IN <u>EXHIBIT A</u> MAY HAVE TO PARTICIPATE IN DISTRIBUTIONS FROM THE PENSION BENEFIT GUARANTY CORPORATION WITH REGARDS TO THE NORTEL NETWORKS RETIREMENT INCOME PLAN.**

- **BY THIS OBJECTION, THE PLAN ADMINISTRATOR AND THE WIND-DOWN DEBTORS ARE NOT SEEKING TO AFFECT ANY RIGHTS THAT CLAIMANTS HOLDING CLAIMS LISTED IN <u>EXHIBIT A</u> MAY HAVE TO DISTRIBUTIONS UNDER THE DEFERRED COMPENSATION SETTLEMENT AGREEMENT OR THE RETIREE WELFARE SETTLEMENT AGREEMENT (AS DEFINED BELOW).**

Nortel Networks Inc. ("<u>NNI</u>") and certain of its affiliates, as debtors and wind-down debtors (collectively, the "<u>Debtors</u>" or "<u>Wind-Down Debtors</u>") and Greylock Partners, LLC as Plan Administrator (the "<u>Plan Administrator</u>"), hereby object (the "<u>Objection</u>"), pursuant to section 502 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>") and the powers granted to the Plan Administrator in Article 11 of the confirmed Plan,[2] to those certain claims listed in **Exhibit A** attached hereto and incorporated by reference.  In support of this Objection, the Plan Administrator and Wind-Down Debtors submit the *Declaration of John J. Ray, III in Support of the Wind-Down Debtors' and Plan Administrator's First Post-Effective Date Omnibus Objection (Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502, Fed. R. Bankr. P. 3007 and Del.  L.R. 3007-1  (Satisfied Claims, No-Basis 401(K) Claims, No-Basis Pension Claims, No-Basis Deferred Compensation Claims, Redundant Claims, Wrong or No Debtor Claims, Modify and Allow Claims, Reclassify*

---

[2]    On January 24, 2017, the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") entered its *Findings of Fact, Conclusions of Law and Order Confirming First Amended Join Chapter 11 Plan of Nortel Networks Inc. and Certain of Its Affiliated Debtors* [D.I. 17795] (the "<u>Confirmation Order</u>"), confirming the First Amended Joint Chapter 11 Plan of Nortel Networks Inc. and Certain of Its Affiliated Debtors [D.I. 17795-1] (the "<u>Plan</u>").  Capitalized terms used, but not otherwise defined, herein shall have the meanings set forth in the Plan.

*and Allow Claims and No Amount Due Claims)* (the "Ray Declaration"), attached hereto as

**Exhibit B** and incorporated by reference, and respectfully state as follows:

### Jurisdiction

9.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10.     The statutory bases for the relief requested herein are sections 502 and 503 of the

Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007-1.

### Background

**A.     Procedural History**

11.     On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel

Networks (CALA) Inc. ("NN CALA") and Nortel Networks India International Inc. ("NNIII"),[3]

filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are

consolidated for procedural purposes only [D.I. 36].

12.     On December 1, 2016, the Debtors filed their amended First Amended Joint

Chapter 11 Plan of Nortel Networks Inc. and Certain of its Affiliated Debtors [D.I. 17501] (the

"Plan") on behalf of all Debtors (other than NNIII), along with an amended Proposed Disclosure

Statement for the First Amended Joint Chapter 11 Plan of Nortel Networks Inc. and Certain of its

Affiliated Debtors [D.I. 17502] (the "Disclosure Statement").  The Court held a hearing to

consider the adequacy of the Disclosure Statement, and on December 1, 2016 entered an order

approving the adequacy of the Disclosure Statement for the solicitation of votes on the Plan.

---

[3]     Nortel Networks (CALA) Inc. and Nortel Networks India International Inc. filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on July 14, 2009 and July 26, 2016, respectively, which were consolidated and are being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098]; [D.I. 17090].

[D.I. 17516].[4] On January 24, 2017, the Bankruptcy Court confirmed the Plan for all Debtors except Nortel Networks India International Inc. [D.I. 17795] and on May 8, 2017 (the "Effective Date"), the Plan became effective according to its terms. See *Notice of Entry of Confirmation Order and Occurrence of Effective Date of First Amended Joint Chapter 11 Plan of Nortel Networks Inc. and Certain of Its Affiliated Debtors* [D.I. 18176].

13.    The confirmed Plan provides that the Plan Administrator shall have the sole power to prosecute objections to any Claims filed against the Debtors and Wind-Down Debtors. See Plan, §11.1.

6.    On November 3, 2017, the Wind-Down Debtors filed a notice extending the claims objection deadline for non-administrative claims to February 5, 2018.

7.    For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and to http://dm.epiq11.com/nortel.

**B.    Bar Date and Schedules**

8.    On April 20, 2009 and May 29, 2009, the Debtors (other than NN CALA and NNIII) filed their Schedules of Assets and Liabilities and Statements of Financial Affairs (the "Original Schedules") [D.I.s 616-627, 801-810].  On September 11, 2009, the Debtors filed Schedules of Assets and Liabilities and Statements of Financial Affairs for NN CALA (the "NN CALA Schedules") [D.I. 1477, 1478] and on July 26, 2016, the Debtors filed Schedules of Assets and Liabilities and Statements of Financial Affairs for NNIII (the "NNIII Schedules) [No. 16-11714-KG, D.I. 9-10].  On November 4, 2009, the Debtors (other than NN CALA and NNIII) filed their Amended Schedules of Assets and Liabilities and Amended Statements of Financial

---

[4]    As set forth in the Plan and Disclosure Statement, the Plan does not include a Plan for Nortel Networks India International Inc., which intends to file its own Chapter 11 plan in its Chapter 11 case.

Affairs (together with the NN CALA Schedules and NNIII Schedules, referred to as the "Amended Schedules") [D.I.s 1811-1825].

9.      On August 4, 2009, the Court entered an order (the "Bar Date Order") establishing September 30, 2009 at 4:00 p.m. (Eastern Time) (the "General Bar Date") as the last date for all creditors holding a "claim" against the Debtors (other than NN CALA and NNIII) to file and serve a written proof of claim, subject to certain enumerated exceptions set forth in the Bar Date Order [D.I. 1280].  On December 3, 2009, the Court entered an order establishing January 25, 2010 at 4:00 p.m. (Eastern Time) (the "CALA Bar Date") as the general claims bar date for all creditors holding a claim against NN CALA to file and serve written proofs of claim [D.I. 2059]. On August 16, 2016, the Court entered an order establishing September 19, 2016 at 4:00 p.m. (Eastern Time) (the "NNIII Bar Date") as the general claims bar date for all non-governmental creditors holding a claim against NNIII to file and serve written proofs of claim [No. 16-11714-KG, D.I. 16]. The Court also entered an order fixing November 15, 2011 at 4:00 p.m. (Eastern Time) as the bar date for filing proofs of claim in respect of certain Non-Canadian intercompany and director and officer claims [D.I. 6464].

10.     On each of October 31, 2011, November 7, 2011, November 15, 2011 and November 21, 2011, the Debtors filed amended versions of Schedules E and F of the Original Schedules and Amended Schedules of NNI, Nortel Altsystems Inc. ("Nortel Altsystems") and NN CALA [D.I. 6702, 6719, 6780, 6827] (collectively, the "Second Amended Schedules through the Fifth Amended Schedules").[5]  The Second Amended Schedules through the Fifth Amended Schedules amend previously filed Schedules E and F to modify the priority and

---

[5]      Additionally, on February 21, 2012, the Debtors filed an amended version of NNI's Schedule F (the "Sixth Amended Schedules") [D.I. 7240].  The Sixth Amended Schedules amend NNI's previously filed Schedule F to modify the amount of certain scheduled trade payable claims.

amount of the scheduled severance claims for certain individuals terminated prior to the applicable Petition Date.

11.     On December 10, 2014, NNI and Nortel Networks Capital Corporation ("NNCC") filed amended versions of Schedules F of their Original Schedules, Amended Schedules, Second Amended Schedules through Fifth Amended Schedules and Sixth Amended Schedules (collectively, the "Seventh Amended Schedules" and together with the Original Schedules, the Amended Schedules, the Second Amended Schedules through the Fifth Amended Schedules and the Sixth Amended Schedules, the "Schedules").  The Seventh Amended Schedules amend previously filed Schedules F to modify the amount and  characterization of certain scheduled intercompany payable claims.

**C.     The Employee Claims Resolution Process**

12.     In the ordinary course of business, the Debtors maintain books and records (the "Books and Records") that reflect, among other things, the Debtors' liabilities and the amounts owed to their creditors.

13.     The Debtors' and Wind-Down Debtors' claims, notice and balloting agent, Epiq Bankruptcy Solutions, LLC, has prepared and maintains a register (the "Claims Register") of all proofs of claim filed against the Debtors and Wind-Down Debtors in these chapter 11 cases.  The Debtors, the Wind-Down Debtors and the Plan Administrator and their advisors are comprehensively reviewing and reconciling all claims, including both the claims listed on the Schedules and the claims asserted in the proofs of claim (including any supporting documentation).  The Debtors, Wind-Down Debtors and Plan Administrator are also comparing the claims asserted in the proofs of claim with the Books and Records to determine the validity of the asserted claims.

14.     This reconciliation process includes identifying particular categories of claims that may be targeted for disallowance, reduction and allowance or reclassification and allowance. To reduce the number of claims, and to avoid possible double recovery or otherwise improper recovery by claimants, the Debtors have filed omnibus objections to such categories of claims if and where warranted and after the Effective Date the Plan Administrator and Wind-Down Debtors are now authorized to file such omnibus objections to claims.

15.     On December 14, 2009, the Court entered an order granting the Debtors relief from the requirements of Bankruptcy Rule 3007(e)(6) and Local Rule 3007-1(f) (the "Original Rule 3007 Order") [D.I. 2125].

16.     On September 16, 2010, the Court entered an order authorizing and approving omnibus settlement procedures to settle certain prepetition claims (the "Settlement Procedures") [D.I. 3953].

17.     Also on September 16, 2010, the Court entered an order approving a cross-border claims protocol (the "Claims Protocol") establishing procedures to promote coordination and cooperation between the Debtors and the Canadian Debtors in the resolution of certain claims filed in these chapter 11 cases and the Canadian Proceedings that raise cross-border issues [D.I. 3956].

18.     On February 7, 2012, the Court entered an order modifying the application of Local Rule 3007-1 and the Original Rule 3007 Order [D.I. 7178].

19.     On February 19, 2016, the Court entered an order authorizing and approving procedures to resolve or otherwise settle all disputed proofs of claims or interest (the "Omnibus Settlement Procedures"). [D.I. 16551]. The Omnibus Settlement Procedures superseded the Original Settlement Procedures.

**D.    Nortel Networks U.S. Deferred Compensation Plan**

20.    Prior to the Petition Date, on or about January 1, 2000, NNI established the Nortel

Networks U.S. Deferred Compensation Plan (as amended, supplemented or modified, the

"Deferred Compensation Plan").[6]  In connection with the establishment of the Deferred

Compensation Plan, NNI as guarantor and U.S. Bank, National Association as trustee established

an irrevocable trust (the "Plan Trust") pursuant to the Nortel Networks U.S. Deferred

Compensation Plan Trust Agreement dated January 1, 2000 (as amended, the "Trust

Agreement").

21.    From late 2010 through late 2012, the Debtors and various participants and

beneficiaries of the Deferred Compensation Plan (all of the participants in or beneficiaries of

such Plan, collectively, the "Participants") litigated the disposition of the assets held by the Plan

Trust pursuant to the Trust Agreement (the "Trust Assets").  Such litigation resulted in a

negotiated settlement (the "Deferred Compensation Settlement Agreement")[7] of all Participants'

claims against the Debtors under the Deferred Compensation Plan.  Among other things,

pursuant to the Deferred Compensation Settlement Agreement, an aggregate of $31,166,369.13

was paid to Participants or their transferees in satisfaction of their claims against the Debtors and

other third parties with respect to the Deferred Compensation Plan (the "Deferred Compensation

Claims") and such Participants released all of their Deferred Compensation Claims.

22.    The Deferred Compensation Settlement Agreement was proposed to the

Bankruptcy Court pursuant to the Joint Motion For Order:  (I) Approving Compromise Among

The Debtors, The Official Committee Of Unsecured Creditors, And The Ad Hoc Group Of

---

[6]    The description of the Deferred Compensation Plan is for background purposes only and is subject in all respects to the terms of the Deferred Compensation Plan.

[7]    The description of the Deferred Compensation Settlement Agreement is for background purposes only and is subject in all respects to the terms of the Deferred Compensation Settlement Agreement.

Beneficiaries Of The Nortel Networks U.S. Deferred Compensation Plan (For Themselves And All Similarly Situated Participants In And Beneficiaries Of The Nortel Networks U.S. Deferred Compensation Plan) Pursuant To Rule 9019 Of The Federal Rules Of Bankruptcy Procedure; (II) Directing Payments Pursuant To 11 U.S.C. § 503(B)(1)(A) And Rule 9019; (III) Directing U.S. Bank National Association To Turn Over Assets To The Debtors; And (IV) Releasing And Settling Claims Of The Deferred Compensation Plan Participants [D.I. 9127] (the "Deferred Compensation Settlement Motion"), and was approved by the Bankruptcy Court pursuant to the Order (I) Approving Compromise Among The Debtors, The Official Committee Of Unsecured Creditors, And The Ad Hoc Group Of Beneficiaries Of The Nortel Networks U.S. Deferred Compensation Plan (For Themselves And All Similarly Situated Participants In And Beneficiaries Of The Nortel Networks U.S. Deferred Compensation Plan) Pursuant To Rule 9019 Of The Federal Rules Of Bankruptcy Procedure; (II) Directing Payments Pursuant To 11 U.S.C. § 503(B)(1)(A) And Rule 9019; (III) Directing U.S. Bank National Association To Turn Over Assets To The Debtors; And (IV) Releasing And Settling Claims Of The Deferred Compensation Plan Participants [D.I. 9323].  More information about the Deferred Compensation Plan and the Deferred Compensation Settlement Agreement is available in the Deferred Compensation Settlement Motion [D.I. 9127].

23.     Because claims under the Deferred Compensation Plan have been released pursuant to the Deferred Compensation Settlement Agreement, the Wind-Down Debtors now seek the disallowance of such claims.

**E.     Nortel Networks 401(k) Plan**

24.     NNI sponsored the Nortel Networks Long-Term Investment Plan (the "401(k) Plan"), a 401(k) savings plan pursuant to the Internal Revenue Code.  Participating employees elected to contribute up to the annual IRS limits on contributions and eligible compensation, and

prior to the Petition Date, NNI made matching employer contributions.   The 401(k) Plan was

terminated by NNI effective as of June 30, 2012.  All employee and employer contributions

pursuant to the 401(k) Plan, and earnings related thereto, were held in separate trust and were not

property of the Debtors' estates.

## Relief Requested

25.     For the reasons set forth below, the Wind-Down Debtors and Plan Administrator

object to each of the claims identified in **Exhibit A**.  By this Objection, the Wind-Down Debtors

and Plan Administrator respectfully request that the Court enter an order pursuant to section

502(b) of the Bankruptcy Code, Bankruptcy Rule 3007 and Local Rule 3007-1 reducing,

modifying, reclassifying or disallowing in full, as applicable, the claims identified in **Exhibit A**:

a.      Certain of the claims identified in **Exhibit A** should be disallowed in full as claims for which the Wind-Down Debtors are not liable because the claims have already been satisfied by the Debtors or Wind-Down Debtors (the "Satisfied Claims").

b.      Certain of the claims identified in **Exhibit A** should be disallowed in full as claims for which the Wind-Down Debtors are not liable because the claim asserts liability related to the Debtors' 401(k) Plan which is not part of the Wind-Down Debtors' estates (the "No-Basis 401(k) Claims").

c.      Certain of the claims identified in **Exhibit A** should be disallowed in full as a claim for which the Wind-Down Debtors are not liable because (i) each such claim is a claim for benefits under the Defined Benefit Pension Plan, (ii) following the termination of such plan the PBGC is the sole source of such benefits for such claimants and (iii) only the PBGC may recover unfunded pension benefits directly from a plan sponsor or a member of a plan sponsor's controlled group in the event of a pension plan termination (the "No-Basis Pension Claims").  The particular grounds for objection applicable to a claim are listed next to such claim in **Exhibit A**.

d.      Certain of the claims identified in **Exhibit A** should be disallowed in full as claims for which the Wind-Down Debtors are not liable because the claim asserts liability under the Deferred Compensation Plan and was released pursuant to the Deferred Compensation Settlement Agreement (the "No-Basis Deferred Compensation Claims").

e.      Certain of the claims identified in **Exhibit A** should be disallowed in full as claims for which the Wind-Down Debtors are not liable because the claims are redundant of other claims filed asserting the same purported liability (the "<u>Redundant Claims</u>").

f.      Certain of the claims identified in **Exhibit A** failed to identify or incorrectly identified the Debtor that is liable for such claim (the "<u>Wrong Debtor Claims</u>") and should be modified and allowed to clarify that the claim is asserted against the correct Debtor identified on **Exhibit A**.

g.      Certain of the claims identified in **Exhibit A** should be reduced and allowed, adjusted and allowed, and/or reclassified and allowed in the amount identified under the column labeled "Modified Claim Amount or Disallowed Claim" for one or more of the following reasons: (i) part of the claimed amount is neither supported by the documentation or other evidence provided by the claimant, if any, nor by the Wind-Down Debtors' Books and Records, (ii) part of the claimed amount relates to benefits or assertions for which the Wind-Down Debtors' Books and Records indicate that no amounts are due and owing, (iii) the claimed amount is lower than the amount supported by the Wind-Down Debtors' Books and Records, (iv) the claim asserts a liability that is not a liability of any of the Wind-Down Debtors and the Books and Records indicate a different liability owed to the claimant, (v) the claimed amount asserts an unsupported secured claim pursuant to section 506 of the Bankruptcy Code, (vi) the claimed amount asserts an incorrect or improper classification, in part or in full pursuant to sections 503(b)(9), 507(a)(4) or 507(a)(5) of the Bankruptcy Code, and/or (vii) certain invoices related to the claim have already been paid pursuant to one or more payment orders and/or in the ordinary course of business (the "<u>Modified, Reclassified, and Allowed Claims</u>")

h.      Certain of the claims identified in **Exhibit A** should be disallowed in full as a claim for which the Wind-Down Debtors are not liable because (i) the claim asserts a liability that is not a liability of the Debtor identified in the proof of claim or a liability of any other Debtor or Wind-Down Debtor and (ii) the claim is supported neither by the documentation and information provided by the claimant, if any, nor by the Wind-Down Debtors' Books and Records (the "<u>No Amount Due Claims</u>").

### **Basis for Relief**

26.     Pursuant to section 101 of the Bankruptcy Code, a creditor holds a claim against a bankruptcy estate only to the extent that (a) it has a "right to payment" for the asserted liabilities and (b) the claim is otherwise allowable.  11 U.S.C. §§ 101(5) and 101(10).

27. When asserting a claim against a bankrupt estate, a claimant must allege facts that, if true, would support a finding that the debtor is legally liable to the claimant. See In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992); In re Int'l Match Corp., 69 F.2d 73, 76 (2d Cir. 1934) (finding that a proof of claim should at least allege facts from which legal liability can be seen to exist). Where the claimant alleges sufficient facts to support its claim, its claim is afforded *prima facie* validity. In re Allegheny Int'l, Inc., 954 F.2d at 173. A party wishing to dispute such a claim must produce evidence in sufficient force to negate the claim's *prima facie* validity. Id. In practice, the objecting party must produce evidence that would refute at least one of the allegations essential to the claim's legal sufficiency. Id. at 173-74. Once the objecting party produces such evidence, the burden shifts back to the claimant to prove the validity of his or her claim by a preponderance of the evidence. Id. The burden of persuasion is always on the claimant. Id.

## A. Satisfied Claims

28. The Plan Administrator and Wind-Down Debtors object to the Satisfied Claims identified in **Exhibit A** and respectfully request that the Satisfied Claims be disallowed in full. The Plan Administrator, the Wind-Down Debtors and/or their advisors have reviewed the Books and Records, the Schedules, the Proofs of Claim related to such Satisfied Claims and determined that such Satisfied Claims have already been satisfied by the Debtors and therefore are not eligible for any additional distributions.

## B. No-Basis 401(k) Claims

29. The Plan Administrator and Wind-Down Debtors object to the No-Basis 401(k) Claims identified in **Exhibit A** because each asserts a claim related to the Debtors' 401(k) Plan. Assets related to the 401(k) Plan were held in separate trust and did not form a part of the Debtors' estates, and therefore the Debtors and Wind-Down Debtors have no liability for claims

asserted under the 401(k) Plan.  The No-Basis 401(k) Claims identified in **Exhibit A** should be disallowed in full, and the claimants holding No-Basis 401(k) Claims shall not be entitled to any distribution from the Wind-Down Debtors' estates with respect to such claims.

## C.    No-Basis Pension Claims

30.    The Plan Administrator and Wind-Down Debtors object to certain of the claims identified in Exhibit A because the amounts asserted for pension benefits owing in connection with the terminated Defined Benefit Pension Plan are not liabilities of the Debtors, Wind-Down Debtors or their estates.  The No-Basis Pension Claims identified in Exhibit A should be disallowed in full, and the claimants holding No-Basis Pension Claims shall not be entitled to any distribution from the Wind-Down Debtors' estates with respect to such claims.  By this Objection, the Plan Administrator and Wind-Down Debtors are not seeking to affect any rights that claimants holding No-Basis Pension Claims may have to participate in distributions from the PBGC with regards to the Defined Benefit Pension Plan.

31.    The No-Basis Pension Claims cannot properly be asserted against the Wind-Down Debtors' estates because, pursuant to ERISA, (i) the PBGC is the sole source of recovery for participants of a terminated single employer pension plan, and (ii) the PBGC is the sole entity entitled to recover pension termination liabilities directly from a plan sponsor in the event of a pension plan termination.  See, e.g., 29 U.S.C. §§ 1322, 1344 (describing distributions from the PBGC with respect to terminated single employer pension plans); 29 U.S.C. § 1362 (stating that in any case in which a single employer pension plan is terminated, the plan sponsor or member of such plan sponsor's controlled group shall be liable to the PBGC).  Courts routinely dismiss pension plan participants' claims seeking payment of terminated pension benefits directly from the plan sponsor.  See, e.g., United Steelworkers, Am., AFL CIO, CLC v. United Eng'g, Inc., 52 F.3d 1386, 1394 (6th Cir. 1995) (concluding that permitting plan participants to sue an employer

directly for payment of ERISA benefits would render the priority scheme set forth in ERISA meaningless); In re Adams Hard Facing Co., 129 B.R. 662, 663 (Bankr. W.D. Okla. 1991) (disallowing direct claims of plan participants against the debtors).

32.     Based on careful review of the Books and Records, the Schedules and the proofs of claim, including supporting documentation provided by the claimants, if any, the Plan Administrator and Wind-Down Debtors have determined that there are no amounts due and owing to the claimants with respect to the No-Basis Pension Claims.  The disallowance of the No-Basis Pension Claims is necessary to prevent claimants from receiving an unwarranted recovery in contravention of applicable law.  Accordingly, the Plan Administrator and Wind-Down Debtors seek to disallow and expunge each No-Basis Pension Claim in its entirety as set forth in Exhibit A.

**D.     No-Basis Deferred Compensation Claims**

33.     The Plan Administrator and Wind-Down Debtors object to the No-Basis Deferred Compensation Claims identified in **Exhibit A** because each asserts a claim for benefits under the Deferred Compensation Plan, which claims were released pursuant to the Deferred Compensation Settlement Agreement.  Accordingly, each No-Basis Deferred Compensation Claim should be disallowed in its entirety and expunged.  The disallowance of the No-Basis Deferred Compensation Claims is necessary to prevent double recovery by a claimant or a successor thereof for the same claim— once under the Deferred Compensation Settlement Agreement and once under the filed No-Basis Deferred Compensation Claim.  **By this Objection, the Plan Administrator and Wind-Down Debtors are not seeking to affect any rights that claimants holding No-Basis Deferred Compensation Claims were given, if any, to participate in distributions under the Deferred Compensation Settlement Agreement.**

**E.      Redundant Claims**

34.     The Plan Administrator and Wind-Down Debtors object to the Redundant Claims identified in **Exhibit A** because each Redundant Claim relates to a claim that is redundant of another claim filed in this case. **Exhibit A** also lists the claim number for such Redundant Claims and notes that such claims will be disallowed as redundant of the remaining claim.  The disallowance of the Redundant Claims is necessary to prevent double recovery by a claimant or a successor thereof for the same claim.

**F.      Wrong Debtor Claims**

35.     With respect to each of the Wrong Debtor Claims, the Plan Administrator and the Wind-Down Debtors and/or their advisors have carefully reviewed the Wind-Down Debtors' Books and Records, their Schedules and the proof of claim, including supporting documentation provided by the claimant, if any.  Based on this review, the Plan Administrator and Wind-Down Debtors have determined that the claims should be asserted against the Identified Debtor identified in the column labeled "New Case Info and Identified Debtor" in **Exhibit A**.

**G.      Modify and Allow and Reclassify and Allow Claims**

36.     The Plan Administrator and Wind-Down Debtors object to certain of the claims identified in **Exhibit A** because the amounts asserted in these claims include amounts that (i) are not liabilities of the Wind-Down Debtors or their estates, and/or (ii) are amounts that were higher or lower than the liability reflected in the Wind-Down Debtors' Books and Records, and/or (iii) the claims assert an entitlement to administrative, secured or priority status that the Wind-Down Debtors believe is unwarranted, either in part or in full, and/or (iv) the claims failed to identify or correctly identify the Debtor or Wind-Down Debtor liable for such claims. Therefore, the priority status should be adjusted accordingly and the claims and priority amounts identified in **Exhibit A** should be reduced or increased to the amounts identified in the column labeled

"Modified Claim Amount" for the reasons set forth in the column labeled "Reason for Modification."

37.    With respect to each of the claims in **Exhibit A** that are not liabilities of the Wind-Down Debtors' estates or that indicate an amount that is not reflected in the Wind-Down Debtors' Books and Records, the Plan Administrator, Wind-Down Debtors and/or their advisors have carefully reviewed the Books and Records, the Schedules and the proof of claim, including supporting documentation, if any, provided by the claimant and have determined that these claims overstate the Wind-Down Debtors' liability by an amount that is not supported by any documentation or other evidence provided by the claimants, if any.  Nor is such overstated portion of each of these claims supported by the Wind-Down Debtors' Books and Records.  To the extent that any claimant is permitted to amend a proof of claim or otherwise provides documentation or other evidence supporting the overstated portion of a claim, the Wind-Down Debtors respectfully request relief from the requirements of Local Rule 3007-1(f)(iii), and the Court's permission to submit a supplemental objection, as necessary.

38.    Based on a careful review of their Books and Records, the Plan Administrator and Wind-Down Debtors have determined that certain claimants identified in **Exhibit A** asserted a claim amount that was lower than the liability reflected in the Wind-Down Debtors' Books and Records.

39.    Therefore, the Plan Administrator and Wind-Down Debtors seek to adjust such claims to the Modified Claim Amounts identified in **Exhibit A** and allow such claims for the Modified Claim Amounts.  The Plan Administrator and Wind-Down Debtors also seek to disallow the overstated amounts asserted in **Exhibit A** and to reduce and allow such claims for the Modified Claim Amounts.  If the overstated or understated claim amounts are not revised as

requested herein, many of the claimants will receive a disproportionately large distribution, while others will receive a disproportionately smaller distribution in these chapter 11 cases in contravention of the provisions and policies of the Bankruptcy Code and to the direct detriment of the Wind-Down Debtors' estates and other creditors.

40.     With respect to each of the claims identified in **Exhibit A** that asserts an entitlement to administrative, secured or priority status that the Plan Administrator and Wind-Down Debtors believe is unwarranted, either in part or in full, the Plan Administrator and the Wind-Down Debtors and/or their advisors have carefully reviewed the Books and Records and the proof of claim, including supporting documentation provided by the claimant, if any.  Based on this review, the Plan Administrator and Wind-Down Debtors have determined that the affected claims (i) were filed on a section 503(b)(9) claim form but do not meet the statutory requirements of section 503(b)(9) of the Bankruptcy Code, and instead relate to claims that are unsecured according to the Books and Records, (ii) failed to provide any information or documentation in support of a security interest, pursuant to section 506 of the Bankruptcy Code, and instead relate to claims that are unsecured according to the Books and Records, or (iii) asserted incorrect or improper priority status classification in part or in whole, pursuant to sections 507(a)(4) or 507(a)(5) of the Bankruptcy Code.  Consequently, the Plan Administrator and Wind-Down Debtors believe the secured status, priority and/or priority amount of these claims should be modified by reclassifying and/or reducing or adjusting the secured status, priority and/or priority amount listed under the column entitled "Modified Claim Amount" in **Exhibit A**.

41.     Section 503(b)(9) of the Bankruptcy Code provides administrative expense priority to claims for the value of any goods received by a debtor within 20 days before the

commencement of a chapter 11 case to the extent that such goods have been sold to the debtor in the debtor's ordinary course of business.  11 U.S.C. § 503(b)(9).

42.     Section 506 of the Bankruptcy Code provides secured status to an allowed claim secured by a lien on property in which the debtor's estate has an interest or that is subject to setoff under Section 553 of the Bankruptcy Code. 11 U.S.C. § 506(a)(1).

43.     By revising the aforementioned claims as set forth herein, the Wind-Down Debtors will be better positioned to ensure that the claimants ultimately entitled to receive distributions from the Wind-Down Debtors' estates receive the appropriate treatment and distribution.

44.     Each of the allowed claims reflected in **Exhibit A** shall supersede any obligation of the Wind-Down Debtors to such claimant that may be reflected in the Schedules.

**H.      No Amount Due Claims**

45.     The Plan Administrator and Wind-Down Debtors object to the Redundant Claims identified in **Exhibit A** because each Redundant Claim relates to a claim that is redundant of another claim filed in this case. **Exhibit A** also lists the claim number for such Redundant Claims and notes that such claims will be disallowed as redundant of the remaining claim.  The disallowance of the Redundant Claims is necessary to prevent double recovery by a claimant or a successor thereof for the same claim.

<u>**Separate Contested Matters**</u>

46.     To the extent that a response is filed regarding any claim identified in **Exhibit A** and the Wind-Down Debtors are unable to resolve the response, such claim, and the objection to such claim asserted by the Wind-Down Debtors herein, shall constitute a separate contested matter as contemplated by Bankruptcy Rule 9014.  Any order entered by the Court regarding an objection asserted in this Objection shall be deemed a separate order with respect to each claim.

## **Responses to Omnibus Objection**

47.     To contest this Objection, a claimant must file and serve a written response to this

Objection (a "Response") so that it is received no later than **4:00 p.m. (prevailing Eastern**

**Time) on December 1, 2017** (the "Response Deadline").  Every Response must be filed with:

>           The Office of the Clerk
>           The United States Bankruptcy Court for the District of Delaware
>           824 Market Street
>           Wilmington, Delaware 19801

and served upon the following entities so that the Response is received no later than the

Response Deadline, at the following addresses:

>           Cleary Gottlieb Steen & Hamilton LLP
>           One Liberty Plaza
>           New York, New York 10006
>           Attn:  Lisa M. Schweitzer
>
>           -and-
>
>           Morris, Nichols, Arsht & Tunnell LLP
>           1201 North Market Street, P.O. Box 1347
>           Wilmington, Delaware 19899-1347
>           Attn:  Derek C. Abbott

48.     Every Response to this Objection must contain, at a minimum, the following

information:

>   a.    A caption setting forth the name of the Court, the name of the Debtors, the
>         case number, and the title of this Objection;
>
>   b.    The name of the claimant, the claim number, and a description of the basis
>         for the amount of the claim;
>
>   c.    The specific factual basis and supporting legal argument upon which the
>         party will rely in opposing this Objection;
>
>   d.    Any supporting documentation, to the extent that it was not included in the
>         proof of claim previously filed with the clerk or claims agent, upon which
>         the claimant intends to rely to support the basis for and amounts asserted
>         in the proof of claim; and

e.    The name, address, telephone number and fax number of the person(s) (which may be the claimant or the claimant's legal representative) with whom counsel for the Debtors should communicate with respect to the claim or this Objection and who possesses authority to reconcile, settle, or otherwise resolve the objection to the disputed claim on behalf of the claimant.

49.    If a claimant fails to file and serve a timely Response by the Response Deadline, the Wind-Down Debtors may present to the Court an appropriate order modifying, reclassifying or disallowing the claim, without further notice to the claimant or a hearing.

## Replies to Responses

50.    The Plan Administrator and the Wind-Down Debtors may, at their option, file and serve a reply to any Response so that it is received by the claimant (or the claimant's counsel, if represented) no later than three (3) days prior to the hearing.

## Adjournment of Hearing

51.    The Plan Administrator and Wind-Down Debtors reserve the right to seek an adjournment of the hearing on any Responses to this Objection.  In the event that the  Plan Administrator and Wind-Down Debtors seek such an adjournment, it will be noted on the notice of agenda for the hearing, and such agenda will be served on the affected claimant by serving the person designated in the Response.

## Reservation of Rights

52.    The Plan Administrator and Wind-Down Debtors expressly reserve the right to amend, modify or supplement this Objection.  Should one or more of the grounds of objection stated in this Objection be dismissed or overruled, the Plan Administrator and Wind-Down Debtors reserve the right to object to each of the claims on any other grounds that the Plan Administrator and Wind-Down Debtors discover or elect to pursue.  This Objection sets out substantive and non-substantive objections to the claims identified in **Exhibit A**.  The Plan

Administrator and Wind-Down Debtors reserve their right to assert one or more other legal,

factual, procedural, substantive and non-substantive objections to claims identified in **Exhibit A**

at a later time.  The Plan Administrator and Wind-Down Debtors also reserve the right to

withhold all applicable federal, state and local withholding taxes from distributions (if any) that

would be made with respect to the claims addressed in this Objection.

## No Prior Request

53.     No prior request for the relief sought herein has been made to this or any other

court.

## Notice

54.     Notice of this Objection has been given via first class mail or overnight delivery

to (i) the U.S. Trustee;  (ii) each of the parties listed in **Exhibit A** and (iii) the post-Effective

Date service list established in these chapter 11 cases.  In light of the nature of the relief

requested, the Plan Administrator and Wind-Down Debtors submit that no other or further notice

is necessary.

WHEREFORE, the Plan Administrator and Wind-Down Debtors respectfully request that

the Court enter an order substantially in the form attached hereto as **Exhibit C**, sustaining this

Objection in all respects and granting such other and further relief as the Court deems just and

proper.

Dated:  November 10, 2017
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York  10006
Telephone:  (212) 225-3505
Facsimile:  (212) 225-3999

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

    */s/ Tamara K. Minott*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware  19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the*
*Wind-Down Debtors*