## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------X
                        :

*In re*                          :       Chapter 11

                          :

Nortel Networks Inc., *et al.,*[1]     :       Case No. 09-10138 (KG)

                          :

      Wind-Down Debtors and Debtor-In-  :      Jointly Administered
      Possession.                :

                          :      **Hearing date: December 18, 2018 at 10:00 a.m. (ET)**
                          :      **Responses due: December 7, 2018 at 4:00 p.m. (ET)**

-------------------------------------------------------- X

## WIND-DOWN DEBTORS' OBJECTION TO THE CLAIM
## FILED BY STMICROELECTRONICS, INC. (CLAIM NUMBER 5557)

Nortel Networks Inc. ("NNI"), on behalf of itself and certain of its affiliates, as wind-down debtors in the above-captioned cases (collectively, the "Wind-Down Debtors"), hereby objects (this "Objection"), pursuant to section 502 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the proof of claim filed by STMicroelectronics, Inc. ("STMicro") on September 30, 2009 against NNI, listed in the Wind-Down Debtors' claims register as claim number 5557 (the "STMicro Claim") and requests an order substantially in the form attached hereto as **Exhibit A**, disallowing the STMicro Claim in full with prejudice. In support of this Objection, the Wind-Down Debtors

---

[1] The Wind-Down Debtors in these chapter 11 cases, along with the last four digits of each Wind-Down Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Nortel Networks India International Inc. (8667) remains a debtor-in-possession.  Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

submit the *Declaration of Mary Cilia in Support of Wind-Down Debtors' Objection to the Claim Filed by STMicroelectronics, Inc. (Claim Number 5557)* (including the attachments thereto, the "Cilia Declaration"), attached hereto as **Exhibit B** and incorporated by reference.

### Jurisdiction

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     The statutory bases for the relief requested herein are section 502 of the Bankruptcy Code and Bankruptcy Rule 3007.

### Background

3.     On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc. and Nortel Networks India International Inc., filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.[2]  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors during the case [D.I.s 141, 142][3], and an ad hoc group of bondholders and a consortium of creditors holding trade claims were organized.

4.     On August 4, 2009, the Court entered an order (the "Bar Date Order") establishing September 30, 2009 at 4:00 p.m. (Eastern Time) (the "General Bar Date") as the last date for all creditors holding a "claim" against the Debtors (other than NN CALA and NNIII) to

---

[2]     These cases are consolidated for procedural purposes only.  Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes (D.I. 1098), and Nortel Networks India International Inc. ("NNIII") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 26, 2016, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes (D.I. 17090, the cases together, the "Chapter 11 Cases").
[3]     Pursuant to the *Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint Chapter 11 Plan Nortel Networks, Inc. and Certain of its Affiliated Debtors* [D.I. 17795], the Committee was dissolved automatically on the Effective Date (as defined below).

file and serve a written proof of claim, subject to certain enumerated exceptions set forth in the Bar Date Order.[4]

5.       The Debtors' claims, notice and balloting agent, Epiq Bankruptcy Solutions, LLC, has prepared and maintains a register of all proofs of claim filed against the Debtors in these chapter 11 cases.

6.       On January 24, 2017, the United States Bankruptcy Court for the District of Delaware (the "Court") entered its *Findings of Fact, Conclusions of Law and Order Confirming First Amended Join Chapter 11 Plan of Nortel Networks Inc. and Certain of Its Affiliated Debtors* [D.I. 17795] confirming the *First Amended Joint Chapter 11 Plan of Nortel Networks Inc. and Certain of Its Affiliated Debtors* [D.I. 17795-1] (the "Plan").

7.       On May 8, 2017 (the "Effective Date"), the Plan became effective according to its terms.  See *Notice of Entry of Confirmation Order and Occurrence of Effective Date of First Amended Joint Chapter 11 Plan of Nortel Networks Inc. and Certain of Its Affiliated Debtors* [D.I. 18176].  Pursuant to the Plan, as of the Effective Date, the Plan Administrator is authorized to wind-down the Debtors' estates, including the resolution of all outstanding claims.  The deadline for the Plan Administrator to object to unresolved claims has been extended to February 1, 2019 (the "Claims Objection Deadline") [D.I. 18640].

## The STMicro Claim

### A.       The Proof of Claim

8.       On September 30, 2009, STMicro filed the STMicro Claim, asserting a total claim against NNI in the amount of $8,905,079.00.  Through the STMicro Claim, STMicro asserts that

---

[4]       On December 3, 2009, the Court entered an order establishing January 25, 2010 at 4:00 p.m. (Eastern Time) (the "CALA Bar Date") as the general claims bar date for all creditors holding a claim against NN CALA to file and serve written proofs of claim [D.I.  2059].  On  August 16, 2016, the Court entered an order establishing September 19, 2016 at 4:00 p.m. (Eastern Time) (the "NNIII Bar Date) as the general claims bar date for all creditors holding a claim against NNIII to file and serve written proofs of claim. [Case No. 16-11714, D.I. 16].

NNI is liable to STMicro pursuant to two purchase orders purportedly entered into between STMicro and NNI for the purchase of certain STMicro products by NNI.  One of the purchase orders identified in the STMicro Claim, P.O. Number 4503140371, a copy of which is attached to the STMicro Claim, is dated July 15, 2008 and purportedly relates to the production by STMicro of certain "AB06 devices" (the "Original P.O.").  STMicro asserts a liability against NNI in connection with the Original P.O. in an amount of $7,929,760.00.

9.      The other purchase order identified in the STMicro Claim, P.O. Number 4502996862, purportedly relates to the production by STMicro of separate STMicro products identified as STMicro part numbers "BNRLMICBNDMTA/EDRSLISBUMMTA".  A copy of this purchase order (the "NN U.K. P.O.") was not included as an attachment to the STMicro Claim.  STMicro asserts that $975,319.00 of the STMicro Claim is attributable to the NN U.K. P.O.

**B.      History of the AB06 Purchases**

10.     Following the receipt of the STMicro Claim, the Debtors and Wind-Down Debtors reviewed their books and records and additional documentation in their custody in an effort to verify the claims asserted in the STMicro Claim.  The Wind-Down Debtors have determined that the Original P.O. is one of several agreements between the Wind-Down Debtors and STMicro related to the purchase of AB06 devices by NNI.  In fact, the Original P.O. was subsequently replaced through the negotiation and issuance on August 21, 2009 of a post-petition replacement purchase order, Purchase Order Number 4504269988, for a smaller number of AB06 devices by NNI (the "Replacement P.O.").  A copy of the Replacement P.O. is attached as Exhibit 1 to the Cilia Declaration.  The Replacement P.O. expressly states that it replaces the Original P.O.  Through the Wind-Down Debtors' review of its books and records, the Wind-

Down Debtors have also been able to determine additional context to the purchase orders underlying the STMicro Claim and provide a brief summary below.

   i.  *The AB06 LOI and the Original P.O.*

  11.  As described in the STMicro Claim, Nortel and STMicro entered into a letter of intent dated April 11, 2008 in connection with the purchase of AB06 devices by Nortel (the "AB06 LOI").  A copy of the AB06 LOI is attached as Exhibit 2 to the Cilia Declaration.

  12.  Thereafter, NNI issued the Original P.O. to STMicro on July 15, 2008 pursuant to the terms of the AB06 LOI.  The Original P.O. sets forth the original terms of the agreement between NNI and STMicro for the purchase of 2,734,400 AB06 devices at a unit price of $2.90/device for a total purchase order amount of $7,929,760.00, with deliveries scheduled quarterly between 3/24/2009 and 12/22/2009.  See Original P.O.

  13.  The Original P.O. states that the "Purchase Order is subject to the Nortel Networks Standard PO Terms & Conditions unless otherwise specified by Nortel." Id.  A copy of the applicable Nortel Networks Standard PO Terms & Conditions (the "Standard PO Terms & Conditions") is attached to the Cilia Declaration as Exhibit 3.  The Standard PO Terms & Conditions provide, *inter alia*, that Nortel as Purchaser is entitled to terminate a purchase order, whether or not the supplier has breached the purchase order, and that in the case of termination absent a breach by the Supplier, the Supplier "shall be entitled solely to reimbursement of the reasonable cost Supplier has incurred in the performance of this Order prior to the effective date of termination, but in no event shall such reimbursement exceed the Price(s)."  Standard PO Terms & Conditions, ¶ 6. The Standard PO Terms & Conditions further provide that "[i]n no event shall Purchaser be liable for any incidental, indirect or consequential special or punitive

damages of any nature whatsoever, including loss of income, profit, use, or goodwill, for any reason whatsoever." Id.

    *ii.*    *The Replacement P.O.*

14.    Shortly after the Petition Date, NNI rejected the first quarterly shipment of AB06 products contemplated by the Original P.O. after having determined that a lesser quantity of AB06 products would be sufficient for the post-petition period. See Letter dated June 23, 2009 from STMicroelectronics, Inc. to Nortel Networks (the "June 23, 2009 STMicro Letter"). A copy of the June 23, 2009 STMicro Letter is attached to the Cilia Declaration as Exhibit 4. As a result, STMicro and representatives of NNI engaged in negotiations for a new AB06 purchase order to replace the Original P.O. in a lesser amount.

15.    Between January of 2009 and August of 2009, the parties negotiated the terms of a replacement purchase order for the purchase by NNI of AB06 devices. In the June 23, 2009 STMicro Letter, STMicro outlined a proposal for the post-petition supply of AB06 devices to Nortel, including a request that Nortel issue "new, post-filing Purchase Orders by mid-July, 2009 for the chosen supply option." Id., at 2. During these negotiations, Nortel and STMicro agreed and acknowledged that the Original P.O. and AB06 LOI were abandoned. Id., at 1. As a result of these negotiations, Nortel issued the Replacement P.O. at a lower quantity of AB06 devices than the Original P.O.

16.    On August 21, 2009, the Replacement P.O. was issued by NNI to STMicro. The Replacement P.O. provides for the purchase by NNI of 740,800 AB06 devices at a price of $2.90/device, for a total amount of $2,148,320.00. See Replacement P.O.

17.    The Replacement P.O. is printed with the following header text:

    This Nortel Purchase Order is a REPLACEMENT for the original, pre-filing AB06 LOI & P.O., which are being abandoned by Nortel, and so ST has no

additional AB06 supply obligations beyond the quantities shown in this Purchase Order.

See Replacement P.O., at 1.

18.    On December 21, 2009, following discussions with STMicro as to Nortel's post-petition purchases of AB06 devices and the issuance of the Replacement P.O., NNI formally rejected the Original P.O. in the *Twenty-Fifth Notice of Rejection of Executory Contract(s) And/Or Nonresidential Real Property Lease(s)* [D.I. 2184].

19.    After a careful review of the Wind-Down Debtors' books and records, the Wind-Down Debtors have determined that all obligations of NNI and STMicro pursuant to the Replacement P.O. have been satisfied and no outstanding obligations of either party remain pursuant to the Replacement P.O.  A copy of a screenshot from the Wind-Down Debtors' SAP purchase order system with respect to the Replacement P.O. (the "Replacement P.O. SAP Screenshot") indicates that $2,106,560.00 was paid by NNI to satisfy the Replacement P.O. and NNI received 726,400 AB06 units.[5] See Replacement P.O. SAP Screenshot.  A copy of the Replacement P.O. SAP Screenshot is attached as Exhibit 5 to the Cilia Declaration.

**C.    The NN U.K. Purchase Order**

20.    In addition to the Original P.O., STMicro included in the STMicro Claim a purported liability of NNI in the amount of $975,319.00 related to the NN U.K. P.O., a separate purchase order that is identified in the STMicro Claim as relating to separate STMicroelectronics parts.  STMicro did not provide any supporting documentation with the STMicro Claim with respect to the NN U.K. P.O. and have not provided any such documentation to date.  The Wind-Down Debtors have searched their books and records for any documentation relating to the NN

---

[5]    The Wind-Down Debtors note that there is some discrepancy between the amount of units and total cost between the Replacement P.O. and the Replacement P.O. SAP Screenshots, but have no additional information on this discrepancy.  To the degree STMicro has additional information in its records regarding this discrepancy, the Wind-Down Debtors reserve all rights with respect to such discrepancy and additional documentation.

U.K. P.O. and have been unable to locate a copy of NN U.K. P.O. in their records, but have identified certain relevant database records and screenshots related to the NN U.K. P.O.

21.     The Wind-Down Debtors' records indicate that the NN U.K. P.O. was a purchase order between STMicro and Nortel Networks U.K. Ltd. ("NN U.K.").  Copies of a screenshot related to NN U.K. P.O. from the Wind-Down Debtors' SAP purchase order system (the "SAP P.O. 4502996862 Screenshot") are attached to the Cilia Declaration as Exhibit 6.  The SAP P.O. 4502996862 Screenshot reflects the same purchase order as the NN U.K. P.O. and identifies the "Vendor" as "213063 STMicroelectronics" and identifies "Nortel Networks UK Ltd." as the applicable Nortel purchasing entity.

## Relief Requested

22.     For the reasons set forth below, the Wind-Down Debtors object to the STMicro Claim and respectfully request that the Court enter an order pursuant to section 502(b) of the Bankruptcy Code, Bankruptcy Rule 3007 and Local Rule 3007-1 substantially in the form attached hereto as **Exhibit A**, disallowing the STMicro Claim in full with prejudice.

## Basis for Relief

23.     Pursuant to section 101 of the Bankruptcy Code, a creditor holds a claim against a bankruptcy estate only to the extent that (a) it has a "right to payment" for the asserted liabilities and (b) the claim is otherwise allowable.  11 U.S.C. §§ 101(5) and 101(10).

24.     When asserting a claim against a bankrupt estate, a claimant must allege facts that, if true, would support a finding that the debtor is legally liable to the claimant.  In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992); In re Int'l Match Corp., 69 F. 2d 73, 76 (2d Cir. 1934) (finding that a proof of claim should at least allege facts from which legal liability can be seen to exist).  Where the claimant alleges sufficient facts to support its claim, its claim is afforded *prima facie* validity.  In re Allegheny Int'l, Inc., 954 F.2d at 173.  A party wishing to

dispute such a claim must produce evidence in sufficient force to negate the claim's *prima facie*

validity.  Id.  In practice, the objecting party must produce evidence that would refute at least one

of the allegations essential to the claim's legal sufficiency.  Id. at 173-74.  Once the objecting

party produces such evidence, the burden shifts back to the claimant to prove the validity of his

or her claim by a preponderance of the evidence.  Id. at 174.  The burden of persuasion is always

on the claimant.  Id.

25.      NNI has carefully reviewed its books and records, Schedules, the STMicro Claim,

and all other supporting documentation provided by STMicro, and other relevant documents

available to NNI, and has determined that the STMicro Claim does not meet the standard of

establishing *prima facie* validity.

**A.      NNI Has No Liability on Account of the Original P.O. Because the
          Replacement P.O. Replaced the Original P.O.**

*i.      The Replacement P.O. Extinguished All Liabilities of NNI Pursuant to the
         Original P.O.*

26.      By its express terms, the Replacement P.O. replaced the Original P.O. and

relieved NNI of all obligations under the Original P.O.  The Replacement P.O. clearly states that

it is a "REPLACEMENT" for the Original P.O.  As a result, the terms of the Replacement P.O.

are unambiguous and should be enforced as drafted and as agreed by the parties.  See, e.g. Coca-

Cola Bottling Co. of Shreveport v. Coca-Cola Co., 769 F. Supp. 671, 707 (D. Del. 1991) aff'd,

988 F.2d 414 (3d Cir. 1993) ("Courts do not rewrite contracts to include terms not assented to by

the parties").

27.      Even if there were ambiguity with respect to the effect of the Replacement P.O.

on the obligations under the Original P.O., the record of the parties' discussions surrounding the

issuance of the Replacement P.O. and the subsequent rejection of the Original P.O. by the

Debtors evidences that the Replacement P.O. was intended to replace the Original P.O. in light

of, among other things, NNI's bankruptcy filing.  STMicro's active role in negotiating the

Replacement P.O. as a consensual means of resolving the treatment of the Original P.O. post-

petition also establishes that the parties' intention was to replace the Original P.O., including all

obligations of each party thereunder, with the Replacement P.O.  For example, in the June 23,

2009 STMicro Letter, STMicro requests that Nortel issue a new purchase order for AB06

products in light of Nortel's prior rejection earlier that year of a shipment of AB06 products.

June 23, 2009 STMicro Letter, at 1.  Moreover, in that same letter, STMicro acknowledges that

any agreement by Nortel to honor the original requests for AB06 products "Requires a New

P.O.".  Id.

28.     Accordingly, there can be no valid dispute that NNI's sole obligations to STMicro

relating to the production of AB06 products were satisfied by NNI's payment of the amounts set

forth in the Replacement P.O.

       ii.     *Even If the Replacement P.O. Did Not Replace the Original P.O., NNI Satisfied a*
           *Portion of the Original P.O. and STMicro Has Failed to Mitigate Any Purported*
           *Damages*

29.     Even assuming, *arguendo*, that the Replacement P.O. did not replace the Original

P.O., which it did, STMicro is not entitled to a claim in the amount of the Original P.O. as

asserted in the STMicro Claim.  First, pursuant to the express provisions of the Standard PO

Terms & Conditions, STMicro is only entitled to recover the reasonable costs it incurred in

performing under such purchase order, and not any loss of income or profit.  STMicro has made

no showing as to the costs it incurred in connection with fulfilling the Original P.O., but has

simply asserted an entitlement to the full purchase price contemplated in such purchase order.

Therefore, even if the Court were to determine that STMicro is entitled to a claim against NNI in

connection with the Original P.O., which it should not, given the evidence to the contrary, STMicro would have no entitlement to the full amount of the purchase price.

30.    Second, NNI's purported liability on account of the Original P.O. as properly calculated as the reasonable costs incurred by STMicro must be reduced by, at a minimum, the amount of the Replacement P.O. that has been satisfied by NNI in the amount of $2,106,560.00. The AB06 devices delivered by STMicro pursuant to the Replacement P.O. were fully paid for by NNI in accordance with the Replacement P.O.  In addition to the other objections to the claim, there can be no dispute that the products requested by and paid for under the Replacement P.O. covered a portion of the products requested by the Original P.O.  In fact, the issuance of the Replacement P.O. did not require STMicro to produce any additional AB06 units.  Because NNI paid STMicro $2,106,560.00 for the 726,400 AB06 devices ordered under the Replacement P.O., STMicro would obtain a double recovery on such products if it were also entitled to assert a claim against NNI for the costs incurred in producing those same AB06 products under the Original P.O.

31.    Finally, in addition to the other reasons for disallowing the claim in full, STMicro's claim would otherwise have to be further reduced to the extent that it has mitigated its alleged damages through the sale of the AB06 products produced pursuant to the Original P.O., or otherwise demonstrate that it has been unable to mitigate those damages through reasonable efforts.[6]

---

[6]    Pursuant to the Standard PO Terms & Conditions, the governing law of the Original P.O. is the law of the state of delivery of the goods.  See Standard PO Terms & Conditions, ¶ 14.  The Original P.O. contemplates delivery of goods to Massachusetts and North Carolina.  Under the law of both states, a nonbreaching party to a contract has a duty to mitigate its damages upon breach.  See Zhu v. Deng, 794 S.E.2d 808, 818 (N.C. Ct. App. 2016) (pursuant to North Carolina common law, "[t]he duty placed on an injured party to mitigate damages is well established."); Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc., 68 Mass. App. Ct. 582, 612, 864 N.E.2d 518, 543–44 (2007) (a party cannot recover damages for loss that he could have avoided by such reasonable efforts as are appropriate in the circumstances to avoid loss by making substitute arrangements or otherwise.").  The Wind-Down Debtors reserve their rights to serve discovery on STMicro in connection with the STMicro Claim,

**B.     The Wind-Down Debtors Are Not Liable for the NN U.K. P.O.**

32.     Separate from the effect of the Replacement P.O. on the obligations under the

Original P.O., the Wind-Down Debtors have no liability for the amounts asserted by STMicro

under the NN U.K. P.O.  As set forth on Exhibit 6 to the Cilia Declaration, the Wind-Down

Debtors' books and records establish that NN U.K. Ltd. was the Nortel entity that purchased the

STMicro parts associated with that purchase order, and thus are the only Nortel entity that can be

liable for obligations arising thereunder.  See SAP P.O. 4502996862 Screenshot.

33.     While a number of parties over the course of the Wind-Down Debtors' chapter 11

cases have sought to saddle the U.S. Debtors with obligations clearly belonging to non-U.S.

Nortel entities, this Court has previously disallowed such claims and should do so here.[7]

Consistent with those rulings and with common sense, the Wind-Down Debtors must not be

burdened with obligations for which they have no liability.

## Adjournment of Hearing

34.     NNI reserves the right to seek an adjournment of the Hearing on any response to

this Objection.

## Reservation of Rights

35.     NNI expressly reserves the right to amend, modify or supplement this Objection.

Should one or more of the grounds of objection stated in this Objection be dismissed or overruled,

NNI reserves the right to object to the STMicro Claim on any other grounds that it discovers or elects

to pursue.

---

including, without limitation, to determine the extent of any mitigation, if any, by STMicro in connection with the
Original P.O.

[7]     See, e.g., *Order Granting Debtors' Forty-Seventh Omnibus Objection (Substantive) to Certain Claims
Pursuant to 11 U.S.C. § 502, Fed. R. Bankr. P. 3007 and Del. L.R. 3007-1 (Non-Debtor Liability Claims, Modified,
Reclassified and Allowed Claims, No-Basis and Released Claims, No-Basis Equity Claims, No-Basis Retiree Claims
and Redundant Claims)* [D.I. 18059] (disallowing multiple claims asserted against the Debtors relating to non-
Debtor affiliates of the Debtors).

36.      Notwithstanding anything contained in this Objection, nothing herein shall be construed as a waiver of any rights that NNI (or any other Wind-Down Debtor) may have to (a) commence avoidance actions under the applicable sections of the Bankruptcy Code, including without limitation sections 547 and 548 of the Bankruptcy Code, against STMicro, (b) enforce NNI's right of setoff against STMicro relating to such avoidance actions, or (c) seek disallowance pursuant to section 502(d) of the Bankruptcy Code of any claims of STMicro that are subject to such avoidance actions.

### No Prior Request

37.      No prior request for the relief sought herein has been made to this or any other court.

### Notice

38.      Notice of this Objection has been given via first class mail to (i) the U.S. Trustee; (ii) counsel for STMicro and (iii) each party that has given notice to the Wind-Down Debtors or the Claims Agent requesting inclusion on the Post-Effective Date Rule 2002 Notice List in accordance with section 15.24 of the Plan.  In light of the nature of the relief requested, the Wind-Down Debtors submit that no other or further notice is necessary.

WHEREFORE, the Wind-Down Debtors respectfully request that the Court (i) enter an order substantially in the form attached hereto as **Exhibit A** disallowing the STMicro Claim in full with prejudice, and (ii) grant such other and further relief as is just and proper.

Dated:  November 16, 2018          CLEARY GOTTLIEB STEEN & HAMILTON LLP
        Wilmington, Delaware

                                     James L. Bromley (admitted *pro hac vice*)
                                     Lisa M. Schweitzer (admitted *pro hac vice*)
                                     One Liberty Plaza
                                     New York, New York 10006
                                     Telephone:  (212) 225-2000
                                     Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Tamara K. Mann*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Tamara K. Mann (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for NNI and the Wind-Down Debtors*