**EXHIBIT B**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

----------------------------------------------------------X
:
*In re*                                          :        Chapter 11
:
Nortel Networks Inc., *et al.*,[1]               :        Case No. 09-10138 (KG)
:
     Wind-Down Debtors and Debtor-In-         :        Jointly Administered
     Possession.                              :
:
----------------------------------------------------------X

**DECLARATION OF MARY CILIA IN SUPPORT OF**
**WIND-DOWN DEBTORS' OBJECTION TO THE CLAIM**
**FILED BY STMICROELECTRONICS, INC. (CLAIM NUMBER 5557)**

1.       I am the Treasurer for the Wind-Down Debtors.  I hereby make this declaration

on behalf of the Wind-Down Debtors in support of the *Wind-Down Debtors' Objection to the*

*Claim Filed by STMicroelectronics, Inc. (Claim Number 5557)* (the "Objection").[2]

2.       I am familiar with the Wind-Down Debtors' books and records and am currently

responsible for overseeing the review and analysis of all claims filed in the Wind-Down Debtors'

chapter 11 cases.  All facts set forth herein are based on my personal knowledge and on my

review of the claims, the books and records and other relevant documents or information

provided to me by the Wind-Down Debtors' current or former employees and advisors.  If I were

---

[1]       The Wind-Down Debtors in these chapter 11 cases, along with the last four digits of each Wind-Down Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Nortel Networks India International Inc. (8667) remains a debtor-in-possession and does not join in seeking relief from the Court through this Motion.  Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.
[2]       Capitalized terms used, but not otherwise defined, herein shall have the meanings set forth in the Objection.

called upon to testify, I could and would testify competently and accurately to each of the facts set forth herein.

## COMPLIANCE WITH LOCAL RULE 3007-1

3.     I have reviewed Local Rule 3007-1 and hereby state that, to the best of my knowledge and belief, the Objection is in compliance therewith, as modified by the orders of the Bankruptcy Court dated December 14, 2009 and February 7, 2012 [D.I.s 2125, 7178].

## BASES FOR OBJECTION

4.     I, or one or more of the Debtors' or Wind-Down Debtors' current or former employees or advisors operating under my supervision and/or at my direction or under the supervision or direction of my predecessor in charge of reconciling claims filed against the Debtors, have reviewed the STMicro Claim, the Claims Register and the facts and circumstances set forth in the Objection regarding the STMicro Claim.  In addition, I have reviewed the findings of the Debtors' and Wind-Down Debtors' previous claims reconciliation teams, who reviewed the Debtors' and Wind-Down Debtors' books and records and have personally reviewed each of the documents identified in the Objection.  Based upon this review, I submit that the facts and circumstances set forth in the Objection are true and accurate to the best of my knowledge, information and belief.

5.     I have reviewed the Debtors' and Wind-Down Debtors' books and records and the findings of the Debtors' and Wind-Down Debtors' previous claims reconciliation teams and have identified various documents related to the STMicro Claim, including (i) the Standard PO Terms & Conditions, incorporated by reference in the Original P.O.; (ii) the Replacement P.O., Purchase Order Number 4504269988; (iii) a letter of intent dated April 11, 2008 in connection with the purchase of AB06 devices; (iv) the June 23, 2009 STMicro Letter.

6.      I have reviewed the findings of the Debtors' and Wind-Down Debtors' previous claims reconciliation teams, who, in their review of the Debtors' and Wind-Down Debtors' books and records, have identified the Replacement P.O. SAP Screenshot.  Based on my understanding of the  findings of the Debtors' and Wind-Down Debtors previous claims reconciliation teams, the Debtors' business processes, and the Debtors' SAP purchaser order system, the Replacement P.O. SAP Screenshot pertains to information memorialized in the Debtors' SAP purchase order system regarding the Replacement P.O.

7.      Based on my review of the findings of the Debtors' and Wind-Down Debtors' previous claims reconciliation teams and my review of the Wind-Down Debtors' current books and records, the Wind-Down Debtors are currently unable to locate a copy of the NN U.K. P.O. I have reviewed the findings of the Debtors' and Wind-Down Debtors' previous claims reconciliation teams, who, in their review of the Debtors' and Wind-Down Debtors' books and records, identified certain relevant database records and a screenshot related to the NN U.K. P.O., including the SAP P.O. 4502996862 Screenshot.  Based on my understanding of the Debtors' SAP purchase order system and the findings of the Debtors' previous claims reconciliation teams, the SAP P.O. 4502996862 Screenshot reflects the same purchase order as the NN U.K. P.O. and identifies the "Vendor" as "213063 STMicroelectronics" and identifies "Nortel Networks UK Ltd." as the applicable Nortel purchasing entity.

8.      In order to place before the court certain documents relevant to the Objection, annexed to this declaration are true and correct copies of the following documents:

| | |
|---|---|
| **Exhibit 1:** | Replacement P.O., dated August 21, 2009. |
| **Exhibit 2:** | A copy of the AB06 LOI, dated April 11, 2008. |
| **Exhibit 3:** | Standard PO Terms & Conditions, effective as of January 2008. |
| **Exhibit 4:** | June 23, 2009 STMicro Letter |

**Exhibit 5:**    Replacement P.O. SAP Screenshot

**Exhibit 6:**    SAP P.O. 4502996862 Screenshot

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information and belief.

Executed on November 16, 2018

_Mary Cilia_
Mary Cilia
Treasurer for the Wind-Down Debtors

8

**<u>Exhibit 1</u>**



# Purchase order

| Purchase Order No | Order Date: 21/Aug/2009 | Page 1 of 3 |
|---|---|---|
| 4504269988 | Last Change Date: 21/Aug/2009 | |

| Reprint | | |
|---|---|---|

| Supplier Contact: Susanna Garcia | Supplier No: 399142 |
|---|---|

**Supplier:** Stmicroelectronics Inc NV
1310 Electronics Drive
MS2334
CARROLLTON TX  75006-7005
USA
Telephone No: 999-999-9999
Fax No: 972-466-7352

**Ship to:** Jalmex Empresarial, SA de CV
Avenida Periférico Sur # 7980 Nave 1
Parque Tecnológico II.
45600 TLAQUEPAQUE - JAL
MEXICO

**Bill to:** Nortel Networks Incorporated (0501 / 2001)
Attention:  Accounts Payable
P.O. Box 280510
Nashville, TN 37228, US

| Carrier Number/Carrier Name: | Incoterms:<br>FOB Point of Origin | Payment Terms:<br>Net 10 Days | Buyer:<br>EBN Buyer | Telephone No:  999-999-9999<br>Fax: |
|---|---|---|---|---|

| Item No. | Qty | UOM | Part Number/<br>Supplier Part Number | Description | Delivery Date | Last Change Date | UnitPrice | Extended Total |
|---|---|---|---|---|---|---|---|---|
| | | | This Purchase Order (P.O.) is subject to the terms and conditions in the contract between Nortel Networks and your organization. If there is not an applicable contract, this P.O. is subject to the Nortel Networks standard P.O. terms & conditions that may be downloaded from the following url: http://www.nortel.com/prd/regional_purchase_order/index.html | | | | | |
| | | | **PO header text:**<br>"This Nortel Purchase Order is a REPLACEMENT for the original, pre-filing AB06 LOI & P.O. which are being abandoned by Nortel, and so ST has no additional AB06 supply obligations beyond the quantities shown in this Purchase Order."<br><br>Original PO 4503140371. | | | | | |
| 00010 | 184,800 | EA | N0060585<br>E-QMV863-1EF5<br>**Delivery Priority Flag:00** | E-QMV863-1EF5<br>   per      1 EA | 08/28/2009 | 21/Aug/2009 | 2.90 | 535,920.00 |
| 00020 | 11,500 | EA | N0060586<br>E-QMV863ET5<br>**Delivery Priority Flag:00** | E-QMV863ET5<br>   per      1 EA | 08/28/2009 | 21/Aug/2009 | 2.90 | 33,350.00 |
| 00030 | 158,400 | EA | N0060585<br>E-QMV863-1EF5 | E-QMV863-1EF5<br>   per      1 EA | 09/30/2009 | 21/Aug/2009 | 2.90 | 459,360.00 |

| Page Total | | USD | 1,028,630.00 |
|---|---|---|---|

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

| EBN Buyer<br>BUYER | PAMELA TUCKER<br>PURCHASING MANAGER |
|---|---|



**Purchase order**

| | | |
|---|---|---|
| Purchase Order No: 4504269988 | Order Date: 21/Aug/2009<br>Last Change Date: 21/Aug/2009 | Page 2 of 3 |

Reprint

| | |
|---|---|
| Supplier Contact:<br>Susanna Garcia | Supplier No:<br>399142 |

Supplier: Stmicroelectronics Inc NV
1310 Electronics Drive
MS2334
CARROLLTON TX  75006-7005
USA
Telephone No: 999-999-9999
Fax No: 972-466-7352

Ship to:  Jalmex Empresarial, SA de CV
Avenida Periférico Sur # 7980 Nave 1
Parque Tecnológico II.
45600 TLAQUEPAQUE - JAL
MEXICO

Bill to:  Nortel Networks Incorporated (0501 / 2001)
Attention:  Accounts Payable
P.O. Box 280510
Nashville, TN 37228, US

| Carrier Number/Carrier Name: | Incoterms:<br>FOB Point of Origin | Payment Terms:<br>Net 10 Days | Buyer:<br>EBN Buyer | Telephone No: 999-999-9999<br>Fax: |
|---|---|---|---|---|

| Item No. | Qty | UOM | Part Number/<br>Supplier Part Number | Description | Delivery Date | Last Change Date | UnitPrice | Extended Total |
|---|---|---|---|---|---|---|---|---|
| | | | | **Delivery Priority Flag:00** | | | | |
| 00040 | 120,000 | EA | N0060585<br>E-QMV863-1EF5<br>**Delivery Priority Flag:00** | E-QMV863-1EF5<br>per    1 EA | 10/30/2009 | 21/Aug/2009 | 2.90 | 348,000.00 |
| 00050 | 5,000 | EA | N0060586<br>E-QMV863ET5<br>**Delivery Priority Flag:00** | E-QMV863ET5<br>per    1 EA | 10/30/2009 | 21/Aug/2009 | 2.90 | 14,500.00 |
| 00060 | 122,400 | EA | N0060585<br>E-QMV863-1EF5<br>**Delivery Priority Flag:00** | E-QMV863-1EF5<br>per    1 EA | 11/30/2009 | 21/Aug/2009 | 2.90 | 354,960.00 |
| 00070 | 5,000 | EA | N0060586<br>E-QMV863ET5<br>**Delivery Priority Flag:00** | E-QMV863ET5<br>per    1 EA | 11/30/2009 | 21/Aug/2009 | 2.90 | 14,500.00 |
| 00080 | 127,200 | EA | N0060585<br>E-QMV863-1EF5<br>**Delivery Priority Flag:00** | E-QMV863-1EF5<br>per    1 EA | 12/15/2009 | 21/Aug/2009 | 2.90 | 368,880.00 |

| | | |
|---|---|---|
| Page Total | USD | 1,100,840.00 |

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

| | |
|---|---|
| EBN Buyer<br>BUYER | PAMELA TUCKER<br>PURCHASING MANAGER |

# NORTEL

## Purchase order

| | |
|---|---|
| Reprint | |

| Purchase Order No: 4504269988 | Order Date: 21/Aug/2009 | Page 3 of 3 |
|---|---|---|
| | Last Change Date: 21/Aug/2009 | |

| Supplier Contact: Susanna Garcia | Supplier No: 399142 |
|---|---|

Supplier: Stmicroelectronics Inc NV
1310 Electronics Drive
MS2334
CARROLLTON TX 75006-7005
USA
Telephone No: 999-999-9999
Fax No: 972-466-7352

Ship to: Jalmex Empresarial, SA de CV
Avenida Periférico Sur # 7980 Nave 1
Parque Tecnológico II.
45600 TLAQUEPAQUE - JAL
MEXICO

Bill to: Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228, US

| Carrier Number/Carrier Name: | Incoterms: FOB Point of Origin | Payment Terms: Net 10 Days | Buyer: EBN Buyer | Telephone No: 999-999-9999 Fax: |
|---|---|---|---|---|

| Item No. | Qty | UOM | Part Number/ Supplier Part Number | Description | Delivery Date | Last Change Date | UnitPrice | Extended Total |
|---|---|---|---|---|---|---|---|---|
| 00090 | 6,500 | EA | N0060586 E-QMV863ET5 **Delivery Priority Flag:00** | E-QMV863ET5 per 1 EA | 12/15/2009 | 21/Aug/2009 | 2.90 | 18,850.00 |

Acknowledgement date _____Supplier Signature _____
BEGIN - Rel 5.0 - 10/04 - Add Text to bottom of every PO

THE SUPPLIER IS RESPONSIBLE TO ENSURE THAT THIS ORDER IS FILLED TO THE CURRENT SPECIFICATION INCLUDING ANY DRAWINGS & NPS (NORTEL NETWORKS PROCUREMENT SPECIFICATIONS) APPLICABLE TO ANY NORTEL NETWORKS PART NUMBERS ORDERED. IF THERE IS ANY UNCERTAINTY, SUPPLY MANAGEMENT IS TO BE CONSULTED.

| | | | |
|---|---|---|---|
| Page Total | | USD | 18,850.00 |
| Total Amount | | USD | 2,148,320.00 |

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

| EBN Buyer BUYER | PAMELA TUCKER PURCHASING MANAGER |
|---|---|

**<u>Exhibit 2</u>**

**From:** Rocco Volpe [roccovo@nortel.com]
**Sent:** Friday, April 11, 2008 2:31 PM
**To:** robert.stennett@st.com; wayne.gaebel@st.com; giovanni.cogliati@st.com; flavio.benetti@st.com
**Cc:** Scott Kennedy; Rocco Volpe; Mark Savage; Mark Kot; Bonnie Iacono; Barry Murash
**Subject:** LOI for AB06 ASIC

On behalf of Nortel Networks, we are issuing to ST Micro this Letter of Intent to assume responsibility for the liabilities associated with the expectation that Nortel will require AB06 ASICs - *-QMV863-** ( * = RoHS, non-RoHS, ** = PLCC, TQFP ) in the combined quantity = *3,682,924*. This quantity is  an aggregate of  *577,500* pieces already on order, ( AS OF 4/4/2008 ), through either our Tier1 EMS partners of other OEM/ODM suppliers to Nortel, plus an incremental *3,105,424* that are yet to be placed onto purchase order either by the parties indicated previously, or by Nortel Networks directly.  ALL orders either via one of the parties indicated previously or by Nortel Networks directly, will be placed onto ST Micro before the Last Order Entry Date of July, 21, 2008 indicating the specific " Flavor / CPC version " of the AB06 required.

The "Requested Delivery Dates" for finished goods versions of AB06 ASIC will be advised on each of the forthcoming incremental Purchase Orders with the "Requested Delivery Date" being 12/31/2009 or sooner per ST - PTN MMC-CID/08/3383 dated 1/21/2008.  At no time will ST Micro ship finished goods AB06 ASICs sooner than the "Requested Delivery Dates" indicated on the Purchase Orders or subsequent "Change Order" requests as long as the "Requested Delivery Date" is or is earlier than 12/31/2009.

If Nortel or Nortel's Tier1, EMS or OEM/ODM partners DO NOT place incremental  LTB PO's for the combined quantities totaling *3,105,424* by July 21st, 2008 Nortel will issue a Liability PO in August, 2008 to cover the value of ANY AND ALL WIP that ST may have started to cover the LTB quantity of *3,105,424*

If a liability P.O. is required due to insufficient order placement equaling of LTB LOI quantity, Nortel agrees that the liability PO will be immediately invoiced for the full value of the WIP materials and Nortel will pay this invoice based on Net 30 payment terms.

Best Regards,
Rocco


**Rocco Volpe, Jr**
**Enterprise Supply Chain Leader**
**Nortel Networks**
**Office: 919 905 2842**
**Cell:  919 257 3635**


=

**Exhibit 3**

**NORTEL NETWORKS INC. ("PURCHASER") TAX CODE GENERAL GUIDELINES**
**Conversion of A/P-United States Sales/Use Tax**
The following is a list of the requirements for the United States sales/use tax reporting for the Nortel Networks tax group.
The three digits that will be used on the P.O.'s are described below:
**First Digit – United States**
**U** US No Federal taxes
**Second digit – Represents whether State/Local tax is appropriate or not**
**T** State/Local Tax Applicable
**E** State/Local Tax Exempt
**Third digit – Represents special purchases taxing conditions by North Carolina (NC) direct pay**
**permit holder (codes 0-3)**
0 North Carolina (NC) ship to; No tax due on purchases.
1 North Carolina (NC) ship to; Single Article greater than $8,000. Tax rate of 1%, $80 Max Tax
2 North Carolina (NC) ship to; Tax rate at 1% of invoice
3 North Carolina (NC) ship to; Taxable at Full Rate
4 TN (NASH) ship to; Single Article Limit greater than $1600 (per line limit, per unit price greater than
$1600)
5 Taxable (Ship to Destination State except for codes 0-3)
6 Exempt (Ship to Destination Any State)
**PURCHASE ORDER TERMS AND CONDITIONS**
**1. Acceptance**
Supplier's acceptance of this Purchase Order ("Order") shall be evidenced by the returning of a signed copy of this Order to Purchaser, the shipment of goods or the commencement of services to be performed hereunder. Purchaser shall not be bound by any provision, printed or otherwise, at variance or in addition to the terms of this Order, that may appear on any quotation, acknowledgement or other form used by Supplier unless any such provision is expressly accepted in writing by Purchaser.
**2. Price and Payment**
Purchaser shall not be invoiced at a price(s) higher than stated on the face of this Order ("Price(s)"). Supplier represents that the Price(s) is (are) the lowest price(s) charged by Supplier to buyers of a class similar to Purchaser under similar terms of purchase. Any reduction made by Supplier in the price of the goods or services covered by this Order which is instituted before delivery of the goods or commencement of services shall be applicable to this Order.  Purchaser will pay Supplier within 70 days measured from the later of Purchaser's acceptance of the goods and/or services or Purchaser's receipt of an undisputed invoice therefore.  Notwithstanding the preceding, conditioned upon the advance approval of Purchaser's finance group, on the face of this purchase order Purchaser may agree with Supplier to a special term of payment that will apply to this purchase order only.  Such different payment term will supersede the payment period applicable under the preceding sentence, but will not supersede any payment term in a master agreement, if any, between the parties under which this purchase order is being issued
**3. Taxes and Charges**
Unless otherwise stated on the face of this Order, the Price(s) is deemed to include (a) all applicable federal, state and local taxes and (b) the charges for insurance, import duties, packaging, transportation and any other fee or expense relating to the provision of the goods or services ordered.  If required by law, Purchaser will withhold taxes and pay them over to the applicable taxing authority, in which case Purchaser will pay to Supplier the balance of the price, after deducting the withholding.
**4. Changes**
Purchaser may, at any time by written amendment to this Order, increase or decrease the ordered quantities of the goods or services or make a change in any one or more of the following:
(a) applicable drawings, designs and/or specifications when the goods to be furnished are to be specifically manufactured by Supplier in accordance with the Purchaser provided drawings, designs and/or specifications; and/or
(b) method of shipment or packaging; and/or
(c) place or time of delivery or performance.

If such a change causes an increase or decease in the cost of performance or the time required for performance of this Order, an equitable adjustment shall be made and this Order shall be modified in writing accordingly. Supplier shall be deemed to have waived any claim for adjustment unless asserted in writing accompanied by an estimate of the cost or the additional time required for performance of the change within 20 days from the receipt by Supplier of notification of the change.

**5. Setoff**

Upon notice to Supplier, Purchaser may deduct from the amount due Supplier under this order either damages for any breach of this Order or amounts otherwise due Purchaser from Supplier, irrespective of whether the deduction is related to the goods or services covered by this Order.

**6. Termination, Breach and Time for Performance**

Purchaser may at any time, whether or not Supplier is in breach hereof, terminate this Order in whole or in part by written notice or verbal notice confirmed in writing. If this Order is terminated without breach by Supplier, Supplier shall be entitled solely to reimbursement of the reasonable cost Supplier has incurred in the performance of this Order prior to the effective date of termination, but in no event shall such reimbursement exceed the Price(s). If this Order is terminated by Purchaser for Supplier's breach or as a result of force majeure (as specified in paragraph 13) affecting Supplier's performance, including, but not limited to Supplier's delay in delivery of the goods or performance of services, Supplier shall not be entitled to any reimbursement. In addition to any other remedy provided in this Order for a breach of any term of this Order, Purchaser may pursue cumulatively against Supplier any or all available remedies at law or equity. In no event shall Purchaser be liable for any incidental, indirect or consequential special or punitive damages of any nature whatsoever, including loss of income, profit, use, or goodwill, for any reason whatsoever.

**7. Assignment/Subcontracting**

Supplier shall not (a) assign this Order, any interest herein or any rights hereunder or (b) subcontract any obligation to be performed hereunder, without the prior written consent of Purchaser.

**8. Indemnification and Insurance**

Supplier shall indemnify for and save Purchaser and/or its customers harmless against any loss, damage, liability or claim (including, without limitation, costs and attorney's fees in connection therewith) that may be made alleging that the goods and/or deliverable items or work product in connection with services infringe any patent, trademark, trade secret, copyright or any other proprietary right, and against any loss, damage, liability or claim attributable to the possession, use or transfer of the goods or the performance of services (including, without limitation, costs and attorney's fees in connection therewith) that may be suffered by and/or be the subject of a claim by a third party against, Purchaser and/or its customers, including, without limitation, any loss, damage, liability or claim arising from injury or death to persons or damage to property due to Supplier's breach of the terms of this Order or Supplier's negligence or due to strict liability or negligence per se.  Supplier shall, prior to commencement of performance, transmit to Purchaser a certificate of insurance affirming that Supplier has the following types of insurance and minimum coverage amounts:

(a) Statutory worker's compensation and occupational disease;

(b) Employer's liability - $1,000,000.00;

(c) General liability, including contractor's protective liability and blanket contractual liability for both personal injury and property damage - $5 million; and

(d) Automobile liability, including non-owner automobile liability for both personal injury and property damage - $1 million.

This certificate of insurance shall name Purchaser as an additional insured and contain a clause reading as follows: "The insurance provided by these policies shall not be materially changed or cancelled without at least 30 days prior written notice being given to Director, Risk Management, Nortel Networks Inc., 4008 E. Chapel Hill-Nelson Highway, Research Triangle Park, NC 27709. At Purchaser's written request, Supplier shall maintain greater coverage amounts or other types of insurance."

**9. Laws and Regulations**

Supplier shall comply with and obtain all applicable governmental licenses and permits relating to the goods or services, and Supplier shall comply with and shall assist Purchaser in complying with all applicable laws and governmental orders and regulations in effect at the time of delivery(ies) or performance of services, including without limitation, (a) the following United States laws and regulations: Comprehensive Environmental Response, Compensation and Liability Act of 1980, Consumer Product Safety Act, Toxic Substances

Control Act, Occupational Safety and Health Act of 1970, Radiation Control for Health & Safety Act of 1968, Resource Conservation and Recovery Act of 1976, Clean Air Act, Clean Water Act, including the following obligations under the following U.S. Equal Employment Opportunity /Affirmative Action/Employment regulations: 41 C.F. R. §§60-1.4(a), 60-250.5(a), 60-741.5(a) and 29 C.F. R. part 470. and,

(b) the following European Union Environmental Directives: Eco-design of Energy Using Product (EuP), Waste from Electrical and Electronic Equipment (WEEE) directive and Restriction on Use of Certain Hazardous Substances (RoHS). With respect to the RoHS Directive, Seller must be able to demonstrate to Nortel Network's satisfaction that no lead, hexavalent chromium cadmium, mercury or polybrominated biphenyls (PBB)/polybrominated diphenyl ethers (PBDE) are present in any product covered by the ROHS Directive used or provided by Seller in providing the Products in the EU, except where exemptions allowing the use of such substances apply under applicable law. Company reserves the right to inspect the Seller's facilities to ensure compliance with laws. Supplier hereby indemnifies, defends, and holds Company harmless from all losses, liabilities, fines, penalties, costs and expenses (including reasonable legal fees) in connection with any claim or proceeding made by any customer, governmental body or other third party resulting from any non-compliance by Supplier with laws, orders and/or regulations (e.g., the WEEE and RoHS directives). Supplier understands that failure by Supplier to follow requirements mandated by law, order or regulation may expose Purchaser and Purchaser employees to criminal liability and as a consequence any failure may therefore be considered as a material breach of the terms governing this Order.

**10. Disclosure of Information**

Unless otherwise expressly agreed to in writing, all information disclosed by Purchaser to Supplier or to which Supplier otherwise obtains access in the course of performance of this Order shall be maintained in confidence by Supplier, shall remain Purchaser's property and shall be returned to Purchaser upon request. Supplier shall not disclose any such information to third persons without the prior written consent of Purchaser. Such information shall be used by Supplier solely for purposes of performance of this Order. Any Purchaser intellectual property or proprietary information provided to Supplier under this Order may be used only for purposes of providing goods and/or services under this Order.

**11. Notice**

Any notice to be given hereunder shall be given in writing, postage prepaid and shall be effective when deposited in the U.S. mail.

**12. Use of Purchaser's Name**

Supplier shall not in any advertising, sales promotion materials, press releases, public statements or any other publicity matters use the name of Purchaser. Purchaser's parent, any affiliate or subsidiary of Purchaser or any variation thereof or language from which the connection of said names may be implied without Purchaser's prior written approval.

**13. Force Majeure**

Neither Purchaser nor Supplier shall be liable for delays due to causes beyond the control and without the fault or negligence of the party whose performance is affected, including, but not limited to, acts of God, the public enemy or the government, fires, floods, freight embargoes or unusually severe weather. In the event any such cause affects Supplier's performance for a period of 10 or more days, Purchaser shall have the right to terminate this Order for its convenience pursuant to paragraph 6.

**14. Governing Law**

This Order shall be interpreted and construed in accordance with the laws of the state/province and country in which the goods are delivered or services are performed, notwithstanding its rules on conflict of laws. The parties agree that this order shall not be subject to the United Nations International Sale of Goods Contracts Convention.

**15. Paragraph Headings**

Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

**16. Waiver**

The failure of a party to claim a breach of any term of this Order shall not constitute a waiver of such breach or the right of such party to enforce any subsequent breach of such term.

**17. Purchases Pursuant to Master Agreement**

In the event the terms of this Order conflict with the terms of any master purchase and sale agreement or master services agreement between Purchaser, the parent of Purchaser or any affiliate or subsidiary of Purchaser and Supplier for the purchase of the goods or services ordered hereunder, the terms of the master purchase and sale agreement or master services agreement shall take precedence.

**18. Entire Agreement**

This Order constitutes the entire agreement between the parties on the subject matter hereof and supercedes all prior agreements, communications and understandings of any nature whatsoever, oral or written. This Order may not be modified or waived orally and may be modified only in a writing signed by a duly authorized representative of the party to be charged with an obligation under such modification. Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

**19. Business Ethics** – by its acceptance of this Order Supplier represents that as a company it conforms to Purchaser's published supplier business conduct guidelines and standards, as they may be revised from time to time, and which guidelines and standards Supplier  may access at Purchaser's web page at Nortel.com.

**20. Time of the Essence**

Time is of the essence in all matters relating to this order. Time shall remain of the essence in all cases of force majeure.

**GOODS –** If this Order is for goods, the following paragraphs are also included in this Order:

**G1.Quantity**

Unless otherwise specified on the face of this Order, each Order shall be shipped complete. Purchaser shall not be obligated to accept any shipment of goods in excess of the quantity specified in this Order. Any excess quantity will be held at Supplier's risk and expense for a reasonable time awaiting return shipping instructions from Supplier. Risk of loss and return shipping charges for any excess quantity shall be borne by Supplier.

**G2.Warranty**

Supplier warrants that for the period of one year or such other period specified on the face of this Order following acceptance of the goods that they (a) shall conform to the description and specifications as provided on the face of this Order, (b) shall be free of any liens or encumbrances, (c) shall be of new material and good workmanship, merchantable and free from both defects and (d) shall be fit for the purposes intended. All goods which use electrical power shall comply with Underwriter's Laboratory (UL) requirements. In the event Supplier breaches any warranty, Supplier shall promptly remove any such liens and encumbrances, repair or replace the defective or nonconforming goods at no cost to Purchaser. In the event Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

**G3.Special Products**

Unless otherwise provided on the face of this Order, any drawings, special dies, tools, patterns or equipment required for the manufacture of the goods shall be furnished by Supplier and at no cost to Purchaser. Purchaser, at its option, may at any time reimburse Supplier for Supplier's reasonable cost for such drawings, dies, tools or patterns, and shall as a result, become the owner and entitled to possession of same upon Purchaser's request thereof.

**G4.Title/Risk of Loss**

Title and risk of loss or damage to the goods shall pass to Purchaser when the goods are delivered based on the Incoterm indicated by Purchaser on the face of this Order.

**G5.Delivery**

Goods delivered prior to the reported delivery date shall, at Purchaser's option, not be required to be accepted by Purchaser and shall be returnable to Supplier at Supplier's sole risk and expense.

**G6.Free Trade Certificates of Origin**

Supplier shall determine eligibility of all goods for preferential treatment under any applicable trade treaty, including but not limited to the North American Free Trade Agreement ("NAFTA"). If goods qualify, Supplier shall prepare and provide a certificate of origin or other appropriate documentation to Purchaser. Purchaser may withhold payment of Supplier's invoices pending receipt of such documentation for eligible goods.

**G7.Packing**

All goods shall be suitably packed for shipment to prevent damage.

**SERVICES –** If this Order is for services, the following paragraphs are also included in this Order:

**S1.Warranty**

Supplier warrants that for the period of one year or such other period specified on the face of this Order following the completion of the services that the services and/or any deliverable items or work product in

Revised 1/08

connection with services shall (i) conform to the description of the services ordered and (ii) be performed in a professional manner conforming to generally accepted practices for the performance of such services. In the event within one year or such other period specified on the face of this Order after the completion of the services the deliverable items or work product thereof is or becomes defective, Supplier at no cost to Purchaser shall correct such defect.

Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

**S2. Services to be Rendered at Purchaser's Premises**

Supplier shall take such steps as may be necessary to prevent personal injury or property damage during the performance of the services. Purchaser reserves the right for any reason to require Supplier to remove any employee of Supplier, its agents or subcontractors, performing at Purchaser's premises and have Supplier replace such individual with an employee acceptable to Purchaser.

**S3. Security Rules/Procedures**

Supplier shall comply with all rules and procedures in effect at the site where the services will be performed. Purchaser may, at its discretion, require Supplier to implement and maintain a drug and alcohol procedure ("DAP") for those of its employees who will or may be assigned to perform services hereunder. If Purchaser elects to do so, Supplier's DAP shall be equivalent to Purchaser's DAP and shall be subject to Purchaser's approval, and Supplier at its expense, shall cause each of its employees who will or may be assigned to perform services to be tested prior to assignment for the illegal use of drugs, in accordance with Purchaser's DAP. Supplier shall not assign any person to perform services who refuse to be tested or whose test results are positive. A copy of Purchaser's DAP may be obtained upon request.

**S4. Disruption of Business**

Unless otherwise specified on the face of this Order, services shall be provided during Purchaser's normal workday and be provided with minimum disruption to Purchaser's business operations. Supplier shall be responsible for all cleanup costs and costs of restoring Purchaser's premises to its original condition.

**S5.Waiver of Lien**

At Purchaser's request, Supplier shall, prior to being entitled to receive payment, supply Purchaser with evidence of payment in full of Supplier's employees, suppliers and/or subcontractors.

**S6. Independent Contractor**

Supplier shall provide the services as an independent contractor and not as an agent, servant or employee of Purchaser.

**S7. Title**

Supplier hereby sells, transfers, assigns and conveys to Purchaser all the right, title and interest to all the results and/or items produced or to be produced exclusively for Purchaser by Supplier by performance of the services, including, without limitation, all copyrights, right to create derivative works, patents, trademarks, trade secrets, mask works and any other intellectual property rights pertaining thereto, and agrees to execute, and to have its employees and subcontractors execute, without additional charge to Purchaser, any documents required to evidence and/or secure Purchaser's exclusive ownership therein in any and all countries.   To the extent that results and/or items produced exclusively for Purchaser as part of services contain property owned by Supplier, Supplier hereby grants Purchaser a non-exclusive, royalty-free license to utilize such Supplier owned property, but only as embodied in the results or items produced as part of the services.

**Exhibit 4**

--- ST Confidential ---



**STMicroelectronics, Inc.**                                    June 23, 2009

**To**:  Nortel Networks
Mr. Jerry Carver,
Supplier Relationship Manager

Subject: New AB06 Life Time Buy Proposal

Dear Jerry,

In our last AB06 conference call, Nortel acknowledged that the pre-filing Letter of Intent (LOI) and subsequent Non-Cancellable, Non-Returnable (NCNR) Purchase Order for a Life Time Buy (LTB)supply of custom, AB06 ASIC's were abandoned when Nortel rejected the 1Q09 shipment of AB06 product.  Since that time, Nortel and ST have been working to identify a mechanism for support of Nortel's future demand for this custom ASIC.

In our most recent conference call about this topic, ST agreed to provide a new proposal for supply of AB06 ASIC's. This document (ST's proposal) takes into account several risk factors including: the uncertainty of future AB06 demand; aging of WIP and the uncertain viability of old, unsupported test equipment.

Please review and advise Nortel's support for the following AB06 supply proposal:

- Nortel will issue, before mid-July, a new P.O. for the TOTAL NET DEMAND  of 330 Kpcs of AB06 product at the original price of U.S.$2.90 each,  with requested ship date(s) for all product in 2009 (no deliveries in 2010).

- ST requires that Nortel advise, before the end of June, Nortel's agreement to ONE of the following three options for dealing with the ~2.5 Million units of WIP.

  o Agree to honor the original agreement by taking all WIP as finished AB06 product, at $2.90 each, by year-end 2009. (Requires a New P.O.) OR,

  o Agree to restructure our deal by signing a new agreement to take all WIP as finished AB06 product, at a higher price of $3.90 each, at a rate of 625 Kpcs in each quarter of 2010. (Requires a new P.O.) OR,

--- ST Confidential ---

- o Default to placing SPOT BUYS for AB06 product in 2010 (to a limit of ~ 2.5 million units) for shipments within 2010. Because the LTB period will have expired at the end of 2009, ST will be under no obligation to support any demand in 2010.
  - Each such SPOT ORDER would be AT A MUCH HIGHER PRICE (to be determined based on order quantity and manufacturing costs at the time)
  - Each such SPOT ORDER COULD BE REJECTED BY ST FOR ANY REASON including, but not limited to factors such as: wafer/die material scrapped, product cannot be tested, package cannot be supported, 5/6 RoHS cannot be supported, etc.

To provide a firm commitment to ST, Nortel will need to issue new, post-filing Purchase Orders by mid-July, 2009 for the chosen supply option.

We trust that Nortel can agree to one of the above options for dealing with the AB06 WIP and look forward to a positive reply before the end of June.

Best Regards,

Wayne Gaebel            +1.613.768.9011            wayne.gaebel@st.com

CC    :    Bic-Hai Truong
           Gaurav Saini
           Bonnie Iacono
           Dino DiPerna
           Tim Baird
           Patrick Sullivan
           Wayne Steele
           Norman Dunne
           Jack Foster

**<u>Exhibit 5</u>**

| Standard PO | 4504269988 | Vendor | 399142 Stmicroelectronics Inc NV | Doc. date | 08/21/2009 |
|---|---|---|---|---|---|

| Conditions | Texts | Address | Communication | Partners | Additional data | Org.data | Status |
|---|---|---|---|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| Release completed | Ordered | 726,400 | EA | 2,106,560.00 | USD |
| Released | Delivered | 726,400 | EA | 2,106,560.00 | USD |
| Sent | Still to deliv. | 0 | EA | 0.00 | USD |
| Fully delivered | Invoiced | 740,800 | EA | 2,148,320.00 | USD |
| Fully invoiced | Down paymts | | | 0.00 | USD |

**Exhibit 6**

| Standard PO | 4504269988 | Vendor | 399142 Stmicroelectronics Inc NV | Doc. date | 08/21/2009 |
|---|---|---|---|---|---|

| Conditions | Texts | Address | Communication | Partners | Additional data | Org.data | Status |

| | | | | | |
|---|---|---|---|---|---|
| Release completed | Ordered | 726,400 | EA | 2,106,560.00 | USD |
| Released | Delivered | 726,400 | EA | 2,106,560.00 | USD |
| Sent | Still to deliv. | 0 | EA | 0.00 | USD |
| Fully delivered | Invoiced | 740,800 | EA | 2,148,320.00 | USD |
| Fully invoiced | Down paymts | | | 0.00 | USD |