## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- X

*In re*

Nortel Networks Inc., *et al.*,[1]

      Wind-Down Debtors and Debtor-In-Possession.

-------------------------------------------------------- X

:
:
:
:
:
:
:
:
:
:
:

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**Hearing date: December 18, 2018 at 10:00 a.m. (ET)**
**Responses due: December 7, 2018 at 4:00 p.m. (ET)**

## WIND-DOWN DEBTORS' OBJECTION TO
## THE CLAIMS FILED BY THE AFFILIATES
## AND SUBSIDIARIES OF AT&T CORPORATION

Nortel Networks Inc. ("NNI"), on behalf of itself and certain of its affiliates, as wind-down debtors in the above-captioned cases (collectively, the "Wind-Down Debtors"), hereby objects (this "Objection"), pursuant to section 502 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the proofs of claim filed by "The Affiliates and Subsidiaries of AT&T Corporation" (collectively, "AT&T") against NNI, listed in the Wind-Down Debtors' claims register as claim numbers 71 ("Claim 71"), 384 ("Claim 384"), 539 ("Claim 539"), 5351 ("Claim 5351" or the "Indemnification Claim"), 6057 ("Claim 6057"), 6146 ("Claim 6146") and 7620 ("Claim 7620")

---

[1]     The Wind-Down Debtors in these chapter 11 cases, along with the last four digits of each Wind-Down Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Nortel Networks India International Inc. (8667) remains a debtor-in-possession. Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

(collectively, the "AT&T Claims") and requests an order substantially in the form attached

hereto as **Exhibit A** (the "Proposed Order"), disallowing in full with prejudice, or reducing and

allowing in the amounts set forth on **Exhibit C**, as applicable, the AT&T Claims.   In support of

this Objection, the Wind-Down Debtors submit the Declaration of Mary Cilia in Support of the

Wind-Down Debtors' Objection to the Claims Filed by the Affiliates and Subsidiaries of AT&T

Corporation (the "Cilia Declaration"), attached hereto as **Exhibit B** and incorporated by

reference.

### Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are section 502 of the

Bankruptcy Code and Bankruptcy Rule 3007.

### Background

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel

Networks (CALA) Inc. and Nortel Networks India International Inc., filed voluntary petitions for

relief under chapter 11 of the Bankruptcy Code.[2]  The Office of the United States Trustee for the

District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured

---

[2]      These cases are consolidated for procedural purposes only.  Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes (D.I. 1098), and Nortel Networks India International Inc. ("NNIII") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 26, 2016, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes (D.I. 17090, the cases together, the "Chapter 11 Cases").

Creditors (the "Committee") in respect of the Debtors during the case [D.I.s 141, 142][3], and an ad hoc group of bondholders and a consortium of creditors holding trade claims were organized.

4.      On August 4, 2009, the Court entered an order (the "Bar Date Order") establishing September 30, 2009 at 4:00 p.m. (Eastern Time) as the last date for all creditors holding a "claim" against the Debtors (other than NN CALA and NNIII) to file and serve a written proof of claim, subject to certain enumerated exceptions set forth in the Bar Date Order.[4]

5.      The Debtors' claims, notice and balloting agent, Epiq Bankruptcy Solutions, LLC, has prepared and maintains a register of all proofs of claim filed against the Debtors in these chapter 11 cases.

6.      On December 2, 2009, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Ericsson Sale Order") approving the sale of certain of the Debtors' assets related to the Debtors' GSM business to Telefonaktiebolaget L M Ericsson ("Ericsson") [D.I. 2065].  The Ericsson Sale Order provided for the sale and assumption and assignment of certain Debtor contracts to Ericsson, including certain of the AT&T Contracts (as defined below).

7.      On January 24, 2017, the Court entered its *Findings of Fact, Conclusions of Law and Order Confirming First Amended Joint Chapter 11 Plan of Nortel Networks Inc. and Certain of Its Affiliated Debtors* [D.I. 17795] confirming the *First Amended Joint Chapter 11 Plan of Nortel Networks Inc. and Certain of Its Affiliated Debtors* [D.I. 17795-1] (the "Plan").

---

[3]      Pursuant to the *Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint Chapter 11 Plan of Nortel Networks, Inc. and Certain of its Affiliated Debtors* [D.I. 17795], the Committee was dissolved automatically on the Effective Date (as defined below).

[4]      On December 3, 2009, the Court entered an order establishing January 25, 2010 at 4:00 p.m. (Eastern Time) as the general claims bar date for all creditors holding a claim against NN CALA to file and serve written proofs of claim [D.I. 2059].  On August 16, 2016, the Court entered an order establishing September 19, 2016 at 4:00 p.m. (Eastern Time) as the general claims bar date for all creditors holding a claim against NNIII to file and serve written proofs of claim. [Case No. 16-11714, D.I. 16].

8.      On May 8, 2017 (the "Effective Date"), the Plan became effective according to its

terms.  See *Notice of Entry of Confirmation Order and Occurrence of Effective Date of First*

*Amended Joint Chapter 11 Plan of Nortel Networks Inc. and Certain of Its Affiliated Debtors*

[D.I. 18176].  Pursuant to the Plan, as of the Effective Date, the Plan Administrator is authorized

to wind-down the Wind-Down Debtors' estates, including the resolution of all outstanding

claims.  The deadline for the Plan Administrator to object to unresolved claims, as previously

extended, currently is February 1, 2019 [D.I. 18640].

## The AT&T Claims

### A.      The Indemnification Claim

9.      On September 30, 2009, AT&T filed the Indemnification Claim, asserting certain

indemnification claims against NNI pursuant to certain pre-petition contracts purportedly entered

into between AT&T and NNI by which AT&T agreed to purchase certain Nortel products

(collectively, the "AT&T Contracts").[5]  Specifically, AT&T asserts that, prior to the Petition

Date, AT&T purchased NNI equipment and maintenance for use in AT&T's telecommunication

network and for resale to AT&T's customers in connection with AT&T's telecommunication

services pursuant to the AT&T Contracts, and that, pursuant to such contracts, NNI is obligated

to, among other things, indemnify AT&T against (i) damages or losses caused by NNI

equipment used by AT&T in AT&T's telecommunication network or resold to AT&T's

customers; and (ii) copyright infringement claims made by third parties against AT&T arising

---

[5]      The Indemnification Claim also references certain tax agreements between NNI and AT&T and includes a
reservation of rights by AT&T in any dispute between NNI and AT&T regarding tax refunds owed to NNI or AT&T
pursuant to such agreements.  AT&T has not included any non-conclusory basis for liability for NNI for any specific
claims and in an abundance of caution, NNI objects to such claim and such portion of the claim should be
disallowed.

from NNI equipment resold by AT&T.  See Indemnification Claim, ¶ 2.  Copies of the AT&T

Contracts were not filed with the Indemnification Claim.

10.    In its Indemnification Claim, AT&T references certain litigations, and the costs to

AT&T arising from such litigations, that AT&T asserts without further support give rise to an

indemnification obligation of NNI under the AT&T Contracts, including certain contingent and

unliquidated amounts.  Subsequent to confirmation of Wind-Down Debtors' Plan, in 2017,

counsel to AT&T provided counsel to the Wind-Down Debtors with updated amounts asserted

for its Indemnification Claim, in an aggregate amount of $2,165,729.89.

11.    Pursuant to the Ericsson Sale Order and a subsequent assumption letter dated

April 14, 2010 and executed by NNI, AT&T and Ericsson (the "Ericsson – AT&T Assumption

Letter"), the obligations of NNI under certain AT&T Contracts were assumed and assigned to

Ericsson in connection with the sale of the Nortel GSM business to Ericsson.  A copy of the

Ericsson – AT&T Assumption Letter is attached as Exhibit 1 to the Cilia Declaration.

Specifically, Schedule A of the Ericsson – AT&T Assumption Letter provides that, subject to a

separate letter agreement between Ericsson and AT&T dated April 7, 2010, Ericsson agreed to

assume certain pre-closing liabilities related to third party intellectual property infringement

claims arising from, among others, the following infringement lawsuits:

- *Technology Patents LLC, v. Deutsche Telekom AG et. al.* (Case No. 8:07-cv-03012-DKC, filed Nov. 9, 2007).
- *Aerotel, Ltd. et. al. v. AT&T, Inc. et. al.*
- *On The Go, LLC v. AT&T Mobility LLC, et. al.,* U.S.D.C. Northern District of Illinois No. 1:09-cv-02792 (filed July 9, 2009).

Ericsson – AT&T Assumption Letter, at 7.

The three infringement lawsuits listed above and referenced in the Ericsson – AT&T Assumption

Letter are also identified in the Indemnification Claim as giving rise to NNI's indemnification

obligations to AT&T.  By the terms of the Ericsson – AT&T Assumption Letter, it appears that

any and all valid indemnification claims held by AT&T related to the third-party lawsuits

identified in the Ericsson – AT&T Assumption Letter have been assigned to Ericsson, and are

not obligations of NNI or any other Wind-Down Debtor.[6]

**B.       The Remaining AT&T Claims**

12.      In addition to the Indemnification Claim, AT&T filed six other proofs of claim

against the Debtors: Claim 71, Claim 384, Claim 539, Claim 6057, Claim 6146 and Claim 7620

(collectively, the "Remaining AT&T Claims").  The Remaining AT&T Claims relate to, *inter*

*alia*, certain purported obligations of the Debtors related to certain services purportedly provided

to the Debtors by AT&T, including local and long distance telephone charges.

13.      After a careful review of the Wind-Down Debtors' books and records, the Wind-

Down Debtors have determined that the Remaining AT&T Claims should be disallowed in full

or allowed in the amounts set forth on **Exhibit C**.

**Relief Requested**

14.      For the reasons set forth below, NNI objects to the AT&T Claims and respectfully

requests that the Court enter an order pursuant to section 502(b) of the Bankruptcy Code,

Bankruptcy Rule 3007 and Local Rule 3007-1 substantially in the form attached hereto as

**Exhibit A**, disallowing the Indemnification Claim in full with prejudice and disallowing or

allowing the Remaining AT&T Claims in the amounts set forth on **Exhibit C**.

---

[6]      The Ericsson – AT&T Assumption Letter references a separate letter agreement between Ericsson and
AT&T, dated April 7, 2010.   The Wind-Down Debtors do not have a copy of this separate letter agreement and
reserve all rights with respect to any purported modification of the assumption by Ericsson of the indemnification
obligations identified in the Ericsson – AT&T Assumption Letter.

**Basis for Relief**

15.     Pursuant to section 101 of the Bankruptcy Code, a creditor holds a claim against a bankruptcy estate only to the extent that (a) it has a "right to payment" for the asserted liabilities and (b) the claim is otherwise allowable.  11 U.S.C. §§ 101(5) and 101(10).

16.     When asserting a claim against a bankrupt estate, a claimant must allege facts that, if true, would support a finding that the debtor is legally liable to the claimant.  In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992); In re Int'l Match Corp., 69 F. 2d 73, 76 (2d Cir. 1934) (finding that a proof of claim should at least allege facts from which legal liability can be seen to exist).  Where the claimant alleges sufficient facts to support its claim, its claim is afforded *prima facie* validity.  In re Allegheny Int'l, Inc., 954 F.2d at 173.  A party wishing to dispute such a claim must produce evidence in sufficient force to negate the claim's *prima facie* validity.  Id.  In practice, the objecting party must produce evidence that would refute at least one of the allegations essential to the claim's legal sufficiency.  Id. at 173-74.  Once the objecting party produces such evidence, the burden shifts back to the claimant to prove the validity of his or her claim by a preponderance of the evidence.  Id. at 174.  The burden of persuasion is always on the claimant.  Id.

17.     As discussed above, any purported indemnification obligations arising from the AT&T Contracts with respect to the three lawsuits identified in the Indemnification Claim and addressed in the Ericsson – AT&T Assumption Letter have been assumed by Ericsson pursuant to the Ericsson Sale Order.  AT&T executed the Ericsson – AT&T Assumption Letter and has provided no evidence that the third-party indemnification obligations referenced in the Ericsson – AT&T Assumption Letter were not assumed by Ericsson and are obligations of the Wind-Down Debtors.

18.    Moreover, the Indemnification Claim on its face does not provide a valid legal basis for establishing NNI's liability for the alleged indemnification amounts.  Because such claim purportedly arises from various litigations to which the Wind-Down Debtors are not a party and as to which the Wind-Down Debtors have no personal knowledge or understanding, the Wind-Down Debtors are unable to assess the validity of the AT&T Claim without the supporting documentation that the Wind-Down Debtors have requested from AT&T but which AT&T has not fully provided to date.  Nevertheless, the Wind-Down Debtors have carefully reviewed their books and records, Schedules, the Indemnification Claim, and other relevant documents readily available to the Wind-Down Debtors, and, based on such materials, have found no evidence to support the validity of the amounts asserted by AT&T in the Indemnification Claim.  Without sufficient supporting documentation, the Indemnification Claim fails to allege specific facts that, if true, would be sufficient to support a finding that NNI is liable to AT&T and thus AT&T has failed to establish the *prime facie* validity of the Indemnification Claim.

19.    More than nine years after the Indemnification Claim was filed, it remains unsubstantiated and without any evidentiary basis.  The Wind-Down Debtors have made repeated requests of AT&T over the last several years for documents that could substantiate a basis for the amounts asserted by AT&T in the Indemnification Claim, including documentation regarding additional purported indemnification obligations that were first raised by AT&T after the parties had engaged in initial claim resolution discussions in 2012.  However, as of the date of the filing of this Objection, AT&T has not provided the Wind-Down Debtors with sufficient documentation providing additional detail as to the litigations referenced in the Indemnification

Claim to establish NNI's purported liability or otherwise provided a basis for NNI's alleged liability with respect to the indemnification claims asserted in the AT&T Claim.[7]

20.      Where the Wind-Down Debtors' bankruptcy plan was confirmed and went effective over a year ago, and the Wind-Down Debtors are in the final stages of winding down their estates, the time for AT&T to prove up its claim has long since passed.  Accordingly, the Indemnification Claim should be disallowed in full.  In re Allegheny Int'l, Inc., 954 F.2d at 173-74 (finding that it is the claimant's burden to allege sufficient facts to support the legal liability asserted); In re MK Lombard Group I. Ltd., 301 B.R. 812, 815-17 (Bankr. E.D. Pa. 2003) (reasoning that a claim without supporting documentation or an explanation for the missing documentation is "*proof* of nothing" and disallowing the claim) (emphasis in original); Zolfo, Cooper & Co. v. Sunbeam-Oster Co., 50 F. 3d 253, 262-63 (3d Cir. 1995) (upholding a bankruptcy court's decision to disallow claims for insufficient documentation).

21.      With respect to the Remaining AT&T Claims, the Wind-Down Debtors' have carefully reviewed their books and records and, based on such review and the documentation provided by AT&T in the Remaining AT&T Claims and the Wind-Down Debtors' reconciliation of such documentation with the Wind-Down Debtors' books and records, determined that the Remaining AT&T Claims should be allowed or disallowed as set forth on **Exhibit C**.

---

[7]      Although AT&T has recently provided the Wind-Down Debtors with certain documentation, including AT&T invoices and settlement agreements related to certain of the third-party litigations referenced in the Indemnification Claim and certain of the AT&T Contracts, AT&T has not provided documentation demonstrating that the third-party litigations in which AT&T has been found liable and is seeking indemnification involved Nortel products or services sold to AT&T or any documentation demonstrating the purported proportion of AT&T's third-party litigation obligations for which it claims NNI is liable.  The Wind-Down Debtors understand from AT&T that AT&T expects to provide additional information with respect to these purported obligations and the Wind-Down Debtors reserve all rights with respect to any arguments made by AT&T in connection with such additional information.

## **Adjournment of Hearing**

22.     NNI reserves the right to seek an adjournment of the Hearing on any response to this Objection.

## **Reservation of Rights**

23.     NNI expressly reserves the right to amend, modify or supplement this Objection. Should one or more of the grounds of objection stated in this Objection be dismissed or overruled, NNI reserves the right to object to each of the AT&T Claims on any other grounds that it discovers or elects to pursue.  The Wind-Down Debtors further reserve their rights, objections and defenses with respect to any other proofs of claim that have been filed by AT&T in their cases.

24.     Notwithstanding anything contained in this Objection, nothing herein shall be construed as a waiver of any rights that NNI (or any other Wind-Down Debtors) may have to (a) commence avoidance actions under the applicable sections of the Bankruptcy Code, including without limitation sections 547 and 548 of the Bankruptcy Code, against the Claimants, (b) enforce NNI's right of setoff against the Claimants relating to such avoidance actions, or (c) seek disallowance pursuant to section 502(d) of the Bankruptcy Code of any claims of the Claimants that are subject to such avoidance actions.

## **No Prior Request**

25.     No prior request for the relief sought herein has been made to this or any other court.

## **Notice**

26.     Notice of this Objection has been given via first class mail to (i) the U.S. Trustee; (ii) counsel for AT&T and (iii) each party that has given notice to the Wind-Down Debtors or the Claims Agent requesting inclusion on the Post-Effective Date Rule 2002 Notice List in accordance with section 15.24 of the Plan.  In light of the nature of the relief requested, NNI submits that no other or further notice is necessary.

WHEREFORE, NNI respectfully requests that the Court (i) enter an order substantially in the form attached hereto as **Exhibit A** disallowing the AT&T Claims in full with prejudice, or allowing the AT&T Claims in the amounts set forth on **Exhibit C** attached hereto and (ii) grant such other and further relief as is just and proper.

Dated:  November 16, 2018
        Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

BENESCH, FRIEDLANDER, COPLAN
 & ARONOFF LLP

*/s/ Jennifer R. Hoover*
Jennifer R. Hoover, Esquire (No. 5111)
Kevin M. Capuzzi, Esquire (No. 5462)
222 Delaware Avenue, Suite 801
Wilmington, DE  19801
Telephone:  (302) 442-7006
Facsimile:  (302) 442-7012
jhoover@beneschlaw.com
kcapuzzi@beneschlaw.com

*Counsel for the Wind-Down Debtors*