**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Nortel Networks Inc., *et al.* | ) | Case No. 09-10138 (KG) |
| | ) | (Jointly Administered) |
| Wind-Down Debtors and | ) | |
| Debtor-In-Possession. | ) | **Related to D.I. 18650** |
| | ) | **Hrg. Date: Dec. 18, 2018 @ 10:00a.m.** |
| | ) | **Response Date: Dec. 12, 2018 @ 4:00p.m. (by Agt.)** |
| | ) | |

**RESPONSE OF THE AFFILIATES AND SUBSIDIARIES OF AT&T CORP.
TO THE OBJECTION OF THE WIND-DOWN DEBTORS TO
CLAIMS FILED BY THE AFFILIATES AND SUBSIDIARIES OF AT&T CORP.**

The affiliates and subsidiaries of AT&T Corp. (collectively, "AT&T"), by and through their undersigned counsel, hereby submit this response to the *Wind-Down Debtors' Objection to the Claims Filed by the Affiliates and Subsidiaries of AT&T Corp.* [D.I. 18650] (the "Claims Objection") filed by Nortel Networks Inc. ("NNI"), on behalf of itself and certain of its affiliates as wind-down debtors in the above-captioned cases, with respect to Claims 71, 384, 539, 5351 (the "Indemnification Claim"), 6057, 6146, and 7620 (together, the "Claims").  In support of this Response, AT&T submits the Declaration of Michael J. Songer in Support of the Response to the Wind-Down Debtors' Objection to the Claims Filed by the Affiliates and Subsidiaries of AT&T Corp. (the "Songer Declaration"), attached hereto as **Exhibit A**, and the Declaration of Christopher M. Arena in Support of the Response to the Wind-Down Debtors' Objection to the Claims Filed by the Affiliates and Subsidiaries of AT&T Corp. (the "Arena Declaration"), attached hereto as **Exhibit B**, and both incorporated by reference.[1]  In support of this Response, AT&T respectfully states as follows:

---

[1]  Several of the documents cited in the Songer and Arena Declarations and herein are confidential and contain sensitive commercial information related to AT&T and Nortel.  As such, these documents have not been submitted herewith.  These documents have all been produced to NNI.

## Preliminary Statement

1.      AT&T does not dispute NNI's allowance of Claims 71, 6057, 6146, and 7620.  Nor does AT&T take issue with NNI's proposed disallowance of Claims 384 or 539 or the portions of the Indemnification Claim related to the three infringement lawsuits, indemnification for which was assumed by Ericsson as provided in the triparty letter agreement (the "Letter Agreement") attached to the Claims Objection.

2.      The sole claim in dispute is the portion of the Indemnification Claim for defense costs and expenses arising from *Reese v. AT&T, Inc., et al.*, Civil Action No. 2:07-cv-219, E.D. Tex. and the subsequent appeal, *Reese v. Sw. Bell Tel., L.P., et al.*, Appeal No. 2009-1215, Fed. Cir. (the "Reese Litigation").  The Indemnification Claim for the Reese Litigation was not listed in the Letter Agreement as assumed by Ericsson since the Reese Litigation is not based on the Nortel products purchased under the contracts that were assumed and assigned to Ericsson.  NNI asserts that the Indemnification Claim "does not provide a valid legal basis for establishing NNI's liability for the alleged indemnification amounts."  (Claims Obj. ¶ 18.)

3.      AT&T and NNI have been engaged in good faith, arms-length, negotiations with regard to the Claims since April 2017.  During the course of these negotiations, counsel for NNI requested that AT&T produce additional information with regard to the Indemnification Claim, namely, back up for the defense costs and expenses and information as to the allocation of the defense costs and expenses to NNI.  As NNI admits, AT&T provided NNI with updated amounts for the Indemnification Claim, including "invoices . . . related to the third-party litigations."  (*Id.* ¶ 19, n.7.)

4.      But NNI complains that "AT&T has not provided documentation demonstrating that the third-party litigations in which AT&T . . . is seeking indemnification involved Nortel products or services sold to AT&T or any documentation demonstrating the purported proportion

of AT&T's third-party litigation obligations for which it claims NNI is liable." (*Id.*)  To be clear, AT&T did not understand that there was a dispute regarding the involvement of Nortel's products in the Reese Litigation.  In fact, NNI did not request documentation regarding such involvement until November 9, 2018.  AT&T provided an initial round of documentation, including Nortel and AT&T contracts, on November 12, 2018.  Rather than engaging with AT&T to identify the need for additional documents, NNI filed its Claims Objection on November 16, 2018.[2]

5.    As explained herein, Nortel's products were at the heart of the Reese Litigation, as the plaintiff alleged patent infringement based upon the Call Waiting with Caller ID function of a Nortel switch utilized by an AT&T affiliate.  NNI claims that the Reese Litigation is one "as to which the Wind-Down Debtors have no personal knowledge or understanding [and therefore] the Wind-Down Debtors are unable to assess the validity of the AT&T Claim without the supporting documentation," (*id.* ¶ 18), but Nortel was aware of and in fact an active participant in the Reese Litigation.  Nortel was notified of the action during its pendency, actively participated in the litigation, and provided employees as corporate representatives to testify on its behalf during the litigation.  Those employees testified that Nortel had helped develop the Call Waiting with Caller ID function and equipped its switch, sold to AT&T affiliates, with that function.  Nortel executed agreements with AT&T regarding the sale of the switches at issue creating indemnification obligations from infringement actions like the Reese Litigation, and AT&T has documented to NNI the defense costs and expenses actually incurred in successfully defending the Reese

---

[2]    Despite the Claims Objection being filed in the middle of discussions concerning the Claims, NNI served a copy of the Claims Objection only on in house counsel at AT&T by mail.  NNI did not serve or provide the Claims Objection to AT&T's counsel, who they had been in discussion with for some time including in phone calls and emails throughout November 2018.  AT&T and its counsel were not made aware of NNI's Claims Objection until two weeks later, on November 30, 2018, when NNI finally responded to AT&T's November 12 production.

Litigation.  AT&T's Claims should be allowed and the Claims Objection overruled as set forth herein.

## The Reese Litigation

### A.    Defense of the Reese Litigation

6.    On May 31, 2007, an action entitled *Reese v. AT&T, Inc., et al.*, Civil Action No. 2:07-cv-219, was commenced in the Eastern District of Texas against Southwestern Bell Telephone Company ("SWBT"), formerly known as Southwestern Bell Telephone L.P., and others.  (Songer Decl. ¶ 3.)  SWBT is an affiliate of AT&T Corp.

7.    In the Reese Litigation, plaintiff alleged patent infringement by SWBT for its Call Waiting with Caller ID ("CWCID") service.  (*Id.*)  The CWCID service at issue in the Reese Litigation was a functionality of certain switches utilized by SWBT:  Nortel DMS-100 switches and the switches of another manufacturer (the "Second Switch Manufacturer").  (*Id.* ¶ 5.) SWBT's defense in the Reese Litigation focused on the construction of patent claims and the applicability of the patent claims to telecommunications standards utilized by Nortel and the Second Switch Manufacturer in the switches they had sold to AT&T.  (*Id.* ¶ 4-5.)

8.    SWBT vigorously defended the action and obtained a Final Judgment in its favor on December 22, 2008.  (*Id.* ¶ 4)  SWBT also vigorously defended plaintiff's appeal, and the Final Judgment was affirmed by the Federal Circuit Court of Appeals on October 6, 2009.  (*Id.*)

### B.    Nortel's Involvement in the Reese Litigation

9.    AT&T notified Nortel of the existence of the Reese Litigation in 2007.  (Arena Decl. ¶ 5.)  In contemporaneous communications between AT&T and Nortel, AT&T's counsel identified the product at issue and how the Nortel product is implicated by the lawsuit:  "The Amended Complaint [in the Reese Litigation] sent to you recites that the patent-in-suit is directed

toward call waiting caller identification, and the DMS switches perform that function." (*Id.*) Nortel subsequently circulated a joint defense agreement to AT&T asserting that the parties "have common interest in researching, developing, and pursuing defenses and counter claims against Reese [in the Reese Litigation]." (*Id.*)

10.    While not a named party, Nortel was an active participant in the Reese Litigation. Nortel was subpoenaed, and it designated two employees as corporate representatives to testify on its behalf. (Songer Decl. ¶ 6.)

11.    The Nortel employees testified that the CWCID challenged by the Reese Litigation was a functionality of the Nortel DMS-100 switch. (*Id.*) Indeed, the purpose of the Nortel depositions was to provide testimony regarding Nortel's development of the challenged functionality of the Nortel products. (*Id.*) In addition, one Nortel employee testified that "[c]ustomers of the DMS-100 . . . at the time consisted of, you know, the former Bell operating companies." (*Id.*)

## Nortel's Indemnification of AT&T

12.    SWBT purchased Nortel DMS-100 switches from Nortel pursuant to the DMS Family Material and Installation Contract, No. C4113FO between Southwestern Bell Telephone Company and Northern Telecom, Inc. (the "DMS Agreement"). (Arena Decl. ¶ 3.) The DMS Agreement "incorporate[d] the terms and conditions in the General Agreement C0228MO (hereafter, "General Agreement") between the parties [Southwestern Bell Telephone Company and Northern Telecom Inc.]" (*Id.*)

13.    "Clause 14. Infringement" of the General Agreement states that:

> The following terms apply to any infringement, or claim of infringement of any patent, trademark, copyright, trade secret or other proprietary interest based on the manufacture, normal use or sale of any Material and/or services furnished to Buyer under this

Agreement.  Seller shall indemnify Buyer for any loss, damage, expense, or liability that may result by reason of any such infringement or claim . . . .

(*Id.* ¶ 4.)

### The Indemnification Claim

14.    While the terms of the General Agreement require Nortel to indemnify AT&T for *all* defense costs and expenses associated with the Reese Litigation, AT&T elected to apportion the responsibility equally between Nortel and the Second Switch Manufacturer, its other supplier of at issue switches since the defenses with respect to the switches and vendors were overlapping and substantially the same.  (*See* Songer Decl. ¶ 5.)

15.    On September 30, 2009, AT&T filed Claim 5351 for indemnification of defense costs and expenses associated with the Reese Litigation, among others.  The claim states that "AT&T and the Debtors are parties to numerous contracts, including" the General Agreement, defined therein as the "'Bell Agreement #1,'" and the DMS Agreement, defined therein "together with Bell Agreement #1 [as] the 'Bell Agreements.'"  (Proof of Claim No. 5351, attached hereto as **Exhibit C**, at 3.)  The claim states further that "AT&T has certain non-contingent claims against Nortel under the AT&T Contracts including . . . $1,522,525.00 - Nortel's indemnification obligation under the Bell Agreements, based on defense costs and expenses in Reese v. Southwestern Bell Telephone, L.P., et. al, Appeal No. 2009-1215 (Fed. Cir. 2009, *appealed from*, E.D. Tex. 2007)."  (*Id.* at 4.)  The $1,522,525 figure represented defense costs and expenses in the Reese Litigation that AT&T understood was attributable to Nortel as of the date the Claim was filed.  AT&T has subsequently updated this figure to $1,689,382 and provided NNI with back up documentation substantiating the defense costs and expenses.

16.    Together with NNI's proposed treatment of Claims 71, 6057, 6146, and 7620 with which AT&T does not object, AT&T is entitled to total allowed claims in the amount of

6

$1,855,600.43, and the Claims Objection should be overruled with respect to that portion of the Indemnification Claim that relates to the Reese Litigation.

## CONCLUSION

AT&T respectfully requests that the Court allow its Claims in the amount of $1,855,600.43, overrule the Claims Objection to that portion of the Indemnification Claim that relates to the Reese Litigation, and grant AT&T such other relief as the Court deems just and equitable.

Dated: December 12, 2018
Wilmington, Delaware

**ASHBY & GEDDES, P.A.**

 _/s/ David F. Cook_
William P. Bowden (No. 2553)
David F. Cook (No. 6352)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
Telephone: (302) 654-1888
Facsimile: (302) 654-2067
wbowden@ashbygeddes.com
dcook@ashbygeddes.com

-and-

**NORTON ROSE FULBRIGHT US LLP**
David Rosenzweig
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 318-3035
Facsimile: (212) 318-3400
david.rozenzweig@nortonrosefulbright.com

_Counsel to Affiliates and Subsidiaries of AT&T Corp._