# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| NORTEL NETWORKS INC., *et al.,* | § | CASE NO. 09-10138 (KG) |
| | § | |
| *Wind-Down Debtors and Debtor-In-Possession.* | § | (JOINTLY ADMINISTERED) |
| | § | |
| | | Response Deadline: 12/17/18 at 4:00 p.m. (ET) by agreement of the parties. |

## RESPONSE OF STMICROELECTRONICS, INC. TO WIND-DOWN DEBTORS' OBJECTION TO CLAIM NUMBER 5557

STMicroelectronics, Inc. (*"STMicro"*) hereby files its Response (the *"Response"*) to the Objection (the *"Objection"*),[1] of Nortel Networks Inc. (*"NNI"*), and certain of its affiliates, as wind-down debtors (*"Wind-Down Debtors"*) to Claim Number 5557 (*"Claim"*) filed in this case by STMicro and respectfully states:

### Factual Background

1.      STMicro does agree with NNI that the portion of the Claim attributable to the NNI UK invoice is not properly part of its claim against NNI in the U.S. bankruptcy case. STMicro hereby withdraws that part of its claim in the amount of $975,319 without prejudice to STMicro's rights to assert that part of its claim in the NNI UK insolvency proceedings. Accordingly, STMicro devotes the balance of this Response to NNI's contentions that it was released of all liability arising from the AB06 LOI and the Original P.O. through the so-called "Replacement P.O.", or alternatively that NNI's standard terms and conditions limit STMicro's damages.

---

[1]      All terms not defined herein shall have the same meaning as ascribed in the Objection.

2.      Fundamentally, NNI's Objection mischaracterizes the operative agreement that forms the basis of STMicro's Claim in this matter.  The genesis of the Claim arises from the fact that STMicro had made the decision in early 2008 that it was going to close its Carrollton, Texas wafer fabrication site where the AB06 wafer was specially manufactured for NNI.  STMicro had given notice to Nortel of this fact and the parties then entered into negotiations for STMicro to pre-build a very large inventory of the AB06 wafer to satisfy Nortel's long time buy ("_LTB_") needs.  These negotiations then led to Nortel's issuance of the AB06 LOI on April 11, 2008.  In reliance on the AB06 LOI and the purchase orders issued pursuant to the AB06 LOI, STMicro continued to manufacture AB06 wafers at the Carrollton site before the site closed in April 2009.

3.      In the AB06 LOI, NNI "assume[s] responsibility for liabilities associated with the expectation that Nortel will require AB06 ASIC's . . . in the combined quantity [of] 3,682,294." The AB06 LOI goes on the state that "[i]f [NNI] or [NNI's] Tier 1, EMS or OEM/ODM partners DO NOT (sic) place incremental LTB PO's for the combined quantities totaling 3,105,424 by July 21st, 2008 [NNI] will issue a Liability PO . . . to cover the value of ANY AND ALL WIP(sic) that ST may have started to cover the LTB quantity of 3,105,424."  The Original P.O. was not a separate stand-alone agreement as argued by NNI.  Rather, it was only one order made by NNI as part of NNI's obligation to fulfill its LTB obligation as set forth in the AB06 LOI. This is clear from the express terms of the Original P.O. which states on page 1, "[t]his LTB is based on the LOI issued by Rocco Volpe on April/2007(sic).  Total ordered qty is 2,784,400 after factoring out orders placed on EMS."  Per the AB06 LOI, the combined orders between NNI and its EMS parties were to total 3,682,924 pieces of the AB06 chip at a unit price of $2.90 each for a total liability commitment of $10,680,479.60.

4.      Shortly after NNI's bankruptcy filing, NNI refused delivery of the first quarter 2009 shipment of the AB06 which STMicro had manufactured and delivered in accordance with the Original P.O.'s delivery schedule, thus breaching the AB06 LOI and the terms of the Original P.O.  The parties then began negotiating a much smaller purchase order to fulfill NNI's reduced post-filing need for the AB06 chip.  Contrary to NNI's assertion, this smaller post-petition purchase order (the "*Post-Petition P.O.*") was not a "replacement" for the Original P.O.  Rather, it was the parties' joint effort to cover as much of the damages caused by the breach and ultimate formal rejection of the AB06 LOI and the Original P.O. as possible while continuing to meet NNI's post-petition need for this part.  In fact, the Post-Petition P.O. expressly states that the Original P.O is being "abandoned by Nortel".  Nortel carried through with this abandonment by formally rejecting the Original P.O. in the *Twenty-Fifth Notice of Rejection of Executory Contracts And/Or Nonresidential Real Property Lease(s)* [D.I. 2184].

5.      The June 23, 2009 STMicro Letter referenced in the Objection is the genesis of the Post-Petition P.O.  It never indicates any intent on the part of STMicro to release any claim arising from NNI's abandonment of the Original P.O. or to accept the Post-Petition P.O. as a novation of the AB06 LOI and/or the Original P.O.  Rather, the letter notes NNI's purported abandonment of the Original P.O and speaks in terms of a "new" purchase order for NNI's post-petition AB06 needs, not a "replacement".

6.      Ultimately, through a combination of orders placed through NNI's EMS parties, the Post-Petition P.O. and orders that STMicro fulfilled from Avaya (which ST understands purchased the part of NNI's business in which the AB06 was used), from April 2008 through 2010 STMicro sold and was paid for a total of 2,072,200 units of the AB06 device out of the 3,682,924 units that it contracted to manufacture and supply pursuant to the AB06 LOI.  These

sales totaled $6,146,180.00.  Accordingly, STMicro's damages arising from NNI's breach and ultimate rejection of the AB06 LOI and Original P.O. is $4,534,299.60.

7.      STMicro further disputes that NNI's standard terms and conditions which were included with the Original P.O. were accepted by STMicro.  STMicro sent its own standard terms and conditions on the back of its hard-copy invoices that were mailed each time the product shipped per STMicro's standard process.  These standard terms and conditions include the following:

> "Orders accepted by Seller are firm and noncancellable. Seller will not accept cancellations or reschedule of orders, other than for default of Seller or upon payment of all Seller's costs incurred for, and reasonably allocated to, the portion of the work already terminated and/or work in process, in accordance with generally accepted accounting principles, and together with gross profit to Seller at the rate included in the prices set forth in the sale contract with Buyer."

STMicro's standard terms and conditions expressly rejects any conflicting terms and conditions included as part of a buyer's order stating as follows:

> "ORDERS:    ALL ORDERS ARE SUBJECT TO ACCEPTANCE BY CONFIRMATION IN WRITING BY SELLER'S AUTHORIZED OFFICERS. These terms and conditions apply to all quotations made and purchase orders accepted by Seller; they are an integral part of the sale contract between Seller and Buyer.  Whenever these terms and conditions conflict with or are expanded or added to by any terms and conditions of Buyer's order, these terms and conditions shall govern and supersede the terms and conditions of Buyer's order. Seller's failure to object to provisions contained in any communications from Buyer shall not be deemed a waiver of these terms and conditions.  Any changes in the terms and conditions of sale contained herein must be specifically agreed to in writing signed by an authorized officer of Seller before becoming binding on Seller."

## Argument

## I.    The Post-Petition P.O. was Not a Novation or Release of the AB06 LOI and the Original P.O.

8.      NNI's contention that the Post-Petition P.O. was a novation or release of its obligations under the AB06 LOI and the Original P.O. is completely at odds with the parties'

---

actions and the chronology of events before and after NNI's issuance of the Post-Petition P.O. Initially, under Texas law, novation is the substitution of a new agreement between the same parties or the substitution of a new party on an existing agreement. *Honeycutt v. Billingsley*, 992 S.W.2d 570, 576 (Tex. App.-Houston [1st Dist.] 1999, pet. denied). Where a novation occurs, only the new agreement may be enforced. *Id.* To establish a novation, the party raising the defense must prove: (1) the existence of a previous, valid obligation; (2) a mutual agreement of the parties to a new contract; (3) the extinguishment of the old contract; and (4) the validity of the new contract. *RM Crowe Prop.*, 348 S.W.3d at 448 (citing *Vickery v. Vickery*, 999 S.W.2d 342, 356 (Tex. 1999)).

9.      In this case, there was never a mutual agreement to "extinguish the old contract". The only evidence that NNI posits to support its contention that the Post-Petition P.O. was intended to replace and extinguish the existing contract between NNI and STMicro with respect to the AB06 is the use of the term "Replacement" in the Post-Petition P.O. First, this language is unilateral on the part of NNI and there is no evidence that STMicro agreed that the Post-Petition P.O. would extinguish NNI's liability for its breach of the AB06 LOI and the Original P.O. Second, that language must be read in context. The entirety of this sentence reads: "This Nortel Purchase Order is a REPLACEMENT(sic) for the original, pre-filing AB06 LOI and P.O. which are being <u>abandoned by Nortel, and so ST has no additional AB06 supply obligations beyond the quantities shown in this Purchase Order.</u>" (emphasis supplied). Notably, this sentence does not say that NNI is being relieved of its liability for its unilateral breach of the prior agreements. Rather, only ST is relieved of further liability with respect to its supply obligations. Finally, the sentence expressly declares that NNI is taking the unilateral act of "abandoning" the pre-petition

agreements.    Nowhere does it say that STMicro is accepting that abandonment without consequence.

10.    The proper interpretation of this sentence is buttressed by the June 23, 2009 STMicro Letter which preceded the issuance of the Post-Petition P.O.  In the first paragraph of that letter, reference is made to the fact that NNI purportedly abandoned the AB06 LOI and Original P.O. when it rejected the first-quarter 2009 shipment.  Later in the letter, STMicro offers NNI options to address its liability associated with WIP that STMicro had built in reliance on the pre-petition contract.  Nowhere in the June 23, 2009 Letter does STMicro indicate a willingness to simply walk away from the damages it incurred as a result of NNI's purported abandonment of its obligations under the AB06 LOI and the Original P.O.  Even after issuing the Post-Petition P.O. on August 21, 2009, NNI recognized that there had not been a novation or release of the pre-petition AB06 LOI and the Original P.O. because it went on to formally reject that contract [DI 2184].  Further belying any intent on the part of STMicro to accept the Post-Petition P.O. as a release or novation of the pre-petition agreements is the simple fact that STMicro proceeded to file its Claim arising from the pre-petition agreements on September 30, 2009, a little more than a month after the Post-Petition P.O. was issued.

11.    If the Post-Petition P.O. had the effect that NNI claims, there would have been no need to reject the Original P.O. because it would have been subsumed by the Post-Petition P.O. and would no longer be an executory contract.  In this context, NNI's abandonment and subsequent rejection of the Original P.O. are the same thing.  Rejection is the functional equivalent of abandoning the right to compel the contracting party's performance for want of benefit to the estate.  *See In re Miller*, 103 B.R. 353, 354 (Bankr. D.D.C. 1989).  Neither unilateral abandonment or rejection under Section 365 of the Bankruptcy Code causes a contract

to "disappear".  The non-debtor counterparty to the rejected or abandoned contract will have a claim against the estate, subject to certain restrictions, for the value of the debtor's performance under the now breached contract.  *See In re Nat'l Gypsum, Co., 208* F.3d 498, 505 (5th Cir. 2000); *see generally* M. Andrew, *Executory Contracts in Bankruptcy: Understanding "Rejection,"* 59 Univ. Colo. L. Rev. 845 (1988).

12.     STMicro agrees that the sales made to NNI through the Post-Petition P.O. do constitute partial "cover" or mitigation of its damages caused by the abandonment and rejection of the AB06 LOI and the Original P.O.  STMicro invoiced and was paid a total of $5,612,660.00, with respect to AB06 devices sold to NNI or its EMS parties pursuant to the Post Petition P.O. and P.O.s placed by the EMS parties from April 2008 through 2010.  Additionally, STMicro invoiced and was paid a total of $533,520.00 for AB06 devices sold to Avaya in 2010 following Avaya's purchase of certain of NNI's business to which the AB06 was relevant.  Crediting these recoveries against the original obligation of NNI pursuant to the Original P.O. and the AB06 LOI reduces the portion of the Claim attributable to the abandonment and rejection of the Original P.O. to $4,534,299.60.

## II.     Section 2-708 of the Uniform Commercial Code Provides the Measure of Damages Arising from NNI's Breach of the AB06 LOI and the Original P.O.

13.     The conflicting terms in the parties' standard terms and conditions with respect to damages in the event of the buyer's breach cancel each other out.  *See Brochsteins, Inc. v. Whittaker Corp.*, 791 F. Supp. 660 (S.D. Tex. 1992).  Under Texas law, when parties submit conflicting contract terms that are not conditions of acceptance § 2.207 of the UCC requires that all conflicting terms be stricken and replaced by those terms implied by the Uniform Commercial Code.  *Id.* at 661 (citing *Reynolds Metals Co. v. Westinghouse Elec. Corp.*, 758 F.2d 1073, 1076 n. 5 (5th Cir. 1985)).

14. "Under the UCC, when a buyer repudiates the contract before delivery and the goods are specially manufactured without a market, the measure of damages is the profit formula set forth in section 2.708(b)." *SAVA gumarska in kemijska industria d.d. v. Advanced Polymer Scis., Inc.*, 128 S.W.3d 304, 317 n. 6 (Tex. App.—Dallas 2004, no pet.) (citing Tex. Bus. Com. Code § 2.708(b)). *See also Lakewood Pipe of Texas, Inc. v. Conveying Techniques, Inc.*, 814 S.W.2d 553, 555-56 (Tex. App.—Houston [1st Dist.] 1991, no writ) (internal citations omitted).

15. Accordingly, in this case, STMicro's damages for NNI's rejection and breach of the AB06 LOI and the Original P.O. are covered by Article 2 of the Uniform Commercial Code, specifically Section 2-708. Section 2-708 provides in relevant part that the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this Article (Section 2-710), due allowance for costs reasonably incurred and due credit for payments or proceeds of resale. STMicro's Claim, as stated above, adheres to the mandates of Section 2-708. After due credit for payments from resale of the AB06 devices it specially manufactured as ordered by NNI, there remains due to STMicro $4,534,299.60.

## Relief Requested

WHEREFORE, STMicro respectfully requests that the Court overrule Nortel Networks, Inc.'s Objection to its Claim in part as set forth herein and allow the Claim in the amount of $4,534,299.60 and grant STMicro such other and further relief to which it may be entitled.

*[Remainder of page intentionally left blank; signature page follows]*

DATED: December 17, 2018
      Wilmington, Delaware

Respectfully Submitted,

*/s/ Michael J. Merchant*
Michael J. Merchant (No. 3854)
David T. Queroli (No. 6318)
**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
Email:  merchant@rlf.com
      queroli@rlf.com

- and-

J. Mark Chevallier
Texas State Bar 04189170
**MCGUIRE, CRADDOCK & STROTHER, P.C.**
2501 North Harwood, Suite 1800
Dallas, Texas 75201
Telephone: (214) 954-6807
Facsimile: (214) 954-6850
Email: mchevallier@mcslaw.com

**ATTORNEYS FOR
STMICROELECTRONICS, INC.**