## Exhibit 1

Execution version

## SERVER ACCESS AND DISPOSITION AGREEMENT

This **SERVER ACCESS AND DISPOSITION AGREEMENT** (as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof, this "**Agreement**") is dated as of August 12, 2019 and entered into by and among: (i) the U.S. Debtors;[1] (ii) the EMEA Debtors;[2] and (iii) the Joint Administrators[3] (collectively, the "**Parties**" and each a "**Party**").

**WHEREAS**, the U.S. Debtors commenced cases under chapter 11 of title 11 of the United States Code as early as January 14, 2009 (such cases together, the "**Chapter 11 Cases**") in the U.S. Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**");

**WHEREAS**, the EMEA Debtors commenced insolvency proceedings as early as January 14, 2009 (the "**EMEA Administration Proceedings**");

**WHEREAS**, prior to the date hereof, the U.S. Debtors have provided, *inter alia*, certain data and server access and host services to the EMEA Debtors related to the administration of the EMEA Administration Proceedings;

**WHEREAS**, the EMEA Debtors have requested that the U.S. Debtors continue to provide such services to the EMEA Debtors to allow the EMEA Debtors to conclude the administration of the EMEA Administration Proceedings;

**NOW, THEREFORE**, in consideration of the foregoing and the promises, mutual covenants, and agreements set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each Party, intending to be legally bound, agrees as follows:

---

[1]    "**U.S. Debtors**" means, collectively, Nortel Networks Inc., Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Networks (CALA) Inc. and Nortel Networks India International Inc.

[2]    "**EMEA Debtors**" means, collectively, Nortel Network U.K. Limited, Nortel Networks (Ireland) Limited (in administration), Nortel Networks SpA (in administration), Nortel Networks BV (in administration), Nortel Networks Polska Sp z.o.o. (in administration), Nortel Networks (Austria) GmbH (in administration), Nortel Networks Slovensko s.r.o. (in administration), Nortel GmbH (in administration), Nortel Networks France S.A.S. (in administration) and Nortel Networks S.A. (in administration and in *liquidation judiciaire*).

[3]    "**Joint Administrators**" means Alan Robert Bloom, Alan Michael Hudson and Stephen John Harris, as the administrators of all EMEA Debtors except Nortel Networks (Ireland) Limited (in administration), Alan Robert Bloom and David Martin Hughes as Administrators of Nortel Networks (Ireland) Limited (in administration).

1

Execution version

**Section 1.**  **Data Hosting Services**

(a)  Through and until 11:59 p.m. New York City time on October 31, 2019 (the "**Service End Date**"), the U.S. Debtors shall (i) store the SAP Foreign Trade, SAP Business Warehouse, and Sabrix applications on the Zireh0x1, Zireh0x2, and Zireh0xg servers and the centralized data storage, equipmentshare3c6.europe.nortel.com (the "**Servers**") and all related equipment, hardware, clones, extracts, tapes, USB drives, applications, software, data, or other information, as applicable (the "**Related Equipment**"), consistent with prior practice as of the date hereof, (ii) provide remote access to the EMEA Debtors to the Servers and Related Equipment consistent with prior practice as of the date hereof and (iii) use commercially reasonable efforts to respond to reasonable requests made by the EMEA Debtors in connection with the above (collectively, the "**Data Hosting Services**"), provided that the EMEA Debtors may exercise a one-time extension of the Service End Date to December 6, 2019 by providing written notice to the U.S. Debtors of such extension no later than 5:00 p.m. New York City time on October 1, 2019, and any reference to the Service End Date in this Agreement shall be deemed to include any such one-time extension to the extent exercised in accordance with this Section 1. (a). Except as expressly provided herein, the U.S. Debtors shall have no obligation to provide Data Hosting Services or any other services in connection with the Servers or Related Equipment to the EMEA Debtors after the Service End Date.

(b)  In the event the EMEA Debtors determine in good faith that they desire access to the Servers or Related Equipment after the Service End Date, the EMEA Debtors may provide notice thereof to the U.S. Debtors, which notice shall be given in writing to the U.S. Debtors no later than 5:00 p.m. New York City time on September 15, 2019, or where the Service End Date has been extended pursuant to Section 1. (a), no later than 5:00 p.m. New York City time on October 15, 2019. Following the receipt of such notice, the U.S. Debtors shall provide the EMEA Debtors with reasonable assistance, consistent with their duties to their own estates and subject to receipt of payment pursuant to Section 1(c) herein, prior to the Service End Date in connection with the EMEA Debtors' contingency plan with respect to the Servers and Related Equipment (the "**EMEA Contingency Plan**"), which shall be completed no later than the Service End Date. In no event shall the EMEA Contingency Plan or anything else provided herein create, impose, maintain or extend any requirement or obligation of any kind on the U.S. Debtors after the Service End Date.

(c)  The EMEA Debtors shall reimburse all reasonable and documented costs incurred by the U.S. Debtors in connection with the EMEA Contingency Plan promptly upon receipt of a written statement of such costs from the U.S. Debtors; *provided that* the U.S. Debtors shall be entitled, in their discretion, to prepayment of such costs by the EMEA Debtors upon submission of a written estimate of such costs, determined in good faith, to the EMEA Debtors.

Execution version

**Section 2.**  **<u>Disposition of Servers and Related Equipment Following Service End Date</u>.**

(a)     Upon and after the Service End Date, the U.S. Debtors shall have the right, in their sole discretion, to destroy or otherwise dispose of the Servers and Related Equipment without any further notice or obligation to the EMEA Debtors with respect thereto and to take any and all other actions related to or in furtherance of such destruction or other disposition.

(b)     Pursuant to the terms of this Agreement, the EMEA Debtors and the Joint Administrators hereby consent to the U.S. Debtors and their representatives destroying or otherwise disposing of the Servers and the Related Equipment and taking any and all other actions related to or in furtherance of such destruction or other disposition. The EMEA Debtors shall use commercially reasonable efforts to cooperate and assist with the U.S. Debtors' destruction or other disposition of the Servers and Related Equipment.

(c)     Upon and after the Service End Date, the U.S. Debtors shall have no obligation to (i) provide any Data Hosting Services to the EMEA Debtors, (ii) maintain or provide the EMEA Debtors' access to any Servers or the Related Equipment or (iii) take any other action or provide any other service to the EMEA Debtors related to the Servers or the Related Equipment.

(d)     The EMEA Debtors shall reimburse all reasonable and documented costs incurred by the U.S. Debtors in connection with the destruction or other disposition of the Servers and Related Equipment as provided herein promptly upon receipt of a written statement of such costs from the U.S. Debtors, provided that the EMEA Debtors shall not be obligated to reimburse any such costs in excess of US$100,000.00 unless otherwise agreed to in writing by the EMEA Debtors.

(e)     Promptly following the destruction or other disposition of the Servers or Related Equipment, the U.S. Debtors shall provide written confirmation to the EMEA Debtors of such destruction or other disposition and the means of such destruction or other disposition.

Execution version

### Section 3. **Payment for Data Hosting Services**.

(a)     The U.S. Debtors shall be entitled to payment in the amount of US$21,675.00 on a quarterly basis (the "**Quarterly Payment**") in connection with the Data Hosting Services, which amount includes an amount in payment for the U.S. Debtors or their representatives spending up to fifteen (15) hours during such quarter providing the Data Hosting Services. In the event the U.S. Debtors or their representatives spend more than fifteen (15) hours in any given quarter providing the Data Hosting Services, the U.S. Debtors shall be entitled to an additional payment by the EMEA Debtors on account of all such time spent in excess of fifteen (15) hours in such quarter, calculated on an hourly basis at the rate of US$950.00 per hour, promptly upon receipt by the EMEA Debtors of an invoice relating to such work. No credit or rollover of time will be given if less than 15 hours of work are spent in any given quarter.

(b)     Within five (5) business days of the Effective Date (as defined below), the EMEA Debtors shall pay US$102,750.00 to the U.S. Debtors, representing US$59,400.00 owed to the U.S. Debtors by the EMEA Debtors related to the Servers for the period through and including March 31, 2019, and the Quarterly Payments for the period from April 1, 2019 through September 30, 2019. All other payments owed by the EMEA Debtors to the U.S. Debtors shall be paid promptly in U.S. Dollars upon receipt of an invoice of such amounts by the EMEA Debtors to such account as notified to the EMEA Debtors by the U.S. Debtors in writing.

### Section 4. **Agreements of the EMEA Debtors and Joint Administrators**. Each EMEA Debtor, severally and not jointly, and the Joint Administrators, severally and jointly, acknowledge and agree, that:

(a)     as of the date hereof, they have the requisite power and authorization to enter into this Agreement and carry out the transactions contemplated herein, including, without limitation, to grant the consent provided in Section 2(b);

(b)     to their knowledge, no other party's consent with respect to the matters and transactions contemplated by this Agreement is needed for the full performance of such matters and transactions as contemplated herein;

(c)     to their knowledge, no other party has any rights, claims or interests that would conflict with the terms of this Agreement or the execution of the transactions contemplated herein;

(d)     through and until the Service End Date, the EMEA Debtors shall continue and maintain all agreements and contracts between any of the EMEA Debtors and any third-party vendor existing as of the date hereof relating to the Servers and Related Equipment, including, without limitation, that certain contract with Akibia, Inc. (now known as Zensar Technologies) for maintenance and related services;

4

Execution version

(e)     other than as expressly provided herein, the U.S. Debtors shall have no liability to the EMEA Debtors in connection with any action taken (or the failure to take any action) in relation to the subject matter hereof; and

(f)     none of the U.S. Debtors, any representative or agent of the U.S. Debtors, or any other party has given any certification, confirmation, warranty or other representation, expressly or otherwise, with respect to the condition, functionality, capability, or accessibility of the Servers or Related Equipment, and the U.S. Debtors shall have no obligation or liability in connection with any non-functionality or inaccessibility of the Servers or Related Equipment other than as a result of the U.S. Debtors' material failure to comply with its obligations hereunder.

**Section 5.  <u>Conditions to Effectiveness</u>**

(a)     This Agreement shall be effective on the date that each of the following conditions is satisfied or expressly waived in writing by each of the Parties (such date, the "**<u>Effective Date</u>**"):

(i)     execution of this Agreement by each Party; and

(ii)    entry of an order by the Bankruptcy Court approving and authorizing the entry into this Agreement by the U.S. Debtors and authorizing the U.S. Debtors to perform their obligations under this Agreement.

**Section 6.  <u>Notice</u>**

All demands, notices and communications provided for in this Agreement shall be deemed given if in writing and delivered, if contemporaneously sent by electronic mail, courier or by registered or certified mail (return receipt requested) to the following addresses:

(1) If to the U.S. Debtors, to:

c/o Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
United States
Attention: Lisa Schweitzer
Phone +1 212 225 2000
Facsimile: +1 212 225 3999

(2) If to the EMEA Debtors or the Joint Administrators, to:

c/o Herbert Smith LLP
Exchange House
Primrose Street
London

5

Execution version

> EC2A 2HS
> United Kingdom
> Attn: Kevin Pullen, David Coulling and Stephen Conyers
> Phone: +44 20 7374 8000
> Facsimile: +44 20 7374 0888

**Section 7.  <u>Additional Agreement Provisions</u>**

(a)   <u>Prior Agreements</u>.  The Parties agree that all prior work orders and agreements relating to the Servers or Related Equipment between or among the Parties have been satisfied, *provided* that any confidentiality obligations and any obligations expressed to survive expiry or termination under any such work order or agreement shall continue in full force and effect.

(b)   <u>Injunctive Relief</u>.   All remedies available at law or equity, including specific performance, to any Party for a breach of this Agreement by another Party shall be available to the non-breaching Parties.  The Parties further agree that irreparable damage would occur in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached. Accordingly, each of the Parties shall be entitled to equitable relief to prevent or remedy breaches of this Agreement, without the proof of actual damages, including in the form of an injunction or injunctions or orders for specific performance in respect of such breaches.  Each Party agrees, to the extent that such Party is subject to any equitable remedy, to waive any requirement for the security or posting of any bond in connection with any such equitable remedy.

(c)   <u>No Admissions</u>.   This Agreement and any draft thereof shall not constitute an admission of liability or lack thereof by the U.S. Debtors, the EMEA Debtors, or their affiliates, or any other Party, and shall not be admissible as evidence in any court of law or other legal proceeding for any purpose, other than for the purpose of enforcing the Agreement.

(d)   <u>Costs and Expenses</u>.  Each Party agrees to bear its own costs, expenses and attorneys' fees incurred in connection with the negotiations related to and preparation of this Agreement and to not seek from the other Parties reimbursement of any such costs, expenses or attorneys' fees.

Execution version

(e)   <u>Capacity of Joint Administrators</u>.  The Joint Administrators have negotiated and are entering into this Agreement as agents for the EMEA Debtors to which they are appointed, and none of the Joint Administrators, their firm, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever whether on their own part or in respect of any failure on the part of any EMEA Debtor to observe, perform or comply with any of its obligations under this Agreement or under or in relation to any associated arrangements or negotiations.  The Joint Administrators are parties to this Agreement as agents of the EMEA Debtors and in their own capacities solely for the purpose of taking the benefit  of this Section 7(e), the statutory charges under paragraph 99(3) of Schedule B1 of the Insolvency Act 1986 and enforcing the obligations of certain other parties to this Agreement.

(f)   <u>Binding Effect</u>.  This Agreement shall be binding on each Party, its respective agents, administrators, successors (including any receiver or trustee in bankruptcy of any such party) and assigns from the Effective Date.

(g)   <u>Governing Law</u>.  This Agreement shall be interpreted, construed and enforced in accordance with the laws of the State of New York without giving effect to the choice of law provisions thereof that would result in the application of the law of another jurisdiction.

(h)   <u>Jurisdiction</u>.  The Parties agrees that the Bankruptcy Court shall have exclusive jurisdiction over all matters involving or relating to the interpretation, implementation, and enforcement of this Agreement and any disputes arising in connection herewith, and each Party hereby expressly submits to the jurisdiction of the Bankruptcy Court.

(i)   <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement among the Parties and supersedes all prior or contemporaneous written or oral communications, understandings and agreements with respect to the Servers or Related Equipment and the other matters and disputes among the Parties that are addressed herein.

(j)   <u>Amendments and Waivers</u>.  This Agreement may not be amended, supplemented or modified except by a written instrument executed by each of the Parties to this Agreement. No Party shall be deemed to have waived any provision of this Agreement unless such waiver is in writing, and then such waiver shall be limited to the circumstances set forth in such written waiver.

(k)   <u>Non-Severability</u>.  Each of the provisions of this Agreement is an integrated, essential and non-severable part of this Agreement.

(l)   <u>Representative Capacity</u>.  Each person executing this Agreement in a representative capacity represents and warrants that he or she has full power and authority to do so.

7

Execution version

(m) <u>Successors and Assigns</u>. This Agreement shall inure to the benefit of, and shall be binding upon, each Party and its respective agents, successors and assigns.

(n) **<u>Waiver of Jury Trial</u>. Each Party hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in respect of any litigation directly or indirectly arising out of or in connection with this Agreement or any transaction contemplated hereby or thereby. Each Party (i) certifies that no representative, agent or attorney of any other Party has represented, expressly or otherwise, that such other Party would not, in the event of litigation, seek to enforce the foregoing waiver, and (ii) acknowledges that it has entered into this Agreement as a result of, among other things, the mutual waivers and certifications in this Section 7(n).**

(o) <u>Authorization</u>. The US Debtors and the EMEA Debtors represent and warrant, severally and not jointly, and the Joint Administrators warrant, severally and jointly, that as of the Effective Date of this Agreement, they have the requisite power and authorization to enter into this Agreement and carry out the transactions contemplated hereby, provided, however, that in the case of the U.S. Debtors, such power and authorization to carry out the transactions contemplated herein is subject to the granting of such authorization by the Bankruptcy Court.

(p) <u>Manner of Execution</u>. This Agreement may be executed in counterparts, each of which shall be an original, and such counterparts shall be construed together as one instrument. The signature of any of the Parties hereto may be evidenced by a facsimile, scanned email or internet transmission copy of this Agreement bearing such signature.

(q) <u>Further Assurances</u>. The Parties undertake and agree to cooperate in good faith to effectuate the terms of this Agreement.

*[Signature Pages Follow]*

8

Execution version

**IN WITNESS WHEREOF**, the Parties have executed this Agreement on the date first above written.

**The U.S. Debtors**

**Nortel Networks Inc., Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Networks (CALA) Inc. and Nortel Networks India International Inc.**

By: _____

John V. Ray III, *on behalf of Greylock Partners LLC (now Owl Hill Advisory LLC), Plan Administrator for U.S. Debtors (except Nortel Networks India International Inc.) and Principal Officer of Nortel Networks India International Inc.*

**The EMEA Debtors**

Nortel Network U.K. Limited, Nortel Networks (Ireland) Limited (in administration), Nortel Networks SpA (in administration), Nortel Networks BV (in administration), Nortel Networks Polska Sp z.o.o. (in administration), Nortel Networks (Austria) GmbH (in administration), Nortel Networks Slovensko s.r.o. (in administration), Nortel GmbH (in administration), Nortel Networks France S.A.S. (in administration) and Nortel Networks S.A. (in administration and in *liquidation judiciaire*)

By: _____

Alan Robert Bloom, *Joint Administrator for EMEA Debtors*

10

The Joint Administrators

Alan Robert Bloom, Alan Michael Hudson and Stephen John Harris, as the administrators of all EMEA Debtors except Nortel Networks (Ireland) Limited (in administration), Alan Robert Bloom and David Martin Hughes as Administrators of Nortel Networks (Ireland) Limited (in administration)

By:_____

Alan Robert Bloom