**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------X
:
*In re*  :  Chapter 11
:
Nortel Networks Inc., *et al.*,[1]  :  Case No. 09-10138 (KG)
:
    Wind-Down Debtors and Debtor-In-Possession.  :  Jointly Administered
:
:  Hearing date: November 4, 2019, 10:00 AM (ET)
:  Objections due: October 21, 2019, 4:00 PM (ET)
:
------------------------------------------------------------X

**DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR
ENTRY OF AN ORDER APPROVING THE STIPULATION BETWEEN
NORTEL NETWORKS INC. AND THE CALIFORNIA FRANCHISE TAX BOARD**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as wind-down debtors (the "Wind-Down Debtors") and Nortel Networks India International Inc. ("NNIII"), a debtor in possession (collectively, the "Debtors"), hereby move this Court (the "Motion") for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a) and 503 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (i) authorizing NNI's entry into and approving a stipulation (the "Stipulation") with the California Franchise Tax Board ("CFTB" and, together with NNI, the "Parties"), attached hereto as Exhibit B,[2] which resolves CFTB's claims against NNI and grants the Debtors releases as set forth in the Stipulation; and (ii) granting the Debtors such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Wind-Down Debtors in these chapter 11 cases, along with the last four digits of each Wind-Down Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), and Nortel Networks (CALA) Inc. (4226). Nortel Networks India International Inc. (8667) remains a debtor-in-possession. Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Stipulation.

**Jurisdiction**

1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the continuing authority to oversee the implementation of the Plan pursuant to Article 14 of the Plan.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  The statutory bases for the relief requested herein are sections 105(a) and 503 of the Bankruptcy Code and Bankruptcy Rule 9019.

**Background**

3.  On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc. and NNIII, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.[3]  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142],[4] and an ad hoc group of bondholders and a consortium of creditors holding trade claims were organized.

4.  On December 1, 2016, the Debtors (other than NNIII), as well as other affiliated debtors whose cases have since been closed, filed the *First Amended Joint Chapter 11 Plan of Nortel Networks Inc. and Certain of Its Affiliated Debtors* (as subsequently amended, the "Plan") with the Court [D.I. 17501].  An amended version of the Plan, dated January 23, 2017, was filed

---

[3] These cases are consolidated for procedural purposes only.  Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes (D.I. 1098), and NNIII filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 26, 2016, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes (D.I. 17090, the cases collectively, the "Chapter 11 Cases").

[4] Pursuant to the Confirmation Order, the Committee was dissolved automatically on the Effective Date (as defined below).

with the Court [D.I. 17763]. On January 24, 2017, the Court entered the Confirmation Order and confirmed the Plan. The Plan became effective according to its terms on May 8, 2017 (the "Effective Date"). See *Notice of Entry of Confirmation Order and Occurrence of Effective Date of First Amended Joint Chapter 11 Plan of Nortel Networks Inc. and Certain of Its Affiliated Debtors* [D.I. 18176].

**Facts Relevant to this Motion**

5. During the Debtors' Chapter 11 Cases, the Debtors and CFTB have engaged in extensive discussions to resolve claims that CFTB might assert[5] against NNI for the tax years during the pendency of the Debtors' Chapter 11 Cases, including claims arising from the various Nortel business and asset sales approved by the Court and the proceeds of such sales allocated to the Debtors and related matters settled pursuant to the SPSA. Following discussions and correspondence between NNI and CFTB in late 2017 with respect to tax years 2009 and 2010, on January 29, 2018, CFTB issued (i) a Notice of Proposed Assessment proposing to assess a deficiency against NNI in the amount of $3,780,283 for tax year 2009 (the "2009 NPA") and (ii) a Notice of Proposed Adjusted Carryover Amount proposing to reduce NNI's Research & Development Credit by $1,042,021 for tax year 2010 (the "2010 NPACA"). On March 13, 2018, NNI filed a protest of the 2009 NPA and 2010 NPACA.

6. On or around April 30, 2018, the Debtors served CFTB with requests for the determination of tax liability pursuant to section 505(b) of the Bankruptcy Code for all Debtors

---

[5] The Confirmation Order provides that "notwithstanding anything to the contrary in the Plan or this Order requiring the filing of proofs of claim (or other documents) by the Administrative Expense Claims Bar Date or relating to the payment of interest and penalties on Administrative Expense Claims, a claim of the California Tax Franchise Board (the "FTB") that is an expense under section 503(b)(1)(B) and/or (C) of the Bankruptcy Code, including any interest and penalties due thereon under applicable law, shall be paid when due, without the need for the FTB to file a request for payment of such Administrative Expense Claim, a proof of claim or any other document in the Debtors' chapter 11 cases." Confirmation Order ¶ 89. CFTB has not filed any request for payment, proof of claim or any other document in the Debtors' Chapter 11 Cases. As a result, the Parties have endeavored to negotiate the Stipulation as a global resolution of CFTB's claims against the Debtors for tax years 2009, 2010 and 2017.

3

for tax years 2014, 2015, 2016 and 2017.[6]  The statutory deadlines for CFTB to (i) notify the Debtors that their tax returns had been selected for examination pursuant to section 505(b)(2)(A)(i) and (ii) complete such an examination and notify the Debtors of any additional tax due pursuant to section 505(b)(2)(A)(ii) each passed without any such notice from CFTB for tax years 2014, 2015, and 2016.  Accordingly, NNI, its estate, and any successor to NNI were discharged from any tax liability with respect to tax years 2014, 2015 and 2016 pursuant to section 505(b) of the Bankruptcy Code.  CFTB purports to have timely delivered notice to the Debtors on June 21, 2018 that NNI's 2017 tax return had been selected for examination pursuant to section 505(b)(2)(A)(i).[7]

7.     On October 23, 2018, CFTB issued a Provisional Notice of Proposed Assessment relating to tax year 2017 proposing to assess a deficiency against NNI in the amount of $9,668,360 for tax year 2017 (the "2017 Provisional NPA").  CFTB delivered the 2017 Provisional NPA "in an effort to preserve key issues in a pending audit protest related to the debtor's 2009 and 2010 California Corporation Franchise or Income Tax Returns."[8]  NNI filed a protest of the 2017 Provisional NPA on December 14, 2018.

8.     The Wind-Down Debtors and Plan Administrator have the authority to settle the CFTB's claims pursuant to the Plan.  Plan, §§ 2.1, 6.3, 11.4.  Specifically, under the Plan, the Plan Administrator has the authority to "compromise or settle any and all Claims against the

---

[6] The statutory deadline for CFTB to assess any amounts on the Debtors for tax years 2011, 2012 and 2013 under California law had passed as of the date of the Debtors' 505(b) requests and therefore the Debtors had already been discharged of any additional tax liability for such tax years.

[7] See *Declaration of Melanie Monterrubio In Support Of The California Franchise Tax Board's Motion For Entry Of An Order Pursuant To 11 U.S.C. § 505(B)(2) Extending The Time For The FTB To Complete An Examination*, attached as Exhibit A to *Franchise Tax Board's Motion For Entry Of An Order Pursuant To 11 U.S.C. § 505(B)(2) Extending The Time For The FTB To Complete An Examination* (D.I. 18641) (the "CFTB Motion").

[8] CFTB Motion at 3, n.1.

Debtors" and take other actions that are "reasonable, necessary, or appropriate for the implementation of the Plan." Plan, § 6.3(b)(i) and (xiv).[9]

9.  As a result of extensive, years-long negotiations, subject to this Court's approval, NNI has reached a compromise with CFTB as provided in the Stipulation. Importantly, the Stipulation resolves all disputes between NNI and CFTB and CFTB's claims with respect to tax years 2009, 2010 and 2017, and releases claims against the Debtors related to potential tax liability for such tax years. Additionally, as a result of the Stipulation, pending Court approval, the Wind-Down Debtors intend to move forward promptly with the final steps to close their remaining Chapter 11 Cases.

## Relief Requested

10.  By this Motion, the Debtors seek an order, pursuant to sections 105(a) and 503 of the Bankruptcy Code and Bankruptcy Rule 9019, (i) authorizing NNI's entry into and approving the Stipulation, and (ii) granting them such other and further relief as the Court deems just and proper.

## Basis for Relief

11.  Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. Citing this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy." Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) ("Settlements are generally favored in bankruptcy."). Additionally, the Third Circuit has recognized that "[i]n administering

---

[9] Although the Debtors have authority under the Plan and Confirmation Order to enter into the Stipulation without Court approval, the Debtors nevertheless seek approval from the Court, in an abundance of caution, to approve the compromises and releases contained in the settlement.

5

reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts." In re Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (internal quotation marks omitted) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)). And courts in this District have recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. See, e.g., In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

12. The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal (the "Martin Factors"): "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

13. The Debtors respectfully submit that the Martin Factors weigh in favor of approving the Stipulation and request that the Court authorize NNI's entry into the Stipulation. The Stipulation compromises CFTB's claims for tax years 2009, 2010 and 2017 at a substantial discount to the amounts asserted by CFTB in the 2009 NPA, 2010 NPACA, and 2017 Provisional NPA. The Stipulation also provides the Debtors with necessary certainty with respect to CFTB's claims and brings finality to the long-standing disputes between the Parties including all matters related to the Sales and their proceeds. As such, the settlement provides the Debtors with full and final resolution of CFTB's claims, and thereby permits the Debtors to allocate their resources efficiently and direct their attention toward other matters relating to their

Chapter 11 Cases, and in particular to move forward with closing their Chapter 11 Cases after nearly 11 years. Such a resolution brings valuable and significant reductions in cost, time and uncertainty on account of these CFTB's claims and represents the valid, fair and reasonable business judgment of the Debtors.

14. Finally, the interests of the creditors militate in favor of approval of the Stipulation. The Debtors believe that the interests of their creditors are served by the prompt and efficient resolution of CFTB's claims and the avoidance of legal expenses that would be incurred if the Debtors' disputes with CFTB were to be litigated or if other causes of action related to or arising from CFTB's claims were asserted.

15. Accordingly, the Debtors believe, in the exercise of their reasonable business judgment, that NNI's entry into the Stipulation is appropriate and in the best interests of both its estate and its creditors, as it will avoid the potentially substantial and burdensome costs and risks associated with litigating the Debtors' disputes with CFTB, reduce the potential size of claims asserted against the estate by fully resolving all claims that have been or may be brought by CFTB, preserve value of its estate for the benefit of all of its stakeholders and meaningfully advance the Debtors' wind-down process. With the resolution of CFTB's claims, the Debtors will be in a position to close the remainder of the Wind-Down Debtors' Chapter 11 Cases and making appropriate final distributions.

16. In light of the foregoing, the Debtors respectfully seek authorization to enter into the Stipulation and approval of the Stipulation.

**Notice**

17. Notice of the Motion has been given via electronic transmission, hand delivery or first class mail to (i) CFTB; (ii) the U.S. Trustee; and (iii) the Post-Effective Date Notice List maintained in these Chapter 11 Cases. The Debtors submit that under the circumstances no other or further notice is necessary.

**No Prior Request**

18. No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached as Exhibit A hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: October 3, 2019  
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP  
Lisa M. Schweitzer *(admitted pro hac vice)*  
One Liberty Plaza  
New York, New York 10006  
Telephone: (212) 225-2000  
Facsimile: (212) 225-3999  

      -and-  

MORRIS, NICHOLS, ARSHT & TUNNELL LLP  

*/s/ Tamara K. Mann*  
Derek C. Abbott (No. 3376)  
Andrew R. Remming (No. 5120)  
Tamara K. Mann (No. 5643)  
1201 North Market Street, 16th Floor  
Wilmington, Delaware 19899-1347  
Telephone: (302) 658-9200  
Facsimile: (302) 425-4663  

*Counsel for the Wind-Down Debtors and Debtor-in-Possession*