**EXHIBIT B**

*Execution version*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

------------------------------------------------------x

| | |
|---|---|
| *In re* | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
|     Wind-Down Debtors and Debtor-In-Possession. | Jointly Administered |

------------------------------------------------------x

## STIPULATION BETWEEN NORTEL NETWORKS INC. AND THE CALIFORNIA FRANCHISE TAX BOARD

This stipulation (the "Stipulation") is entered into by and between Nortel Networks Inc. ("NNI") and the California Franchise Tax Board ("CFTB") (collectively referred to herein as the "Parties" and individually as a "Party"), with respect to the following:

WHEREAS, on January 14, 2009 (the "Petition Date"), NNI and certain of its affiliated debtors and debtors-in-possession (the "Debtors" or "Wind-Down Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, on January 24, 2017, the Court entered the order confirming the Wind-Down Debtors' *First Amended Joint Chapter 11 Plan of Nortel Networks Inc. and Certain*

---

[1] The Wind-Down Debtors in these chapter 11 cases, along with the last four digits of each Wind-Down Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Nortel Networks India International Inc. (8667) remains a debtor-in-possession. Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

*of Its Affiliated Debtors* (the "Plan," and the order confirming the Plan, the "Confirmation Order") [D.I. 17795];[2]

WHEREAS, the Plan and Confirmation Order provide that, upon the occurrence of the effective date of the Plan (the "Plan Effective Date"), Greylock Partners, LLC (the "Plan Administrator") shall be authorized to administer the wind-down of the Debtors[3] and settle or compromise all claims asserted against the Wind-Down Debtors;

WHEREAS, pursuant to the terms of the Plan, the Plan Effective Date occurred on May 8, 2017;

WHEREAS, following discussions and correspondence between NNI and CFTB in late 2017 with respect to NNI's taxable income under California law for tax years 2009 and 2010, on January 29, 2018, CFTB issued (i) a Notice of Proposed Assessment proposing to assess a deficiency against NNI in the amount of $3,780,283 for tax year 2009 (the "2009 NPA") and (ii) a Notice of Proposed Adjusted Carryover Amount proposing to reduce NNI's Research & Development Credit by $1,042,021 for tax year 2010 (the "2010 NPACA");

WHEREAS, on March 13, 2018, NNI filed a protest of the 2009 NPA and 2010 NPACA;

WHEREAS, on or around April 30, 2018, NNI filed its 2017 California Corporation Franchise or Income Tax Returns;

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Confirmation Order.

[3] Pursuant to the terms of the Plan and Confirmation Order, after the Plan Effective Date, each of the Debtors (other than NNIII) is deemed to be a "Wind-Down Debtor" and the Plan Administrator is authorized to take all actions necessary to wind-down such Wind-Down Debtor, including administering the claims resolution process for such Wind-Down Debtor.

WHEREAS, on or around April 30, 2018, the Debtors served on CFTB requests pursuant to section 505(b) of the Bankruptcy Code for the determination of the Debtors' California state tax liability for tax years 2014, 2015, 2016 and 2017;

WHEREAS, on October 23, 2018, CFTB issued a Provisional Notice of Proposed Assessment relating to tax year 2017 proposing to assess a deficiency against NNI in the amount of $9,668,360 for tax year 2017 with respect to two issues: Bad Debt Expenses and Reversal of Deferred Capital Gain (the "2017 Provisional NPA," and the amounts assessed against NNI in the 2017 Provisional NPA, together with the 2009 NPA and 2010 NPACA, the "CFTB Claims");

WHEREAS, on December 14, 2018, NNI filed a protest of the 2017 Provisional NPA;

WHEREAS, sections 2.1, 6.3 and 11.4 of the Plan authorize the Plan Administrator to settle the CFTB Claims without further notice or Bankruptcy Court approval; and

WHEREAS, following arm's-length negotiations between the Parties regarding the CFTB Claims, and in order to avoid the cost and risk inherent in litigating the CFTB Claims, the Parties have agreed to the settlement and compromise set forth in this Stipulation.

NOW, THEREFORE, for the mutual promises and undertakings set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties stipulate and agree as follows:

1. <u>Incorporation of Recitals</u>. The foregoing recitals are incorporated by reference as if fully set forth herein.

2. <u>Resolution of the CFTB Claims.</u> On the Effective Date (as defined below):

(a) In full and final resolution of the 2009 NPA, CFTB shall be entitled to an allowed Administrative Claim under the Plan against NNI for an adjusted deficiency against NNI in the amount of $1,396,345.00, plus penalties imposed under Revenue and Taxation Code Section 19138 and interest calculated pursuant to Revenue and Taxation Code Section 19101 and 19521 (if applicable) which tax, interest and penalties total $2,475,529.52 as of September 9, 2019 (such deficiency, interest and penalties together, the "<u>CFTB Adjusted Claim Amount</u>").

(b) The 2010 NPACA shall be affirmed, *provided that* no Debtor shall be subject to or required to pay any additional tax liability in connection with the 2010 NPACA, and the 2017 Provisional NPA shall be withdrawn.

(c) The resolution of the CFTB Claims as described in this paragraph 2 shall be granted in full satisfaction of any and all claims or amounts that have been, could have been or could be asserted by CFTB against the Debtors with respect to tax years 2009 and 2010, including, without limitation, for interest and penalties, and CFTB shall not have any further claims of any kind against the Debtors in any respect with respect to such tax years. Furthermore, as a result of the resolution of the CFTB Claims, CFTB shall not have any claims against the Debtors with respect to tax year 2017, including, without limitation, for interest and penalties, in connection with, arising from or related to (i) the Sales, (ii) any transactions contemplated by the SPSA, or (iii) any transactions or issues contemplated or addressed by the

4

2009 NPA, 2010 NPACA, or the 2017 Provisional NPA (such claims collectively described above in (i), (ii) and (iii), the "2017 Provisional NPA Claims").

3. Payment on the CFTB Claims. For purposes of payment of the CFTB Adjusted Claim Amount, within thirty (30) business days following the Effective Date, CFTB shall issue a Notice of Action for tax year 2009 (the "2009 NOA"), which will reflect the CFTB Adjusted Claim Amount. The Parties agree that the 2009 NOA is final, and NNI shall have no appeal rights with the State of California Office of Tax Appeals with respect to the 2009 NOA. The Parties also agree that NNI shall have no right to file a claim for refund of tax, penalties and/or interest paid with respect to the 2009 NOA, including the CFTB Adjusted Claim Amount. NNI shall cause the Debtors, Plan Administrator and/or Disbursing Agent, as applicable, to make a cash payment to CFTB in an amount equal to the CFTB Adjusted Claim Amount within thirty (30) days after the 2009 NOA is received by the Debtors. Such payment shall be governed by the applicable provisions of the Plan and the Confirmation Order.

4. Releases.

(a) Upon the Effective Date and CFTB's receipt of the CFTB Adjusted Claim Amount described in paragraph 3 above, the Parties release and forever discharge each other and their respective current and former affiliates, subsidiaries, shareholders, directors, officers, employees, agents, attorneys, and their personal representatives, successors and assigns, from any and all liability from any claims, defenses, demands, liabilities and obligations, damages, actions, causes of action, setoffs, recoupments, costs and expenses (including, without limitation, attorneys' fees, penalties, and interest), known or unknown, past or present, fixed or contingent, liquidated or unliquidated which the Parties now have or

hereafter may have (i) with respect to tax years 2009 and 2010 and (ii) comprising or with respect to any 2017 Provisional NPA Claims.

(b) **WITH RESPECT TO THE RELEASES PROVIDED HEREIN, THE PARTIES FURTHER ACKNOWLEDGE AND EXPRESSLY WAIVE THE BENEFIT OF ANY STATUTORY PROVISION OR COMMON LAW RULE THAT PROVIDES THAT A RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE PARTIES DO NOT KNOW OR SUSPECT TO EXIST IN THEIR FAVOR AT THE TIME OF EXECUTION, INCLUDING, WITHOUT LIMITATION, THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542.**

5. <u>No Further Claims</u>. Upon the Effective Date, CFTB shall be forever barred from filing or otherwise asserting (i) any further claim or amounts of any kind arising from or relating to tax years 2009 and 2010 including, without limitation, for penalties or interest, against any of the Debtors in the Debtors' chapter 11 cases and (ii) any 2017 Provisional NPA Claim.

6. <u>Binding Effect</u>. This Stipulation shall be effective on the date that each of the following conditions is satisfied (such date, the "<u>Effective Date</u>"): (i) execution of this Stipulation by each Party; and (ii) entry of an order by the Bankruptcy Court approving and authorizing the entry into this Stipulation by NNI. Upon the Effective Date, this Stipulation and the Order approving the Stipulation shall be binding upon any successors or assigns of the Parties, including any trustee or receiver subsequently appointed in the Debtors' chapter 11 cases.

7. <u>Entire Agreement</u>. This Stipulation constitutes the entire agreement between the Parties and supersedes all prior or contemporaneous written or oral communications, understandings, and agreements with respect to the subject matter hereof and this Stipulation cannot be amended except by an authorized written agreement between the Parties.

8. <u>No Admissions</u>. Each Party acknowledges and agrees that nothing in this Stipulation constitutes an admission or concession of any legal issue raised in or relating to the CFTB Claims.

9. <u>Costs and Expenses</u>. Each Party agrees to bear its own costs, expenses and attorneys' fees incurred in connection with the negotiations related to and preparation of this Stipulation and to not seek from each other reimbursement of any such costs, expenses or attorneys' fees.

10. <u>Jurisdiction</u>. The Bankruptcy Court shall retain jurisdiction over the implementation of this Stipulation and any disputes arising hereunder.

11. <u>Manner of Execution</u>. This Stipulation may be executed in counterparts, each of which shall be an original, and such counterparts shall be construed together as one instrument. Facsimile or pdf signatures shall be deemed original signatures.

12. <u>Claims Register</u>. The Debtors, the Debtors' claims agent, Epiq Bankruptcy Solutions, LLC, and the Clerk of the Court are authorized to take all necessary and appropriate actions to give effect to this Stipulation.

*[Remainder of Page Left Intentionally Blank]*

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed this Stipulation.

| NORTEL NETWORKS INC. | CALIFORNIA FRANCHISE TAX BOARD |
|---|---|
| *[signature]* | *[signature]* |
| John J. Ray, III, | Name: David Hunter |
| On behalf of Greylock Partners, LLC | Title: Tax Counsel IV |
| (now Owl Hill Advisory LLC), | |
| Plan Administrator | |
| Dated: 9/25/2019 | Dated: 10/1/19 |

8