IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

--------------------------------------------------------------X
:
In re                                                         :   Chapter 11
                                                              :
Nortel Networks Inc., *et al.*,[1]                            :   Case No. 09-10138 (KG)
                                                              :
    Wind-Down Debtors and Debtor-In-           :   Jointly Administered
    Possession.                                 :
                                                              :   Hearing date: January 27, 2020, 11:00 AM (ET)
                                                              :   Objections due: January 10, 2020, 4:00 PM (ET)
--------------------------------------------------------------X

**MOTION FOR ENTRY OF A FINAL DECREE (I) CLOSING
THE CHAPTER 11 CASE OF NORTEL ALTSYSTEMS INC. AND
(II) TERMINATING CERTAIN CLAIMS AND NOTICING SERVICES**

        Nortel Networks Inc. ("NNI") and certain of its affiliates as Wind-Down Debtors[2] in the above-captioned cases (the "Movant") hereby move (the "Motion") the United States Bankruptcy Court for the District of Delaware (the "Court") for entry of a final decree (the "Final Decree"), pursuant to section 350(a) and 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3022 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3022-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), substantially in the form attached hereto as **Exhibit A**, (a) closing the Chapter 11 Case of Nortel Altsystems Inc.

---

[1]     The Wind-Down Debtors in these chapter 11 cases, along with the last four digits of each Wind-Down Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), and Nortel Networks (CALA) Inc. (4226). Nortel Networks India International Inc. (8667) remains a debtor-in-possession. Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

[2]     Capitalized terms used, but not defined, herein shall have the meaning ascribed to them in the Plan (as defined below).

("Altsystems"),[3] (b) terminating certain claims and noticing services (the "Claims and Noticing Services") provided by Epiq Bankruptcy Solutions, LLC ("Epiq") with respect to the Chapter 11 Case of Altsystems, and (c) granting related relief. In support of this Motion, the Movant respectfully states as follows:

## Jurisdiction

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are section 350(a) and 105(a) of the Bankruptcy Code, Rule 3022 of the Bankruptcy Rules, and Rule 3022-1 of the Local Rules.

## Background

### A. The Chapter 11 Cases

4. On January 14, 2009 (the "Petition Date"), NNI and certain of its affiliates, other than Nortel Networks (CALA) Inc. ("NN CALA") and NNIII, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases were consolidated for procedural purposes only [D.I. 36]. NN CALA and NNIII filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009 and July 26, 2016, respectively, which cases were consolidated and jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I.s 1098, 17090] (the cases together, the "Chapter 11 Cases"). No trustee or examiner has been appointed in the Chapter 11 Cases.

---

[3] The Chapter 11 Cases of the following Wind-Down Debtors will remain open: Nortel Networks Inc., Nortel Networks Capital Corporation and Nortel Networks (CALA) Inc. Nortel Networks India International Inc.'s Chapter 11 Case also will remain open.

5.      On January 15, 2009, the Court entered the *Order Appointing Epiq Bankruptcy Solutions, LLC as Claims, Noticing and Balloting Agent of the Bankruptcy Court Pursuant to 28 U.S.C. § 156(c)* (the "Epiq Retention Order") [D.I. 38], thereby appointing Epiq as the claims, noticing and balloting agent in the Chapter 11 Cases.

6.      On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142].[4]  An ad hoc group of bondholders (the "Bondholder Group") and a consortium of creditors holding trade claims (the "Trade Claims Consortium") were also organized during the course of the Chapter 11 Cases.

### B. The Plan and Confirmation Order

7.      On December 1, 2016, the Debtors (other than NNIII) filed the *First Amended Joint Chapter 11 Plan of Nortel Networks Inc. and Certain of Its Affiliated Debtors* (as subsequently amended, the "Plan") with the Court [D.I. 17501].  An amended version of the Plan, dated January 23, 2017, was filed with the Court [D.I. 17763].  On January 24, 2017, the Court entered an order confirming the Plan for all Debtors (other than NNIII) (the "Confirmation Order") [D.I. 17795].  On May 8, 2017, the Debtors filed the *Notice of Entry of Confirmation Order and Occurrence of Effective Date of First Amended Joint Chapter 11 Plan of Nortel Networks Inc. and Certain of Its Affiliated Debtors* [D.I. 18176], providing notice that the Plan became effective and was substantially consummated on May 8, 2017 (the "Effective Date").

8.      The Plan represented the culmination of the Debtors' long-standing effort to resolve various disputes related to the allocation of funds resulting from a series of court-

---

[4]     Pursuant to the *Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint Chapter 11 Plan Nortel Networks, Inc. and Certain of its Affiliated Debtors* [D.I. 17795], the Committee was dissolved automatically on the Effective Date (as defined below).

approved sale transactions from 2009 to 2011, generating in excess of $7.3 billion in net sale proceeds (the "Sale Proceeds"). *Debtors' Memorandum of Law in Support of Confirmation and Omnibus Reply to Objections to Confirmation of the First Amended Joint Chapter 11 Plan of Nortel Networks, Inc. and Certain of Its Affiliated Debtors under Chapter 11 of the Bankruptcy Code* ¶ 8 [D.I. 17731]. The Plan also implements a global resolution among the Debtors, its affiliates and other parties in interest regarding the allocation of the Sale Proceeds and the settlement of intercompany and other claims, through a negotiated Settlement and Plans Support Agreement (the "SPSA"). The Plan provided for the appointment of a plan administrator (the "Plan Administrator") to wind down and distribute the assets of each Wind-Down Debtor's estate. Plan § 6.3. It provides for payment in full of all Allowed Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Secured Claims against each Wind-Down Debtor. *Id.* §§ 2.1, 2.4, 4.1, 4.2. Additionally, it provides for substantive consolidation of NNI and Nortel Networks Capital Corporation for plan and distribution purposes. *Id.* § 3.2.

9. Pursuant to the Plan, upon the Effective Date, all of the assets (all "property" and Causes of Action as defined in § 1.2 of the Plan) of the Debtors' estates (other than NNIII's estate) were vested in the relevant Wind-Down Debtors and other Debtors who simultaneously emerged from bankruptcy. *See id.* §§ 8.1(b), 8.2(b), 13.10. The Plan further provides that after the Effective Date, the Wind-Down Debtors and the Plan Administrator may take "any and all actions they deem appropriate in order to consummate the transactions contemplated [by the Plan]" including disposal of any residual assets and winding up of the Wind-Down Debtors' affairs. *Id.* § 8.9. Additionally, under the Plan, the Wind-Down Debtors are authorized to take any corporate action, including to "(i) compromise and settle Claims and Causes of Action of or

4

against the Wind-Down Debtors and their Estates and (ii) dissolve, merge or consolidate with any other Entity" without the affirmative vote of holders of interests.  *Id.*

### C. The Claims Reconciliation Process

10.     The Debtors' register of claims (the "Claims Register"), prepared and maintained by Epiq, reflects that more than 8,500 proofs of claim have been filed in the Chapter 11 Cases asserting claims against the Debtors.  The Wind-Down Debtors have reviewed all of the claims filed against them, and all such claims have been finally determined and allowed or disallowed, as applicable.

11.     Prior to the Effective Date, the Debtors filed forty-seven omnibus objections to claims, and the claims subject to those objections have been resolved.  Further, the Wind-Down Debtors and certain affiliates filed the *Wind Down Debtors' and Plan Administrator's First Post-Effective Date Omnibus Objection (Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502, Fed. R. Bankr. P. 3007 and Del. L.R. 3007-1 (Satisfied Claims, No-Basis 401(K) Claims, No-Basis Pension Claims, No-Basis Deferred Compensation Claims, Redundant Claims, Wrong or No Debtor Claims, Modify and Allow Claims, Reclassify and Allow Claims and No Amount Due Claims)* [D.I. 18495], which was granted by the Court on January 8, 2018 [D.I. 18559].

12.     With respect to certain tax claims asserted post-Effective Date by the California Franchise Tax Board ("CFTB") against NNI, NNI and CFTB have recently settled the dispute, and the terms of the settlement were memorialized in the *Stipulation between Nortel Networks Inc. and the California Franchise Tax Board* [D.I. 18753], which was approved by the Court on October 25, 2019 [D.I. 18768].  Upon the resolution of CFTB's tax claims against NNI, there is no unresolved claim against the Wind-Down Debtors.

### D. Distributions to Claimants

13.  In connection with their claims reconciliation efforts, the Wind-Down Debtors have made significant distributions to their creditors. Since the Effective Date, the Wind-Down Debtors and their debtor affiliates have made four (4) periodic distributions to the holders of allowed administrative, secured and priority claims, as well as certain additional distributions for newly allowed administrative, secured and priority claims, in the total amount of $23.4 million pursuant to the Plan. The Wind-Down Debtors and their debtor affiliates have also made seven (7) periodic distributions to the holders of allowed unsecured claims,[5] as well as certain additional distributions for newly allowed unsecured claims, in the total amount of approximately $3.3 billion.[6]

14.  As of the date of this Motion, Altsystems has paid in full the allowed administrative, priority, tax and secured claims of its creditors pursuant to the Plan, resolved all receivables and other amounts owed to Altsystems and made all required distributions in accordance with the Plan. On December 18, 2019, Altsystems filed its Certificate of Dissolution to dissolve pursuant to applicable state law.

### E. Closure of the Chapter 11 Cases of Affiliated Debtors

15.  The Chapter 11 Cases of the majority of the Debtors who had emerged from bankruptcy as listed in the *Motion for Entry of a Final Decree (I) Closing Certain of the Debtors' Chapter 11 Cases and (II) Terminating Certain Claims and Noticing Services* [D.I. 18722] (the "Closed Debtors") have been closed as of June 28, 2019 as they had been fully administered. *See Final Decree (I) Closing Certain of the Debtors' Chapter 11 Cases and (II)*

---

[5]  D.I.s 18298, 18438, 18548, 18581, 18658, 18693, 18779.

[6]  This amount includes a distribution made by NNIII [D.I. 18540], which is not a Wind-Down Debtor, concurrently with one of the seven periodic distributions to the allowed unsecured claims of the Wind-Down Debtors.

*Terminating Certain Claims and Noticing Services* [D.I. 18730]. Similarly, as described further below, the Chapter 11 Case of Altsystems is fully administered, warranting its closure at this time.

## Relief Requested

16. By this Motion, the Movant seeks entry of a Final Decree, substantially in the form attached hereto as **Exhibit A**, (a) closing the Chapter 11 Case of Altsystems, (b) terminating certain Claims and Noticing Services provided by Epiq with respect to Altsystems's Chapter 11 Case, and (c) granting related relief.

## Basis for Relief

### A. Entry of Final Relief

17. Section 350(a) of the Bankruptcy Code provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case." Bankruptcy Rule 3022, which implements section 350 of the Bankruptcy Code, further provides that "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case." Local Rule 3022-1(a) provides that, "[u]pon written motion, a party in interest may seek the entry of a final decree at any time after the confirmed plan has been fully administered provided that all required fees due under 28 U.S.C. § 1930 have been paid."

18. The term "fully administered" is not defined in the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules. The Advisory Committee Note to Bankruptcy Rule 3022 (the "Advisory Committee Note"), however, sets forth the following non-exclusive factors to be considered in determining whether a case has been fully administered:

    a. whether the order confirming the plan has become final;

    b. whether deposits required by the plan have been distributed;

7

  c.  whether the property proposed by the plan to be transferred has been transferred;

  d.  whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan;

  e.  whether payouts under the plan have commenced; and

  f.  whether all motions, contested matters, and adversary proceedings have been finally resolved.

19. Courts in this district and others adopt the view that "these factors are but a guide in determining whether a case has been fully administered, and not all factors need to be present before the case is closed." *In re SLI, Inc.*, 2005 WL 1668396, at *2 (Bankr. D. Del. June 24, 2005) (citing *In re Mold Makers, Inc.*, 124 B.R. 766, 768–69 (Bankr. N.D. Ill. 1990)); *see also In re Kliegl Bros. Universal Elec. Stage Lighting Co., Inc.*, 238 B.R. 531, 542 (Bankr. E.D.N.Y. 1999) (recognizing that bankruptcy courts weigh the factors contained in the Advisory Committee Note when deciding whether to close a case).

20. Consistent with the view that not all of the Advisory Committee Note factors must be present prior to closing a chapter 11 case, courts have deemed cases fully administered where there is a pending adversary proceeding. *In re JMP-Newcor Int'l, Inc.*, 225 B.R. 462, 465 (Bankr. N.D. Ill. 1998). Courts have also found cases to be fully administered where there are outstanding distributions to be made. *See, e.g.*, *Mold Makers*, 124 B.R. at 768; *In re Jordan Mfg. Co.*, 138 B.R. 30, 35–36 (Bankr. C.D. Ill. 1992).[7]

21. In addition to the factors set forth in the Advisory Committee Note, courts have considered whether the plan of reorganization has been substantially consummated. *See, e.g.*, *In*

---

[7] Courts have also found that entry of a final decree is appropriate to end the accrual of section 1930 bankruptcy fees owed to the United States Trustee. *See In re Jay Bee Enters., Inc.*, 207 B.R. 536, 539 (Bankr. E.D. Ky. 1997) (stating that it seemed "appropriate to close [the] case to stop the financial drain on the debtor" on account of section 1930 fees). Altsystems wishes to close its Chapter 11 Case as promptly as possible so as to avoid incurring additional section 1930 fees especially where no further distributions are anticipated.

8

*re Gates Cmty. Chapel of Rochester, Inc.*, 212 B.R. 220, 224 (Bankr. W.D.N.Y. 1997) (considering substantial consummation as a factor in determining whether to close a case); *Walnut Assocs. v. Saidel*, 164 B.R 487, 493 (E.D. Pa. 1994) (same).[8]

22. As of the date hereof, the Chapter 11 Case of Altsystems has been "fully administered" within the meaning of section 350 of the Bankruptcy Code, making it appropriate for the Court to enter a final decree closing Altsystems's Chapter 11 Case. Specifically,

  a. the Confirmation Order has become final and is non-appealable;

  b. Altsystems has emerged from chapter 11;

  c. all payments required to be made pursuant to the Plan have been paid or provided for as of the Effective Date;

  d. prior to the filing of this Motion, Altsystems has made a number of significant distributions pursuant to the Plan and paid its creditors and made all required distributions in accordance with the Plan;

  e. Altsystems has filed its Certificate of Dissolution;

  f. all anticipated motions, contested matters, and adversary proceedings in the Chapter 11 Case of Altsystems has been resolved prior to the filing of this Motion;

  g. all of the proofs of claim filed in the Chapter 11 Case of Altsystems have been allowed, expunged, or otherwise resolved;

  h. all of the transactions contemplated by the Plan with respect to Altsystems have closed; and

  i. the Plan has been substantially consummated with respect to Altsystems within the meaning of section 1101(2) of the Bankruptcy Code.

23. Moreover, "[t]he court should not keep [a] case open only because of the possibility that the court's jurisdiction may be invoked in the future." Fed. R. Bankr. P. 3022,

---

[8] Section 1101(2) of the Bankruptcy Code defines substantial consummation as the "(A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan."

9

Advisory Comm. Note (1991). Here, the entry of a final decree closing the Chapter 11 Case of Altsystems is without prejudice to any creditors' rights to petition the Court to reopen its Chapter 11 Case pursuant to section 350(b) of the Bankruptcy Code.

24. Furthermore, to the extent not already paid, Altsystems will pay all of its fees due and payable to the U.S. Trustee on account of Altsystems's Chapter 11 Case pursuant to 28 U.S.C. § 1930(a)(6) prior to the hearing on this Motion. Altsystems will file its final post-confirmation quarterly U.S. Trustee report by the April 30, 2020 deadline to do so.

25. However, the Movant requests an extension of the deadline for Altsystems to file a final report under Local Rule 3022-1(c) until such time as the other Wind-Down Debtors, including NNI, the lead debtor in these jointly-administered Chapter 11 Cases, have obtained final decrees closing their Chapter 11 Cases, given that such other Wind-Down Debtors are not seeking a final decree and closure of their cases through this Motion. Since administration of the remaining Wind-Down Debtors' estates will continue to occur in accordance with the provisions of the Plan and Confirmation Order subsequent to closure of the Chapter 11 case of Altsystems, the Movant requests an extension of the deadline to file a final report for Altsystems under Local Rule 3022-1(c) and confirm that they will file a final report with respect to all remaining Wind-Down Debtors as well as the Closed Debtors and Altsystems upon the closure of the other Chapter 11 Cases, including the lead case for NNI, in these jointly-administered cases.[9]

---

[9] Courts in this District routinely grant similar relief, including a waiver of the requirement to file a final report. *See, e.g., In re Altegrity, Inc.*, Case No. 15-10226 (LSS) (Bankr. D. Del. Dec. 3, 2015) [D.I. 1047] (closing the cases of certain debtors and allowing for any further reporting to take place in the surviving cases); *In re Source Home Entm't, LLC*, Case No. 14-11553 (KG) (Bankr. D. Del. June 22, 2015) [D.I. 824] (same); *In re Buffets Rests. Holdings, Inc.*, Case No. 12-10237 (MFW) (Bankr. D. Del. Dec. 18, 2014) [D.I. 1556] (same); *In re W. R. Grace & Co.*, Case No. 01-01139 (KJC) (Bankr. D. Del. Mar. 19, 2014) [D.I. 31880] (same); *In re Advanta Corp.*, Case No. 09-13931 (KJC) (Bankr. D. Del. Dec. 30, 2013) [D.I. 1599] (same).

26.     For the foregoing reasons, the Movant submits that the Court should enter a final decree closing the Chapter 11 Case of Altsystems and extending the deadline to file a final report under Local Rule 3022-1(c) with respect to Altsystems's Chapter 11 Case.

**B.     Termination of Claims and Noticing Services**

27.     The Movant also requests entry of an order terminating the Claims and Noticing Services provided by Epiq with respect to the Chapter 11 Case of Altsystems pursuant to the Epiq Retention Order as described below.  Upon termination of the Claims and Noticing Services with respect to Altsystems's Chapter 11 Case, and except as otherwise provided herein, Epiq shall have no further obligations under the Epiq Retention Order to the Court, Altsystems, or any other party in interest with respect to the Claims and Noticing Services with respect to the Chapter 11 Case of Altsystems.

28.     Given that certain of the Wind-Down Debtors, including NNI, the lead debtor in these jointly-administered Chapter 11 Cases, are not seeking a final decree and closure of their cases through this Motion, the Movant hereby requests an extension of the deadline for Altsystems to comply with the requirements under Local Rule 2002-1(f)(ix) for Epiq to (i) provide to the Clerk of the Court an electronic version of all imaged claims for Altsystems, (ii) upload a creditor mailing list into CM/ECF for Altsystems, (iii) docket a final claims register for Altsystems, and (iv) transporting original claims for record purposes and completing a SF-135 Form until such time as the remaining Wind-Down Debtors, including NNI, have obtained final decrees closing their Chapter 11 Cases.  Local Rule 2002-1(f)(ix) provides that in the context of jointly-administered cases, a claims agent must only docket one combined register in the lead case containing claims of all cases.  Accordingly, Epiq maintains a combined claims register and a creditor mailing list for all of the Debtors and their Chapter 11 Cases, and would incur additional cost to provide separate claims, creditor mailing lists and a claims register for

Altsystems.  Accordingly, the Movant requests an extension of the deadline to complete such requirements for Altsystems, and confirms that Epiq will comply with the requirements under Local Rule 2002-1(f)(ix) with respect to all remaining Wind-Down Debtors as well as the Closed Debtors and Altsystems upon the closure of the lead case for NNI in these jointly-administered cases.

29.    Should Epiq receive any mail regarding Altsystems after entry of an order granting this Motion, Epiq will collect and forward such mail no less frequently than monthly to the Wind-Down Debtors, care of the Plan Administrator, at the following address (or such other address as may be subsequently provided by the Wind-Down Debtors to Epiq):  Mary H. Cilia and Kathryn Schultea at Nortel Networks, Inc., PO Box 591669, Houston, TX 77259.

## NOTICE

30.    The Movant has provided notice of this Motion to:  (i) U.S. Trustee; and (ii) the Post-Effective Date Notice List maintained in these cases.  The Movant submits that under the circumstances no other or further notice is necessary.

31.    WHEREFORE, the Movant respectfully requests that the Court (i) enter the Final Decree, substantially in the form attached hereto as **Exhibit A**, and (ii) grant such other and further relief as the Court may deem just and proper.

Dated: December 19, 2019
       Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Tamara K. Mann*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Tamara K. Mann (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

- and -

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel for the Wind-Down Debtors and Debtor in Possession*