# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---

*In re*

Nortel Networks Inc., *et al.*,[1]

    Wind-Down Debtors and Debtor-In-Possession.

---

Chapter 11

Case No. 09-10138 (CSS)

Jointly Administered

## STATUS REPORT ON THE CHAPTER 11 CASES OF
## THE WIND-DOWN DEBTORS AND DEBTOR-IN-POSSESSION

The Wind-Down Debtors and Debtor-In-Possession (collectively, the "Remaining Debtors") hereby submit this status report in order to provide a brief overview of the above-captioned cases and a status update on the Remaining Debtors' cases.

### Background

1. On January 14, 2009 (the "Petition Date"), Nortel Networks, Inc. ("NNI") and certain of its affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Nortel Networks (CALA) Inc. ("NN CALA") and Nortel Networks India International Inc. ("NNIII") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009 and July 26, 2016, respectively.[2] NNI, NN CALA, NNIII and their debtor affiliates are referred to herein as the "Debtors." Prior to the commencement of their respective bankruptcy cases, NNI was the main operating U.S. entity, NN CALA was an operating entity

---

[1] The Wind-Down Debtors in these chapter 11 cases, along with the last four digits of each Wind-Down Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), and Nortel Networks (CALA) Inc. (4226). Nortel Networks India International Inc. (8667) remains a debtor-in-possession. Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

[2] The Debtors' cases were consolidated and have been jointly administered for procedural purposes [D.I.s 36, 1098, 17090] (the cases together, the "Chapter 11 Cases").

focused on customers in the Caribbean and Latin American region, NNIII was an NNI subsidiary that supplied hardware and software for contracts with certain customers in India, and Nortel Networks Capital Corporation ("NNCC") was a special purpose financing affiliate.

2. Over the course of several years following the commencement of their cases, the Debtors sold off their various business and intellectual property assets. The Debtors then were engaged in complex litigation with their foreign affiliates and various creditor groups regarding the allocation of the sale proceeds and other claims, which ultimately resulted in a global settlement in late 2016, subject to various court approvals.

3. On December 1, 2016, the Debtors (other than NNIII) (the "Initial Wind-Down Debtors") filed the *First Amended Joint Chapter 11 Plan of Nortel Networks Inc. and Certain of Its Affiliated Debtors* (as subsequently amended, the "Plan") with the Court [D.I. 17501]. The Disclosure Statement for the Plan (the "Disclosure Statement") [D.I. 17502] was approved by the Court on the same day [D.I. 17516]. An amended version of the Plan, dated January 23, 2017, was filed with the Court [D.I. 17763], and on January 24, 2017, the Court entered an order confirming the Plan for the Initial Wind-Down Debtors (the "Confirmation Order") [D.I. 17795]. The Plan became effective on May 8, 2017 (the "Effective Date") [D.I. 18176]. Pursuant to the Plan, NNI and NNCC were substantively consolidated. Plan § 3.2. Greylock Partners, LLC was appointed as the Plan Administrator for the Initial Wind-Down Debtors.[3] Plan § 6.3.

4. Since the Effective Date, the Initial Wind-Down Debtors have made significant distributions to their creditors pursuant to the Plan: they have distributed approximately $23.4

---

[3] Effective January 1, 2019, Greylock Partners, LLC changed its name to Owl Hill Advisory LLC. John J. Ray III is the Senior Managing Director of Owl Hill Advisory LLC and has been serving as the Principal Officer of each of the Debtors.

million to the holders of allowed administrative, secured and priority claims, and approximately $3.3 billion to the holders of allowed unsecured claims as of the date of this status report.[4]

5.     Notably, the total recovery to NNI's general unsecured creditors (excluding the Pension Benefit Guaranty Corporation ("PBGC")) reached 100% in December 2019, in comparison to the expected recovery of approximately 55% - 61% set forth in the Disclosure Statement.  The PBGC received the maximum recovery amount of $565 million on its claim in December 2018, and accordingly is no longer entitled to any further distributions.

6.     As a result of the Plan Administrator's continued effort to advance the implementation of the Plan, as of January 23, 2020, the Chapter 11 Cases of 13 Debtors – all of the Initial Wind-Down Debtors except NNI, NNCC, and NN CALA – were closed as those 13 Debtors were fully wound down and dissolved, and their Chapter 11 Cases were fully administered.  *See Final Decree (I) Closing Certain of the Debtors' Chapter 11 Cases and (II) Terminating Certain Claims and Noticing Services* [D.I. 18730]; *Final Decree (I) Closing the Chapter 11 Case of Nortel Altsystems Inc. and (II) Terminating Certain Claims and Noticing Services* [D.I. 18807].  This leaves only four Remaining Debtors whose cases are currently open: NNI, NNCC, NN CALA and NNIII.

## CASE STATUS OF THE REMAINING DEBTORS

### A. STATUS OF NN CALA

7.     On January 24, 2020, the Remaining Debtors filed a notice announcing the expected final distributions to the holders of unsecured claims against NN CALA [D.I. 18808]. Such final distributions are expected to be made on or prior to March 31, 2020.  After accounting

---

[4]     Notices of intended distributions to unsecured creditors have periodically been filed on the Court docket. *See* D.I.s 18298, 18438, 18548, 18581, 18658, 18693, 18779.  The $3.3 billion in distributions includes a distribution made by NNIII [D.I. 18540], a debtor-in-possession, concurrently with one of the periodic distributions to the holders of the allowed unsecured claims of the Initial Wind-Down Debtors.

for these distributions, the expected final cumulative distribution percentage for NN CALA's general unsecured creditors is 51.9%, which is significantly higher than the expected recovery of approximately 12% - 14% set forth in the Disclosure Statement. Upon the final distributions and completion of any remaining wind-down activities, NN CALA is expected to be dissolved and its Chapter 11 Case is expected to be closed thereafter.

### B. Status of NNI/NNCC and NNIII

8. NNI and NNCC, as substantively consolidated Debtors, are treated as one entity for the Plan and distribution purposes. The wind-down of these entities pursuant to the Plan is largely completed. The final distributions to NNI's unsecured creditors were made on December 17, 2019, and as noted earlier, such distributions resulted in its creditors receiving the maximum recovery allowed under the Plan. NNI is now winding down its remaining assets and subsidiaries in order to finalize its own wind-down and dissolution. NNI's wind-down is not complete however, as it remains as the sole shareholder of NNIII.

9. NNIII continues to be a debtor-in-possession at this time. NNIII has taken actions to advance its chapter 11 case, including by setting a bar date for the filing of proofs of claim that has passed, and resolving the amount of all claims filed against it. NNIII also continues to prosecute its ongoing tax dispute with the Indian tax authority regarding a tax refund owed to NNIII, which is currently pending at the Indian Supreme Court.[5] NNIII continues to monitor that appeal, and as of this time, the timing of final resolution of that appeal is uncertain.

10. NNI, NNCC and NNIII continue to periodically assess all potential options for achieving the final dissolution of NNI and NNCC and bringing their cases to closure as well as

---

[5] More information with respect to NNIII's Indian tax dispute is provided in NNIII's monthly operating reports.

the confirmation of a plan in NNIII's case.  The Remaining Debtors will provide further updates and/or seek relevant approval from the Court if and when there are further developments with these entities and their cases.

Dated:  March 2, 2020
Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Tamara K. Mann*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Tamara K. Mann (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

- and -

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

*Counsel for the Wind-Down Debtors and Debtor in Possession*