## **EXHIBIT A**

Redacted Settlement Motion

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X
                                                       :
*In re*                                                :   Chapter 11
                                                       :
Nortel Networks Inc., *et al.*,[1]                     :   Case No. 09-10138 (CSS)
                                                       :
      Wind-Down Debtors and Debtor-In-   :   Jointly Administered
      Possession                         :
                                                       :
                                                       :
-------------------------------------------------------X
                                                       :
                                                       :   Chapter 11
*In re*                                                :
                                                       :   Case No. 16-11714 (CSS)
Nortel Networks India International Inc.               :
                                                       :   Jointly Administered
      Debtor.                             :
                                                       :   **Hearing date: June 9, 2020 at 11:00 am (ET)**
                                                       :   **Objections due: June 2, 2020 at 4:00 pm (ET)**
                                                       :
-------------------------------------------------------X

## DEBTOR'S MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTOR TO PURSUE A SETTLEMENT

Nortel Networks India International Inc. ("<u>NNIII</u>" or "<u>Debtor</u>"), as debtor and debtor in possession in the above-captioned case, hereby moves this Court (the "<u>Motion</u>"), for the entry of an order substantially in the form attached hereto as **Exhibit A**, pursuant to section 105(a) of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), (i) authorizing NNIII to pursue a settlement with the Indian Taxing Authorities concerning the Indian Tax Appeal Litigation, which is currently pending before the Indian Supreme Court (as such terms are defined below); and (ii)

---

[1]      The Wind-Down Debtors in these chapter 11 cases, along with the last four digits of each Wind-Down Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), and Nortel Networks (CALA) Inc. (4226). Nortel Networks India International Inc. (8667) remains a debtor-in-possession.  Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

granting NNIII such other and further relief as the Bankruptcy Court deems just and proper.  In support of this Motion, NNIII respectfully represents as follows:

## Jurisdiction and Venue

1.     The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

## Background

### A.     The Nortel Affiliates Bankruptcy

3.     On January 14, 2009 (the "Nortel Petition Date"), Nortel Networks Inc. ("NNI") and certain of its affiliates (the "Original Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which cases were consolidated for procedural purposes only.  On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") [D.I.s 141, 142].[2]  On July 14, 2009, Nortel Networks (CALA) Inc. ("NN CALA," together with the Original Debtors, "Original Wind-Down Debtors") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which was consolidated and have been jointly administered with the Original Debtors' chapter 11 cases for procedural purposes [D.I. 1098].  NNIII and the Original Wind-Down Debtors are referred to herein as the "Debtors."

---

[2]     The order appointing the Committee was later made applicable to NN CALA's and NNIII's cases.  Pursuant to the *Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint Chapter 11 Plan Nortel Networks, Inc. and Certain of its Affiliated Debtors* [D.I. 17795], the Committee was dissolved automatically on the Effective Date of the Plan (as such terms are defined below).

4.    Also on the Nortel Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors") commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada), seeking relief from their creditors, and a monitor, Ernst & Young Inc., was appointed by the Canadian Court.  Also on the Nortel Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors"), into administration under the control of individuals from Ernst & Young LLP.

5.    On December 1, 2016, the Original Wind-Down Debtors filed their *First Amended Joint Chapter 11 Plan of Nortel Networks Inc. and Certain of its Affiliated Debtors* [D.I. 17501] (as subsequently amended, the "Plan").  An amended version of the Plan was filed with the Bankruptcy Court on January 23, 2017 [D.I. 17763].   On January 24, 2017, the Bankruptcy Court confirmed the Plan [D.I. 17795].  Among other things, the Plan integrates and implements the Settlement and Plans Support Agreement ("SPSA") dated October 12, 2016 between and among the Debtors, the Canadian Debtors, the EMEA Debtors and certain other parties [D.I. 17589], which upon approval of the Court [D.I. 17794], resolved all appeals and controversies regarding the disputes among the various Nortel entities as to the allocation of the proceeds of the sale of Nortel's business units and other assets to various purchasers.  Also on January 24, 2017, the Canadian Court approved the Canadian Plan, which similarly implements the SPSA.  The Plan became effective and was substantially consummated on May 8, 2017 (the "Effective Date").

6.      Since the Effective Date, the Original Wind-Down Debtors have made significant distributions to their creditors pursuant to the Plan.  The chapter 11 cases of all of the Original Wind-Down Debtors, other than NNI, Nortel Networks Capital Corporation (which was substantively consolidated with NNI under the Plan), and NN CALA, have been closed as they were fully administered pursuant the Plan [D.I.s 18730, 18794].

**B.      The NNIII Bankruptcy**

7.      NNIII, a Delaware corporation, is a wholly-owned subsidiary of NNI.  On July 26, 2016, NNIII filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which was consolidated and has been jointly administered with the Original Wind-Down Debtors' chapter 11 cases for procedural purposes only [D.I. 17090].  Although NNIII historically had supplied hardware and software to certain customers in India, it ceased all operations and had no employees as of the date of the filing.

8.      On August 16, 2016, the Bankruptcy Court entered an order (the "Bar Date Order") fixing the bar date as 4:00 p.m. (prevailing Eastern time) on September 19, 2016, for filing proofs of claim against NNIII (the "General Bar Date") and January 23, 2017, for filing proofs of claim by governmental entities against NNIII (the "Governmental Bar Date," and together with the General Bar Date, the "Bar Dates") [Case No. 16-11714, D.I. 16].  NNIII provided notice of the Bar Dates to all known creditors of NNIII, including the Indian governmental bodies responsible for taxation in India (the "Indian Taxing Authorities"), and published notice of the same in THE WALL STREET JOURNAL for both U.S. and Asia distribution.  Both Bar Dates have passed and only four proofs of claim were filed against NNIII – one filed by NNL, two filed by the Pension Benefit Guaranty Corporation (the "PBGC"), one of which was consensually withdrawn, and one filed by Harris County, Texas, which claim was

withdrawn.    The PBGC held an allowed claim against each of NNIII and each Original Wind-Down Debtor in the amount of $624,601,972.00, on a joint and several basis, subject to an aggregate cap of $565 million on the PBGC's right to receive distributions on such allowed claims.    As of December 2018, the PBGC reached its maximum allowed recovery of $565 million, thus is no longer entitled to further distributions on account of its claim.

9.    As a result, the only allowed and unsatisfied claims against NNIII are intercompany claims held by NNL and NNI (which was exempt from the deadlines established in the Bar Date Order and was not required to file a proof of claim).    Pursuant to the SPSA which settled intercompany obligations and other claims as noted above [D.I.s 17589, 17794], NNL holds an allowed claim against NNIII in the amount of $17,695,762.84, and NNI holds an allowed general unsecured claim against NNIII in the amount of $53,663,414.00.    Over the course of the Original Wind-Down Debtors' bankruptcy cases, NNI has also, from time to time, incurred costs for professional fees and other administrative expenses on behalf of NNIII, for which amounts NNI and NNIII have agreed that (i) NNIII will make adequate reserves, and (ii) NNI will be reimbursed.

10.    Because NNIII did not commence its chapter 11 case until July 2016, and the Bar Dates did not pass until January 23, 2017, the Plan filed by the Original Wind-Down Debtors did not include a chapter 11 plan for NNIII.    As further explained below, to date, NNIII has not filed a disclosure statement or proposed a chapter 11 plan and continues to be a debtor-in-possession. However, NNIII has continued its effort to advance its chapter 11 case, including making interim distributions to the holders of allowed claims against NNIII including the PBGC in the aggregate amount of $15 million pursuant to the *Order Granting Nortel Network India International Inc.'s*

*Motion for an Order Authorizing Interim Distributions to Holders of Allowed Unsecured Claims*
[D.I. 18540].

## C.    THE NNIII INDIAN TAX APPEAL LITIGATION

11.    Since prior to the commencement of NNIII's chapter 11 case, NNIII has been involved in certain disputes with the Indian Taxing Authorities relating to tax obligations allegedly owed by NNIII.  Prior to the Nortel Petition Date, the Indian Taxing Authorities made tax demands against NNIII in the aggregate amount of approximately ████████████ ████████████████████████████████████████████████████████████ ███████████████, on the alleged grounds that NNIII was subject to Indian income tax because it conducted business in India and therefore maintained a "permanent establishment" in India. NNIII does not believe that it ever maintained a "permanent establishment" in India, never paid Indian corporate income taxes, and vigorously asserted its rights and defenses in the relevant proceedings in India.

12.    Subsequently, the Indian Taxing Authorities made further demands ██████████ ██████████████████████████████████████████████ (the "<u>Subsequent Demand Years</u>" and, collectively with the Initial Demand Years, the "<u>Demand Years</u>").  In total for the Demand Years, the Indian Taxing Authorities made tax demands on NNIII of approximately ████████████████████████████████.  As of now, together with penalties and interest, the aggregate amount that may be imposed by the Indian Taxing Authorities is estimated to be ████ ████████████ (collectively, the "<u>Indian Tax Demands</u>"), which amount NNIII disputes as to its validity and amount, and also takes the position (as discussed below) that such claims are barred

[3] ████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████

as a result of the passing of the Bar Dates and in any event would be disallowed under applicable law if such issues were litigated in the Bankruptcy Court.

13.     In 2006, NNIII engaged Ernst & Young, India ("EY India") to represent it in appealing the Indian Tax Demands and has been actively litigating these appeals since that time (the "Indian Tax Appeal Litigation").

14.     On May 4, 2016, the High Court of India (India's second highest court) ruled in favor of NNIII in respect of the Initial Demand Years and assessment year ▆▆▆▆, finding that, among other things, NNIII did not have a "permanent establishment" in India and was not liable for any Indian corporate taxes for such years (the "High Court Decision").  The Indian Taxing Authorities did not file an appeal of the High Court Decision to India's Supreme Court (the "Indian Supreme Court") prior to the expiration of the statutory appeal period.  Consequently, pursuant to the High Court Decision, NNIII sought a refund of certain payments that were made prior to 2012 during the appeals process (the "Stay Payments"), a portion of which was refunded to NNIII on February 28, 2017.  Subsequent to such payment, however, the Indian Taxing Authorities filed a late appeal of the High Court Decision to the Indian Supreme Court, which was accepted by the Indian Supreme Court over NNIII's objection that the appeal was untimely because the appeal period had passed.

15.     With respect to assessment years ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆, NNIII requested that the Indian Income Tax Appellate Tribunal (the "ITAT") hearing the tax appeals apply the High Court Decision to resolve those appeals in NNIII's favor.  The ITAT decided in favor of NNIII, and NNIII received additional refund amount in January 2018.  The Indian Taxing Authorities appealed the ITAT decision to the High Court, and those appeals were dismissed by the High Court in March and April 2018 (the "Second High Court Decision").  The

Indian Taxing Authorities appealed the Second High Court Decision to the Indian Supreme Court in late 2018.

16.    ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████

17.    The Indian Taxing Authorities were timely served with notice of the commencement of NNIII's chapter 11 case and the Bar Dates and did not file a proof of claim as required by the Bar Date Order.  Therefore, the Indian Taxing Authorities have waived any potential right to seek any recovery from NNIII whatsoever as to any refunded Stay Payments obtained by NNIII or otherwise.  Moreover, NNIII firmly believes that the Indian Taxing Authorities have no such right, even in the event the High Court Decision is reversed, because the common law "Revenue Rule" doctrine serves as an independent bar to the Indian Taxing Authorities' ability to collect any additional funds from NNIII.

18.    Under the Revenue Rule, courts generally abstain from enforcing foreign tax judgments or unadjudicated tax claims asserted by foreign sovereigns.  Although the Revenue Rule can be specifically overridden by treaty, the bilateral tax treaty in force between the United States and India does not contain any mechanism for enforcing foreign tax judgments between the two nations.  Although the United States and India are both parties to a multilateral treaty on administrative assistance in tax matters which addresses cross-border enforcement matters, in its ratification instrument, the United States expressly excluded the enforcement provisions of that

multilateral treaty, and therefore has no obligation under such provisions.  Accordingly, there is

no mechanism for the Indian Taxing Authorities to enforce Indian tax judgments in the United

States, and the Indian Taxing Authorities have no authority to seek a recovery from NNIII in this

bankruptcy.

19.    █████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

**D.    The Proposed Settlement Scheme**

20.    On March 4, 2020, the Indian Taxing Authorities notified NNIII of the Direct Tax

Vivad se Vishwas Bill, a new bill passed by the Indian Parliament that provides for dispute

resolution regarding pending income tax litigation (the "Settlement Scheme").  It proposes

certain discounts in tax payments if a taxpayer settles all tax disputes before a specified date.

The payment deadline was initially March 31, 2020, but was later extended to June 30, 2020 due

to the COVID crisis and related lockdowns in India.  This Settlement Scheme is applicable to

taxpayers, including NNIII, that have filed appeals with the Indian Commissioner of Income Tax

(Appeals), ITAT, High Court or Supreme Court as of January 31, 2020.  Under the Settlement

Scheme, in situations such as NNIII's where the Indian Taxing Authorities have filed an appeal to an order in favor of the taxpayer, the "amount payable" is calculated as 50% of "disputed tax" amount if such amount is paid before June 30, 2020, subject to further changes in the timeframe of the Settlement Scheme by the Indian government.  The "disputed tax" amount is the amount of tax liability payable by the taxpayer if the appeal were decided against it, excluding interest and penalties. ███████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████[4]  If paid after June 30, but prior to a deadline to be announced, the "amount payable" is increased to 55% of the "disputed tax" amount.

21.    The Settlement Scheme imposes a short turn-around time.  Once a taxpayer opting for the Settlement Scheme submits an application to the Indian Taxing Authorities, along with an undertaking waiving any right to pursue any remedy or claim with respect to the assessment years being resolved under the Settlement Scheme, the Indian Taxing Authorities are required within 15 days to issue a certificate detailing the "amount payable."  To the extent the taxpayer wishes to proceed with the settlement, it must pay the total "amount payable" within 15 days after receipt of the certificate.

22.    Upon confirmation of receipt of payment, the Indian Taxing Authorities will withdraw the pending appeals and issue an order, providing immunity to the taxpayer against any prosecution or penalty under India's Income Tax Act, 1961, for the tax demands resolved under the Settlement Scheme.  A settlement with the Indian Taxing Authorities under the Settlement

---

[4]  ██████████████████████████████████████████████████
██████████████████████████

Scheme would resolve ███████████████████████████████████████████

████████████████████████████████, and NNIII will have no further obligations

to the Indian Taxing Authorities with respect to those assessment years.

23.    ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████

24.    ████████████████████████████████████████

████████████████████████████████████████████████

████ █ ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

<hr>

[5] ████████████████████████████████████████████

[6] ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

25.    ███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

### **Relief Requested**

26.    By this Motion, NNIII seeks the entry of an order, pursuant to sections 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, (i) authorizing NNIII to pursue a settlement with the Indian Taxing Authorities concerning the Indian Tax Appeal Litigation, which is currently pending before the Indian Supreme Court; and (ii) granting NNIII such other and further relief as the Court deems just and proper.

### **Basis for Relief**

27.    Section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a).  This is consistent with the broad equitable authority of the bankruptcy

[7]    ████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

courts.  See, e.g., United States v. Energy Res. Co., 495 U.S. 545, 549 (1990); In re Kaiser

Aluminum Corp., 456 F.3d 328, 340 (3d Cir. 2006) ("[B]ankruptcy courts have broad authority

to act in a manner that will prevent injustice or unfairness in the administration of bankruptcy

estates.").

28.     Bankruptcy Rule 9019 provides, in pertinent part, that, "[o]n motion by the trustee

and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R.

Bankr. P. 9019(a).  Citing this authority, the Third Circuit has emphasized that "'[c]ompromises

are favored in bankruptcy.'"  Martin v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996)

(quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re W.R. Grace & Co.,

475 B.R. 34, 77 (D. Del. 2012) (noting that "[c]ompromises are favored in bankruptcy

proceedings because they minimize litigation and expedite the administration of the bankruptcy

estate."); In re World Health Alts., Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding

settlements "generally favored in bankruptcy").  Additionally, the Third Circuit has recognized

that "'(i)n administering reorganization proceedings in an economical and practical manner it

will often be wise to arrange the settlement of claims as to which there are substantial and

reasonable doubts.'"  In re Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting

Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414,

424 (1968)).  And courts in this District have recognized that the approval of a proposed

compromise and settlement is committed to the sound discretion of the bankruptcy court.  See In

re Washington Mut., Inc., 442 B.R. 314, 327 (Bankr. D. Del. 2011); In re Coram Healthcare

Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

29.     Before approving a settlement under Bankruptcy Rule 9019, a court must

determine whether "the compromise is fair, reasonable, and in the interest of the estate."  In re

Key3Media Group, Inc., 336 B.R. 87, 92 (Bankr. D. Del. 2005).   Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation."   TMT Trailer Ferry, 390 U.S. at 424-25.   The court need not be convinced that the settlement is the best possible compromise in order to approve it.   Coram Healthcare Corp., 315 B.R. at 330; see also Washington Mut., Inc., 442 B.R. at 328.   Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness."   Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785 (FLW), 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing In re Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also Coram Healthcare Corp., 315 B.R. at 330.

30.    The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal (the "Martin Factors"): "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."   Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re W.R. Grace & Co., 475 B.R. at 77; In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

31.    █████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████

████████

32.    ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████    ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████

33.    ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

34.    ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

35. █████████████████████████████████████████████████████████

36.     In light of the foregoing, NNIII respectfully seeks authorization to participate in the Settlement Scheme and pursue a settlement of the Indian Tax Appeal Litigation. Additionally, in light of the truncated process of the Settlement Scheme, notably the requirement to pay within 15 days of the receipt of the Indian Taxing Authorities' certificate showing the total amount payable, NNIII respectfully requests for authorization to enter into a final settlement to resolve the Indian Tax Appeal Litigation with the Indian Taxing Authorities ████████ ████████████████████ without seeking a separate authorization or holding a separate hearing to do so, if such settlement is deemed appropriate in NNIII's reasonable

business judgement at the time of the settlement.  As noted above, NNIII reserves its right not to proceed with the Settlement Scheme in accordance with its business judgment.

## **Notice**

37.    Notice of the Motion has been given via first class mail, facsimile, electronic transmission, hand delivery or overnight mail to the (i) counsel to the Monitor; (ii) counsel to the Canadian Debtors; (iii) the NNI plan administrator and its counsel; (iv) counsel to the PBGC; (v) the U.S. Trustee; and (vi) the general service list established in this Chapter 11 Case.  NNIII submits that under the circumstances no other or further notice is necessary.


*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, NNIII respectfully requests that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto as **Exhibit A**; and (iii) grant such other and further relief as it deems just and proper.


Dated:  May 19, 2020
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS NICHOLS, ARSHT & TUNNELL LLP


*/s/ Paige N. Topper*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Tamara K. Mann (No. 5643)
Paige N. Topper (No. 6470)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for Nortel Networks India International Inc.*

**EXHIBIT A**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------------X
                                              :
In re                                         :        Chapter 11
                                              :
Nortel Networks Inc., et al.,¹                :        Case No. 09-10138 (CSS)
                                              :
          Wind-Down Debtors and Debtor-In-    :        Jointly Administered
          Possession                          :
                                              :
                                              :
------------------------------------------------------------X
                                              :
                                              :        Chapter 11
                                              :
In re                                         :
                                              :        Case No. 16-11714 (CSS)
Nortel Networks India International Inc.       :
                                              :        Jointly Administered
          Debtor.                             :
                                              :
                                              :
------------------------------------------------------------X
```

**ORDER AUTHORIZING THE DEBTOR TO PURSUE A SETTLEMENT**

Upon the motion dated May 19, 2020 (the "Motion"),[2] of NNIII, as a debtor and debtor

in possession in the above-captioned case, for entry of an order, as more fully described in the

Motion, (i) authorizing NNIII to pursue a settlement with the Indian Taxing Authorities

concerning the Indian Tax Appeal Litigation, which is currently pending before the Indian

Supreme Court; and (ii) granting it such other and further relief as the Court deems just and

proper, and adequate notice having been given as set forth in the Motion; and it appearing that no

other or further notice is necessary; and the Court having jurisdiction to consider the Motion and

---

[1] The Wind-Down Debtors in these chapter 11 cases, along with the last four digits of each Wind-Down Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), and Nortel Networks (CALA) Inc. (4226). Nortel Networks India International Inc. (8667) remains a debtor-in-possession. Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having determined that consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief requested in the Motion, and that such relief is in the best interests of the Debtor, its estates, its creditors and the parties in interest; and upon the record in these proceedings; and after due deliberation;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

2.      NNIII is authorized to pursue a settlement of the Indian Tax Appeal Litigation with the Indian Taxing Authorities pursuant to the Settlement Scheme.  NNIII is authorized to settle the Indian Tax Appeal Litigation if such settlement is deemed appropriate in its reasonable business judgment at the time of the settlement, without need for further notice to its creditors or order or approval from the Court.[3]  Nothing in this Order shall be construed to limit or restrict NNIII's right not to proceed with the Settlement Scheme.

3.      The Debtor, the Debtor's claims' agent, Epiq Bankruptcy Solutions, LLC, and the Clerk of the Court are hereby authorized and empowered to take such actions as may be necessary and appropriate to perform their obligations and enforce their rights arising under the Settlement Scheme or the relevant order reflecting the final settlement of the Indian Tax Appeal Litigation (the "Final Settlement Order").

4.      The failure specifically to describe or include any particular provision of the Settlement Scheme or the Final Settlement Order shall not diminish or impair the effectiveness

---

[3]      To the extent that any amount is ultimately paid by NNIII to the Indian Taxing Authorities, such amount will be paid in Indian Rupees at the exchange rate applicable at the time of such payment.

of such a provision, it being the intent of this Court that the Final Settlement Order be approved in its entirety.

5.      Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its entry, (ii) the Debtor is not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and (iii) the Debtor may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

6.      The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.


Dated: _____, 2020
         Wilmington, Delaware

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
CHIEF UNITED STATES BANKRUPTCY JUDGE

3