**UNITED STATES (U.S.) BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**
In re: Nortel Networks India International Inc.
Case No. 16-11714 (CSS)
Reporting Period: May 1, 2020 through May 31, 2020

**MONTHLY OPERATING REPORT**
**No. 136**

| REQUIRED DOCUMENTS | Form No. | Document Attached | Affidavit/ Supplement Attached |
|---|---|---|---|
| Condensed Schedule of Cash Receipts and Disbursements for the period from May 1, 2020 through May 31, 2020 | MOR-1 | X | |
| Condensed Balance Sheets as of May 31, 2020 | MOR-2 | X | |
| Notes to Monthly Operating Report | MOR-3 | X | |
| Schedule of Cash Disbursements | MOR-4 | | |
| Disbursements by Petitioning Entity | A | See MOR-1 | |
| Bank Account Information | B | X | |
| Changes in Balances with Debtors and Non-Debtors | MOR-5 | N/A - None | |
| Status of Post-Petition Taxes | MOR-6 | X | |
| Summary of Unpaid Post-Petition Debts | MOR-7 | See MOR-2 Schedule | |
| Summary Accounts Payable Aging Schedule | MOR-7 | See Debtor Questionnaire | |
| Summary Accounts Receivable Aging Schedule | MOR-7 | See Debtor Questionnaire | |
| Debtor Questionnaire | MOR-8 | X | |

I declare under penalty of perjury (28 U.S.C. Section 1746) that this report and the attached documents are true and correct to the best of my knowledge and belief.

**RESPONSIBLE PARTY AND PREPARER:**

_____          June 19, 2020
John J. Ray III – Principal Officer

MOR-1

**U.S. BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**
**In re: Nortel Networks India International Inc.**
**Case No. 16-11714 (CSS)**
**Condensed Schedule of Cash Receipts and Disbursements**
**Reporting Period: May 1, 2020 through May 31, 2020**
**(Unaudited)**
**(In thousands of U.S. dollars)**

| | |
|---|---:|
| **Cash, cash equivalents and restricted cash at beginning of the period (May 1, 2020)** | $ 27,462.3 |
| **Cash receipts:** | |
| Real Estate Sublease Income | - |
| Residual receivables | - |
| Intercompany / affiliate receivables | - |
| Asset recoveries | - |
| Escrow reimbursements  (see MOR-8) | - |
| Other (see note 6) | 2.4 |
| Total cash receipts | 2.4 |
| **Cash disbursements:** | |
| Normal course payables | - |
| Chapter 11 professional fees | - |
| Intercompany / affiliate payables | - |
| Payroll and Other Benefits | - |
| Retention/Incentive plans | - |
| Claims Distributions (see note 5) | - |
| Other (see note 6) | - |
| Total cash disbursements | - |
| Effect of foreign exchange rate changes on cash and cash equivalents | - |
| **Net increase (decrease) in cash, cash equivalents and restricted cash** | 2.4 |
| **Cash, cash equivalents and restricted cash at end of the period (May 31, 2020)** | $ 27,464.6 |

The Condensed Schedule of Cash Receipts and Disbursements contained herein was derived from the books and records of Nortel Networks India International Inc. ("NNIII").  The amounts reflected in these condensed financial statements are unaudited.  The accompanying notes and schedules are an integral part of the condensed financial statements.  Nortel Networks Inc. ("NNI") is the centralized disbursement entity for multiple U.S. affiliates, including NNIII.  Individual NNIII disbursements have been separated from NNI and listed hereunder as if the payments were made directly by NNIII.  However, disbursements made for the benefit of NNI as well as other U.S. affiliates, including NNIII, and/or non-Debtors are still consolidated with NNI for financial reporting purposes and accordingly may not be reflected in this report.

MOR-2

**U.S. BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**
**In re: Nortel Networks India International Inc.**
**Case No. 16-11714 (CSS)**
**Condensed Balance Sheet**
**As of May 31, 2020**
**(Unaudited)**
**(In thousands of U.S. dollars)**

|  | NNIII |
|---|---:|
| **Current assets** | |
| Cash and cash equivalents | $ 27,464.6 |
| Restricted cash and cash equivalents | - |
| Accounts receivable - net | - |
| Intercompany accounts receivable | 2,327.2 |
| Inventories - net | - |
| Other current assets (note 4) | 201.0 |
| **Total current assets** | 29,992.8 |
| Investments in non-Debtor subsidiaries | - |
| Plant and equipment - net | - |
| Other assets | - |
| **Total assets** | $ 29,992.8 |
| | |
| **Current liabilities not subject to compromise** | |
| Trade and other accounts payable | $ - |
| Intercompany accounts payable | 5.5 |
| Payroll and benefit-related liabilities | - |
| Restructuring liabilities | - |
| Other accrued liabilities | - |
| Income taxes | - |
| **Total current liabilities not subject to compromise** | 5.5 |
| Deferred income and other credits | - |
| Post-employment benefits | - |
| **Total liabilities not subject to compromise** | 5.5 |
| Liabilities subject to compromise (note 5) | 72,148.4 |
| **Total liabilities** | 72,153.9 |
| | |
| Common shares | 1.0 |
| Preferred shares | - |
| Additional paid-in capital | - |
| Accumulated deficit | (42,162.1) |
| Accumulated other comprehensive income (loss) | - |
| **Total U.S. Debtors shareholders' deficit** | (42,161.1) |
| Noncontrolling interests | - |
| **Total shareholders' deficit** | (42,161.1) |
| **Total liabilities and shareholders' deficit** | $ 29,992.8 |

The Condensed Balance Sheet contained herein was derived from the books and records of NNIII. The amounts reflected in these condensed financial statements are unaudited. The accompanying notes and schedules are an integral part of the condensed combined financial statements.

**NORTEL NETWORKS INDIA INTERNATIONAL INC.**
**NOTES TO MONTHLY OPERATING REPORT No. 136**
**(UNAUDITED)**
**(In thousands of U.S. dollars)**

**1.  Reservation of Rights:**

Nothing contained in this Monthly Operating Report shall constitute a waiver of any of the rights of NNIII or an admission with respect to its Chapter 11 Proceeding (as defined herein), including, but not limited to, matters involving objections to claims, substantive consolidation, equitable subordination, defenses, disputed or unresolved assets, characterization or re-characterization of contracts, assumption or rejection of contracts under the provisions of chapter 3 of title 11 of the United States Code ("Bankruptcy Code") and/or causes of action under the provisions of chapter 5 of the Bankruptcy Code or any other relevant applicable laws to recover assets or avoid transfers.  Under the Bankruptcy Code, NNIII may assume, assume and assign, or reject certain executory contracts including unexpired leases, subject to the approval of the U.S. Court and certain other conditions.

**2.  Background and Organization:**

Prior to Nortel's significant business divestitures, Nortel Networks Corporation ("NNC") and its subsidiaries (collectively "Nortel"), including the U.S. Debtors (as defined below), were a global supplier of end-to-end networking products and solutions serving both service providers and enterprise customers.  Prior to ceasing operations in 2009, NNIII was an NNI subsidiary that supplied hardware and software for contracts with certain Nortel customers in India.  NNIII currently has no employees or customers.

*Creditor Protection Proceedings* - On January 14, 2009 ("Petition Date"), Nortel Networks Inc. ("NNI"), Nortel Networks Capital Corporation ("NNCC") and certain other of Nortel's U.S. subsidiaries (together with NNCI (as defined below) and NNIII, the "U.S. Debtors"), initiated Creditor Protection Proceedings in the U.S. Bankruptcy Court for the District of Delaware ("U.S. Court") under the Bankruptcy Code ("Chapter 11 Proceedings"), several of their Canadian affiliates ("Canadian Debtors"), including the ultimate parent company, NNC, initiated Creditor Protection Proceedings in Canada at the Ontario Superior Court of Justice ("Canadian Court") under the Companies' Creditors Arrangement Act ("CCAA"), and several of our affiliates in Europe, Middle East and Africa ("EMEA") ("EMEA Debtors") initiated Creditor Protection Proceedings in the United Kingdom under the Insolvency Act 1986.  Subsequently, creditor protection proceedings were commenced for certain affiliates in other jurisdictions, including Israel and France.  On July 14, 2009, Nortel Networks (CALA) Inc. ("NNCI"), an affiliate of NNI, initiated Chapter 11 Proceedings.  On July 26, 2016, NNIII, an affiliate of NNI, initiated Chapter 11 proceedings.  On January 24, 2017 the U.S. Court confirmed a Chapter 11 Plan for all of the U.S. Debtors except NNIII, which has not yet filed a Chapter 11 Plan.  The Effective Date for the Chapter 11 Plan of each U.S. Debtor except NNIII (the "U.S. Reorganized Debtors") was May 8, 2017.  As a result, only NNIII continues to file Monthly Operating Reports.

The accompanying unaudited condensed combined Schedule of Cash Receipts and Disbursements and Balance Sheet ("financial statements") do not include the effects of all current or future claims relating to the Creditor Protection Proceedings.  Certain claims filed may have priority over those of NNIII's unsecured creditors.  The last date to file non-governmental claims against NNIII was September 19, 2016 (the "General Bar Date").  The last date to file governmental claims against NNIII was January 23, 2017 (the "Governmental Bar Date").  To the extent not already completed, NNIII is reviewing all claims filed and has commenced the claims reconciliation process.  Differences between claim amounts determined by NNIII and claim amounts filed by creditors will be investigated and resolved consensually or, if necessary, the U.S. Court will make a final determination as to the amount, nature and validity of claims.  Certain claims that have been filed may be duplicative (particularly given the multiple jurisdictions involved in the Creditor Protection Proceedings), based on contingencies that have not occurred, or may be otherwise overstated, and would therefore be subject to revision or disallowance.  The settlement of claims against NNIII cannot be finalized until the relevant creditors and the U.S. Court approves a plan.

For further information on matters preceding the filing of this Monthly Operating Report, users should refer to prior Monthly Operating Reports.  Users are also referred to the U.S. Court docket for these Chapter 11 Proceedings.

**3. Basis of Presentation:**

The financial statements contained herein were not intended to reconcile to any financial statements otherwise prepared or distributed by NNIII, the other U.S. Debtors or any of the U.S. Debtors' affiliates. Significant efforts have been put forth to attribute the assets and liabilities to the proper legal entity. However, because the Debtors' accounting systems, policies, and practices were developed with a view to producing consolidated reporting, rather than by legal entity, it is possible that not all assets or liabilities have been recorded at the correct legal entity. Accordingly, NNIII reserves all rights to supplement or amend any financial statements contained in this Monthly Operating Report.

The Monthly Operating Report is limited in scope, covers a limited time period, and has been prepared solely for the purpose of complying with the monthly reporting requirements of the Bankruptcy Court and the United States Trustee. The information presented herein has not been subject to all procedures that would typically be applied to financial information presented in accordance with U.S. Generally Accepted Accounting Principles ("U.S. GAAP"). The Statement of Cash Receipts and Disbursements presents a summary of the cash activity for the period and does not include the impact of future cash flows related to assets and accrued liabilities in conformity with U.S. GAAP. Any differences between the ending book balance and bank balances reflected on MOR 4B would generally be attributable to outstanding checks and in-transit items. NNIII cautions readers not to place undue reliance upon the information contained in this Monthly Operating Report. The results herein are not necessarily indicative of results which may be expected from any other period or for the full year and may not necessarily reflect the combined results and financial position of NNIII in the future.

As part of its restructuring efforts, NNIII is reviewing its assets and liabilities on an ongoing basis, including without limitation with respect to intercompany claims and obligations, and nothing contained in this Monthly Operating Report shall constitute a waiver of any of NNIII's rights with respect to such assets, liabilities, claims and obligations that may exist.

The financial statements contained herein represent the unaudited condensed combined financial statements for NNIII only. NNIII has no ongoing operations or business units, and so this Monthly Operating Report does not contain a Statement of Operations or a Statement of Cash Flows. Instead, this Monthly Operating Report includes a Schedule of Cash Receipts and Disbursements. NNIII's financial statements contained herein have been prepared following the guidance in Financial Accounting Standards Board Accounting Standards Codification 852 "Reorganizations."

The financial statements have been derived from the books and records of NNIII.

**4. Other Current Assets**

Other current assets relate to an income tax receivable from the Government of India. The book value is based on the historical translated US dollar amounts paid to the Indian taxing authorities, but the underlying asset is denominated in and, to the extent paid, would be paid in Indian Rupees and is subject to foreign currency fluctuations, which are not reflected in the book value. The amount of the income tax receivable in local currency is currently estimated to be 9,788,751 Indian Rupees. Due to ongoing proceedings and appeals, this income tax receivable may or may not result in allowed or enforceable amounts due to NNIII, and listing this receivable is not an admission on the part of NNIII that the income tax receivable will ultimately be enforceable or collectible. Although NNIII does not admit that any such rights exist, the receivable also may or may not be subject to set-off, recoupment, netting, or other adjustments, including interest, not reflected in the Schedules that could materially affect the amount ultimately realized.

On January 11, 2018, NNIII received a refund in the amount of 437,188,442 Indian Rupees ($6,764.3 USD) plus interest net of withholding taxes in the amount of 76,060,623 Indian Rupees ($1,176.5 USD) from the Government of India related to its income tax receivable. The refund resulted in a foreign currency exchange loss of $1,454.3. The refund was the result of a favorable ruling in response to an appeal filed by NNIII. Although the taxes were refunded, the ruling was appealed by the Government of India to the High Court. These appeals were dismissed by the High Court in March and April 2018, but the Government of India has further appealed these decisions to the Supreme Court. Due to the current appeals to the Supreme Court, the ultimate resolution of the matter is still unknown.

On May 19, 2020, NNIII filed a motion for an authorization to pursue a settlement of certain tax appeal litigation in India [D.I.s 18819, 18821], which was granted by the U.S. Court on June 4, 2020 (the "Settlement Order") [D.I. 18826]. As a result, NNIII is now authorized to settle such litigation pursuant to the Settlement Order if such settlement is deemed appropriate in its reasonable business judgment at the time of the settlement, without need for further notice to its creditors or order or approval from the U.S. Court. The financial statements will be updated if and when such a settlement is reached to reflect any relevant impact of the settlement.

**5.  Liabilities Subject to Compromise:**

The following tables set forth NNIII's estimated liabilities subject to compromise as of May 31, 2020:

|  | NNIII |
|---|---|
| Trade and other accounts payable | $            - |
| Accounts payable intercompany | 21,840.1 |
| Restructuring liabilities | - |
| Contingent liability for NNI's debt guarantee | - |
| Long-term debt | - |
| Financial obligations | - |
| Pension obligations | 13,462.0 |
| Postretirement obligations other than pensions | - |
| Notes and interest payable intercompany | 51,846.3 |
| Income Taxes Payable | - |
| Other | - |
| Subtotal | $       87,148.4 |
| Claims Distributions (Cumulative) | (15,000.0) |
| **Total liabilities subject to compromise** | **$       72,148.4** |

The accounts payable intercompany balance reflects gross accounts payable without accounting for the netting of any receivables owed to the Debtors by non-Debtor affiliates and does not reflect balances owed between one Debtor and another Debtor.  The Pension Benefit Guaranty Corporation ("PBGC") filed multiple proofs of claim in the U.S. Debtors' cases.  A claim of $624.6 million in respect of the unfunded benefit liability of the Nortel Networks Retirement Income Plan has subsequently been allowed against several U.S. Debtors, including NNIII, with a maximum recovery of $565 million.  In December 2018, the PBGC reached their maximum allowed recovery of $565 million, and therefore, the PBGC will receive no further distributions from NNIII or the U.S. Reorganized Debtors.  In January 2019, NNIII's books and records were adjusted to reduce NNIII's liability to the PBGC to the $13.462 million that NNIII contributed towards the maximum recovery.

On October 31, 2017, NNIII filed a motion with the U.S. Court to authorize an interim distribution to holders of allowed claims against NNIII in the amount of $15 million [D.I. 18488].  The Order Granting Nortel Network India International Inc.'s Motion for an Order Authorizing Interim Distributions to Holders of Allowed Unsecured Claims (the "Interim Distribution Order") was issued on December 1, 2017 [D.I. 18540].  In accordance with the Interim Distribution Order, NNIII made distributions to its unaffiliated holders of allowed unsecured claims on December 15, 2017 in the aggregate amount of $13.8 million.  In January 2020, NNIII made a distribution to NNI in the amount of $1.2 million for its share of the $15 million distribution that had not been previously made.

**6.  Cash Receipts and Disbursements:**

- Other receipts include $2.4 of interest income.

6

**MOR-4B**

**U.S. BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**
**In re: Nortel Networks India International Inc.**
**Case No. 16-11714 (CSS)**
**Existing Bank Account Information**
**Reporting Period: May 1, 2020 through May 31, 2020**
**(Unaudited)**
**(In thousands of U.S. dollars)**

| Legal Entity | Bank | Account Type | Lockbox/Account | Bank Balance |
|---|---|---|---|---|
| Nortel Networks India International Inc. | Wilmington Trust | Investment Account[1] | 108462-000 | 27,464.6 |
| | | | | $   27,464.6 |

(1)   Investment Accounts hold U.S. Treasury securities and investments in money market funds in accordance with the U.S. Court's Order Granting the Debtors a Final Waiver of the Requirements of 11 U.S.C. Section 345(b) [D.I. 3652].

.

**MOR-6**

**U.S. BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**
**In re: Nortel Networks India International Inc.**
**Case No. 16-11714 (CSS)**
**Status of Post-Petition Taxes**
**Reporting Period: May 31, 2020**
**(Unaudited)**

I, John J. Ray III, Principal Officer of NNIII, attest under penalty of perjury and to the best of my knowledge, information and belief, all post-petition federal, state and local taxes of NNIII are current as of May 31, 2020 in all material respects.

_____          June 19, 2020
John J. Ray III, Principal Officer

MOR-8

**U.S. BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**
**In re: Nortel Networks India International Inc.**
**Case No. 16-11714 (CSS)**
**Debtor Questionnaire**
**Reporting Period: May 1, 2020 through May 31, 2020**

| Must be completed each month | Yes | No |
|---|---|---|
| 1. Have any assets been sold or transferred outside the normal course of business this reporting period? If yes, provide an explanation below. | | X |
| 2. Have any bank accounts been opened during the reporting period?  If yes, provide documentation identifying the opened account(s).  If an investment account has been opened provide the required documentation pursuant to the Delaware Local Rule 4001-3. | | X |
| 3. Have any funds been disbursed from any account other than a Debtor-In-Possession account this reporting period? If yes, provide an explanation below. | | X |
| 4. Have all post-petition tax returns been timely filed? If no, provide an explanation below. | X | |
| 5. Are workers compensation, general liability and other necessary insurance coverages in effect? If no, provide an explanation below. | X | |
| 6. Are the Debtors satisfying their undisputed post-petition obligations on a timely basis? | X | |
| 7. Has there been any material change in amount or aging of the Debtors' receivables? | | X |