# **EXHIBIT B**

**Plan Administration Agreement**

PLAN ADMINISTRATION AGREEMENT

This PLAN ADMINISTRATION AGREEMENT (this "Agreement") is made this [●] day of [●], 2021, by and among Owl Hill Advisory LLC ("Owl Hill") and Nortel Networks India International Inc. ("NNIII").

WITNESSETH:

WHEREAS, on January 14, 2009, Nortel Networks Inc. ("NNI") and certain of its subsidiaries and affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, and on July 14, 2009, Nortel Networks (CALA) Inc., a direct subsidiary of NNI, filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code; and

WHEREAS on July 26, 2016, NNIII filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"), which case was consolidated and jointly administered with the Former Debtors' chapter 11 cases for procedural purposes; and

WHEREAS, by the order, dated January 24, 2017, the United States Bankruptcy Court for the District of Delaware confirmed the First Amended Joint Chapter 11 Plan of Nortel Networks Inc. and Certain of its Affiliated Debtors, dated January 23, 2017 (as amended and together with the Plan Supplement and all the schedules and exhibits thereto, the "NNI Plan") pursuant to chapter 11 of the Bankruptcy Code; and

WHEREAS, by the order, dated [●], 2021, the United States Bankruptcy Court for the District of Delaware confirmed the Chapter 11 Plan of Nortel Networks India International Inc., dated [●], 2021 (as amended and together with all the schedules and exhibits thereto, the "Plan") pursuant to chapter 11 of the Bankruptcy Code; and

WHEREAS, in accordance with Section 6.2 of the Plan, certain duties and responsibilities shall be borne by the Plan Administrator; and

WHEREAS, effective upon the Effective Date, NNIII and Wind-Down NNIII desire to appoint Owl Hill to serve as the Plan Administrator under the Plan, and Owl Hill is willing to serve in such capacity, in each case upon the terms and conditions set forth herein; and

NOW, THEREFORE, in consideration of the foregoing and the covenants and agreements set forth herein, the parties hereto agree as follows:

1. Definitions. Capitalized terms used herein without definition shall have the respective meanings assigned to such terms in the Plan.

2. Appointment and Acceptance. NNIII and Wind-Down NNIII hereby appoint Owl Hill to serve as the Plan Administrator under the Plan, and Owl Hill hereby accepts such appointment and agrees to serve in such capacity, in each case effective upon the Effective Date of the Plan (which shall be the effective date of this Agreement). On the Effective Date, compliance with the provisions of the Plan shall become the general responsibility of the Plan Administrator pursuant to and in accordance with the provisions of the Plan and this Agreement.

2

3. <u>Obligations of the Plan Administrator</u>.  Subject to the provisions of Article 6 of the Plan as provided herein, the Plan Administrator shall have the following obligations:

(a) <u>General</u>.  The Plan Administrator shall comply with, and shall cause NNIII and Wind-Down NNIII to comply with, the Plan and the Confirmation Order in connection with the performance of his or her duties hereunder and under the Plan.

(b) <u>Reserves</u>.  The Plan Administrator shall cause NNIII to establish and maintain (i) such reserves as the Plan Administrator deems necessary to provide sufficient Cash to liquidate and wind down NNIII's Estate and (ii) such reserves as the Plan Administrator deems necessary for contingent liabilities, if any, in each case in accordance with the provisions of the Plan.

(c) <u>Distributions</u>.  The Plan Administrator shall cause the Disbursing Agent (which may be the Plan Administrator itself) to make distributions on account of Allowed Claims, other remaining assets and appropriate fees and expenses in accordance with and subject to the terms of the Plan.

(d) <u>Liquidation of Assets</u>.  In accordance with the Plan, the Plan Administrator shall exercise its reasonable business judgment to manage, liquidate or otherwise dispose of any remaining assets of NNIII or Wind-Down NNIII under the Plan and in accordance with applicable law.

(e) <u>Accounts</u>.  The Plan Administrator shall maintain or establish one or more accounts for NNIII into which the Plan Administrator shall deposit all Cash not required or permitted to be deposited into any other account, reserve or escrow.

(f) <u>Books and Records</u>.  The Plan Administrator shall oversee the maintenance of appropriate books, records and accounts for NNIII and Wind-Down NNIII to effectuate the Plan.

(g) <u>Tax Returns</u>.  The Plan Administrator shall administer the tax obligations of NNIII or Wind-Down NNIII, including filing tax returns, paying tax obligations and representing the interest and account of NNIII or its Estate or Wind-Down NNIII before any taxing authority in all matters, including, without limitation, any action, suit, proceeding or audit.

(h) <u>Filings</u>.  The Plan Administrator shall prepare and file any and all informational returns, reports, statements, returns or disclosures relating to NNIII or Wind-Down NNIII that are required hereunder, by any Governmental Unit or applicable law, including, without limitation, to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

(i) <u>Reports</u>.  Unless otherwise ordered by the Bankruptcy Court, the Plan Administrator shall be responsible for preparing, filing and serving (if applicable) all reports required by the Plan, this Agreement or applicable law, pursuant to Section 6.2(g) of the Plan.

(j) <u>Fees</u>.  The Plan Administrator shall be obligated to pay from NNIII's or Wind-Down NNIII's assets, as applicable, fees incurred pursuant to 28 U.S.C. § 1930(a)(6) from

NNIII's Estate's assets until such time as a final decree is entered closing the Chapter 11 Case or the Bankruptcy Court orders otherwise.

  (k) <u>No Other Duties</u>.  Other than the obligations of the Plan Administrator enumerated herein or under the Plan, the Plan Administrator shall have no duties or obligations of any kind or nature respecting implementation of the Plan or this Agreement.

 4. <u>Powers and Rights of the Plan Administrator</u>.

  (a) <u>General</u>.  The Plan Administrator shall retain and have all the rights, powers and duties enumerated hereunder and under the Plan and otherwise necessary to carry out his or her responsibilities hereunder and under the Plan.

  (b) <u>Resolution of Disputed Claims</u>.  The Plan Administrator shall have authority to (i) control and effectuate the Claims reconciliation process, including to allow, object to, seek to subordinate, compromise, enter into protocols for the resolution of, or settle any and all Claims against NNIII and (ii) administer the resolution of any and all relevant Claims against NNIII in accordance with the authority granted under the Plan as well as any claims protocols entered into by NNIII and approved by the Bankruptcy Court prior to the Effective Date, including, without limitation, the Bankruptcy Court's *Order Approving Debtors' Motion for an Order Establishing Procedures to Further the Resolution of Claims* [D.I.16551] (the "<u>Omnibus Settlement Procedures Order</u>") and the *Cross-Border Protocol Establishing Resolution of Claims* [D.I. 3922-2], to the extent such procedures remain applicable.

  (c) <u>Prosecution and Settlement of Litigation Claims</u>.  The Plan Administrator shall have the authority to (i) prosecute all Litigation Claims, including Avoidance Actions, on behalf of NNIII and Wind-Down NNIII, (ii) elect not to pursue any Litigation Claim and (iii) determine whether and when to compromise, settle, abandon, dismiss or otherwise dispose of any Litigation Claim, in each case as the Plan Administrator may determine is in the best interests of NNIII and Wind-Down NNIII.

  (d) <u>Professionals</u>.  The Plan Administrator shall have the authority to (i) utilize the services of Wind-Down NNIII's employees and independent contractors, (ii) employ, retain, utilize supervise and compensate professionals, including, without limitation, claims, disbursing and transfer agents, legal counsel, accountants, experts, independent contractors, employees, other advisors, professionals and Professionals appointed in the Chapter 11 Case, to assist him or her in performing his or her duties hereunder or under the Plan or otherwise represent the interests of and serve on behalf of NNIII and Wind-Down NNIII and (iii) cause Wind-Down NNIII to indemnify such professionals (including those Professionals previously retained during the Chapter 11 Case) from any loss (including reasonable attorneys' fees) incurred in connection with the execution and implementation of the Plan other than a loss due to the indemnified party's willful misconduct, gross negligence, breach of contract or fraud. For the avoidance of doubt, the Plan Administrator shall accede to, and control, all privileges of NNIII and Wind-Down NNIII, including, without limitation, the attorney-client privilege and any protection afforded attorney work product under applicable rules and law.

(e)     <u>Investment of Cash</u>.  The Plan Administrator shall have the authority to invest the Cash of NNIII or Wind-Down NNIII, including any Cash proceeds realized from the liquidation of any assets of NNIII or Wind-Down NNIII, including any Causes of Action, and any income earned thereon in (i) direct obligations on the United States of America or obligations of any agency or instrumentality thereof which are guaranteed by the full faith and credit of the United States of America, (ii) short term obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof or (iii) any other investments that may be permissible under (x) section 345 of the Bankruptcy Code or (y) any order of the Bankruptcy Court entered in the Chapter 11 Case.

(f)     <u>Fees</u>.  The Plan Administrator shall have the authority to incur and pay reasonable and necessary expenses in connection with the performance of duties under the Plan, including the reasonable fees and expenses of professionals retained by the Plan Administrator.

(g)     <u>Insurance</u>.  The Plan Administrator shall have the authority to purchase or create and carry all insurance policies and pay all insurance premiums and costs the Plan Administrator deems necessary, including all insurance coverage reasonably necessary for himself or herself, his or her employees or contractors and any agents or professionals hired or retained by him or her and Wind-Down NNIII.  The Plan Administrator is authorized to retain and renew any and all insurance policies of NNIII providing coverage with respect to any claims.

(h)     <u>Management of Wind-Down NNIII</u>.  In accordance with Section 8.3 of the Plan, the Plan Administrator shall have the authority to appoint the board of directors of Wind-Down NNIII.

(i)     <u>Corporate Existence</u>.  In accordance with Section 8.4 of the Plan, the Plan Administrator shall have the authority to (i) make any filings he or she deems necessary to memorialize the dissolution of NNIII and Wind-Down NNIII under the Plan and (ii) maintain or dissolve Wind-Down NNIII.

(j)     <u>Disposition of Assets</u>. The Plan Administrator shall have the authority to sell or otherwise dispose of, and liquidate, convert into Cash or abandon, any non-Cash assets of Wind-Down NNIII, if any, in a manner compatible with the best interests of the holders of Allowed Claims.  All assets of NNIII or Wind-Down NNIII shall be used and held by the Plan Administrator solely for the purposes contemplated by the Plan, the Confirmation Order and this Agreement.

(k)     <u>Reports</u>. The Plan Administrator shall have the authority to prepare and file any informational returns, reports, statements, returns or disclosures relating to NNIII and Wind-Down NNIII that are required by any Governmental Unit or applicable law; and

(l)     <u>Additional Powers</u>.  The Plan Administrator shall have the authority to exercise all powers and rights, and take all actions contemplated by or provided for in this Agreement, the Plan and the Confirmation Order, including, but not limited to, Section 6.2 of the Plan, and to take any and all other actions necessary or appropriate to implement or consummate this Agreement and the Plan.

5. <u>Compensation and Reimbursement</u>.  The Plan Administrator shall be entitled to receive the following fair and reasonable compensation for his or her services in accordance with his or her prevailing rates:

    (a)    <u>Compensation</u>.

| | Per Hour |
|---|---|
| Senior Managing Director | $1,325 |
| Managing Director | $800 - $950 |
| Senior Director | $700 - $750 |
| Director | $650 - $700 |
| Associate | $450 - $590 |

    (b)    <u>Computation of Hours; Recordkeeping</u>.  The Plan Administrator shall maintain a record of Owl Hill's time expended in fulfilling the duties of the Plan Administrator hereunder and under the Plan that shall include a brief description of such activities.

    (c)    <u>Reimbursement of Expenses</u>.  The Plan Administrator shall be entitled to reimbursement of reasonable expenses incurred in fulfilling the duties of the Plan Administrator hereunder and under the Plan, and shall submit a report of said expenses with each report under Section 2 above.

6. <u>Exculpation; Indemnification</u>.  Subject to the applicable provisions of the Plan, the Plan Administrator shall have no liability whatsoever for any acts or omissions to NNIII or Wind-Down NNIII or to Holders of Claims against or Interests in NNIII or Wind-Down NNIII other than for willful misconduct, fraud or breach of fiduciary duty by the Plan Administrator as determined by a Final Order, *provided, that*, the Plan Administrator shall have no liability for such acts or omissions if approved by the Bankruptcy Court.  Each of NNIII and Wind-Down NNIII shall indemnify and hold harmless the Plan Administrator for any losses, liabilities and costs incurred in such capacity to the fullest extent allowed by Delaware law.

7. <u>Termination of Engagement</u>.  The engagement of the Plan Administrator hereunder shall terminate on the earlier of (a) the Removal (as defined below) of the Plan Administrator by Bankruptcy Court for Cause (as defined below) or the effectiveness of his or her Resignation (as defined below) pursuant to Section 8 hereof and (b) the date the order granting the final decree closing, or dismissing, the Chapter 11 Case becomes a Final Order.

8. <u>Resignation and Removal</u>.

    (a)    <u>Resignation</u>. The Plan Administrator may resign as Plan Administrator hereunder upon delivery of sixty (60) days written notice to the Bankruptcy Court. However, if a successor Plan Administrator has not been appointed by the end of such sixty (60) day period, the current Plan Administrator shall continue as Plan Administrator pursuant to the terms specified herein until such time as a successor is appointed by the Bankruptcy Court.

    (b)    <u>Removal</u>. The Plan Administrator may be removed with Cause by the Bankruptcy Court.  For the purposes of this Agreement, "<u>Cause</u>" shall be defined as: (i) the Plan

Administrator's theft or embezzlement or attempted theft or embezzlement of money or tangible or intangible Assets or property, (ii) the Plan Administrator's violation of any law (whether foreign or domestic) that results in a felony indictment or similar judicial proceeding or (iii) the Plan Administrator's willful misconduct or fraud in the performance of his or her duties.

(c) <u>Simultaneous Removal and Resignation</u>. To the extent that the Plan Administrator is removed pursuant to the terms specified in Section 8(b) above (a "<u>Removal</u>") or the Plan Administrator resigns pursuant to the terms specified in Section 8(a) above (a "<u>Resignation</u>"), and such Plan Administrator is then serving in any other capacity for or on behalf of Wind-Down NNIII or is serving as Disbursing Agent or as trustee of any trust formed pursuant to the Plan (service by the Plan Administrator in each such additional capacity, a "<u>Position</u>" and collectively, the "<u>Positions</u>"), the Plan Administrator shall be deemed to be terminated (for all purposes and without any further action) from each of his or her other Positions upon his or her Removal or Resignation; *provided*, that the indemnification and exculpation provided in Section 6 herein and any insurance coverage provided to the Plan Administrator at the time of the Resignation and Removal shall continue in full force and effect.

(d) <u>Appointment of Successor Plan Administrator</u>. The Plan Administrator shall have the authority to name a successor Plan Administrator, subject to Bankruptcy Court approval. If the Plan Administrator is unable to make such an appointment, counsel to NNIII or Wind-Down NNIII, as applicable, may appoint a successor Plan Administrator, subject to Bankruptcy Court approval. Any order of the Bankruptcy Court approving any such appointment shall specify and establish the date on which such appointment shall be effective. Every successor Plan Administrator, without any further act, deed, conveyance or Bankruptcy Court order, shall become vested with all rights, powers, trusts and duties of the retiring Plan Administrator hereunder and under the Plan; *provided*, *however*, that no Plan Administrator shall be liable for the acts or omissions of any prior or subsequent Plan Administrator.

(e) <u>Continuity</u>. Unless otherwise ordered by the Bankruptcy Court, the termination of the Plan Administrator's engagement hereunder or the Resignation of the Plan Administrator shall not operate to invalidate any action theretofore taken by the Plan Administrator. Moreover, in any such event, the Plan Administrator shall (i) execute and deliver by the effective date of such Removal or Resignation such documents, instruments and other writings as may be reasonably requested by the Bankruptcy Court to effect the Removal or Resignation of the Plan Administrator and the termination of his or her capacities under this Agreement and (ii) assist and cooperate in effecting the assumption of such Plan Administrator's obligations and functions by a successor Plan Administrator.

9. <u>Notices</u>. Any notices or other communications required or permitted hereunder shall be sufficiently given if in writing and personally delivered or sent by registered or certified mail, postage prepaid, return receipt requested, or sent by facsimile, addressed as follows or to such other address as any party shall have given notice of pursuant hereto:

7

>In the case of the Plan Administrator: Owl Hill Advisory LLC
>
>c/o Cleary Gottlieb Steen & Hamilton LLP
>One Liberty Plaza
>New York, NY 10006
>(212) 225-3999 (facsimile)
>Attn:   Lisa M. Schweitzer, Esq.
>
>with a copy to
>
>Morris, Nichols, Arsht & Tunnell, LLP
>1201 North Market Street
>Wilmington, Delaware 19801
>(302) 658-3989 (facsimile)
>Attn:   Derek C. Abbot, Esq.

10. <u>Assignment</u>.  Neither this Agreement nor any of the rights, duties or obligations of any of the parties hereto may be assigned without the prior written consent of the other parties hereto.

11. <u>Governing Law; Jurisdiction</u>.  This Agreement shall be governed and construed in accordance with the laws of the State of Delaware, without giving effect to rules governing the conflict of laws. Without limiting any Person or Entity's right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to interpret and enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder or the transactions contemplated hereby and (ii) any and all actions related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the exclusive jurisdiction and venue of the Bankruptcy Court.  If for any reason the Bankruptcy Court does not or cannot exercise such jurisdiction, then the parties hereby consent to and submit to the jurisdiction and venue of the state and federal courts located in the State of Delaware.

12. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be an original, and which together shall constitute a single instrument.

13. <u>Relationship to the Plan</u>. The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates and is subject to the provisions of the Plan and Confirmation Order.  To that end, the Plan Administrator shall have full power and authority to take any action consistent with the purposes and provisions of the Plan and Confirmation Order.  In the event that the provisions of this Agreement are found to be inconsistent with the provisions of the Plan or Confirmation Order, the provisions of the Confirmation Order and Plan, in that order, shall control; *provided*, *however*, that provisions of this Agreement adopted by amendment and approved by the Bankruptcy Court following substantial consummation (as such term is used in section 1127(b) of the Bankruptcy Code) shall control over provisions of the Plan.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**Nortel Networks India International Inc.**

By: _____
   Name:
   Title:


**Owl Hill Advisory LLC**

By: _____
   Title:  Plan Administrator