**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------- )
                                                           )
*In re*                                                    )     Chapter 11
                                                           )
Nortel Networks Inc., *et al.*,[1]                         )     Case No. 09-10138 (CSS)
                                                           )
                          Wind-Down Debtors.               )     Jointly Administered
                                                           )
                                                           )     **Proposed Hearing date: August 27, 2021 at 1:00 p.m. (ET)**
                                                           )     **Proposed Objections due: August 20, 2021 4:00 p.m (ET)**
---------------------------------------------------------- )
                                                           )
*In re*                                                    )     Chapter 11
                                                           )
Nortel Networks India International Inc.                    )     Case No. 16-11714 (CSS)
                                                           )
                          Debtor-in-Possession.            )     Jointly Administered
                                                           )
---------------------------------------------------------- )

**MOTION BY NORTEL NETWORKS INDIA INTERNATIONAL INC.[2] FOR ENTRY OF
AN ORDER (I) APPROVING ADEQUACY OF INFORMATION CONTAINED IN
DISCLOSURE STATEMENT, (II) ESTABLISHING VOTING RECORD DATE,
(III) APPROVING PROCEDURES FOR SOLICITING, RECEIVING AND
TABULATING VOTES ON THE PLAN, AND (IV) SCHEDULING CONFIRMATION
<u>HEARING DATE AND ESTABLISHING NOTICE AND OBJECTION PROCEDURES</u>**

Nortel Networks India International Inc., as debtor in the above-captioned chapter 11

cases ("<u>NNIII</u>"), hereby moves this Court (the "<u>Motion</u>"), for entry of an order substantially in

the form attached hereto as <u>Exhibit A</u>, pursuant to sections 105(a), 502, 1125, 1126,  1128, and

1129 of chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002,

---

[1]        The Wind-Down Debtors in these chapter 11 cases, along with the last four digits of each Wind-Down Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620) and Nortel Networks (CALA) Inc. (4226).  Contact information for the Former Debtors and their petitions are available at http://dm.epiq11.com/nortel.

[2]        This Disclosure Statement is only a disclosure statement for the Chapter 11 Plan for Nortel Networks India International, Inc.  The First Amended Joint Chapter 11 Plan of Nortel Networks Inc. and Certain of Its Affiliated Debtors [D.I. 17763] was confirmed on January 24, 2017 and went effective on May 8, 2017.

3016, 3017, 3018 and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and 3017-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"): (i) approving the adequacy of the information contained in the *Disclosure Statement for the Chapter 11 Plan of Nortel Networks India International Inc.* filed contemporaneously herewith (the "Proposed Disclosure Statement")[3] for the *Chapter 11 Plan of Nortel Networks India International Inc.*, also filed contemporaneously herewith (as it has and may be further modified, the "Proposed Plan") and the form and manner of the notice of the hearing to consider the Proposed Disclosure Statement; (ii) establishing a voting record date; (iii) approving procedures for soliciting, receiving and tabulating votes on the Proposed Plan, including setting a deadline for filing motions to estimate claims for voting purposes, and approving the forms of ballots; (iv) setting the hearing date and objection deadline for confirmation of the Proposed Plan, and establishing the form and manner of notice of the confirmation hearing; and (v) granting such other and further relief as the Court deems just and proper.  In support of this Motion, NNIII respectfully represents as follows:

## JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      NNIII consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

---

[3]      Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Disclosure Statement and Plan.

3.      The statutory bases for the relief requested herein are sections 105(a), 502, 1125, 1126, 1128, and 1129 of the Bankruptcy Code, as supplemented by Rules 2002, 3016, 3017, 3018 and 3020 of the Bankruptcy Rules and Rules 2002-1 and 3017-1 of the Local Rules.

## BACKGROUND

4.      On January 14, 2009 (the "NNI Petition Date"), Nortel Networks, Inc. ("NNI") and certain of its affiliates (collectively, the "Former Debtors"), other than Nortel Networks (CALA) Inc.,[4] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only.

5.      On July 26, 2016 (the "Petition Date"), NNIII filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which was consolidated and ordered to be jointly administered with the Former Debtors' chapter 11 cases for procedural purposes [D.I. 17090].

6.      The Former Debtors and NNIII continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") previously appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Former Debtors [D.I.s 141, 142].  The order appointing the Committee was made applicable to NNIII's case by order dated August 16, 2016.  No. 15-cv-624 [D.I. 7].  The Committee was dissolved pursuant to Section 15.22 of the NNI Plan on May 8, 2017, the date on which the *First Amended Joint Chapter 11 Plan of Nortel Networks Inc. and Certain of its Affiliated Debtors* (as subsequently amended, the "NNI Plan") [D.I. 17347] became effective.

---

[4]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the Former Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

8.      On the NNI Petition Date, NNIII's and the Former Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC", and together with its affiliates, including NNIII and the Former Debtors, "Nortel"), and certain of its Canadian affiliates (collectively, the "Canadian Debtors")[5] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[6] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates previously commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

9.      Following the NNI Petition Date, Nortel sold its business units and other assets to various purchasers.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

## RELEVANT FACTS

10.      NNIII is a Delaware corporation and a subsidiary of NNI, which is NNIII's sole shareholder.  It acted as a supplier of hardware and software for contracts with certain Nortel

---

[5]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation, as well as Nortel Communications Inc., Architel Systems Corporation and Northern Telecom Canada Limited, which subsequently commenced their own Canadian Proceedings.

[6]      The EMEA Debtors include the following entities: NNUK, Nortel Networks (Ireland) Limited ("NNIR"), Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V, but does not include, for the purposes of the SPSA and this Motion, NNSA.

customers in India.  It sold hardware and software in conjunction with other Nortel affiliates

within existing Nortel business units.  As a result of the sales of Nortel's business units, NNIII

assigned or settled all of its customer relationships and ceased operations in 2009. NNIII has no

employees or customers.  Aside from certain legal and accounting service providers, it has no

suppliers or vendors.  Its primary asset is cash and equivalents held in U.S. accounts, and its

main creditors are its parent NNI, and the Canadian company Nortel Networks Limited ("NNL").

11.     Following the completion of various asset sales that raised around $7.5 billion in

proceeds, NNIII, as well as the Former Debtors, the EMEA Debtors and other parties in interest

in their respective cases, litigated such allocation disputes as well as certain claims in a joint trial

before the Bankruptcy Court and the Canadian Court.

12.     On May 14, 2015, the Bankruptcy Court and the Canadian Court simultaneously

issued opinions deciding the allocation dispute.  Following the denial of reconsideration motions,

numerous parties appealed the decision to the United States District Court for the District of

Delaware, which appeals were certified directly to the United States Court of Appeals for the

Third Circuit, and the Third Circuit granted the parties' petitions for leave to appeal on August 9,

2016.  An appeal was also sought from the Canadian Court ruling.

13.     Subsequently, on October 12, 2016, following a mediation process, NNIII (whose

case had been consolidated with the Former Debtors following the filing of its chapter 11

petition, as described above), the Former Debtors and certain other key parties reached

agreement on the settlement of the various disputes, and filed with the Court their Notice of

Execution of Settlement and Plans Support Agreement [D.I. 17249] (the "SPSA").  The SPSA

provides for the full and final resolution of the litigation between its signatories relating to the

allocation of sale proceeds and certain other claims between the Nortel Affiliates, subject to

various terms and conditions contained therein, and is overwhelmingly supported by the key
parties to that dispute.

14.    As contemplated by the SPSA, Former Debtors filed the NNI Plan and the
*Proposed Disclosure Statement for the First Amended Joint Chapter 11 Plan of Nortel Networks
Inc. and Certain of its Affiliated Debtors* (as subsequently amended, the "NNI Disclosure
Statement") [D.I. 17348] on November 4, 2016, which reflected the terms and conditions of the
SPSA.  Revised versions of the NNI Plan [D.I. 17501] and the NNI Disclosure Statement [D.I.
17502] were filed on December 1, 2016.  The NNI Disclosure Statement was approved by order
dated December 1, 2016 [D.I. 17516] and the Former Debtors solicited their creditors.
Ultimately, the NNI Plan (as further modified and dated January 23, 2017 [D.I. 17763]) was
confirmed by order dated January 24, 2017 [D.I. 17795].  The Court also entered an order
approving the SPSA under Rule 9019, including with regard to NNIII, on January 24, 2017 [D.I.
17794].

15.    Under the NNI Plan, among other things, all existing stock and other forms of
equity or ownership interest of NNI were cancelled, and one new share of NNI common stock
issued to the Plan Administrator to hold for the benefit of the former equity holders in NNI.

16.    On January 24, 2017, the Canadian Court approved the CCAA Plan of
Compromise and Arrangement (the "CCAA Plan") which similarly contemplated the wind-down
of the Canadian debtor companies and the distribution of their remaining assets.

17.    Since prior to the commencement of NNIII's chapter 11 case, NNIII has been
involved in certain disputes with the Indian Taxing Authorities relating to tax obligations
allegedly owed by NNIII.  NNIII disputed the validity and amount of the obligations asserted by
the Indian Tax Authorities (the "Indian Tax Demands"), and also took the position that such

claims were barred as a result of the passing of the Bar Dates and in any event would be disallowed under applicable law if such issues were litigated in the Bankruptcy Court.  In 2006, NNIII engaged Ernst & Young, India to represent it in appealing the Indian Tax Demands and has been actively litigating these appeals since that time (the "Indian Tax Appeal Litigation"). Following a ruling in favor of NNIII in the High Court of India (India's second highest court, the "High Court Decision") and the expiration of the statutory appeal period, NNIII also sought a refund of certain payments made during the appeals process, a portion of which was refunded to NNIII on February 28, 2017.  Subsequent to such payment, however, the Indian Taxing Authorities filed a late appeal of the High Court Decision to the Indian Supreme Court, which was accepted by the Indian Supreme Court over NNIII's objection that the appeal was untimely because the appeal period had passed.

18.    As of this date, the Indian Tax Appeal Litigation remains pending before the Indian Supreme Court; however, NNIII and the Indian Taxing Authorities have agreed to a settlement with respect to the Indian Tax Demands.  Under the settlement, NNIII was required to make a total payment of $3.637 million to the Indian Taxing Authorities, which NNIII paid in January 2021.  NNIII is in the process of completing the required documentation to terminate the Indian Tax Appeal Litigation and believes this settlement, once fully implemented, will finalize all open tax obligations and appeal litigation with the Indian Taxing Authorities.

19.    Contemporaneously with the filing of this Motion, and also as contemplated by the SPSA, NNIII filed the Proposed Plan and Proposed Disclosure Statement with the Court.  In accordance with sections 1122 and 1123 of the Bankruptcy Code, the Proposed Plan contemplates classifying holders of Claims and Interests into various Classes for all purposes,

including with respect to voting on the Proposed Plan.  Holders of Claims and Interests will be

classified as follows:

| Class | Designation | Impairment | Entitlement to Vote |
|-------|-------------|------------|---------------------|
| 1 | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| 2 | Secured Claims | Unimpaired | No (deemed to accept) |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Interests | Impaired | No (deemed to reject) |

20.     As stated in the Proposed Plan, NNIII reserves the right, in accordance with the

Bankruptcy Code and the Bankruptcy Rules, to alter, amend, modify, revoke, or withdraw the

Proposed Plan at any time prior to the entry of the order confirming the Proposed Plan.

**RELIEF REQUESTED**

21.     By this Motion, NNIII seeks entry of an order: (i) approving the adequacy of the

information contained in the Proposed Disclosure Statement and the form and manner of the

notice of the hearing on the Proposed Disclosure Statement; (ii) establishing a voting record date;

(iii) approving procedures for soliciting, receiving and tabulating votes on the Proposed Plan,

including setting a deadline for filing motions to estimate claims for voting purposes, and

approving the forms of ballots;  (iv) setting the hearing date and objection deadline for

confirmation of the Proposed Plan, and establishing the form and manner of notice of the

confirmation hearing; and (v) granting such other and further relief as the Court deems just and

proper.

22.     Specifically, the Order contemplates the following proposed dates and deadlines

for the relief requested[7]:

---

[7]      To the extent of any conflict between the dates in this chart and those in the Disclosure Statement Order, the dates in the Disclosure Statement Order shall control.

| Event | Date/Deadline |
|-------|---------------|
| Filing and Service of Proposed Disclosure Statement | July 20, 2021 |
| Objection Deadline for Disclosure Statement Hearing | August 20, 2021 |
| Disclosure Statement Hearing Date | August 27, 2021 |
| Voting Record Date | September 1, 2021 |
| Complete Solicitation Material Mailings | September 3, 2021 |
| Deadline to Publish Notice of Confirmation Hearing | September 3, 2021 |
| Voting Deadline | September 17, 2021 |
| Plan Objection Deadline | September 17, 2021 |
| Confirmation Hearing Date | September 24, 2021 |

**BASIS FOR RELIEF**

## I.    ADEQUACY OF PROPOSED DISCLOSURE STATEMENT AND NOTICE OF THE DISCLOSURE STATEMENT HEARING

### A.    The Proposed Disclosure Statement Contains Adequate Information

23.    By this Motion, NNIII seeks entry of an Order approving the adequacy of the information contained in the Proposed Disclosure Statement in accordance with section 1125 of the Bankruptcy Code.  Section 1125 requires that a plan proponent provide a disclosure statement that contains "adequate information" regarding the proposed plan.  11 U.S.C. § 1125(b).  Section 1125(a)(1) defines "adequate information" as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan .
> . . .

9

11 U.S.C. § 1125(a)(1).

24.     The primary purpose of a disclosure statement is to provide all material information that creditors and interest holders affected by a proposed plan need to make an informed decision whether to vote for the plan.  See Century Glove, Inc. v. First Am. Bank of New York, 860 F.2d 94, 100 (3d Cir. 1988) ("§ 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote"); see also In re Monnier Bros., 755 F.2d 1336, 1341 (8th Cir. 1985); In re Phoenix Petroleum, Co., 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001); In re Unichem Corp., 72 B.R. 95, 97 (Bankr. N.D. Ill. 1987).

25.     The Third Circuit has acknowledged that "adequate information will be determined by the facts and circumstances of each case."  Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 417 (3rd Cir. 1988) ; see also First Am. Bank of New York v. Century Glove, Inc., 81 B.R. 274, 279 (D. Del. 1988) (noting that adequacy of disclosure for a particular debtor will be determined based on how much information is available from outside sources);  In re RiverVillage Associates, 181 B.R. 795, 804 (E.D. Pa. 1995); In re Phoenix Petroleum Co., 278 B.R. 385, 393, (Bankr. E.D. Pa. 2001); In re Lisanti Foods, Inc., 329 B.R. 491, 507 (Bankr. D.N.J. 2005); In re Galerie Des Monnaies of Geneva, Ltd., 55 B.R. 253, 259 (Bankr. S.D.N.Y. 1985); accord H.R. Rep. No. 95-595, 95th Cong., 2nd Sess. 408-09 (1978) ("Precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis.  Courts will take a practical approach as to what is necessary under the circumstances of each case, such as the cost of preparation of the statements, the need for relative speed in solicitation and confirmation, and, of course, the need for investor protection.").  The determination is "largely within the discretion of the bankruptcy court."  In re A.H. Robins. Inc., 880 F.2d 694, 696 (4th Cir. 1989) (citing Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.), 844 F.2d 1142, 1157 (5th Cir. 1998)).

26.     The Proposed Disclosure Statement is the product of NNIII's review and analysis of the circumstances leading to this chapter 11 case, the chapter 11 case itself and the Proposed Plan.  In drafting its Proposed Disclosure Statement, NNIII sought the assistance and input of its financial and legal advisors, as well as certain other stakeholders.  Each of the foregoing was represented by counsel who either (a) participated in the formulation and documentation of or (b) was afforded the opportunity to review and provide comments on the Proposed Plan, the Proposed Disclosure Statement, and the documents ancillary thereto.

27.     NNIII believes that the Proposed Disclosure Statement contains more than sufficient information for a hypothetical reasonable investor to make an informed judgment about the Proposed Plan, including, without limitation, a description of each of the following topics:

    i.      NNIII's history and businesses;

    ii.      historical information about NNIII's finances and capital structure;

    iii.      NNIII's restructuring efforts, including a description of the factors preceding NNIII's chapter 11 case;

    iv.      the proposed settlement of the allocation of sale proceeds and other matters, as contained in the SPSA;

    v.      the current status of NNIII's chapter 11 case;

    vi.      a summary and analysis of the Proposed Plan;

    vii.      the purposes of the Proposed Plan;

    viii.      the classification and treatment of Claims and Interests;

    ix.      the provisions governing distributions under the Proposed Plan;

    x.      the means for implementing and administering the Proposed Plan;

    xi.      the treatment of executory contracts and unexpired leases;

    xii.      the confirmation and effectiveness of the Proposed Plan;

xiii.    the voting and confirmation procedures;

xiv.    the federal income tax consequences for holders of Claims and Interests.

xv.    the treatment of litigation and other legal proceedings; and

xvi.    the procedures for resolving disputed, contingent and unliquidated Claims or Interests.

28.    Accordingly, NNIII respectfully submits that the Proposed Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code and, on that basis, should be approved.

**B.    Notice of Disclosure Statement Hearing**

29.    Bankruptcy Rule 3017(a) provides, in relevant part:

> [A]fter a disclosure statement is filed in accordance with Rule 3016(b), the court shall hold a hearing on at least 28 days' notice to the debtor, creditors, equity security holders and other parties in interest as provided in Rule 2002 to consider the disclosure statement and any objections or modifications thereto.  The plan and the disclosure statement shall be mailed with the notice of the hearing only to the debtor, any trustee or committee appointed under the [Bankruptcy] Code, the Securities and Exchange Commission and any party in interest who requests in writing a copy of the statement or plan.

Fed. R. Bankr. P. 3017(a).  In addition, Bankruptcy Rule 2002(b) requires notice by mail to the debtors, the trustee, all creditors and all indenture trustees of the time set for filing objections to, and hearing to consider, a disclosure statement.  Bankruptcy Rule 2002(d) requires that equity security holders be given notice of the foregoing in the manner and form directed by the Court.

30.    In accordance with these requirements, NNIII has concurrently filed a *Notice of Hearing to Consider Approval of Disclosure Statement* [D.I. 18869] (the "Disclosure Statement Notice") regarding the hearing to consider approval of the Proposed Disclosure Statement (the "Disclosure Statement Hearing"), such that the Disclosure Statement Hearing will be held on **August 27, 2021 at 1:00 p.m. (Eastern Time)**.  NNIII with the assistance of Epiq Bankruptcy

Solutions, LLC (the "<u>Voting Agent</u>")[8] filed and caused copies of the Disclosure Statement

Notice to be served by first class U.S. mail, postage prepaid, or hand delivery, as appropriate, on

the following parties: (a) all persons or entities that have filed proofs of Claim and/or requests for

payment of Administrative Claims against NNIII; (b) all persons or entities listed in NNIII's

schedules of assets, liabilities, executory contracts and unexpired leases, filed from time to time

and available on NNIII's online docket at http://dm.epiq11.com/nortel (collectively, the

"<u>Schedules</u>"), as holding liquidated, non-contingent and undisputed claims against NNIII; (c)

any other known holders of Claims against or Interests in NNIII ((a)–(c), collectively, the

"<u>Creditor Matrix</u>") (d) the United States Trustee; (e) the Internal Revenue Service; (f) the

Securities and Exchange Commission, (g) the Income Tax Department of India, (h) the India

Department of Revenue, (i) the Canadian Debtors, (j) the Monitor, (k) the EMEA Debtors, and

(l) the United States Attorney for the District of Delaware; and (m) all other parties in interest

that have filed requests for notice pursuant to Bankruptcy Rule 2002 in NNIII's chapter 11 case

(the "<u>General Service List</u>").

     31.     NNIII caused a copy of the Proposed Disclosure Statement, with a copy of the

Plan attached as an exhibit thereto, to be served by first class U.S. mail, postage prepaid, FedEx,

or hand delivery, as appropriate, upon (a) the U.S. Trustee, (b) the Securities and Exchange

Commission, (c) the Income Tax Department of India, (d) the India Department of Revenue, (e)

the Canadian Debtors, (f) the Monitor, (g) the EMEA Debtors, (h) the United States Attorney for

the District of Delaware, and (i) the General Service List and will provide copies of the Proposed

Disclosure Statement and Proposed Plan to any additional party in interest that makes a request

---

[8]     Epiq Bankruptcy Solutions, LLC was appointed as claims, noticing and balloting agent pursuant to the Court's order of January 15, 2009 [D.I. 38] and, consistent with that order, NNIII proposes to utilize the Voting Agent to provide the balloting and solicitation services outlined herein.

for those documents in the manner specified in the Disclosure Statement Notice and Bankruptcy

Rule 3017(a).  In addition, NNIII:  (a) will make copies of the Proposed Disclosure Statement,

the Proposed Plan and this Motion available for parties in interest upon reasonable e-mail or

facsimile request to NNIII's counsel, and (b) have made copies of the Proposed Disclosure

Statement, the Proposed Plan, the Disclosure Statement Notice and this Motion available for free

download at http://dm.epiq11.com/nortel.

### C. Disclosure Statement Objection Procedures

32.    Among other things, the Disclosure Statement Notice identifies the date, time and

place of the Disclosure Statement Hearing; how to obtain copies of the Proposed Plan and

Proposed Disclosure Statement; and the deadline and procedures for asserting objections to the

approval of the Proposed Disclosure Statement.   In particular, the Disclosure Statement Notice

indicates that responses or objections to the Proposed Disclosure Statement, if any, shall: (a) be

in writing; (b) state the name and address of the objector and its interest in NNIII's case; (c)

state, if appropriate, the amount and nature of the objector's Claim or Interest; (d) state the

grounds for the responses or objections and the legal basis therefore; (e) reference with

specificity the text of the Proposed Plan to which the responses or objections are made, and

provide proposed language changes or insertions to the Proposed Plan to resolve the responses or

objections; and (f) be filed with the Court and served on (i) counsel to NNIII and (ii) the U.S.

Trustee, so that the response or objection is **received no later than August 20, 2021 at 4:00 p.m.**

**(Prevailing Eastern Time) (the "Disclosure Statement Objection Deadline").**

33.    NNIII submits that the foregoing notice and objection procedures provide

adequate notice of the Disclosure Statement Hearing and, accordingly, request that the Court

deem such notice as appropriate and in compliance with Bankruptcy Rule 3017.

14

II.   **ESTABLISHMENT OF THE RECORD DATE**

34.      Bankruptcy Rule 3017(d) provides that, for purposes of determining which

holders of Claims or Interests shall receive notice of the Confirmation Hearing and/or who shall

be entitled to vote on the Proposed Plan, "creditors and equity security holders shall include

holders of stock, bonds, debentures, notes and other securities of record on the date the order

approving the disclosure statement is entered or another date fixed by the court, for cause, after

notice and a hearing."  Bankruptcy Rule 3018(a) further provides that "an equity security holder

or creditor whose claim is based on a security of record shall not be entitled to accept or reject a

Proposed Plan unless the equity security holder or creditor is the holder of record of the security

on the date the order approving the disclosure statement is entered or on another date fixed by

the court, for cause, after notice and a hearing."

35.      In accordance with Bankruptcy Rules 3017 and 3018, NNIII requests that this

Court establish September 1, 2021 as the record date (the "Voting Record Date") for purposes of

determining which holders of Claims against or Interests in NNIII's estate are eligible to vote on

the Proposed Plan and to receive the Confirmation Hearing Notice (as defined below).

III.   **PROPOSED SOLICITATION PROCEDURES**

A.      **General Solicitation Procedures**

36.      After the Proposed Disclosure Statement is approved, unless the Court orders

otherwise, Bankruptcy Rule 3017(d) requires NNIII to provide all creditors and Interest holders

of NNIII with materials and notices including the Proposed Plan or a court-approved summary of

the Proposed Plan, the Proposed Disclosure Statement, notice of the time within which

acceptances and rejections of the Proposed Plan may be filed, notice of the time fixed for filing

objections to, and the hearing to consider the confirmation of the Proposed Plan, and to holders

of Claims or Interests entitled to vote on the Proposed Plan, ballots substantially conforming to

the Official Form.

37.    In compliance with Bankruptcy Rule 3017(d), NNIII proposes to distribute the

solicitation materials (collectively, a "Solicitation Package") as provided herein.  NNIII requests

that it be deemed to satisfy its obligations under Bankruptcy Rules 2002(b) and 3017 with

respect to the solicitation of votes and the provision of notice of the hearing on, and the time for

objecting to, confirmation of the Proposed Plan if the following procedures are utilized (the

"Solicitation Procedures"):

> (a)    A notice of approval of the Disclosure Statement and of the date
> fixed by the Court as the Voting Deadline (as defined herein), and the date
> of the hearing regarding, and the time for filing objections to, the
> confirmation of NNIII's Plan (the "Confirmation Hearing Notice"),
> substantially in the form attached as Exhibit B to the Order, is to be served
> by regular mail on or before the date that is three (3) business days after
> the entry of the order approving the Disclosure Statement, or as soon as
> practicable thereafter, upon: (i) all creditors of NNIII identified on NNIII's
> schedules of assets and liabilities dated on or about July 26, 2016 [D.I. 9],
> and any later amendment or supplement thereto (the "Schedules") or in a
> proof of Claim filed in these chapter 11 cases; (ii) all persons known to
> hold Interests; (iii) the Office of the United States Trustee for the District
> of Delaware; and (iv) the Internal Revenue Service.
>
> (b)    On or before the date that is three (3) business days after the entry
> of the order approving the Disclosure Statement, or as soon as practicable
> thereafter, or such other date that the Court may direct, to the extent that
> current versions of such documents have not already been distributed to
> such persons, the Disclosure Statement and the Plan (in either hard copy
> or in .pdf format) will be served by regular mail upon: (i) the holders of
> Claims in Class 3 that are entitled to vote pursuant to the Plan and the
> relevant provisions of the Bankruptcy Code and the Bankruptcy Rules (the
> "Voting Creditors"); (ii) the Office of the United States Trustee for the
> District of Delaware; (iii) the Internal Revenue Service and (iv) any party
> in interest who requests in writing a copy of such documents.
>
> (c)    On or before the date that is five (5) business days after the entry
> of the order approving the Disclosure Statement, or as soon as practicable
> thereafter, or such other date that the Court may direct, appropriate
> Ballots, voting instructions and a pre-addressed return envelope will be
> sent to all Voting Creditors.

(d)     On or before the date that is five (5) business days after the entry of the order approving the Disclosure Statement, or as soon as practicable thereafter, or such other date that the Court may direct, a notice of nonvoting status (the "Notice of Non-Voting Status") will be served, with the Confirmation Hearing Notice, by regular mail on all holders of Claims and Interests in Classes 1, 2 and 4.  Holders of Claims in Classes 1 and 2 will be sent a notice substantially in the form attached as Exhibit C to the Order and holders of Interests in Class 4 will be sent a notice substantially in the form attached as Exhibit D to the Order.

(e)     NNIII will post copies of the Disclosure Statement, the Plan, and the Confirmation Hearing Notice on the Debtors' case information website at http://dm.epiq11.com/nortel and indicate in the Confirmation Hearing Notice that such materials are available on such website.

(f)     NNIII will not be required to mail any Solicitation Packages to any individual or entity at an address from which the Disclosure Statement Hearing Notice was returned by the United States Postal Office as undeliverable unless NNIII is also provided with a more accurate address by the United States Postal Office.

38.     Notwithstanding Bankruptcy Rule 3017, NNIII requests a waiver of the requirement that NNIII mail a copy of the Proposed Plan and Proposed Disclosure Statement to all holders of Claims and Interests in Classes 1, 2 and 4, which are deemed to accept or to reject the Proposed Plan under sections 1126(f) and (g) of the Bankruptcy Code.  As described above, NNIII will make the Proposed Plan and Proposed Disclosure Statement available to such holders, and any other party in interest, at no cost on the Debtors' case information website: http://dm.epiq11.com/nortel, and NNIII will disclose that these materials are available on such website in the Confirmation Hearing Notice, which will be distributed to the holders in Classes 1, 2 and 4.  Thus, any holders of Claims and Interests deemed to accept or reject the Proposed Plan will have free access to these materials.  No Priority Non-Tax Claims or Secured Claims have been filed against NNIII prior to the NNIII Bar Date, and NNI holds the common stock of NNIII.  Under these circumstances, and given that the Proposed Plan and DS are freely available

electronically, NNIII respectfully requests that the Court waive the requirement that NNIII

transmit a copy of the Proposed Plan and the Proposed Disclosure Statement to such persons.

### B.  **Proposed Form of Ballots**

39.     Bankruptcy Rule 3018(c) provides, in relevant part, as follows:

> An acceptance or rejection shall be in writing, identify the plan or
> plans accepted or rejected, be signed by the creditor or equity
> security holder or an authorized agent, and conform to the
> appropriate Official Form.

Fed. R. Bankr. P. 3018(c).  All votes must be cast by using the appropriate ballot.

40.     By this Motion, NNIII seeks approval of the form of Ballots[9] intended for the

solicitation of votes by the Classes of Claims entitled to vote under the Proposed Plan.  Attached

hereto are the forms of Ballots for holders of Allowed Claims in Class 3, the Class entitled to

vote on the Proposed Plan.  The form of the Ballots complies with Bankruptcy Rule 3018(c) and

is based substantially on Official Form No. 314, as modified to address the particular needs of

NNIII's chapter 11 case.

### C.  **Procedures For Temporary Allowance Of Claims and Vote Tabulation**

#### i.  <u>Temporary Allowance of Claims</u>

41.     Section 1126(c) of the Bankruptcy Code provides that:

> A class of claims has accepted a plan if such plan has been accepted by
>
> creditors, other than any entity designated under subsection (e) of this
>
> section, that hold at least two-thirds in amount and more than one-half in
>
> number of the allowed claims of such class held by creditors, other than

---

[9]      The defined terms "<u>Ballots</u>" shall include all ancillary and related information and any amendments or supplements thereto necessary for completing the Ballots.  NNIII reserves the right to amend the Ballots prior to or at the Disclosure Statement Hearing.

> any entity designated under subsection (e) of this section, that have
>
> accepted or rejected such plan.

11 U.S.C. § 1126(c). Bankruptcy Rule 3018(a) further provides that the "court after notice and

hearing may temporarily allow the claim or interest in an amount which the court deems proper

for the purpose of accepting or rejecting a plan."

42.     Solely for the purpose of voting to accept or reject the Proposed Plan, and not for

purposes of the allowance of, or distribution on account of, any Claim, and without prejudice to

the rights of NNIII in any other context (including, without limitation, NNIII's right to also move

to estimate, reduce, disallow or expunge a claim), NNIII proposes that each Claim within a Class

of Claims entitled to vote to accept or reject the Proposed Plan be temporarily allowed in

accordance with the following procedures (the "Temporary Allowance Procedures"):

> (a)     Claims for which a proof of Claim has been timely filed in an
> amount that is undisputed, non-contingent and liquidated will be
> temporarily allowed, for voting purposes only, in the amount set forth on
> the relevant proof of Claim, unless such Claim is subject to an objection
> by NNIII.
>
> (b)     Claims that are listed on NNIII's Schedules as disputed, contingent
> or unliquidated and for which no proof of Claim has been timely filed
> shall not be entitled to vote to accept or reject the Plan.
>
> (c)     Claims for which a proof of Claim has been timely filed for
> unknown or undetermined amounts, or that are wholly contingent,
> unliquidated or disputed (as determined on the face of the claim or after a
> reasonable review of the supporting documentation by NNIII or the
> Voting Agent), shall be temporarily allowed for one dollar ($1.00) for
> voting purposes only, and not for purpose of allowance or distribution.

ii.     Tabulation of Votes

43.     NNIII proposes the following procedures for tabulation of votes for and against

the Proposed Plan (the "Vote Tabulation Procedures"):

(a)      All votes to accept or reject the Plan must be cast by completing the appropriate Ballot. Votes that are cast in any other manner will not be counted.

(b)      Except as provided for in the Order granting this Motion, for purposes of tabulating votes, the amount of a Claim shall be calculated on the basis of the amount of the Allowed Claim on the Record Date.

(c)      Delivery of a Ballot to the Voting Agent by facsimile, email, or any other electronic means will not be valid; only original executed Ballots will be counted.

(d)      Ballots should not be sent to any of NNIII, NNIII's agents (other than the Voting Agent), any administrative agent or indenture trustee (unless specifically instructed to do so), or NNIII's financial or legal advisors, and, unless received by the Voting Agent, if so sent will not be counted.

(e)      All Ballots must be properly completed, executed and ACTUALLY RECEIVED by the Voting Agent on or before 4:00 p.m. (Prevailing Eastern Time) on September 17, 2021 (the "Voting Deadline").

(f)      Pursuant to section 1126(e) of the Bankruptcy Code, a vote may be disregarded if the Court determines, after notice and a hearing, that it was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

(g)      Except to the extent determined by NNIII in its reasonable discretion or as otherwise permitted by the Court, NNIII will not accept or count any Ballots received after the Voting Deadline.

(h)      Whenever a voter submits more than one Ballot voting the same Claim prior to the Voting Deadline, the last properly completed Ballot received shall be deemed to reflect the voter's intent and thus supersede any prior Ballots.

(i)      If a Ballot is signed by trustees, executors, administrators, guardians, attorneys-in-fact, officers of corporations, or others acting in a fiduciary or representative capacity, each such person should indicate such capacity when signing its Ballot and, if so requested by NNIII or the Voting Agent, must submit proper evidence satisfactory to NNIII of its authority to so act.

(j)      NNIII and/or its agents shall have discretion to determine if a Ballot properly complies with these Vote Tabulation Procedures and the voting instructions accompanying the Ballots.

(k)     Any entity entitled to vote to accept or reject the Plan may change its vote before the Voting Deadline by completing and casting a superseding Ballot so that it is actually received on or before such deadline.

(l)     A creditor may not split their vote(s), they must vote all of their Claims to either to accept the Plan or to reject the Plan, or their votes will not be counted.

(m)    If no votes to accept or reject the Plan are received with respect to a particular Class, NNIII will request at the Confirmation Hearing that the Court deem this Class to have accepted the Plan.

(n)     If a proof of Claim has been amended by a later filed proof of Claim, only the later filed amending Claim will be entitled to vote, regardless of whether NNIII has objected to such earlier filed Claim.

(o)     Subject to any contrary order of the Court and except as otherwise set forth herein, NNIII may waive any defects or irregularities as to any particular Ballot at any time, either before or after the Voting Deadline, and any such waivers shall be documented in the vote tabulation certification prepared by the Voting Agent.

44.     NNIII further proposes the following Ballots not be counted or considered for any purpose in determining whether the Proposed Plan has been accepted or rejected, unless otherwise agreed to by NNIII:  (i) any Ballot that is illegible or contains insufficient information to permit the identification of the claimant; (ii) any Ballot cast by a person or entity that does not hold a Claim in a Class entitled to vote to accept or reject the Plan; (iii) any unsigned Ballot; (iv) any Ballot without an original signature; (v) any Ballot marked both to accept and reject the Plan, or not marked to either accept or to reject the Plan; and (vi) any Ballot transmitted to the Voting Agent by facsimile, electronic mail, or other means not specifically approved by this Court.  None of NNIII, the Voting Agent or any other person or entity will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots, nor will any of them incur any liability for failure to provide such notification.

45.     NNIII further proposes that, subject to any contrary order of the Court and except as otherwise set forth herein, it may waive any defects or irregularities as to any particular Ballot at any time, either before or after Voting Deadline, and any such waivers shall be documented in the vote tabulation certification prepared by the Voting Agent.

## IV.    **CONFIRMATION HEARING**

46.     Pursuant to Bankruptcy Rule 3017(c), NNIII hereby requests that this Court enter an order scheduling the hearing on the Confirmation of the Proposed Plan for September 24, 2021 at a time convenient for the Court (the "Confirmation Hearing"), and that the Court establish September 17, 2021 at 4:00 p.m. (Prevailing Eastern Time) as the last date and time for filing and serving objections to confirmation of the Proposed Plan (the "Confirmation Objection Deadline").

47.     Bankruptcy Rule 2002(b) provides that the Court shall hold a hearing on not less than 28-days' notice by mail to creditors, equity security holders and certain other parties in interest of such hearing to consider approval of the time fixed for filing objections to and the hearing to consider the confirmation of a chapter 11 plan.  Bankruptcy Rule 9006(c) provides that "the court for cause shown may in its discretion with or without motion or notice order the [notice] period reduced." Fed. R. Bankr. P. 9006(c)(1).  In accordance with Bankruptcy Rules 2002 and 3017(d) and as described above, NNIII proposes to distribute the Confirmation Hearing Notice to all creditors and Interest holders as part of the Solicitation Package, setting forth (i) the date of approval of the Proposed Disclosure Statement, (ii) the Record Date, (iii) the Voting Deadline, (iv) the Confirmation Objection Deadline, and (v) the time, date and place for the Confirmation Hearing.

48.     Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice."  Fed. R.

Bankr. P. 2002(l).  As discussed above, in addition to mailing the Confirmation Hearing Notice,

NNIII proposes to publish the Confirmation Hearing Notice once each in the *Wall Street Journal*

(National Edition) and the *Economic Times* of India (all editions).  Additionally, NNIII will

publish the Confirmation Hearing Notice electronically at http://dm.epiq11.com/nortel.

      49.    By this Motion, NNIII also specifically requests approval of the provision in the

Confirmation Hearing Notice requiring that responses or objections, if any, to confirmation of

the Proposed Plan: (a) shall be in writing; (b) shall state the name and address of the objector and

its interest in NNIII's case; (c) shall state, if appropriate, the amount and nature of the objector's

Claim or Interest; (d) shall state the grounds for the responses or objections and the legal basis

therefore; (e) shall reference with specificity the text of the Proposed Plan to which the responses

or objections are made, and shall provide proposed language changes or insertions to the

Proposed Plan to resolve the responses or objections; and (f) shall be filed, together with proof of

service, with the Clerk of the United States Bankruptcy Court, District of Delaware, 824 North

Market Street, 3rd Floor, Wilmington, Delaware 19801, with one copy to chambers, such that the

responses or objections are actually received no later than the Confirmation Objection Deadline

by (i) counsel to NNIII and (ii) the U.S. Trustee, at the following addresses:

<u>Counsel for NNIII</u>

| | |
|---|---|
| Cleary Gottlieb Steen & Hamilton LLP | Morris, Nichols, Arsht & Tunnell LLP |
| One Liberty Plaza | 1201 North Market Street, 18th Floor |
| New York, New York 10006 | P.O. Box 1347 |
| (212) 225-3999 (facsimile) | Wilmington, Delaware 19899 |
| Attention:  Lisa M. Schweitzer, Esq. | (302) 658-3989 (facsimile) |
| lschweitzer@cgsh.com | Attention:  Derek C. Abbott, Esq. & |
| | Andrew R. Remming, Esq. |
| | dabbott@morrisnichols.com |
| | aremming@morrisnichols.com |

United States Trustee

Office of the United States Trustee
J. Caleb Boggs Federal Building,
Room 2207, 844 N. King Street,
Wilmington, DE 19801
Attention: David L. Buchbinder, Esq.
david.l.buchbinder@usdoj.gov

50.    NNIII further requests approval of the provision in the Confirmation Hearing

Notice that if a response or objection is not timely filed and served before the Confirmation

Objection Deadline, the responding or objecting party shall be barred from objecting to

confirmation of the Proposed Plan and be precluded from being heard at the Confirmation

Hearing.

## **CONCLUSION**

51.    NNIII believes that approval of the foregoing notice, voting and balloting

procedures, and the Proposed Disclosure Statement is in the best interest of NNIII and its estate.

Obtaining such prior approval will minimize the risk that voting, balloting procedures and voting

tabulations will be subject to challenge at the Confirmation Hearing, and will provide a sound

framework for the solicitation process.  Accordingly, NNIII asks this Court to approve these

procedures and the attached form of Ballots and to declare that such procedures, if followed,

constitute compliance with the plan solicitation provisions of the Bankruptcy Code and

Bankruptcy Rules.

## **NOTICE**

52.    Notice of the Motion has been given via first class mail to the (i) U.S. Trustee,

(ii) the general service list established in these chapter 11 cases, and (iii) the Monitor.  NNIII

submits that under the circumstances no other or further notice is necessary.

## <u>NO PRIOR REQUEST</u>

53.     No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, NNIII respectfully requests that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.


Dated:  July 20, 2021
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*/s/ Andrew R. Remming*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for Nortel Networks India International Inc.*