# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
                      :

*In re*                             :     Chapter 11

                             :

Nortel Networks Inc., *et al.*,[1]        :     Case No. 09-10138 (CSS)

                             :

        Wind-Down Debtors.      :     Jointly Administered

                             :

                             :

---------------------------------------------------------X
                      :

*In re*                             :     Chapter 11

                             :

Nortel Networks India International Inc.  :     Case No. 16-11714 (CSS)

                             :

        Debtor-in-Possession.    :     Jointly Administered

                             :

                             :

---------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF THE
## CHAPTER 11 PLAN OF NORTEL NETWORKS INDIA INTERNATIONAL INC.

**Lisa M. Schweitzer, Esq. (admitted *pro hac vice*)**
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
**One Liberty Plaza**
**New York, NY 10006**

**Derek C. Abbott, Esq. (No. 3376)**
**Andrew R. Remming, Esq. (No. 5120)**
**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
**1201 North Market Street, 16th Floor**
**P.O. Box 1347**
**Wilmington, DE 19899**

*Attorneys for the Debtor and Debtor-in-Possession*     Dated: September 30, 2021

---

[1]      The Wind-Down Debtors in these chapter 11 cases, along with the last four digits of each Wind-Down Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620) and Nortel Networks (CALA) Inc. (4226).  Contact information for the Former Debtors and their petitions are available at http://dm.epiq11.com/nortel.

## Table of Contents

PRELIMINARY STATEMENT ....................................................................................7

BACKGROUND ........................................................................................................8

    A. Procedural History ..........................................................................................8

    B. The Indian Tax Disputes................................................................................9

    C. The Settlement and Plans Support Agreement ...............................................10

    D. The Plan .......................................................................................................10

ARGUMENT ...........................................................................................................11

I.     THE COURT HAS JURISDICTION AND NOTICE HAS PROPERLY BEEN
      GIVEN ...........................................................................................................11

    A. Jurisdiction and Venue...................................................................................11

    B. Notice and Solicitation...................................................................................11

    C. Adequate Notice of Confirmation Hearing......................................................12

II.    THE PLAN MEETS ALL APPLICABLE REQUIREMENTS OF THE
      BANKRUPTCY CODE....................................................................................12

    A. The Plan Complies with Section 1129(a)(1) of the Bankruptcy Code ..............12

        i.   The Plan Satisfies the Classification Requirements of Section 1122 of the
           Bankruptcy Code ..................................................................................13

        ii.  The Plan Satisfies the Mandatory Plan Requirements of Section 1123 of the
           Bankruptcy Code. .................................................................................14

           a.   The Plan Designates Classes of Claims and Interests – § 1123(a)(1)....14

           b.   The Plan Specifies Unimpaired Classes – § 1123(a)(2) .......................14

           c.   The Plan Adequately Specifies the Treatment of Impaired Classes – §
              1123(a)(3) ..........................................................................................14

           d.   The Plan Provides for the Same Treatment for Claims or Interests Within the
              Same Class – § 1123(a)(4).....................................................................15

           e.   The Plan Provides Adequate Means for Its Implementation – § 1123(a)(5) .........15

           f.   The Plan Prohibits the Issuance of Non-Voting Equity Securities –
              § 1123(a)(6) .......................................................................................16

           g.   The Plan Contains Appropriate Provisions with Respect to the Selection of
              Officers, Directors and Trustees – § 1123(a)(7) ....................................16

        iii. The Plan Appropriately Provides for Certain Discretionary Contents as Permitted
           by Section 1123(b) of the Bankruptcy Code............................................16

        iv. The Plan Complies with Section 1123(d) of the Bankruptcy Code............18

    B. The Plan Complies with Section 1129(a)(2) of the Bankruptcy Code ..............19

C. The Plan Has Been Proposed in Good Faith Pursuant to Section 1129(a)(3) of the Bankruptcy Code .................................................................................................19

D. The Plan Provides for Bankruptcy Court Approval of Payments for Services or Costs and Expenses Pursuant to Section 1129(a)(4) of the Bankruptcy Code ...........................21

E. All Necessary Information Regarding Directors and Officers of the Debtors and Wind-Down Debtors Has Been Disclosed Pursuant to Section 1129(a)(5) of the Bankruptcy Code ................................................................................................22

F. The Plan Does Not Require Governmental Regulatory Approval Pursuant to Section 1129(a)(6) of the Bankruptcy Code ...................................................................24

G. The Plan Satisfies the Best Interest of Creditors and Interest Holders Test Pursuant to Section 1129(a)(7) of the Bankruptcy Code .......................................................24

H. Section 1129(a)(8) of the Bankruptcy Code Does Not Preclude Confirmation ...............27

I. The Plan Provides for Payment in Full of All Allowed Priority Claims Pursuant to Section 1129(a)(9) of the Bankruptcy Code .......................................................27

J. At Least One Impaired Class of Claims That Is Entitled to Vote Has Accepted the Plan, Pursuant to Section 1129(a)(10) of the Bankruptcy Code ........................................28

K. The Plan Is Feasible Pursuant to Section 1129(a)(11) of the Bankruptcy Code ..............29

L. The Plan Provides for the Payment of All Fees Under 28 U.S.C. § 1930 Pursuant to Section 1129(a)(12) of the Bankruptcy Code ....................................................29

M. Sections 1129(a)(13)-(16) of the Bankruptcy Code Are Inapplicable..............................30

N. The Plan Complies with Section 1129(b) of the Bankruptcy Code...................................31

O. Section 1129(c) of the Bankruptcy Code Is Inapplicable ................................................31

P. The Plan Complies with Section 1129(d) of the Bankruptcy Code Because It Is Not an Attempt to Avoid Tax Obligations...............................................................31

III.    THE CONFIRMATION ORDER SHOULD BE EFFECTIVE IMMEDIATELY ..........32

CONCLUSION...................................................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship,
526 U.S. 434 (1999)..............................................................................................    25

In re Adelphia Commc'ns Corp.,
368 B.R. 140 (Bankr. S.D.N.Y. 2007)...................................................................    25

In re ANC Rental Corp., Inc.,
278 B.R. 714 (Bankr. D. Del. 2002) .....................................................................    17

In re Apex Oil Co.,
118 B.R. 683 (Bankr. E.D. Mo. 1990) ..............................................................    23, 24

In re Armstrong World Indus.,
348 B.R. 136 (D. Del. 2006)..................................................................................    13

In re Beyond.com Corp.,
289 B.R. 138 (Bankr. N.D. Cal. 2003) ..................................................................    23

In re Drexel Burnham Lambert Grp., Inc.,
138 B.R. 723 (Bankr. S.D.N.Y. 1992)..............................................................    21–22

In re Genesis Health Ventures, Inc.,
266 B.R. 591 (Bankr. D. Del. 2001) .................................................................    20, 21

In re Jersey City Med. Ctr.,
817 F.2d 1055 (3d Cir. 1987)................................................................................    13

In re Lapworth,
No. 97-34529 (DWS), 1998 WL 767456 (Bankr. E.D. Pa. Nov. 2, 1998).........    19

In re Printing Dimensions, Inc.,
153 B.R. 715 (Bankr. D. Md. 1993) ......................................................................    22

In re S & W Enter.,
37 B.R. 153 (Bankr. N.D. Ill. 1984) ..................................................................    12–13

In re Sherwood Square Assocs.,
107 B.R. 872 (Bankr. D. Md. 1989) ......................................................................    23

In re Stratford Assocs. Ltd. P'ship,
145 B.R. 689 (Bankr. D. Kan. 1992) ................................................................. 23

In re Texaco, Inc.,
84 B.R. 893 (Bankr. S.D.N.Y. 1988) ................................................................. 24

In re Trans World Airlines, Inc.,
261 B.R. 103 (Bankr. D. Del. 2001) ............................................................. 17–18

In re W.R. Grace & Co.,
475 B.R. 34 (D. Del. 2012) ...................................................................... 19, 20

John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.,
987 F.2d 154 (3d Cir. 1993) ......................................................................... 13

Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.,
756 F.2d 1043 (4th Cir. 1985) ....................................................................... 18

Nat'l Labor Relations Bd. v. Bildisco & Bildisco (In re Bildisco),
682 F.2d 72 (3d Cir. 1982), aff'd, 465 U.S. 513 (1984) ....................................... 17

Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.,
872 F.2d 36 (3d Cir. 1989) ........................................................................... 17

## Rules and Statutes

11 U.S.C. § 101 .................................................................................... 23, 28

11 U.S.C. § 1114 ....................................................................................... 30

11 U.S.C. § 1122 ................................................................................... 12–13

11 U.S.C. § 1123 ................................................................................... 12–19

11 U.S.C. § 1125 ....................................................................................... 19

11 U.S.C. § 1126 ................................................................................... 19, 27

11 U.S.C. § 1129 ................................................................................... passim

28 U.S.C. § 157 ........................................................................................ 11

28 U.S.C. § 1334 ...................................................................................... 11

28 U.S.C. § 1408 ...................................................................................... 11

28 U.S.C. § 1409 .................................................................................................... 11

28 U.S.C. § 1930 .................................................................................................... 29

Fed. R. Bankr. P. 2002 ........................................................................................... 12

Fed. R. Bankr. P. 3018 ........................................................................................... 12

Fed. R. Bankr. P. 3019 ........................................................................................... 12

Fed. R. Bankr. P. 3020 ....................................................................................... 32–33

Fed. R. Bankr. P. 6004 ...................................................................................... 12, 32

Fed. R. Bankr. P. 6006 ...................................................................................... 12, 32

Fed. R. Bankr. P. 9007 ........................................................................................... 12

Fed. R. Bankr. P. 9014 ........................................................................................... 12

Fed. R. Bankr. P. 9019 ........................................................................................... 10

## <u>Other Authorities</u>

H.R. Rep. No. 95-595 (1977) .............................................................................. 12, 19

S. Rep. No. 95-989 (1978) .................................................................................. 12, 19

Nortel Networks India International Inc. ("NNIII"), as the debtor in the above-captioned chapter 11 case (the "Chapter 11 Case"), hereby submits this memorandum of law (this "Memorandum") in support of entry of an order (the "Confirmation Order") confirming the Chapter 11 Plan of Nortel Networks India International Inc., dated August 26, 2021 (as subsequently amended, the "Plan")[2] pursuant to section 1129 of the Bankruptcy Code.  In support of this Memorandum, on September 29, 2021, NNIII filed on behalf of Epiq Corporate Restructuring, LLC[3], in its capacity as NNIII's solicitation and tabulation agent, the Declaration of Stephenie Kjontvedt on Behalf of Epiq Corporate Restructuring, LLC, Regarding Voting and Tabulation of Ballots Cast on the Chapter 11 Plan of Nortel Networks India International Inc. (the "Voting Report").

## PRELIMINARY STATEMENT

1.      NNIII commenced the Chapter 11 Case to preserve and administer its assets in a manner consistent with its and the Former Debtors' larger restructuring efforts.  Among other things, NNIII sought chapter 11 protection to continue prosecuting its Indian tax appeals and to resolve certain Claims, including intercompany Claims, against NNIII.  NNIII has achieved each of these objectives and is now poised to emerge from bankruptcy pursuant to a fully consensual plan that will allow NNIII to complete an orderly wind down of its affairs, subject to the final resolution of a rectification application with the Indian Taxing Authorities for tax years 2018-2019.

2.      NNIII has worked hard to develop the Plan and to bring the Chapter 11 Case to its conclusion.  As set forth in detail herein, the Plan resolves the Chapter 11 Case and complies with all applicable provisions of the Bankruptcy Code.  In light of such compliance and the

---

[2]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.
[3]      Formerly Epiq Bankruptcy Solutions, LLC.

unanimous support of the sole Impaired Class entitled to vote on the Plan, NNIII respectfully requests that the Court confirm the Plan and enter the Confirmation Order.

## BACKGROUND

### A.    Procedural History

3.    On July 26, 2016 (the "Petition Date"), NNIII, a Delaware corporation and a wholly-owned subsidiary of Nortel Networks Inc. ("NNI"), filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").  On January 14, 2009 (the "Initial Petition Date"), the Former Debtors, other than NNCALA, filed their respective voluntary petitions for relief under chapter 11 of the Bankruptcy Code and, on July 14, 2009, NNCALA filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, with the Chapter 11 Case, the "Chapter 11 Cases").  The Chapter 11 Case was ordered to be jointly administered for procedural purposes with the other Chapter 11 Cases under Case No. 09-10138 (CSS), provided that a plan has already been confirmed and become effective for the Former Debtors.

4.    NNIII continues to operate as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As a result of the sales of Nortel's business units, NNIII assigned or settled all of its customer relationships and ceased operations in 2009.  NNIII has no employees or customers at this time.  Aside from certain legal and accounting service providers, NNIII also has no suppliers or vendors.  Its primary asset is cash and equivalents held in U.S. accounts, and its main creditors are its parent, NNI, and Nortel Networks Limited, a Canadian company that has undergone its own CCAA proceeding.

5.    A statutory committee of unsecured creditors was appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code on January 26, 2009 (as reconstituted from time to time, the "Creditors' Committee").  The Creditors' Committee was dissolved

pursuant to Section 15.22 of the NNI Plan on May 8, 2017, the date on which the NNI Plan

became effective.

**B.    The Indian Tax Disputes**

6.      Since prior to the commencement of NNIII's Chapter 11 Case, NNIII has been

involved in certain disputes with the Indian Taxing Authorities relating to tax obligations

allegedly owed by NNIII.  NNIII disputed the validity and amount of the obligations asserted by

the Indian Taxing Authorities (the "Indian Tax Demands"), and also took the position that such

claims were barred as a result of the passing of the bar dates and in any event would be

disallowed under applicable law if such issues were litigated in the Bankruptcy Court.  In 2006,

NNIII engaged Ernst & Young, India to represent it in appealing the Indian Tax Demands and

has been actively litigating these appeals since that time (the "Indian Tax Appeal Litigation").

Following a ruling in favor of NNIII (the "High Court Decision") in India's second highest court,

the High Court of India, and the expiration of the statutory appeal period, NNIII also sought a

refund of certain payments made during the appeals process, a portion of which was refunded to

NNIII on February 28, 2017.  Subsequent to such payment, however, the Indian Taxing

Authorities filed a late appeal of the High Court Decision to the Indian Supreme Court, which

was accepted by the Indian Supreme Court over NNIII's objection that the appeal was untimely

because the appeal period had passed.

7.      On June 4, 2020, the Court entered an order [D.I. 18826] authorizing NNIII to

pursue a settlement of the Indian Tax Appeal Litigation with the Indian Taxing Authorities and

to settle such litigation for up to a specified maximum settlement amount without the need for

further notice or approval from the Court.  NNIII and the Indian Taxing Authorities agreed to a

settlement with respect to the Indian Tax Demands pursuant to which NNIII was required to

make a total payment of $3.637 million to the Indian Taxing Authorities, which NNIII paid in

January 2021.  On September 13, 2021, the Indian Supreme Court entered an order terminating

the Indian Tax Appeal Litigation.  NNIII is in the process of completing a rectification

application with the Indian Taxing Authorities for tax years 2018-2019 and believes that NNIII's

settlement with the Indian Taxing Authorities, once fully implemented, will finalize all open tax

obligations and appeal litigation with the Indian Taxing Authorities.

>        **C.        The Settlement and Plans Support Agreement**

8.        On October 12, 2016, NNIII and the other SPSA Parties executed an agreement

settling litigation in relation to the Allocation Dispute (such agreement, the "SPSA").  The SPSA

provides for a full and final settlement of the Allocation Dispute and certain other matters among

the SPSA Parties.  Approval of the SPSA as to NNIII under Bankruptcy Rule 9019 was a

condition precedent to the NNI Plan Effective Date.  In addition, under the terms of the SPSA,

NNIII is required to include certain provisions of the SPSA as part of its Plan.

9.        On December 16, 2016, NNIII and the Former Debtors filed a motion seeking

approval of the SPSA pursuant to Bankruptcy Rule 9019.  On January 24, 2017, the Bankruptcy

Court entered an order (the "9019 Approval Order") approving the SPSA.  As described in the

Disclosure Statement, in accordance with the terms of the SPSA, NNL's "Book Intercompany

Claim" against NNIII in the amount of $17,695,763 and NNI's "Book Intercompany Claim"

against NNIII in the amount of $53,663,414 were thereby allowed as general unsecured claims

against NNIII, and were entitled to receive distributions on a *pari passu* basis with other general

unsecured claims against NNIII.  Additional information regarding the SPSA can be found in

Section III.H.3 of the NNI Disclosure Statement.

>        **D.        The Plan**

10.        On July 20, 2021, NNIII filed with this Court its proposed Chapter 11 Plan of

Nortel Networks India International Inc. [D.I. 18865] and the accompanying disclosure statement

[D.I. 18866], and each was revised on August 12, 2021 [D.I.s 18874 and 18875].  The Court

approved the Disclosure Statement and the solicitation procedures for soliciting votes on the Plan

by an order entered on August 25, 2021 [D.I. 18884] (the "<u>Disclosure Statement Approval</u>

<u>Order</u>").  The solicitation version of the Plan [D.I. 18887] and Disclosure Statement [D.I. 18888]

were filed by NNIII on August 30, 2021.

  11. This Court has scheduled a hearing (the "<u>Confirmation Hearing</u>") for October 5,

2021, at 11:00 a.m. (prevailing Eastern Time) to consider confirmation of the Plan.

<b><u>ARGUMENT</u></b>

**I.** **<u>THE COURT HAS JURISDICTION AND NOTICE HAS PROPERLY BEEN GIVEN</u>**

  **A.** **Jurisdiction and Venue**

  12. This Court has jurisdiction over the Chapter 11 Case pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This

matter is a core proceeding under 28 U.S.C. § 157(b)(2), and this Court has exclusive jurisdiction

to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code

and should be confirmed.

  **B.** **Notice and Solicitation**

  13. In accordance with the Disclosure Statement Approval Order and Bankruptcy

Rule 3017(d), the Debtors, through their voting agent, Epiq Corporate Restructuring, LLC (the

"<u>Voting Agent</u>") served ballots, election forms and associated documents on all Holders of

Claims and Interests in the Debtors, as appropriate, as follows: (1) for all parties in Classes 1, 2

and 4, a Confirmation Hearing Notice and Notice of Non-Voting Status (each as defined in the

Disclosure Statement Approval Order) and (2) for all parties in Class 3 entitled to vote pursuant

to the relevant provisions of the Bankruptcy Code, a Confirmation Hearing Notice, pre-

addressed, pre-stamped return envelopes, the Disclosure Statement with all exhibits, including

the Plan, and appropriate Ballots.  <u>See</u> Aff. of Service of Solicitation Materials [D.I. 18889] (the

"<u>Solicitation Affidavit</u>").

### C.    Adequate Notice of Confirmation Hearing

14.    In accordance with Bankruptcy Rules 2002, 3018, 3019, 6004, 6006, 9007 and

9014 and the Disclosure Statement Approval Order, including the solicitation procedures set

forth therein, adequate notice of (i) the time for filing objections to confirmation of the Plan and

the transactions contemplated thereby, (ii) the Confirmation Hearing and (iii) the proposed

rejection of executory contracts and unexpired leases set forth in the Plan was provided to all

Holders of Claims and Interests, counterparties to the Rejected Contracts, if any, and other

parties in interest entitled to receive such notice under the Bankruptcy Code and the Bankruptcy

Rules.  <u>See</u> Solicitation Aff.  No other or further notice of the Confirmation Hearing is necessary

or required.

### II.    <u>THE PLAN MEETS ALL APPLICABLE REQUIREMENTS OF THE BANKRUPTCY CODE</u>

15.    NNIII hereafter demonstrates that the Plan complies with the requirements for

confirmation of a chapter 11 plan enumerated in the Bankruptcy Code.

### A.    The Plan Complies with Section 1129(a)(1) of the Bankruptcy Code

16.    Under section 1129(a)(1) of the Bankruptcy Code, a plan must "compl[y] with

the applicable provisions of [the Bankruptcy Code]."  11 U.S.C. § 1122(a)(1).  The legislative

history of section 1129(a)(1) explains that this provision also encompasses the requirements of

sections 1122 and 1123 of the Bankruptcy Code, which govern the classification of claims and

the contents of a plan of reorganization, respectively.  S. Rep. No. 95-989, at 126 (1978); H.R.

Rep. No. 95-595, at 412 (1977); <u>In re S & W Enter.</u>, 37 B.R. 153, 158 (Bankr. N.D. Ill. 1984)

("An examination of the Legislative History of [section 1129(a)(1)] reveals that although its scope is certainly broad, the provisions it was most directly aimed at were sections 1122 and 1123.").  As explained below, the Plan complies with the requirements of sections 1122, 1123 and 1129 of the Bankruptcy Code, as well as other applicable provisions.

<blockquote>

i.      The Plan Satisfies the Classification Requirements of Section 1122 of the Bankruptcy Code
</blockquote>

17.      Section 1122 provides, in pertinent part, that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."  11 U.S.C. § 1122(a).  This is not to say that all substantially similar claims or interests must be grouped in the same class, but rather, that all claims or interests designated to a particular class be substantially similar to each other.  See In re Armstrong World Indus., 348 B.R. 136, 159 (D. Del. 2006).  The Court of Appeals for the Third Circuit, among others, has recognized that plan proponents have significant flexibility in placing similar claims into different classes, provided there is a rational basis to do so.  See John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs., 987 F.2d 154, 158–59 (3d Cir. 1993) (holding that as long as each class represents a voting interest that is "sufficiently distinct and weighty to merit a separate voice in the decision whether the proposed reorganization should proceed," the classification is proper); In re Jersey City Med. Ctr., 817 F.2d 1055, 1061 (3d Cir. 1987) (allowing a plan proponent to group similar claims in different classes, but recognizing that separate classes of claims must be reasonable).

18.      The Plan classifies Claims against and Interests in NNIII into four Classes, namely: (a) Class 1 – Priority Non-Tax Claims; (b) Class 2 – Secured Claims; (c) Class 3 – General Unsecured Claims; and (d) Class 4 – Interests.  Plan § 3.2.  Each Class comprises only Claims or Interests that are substantially similar to one another, and the Classes themselves are

all based on valid business, factual or legal considerations.  Secured Claims are classified

separately from unsecured Claims.  All Interests in NNIII occupy a separate class.  No entity has

objected to the Plan based on the classification of Claims or Interests.  Accordingly, the Plan

meets the classification requirements of section 1122 of the Bankruptcy Code.

>       ii.      The Plan Satisfies the Mandatory Plan Requirements of Section 1123 of
>                the Bankruptcy Code.

>                a.      *The Plan Designates Classes of Claims and Interests – §*
>                        *1123(a)(1)*

19.      Section 1123(a)(1) of the Bankruptcy Code requires a plan to designate classes of

claims and interests.  11 U.S.C. § 1123(a)(1).  As described above, Section 3.2 of the Plan

designates four Classes of Claims and Interests.  The Plan, therefore, complies with section

1123(a)(1) of the Bankruptcy Code.

>                b.      *The Plan Specifies Unimpaired Classes – § 1123(a)(2)*

20.      Section 1123(a)(2) of the Bankruptcy Code requires that the Plan "specify any

class of claims or interests that is not impaired under the plan."  11 U.S.C. § 1123(a)(2).  The

Plan meets this requirement by identifying Classes 1 and 2 as Unimpaired.  Plan §§ 4.1–4.2.

Administrative Expense Claims, Professional Claims and Priority Tax Claims, which are not

classified under the Plan, also are Unimpaired.  Plan §§ 2.1, 2.3 and 2.4.  The Plan, therefore,

complies with section 1123(a)(2) of the Bankruptcy Code.

>                c.      *The Plan Adequately Specifies the Treatment of Impaired Classes*
>                        *– § 1123(a)(3)*

21.      Section 1123(a)(3) of the Bankruptcy Code requires that the Plan "specify the

treatment of any class of claims or interests that is impaired under the plan."  11 U.S.C. §

1123(a)(3).  The Plan meets this requirement by setting forth the treatment of the Impaired

Classes under the Plan, which are Classes 3 and 4.  Plan §§ 4.3–4.4.  The Plan, therefore,

complies with section 1123(a)(3) of the Bankruptcy Code.

> d.   *The Plan Provides for the Same Treatment for Claims or Interests Within the Same Class – § 1123(a)(4)*

22.     Section 1123(a)(4) of the Bankruptcy Code requires that the Plan "provide the

same treatment for each claim or interest of a particular class, unless the holder of a particular

claim or interest agrees to a less favorable treatment of such particular claim or interest."  11

U.S.C. § 1123(a)(4).  The Plan meets this requirement because Holders of Allowed Claims or

Interests will receive the same rights and treatment as other Holders of Allowed Claims or

Interests in the same Class.

> e.   *The Plan Provides Adequate Means for Its Implementation – § 1123(a)(5)*

23.     Section 1123(a)(5) of the Bankruptcy Code requires that the Plan provide

"adequate means" for its implementation.  11 U.S.C. § 1123(a)(5).  The Plan and other related

documents provide adequate and proper means for the Plan's implementation, and NNIII will

have sufficient Cash to make all payments prescribed pursuant to the Plan.  Moreover, the Plan

provides adequate means for its implementation, including, without limitation:  (a) the formation

and corporate governance of Wind-Down NNIII; (b) the incorporation of the settlements and

terms incorporated into the SPSA; (c) the authorization of corporate action, including any

transactions necessary to implement the Plan; (d) the exemption from certain transfer taxes and

recording fees; (e) the establishment of the Administrative Expense Claims Reserve; and (f) the

Allowance and settlement of certain intercompany claims and other Claims against NNIII.

Therefore, NNIII submits that the Plan provides adequate means for its implementation and

satisfies Section 1123(a)(5) of the Bankruptcy Code.

f.  *The Plan Prohibits the Issuance of Non-Voting Equity Securities –
§ 1123(a)(6)*

24.    Section 1123(a)(6) of the Bankruptcy Code requires that a debtor's corporate

constituent documents prohibit the issuance of non-voting equity securities.  11 U.S.C. §

1123(a)(6).  Section 8.5 of the Plan provides that the certificate of incorporation and by-laws of

Wind-Down NNIII shall include, among other things, such a provision, but only to the extent

required by section 1123(a)(6) of the Bankruptcy Code.  Wind-Down NNIII's proposed amended

corporate constituent documents, included as Exhibit D to the Plan, do precisely this.  Therefore,

the Plan complies with section 1123(a)(6) of the Bankruptcy Code.

g.  *The Plan Contains Appropriate Provisions with Respect to the
Selection of Officers, Directors and Trustees – § 1123(a)(7)*

25.    Section 1123(a)(7) of the Bankruptcy Code requires that the Plan's provisions

with respect to the manner of selection of any director, officer or trustee, or any other successor

thereto, be "consistent with the interests of creditors and equity security holders and with public

policy."  11 U.S.C. § 1123 (a)(7).  Section 8.3 of the Plan provides that the Plan Administrator

shall have the power to select the director of Wind-Down NNIII and that the current officers of

Wind-Down NNIII shall continue to serve in such capacity in accordance with applicable non-

bankruptcy law.  Plan Exhibit C identifies the individuals that will serve as officers and the

director of Wind-Down NNIII:  John J. Ray, III; Kathryn Schultea; and Mary Cilia.  Each has

extensive experience with NNIII and the claims against NNIII and their continued involvement

in the wind down of NNIII and implementation of the Plan is consistent with the interests of

Holders of Claims and Interests and with public policy.  The Plan therefore satisfies section

1123(a)(7) of the Bankruptcy Code.

iii.  The Plan Appropriately Provides for Certain Discretionary Contents as
Permitted by Section 1123(b) of the Bankruptcy Code

26.    Section 1123(b) of the Bankruptcy Code sets forth various discretionary provisions that may be incorporated into a chapter 11 plan.  Among other things, section 1123(b) provides that a plan may:  (i) impair or leave unimpaired any class of claims or interests; (ii) provide for the assumption or rejection of executory contracts and unexpired leases; (iii) provide for the settlement or adjustment of any claim or interest belonging to the debtor or the estates; and (iv) include any other appropriate provision not inconsistent with the applicable provisions of the Bankruptcy Code.  11 U.S.C. § 1123(b)(1)-(3)(A), (6).

27.    Consistent with section 1123(b) of the Bankruptcy Code, the Plan (i) impairs certain Claims and Interests (specifically, those in Classes 3 and 4); (ii) leaves Unimpaired other Claims (specifically, those in Classes 1 and 2) and (iii) provides for the rejection of all executory contracts and unexpired leases other than those that have been assumed, assumed and assigned or rejected pursuant to previous orders of the Bankruptcy Court prior to the Confirmation Date or with respect to which NNIII has not otherwise Filed a Notice of Assumption and Assignment or obtained an order assuming, assuming and assigning or rejecting the contract or lease prior to the Confirmation Date.

28.    Courts routinely approve a debtor's assumption, assumption and assignment or rejection of executory contracts or unexpired leases where such decision is made in the exercise of such debtor's sound business judgment and benefits its estate.  See, e.g., Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp., 872 F.2d 36, 39 (3d Cir. 1989); see also Nat'l Labor Relations Bd. v. Bildisco & Bildisco (In re Bildisco), 682 F.2d 72, 79 (3d Cir. 1982), aff'd, 465 U.S. 513 (1984); In re ANC Rental Corp., Inc., 278 B.R. 714, 723 (Bankr. D. Del. 2002).  The business judgment standard requires that the court approve the debtor's business decision unless that judgment is the product of bad faith, whim or caprice.  See In re Trans World Airlines, Inc., 261

B.R. 103, 121 (Bankr. D. Del. 2001); see also Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043, 1047 (4th Cir. 1985).  NNIII's decisions regarding executory contracts are the result of the exercise of NNIII's sound business judgment and should therefore be approved.

29.     Also consistent with section 1123(b), the Plan includes (i) the release by Holders of their Claims against and Interests in NNIII and Wind-Down NNIII; (ii) the consensual release of certain Claims against and Interests in NNIII by the Plan Released Parties; (iii) the release by each of the Debtor Releasing Parties of the other SPSA Released Parties, as provided in Section 8 of the SPSA; (iv) an exculpation provision; and (v) an injunction provision prohibiting parties from commencing or continuing any action or other proceeding on any released Claim or Interest, enforcing or attaching any properties or interests of NNIII or Wind-Down NNIII, creating or perfecting any encumbrance, asserting any right of setoff, subrogation or recoupment, acting or proceeding in a manner that does not conform with the Plan and taking actions to interfere with the consummation or implementation of the Plan.  See Plan Art. 13.  As set forth in full detail in the Disclosure Statement and the Plan, these releases, exculpations and injunctions are the product of a global compromise and settlement with various parties in interest in the Chapter 11 Case, are in return for substantial consideration and are reasonably tailored and necessary for NNIII to exit chapter 11.  Parties that voted to accept the Plan consented to the releases.  See Disclosure Statement Approval Order Ex. C (ballots).  Parties that rejected the Plan were deemed to opt-out of the releases.  As such, the releases, exculpations and injunctions are appropriate.

iv.     The Plan Complies with Section 1123(d) of the Bankruptcy Code

30.     Section 1123(d) of the Bankruptcy Code states that "if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with

the underlying agreement and applicable nonbankruptcy law." 11 U.S.C. § 1123(d).  The Plan

does not propose to assume any executory contract or cure a default under any such contract.

Accordingly, the Plan complies with section 1123(d) of the Bankruptcy Code.

> **B.    The Plan Complies with Section 1129(a)(2) of the Bankruptcy Code**

31.     NNIII, as the Plan proponent, satisfies section 1129(a)(2) of the Bankruptcy

Code, which requires that the proponent of a plan of reorganization comply with the applicable

provisions of the Bankruptcy Code.  The legislative history of section 1129(a)(2) of the

Bankruptcy Code indicates that this provision is intended to encompass the disclosure and

solicitation requirements set forth in sections 1125 and 1126 of the Bankruptcy Code.  S. Rep.

No. 95-989, at 26 (1978); H.R. Rep. No. 95-595, at 407 (1977) ("Paragraph (2) [of section

1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter

11, such as section 1125 regarding disclosure."); see In re Lapworth, No. 97-34529 (DWS), 1998

WL 767456, at *3 (Bankr. E.D. Pa. Nov. 2, 1998) ("The legislative history of § 1129(a)(2)

specifically identifies compliance with the disclosure requirements of § 1125 as a requirement of

§ 1129(a)(2).").  As discussed in *Section I.B. – Notice and Solicitation* above, NNIII has

complied with sections 1125 and 1126 of the Bankruptcy Code regarding disclosure and

solicitation of the Plan.

> **C.    The Plan Has Been Proposed in Good Faith Pursuant to Section 1129(a)(3) of the Bankruptcy Code**

32.     The Third Circuit has held that the "touchstone" of a section 1129(a)(3) good faith

inquiry is whether the plan will "achieve a result consistent with the objectives and purposes of

the Bankruptcy Code."  In re W.R. Grace & Co., 475 B.R. 34, 87 (D. Del. 2012), aff'd 729 F.3d

332 (3d Cir. 2013) (citations omitted).  The factors that a court should consider in making a

determination of good faith are:  (1) whether the plan fosters a result consistent with the

Bankruptcy Code's objectives; (2) whether the plan has been proposed with honesty and good intentions and with a basis for expecting that reorganization can be effected; and (3) whether the plan exhibited fundamental fairness in dealing with the creditors.  See In re Genesis Health Ventures, Inc., 266 B.R. 591, 609 (Bankr. D. Del. 2001); see also In re W.R. Grace, 475 B.R. at 87.

33.     NNIII's Plan unequivocally meets all of these standards.  First, given that "[t]he determination of good faith must be based on the totality of the circumstances," In re Genesis Health Ventures, Inc., 266 B.R. at 609, it is worth reviewing the process by which NNIII's Plan was negotiated and agreed-upon.  NNIII's Plan is the product of good-faith, arm's length negotiations between NNIII and its creditors in the Chapter 11 Case, as well as those prior negotiations with various parties in interest which ultimately resulted in the execution of the SPSA.  The SPSA is an integrated settlement reflecting a compromise among the various Nortel estates to settle the Allocation Dispute, pursuant to which NNIII previously released any claims it may have for an entitlement to receive the Allocation Proceeds, as well as a compromise of various other matters.  NNIII's Plan incorporates the settlements and terms incorporated into the SPSA.

34.     Furthermore, it is also worth noting that, under the good faith inquiry, NNIII is granted broad discretion in negotiating a Plan.  Indeed, the plan NNIII proposes "may satisfy good faith even if it may not be one which the creditors would themselves design and indeed may not be confirmable." In re W.R. Grace, 475 B.R. at 90 (quotations and citations omitted).  This deference to NNIII stems from courts' recognition of the expense of remaining in bankruptcy and the resulting importance to achieving a plan in a timely and efficient manner, where given the status of NNIII's operations and the status of its resolution of its remaining

claims, emergence from the Chapter 11 Case is warranted at this time.  See In re Genesis, 266 B.R. at 609 (finding that rather than imputing bad faith, a prompt confirmation process "must be lauded" because it spares the debtors various expenses and thus "enhance[s] the value" of the estate).  Given these standards, NNIII's Plan, which was carefully negotiated and which is not only confirmable (having received unanimous support from all voting Classes) but which also would finally set this long-pending case on a path to finality, falls squarely within the boundaries of good faith.

35.    Given that NNIII's Plan achieves a result consistent with the Bankruptcy Code, was proposed with the honest goal of effecting a wind down of NNIII and an equitable distribution of the Assets of NNIII's Estate and treats all Creditors fairly and equitably, NNIII's Plan should be found to have been proposed in good faith.

### D.    The Plan Provides for Bankruptcy Court Approval of Payments for Services or Costs and Expenses Pursuant to Section 1129(a)(4) of the Bankruptcy Code

36.    Section 1129(a)(4) of the Bankruptcy Code requires that certain professional fees and expenses paid by the plan proponent, by the debtor or by a person receiving distributions of property under the plan be subject to approval by the court as reasonable.  11 U.S.C. § 1129(a)(4).  Section 1129(a)(4) states:

> Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

11 U.S.C. § 1129(a)(4).  This section of the Bankruptcy Code has been construed to require that all payments of professional fees that are made from estate assets be subject to review and approval by the bankruptcy court as to their reasonableness.  See In re Drexel Burnham Lambert

Grp., Inc., 138 B.R. 723, 760 (Bankr. S.D.N.Y. 1992); In re Printing Dimensions, Inc., 153 B.R.

715, 719 (Bankr. D. Md. 1993).

37.     In this instance, all payments made or to be made by NNIII for services or for

costs or expenses in connection with the Chapter 11 Case before the Effective Date, including all

Professional Claims, have been approved by, or remain subject to approval of, the Court as

reasonable.  To that end, Section 2.3 of the Plan provides that all Professionals seeking final

approval of compensation in the Chapter 11 Case are required to file applications for approval of

Professional Claims with the Bankruptcy Court and the U.S. Trustee prior to a date certain.

After these claims are filed, Section 2.3 of the Plan allows parties in interest to object to

Professional Claims, and requires such claims to be Allowed before receiving any payment.

Accordingly, the Plan ensures that any Professional Claims may be reviewed by the Bankruptcy

Court and complies with the requirements of section 1129(a)(4) of the Bankruptcy Code.

**E.      All Necessary Information Regarding Directors and Officers of the Debtors and Wind-Down Debtors Has Been Disclosed Pursuant to Section 1129(a)(5) of the Bankruptcy Code**

38.     Section 1129(a)(5) of the Bankruptcy Code requires that a plan of reorganization

disclose the identity and affiliations of those individuals who will serve as a director, officer or

voting trustee of the reorganized debtor, the identity of any insider to be employed or retained

and the nature of the compensation proposed to be paid to such insider.  11 U.S.C. § 1129(a)(5).

39.     The Plan satisfies the requirements of section 1129(a)(5)(A)(i) of the Bankruptcy

Code because Exhibit C to the Plan provides the necessary disclosure of the identities and

affiliations of each of the individuals that will serve as officers and directors of Wind-Down

NNIII.

40.     Section 1129(a)(5)(A)(ii) of the Bankruptcy Code requires that this Court find the

appointment or continuation in office of existing management is "consistent with the interests of

creditors and equity security holders and with public policy." 11 U.S.C. § 1129(a)(5)(A)(ii). This section asks a court to ensure that the post-confirmation affairs of the debtor are in "good hands," which has been interpreted by courts to mean experience in financial and management matters, see In re Stratford Assocs. Ltd. P'ship, 145 B.R. 689, 696 (Bankr. D. Kan. 1992); that the debtor and creditors' committee believe control of the entity by proposed individuals will be beneficial, see In re Apex Oil Co., 118 B.R. 683, 704–05 (Bankr. E.D. Mo. 1990); and does not perpetuate incompetence, lack of discretion, inexperience or affiliation with groups inimical to the best interests of the debtor, see In re Beyond.com Corp., 289 B.R. 138, 145 (Bankr. N.D. Cal. 2003).  "The Debtor should have first choice of its management, unless compelling cause to the contrary exists." In re Sherwood Square Assocs., 107 B.R. 872, 878 (Bankr. D. Md. 1989).

41.      As described in additional detail in Exhibit C to the Plan and in the Disclosure Statement, the Wind-Down Debtors' proposed directors and officers have extensive experience in the Chapter 11 Cases and their continued involvement will streamline the administration of Wind-Down NNIII—to the benefit of all parties in interest.  The following individuals will serve the following roles:  John J. Ray, III – President, Director; Mary Cilia – Treasurer; Kathryn Schultea – Vice President and Secretary.  As fully set forth in Exhibit C to the Plan, NNIII has disclosed the affiliations of these individuals.  Their long-running familiarity with the Chapter 11 Case will facilitate an orderly wind-down of the case to the benefit of all parties in interest.  To the extent that these individuals are considered insiders, they will be compensated as set forth in the Plan Administration Agreement included as Exhibit B to the Plan.

42.      Section 1129(a)(5)(B) of the Bankruptcy Code requires a plan proponent to disclose the identity of an "insider" (as defined by 11 U.S.C. § 101(31)) to be employed or retained by the reorganized debtor and the "nature of any compensation for such insider."  11

U.S.C.§ 1129(a)(5)(B); see also In re Texaco, Inc., 84 B.R. 893, 908 (Bankr. S.D.N.Y. 1988) (finding requirements of § 1129(a)(5)(B) satisfied where the plan discloses debtors' existing officers and directors who will continue to serve after plan confirmation); In re Apex Oil Co., 118 B.R. at 704–05 (finding § 1129(a)(5)(B) satisfied where plan fully disclosed that certain insiders will be employed by reorganized debtor and the terms of employment of such insiders). The Plan discloses that John J. Ray, III, Mary Cilia and Kathryn Schultea, who are all presently affiliated with NNIII, will be employed and retained by Wind-Down NNIII after the Effective Date and compensated according to the Plan Administration Agreement.  See Plan Ex. B.

43.    For these reasons, NNIII has satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

**F.    The Plan Does Not Require Governmental Regulatory Approval Pursuant to Section 1129(a)(6) of the Bankruptcy Code**

44.    Section 1129(a)(6) of the Bankruptcy Code permits confirmation only if any regulatory commission that has or will have jurisdiction over a debtor after confirmation has approved any rate change provided for in the plan.  11 U.S.C. § 1129(a)(6).  The Plan does not provide for rate changes by NNIII subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval.  Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Chapter 11 Case.

**G.    The Plan Satisfies the Best Interest of Creditors and Interest Holders Test Pursuant to Section 1129(a)(7) of the Bankruptcy Code**

45.    The Bankruptcy Code protects individual creditors and equity security holders who are impaired by the Plan and who have not voted to accept the Plan through the "best interests" test of section 1129(a)(7)(A) of the Bankruptcy Code, which provides that a court shall confirm a plan of reorganization if, with respect to each impaired class of claims or interests:

> each holder of a claim or interest of such class– (i) has accepted the plan;
> or (ii) will receive or retain under the plan on account of such claim or
> interest property of a value, as of the effective date of the plan, that is not
> less than the amount that such holder would so receive or retain if the
> debtor were liquidated under chapter 7 of this title on such date.

11 U.S.C. § 1129(a)(7)(A).

46.     The "best interests" test applies to individual dissenting creditors or interest

holders rather than classes of claims and is generally satisfied through a comparison of the

estimated recoveries for a debtor's stakeholders in a hypothetical liquidation of that debtors'

estate under chapter 7 of the Bankruptcy Code against the estimated recoveries under that

debtor's chapter 11 plan.  See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St.

P'ship, 526 U.S. 434, 441 n.13 (1999) (explaining that "[t]he 'best interests' test applies to

individual creditors holding impaired claims, even if the class as a whole votes to accept the

plan"); In re Adelphia Commc'ns Corp., 368 B.R. 140, 251 (Bankr. S.D.N.Y. 2007) (explaining

that § 1129(a)(7) is satisfied when an impaired holder of a claim would receive under a plan "no

less than such holder would receive in a hypothetical chapter 7 liquidation").

47.     The first step in meeting the best interests test is to determine the proceeds that

the hypothetical liquidation of a debtor's assets and properties would generate in the context of a

chapter 7 liquidation.  The gross amount available would be the sum of the proceeds from

liquidating the debtor's assets plus the cash held by the debtor at the time the hypothetical

chapter 7 case is commenced.  The amount of any claims secured by these assets, the costs and

expenses of the liquidation and any additional administrative expenses and priority claims that

may result from the termination of the debtor's businesses and the use of chapter 7 for the

purposes of a hypothetical liquidation would reduce the amount of these proceeds.  Any

remaining net cash would be allocated to creditors and equity interest holders in strict priority in

accordance with section 726 of the Bankruptcy Code.

48.     NNIII believes that liquidation under chapter 7 would result in smaller distributions to Creditors than those provided for in the Plan because of the additional administrative expenses involved in the appointment of a chapter 7 trustee, including significant fees and compensation for the chapter 7 trustee, as discussed below, additional costs that would likely be incurred by a chapter 7 trustee in becoming familiar with the complex history of NNIII's case and additional costs for data retention and financial reporting functions over the extended period of time that would be required for a chapter 7 liquidation.  NNIII undertook a liquidation analysis, which was approved to be circulated with their Disclosure Statement, that sets forth this analysis.  See Disclosure Statement App. C.

49.     Additionally, NNIII's costs of liquidation under chapter 7 of the Bankruptcy Code would include the fees payable to a chapter 7 trustee, as well as those fees that might be payable to attorneys and other professionals that a trustee must engage.  At the late stage of NNIII's case, such fees would be wasteful and unnecessary given the lengthy history of NNIII's case and the wide array of case knowledge required to implement the settlements embodied in the Plan.  Other claims that might arise in a chapter 7 liquidation case (including claims from potentially redundant activities that could be engaged in by a chapter 7 trustee) or result from the pending Chapter 11 Case, including any unpaid expenses incurred by NNIII during the Chapter 11 Case such as compensation for attorneys, financial advisors and accountants, also would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available for distribution to creditors.

50.     After considering the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to the Holders of Claims and Interests in the Chapter 11 Case, including the increased costs and expenses of a liquidation under chapter 7 of the

Bankruptcy Code arising from fees payable to a trustee in bankruptcy and professional advisors to such trustee and the cost of the chapter 7 trustee becoming familiar with the complexity of NNIII's case, NNIII asserts that confirmation of the Plan will provide each Holder of a Claim or Interest with a recovery that is not less than such Holder would receive pursuant to a liquidation of NNIII under chapter 7 of the Bankruptcy Code.  Tellingly, no Holder has objected to the confirmation of the Plan on this ground.  Thus, NNIII submits that it has satisfied the requirements of § 1129(a)(7) of the Bankruptcy Code.

**H.    Section 1129(a)(8) of the Bankruptcy Code Does Not Preclude Confirmation**

51.    Section 1129(a)(8) requires acceptance of a plan by each class of claim or interests that is impaired by the plan.  11 U.S.C. § 1129(a)(8).  Pursuant to section 1126(c) of the Bankruptcy Code, a class of impaired clams accepts a plan if holders of at least two-thirds in dollar amount and more than one-half in number of the allowed claims in that class vote to accept the plan.  Here, all Impaired Classes entitled to vote accepted the Plan.  See Voting Report.  In addition, Holders of Interests, classified in Class 4, are Impaired and deemed to have rejected the Plan.  Accordingly, the Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code.  Nevertheless, because, as discussed below, the Plan satisfies section 1129(b), the Plan may still be confirmed under the Bankruptcy Code.

**I.    The Plan Provides for Payment in Full of All Allowed Priority Claims Pursuant to Section 1129(a)(9) of the Bankruptcy Code**

52.    Section 1129(a)(9) of the Bankruptcy Code generally requires that the Plan satisfy administrative and priority tax claims in full and in cash unless the holder of a particular claim agrees to a different treatment with respect to such claim.  See 11 U.S.C. §§ 1126(g), 1129(a)(9).

53.    As required by section 1129(a)(9) of the Bankruptcy Code, Section 2.1 of the Plan allows for payment in full of Allowed Administrative Claims, Section 2.4 of the Plan provides

for payment in full of Allowed Priority Tax Claims and Section 4.1 of the Plan allows for the

payment in full of all other Allowed Priority Non-Tax Claims.  Therefore, NNIII submits that the

Plan complies with section 1129(a)(9) of the Bankruptcy Code.

**J.      At Least One Impaired Class of Claims That Is Entitled to Vote Has Accepted the Plan, Pursuant to Section 1129(a)(10) of the Bankruptcy Code**

54.      Section 1129(a)(10) of the Bankruptcy Code provides that, to the extent there is

an impaired class of claims under a plan, at least one impaired class of claims must accept the

plan, "without including any acceptance of the plan by any insider."  11 U.S.C. § 1129(a)(10).

The Bankruptcy Code's definition of insiders encompasses affiliates, 11 U.S.C. § 101(31)(E),

and an affiliate is defined under the Bankruptcy Code as an "entity that directly or indirectly

owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting

securities of the debtor."  11 U.S.C. § 101(2)(A).

55.      As set forth in the Voting Report, both Holders in Class 3, NNI and NNL, voted

to accept the Plan.  Although NNI is an insider of NNIII because it is NNIII's sole shareholder,

NNL is not an insider of NNIII under the Bankruptcy Code.  NNL has undergone its own CCAA

proceeding, pursuant to which it operated subject to the oversight of a court appointed Monitor,

separately from the estates of NNI and its subsidiaries.  Moreover, upon the NNI Plan Effective

Date, all existing equity interests in NNI (i.e., those held by NNL) were cancelled and a single

share of the successor to NNI, Wind-Down NNI, vested in the plan administrator under the NNI

Plan, where, pursuant to Wind-Down NNI's bylaws, the plan administrator under the NNI Plan

was given full authority to direct Wind-Down NNI's affairs.[4]  As a result, NNL currently has no

---

[4]      "[T]he Director, acting at the direction of the sole shareholder, may take and cause the Corporation to take any and all actions he or she deems appropriate in order to consummate the transactions contemplated in the Amended Plan, including, without limitation, selling or otherwise disposing of all assets of the Corporation and winding down the affairs of the Corporation without the affirmative vote of the sole shareholder. The Director, acting at the direction of the sole shareholder, may take and cause the Corporation to take any and all corporate actions without the affirmative vote of the sole shareholder, including to compromise and settle claims and causes of

direct or indirect control over NNIII. Therefore, given NNL's vote in Class 3 to accept the Plan,

NNIII submits that there is at least one Class of Claims that is Impaired under the Plan that has

accepted the Plan, determined without including any acceptance of the Plan by any insider, thus

satisfying section 1129(a)(10) of the Bankruptcy Code.

**K.      The Plan Is Feasible Pursuant to Section 1129(a)(11) of the Bankruptcy Code**

56.      Section 1129(a)(11) of the Bankruptcy Code requires that the Court find that

"confirmation of the plan is not likely to be followed by the liquidation, or the need for further

financial reorganization, of the debtor or any successor to the debtor under the plan, unless such

liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11).

57.      The Plan contemplates the wind-down of NNIII and, ultimately, the liquidation or

dissolution of NNIII. Insofar as the Plan contemplates a final wind-down of NNIII and the

ultimate distribution of the value of NNIII to creditors, the Plan satisfies section 1129(a)(11) of

the Bankruptcy Code. No party states otherwise.

**L.      The Plan Provides for the Payment of All Fees Under 28 U.S.C. § 1930
        Pursuant to Section 1129(a)(12) of the Bankruptcy Code**

58.      Section 1129(a)(12) of the Bankruptcy Code requires that certain fees listed in 28

U.S.C. § 1930, determined by the court at the hearing on confirmation of a plan, be paid or that

provisions be made for their payment. 11 U.S.C. § 1129(a)(12). Section 15.18 of the Plan

provides that all fees payable by NNIII pursuant to section 1930 of title 28 of the United States

Code, as determined by the Bankruptcy Court, shall be paid for each quarter (including any

---

action of or against the Corporation and its estate, and to dissolve, merge or consolidate the Corporation with any
other entity." *Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint Chapter 11 Plan
Nortel Networks, Inc. and Certain of its Affiliated Debtors* [D.I. 17795], Ex. G (Bylaws) § 2.

fraction thereof) until the Chapter 11 Case is converted, dismissed or closed, whichever occurs first.  Thus, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

### M.    Sections 1129(a)(13)-(16) of the Bankruptcy Code Are Inapplicable

59.    Section 1129(a)(13) of the Bankruptcy Code requires that all retiree benefits, as defined in section 1114 of the Bankruptcy Code, continue to be paid post-confirmation at any levels established in accordance with section 1114 of the Bankruptcy Code.  See 11 U.S.C. § 1129(a)(13).  Section 1114 of the Bankruptcy Code defines "retiree benefits" as those payments made for the purpose of providing or reimbursing payments for retired employees, their spouses, and their dependents for medical benefits.  See 11 U.S.C. § 1114(a).  NNIII has no continuing obligation to provide "retiree benefits," as defined in section 1114(a) of the Bankruptcy Code, because all such obligations were terminated and settled or otherwise resolved pursuant to prior orders of the Court (to the extent any obligations may have existed).  Accordingly, section 1129(a)(13) of the Bankruptcy Code does not apply to the Chapter 11 Case.

60.    Section 1129(a)(14) of the Bankruptcy Code requires domestic support obligations to be paid, if required by judicial or administrative order or statute, which first become payable after the date of filing the petition.  *See* 11 U.S.C. § 1129(a)(14).  NNIII does not owe any domestic support obligations.  Therefore, the Plan need not comply with section 1129(a)(14) of the Bankruptcy Code.

61.    Section 1129(a)(15) of the Bankruptcy Code requires that an individual chapter 11 debtor, in a case in which the holder of an allowed unsecured claim objects to plan confirmation, either pay all unsecured claims in full or that the debtor's plan devote an amount equal to five years' worth of the debtor's disposable income to unsecured creditors.  See 11 U.S.C. § 1129(a)(15).  NNIII is not an "individual" as contemplated by this section of the Bankruptcy Code.  Therefore, the Plan need not comply with section 1129(a)(15) of the Bankruptcy Code.

62.     Section 1129(a)(16) of the Bankruptcy Code conditions confirmation of a plan on the fact that all transfers under the plan will be made in accordance with applicable provisions of "nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust." 11 U.S.C. § 1129(a)(16).  NNIII is not a nonprofit corporation or trust as contemplated by this section of the Bankruptcy Code. Therefore, the Plan need not comply with section 1129(a)(16) of the Bankruptcy Code.

**N.     The Plan Complies with Section 1129(b) of the Bankruptcy Code**

63.     Section 1129(b) of the Bankruptcy Code applies when the requirements of 1129(a)(8) are not met, as is the case here.  The Plan is fair and equitable with respect to each Class of Claims or Interests that is Impaired under, and has not accepted, the Plan, because it provides that the Holder of any Claim or Interest that is junior to the Claims of such Class will not receive or retain any property on account of such junior Claim or Interest unless the Holders in such Impaired Class receive payment equal to the full Allowed amount of their Claim or Interest.  Because the Plan does not discriminate unfairly and is fair and equitable with respect to Class 4, the Impaired Class of Interests that has not accepted the Plan, the Plan satisfies section 1129(b) of the Bankruptcy Code.

**O.     Section 1129(c) of the Bankruptcy Code Is Inapplicable**

64.     Section 1129(c) of the Bankruptcy provides that the bankruptcy court may confirm only one plan.  *See* 11 U.S.C. § 1129(c).  Because the Plan is the only plan before the Court, section 1129(c) of the Bankruptcy Code is inapplicable.

**P.     The Plan Complies with Section 1129(d) of the Bankruptcy Code Because It Is Not an Attempt to Avoid Tax Obligations**

65.     Section 1129(d) of the Bankruptcy Code provides that a court may not confirm a plan if the principal purpose of the plan is to avoid taxes or the application of Section 5 of the

Securities Act of 1933.  The Plan meets these requirements because, as discussed above, the Plan was proposed in good faith and not for the avoidance of taxes or avoidance of the requirements of Section 5 of the Securities Act of 1933, nor has there been any filing by any governmental agency asserting such avoidance.

## III.    THE CONFIRMATION ORDER SHOULD BE EFFECTIVE IMMEDIATELY

66.    NNIII respectfully requests that the Court direct that the Confirmation Order shall be effectively immediately upon its entry notwithstanding the 14-day stay imposed by operation of Bankruptcy Rule 3020(e).  Bankruptcy Rule 3020(e) provides that:  "An order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 3020(e).  The Advisory Committee notes to Rule 3020(e) state that "the court may, *in its discretion*, order that Rule 3020(e) is not applicable so that the plan may be implemented and distributions may be made immediately."  Fed. R. Bankr. P. 3020(e) advisory committee's note to 1999 amendment (emphasis added).  Such use of discretion is particularly warranted here because such relief is in the best interests of NNIII's Estate and Creditors and will not prejudice any parties in interest.

67.    As a result, NNIII submits that it is appropriate for the Court to exercise its discretion to find and order that Bankruptcy Rule 3020(e) is not applicable and permit NNIII to consummate the Plan and commence its implementation without delay after the entry of the Confirmation Order.  Bankruptcy Rules 6004(h) and 6006(d) provide similar means for the Court to modify stays or orders authorizing the use, sale or lease of property (other than cash collateral) and orders authorizing a debtor to assign an executory contract or unexpired lease under section 365(f) of the Bankruptcy Code.  See Fed. R. Bankr. P. 6004(h), 6006(d).  NNIII

therefore respectfully requests that the Court direct that the Confirmation Order be effective immediately upon its entry notwithstanding the stay otherwise imposed pursuant to Rule 3020(e).

## **<u>CONCLUSION</u>**

For the reasons set forth in this Memorandum, NNIII requests that the Court enter an order, in a form substantially similar to the proposed Confirmation Order filed simultaneously herewith, (i) confirming the Plan; (ii) waiving the 14-day stay of the Confirmation Order; and (iii) granting such other and further relief as it deems appropriate.

Dated:  September 30, 2021
        Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Lisa M. Schweitzer, Esq. (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

    - and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


  */s/ Derek C. Abbott*
Derek C. Abbott, Esq. (No. 3376)
Andrew R. Remming, Esq. (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtor*
*and Debtor-in-Possession*