IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | : | Case No. 09-10138 (CSS) |
| Wind-Down Debtors. | : | Jointly Administered |
| | | |
| *In re* | : | Chapter 11 |
| Nortel Networks India International Inc. | : | Case No. 16-11714 (CSS) |
| Debtor-in-Possession. | : | Jointly Administered |
| | : | **Re: D.I. 18887, 18895** |

**DECLARATION OF MICHAEL J. KENNEDY IN SUPPORT OF CONFIRMATION OF THE CHAPTER 11 PLAN OF NORTEL NETWORKS INDIA INTERNATIONAL INC.**

I, Michael J. Kennedy, do hereby declare as follows:

1. I am a partner at Chilmark Partners, LLC ("Chilmark"), a financial advisory firm with expertise in bankruptcy, merger and acquisition, financing and litigation resolution issues. Chilmark maintains a central office in Chicago located at 875 N. Michigan Avenue, Suite 3460, Chicago, Illinois 60611.

2. I submit this declaration (the "Declaration") in support of confirmation of the *Chapter 11 Plan of Nortel Networks India International Inc.*, dated August 26, 2021 [D.I. 18887]

---

[1] The Wind-Down Debtors in these chapter 11 cases, along with the last four digits of each Wind-Down Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620) and Nortel Networks (CALA) Inc. (4226). Contact information for the Former Debtors and their petitions are available at http://dm.epiq11.com/nortel.

(as it may be further amended, the "Plan"),² together with the exhibits thereto, pursuant to section 1129 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").

3. I am duly authorized to make this Declaration and submit this Declaration on behalf of Nortel Networks India International Inc. ("NNIII"), as the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case"). The statements in this Declaration are, except where specifically noted, (a) based on my personal knowledge or opinion, experience, review of relevant documents and information concerning the operation of NNIII and its financial condition, (b) based on information that I have received from NNIII's employees or advisors and/or employees or agents of Chilmark working under my supervision, direction or control or (c) from NNIII's business records maintained in the ordinary course of its business. I am authorized to submit this Declaration on behalf of NNIII and, if called upon to testify, I would testify competently to the facts set forth herein. I am not being compensated specifically for this testimony other than payments received by Chilmark as a retained professional in the Chapter 11 Case.

**I.     Qualifications of Declarant and Chilmark**

4. I joined Chilmark in 1999 and became a partner in 2010. Prior to Chilmark, I was a senior consultant in Arthur Anderson's Transaction Advisory Group, where I was employed from 1996 to 1999. While employed at Arthur Anderson, I led financial due diligence on numerous acquisitions and assisted with operations, synergy and valuation analysis. I have more than 20 years of experience in restructuring and financial advisory industry.

---

² Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan.

5.	The nature of my work at Chilmark has been primarily focused on providing restructuring and financial advisory services to companies and/or their stakeholders, both in and out of chapter 11. The scope of this work includes, but is not limited to, review of debtors' operations, review and analysis of restructuring and liquidation plans, review and assistance in the preparation and/or compilation of liquidation analyses, negotiations with creditors, analysis of valuations and ranges of debt capacity and potential capital structures, advice on mergers and acquisitions and review of other bankruptcy-related issues.

6.	On March 31, 2010, the Court approved Chilmark's retention by NNIII's counsel, Cleary Gottlieb Steen & Hamilton LLP ("Cleary Gottlieb"), as consulting expert in connection with the Former Debtors' chapter 11 cases [D.I. 2814] (the "Retention Order"). On August 16, 2016, this Court entered an order applying, among other things, the Retention Order to the Chapter 11 Case such that Chilmark was also retained by Cleary Gottlieb as consulting expert in connection with the Chapter 11 Case.

7.	Since Chilmark's retention, I, along with certain other professionals at Chilmark, have been providing such advisory services to Cleary Gottlieb. Most recently, Chilmark has assisted in modeling NNIII's budget and recovery analysis, attached as Appendix B to the Disclosure Statement, dated August 26, 2021 [D.I. 18888] (the "Recovery Analysis"), and in the preparation of a liquidation analysis, attached as Appendix C to the Disclosure Statement (the "Liquidation Analysis"), in connection with NNIII's wind-down efforts.

II.	**Recovery Analysis**

8.	The Recovery Analysis is based on the assets and financial estimates of NNIII as of April 30, 2021, as well as the incorporation of certain settlements contemplated under the

Plan. Allowed Book Intercompany Claims against NNIII asserted by NNI and NNL are treated in accordance with the terms of the Plan and Annex L of the SPSA.

9. The estimates included in the Recovery Analysis were prepared solely to estimate possible recoveries to Holders of Allowed Claims pursuant to the Plan depending on the outcome of numerous contingencies, and based on various assumptions as set forth in the Plan, the Disclosure Statement and the Recovery Analysis. The estimated recoveries are based on the cash on hand expected to be available for distribution over the period from April 30, 2021 through December 31, 2021 (the "Forecast Period") and the assumption that NNIII's Assets are fully monetized during the Forecast Period.

10. In preparing the Recovery Analysis, Chilmark made various estimates and assumptions based on information available to NNIII. Accordingly, the estimates may change as more information becomes available. Therefore, actual results may differ from estimated recoveries and could have a material effect on the recovery percentages.

11. The Recovery Analysis includes additional estimates and assumptions regarding the administrative expenses that have been and are expected to be incurred through the Effective Date of the Plan, a reserve for potential Administrative Expense Claims, the estimated costs, fees and expenses expected to be associated with the orderly wind down of NNIII's Estate as well as other costs and obligations under the Plan (collectively, the "Wind-Down Costs").

12. The Recovery Analysis is intended to model ultimate expected recoveries to NNIII's creditors without regard to the length of time actually required to make distributions, where such timing may depend on, among other things, (i) the timing of NNIII's recoveries against affiliates; (ii) the amounts of cash held in contingency reserves taken by NNIII; and (iii) the timing of resolving any claims accounted for in such reserves.

**III.    Liquidation Analysis**

    A.  **Summary of Liquidation Analysis**

13.    The Liquidation Analysis was prepared by NNIII and Chilmark and represents the estimated assets available to NNIII if NNIII was to be liquidated in a hypothetical chapter 7 case. Allowed Book Intercompany Claims against NNIII asserted by NNI and NNL are treated in accordance with the terms of the Plan and Annex L of the SPSA.

14.    The Liquidation Analysis is premised upon a number of estimates and assumptions that, although developed and considered reasonable by NNIII and its financial advisors, are inherently subject to significant uncertainties and contingencies that are beyond the control of NNIII.  Accordingly, the Liquidation Analysis is for illustrative purposes only solely to provide an estimated range of possible liquidation recoveries for various Classes of Claims. There is no assurance that the recoveries reflected in the Liquidation Analysis would be realized if NNIII was, in fact, to undergo such a liquidation.

    B.  **Assumptions Underlying Liquidation Analysis**

15.    The Liquidation Analysis assumes that certain economic settlements achieved in the SPSA also would be achieved in a chapter 7 liquidation, including, but not limited to, (a) the allowance of the Allowed Book Intercompany Claims of NNI and NNL against NNIII in the amounts set forth in Annex L of the SPSA and (b) the release by the Canadian Debtors and the EMEA Debtors, NNSA and the EMEA Non-Filed Entities of any and all other pre-filing books and records claims against NNIII.  While NNIII believes these settlements could be replicated in a chapter 7 liquidation, a liquidation under chapter 7 likely would, at minimum, cause NNIII to incur additional costs and introduce additional risks that could materially reduce the ultimate assets available to NNIII for distribution to its creditors.  For purposes of the Liquidation

Analysis, these risks associated with the assets that would be available to NNIII in a liquidation were not quantified.

16.     In addition, in preparing the Liquidation Analysis, Chilmark estimated the assets available for liquidation and distribution and the Claims against NNIII in a liquidation scenario on the same basis that it estimated those figures in the Recovery Analysis, with the following changes: (a) an estimated $0.4 million increase in fees and expenses at NNIII for additional counsel or professionals that would be engaged to assist a chapter 7 trustee in the liquidation and for expected inefficiencies associated with changing or adding new professionals at this advanced stage of the Chapter 11 Case and (b) estimated compensation for a hypothetical chapter 7 trustee or trustees as 4% of Assets distributable to creditors of NNIII.

### IV.    Best Interests Test

17.     Pursuant to section 1129(a)(7) of the Bankruptcy Code, I understand, based on discussions with Cleary Gottlieb, that the best interests test applies only to Holders of non-accepting Impaired Claims or Interests. I understand that Holders of Claims in Classes 1 and 2 are deemed to accept the Plan and that Holders of Impaired Claims in Class 3 voted to accept the Plan. I understand that Holders of Interests in Class 4 are deemed to have rejected the Plan. Accordingly, I understand that NNIII must demonstrate satisfaction of the best interests test with respect to Class 4, which is comprised of Interests in NNIII, by showing that each such Holder of an Interest will receive at least as much under the Plan as such Holder would receive in a chapter 7 liquidation.

18.     It is my understanding that Holders of Interests in Class 4 would not receive any recovery in a hypothetical chapter 7 liquidation and do not receive any recovery under the Plan. Based on the Liquidation Analysis, I believe that the Plan satisfies the best interests test.

## V. Conclusion

19. Based on the matters described above and the Recovery Analysis and Liquidation Analysis, and the limitations and assumptions set forth therein, I believe that, as of the Effective Date, and after taking into account the transactions contemplated by the Plan, creditors will likely receive recoveries under the Plan that are equal to or superior to the recoveries that they would likely receive if NNIII was liquidated under chapter 7.

20. I hereby reserve the right to amend and supplement the testimony set forth herein as necessary at the hearing to consider confirmation of the Plan.

*[Remainder of Page Intentionally Left Blank]*

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on:  September 30, 2021
              Chicago, Illinois

Michael J. Kennedy
Partner
Chilmark Partners