## Exhibit A

**Proposed Confirmation Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
-----------------------------------------------------------X
                                             :
In re                                        :    Chapter 11
                                             :
Nortel Networks Inc., et al.,¹               :    Case No. 09-10138 (CSS)
                                             :
           Wind-Down Debtors.                :    Jointly Administered
                                             :
                                             :
                                             :
-----------------------------------------------------------X
                                             :
In re                                        :    Chapter 11
                                             :
Nortel Networks India International Inc.     :    Case No. 16-11714 (CSS)
                                             :
           Debtor-In-Possession.             :    Jointly Administered
                                             :
                                             :
                                             :
-----------------------------------------------------------X
```

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING
CHAPTER 11 PLAN OF NORTEL NETWORKS INDIA INTERNATIONAL INC.**

Nortel Networks India International Inc. ("NNIII") having, on the terms and to the extent

set forth in the applicable pleadings and orders:

    i.       filed a voluntary petition for relief (the "Chapter 11 Case") under chapter 11 of
the Bankruptcy Code² on July 26, 2016 (the "Petition Date");

    ii.      continued to operate its business and manage its properties and assets as a debtor
in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, and
no trustee or examiner having been appointed in the Chapter 11 Case;

    iii.   filed a Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105(a) and 363(b)
and Federal Rule of Bankruptcy Procedure 9019 Approving Settlement and Plans
Support Agreement (the "SPSA 9019 Motion") [D.I. 17589] on December 16,

---

¹    The Wind-Down Debtors in these chapter 11 cases, along with the last four digits of each Wind-Down
Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620)
and Nortel Networks (CALA) Inc. (4226).  Contact information for the Former Debtors and their petitions are
available at http://dm.epiq11.com/nortel.

²    Unless otherwise noted, capitalized terms not defined in this order (the "Confirmation Order") shall have
the meanings ascribed to them in the Plan, as defined herein.  The rules of interpretation set forth in Section 1.3 of
the Plan shall apply to the Confirmation Order.

2016, which was approved by the Order Approving Settlement and Plans Support Agreement dated January 24, 2017 (the "9019 Approval Order") [D.I. 17794];

iv.     filed the Motion by Nortel Networks India International Inc. for Entry of an Order (I) Approving Adequacy of Information Contained in Disclosure Statement, (II) Establishing Voting Record Date, (III) Approving Procedures for Soliciting, Receiving and Tabulating Votes on the Plan, and (IV) Scheduling Confirmation Hearing Date and Establishing Notice and Objection Procedures (the "Solicitation Procedures Motion") [D.I. 18870] on July 20, 2021;

v.      obtained approval of the Disclosure Statement and the Solicitation Procedures Motion by that certain Order (I) Approving the Disclosure Statement, (II) Establishing the Voting Record Date and Procedures for Soliciting, Receiving and Tabulating Votes on the Plan and (III) Setting the Confirmation Hearing Date and Establishing Notice and Objection Procedures (the "Disclosure Statement Approval Order") [D.I. 18884] on August 25, 2021;

vi.     completed, through the Claims Agent, distribution of the Solicitation Materials (as defined below), consistent with the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Approval Order and the Solicitation Procedures Motion approved by the Disclosure Statement Approval Order on August 27, 2021, as described in the Affidavit of Service of Solicitation Materials (the "Solicitation Affidavit") [D.I. 18889];

vii.    filed the solicitation version of the Chapter 11 Plan of Nortel Networks India International Inc. (the "Plan") [D.I. 18887] on August 30, 2021;

viii.   filed the solicitation version of the Disclosure Statement for the Chapter 11 Plan of Nortel Networks India International Inc. (the "Disclosure Statement") [D.I. 18888] on August 30, 2021;

ix.     caused notice regarding the Confirmation Hearing (as defined below) to be published in the Wall Street Journal (National Edition) on September 1, 2021 and in the Economic Times of India (all editions) on September 10, 2021, as evidenced by the Affidavit of Publication [D.I. 18893] (the "Publication Affidavit");

x.      filed the Declaration of Stephenie Kjontvedt on Behalf of Epiq Corporate Restructuring, LLC, Regarding Voting and Tabulation of Ballots Cast on the Chapter 11 Plan of Nortel Networks India International Inc. (the "Voting Report") [D.I. 18894] on September 29, 2021; and

xi.     filed the Memorandum of Law in Support of Confirmation of the Chapter 11 Plan of Nortel Networks India International Inc. (the "Confirmation Brief") [D.I. 18895], on September 30, 2021.

This Court having:

i.      entered the Disclosure Statement Approval Order on August 25, 2021 [D.I. 18884];

ii.     held a hearing to consider the Confirmation of the Plan on October 5, 2021 (the "Confirmation Hearing");

iii.    reviewed the Disclosure Statement, the Plan, the Confirmation Brief, the Voting Report and all other pleadings, evidence, exhibits, statements, documents and filings regarding confirmation of the Plan; and

iv.     heard and considered the statements of counsel and all other testimony and evidence proffered and/or adduced at the Confirmation Hearing and in respect of confirmation of the Plan.

NOW, THEREFORE, it appearing to this Court that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, this Court hereby makes and issues the following findings of fact, conclusions of law and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.      Jurisdiction and Venue

1.      On July 26, 2016, NNIII filed the Chapter 11 Case. Venue in the United States Bankruptcy Court for the District of Delaware (this "Court" or the "Bankruptcy Court") is proper with respect to NNIII pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan ("Confirmation") is a core proceeding under 28 U.S.C.§ 157(b)(2). This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of Title 11 of the United States Code (the "Bankruptcy Code") and should be confirmed.

**B.**     **Eligibility for Relief**

2.              NNIII is eligible for relief under the Bankruptcy Code.

**C.**     **Commencement and Joint Administration of the Chapter 11 Cases**

3.              On January 14, 2009, the Former Debtors, other than NNCALA, filed their respective voluntary petitions for relief under chapter 11 of the Bankruptcy Code and, on July 14, 2009, NNCALA filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, with the Chapter 11 Case, the "Chapter 11 Cases"). The Chapter 11 Case was ordered to be jointly administered for procedural purposes with the other Chapter 11 Cases under Case No. 09-10138 (CSS), provided that a plan subsequently was confirmed and became effective for the Former Debtors. NNIII has operated its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Case.

**D.**     **Judicial Notice**

4.              This Court takes judicial notice of (and deems admitted into evidence for Confirmation) the docket of the Chapter 11 Cases and all related adversary proceedings and appeals maintained by the clerk of the applicable court or its duly appointed agent, including all pleadings, exhibits and other documents on file, all orders entered, all hearing transcripts and all evidence and arguments made, proffered or adduced at the hearings before the applicable court during the pendency of the Chapter 11 Cases. This Court also takes judicial notice of the official register of Claims against and Interests in NNIII maintained by the Claims Agent (the "Claims Register"). Any resolutions of objections to Confirmation explained on the record at the Confirmation Hearing are incorporated by reference. All unresolved objections, statements and reservations of rights are overruled on the merits.

E.      **Estate Representative**

5.              NNIII's Plan Administrator, Owl Hill Advisory LLC, is the authorized

representative of NNIII and its Estate for all matters relating to consummation and

implementation of the Plan, including, without limitation, for the purposes of obtaining

recognition and enforcement of this Confirmation Order outside of the United States.

F.      **Appointment and Dissolution of Creditors' Committee**

6.              A statutory committee of unsecured creditors was appointed in the

Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code on January 26, 2009 (as

reconstituted from time to time, the "Creditors' Committee").  The Creditors' Committee was

dissolved pursuant to Section 15.22 of the NNI Plan on May 8, 2017, the date on which the NNI

Plan became effective.

G.      **Burden of Proof**

7.              Based on its review of the evidence submitted in support of

Confirmation, including, without limitation, the declarations proffered as testimony, NNIII has

met its burden of proving the elements of section 1129 of the Bankruptcy Code by a

preponderance of the evidence.  This Court also finds that NNIII has satisfied the elements of

section 1129 of the Bankruptcy Code by clear and convincing evidence.

H.      **Disclosure Statement**

8.              The Disclosure Statement, previously approved as containing adequate

information within the meaning of section 1125 of the Bankruptcy Code, was included in the

Solicitation Materials (as defined below) and properly distributed to holders in connection with

solicitation of their acceptance or rejection of the Plan, in accordance with the provisions of the

Bankruptcy Code.

### I.     Service of Solicitation Materials; Notice; Voting Report

9.         As evidenced in the Solicitation Affidavit, NNIII complied with the notice and service requirements and procedures with respect to solicitation of votes and distribution of notices of non-voting status or other notices, as approved in the Disclosure Statement Approval Order.  No objections were filed with respect to the Solicitation Affidavit.

10.        All procedures used to (a) provide notice and distribute the materials necessary to vote on the Plan (the "Solicitation Materials") to the applicable voting holders of Claims and Interests and (b) tabulate the Ballots and Master Ballots (as defined in the Solicitation Procedures Motion) were fair and conducted in accordance with the Disclosure Statement Approval Order, the Bankruptcy Code, the Bankruptcy Rules, the local rules of this Court and all other applicable orders and federal, state and local laws, rules and regulations (collectively, the "Applicable Laws").

11.        As evidenced by the Voting Report, all Ballots were properly tabulated, and votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement Approval Order and all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and all other Applicable Laws.

12.        NNIII and, to the extent applicable, its affiliates, agents, directors, officers, advisors and attorneys have solicited votes on the Plan in good faith and in compliance with the applicable provisions of the Disclosure Statement Approval Order, the Bankruptcy Code, the Bankruptcy Rules and all other Applicable Laws.

### J.     Bankruptcy Rule 3016

13.        The Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The filing of the Disclosure Statement with the clerk of the

Bankruptcy Court satisfied Bankruptcy Rule 3016(b).  The injunction, release and exculpation provisions in the Disclosure Statement and Plan describe, in bold font and with specific and conspicuous language, all acts to be enjoined and identify the entities that will be subject to the injunction, thereby satisfying Bankruptcy Rule 3016(c).

K.   **Confirmation Hearing Notice**

14.   As evidenced in the Publication Affidavit, NNIII published a notice of the Confirmation Hearing in the <u>Wall Street Journal (National Edition)</u> on September 1, 2021 and in the <u>Economic Times of India (all editions)</u> on September 10, 2021.  NNIII also served a notice of the Confirmation Hearing in accordance with the procedures approved in the Disclosure Statement Approval Order, as evidenced in the Solicitation Affidavit.

L.   **Voting Result**

15.   Class 3 is Impaired under the Plan and therefore eligible to vote on the Plan.  As evidenced by the Voting Report, which is incorporated herein by reference, Class 3 voted to accept the Plan.

M.   **Classes Deemed to Have Accepted the Plan**

16.   Classes 1 and 2 are Unimpaired under the Plan and the Holders of Claims in such classes are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

N.   **Classes Deemed to Have Rejected the Plan**

17.   Holders of Interests in Class 4 are not entitled to receive or retain any property under the Plan on account of their Interests, and therefore the Holders of Interests in Class 4 are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

O.    **Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

        a.        Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of the Bankruptcy Code

18.      The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including, without limitation, sections 1122 and 1123 of the Bankruptcy Code.

        b.        Sections 1122 and 1123(a)(1)—Proper Classification

19.      Article 3 of the Plan designates Classes of Claims and Interests other than Administrative Expense Claims, Professional Claims and Priority Tax Claims (which are not required to be designated pursuant to section 1123(a)(l) of the Bankruptcy Code).  As required by section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  Valid reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan.  The Plan, therefore, satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

        c.        Sections 1123(a)(2) and 1123(a)(3)—Specific Unimpaired and Impaired Classes

20.      Articles 3 and 4 of the Plan specify that Claims in Classes 1 and 2 are Unimpaired.  Administrative Expense Claims, Professional Claims and Priority Tax Claims, which are not classified under the Plan, also are Unimpaired.  Article 4 of the Plan further specifies the treatment of the Impaired Classes under the Plan, which are Classes 3 and 4.  The Plan, therefore, satisfies sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code.

        d.        Section 1123(a)(4)—No Discrimination

21.      Article 4 of the Plan provides the same treatment for each Claim or Interest within a particular Class, unless the Holder of a particular Claim or Interest has agreed to

a less favorable treatment with respect to such Claim or Interest.  The Plan, therefore, satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

      e.      <u>Section 1123(a)(5)—Adequate Means for Implementation of the Plan</u>

22.      The Plan and other related documents provide adequate and proper means for the Plan's implementation, and NNIII will have sufficient Cash to make all payments prescribed pursuant to the Plan.  Moreover, the Plan provides adequate means for its implementation, including, without limitation:  (a) the formation and corporate governance of Wind-Down NNIII; (b) the incorporation of the settlements and terms incorporated into the SPSA; (c) the authorization of corporate action, including any transactions necessary to implement the Plan; (d) the exemption from certain transfer taxes and recording fees; (e) the establishment of the Administrative Expense Claims Reserve; and (f) the Allowance and settlement of certain intercompany claims and other Claims against NNIII.  The Plan, therefore, satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

      f.      <u>Section 1123(a)(6)—Non-Voting Equity Securities</u>

23.      Pursuant to Section 8.5 of the Plan, the certificate of incorporation of Wind-Down NNIII shall be amended to prohibit the issuance of non-voting equity securities, and to provide an appropriate distribution of voting power, to the extent required by section 1123(a)(6) of the Bankruptcy Code.  The Plan, therefore, satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

      g.      <u>Section 1123(a)(7)—Designation of Directors and Officers</u>

24.      Section 8.3 of the Plan describes the manner of selection of directors and officers of Wind-Down NNIII.  The identity and affiliations of any person proposed to serve as a director or officer of Wind-Down NNIII has been disclosed in Exhibit C to the Plan.  NNIII has properly and adequately disclosed or otherwise identified the procedures for determining the

identities and affiliations of all individuals proposed to serve on or after the Effective Date as officers or directors of Wind-Down NNIII.  The selection of each such director, manager or officer is consistent with the interests of creditors, Interest holders, Applicable Laws and public policy.  The Plan, therefore, satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

        h.      <u>Section 1123(b)—Discretionary Contents of the Plan</u>

25.      The other provisions of the Plan, including, without limitation, those relating to the Allowance and settlement of certain intercompany claims and other Claims against NNIII, the Disputed Claims, the Released Parties and the Plan's releases and the Exculpated Parties and the Plan's exculpation provisions, are appropriate and consistent with the applicable provisions of the Bankruptcy Code.  Therefore, the Plan satisfies the requirements of section 1123(b) of the Bankruptcy Code.

        i.      <u>Section 1123(d)—Curing Defaults</u>

26.      The Plan satisfies section 1123(d)'s requirement that any amounts necessary to cure any defaults, if any, associated with each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code have been determined in accordance with the relevant underlying agreement and any applicable non-bankruptcy law.

        j.      <u>Section 1129(a)(2)—NNIII's Compliance with Applicable Provisions of the Bankruptcy Code</u>

27.      NNIII, as the Plan proponent, has complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including, without limitation, sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018 and 3019.  In particular, NNIII is an eligible debtor under section 109 of the Bankruptcy

Code and a proper Plan proponent under section 1121(a) of the Bankruptcy Code.  Furthermore,

the solicitation of acceptances and rejections of the Plan (i) complied with the Disclosure

Statement Approval Order; (ii) complied with all Applicable Laws governing the adequacy of

disclosure in connection with such solicitation; and (iii) occurred only after disclosing "adequate

information," as section 1125(a) of the Bankruptcy Code defines that term, to holders of Claims

and Interests.  NNIII and its affiliates, agents, directors, officers, advisors and attorneys, each in

their capacities as such, have acted in "good faith" within the meaning of section 1125(e) of the

Bankruptcy Code.  The Plan, therefore, satisfies the requirements of section 1129(a)(2) of the

Bankruptcy Code.

     k.  <u>Section 1129(a)(3)—Proposal of the Plan in Good Faith</u>

   28.   Based on the record before this Court, including all testimony and

evidence proffered or adduced at or prior to the Confirmation Hearing, NNIII has proposed the

Plan in good faith and not by any means forbidden by law.  Consistent with the overriding

purpose of Chapter 11 of the Bankruptcy Code, the Plan leaves priority and secured Creditors

Unimpaired and maximizes recoveries to Holders of General Unsecured Claims.  In so

determining, this Court has examined the totality of the circumstances surrounding the filing of

the Chapter 11 Case, the Plan itself and the process leading to the formulation of the Plan and

Confirmation.  The Chapter 11 Case was filed, and the Plan was proposed, with the legitimate

purpose of allowing NNIII to resolve outstanding claims and to wind down and distribute its

remaining assets to Creditors.  The Plan, therefore, satisfies the requirements of section

1129(a)(3) of the Bankruptcy Code.

l.      <u>Section 1129(a)(4)—Bankruptcy Court Approval of Certain Payments as Reasonable</u>

29.      Payments made or to be made by NNIII for services or for costs and expenses in connection with the Chapter 11 Case prior to confirmation, or in connection with the Plan and incidental to the Chapter 11 Case, including Professional Claims and the U.S. Trustee Fees, have been approved by, or are subject to the approval of, this Court as reasonable.  After the Effective Date, this Court will retain jurisdiction with respect to applications for allowance of Professional Claims and expenses incurred up to and through the Effective Date.  The Plan, therefore, satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

m.      <u>Section 1129(a)(5)—Disclosure of Identity of Proposed Management and Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy</u>

30.      In Exhibit C to the Plan, NNIII has adequately disclosed the identity and affiliations of individuals proposed to serve, after confirmation of the Plan, as directors, officers, voting trustees or successors to NNIII under the Plan, as required by section 1129(a)(5)(A)(i) of the Bankruptcy Code, and such appointments are consistent with the interests of Holders of Claims and Interests and with public policy, as required by section 1129(a)(5)(A)(ii) of the Bankruptcy Code.  NNIII has also disclosed the identity and the nature of compensation of insiders (as section 101 of the Bankruptcy Code defines that term) who will be employed or retained by Wind-Down NNIII, as required by section 1129(a)(5)(B) of the Bankruptcy Code. The Plan, therefore, satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

n.      <u>Section 1129(a)(6)—Approval of Rate Changes</u>

31.      The Plan does not contain any rate changes subject to jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Chapter 11 Case.

o.      <u>Section 1129(a)(7)—Best Interests of Creditors and Interest Holders</u>

32.       The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  The liquidation analysis attached as Appendix C to the Disclosure Statement (the "<u>Liquidation Analysis</u>") and the other evidence related thereto, as supplemented by the evidence proffered or adduced at or prior to the Confirmation Hearing, including the methodology used and assumptions made in the Liquidation Analysis, (a) are persuasive and credible as of the dates such evidence was prepared, presented or proffered, (b) have not been controverted by other persuasive evidence and have not been challenged, (c) are based upon reasonable and sound assumptions and (d) provide a reasonable estimate of the liquidation value of NNIII's Estate upon a conversion to a Chapter 7 proceeding.

33.       With respect to Class 3, the Impaired Class under the Plan, each Holder of a General Unsecured Claim has accepted the Plan or will receive under the Plan on account of its respective Claim property of a value, as of the Effective Date, that is not less than the amount that each such Holder would so receive or retain if NNIII were liquidated on the Effective Date under Chapter 7 of the Bankruptcy Code.  The Plan, therefore, satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

p.      <u>Section 1129(a)(8)—Acceptance of the Plan by Each Impaired Class</u>

34.       Classes 1 and 2 are Unimpaired and are deemed to accept the Plan. Impaired Class 3 voted to accept the Plan.  In accordance with Section 5.4 of the Plan, all vacant Classes of Claims are deemed eliminated for purposes of voting to accept or reject the Plan.

35.       Holders of Interests in Class 4 are deemed to have rejected the Plan. Class 4 is Impaired and therefore section 1129(a)(8) of the Bankruptcy Code is not satisfied. Nevertheless, the Plan is confirmable because it satisfies section 1129(b) of the Bankruptcy Code with respect to such non-accepting and Impaired Class of Interests.

q.      <u>Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code</u>

36.      The treatment of (i) Administrative Expense Claims, as set forth in Section 2.1 of the Plan, (ii) Priority Tax Claims, as set forth in Section 2.4 of the Plan, and (iii) Allowed Priority Non-Tax Claims, as set forth in Section 4.1 of the Plan, is in accordance with the requirements of section 1129(a)(9) of the Bankruptcy Code.  The Plan, therefore, satisfies section 1129(a)(9) of the Bankruptcy Code

r.      <u>Section 1129(a)(10)—Acceptance by at Least One Impaired Class</u>

37.      As set forth in the Voting Report and herein, Class 3 voted to accept the Plan.  As such, there is at least one Class of Claims that is Impaired under the Plan that has accepted the Plan, determined without including any acceptance of the Plan by any insider, thus satisfying section 1129(a)(10) of the Bankruptcy Code.

s.      <u>Section 1129(a)(11)—Feasibility of the Plan</u>

38.      The Plan is feasible and satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.  The Disclosure Statement and the Budget and Recovery Analysis attached as Appendix B thereto establish that Wind-Down NNIII will have sufficient funds available to meet its obligations under the Plan.  Further evidence proffered or adduced at or prior to the Confirmation Hearing—which evidence is reasonable, persuasive and credible, and which has not been controverted by other evidence—establishes the Plan is feasible and Confirmation of the Plan is not likely to be followed by Wind-Down NNIII, NNIII or any successor to Wind-Down NNIII under the Plan requiring liquidation or further financial reorganization except as required by the Plan.

  t.  <u>Section 1129(a)(12)—Payment of Statutory Bankruptcy Fees</u>

39.  Section 15.18 of the Plan provides that all fees payable by NNIII

pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy

Court, shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Case is

converted, dismissed or closed, whichever occurs first.  The Plan, therefore, satisfies the

requirements of section 1129(a)(12) of the Bankruptcy Code

  u.  <u>Section 1129(a)(13)—Retiree Benefits</u>

40.  NNIII has no continuing obligation to provide "retiree benefits," as

defined in section 1114(a) of the Bankruptcy Code, because all such obligations, including those

of NNIII's affiliates, were terminated and settled or otherwise resolved pursuant to prior orders

of the Court.  Accordingly, section 1129(a)(13) of the Bankruptcy Code does not apply to the

Chapter 11 Case.

  v.  <u>Section 1129(a)(14), 1129(a)(15) or 1129(a)(16)</u>

41.  NNIII does not owe any domestic support obligations, is not an

individual and is not a nonprofit corporation.  Therefore, none of sections 1129(a)(14),

1129(a)(15) or 1129(a)(16) of the Bankruptcy Code apply to the Chapter 11 Case.

  w.  <u>Section 1129(b)—Classification of Claims and Interests and Confirmation</u>
    <u>of Plan Over Rejecting Classes</u>

42.  The classification and treatment of Claims and Interests in the Plan meets

all of the applicable requirements of section 1129(a) of the Bankruptcy Code other than

paragraph (8) and satisfies section 1129(b).  The Plan is fair and equitable with respect to each

Class of Claims or Interests that is Impaired under, and has not accepted, the Plan, because it

provides that the Holder of any Claim or Interest that is junior to the Claims of such Class will

not receive or retain any property on account of such junior Claim or Interest unless the Holders

in such Impaired Class receive payment equal to the full Allowed amount of their Claim or Interest.  Therefore, the Plan meets the requirements of section 1129(b)(1) of the Bankruptcy Code.

              x.      <u>Section 1129(c)—Only One Plan</u>

43.         Other than the Plan (including previous versions thereof), no other plan has been filed for NNIII in the Chapter 11 Case.  The Plan, therefore, satisfies the requirements of section 1129(c) of the Bankruptcy Code.

              y.      <u>Section 1129(d)—Principal Purpose of Plan is Not Avoidance of Taxes</u>

44.         The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act (15 U.S.C. § 77e).  The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

**P.**      **<u>Satisfaction of Confirmation Requirements</u>**

45.         Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**Q.**      **<u>Good Faith Solicitation</u>**

46.         Based upon the record before the Court in the Chapter 11 Case, including all testimony and evidence proffered or adduced at or prior to the Confirmation Hearing, NNIII and its affiliates, agents, directors, officers, advisors, attorneys and other professionals retained by all of the foregoing Persons have acted in good faith (including, without limitation, within the meaning of sections 1125(e) and 1126(e) of the Bankruptcy Code) in respect of the Plan itself and the arm's-length negotiations among the parties and the Creditors with respect to the formulation thereof and will continue to act in good faith if they proceed to:  (a) consummate the Plan and the agreements, settlements, transactions and transfers contemplated thereby; and (b) take the actions authorized and directed by this Confirmation Order and the Plan.  For the

avoidance of doubt, this paragraph only applies to NNIII's officers and directors in their capacities as such.

### R.   **Wind-Down of NNIII**

47.     The wind-down of NNIII in accordance with Article 8 of the Plan, and the transactions contemplated therein, are necessary and appropriate for consummation of the Plan and the success and feasibility thereof, and are in the best interests of NNIII, Wind-Down NNIII, NNIII's Estate and creditors.

### S.   **Disclosure of Agreements and Other Documents**

48.     NNIII has disclosed all material facts about the Plan, including, without limitation, regarding:  (a) the amendment of the by-laws and articles of incorporation of Wind-Down NNIII; (b) the selection of directors and officers for Wind-Down NNIII; (c) the adoption, execution and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of NNIII or Wind-Down NNIII; (d) the exemption under section 1146(a) of the Bankruptcy Code; (e) the Administrative Expense Claims Reserve; and (f) the adoption, execution and delivery of all other material contracts, leases, instruments, releases, indentures, supplemental indentures and other agreements related to any of the foregoing.

### T.   **Implementation of Other Necessary Documents and Agreements**

49.     All documents and agreements necessary to implement the Plan, which are incorporated into and are a part of the Plan as set forth in Sections 1.3(4) and 1.4 of the Plan, and all other relevant and necessary documents and agreements relating to the Plan or the transactions contemplated thereby are in the best interests of NNIII, Wind-Down NNIII and the Holders of Claims and Interests and have been negotiated in good faith and at arm's length. NNIII has exercised reasonable business judgment in determining to enter into all such

documents and agreements and have provided sufficient and adequate notice of such documents and agreements to parties in interest.

**U.**       **Executory Contracts and Unexpired Leases**

50.            NNIII has exercised reasonable business judgment in determining whether to assume or reject each of its executory contracts and unexpired leases as set forth in Article 9 of the Plan or otherwise and in this Confirmation Order.

51.            The assumption or rejection of executory contracts and unexpired leases pursuant to this Confirmation Order and in accordance with Article 9 of the Plan is integral to the Plan and is in the best interests of NNIII and its Estate, Holders of Claims and Interests and other parties in interest.

**V.**       **Reserves**

52.            The Administrative Expense Claims Reserve and provisions related to such reserve, including, without limitation, section 15.4 of the Plan, are reasonable and appropriate under the circumstances, and adequately protect the interests of Holders of Professional Claims and any other Administrative Expense Claims that have not been filed as of the Effective Date pending determination of such Claims.

**W.**       **Post-Petition Interest**

53.            Pursuant to Section 7.7 of the Plan, no post-Petition Date interest (or make whole premium, no-call payment or similar claim accruing post-Petition Date) shall be included in any Allowed Claim, nor be paid on Allowed Claims by NNIII.

**X.**       **Releases; Exculpation and Injunction**

54.            The release, exculpation and injunction provisions set forth in the Plan, including, without limitation, the releases, exculpations and injunctions contained in Article 13 of the Plan, constitute good faith compromises and settlements of the matters covered thereby.

Such compromises and settlements are:  (i) made in exchange for good, valuable and adequate consideration provided by the Persons being released or exculpated and represent good faith settlements and compromises of the claims being released; (ii) in the best interests of NNIII, its Estate and Holders of Claims and Interests; (iii) fair, necessary, equitable and reasonable; and (iv) integral elements of the resolution of the Chapter 11 Case in accordance with the Plan. Proper, timely, adequate and sufficient notice of the release, exculpation and injunction provisions set forth in the Plan, including, without limitation, the releases, exculpations and injunctions contained in Article 13 of the Plan, has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the orders of this Court and due process.  Interested parties have had a sufficient and adequate opportunity to object to such provisions and be heard as to their objections, and no further notice of such provisions is required for entry of this Confirmation Order.  Each of the release, exculpation and injunction provisions set forth in the Plan and this Confirmation Order is:  (a) within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), 1334(b) and 1334(d); (b) an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (c) an integral element of the transactions incorporated into the Plan; (d) conferring material benefit on, and is in the best interests of, NNIII, its Estate and Holders of Claims or Interests; (e) important to the overall objectives of the Plan to finally resolve all Claims among or against the Persons in the Chapter 11 Case with respect to NNIII and its organization, capitalization, operation and reorganization in accordance with the Plan; and (f) consistent with sections 105, 1123 and 1129 of the Bankruptcy Code and other applicable provisions of the Bankruptcy Code.

55.        The third-party releases contained in the Plan are consensual as the parties in interest were provided notice of the Chapter 11 Case, the Plan and the deadline to

object to confirmation of the Plan.  Additionally, voting creditors were given the opportunity to

opt out of the third party releases, and the release provisions of the Plan were conspicuous and

emphasized with boldface type in the Plan, the Disclosure Statement and the ballots.  The scope

of the releases is appropriately tailored under the facts and circumstances of the Chapter 11 Case.

    **Y.**        **Conditions to the Effective Date**

56.        Each of the conditions precedent to the Effective Date, as set forth in

Section 12.1 of the Plan, is reasonably likely to be satisfied or waived in accordance with the

Plan.

    **Z.**        **Retention of Jurisdiction**

57.        This Court may properly retain jurisdiction over all matters arising out of

or related to the Chapter 11 Case, NNIII, Wind-Down NNIII and the Plan after the Effective

Date, to the fullest extent permitted by law, in accordance with Article 14 of the Plan.

## ORDER

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED AND

DETERMINED THAT:

    **I.**        **Confirmation of Plan**

58.        The Plan and each of its provisions, all documents and agreements

necessary to implement the Plan, which are incorporated into and are a part of the Plan as set

forth in Sections 1.3(4) and 1.4 of the Plan, the terms of the SPSA which are incorporated into

the Plan and all other relevant and necessary documents and agreements are APPROVED and

CONFIRMED in accordance with section 1129 of the Bankruptcy Code.  The terms of the Plan,

all exhibits and addenda thereto and the docket of the Chapter 11 Cases are incorporated by

reference into, and are an integral part of, this Confirmation Order (subject to any provision

incorporated by such reference being governed by an express and contradictory provision

herein).  Each term and provision of the Plan, as it may have been altered or interpreted in

accordance with section 15.13 of the Plan, is valid and enforceable pursuant to its terms.

**II.       Objections to Plan Overruled**

59.          Except as otherwise expressly set forth herein, to the extent that any

objections, reservations of rights, requests, statements or joinders to or related to Confirmation

have not been withdrawn, waived or settled prior to entry of the Confirmation Order or otherwise

resolved or adjourned for later adjudication by the Court as stated on the record of the

Confirmation Hearing, they are hereby overruled on the merits.

**III.      Findings of Fact and Conclusions of Law**

60.          The findings of fact and conclusions of law stated in the Confirmation

Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052,

made applicable to NNIII's Chapter 11 Case by Bankruptcy Rule 9014.  Any and all findings of

fact shall constitute findings of fact even if they are stated as conclusions of law, and any and all

conclusions of law shall constitute conclusions of law even if they are stated as findings of fact.

Further, any findings of fact and conclusions of law announced on the record in open court are

incorporated by reference herein.

**IV.      Automatic Stay**

61.          The automatic stay under section 362 of the Bankruptcy Code is hereby

modified to the extent necessary to implement the Plan.

**V.       Terms Binding**

62.          Subject to the satisfaction or waiver of the conditions precedent set forth

in Article 12 of the Plan, the terms of the Plan and all agreements, documents, instruments and

certificates relating thereto shall be effective and binding as of the Effective Date of the Plan or,

as applicable, when executed or adopted thereafter and shall be binding in accordance with their respective terms upon Wind-Down NNIII, NNIII, all Holders of Claims and Interests and all other Persons that are affected in any manner by the Plan.

63.        Notwithstanding the foregoing or any other provision herein, if there is any direct conflict between the Plan, all exhibits and addenda thereto (including the terms of the Plan and all exhibits and addenda thereto, incorporated by reference herein) and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.

### VI.        Modifications to Plan

64.        Any modifications to the Plan (as reflected on the record at the Confirmation Hearing and as reflected in this Confirmation Order) meet the requirements of sections 1127(a) and (c) of the Bankruptcy Code.  Such amendments do not adversely change the treatment of the Claim of any creditor or Interest of any equity security holder within the meaning of Bankruptcy Rule 3019, and no further solicitation of votes or voting is required.

### VII.        Provisions of the Plan and Confirmation Order Nonseverable and Mutually Dependent

65.        The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are each nonseverable from one another and are mutually dependent.

### VIII.        Implementation of Other Necessary Documents and Agreements

66.        NNIII and Wind-Down NNIII, as applicable, are authorized, without further notice to, or action, order or approval of this Court or any other Person, to execute and deliver all agreements, documents, instruments and certificates relating to such documents and agreements and to perform their obligations thereunder, including, without limitation, to pay all fees, costs and expenses thereunder in accordance with the Plan.  The terms and conditions of

such documents and agreements are reaffirmed or approved, as applicable, and shall, upon completion of documentation and execution, be valid, binding and enforceable and shall not conflict with any Applicable Laws.

IX. **Preparation, Delivery and Execution of Additional Documents By Third Parties**

67.         All Holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time and as requested by NNIII or Wind-Down NNIII, take any reasonable actions as may be necessary or advisable to effectuate the provisions and intent of the Plan and this Confirmation Order.

X. **Record Closed**

68.         The record of the Confirmation Hearing is closed.

XI. **Notice**

69.         Good and sufficient notice has been provided with respect to:  (a) the Confirmation Hearing; (b) the deadline for filing and serving objections to the Plan; (c) settlements, releases, exculpations, injunctions and related provisions in the Plan; and (d) other hearings described in the Disclosure Statement Approval Order and the Plan.  Such notice has been and is hereby approved.  No other or further notice is required.

XII. **Plan Classification Controlling**

70.         The terms of the Plan alone shall govern the classification of Claims and Interests for purposes of the distributions to be made thereunder.  The classifications set forth on the Ballots tendered to or returned by the Claims and Interests in connection with voting to accept or reject the Plan:  (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification or amounts of such Claims or Interests under the Plan

for distribution purposes; and (c) may not be relied upon by any Holder as representing the actual classification or amounts of such Claims or Interests under the Plan for distribution purposes.  In the event of a conflict between the treatment and classifications of Claims and Interests under the Plan and the classifications set forth on the Ballots, the treatment and classifications under the Plan shall control and NNIII's rights and defenses against the proper classification of a Claim or Interest are expressly preserved.

### XIII.    Treatment is Full Satisfaction

71.        The treatment of Claims and Interests set forth in Articles 2, 3 and 4 of the Plan is in full and complete satisfaction of the legal, contractual and equitable rights that a Holder of a Claim or Interest may have against NNIII, the Estate or NNIII's property, except as expressly provided in the Plan or this Confirmation Order.  Pursuant to Section 15.17 of the Plan, except as otherwise provided in the Plan or Confirmation Order, no Claim or Interest shall under any circumstances be entitled to specific performance or other injunctive, equitable or other prospective relief.

### XIV.    Unclassified Claims

a.    Administrative Expense Claims

72.        Subject to the allowance procedures and deadlines provided herein, on or as soon as reasonably practicable after the later to occur of (a) the Effective Date, (b) the date on which an Administrative Expense Claim shall become an Allowed Claim and (c) to the extent an Allowed Administrative Expense Claim relates to a liability arising under another agreement incurred by NNIII in the ordinary course, the date such liability is owed in accordance with the terms and conditions of any agreement or course of dealing relating thereto and consistent with past practice, the Holder of an Allowed Administrative Expense Claim shall receive on account of its Allowed Administrative Expense Claim, and in full satisfaction, settlement and release of

and in exchange for such Allowed Administrative Expense Claim, (a) Cash equal to the unpaid

portion of such Allowed Administrative Expense Claim or (b) such other treatment as to which

NNIII and the Holder of such Allowed Administrative Expense Claim have agreed upon in

writing; *provided, however*, that Professional Claims shall be paid in accordance with Section 2.3

of the Plan.

    b.  <u>Statutory Fees</u>

  73.   On or before the Effective Date, all fees due and payable pursuant to

section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the

Confirmation Hearing, shall be paid in full, in Cash.

    c.  <u>Professional Claims</u>

  74.   In accordance with Section 2.3 of the Plan, other than a Professional

retained by NNIII pursuant to the Ordinary Course Professional Order, any entity seeking an

award of the Bankruptcy Court of compensation for services rendered and/or reimbursement of

expenses incurred through the Effective Date under sections 105(a), 503(b)(2), 503(b)(3),

503(b)(4) or 503(b)(5) of the Bankruptcy Code shall File its final application for allowance of

such compensation and/or reimbursement by no later than the first Business Day that is sixty

(60) days after the Effective Date or such other date as may be fixed by the Bankruptcy Court

(the "<u>Professional Claims Bar Date</u>") and be paid by or on behalf of NNIII (a) in full and in Cash

in the amounts Allowed upon the date the order granting such award becomes a Final Order, or

as soon thereafter as practicable or (b) upon such other terms as may be mutually agreed upon by

the claimant and NNIII.

  75.   Except as otherwise specifically provided in the Plan, on and after the

Effective Date, any requirement that Professionals comply with sections 327 through 331 and

1103 of the Bankruptcy Code or the Interim Compensation Order in seeking retention or

compensation for services rendered after such date shall terminate, and, subject to the terms of the Plan Administration Agreement, the Plan Administrator may employ and pay any Professional for services rendered or expenses incurred after the Effective Date in the ordinary course to facilitate the wind down of Wind-Down NNIII and effectuate the Plan without any further notice to any party or action, order or approval of the Bankruptcy Court.

76.     The Plan Administrator shall have the authority to (a) utilize the services of Wind-Down NNIII's employees and independent contractors, (b) employ, retain, utilize supervise and compensate professionals, including, without limitation, claims, disbursing and transfer agents, legal counsel, accountants, experts, independent contractors, employees, other advisors, professionals and Professionals appointed in the Chapter 11 Case, to assist him or her in performing his or her duties under the Plan or otherwise represent the interests of and serve on behalf of NNIII and Wind-Down NNIII and (c) cause Wind-Down NNIII to indemnify such professionals (including those Professionals previously retained during the Chapter 11 Case) from any loss (including reasonable attorneys' fees) incurred in connection with the execution and implementation of the Plan other than a loss due to the indemnified party's willful misconduct, gross negligence, breach of contract or fraud.  For the avoidance of doubt, the Plan Administrator shall accede to, and control, all privileges of NNIII and Wind-Down NNIII, including, without limitation, the attorney-client privilege and any protection afforded attorney work product under applicable rules and law.

        d.      Priority Tax Claims

77.     With respect to each Allowed Priority Tax Claim, at the option of NNIII, the Holder of an Allowed Priority Tax Claim shall be entitled to receive, in full satisfaction, settlement and release of and in exchange for such Allowed Priority Tax Claim, (a) Cash in an amount equal to such Allowed Priority Tax Claim on the later of the Effective Date and the date

such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as

practicable, (b) treatment in accordance with section 1129(a)(9)(C) of the Bankruptcy Code or

(c) such other treatment as to which NNIII and the Holder of such Allowed Priority Tax Claim

have agreed upon in writing.  On the Effective Date, the Liens (if any) securing any Priority Tax

Claims shall be deemed released, terminated and extinguished, in each case without further

notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order

or rule or the vote, consent, authorization or approval of any Person.

### XV.      Distributions

78.           Wind-Down NNIII shall make, cause to be made or facilitate the

Distributions required under the Plan to the applicable Holders of Allowed Claims in accordance

with Article 10 of the Plan.

### XVI.      Cash Payments

79.           The sources of all Distributions and payments under the Plan are and will

be Cash or non-Cash proceeds of any sale of Residual Assets, to the extent applicable.  Cash

Distributions made pursuant to the Plan shall be in United States funds, by check drawn on a

domestic bank, or by wire transfer from a domestic bank.

80.           Checks issued in respect of Allowed Claims shall be null and void if not

negotiated within ninety (90) days after the date of issuance thereof.  Requests for reissuance of

any check shall be made to the Plan Administrator by the Holder of the Allowed Claim to whom

such check originally was issued.  Any claim in respect of a voided check shall be made on or

before thirty (30) days after the expiration of the ninety (90) day period following the date of

issuance of such check.  Thereafter, the amount represented by such voided check shall

irrevocably revert to NNIII's Estate, to be distributed to other Holders of Allowed Claims against

NNIII in accordance with the terms of the Plan and the Bankruptcy Code, and any Claim in

respect of such voided check shall be discharged and forever barred from assertion against NNIII, its Estate and its respective property, *provided* that at the discretion of the Plan Administrator, any such amounts may be escheated pursuant to applicable law.  In the case of any check issued in respect of an Allowed Claim that is returned as an undeliverable Distribution, such check shall be null and void if not negotiated within ninety (90) days after the date of issuance, and the Allowed Claim for which such Distribution was issued shall be discharged and forever barred pursuant to Section 10.9 of the Plan only after the time period to claim such undeliverable Distribution provided in Section 10.7 of the Plan has passed.

### XVII.    Delivery of Distributions

81.        Pursuant to Section 10.7 of the Plan, Distributions to Holders of Allowed Claims of NNIII shall be made at the address of each such Holder as set forth on the Schedules filed, unless superseded by a new address as set forth (a) on a Proof of Claim filed by a Holder of an Allowed Claim or (b) in another writing notifying the Claims Agent (at the address listed in Section I of the Disclosure Statement) of a change of address.  If any Holder's Distribution is returned as undeliverable, no further Distributions shall be made or notices delivered to such Holder on account of such Claim until the Claims Agent is notified in writing by such Holder of such Holder's current address, at which time all such Distributions shall be made to such Holder without interest; *provided* that such Distributions that are returned as undeliverable shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months after the Effective Date.  After such date, all unclaimed property or interests in property shall become the property of NNIII's Estate, without the need for a further order by the Bankruptcy Court (notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary), and the Claim of any Holder to such property or interest in property shall be discharged and forever barred.

### XVIII.    Matters Relating to Implementation of the Plan

a.    Operation of NNIII Between the Confirmation Date and the Effective Date

82.    Upon the entry of this Confirmation Order, NNIII shall continue to operate as a debtor in possession pursuant to the Bankruptcy Code and the Bankruptcy Rules during the period from entry of this Confirmation Order (the "Confirmation Date") through and until the Effective Date; *provided, however*, that NNIII's wind down shall be effectuated in a manner consistent with the Plan and this Confirmation Order.

b.    Transfer of Assets; No Successor Liability

83.    To the fullest extent permitted by the Applicable Laws, neither Wind-Down NNIII nor its successors or assigns, nor their respective properties, shall, as a result of Confirmation of the Plan, (a) be or be deemed to be a successor to NNIII or its Estate; (b) have or be deemed to have, de facto or otherwise, merged or consolidated with, or into, NNIII or its Estate; or (c) be or be deemed to be a continuation or substantial continuation of NNIII, its Estate or any enterprise of NNIII.

84.    To the fullest extent permitted by the Applicable Laws, without limiting the effect or scope of the foregoing, except as is expressly set forth in the Plan, as a result of Confirmation of the Plan, none of Wind-Down NNIII, any of its successors or assigns or its respective properties shall have any successor or vicarious liabilities of any kind or character, including, without limitation, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown, now existing or hereafter arising, asserted or unasserted, fixed or contingent, or liquidated or unliquidated with respect to NNIII, its Estate, any enterprise of NNIII or any obligations of NNIII or its Estate arising prior to the Effective Date.

c.      Post-Effective Date Corporate Existence; Vesting of Assets in Wind-Down NNIII; Post-Effective Date Rule 2002 and Property Disposal

85.        On the Effective Date, Wind-Down NNIII is authorized to maintain its current corporate form, with all powers of a corporation under the laws of its state of incorporation and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under such applicable state law, for the purpose of effectuating all aspects of the Plan pertaining to Wind-Down NNIII.  From and after the Effective Date, until dissolved in accordance with the Plan or by the Plan Administrator, Wind-Down NNIII is authorized to exist in order to effectuate all aspects of the Plan and wind down.

86.        Except as otherwise expressly provided in the Plan or the SPSA, or any documents or instruments executed in accordance therewith, on the Effective Date, pursuant to section 1141(b) and section 1141(c) of the Bankruptcy Code, Wind-Down NNIII shall be vested with all of the Assets of NNIII's Estate free and clear of all Claims, Interests, Liens, encumbrances, charges and other interests of Creditors and Holders of Interests, and may operate free of any restrictions imposed by the Bankruptcy Code or by the Bankruptcy Court, including, without limitation, performing any contract or lease entered into or assumed by NNIII after the Petition Date.  NNIII shall continue as a debtor in possession under the Bankruptcy Code until the Effective Date, and thereafter, subject to the terms of the Plan, Wind-Down NNIII may operate free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Court.  Such vesting does not constitute a voidable transfer under the Bankruptcy Code or Applicable Laws.

87.        All actions taken by NNIII prior to entry of this Confirmation Order, in accordance with the SPSA and the Plan, are hereby approved.  Subject to the terms of the Plan and the SPSA, NNIII is further authorized, without further notice to or action, order or approval of this Court or any other Person, to enter into and take any additional actions under or in

connection with the wind-down of NNIII, including such actions as NNIII deems necessary or appropriate to facilitate such wind-down, upon entry of this Confirmation Order in accordance with the requirements set forth in the Plan.

88.          On and after the Effective Date, subject to any limitations set forth in the Plan, Wind-Down NNIII may wind down its Estate, including its remaining assets, may retain, compensate and pay any professionals or advisors and compromise or settle any Claims or Interests without supervision of or approval by this Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

89.          Pursuant to section 15.21 of the Plan, after the Effective Date, any Entity that, prior to the Effective Date, had requested from NNIII or the Claims Agent to receive notice in the Chapter 11 Case pursuant to Bankruptcy Rule 2002 must renew such request in writing to the Claims Agent in order to be included on the list of entities entitled to receive documents from Wind-Down NNIII pursuant to Bankruptcy Rule 2002 (the "Post-Effective Date Notice List"). On and after the Effective Date, Wind-Down NNIII is authorized to limit the list of entities receiving documents pursuant to Bankruptcy Rule 2002 to those entities that request to be included on the Post Effective Date Notice List.

90.          Pursuant to section 15.22 of the Plan, after the Effective Date, notwithstanding any prior order of the Bankruptcy Court, the Plan Administrator shall give notice of a proposed abandonment or disposition of property by filing a notice on the docket of the Chapter 11 Case and delivering a copy of such notice to the Canadian Debtors and the Monitor; *provided*, *however*, that the Plan Administrator shall be entitled to abandon, dispose of and/or destroy Records (as defined in the Abandonment and Disposal Procedures Order), without notice and without complying with any Retention Laws (as defined in the Abandonment and

Disposal Procedures Order), in accordance with the terms of the Abandonment and Disposal Procedures Order and the Document Disposal Procedures (as defined in the Abandonment and Disposal Procedures Order) attached to the Abandonment and Disposal Procedures Order as Exhibit 1; *provided further*, *however*, that the destruction or other disposition of any Servers or Related Equipment (each as defined in the Server Access and Disposition Order) shall be governed by the Server Access and Disposition Order and NNIII shall only be required to provide written confirmation to the EMEA Debtors of such destruction or other disposition and the means of such destruction or other disposition.  The filing of a notice of abandonment or disposition on the docket pursuant to Section 15.22 of the Plan shall constitute good and sufficient notice, and no other or further notice of proposed abandonment or disposition is necessary.  If no party serves an objection within thirty (30) days of the posting of such notice, the Plan Administrator shall be authorized immediately to abandon or dispose of such property.

91.    The transfer of assets as set forth above shall not result in Wind-Down NNIII (a) having any liability or responsibility for any Claim against NNIII, NNIII's Estate or against any affiliate or insider of NNIII or (b) having any liability or responsibility to NNIII, except as expressly set forth in the Plan.  Without limiting the effect or scope of the foregoing, and to the fullest extent permitted by the Applicable Laws, any transfer of assets contemplated above does not and will not subject Wind-Down NNIII, its properties or assets or its affiliates, successors or assigns to any liability for Claims against NNIII's interests in such assets by reason of such transfer under any Applicable Laws, including, without limitation, any successor or vicarious liability.

d.    <u>Treatment of Interests</u>

92.    On the Effective Date, all Interests in NNIII will continue to be held by NNI until the closing of its Chapter 11 Case, solely for Plan administrative purposes.  NNI shall

receive no Distributions on account of such Interests until such time that all Allowed Claims in

Classes 1 through 3 have been satisfied in full in accordance with the Bankruptcy Code and the

Plan.  At such time, NNI will receive its Pro Rata Share of any remaining Creditor Proceeds

from NNIII.

### XIX.    **Wind-Down of NNIII**

93.        Subject to the Plan and the SPSA, NNIII and Wind-Down NNIII are

authorized to enter into such transactions as may be necessary or appropriate to simplify their

corporate structure and effect a corporate wind-down.  NNIII and Wind-Down NNIII are

authorized to direct any third parties, including, without limitation, any incorporator or other

corporate actor, to take such steps as may be required to effect, document or otherwise evidence

any dissolution, merger or amalgamation of entities in accordance with such transactions.

Without limitation to the foregoing, as of the Effective Date, the Plan Administrator is

authorized, subject to Section 8.2 of the Plan, to dissolve Wind-Down NNIII or complete the

winding up of Wind-Down NNIII (including, without limitation, transferring all or part of the

Residual Assets of Wind-Down NNIII to a liquidating trust) at such time as the Plan

Administrator considers appropriate and consistent with the implementation of the Plan

pertaining to Wind-Down NNIII.

94.        All actions taken by NNIII prior to entry of this Confirmation Order, in

accordance with the SPSA and the Plan, are hereby approved.  To the extent that NNIII

determines that it is necessary or appropriate for any step, transaction, payment or other action in

furtherance of, or in preparation for, any transactions related to its wind-down to be effectuated

on or prior to the Effective Date, NNIII is authorized to take such actions upon entry of this

Confirmation Order.  Following the Effective Date, Wind-Down NNIII is authorized to effect

such transactions and take any and all steps and actions as it deems necessary or appropriate to

effect such transactions, including modifications to the same, or otherwise effect a more tax efficient or simpler corporate structure. For the avoidance of doubt, nothing in this Confirmation Order shall constitute an amendment or modification of the SPSA or a waiver from compliance with its terms.

### XX.    **Intercompany Claims**

95.     On the Effective Date, all Intercompany Claims shall be discharged and satisfied by contributions, distributions or otherwise, as contemplated by the Plan and SPSA.

### XXI.    **Binding Effect; Effectiveness**

96.     Upon the occurrence of the Effective Date, all provisions of the Plan, including all agreements, instruments and other documents filed in connection with the Plan or executed by NNIII or Wind-Down NNIII in connection with the Plan shall be immediately effective and enforceable and deemed binding in accordance with their respective terms upon NNIII, Wind-Down NNIII and any and all Holders of Claims or Interests (irrespective of whether any such Holders of Claims or Interests failed to vote to accept or reject the Plan, voted to accept or reject the Plan or are deemed to accept or reject the Plan), all Persons that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in the Plan, each Person acquiring property under the Plan, any and all non-debtor parties to executory contracts and unexpired leases with NNIII and any other Persons affected in any matter by the Plan.

97.     The payments, obligations and benefits of any entity named or referred to in the Plan shall be binding upon and inure to the benefit of such entity's heirs, executors, administrators, successors or assigns, including, with respect to NNIII, Wind-Down NNIII, any successor to NNIII or Wind-Down NNIII or any Estate representative appointed or selected

pursuant to section 1123 of the Bankruptcy Code, including any trustee subsequently appointed

in the Chapter 11 Case or in any superseding chapter 7 case.

## XXII.    Corporate Actions, Documents and Further Transactions

98.         In accordance with section 1142 of the Bankruptcy Code, the

implementation and consummation of the Plan in accordance with its terms shall be, and hereby

is, authorized and approved, and NNIII and Wind-Down NNIII, or any other Person designated

pursuant to the Plan, shall be, and hereby are, authorized, empowered and directed to issue,

execute, deliver, file and record any document whether or not such document is specifically

referred to in the Plan, the Disclosure Statement or any exhibit thereto, and to take any action

necessary or appropriate to consummate the Plan and all transactions and agreements therein in

accordance with its terms, without the need for any further notice to, or action, order or approval

of this Court, or other act or action under Applicable Laws, except in either case, those expressly

required pursuant to the Plan or the SPSA.  This Confirmation Order shall constitute all

approvals and consents required, if any, by the laws, rules and regulations of all states and any

other governmental authority with respect to the implementation or consummation of the Plan

and any documents, instruments or agreements, and any amendments or modifications thereto,

and any other acts and transactions referred to in or contemplated by the Plan, the Disclosure

Statement and any documents, instruments or agreements, and any amendments or modifications

thereto.  Without limitation to the foregoing, as of the Effective Date, the by-laws of Wind-Down

NNIII shall be amended in their entirety as set forth in Exhibit D to the Plan.

99.         Each of NNIII and Wind-Down NNIII, as applicable, and any of their

respective officers and designees, including the Plan Administrator, is authorized to execute,

deliver, file or record such contracts, instruments, releases, indentures and other agreements or

documents (including, without limitation, any documents relating to the SPSA), and take such

actions or seek such orders, judgments, injunctions and rulings as NNIII or Wind-Down NNIII

deems necessary or appropriate to effectuate and further evidence the terms and conditions of the

Plan and this Confirmation Order, or to otherwise comply with the Applicable Laws.

100.         Each of the matters provided for by the Plan, including those that would

otherwise require approval of the shareholders, directors or members of NNIII or Wind-Down

NNIII, shall, as of the Effective Date, be deemed to have occurred and be effective as provided

in the Plan, and shall be authorized, approved and, to the extent taken prior to the Effective Date,

ratified, in each case without any requirement of further action by Holders of Claims or Interests,

directors or managers of NNIII or any other Person.

### XXIII.    Officers and Directors of Wind-Down NNIII

101.         The directors and officers of Wind-Down NNIII shall consist of the

persons identified in Exhibit C to the Plan or subsequently appointed in accordance with the

provisions of the Plan.  On the Effective Date and effective as of the Effective Date, the new

directors and officers of Wind-Down NNIII shall be deemed appointed, without the need for any

further notice to or action, order or approval of this Court, or other act or action under Applicable

Laws.

### XXIV.    Exemption from Transfer Taxes

102.         Pursuant to section 1146(a) of the Bankruptcy Code, the issuance,

transfer or exchange of notes, equity securities, instruments or documents under or in connection

with the Plan, the assignment or surrender of any lease or sublease, the creation of any mortgage,

deed of trust, Lien, pledge or other security interest or the making, assignment or the delivery of

any lease, sublease, deed or any other instrument of transfer under, in furtherance of, or in

connection with the Plan, including any deeds, bills of sale, assignments, mortgages, deeds of

trust or similar documents executed in connection with any assets subject to the Plan, shall not be

subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax nor any Uniform Commercial Code filing or recording fee or similar or other governmental assessment.  All appropriate state or local government officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### XXV.    Exemption from Securities Laws

103.        Pursuant to section 1125(e) of the Bankruptcy Code, NNIII's transmittal of the Solicitation Materials as set forth herein and its solicitation of acceptances of the Plan are not and will not be governed by or subject to any otherwise Applicable Law, Code or regulation governing the solicitation or acceptance of a plan of reorganization or the offer, issuance, sale or purchase of securities.

### XXVI.    Executory Contracts and Unexpired Leases

104.        Any executory contracts and unexpired leases of NNIII that have not been assumed, assumed and assigned or rejected by NNIII by order of this Court prior to the Confirmation Date or with respect to which NNIII has not otherwise Filed a Notice of Assumption and Assignment or obtained an order assuming, assuming and assigning or rejecting the contract or lease prior to the Confirmation Date, if any, shall be rejected pursuant to Section 9.2 of the Plan.

105.        Entry of this Confirmation Order constitutes an order approving the rejection of executory contracts or unexpired leases as set forth in Article 9 of the Plan, pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code.

106.        Each rejection (if any) of an executory contact or unexpired lease pursuant to this Confirmation Order, in accordance with Article 9 of the Plan or otherwise, shall

be legal, valid and binding upon NNIII or Wind-Down NNIII and all other Persons party to such executory contract or unexpired lease, all to the same extent as if such rejection had been authorized and effectuated pursuant to a separate order of this Court that was entered pursuant to section 365 of the Bankruptcy Code prior to the Effective Date.

107.    Neither NNIII nor Wind-Down NNIII shall have any further or ongoing obligations under any of the contracts rejected under the Plan.  Rejection or repudiation of any executory contract pursuant to the Plan or otherwise will not constitute a termination of pre-existing obligations owed to NNIII under such contracts.  In particular, notwithstanding any non-bankruptcy law to the contrary, Wind-Down NNIII expressly reserves and does not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by NNIII or Wind-Down NNIII, as applicable, from counterparties to any Rejected Contract.

### XXVII.    Resolution of Disputed Claims and Interests; Post-Effective Date Claims

108.    The provisions of Article 11 of the Plan regarding the procedures for resolving Disputed Claims are fair and reasonable and approved.

109.    Except as expressly provided in this Confirmation Order, the Plan or as ordered by this Court prior to the Effective Date, no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or this Court has entered a Final Order allowing such Claim.  Any Claim that is not an Allowed Claim shall be determined, resolved or adjudicated in accordance with the terms of Article 11 of the Plan or other applicable provision of the Plan and Applicable Laws.

110.    A Claim may be amended before the Confirmation Date only as agreed upon by NNIII and the Holder of such Claim or as otherwise permitted by the Bankruptcy Court, the Bankruptcy Rules or Applicable Laws.  On or after the Confirmation Date, the Holder of a

Claim (other than an Administrative Expense Claim or a Professional Claim) must obtain prior authorization from the Bankruptcy Court or Wind-Down NNIII to File or amend a Claim.  Any new or amended Claim Filed after the Confirmation Date without such prior authorization will not appear on the Claims Register and shall be deemed disallowed in full and expunged without any further notice to, or action, order or approval of, this Court or any other Person.

111.     In accordance with section 502(b)(9) of the Bankruptcy Code, any entity that failed to File a proof of Claim by the applicable bar date set by the Bankruptcy Court in the Chapter 11 Case and was not otherwise permitted to File a proof of Claim after the applicable bar date by a Final Order of the Bankruptcy Court is and shall be barred, estopped and enjoined from asserting any Claim against NNIII (a) in an amount that exceeds the amount, if any, that is identified in the Schedules on behalf of such entity as undisputed, noncontingent and liquidated or (b) of a different nature or a different classification than any Claim identified in the Schedules on behalf of such Entity.  NNIII and Wind-Down NNIII shall be entitled, for the purposes of Distributions, reserves and other similar purposes under the Plan, to treat all Claims Filed after the later of (a) the Effective Date and (b) the Claim's applicable bar date, as disallowed and expunged.

## XXVIII.   Estimation of Claims

112.     Other than as expressly set forth in the Plan or this Confirmation Order, pursuant to Section 11.3 of the Plan, the Plan Administrator may at any time request that the Bankruptcy Court estimate for any purpose including Distribution any contingent, unliquidated or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code or otherwise, regardless of whether NNIII previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.

### XXIX.    Conditions Precedent to Effectiveness and Authority to Implement

113.         NNIII is authorized, without further notice to, or action, order or approval
of, this Court or any other Person, to take any actions necessary to effectuate the conditions
precedent to the Effective Date of the Plan, including, without limitation:  (a) effecting or
executing and delivering all actions, agreements, instruments, certificates or other documents
necessary to implement the terms and provisions of the Plan, (b) obtaining all authorizations,
consents and regulatory approvals, if any, required in connection with the consummation of the
Plan, (c) filing the amended organizational documents of Wind-Down NNIII with the applicable
authorities of its jurisdiction of incorporation or formation in accordance with such jurisdiction's
Applicable Laws and (d) paying in full all statutory fees due to the U.S. Trustee.

114.         Notwithstanding the foregoing, NNIII may waive the occurrence of the
conditions precedent to the Effective Date set forth in Section 12.1 of the Plan.  Any such waiver
may be given effect at any time, without notice, leave, hearing or order of the Bankruptcy Court,
and without any formal action other than proceeding to consummate the Plan.  Any actions
required to be taken on the Effective Date shall take place and shall be deemed to have occurred
simultaneously, and no such action shall be deemed to have occurred prior to the taking of any
other such action.  If NNIII decides that one of the conditions precedent to the Effective Date of
its Plan cannot be satisfied and the occurrence or such condition is not waived or cannot be
waived, then NNIII shall file a notice of the inability to satisfy such condition with the
Bankruptcy Court.  The failure of NNIII to exercise any of the foregoing rights shall not be
deemed a waiver of any other rights and each right shall be deemed an ongoing right that may be
asserted at any time.

115.         Upon the occurrence of the Effective Date or as soon thereafter as is
reasonably practicable, Wind-Down NNIII shall File with the Bankruptcy Court the "Notice of

Effective Date" in a form reasonably acceptable to Wind-Down NNIII in its sole discretion, which notice shall constitute appropriate and adequate notice that the Plan has become effective; *provided*, *however*, that Wind-Down NNIII shall have no obligation to notify any Person of such fact.  The Plan shall be deemed to be effective as of 12:01 a.m., prevailing Eastern Standard Time, on the date of such filing.  A courtesy copy of the Notice of Effective Date may be sent by United States mail, postage prepaid (or at Wind-Down NNIII's option, by courier, facsimile or electronic mail) to those Persons who have Filed with the Bankruptcy Court requests for notices pursuant to Bankruptcy Rule 2002.

### XXX.    Settlement, Release, Injunction, and Exculpation

116.    The settlement, release, injunction, exculpation and related provisions set forth in Article 13 of the Plan are hereby approved and authorized:

      a.    Compromise and Settlement

117.    Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases and other benefits provided under the Plan on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan.

118.    Except as otherwise provided in section 1141(d) of the Bankruptcy Code, on and after the Effective Date, the provisions of the Plan shall, and shall be deemed to, be binding on any Holder of a Claim against or Interest in NNIII and its respective successors and assigns, regardless of whether the Claim or Interest of such Holder is Impaired under the Plan and whether or not such Holder has voted or failed to vote to accept or reject the Plan.

119.    Further, pursuant to section 1142 of the Bankruptcy Code and in accordance with this Confirmation Order, NNIII and any other necessary party shall execute,

deliver and join in the execution or delivery (as applicable) of any instrument, document or agreement required to consummate the Plan, and to perform any other act, and the execution of documents contemplated in the Plan that are necessary for the consummation of the Plan and the transactions contemplated herein.

120.        Pursuant to section 1141(d)(3) of the Bankruptcy Code, Confirmation will not discharge Claims against NNIII; *provided*, *however*, that no Holder of any Claim or Interest may, on account of such Claim or Interest, seek or receive any payment or other Distribution from, or seek recourse against, NNIII's Estate, Wind-Down NNIII and/or their respective successors, assigns and/or property, except as expressly provided in the Plan.

b.        <u>Release of NNIII and Wind-Down NNIII</u>

121.        **EFFECTIVE AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, THE HOLDERS OF CLAIMS AGAINST AND INTERESTS IN NNIII AND EACH OF SUCH HOLDERS' PREDECESSORS, SUCCESSORS, ASSIGNS AND EACH OF THEIR PRESENT AND FORMER OFFICERS, DIRECTORS, EMPLOYEES, CONSULTANTS AND AGENTS (ACTING IN SUCH CAPACITY) WILL BE DEEMED TO HAVE WAIVED, RELEASED AND VOIDED ANY AND ALL CLAIMS, OBLIGATIONS, DAMAGES, DEMANDS, DEBTS, RIGHTS, SUITS, JUDGMENTS OR LIABILITIES (OTHER THAN THE RIGHT TO ENFORCE NNIII'S OR WIND-DOWN NNIII'S OBLIGATIONS UNDER THE PLAN, THE SPSA AND THE CONTRACTS, INSTRUMENTS, RELEASES, AGREEMENTS AND DOCUMENTS DELIVERED UNDER THE PLAN) AGAINST NNIII AND WIND-DOWN NNIII, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR**

UNFORESEEN, THEN EXISTING OR THEREAFTER ARISING, IN LAW, EQUITY OR OTHERWISE, THAT ARE BASED IN WHOLE OR IN PART ON ANY ACT OR OMISSION, TRANSACTION, EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE IN ANY WAY RELATING TO NNIII, THE CHAPTER 11 CASES, THE DISCLOSURE STATEMENT OR THE PLAN (INCLUDING, WITHOUT LIMITATION, THE SOLICITATION OF VOTES ON THE PLAN) THAT COULD HAVE BEEN ASSERTED BY THE HOLDERS OF CLAIMS AGAINST OR INTERESTS IN NNIII, IN THEIR INDIVIDUAL CAPACITIES OR ON BEHALF (WHETHER DIRECTLY OR DERIVATIVELY) OF NNIII, ITS ESTATE, WIND-DOWN NNIII, EACH OF THEIR PREDECESSORS, SUCCESSORS, ASSIGNS AND EACH OF THEIR PRESENT AND FORMER OFFICERS, DIRECTORS, EMPLOYEES, CONSULTANTS AND AGENTS (ACTING IN SUCH CAPACITY), IN EACH CASE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER OR RULE OR THE VOTE, CONSENT OR AUTHORIZATION OR APPROVAL OF ANY PERSON.

      c.      <u>Release and Discharge of the Plan Released Parties</u>

122.      EFFECTIVE AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, THE HOLDERS OF CLAIMS AGAINST AND INTERESTS IN NNIII AND EACH OF SUCH HOLDERS' PREDECESSORS, SUCCESSORS, ASSIGNS AND EACH OF THEIR PRESENT AND FORMER OFFICERS, DIRECTORS, EMPLOYEES, CONSULTANTS AND AGENTS (ACTING IN SUCH CAPACITY) WHO: (I) EITHER VOTED TO ACCEPT THE PLAN OR ARE PRESUMED TO HAVE

VOTED FOR THE PLAN UNDER SECTION 1126(F) OF THE BANKRUPTCY CODE

OR (II) WERE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN AND

ABSTAINED FROM VOTING AND DID NOT MARK THEIR BALLOTS TO

INDICATE THEIR REFUSAL TO GRANT THE RELEASES PROVIDED HEREIN

WILL BE DEEMED TO HAVE WAIVED, RELEASED, VOIDED AND DISCHARGED

EACH OF THE PLAN RELEASED PARTIES FROM ANY AND ALL CLAIMS,

OBLIGATIONS, DAMAGES, DEMANDS, DEBTS, RIGHTS, SUITS, JUDGMENTS OR

LIABILITIES (OTHER THAN THE RIGHT TO ENFORCE THE PLAN RELEASED

PARTIES' OBLIGATIONS UNDER THE PLAN, THE SPSA AND THE CONTRACTS,

INSTRUMENTS, RELEASES, AGREEMENTS AND DOCUMENTS DELIVERED

UNDER THE PLAN), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR

CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN

OR UNFORESEEN, THEN EXISTING OR THEREAFTER ARISING, IN LAW,

EQUITY OR OTHERWISE, THAT ARE BASED IN WHOLE OR IN PART ON ANY

ACT OR OMISSION, TRANSACTION, EVENT OR OTHER OCCURRENCE TAKING

PLACE ON OR PRIOR TO THE EFFECTIVE DATE IN ANY WAY RELATING TO

NNIII, THE CHAPTER 11 CASE, THE DISCLOSURE STATEMENT, THE SPSA OR

THE PLAN (INCLUDING, WITHOUT LIMITATION, THE SOLICITATION OF

VOTES ON THE PLAN) THAT COULD HAVE BEEN ASSERTED BY THE HOLDERS

OF CLAIMS AGAINST OR INTERESTS IN NNIII, IN THEIR INDIVIDUAL

CAPACITIES OR ON BEHALF (WHETHER DIRECTLY OR DERIVATIVELY) OF

NNIII, ITS ESTATE, WIND-DOWN NNIII, EACH OF THEIR PREDECESSORS,

SUCCESSORS, ASSIGNS AND EACH OF THEIR PRESENT AND FORMER

**OFFICERS, DIRECTORS, EMPLOYEES, CONSULTANTS AND AGENTS (ACTING IN SUCH CAPACITY), IN EACH CASE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER OR RULE OR THE VOTE, CONSENT OR AUTHORIZATION OR APPROVAL OF ANY PERSON.**

123.        **NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS CONFIRMATION ORDER OR SECTION 13.3 OR SECTION 13.2 OF THE PLAN, THE RELEASES SET FORTH ABOVE DO NOT RELEASE (I) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, OR ANY DOCUMENT, INSTRUMENT OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN OR  (II) ANY OBLIGATIONS (WHETHER PRE- OR POST-EFFECTIVE DATE) UNDER THE NNI PLAN OR THE SPSA OR ANY DOCUMENT, INSTRUMENT OR ARGREEMENT EXECUTED TO IMPLEMENT THE NNI PLAN OR THE SPSA, AND EXCEPT AS OTHERWISE PROVIDED BY PRIOR OR SUBSEQUENT FINAL ORDER OF THE BANKRUPTCY COURT, NOTHING IN THIS CONFIRMATION ORDER OR SECTION 13.3 OR SECTION 13.2 OF THE PLAN SHALL OPERATE AS A WAIVER OR RELEASE OF (A) ANY PERSON (I) NAMED PRIOR TO THE EFFECTIVE DATE AS A DEFENDANT IN ANY ACTION COMMENCED BY OR ON BEHALF OF NNIII OR (II) ADJUDICATED PRIOR TO THE EFFECTIVE DATE BY A COURT OF COMPETENT JURISDICTION TO HAVE ENGAGED IN ACTS OF DISHONESTY OR WILLFUL MISCONDUCT DETRIMENTAL TO THE INTEREST OF NNIII OR (B) ANY CLAIM (I) WITH RESPECT TO ANY LOAN, ADVANCE OR SIMILAR PAYMENT BY NNIII TO ANY**

SUCH PERSON, (II) WITH RESPECT TO ANY CONTRACTUAL OBLIGATION OWED BY SUCH PERSON TO NNIII OR (III) RELATING TO SUCH PERSON'S KNOWING FRAUD, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT; AND *PROVIDED*, *FURTHER*, THAT THE FOREGOING IS NOT INTENDED, NOR SHALL IT BE CONSTRUED, TO RELEASE ANY OF NNIII'S CLAIMS THAT MAY EXIST AGAINST NNIII'S DIRECTORS AND OFFICERS LIABILITY INSURANCE; AND *PROVIDED*, *FURTHER*, THAT, NOTWITHSTANDING THE FOREGOING, ALL SUCH CLAIMS SHALL BE PRESERVED BY NNIII FOR SETOFF PURPOSES.

    d.    SPSA Releases

124.    UPON THE EFFECTIVE DATE, AS PROVIDED IN SECTION 8 OF THE SPSA AND IN CONSIDERATION FOR THE SETTLEMENTS PROVIDED FOR UNDER THE SPSA INCLUDING THE RELEASES GRANTED IN FAVOR OF NNIII UNDER THE SPSA, NNIII AND THE OTHER DEBTOR RELEASING PARTIES, TO THE EXTENT NOT PREVIOUSLY RELEASED PURSUANT TO THE 9019 APPROVAL ORDER OR OTHERWISE, SHALL BE DEEMED TO HAVE RELEASED AND FOREVER DISCHARGED EACH OF THE OTHER SPSA RELEASED PARTIES FROM ANY AND ALL LIABILITY FOR CLAIMS, DEFENSES, DEMANDS, LIABILITIES, DAMAGES, ACTIONS, CONTRIBUTIONS, SUBROGATION, CAUSES OF ACTION, SETOFFS, RECOUPMENTS, COSTS AND EXPENSES (INCLUDING LAWYERS' OR OTHER FEES OR EXPENSES), THE FOREGOING TERMS TO BE CONSTRUED AS BROADLY AS POSSIBLE, WHETHER KNOWN OR UNKNOWN, PAST OR PRESENT, FIXED OR CONTINGENT, LIQUIDATED OR UNLIQUIDATED, WHICH ANY OF THE DEBTOR RELEASING PARTIES HAVE, HAD, MAY HAVE HAD OR HEREAFTER MAY HAVE HOWEVER SO ARISING OUT OF OR IN

CONNECTION WITH THE ALLOCATION DISPUTE, ANY OTHER MATTERS RESOLVED UNDER THE SPSA OR ANY OTHER MATTER RELATING TO THE CHAPTER 11 CASES OR THE FOREIGN PROCEEDINGS OR THE NORTEL GROUP (COLLECTIVELY, AND EXCLUDING THE NON-RELEASED MATTERS, THE "<u>SPSA RELEASED CLAIMS</u>") AND UNDERTAKES, COVENANTS AND AGREES NOT TO MAKE ANY CLAIM, PARTICIPATE IN ANY PROCEEDING OR TAKE ANY ACTION AGAINST ANY OTHER PERSON OR ENTITY WHO WOULD AS A RESULT OF SUCH CLAIM, PROCEEDING OR ACTION HAVE A CLAIM FOR CONTRIBUTION OR INDEMNITY AGAINST ANY OF THE OTHER SPSA RELEASED PARTIES IN RELATION TO THE SPSA RELEASED CLAIMS, *PROVIDED HOWEVER*, THAT NNIII'S RIGHT TO OBJECT TO, OR ASSERT COUNTERCLAIMS FOR PURPOSES OF SETOFF AGAINST, CLAIMS MADE AGAINST IT BY DIRECTORS AND OFFICERS OF ANY ENTITY IN THE NORTEL GROUP IS NOT RELEASED OR IN ANY WAY COMPROMISED. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS PARAGRAPH, THE RELEASES SET FORTH IN SECTION 13.4 OF THE PLAN DO NOT CONSTITUTE A RELEASE, WAIVER OR DISCHARGE OF THE INTERCOMPANY CLAIMS SPECIFIED ON ANNEX L TO THE SPSA, ANY CLAIM BETWEEN OR AMONG ANY OF THE FORMER DEBTORS AND THEIR SUBSIDIARIES, OR ANY CLAIM TO ENFORCE THE TERMS OF THE SPSA, THE PLAN, THE NNI PLAN, THE CANADIAN PLAN AND ANY ORDER OF THE BANKRUPTCY COURT OR THE CCAA COURT RELATED THERETO (COLLECTIVELY, THE "<u>NON-RELEASED MATTERS</u>").

e.      Exculpation and Limitation of Liability

125.          **None of the Exculpated Parties shall have or incur any liability to any Entity for any act taken or omitted to be taken in connection with and subsequent to the commencement of the Chapter 11 Cases, the formulation, preparation, dissemination, implementation, solicitation of votes, confirmation or approval of the Plan or any compromises or settlements contained therein, the administration of the Plan or Distributions under the Plan, the Disclosure Statement and any ancillary documents related thereto or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan; *provided*, *however*, the foregoing provisions of this paragraph and Section 13.5 of the Plan shall not affect the liability of any Exculpated Party that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct, including, without limitation, fraud and criminal misconduct, and in all respects the Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.**

f.      Injunction on Claims

126.          **Except as otherwise expressly provided in the Plan, the Confirmation Order or such other order of the Bankruptcy Court that may be applicable, all Holders of Claims or other debt or liability that is treated under the Plan or Interest or other right of interest that is terminated or cancelled pursuant to the Plan are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or other debt or liability or Interest or other right of equity interest that is terminated or cancelled pursuant to the**

48

**Plan against NNIII, NNIII's Estate or Wind-Down NNIII or any properties or interest in properties of NNIII or Wind-Down NNIII, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against NNIII, NNIII's Estate or Wind-Down NNIII or any properties or interest in properties of NNIII or Wind-Down NNIII, (c) creating, perfecting or enforcing any encumbrance of any kind against NNIII, NNIII's Estate or Wind-Down NNIII or any properties or interest in properties of NNIII or Wind-Down NNIII, (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from NNIII, NNIII's Estate or Wind-Down NNIII or any properties or interest in properties of NNIII or Wind-Down NNIII, (e) acting or proceeding in any manner that does not conform to or comply with the provisions of the Plan or (f) taking any actions to interfere with the implementation or consummation of the Plan, with respect to any such Claim or other debt or liability that is discharged or Interest or other right of equity interest that is terminated or cancelled pursuant to the Plan.**

### XXXI.    Existing Injunctions and Stays Remain in Effect Until Effective Date

127.        Unless otherwise provided in the Plan, the Confirmation Order or a separate order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Case under sections 105 and 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date shall remain in full force and effect until the Effective Date. Upon the Effective Date, all injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, shall be lifted and of no further force or effect—being replaced, to the extent applicable, by the injunctions, discharges, releases and exculpations of Article 13 of the Plan.

## XXXII.    Nortel Networks Retirement Income Plan

128.        NNIII, the Former Debtors and PBGC previously entered into that certain Terms of Settlement of PBGC Claims attached as Exhibit 1 to the Order Approving Settlement Agreement by and Among the Debtors and the Pension Benefit Guaranty Corporation with Respect to the PBGC Claims and Related Issues [D.I. 17679] (the "PBGC Settlement Order"), pursuant to which, among other things, (a) PBGC provided releases to NNIII, the Former Debtors and their respective current and former affiliates, subsidiaries, departments, offices, divisions, branches, shareholders, directors, officers, employees, agents, attorneys, and their personal representatives, successors and assigns, (b) the PBGC was entitled to receive a maximum aggregate distribution on its claims against NNIII and the Former Debtors in the amount of $565,000,000, (c) in December 2018, the PBGC received the maximum allowed recovery of $565,000,000 on its claims against NNIII and the Former Debtors and (d) the PBGC's Allowed General Unsecured Claim against NNIII and the Former Debtors and any and all claims that have been or could have been asserted by the PBGC against NNIII and the Former Debtors are deemed paid in full such that the PBGC shall not have any further claims against NNIII or any of the Former Debtors.  In addition, on January 24, 2017, the Bankruptcy Court confirmed the NNI Plan, which effectuated various settlements among PBGC, the Former Debtors and NNIII.  Without in any way limiting or affecting the terms of the PBGC Settlement Order and the NNI Plan or the settlements or releases provided thereunder, nothing in the Disclosure Statement, the Plan, the Confirmation Order or any other document filed in the Chapter 11 Case shall in any way be construed to further discharge, release, limit or relieve NNIII, or any other party, in any capacity, from any liability or responsibility with respect to the Nortel Networks Retirement Income Plan (the "Pension Plan") or any other defined benefit pension plan under any law, governmental policy or regulatory provision.  Subject to any prior

release granted under any settlement or compromise approved in the Chapter 11 Cases, including

under the PBGC Settlement Order, PBGC and the Pension Plan shall not be enjoined or

precluded from enforcing such liability or responsibility against parties other than NNIII, the

Former Debtors and their respective current and former affiliates, subsidiaries, departments,

offices, divisions, branches, shareholders, directors, officers, employees, agents, attorneys, and

their personal representatives, successors and assigns by any of the provisions of the

Confirmation Order.

### XXXIII.  <u>Retained Actions</u>

129.          Except as expressly provided in the Plan, nothing contained in the Plan or

in the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights with

respect to Litigation Claims that NNIII, Wind-Down NNIII or the Plan Administrator may have

or choose to assert on behalf of NNIII's Estate or Wind-Down NNIII under any provision of the

Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, any and

all claims against any Person or Entity, to the extent such Person or Entity asserts a cross-claim,

counterclaim or claim for setoff that seeks affirmative relief against NNIII, its officers, directors

or representatives.

130.          Except as expressly provided in the Plan, nothing contained in the Plan or

the Confirmation Order shall be deemed to be a waiver or relinquishment of any Litigation

Claim, right of setoff or other legal or equitable defense that NNIII had immediately prior to the

Petition Date, against or with respect to any Claim.  NNIII, Wind-Down NNIII and the Plan

Administrator shall have, retain, reserve and be entitled to assert all such Litigation Claims,

rights of setoff and other legal or equitable defenses that NNIII had immediately prior to the

Petition Date fully as if the Chapter 11 Case had not been commenced, and all of NNIII's legal

and equitable rights respecting any Claim may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Case had not been commenced.

131.    Except as otherwise provided in the Plan, nothing shall affect the rights and legal and equitable defenses of NNIII, Wind-Down NNIII or the Plan Administrator with respect to any Unimpaired Claim, including all rights in respect of legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

132.    Except as expressly provided in the Plan, the Plan Administrator, shall, after the Effective Date, retain the rights of NNIII to prosecute any Litigation Claims that could have been brought by NNIII at any time.

133.    The Plan Administrator and Wind-Down NNIII shall retain the rights of NNIII to enforce all orders entered and relief granted in the Chapter 11 Case.

## XXXIV.    Waiver or Estoppel

134.    Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument that its Claim or Interest should be Allowed in a certain amount, in a certain priority, as secured or not subordinated by virtue of an agreement made with NNIII or its counsel or any other Person if such agreement was not disclosed in the Plan, the Disclosure Statement or papers filed with this Court prior to the Confirmation Date.

## XXXV.    Payment of Statutory Fees

135.    On or before the Effective Date, all fees due and payable pursuant to section 1930 of title 28 of the United States Code, as determined by this Court at the Confirmation Hearing, shall be paid in full, in Cash.  Such fees shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed or closed, whichever occurs first.

### XXXVI.   No Double-Recovery

136.         In no circumstance shall a Creditor receive aggregate distributions from NNIII or Wind-Down NNIII and any other Entity in the Nortel Group on account of an Allowed Claim in excess of 100% of the amount of such Allowed Claim.  In order to be eligible for any Distribution, a Creditor who holds an Allowed Claim against NNIII or Wind-Down NNIII and a related claim against any other Entity in the Nortel Group (an "Other Nortel Claim"), shall, upon the written request of NNIII or Wind-Down NNIII (which may be made from time to time), provide such information to NNIII or Wind-Down NNIII as it may reasonably request in respect of the Other Nortel Claim, including the amount in which the Other Nortel Claim has been allowed, the amount of distributions received or expected to be received on account of such Other Nortel Claim and any and all supporting documentation relating to the foregoing.  Subject to further order of the Bankruptcy Court, NNIII and Wind-Down NNIII are authorized to delay and/or withhold Distributions to Creditors holding Other Nortel Claims pending receipt of documentation acceptable to NNIII or Wind-Down NNIII, acting reasonably, to allow it to confirm that a Creditor has not and will not receive amounts on account of its Allowed Claim in excess of 100% of the amount of such Allowed Claim.

### XXXVII.   Bar Date for Allowance and Payment of Administrative Expense Claims

137.         Administrative Expense Claims (other than Professional Claims which must be filed in accordance with section 2.3 of the Plan) must be Filed so as to be actually received by the Bankruptcy Court on or before 5:00 p.m., prevailing Eastern Standard Time, on the date that is the first Business Day that is thirty (30) days following the Effective Date, unless otherwise ordered by the Bankruptcy Court (the "Administrative Expense Claims Bar Date").

138.         A notice setting forth the Effective Date of the Plan and the Administrative Expense Claims Bar Date and Professional Claims Bar Date shall be (i) Filed on

the Bankruptcy Court's docket and (ii) posted on NNIII's and the Former Debtors' case information website at http://dm.epiq11.com/nortel.  Further notice of the Administrative Expense Claims Bar Date or Professional Claims Bar Date shall be provided as may be directed by the Bankruptcy Court.  All requests for payment of an Administrative Expense Claim that accrued on or before the Effective Date (other than Administrative Expense Claims that (1) have been paid, (2) relate to payment of Professionals, (3) are for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code or (4) are as specified in subparagraph (B) or (C) of section 503(b)(1) of the Bankruptcy Code and held by a Governmental Unit) must be Filed with the Claims Agent and served on counsel for NNIII by the Administrative Expense Claims Bar Date or the Professional Claims Bar Date, respectively. Absent further order of the Bankruptcy Court, any requests for payment of Administrative Expense Claims, including Professional Claims, that are not properly Filed and served by the applicable bar date shall not appear on the register of Claims maintained by the Claims Agent and shall be disallowed automatically without the need for any objection from NNIII or any action by the Bankruptcy Court.

139.    NNIII and the Plan Administrator may settle Administrative Expense Claims in the ordinary course without further notice or Bankruptcy Court approval, in accordance with the Plan Administration Agreement, as applicable.  NNIII shall have the right to object to any Administrative Expense Claim within one hundred and eighty (180) days after the Administrative Expense Claims Bar Date, subject to further extensions that may be granted by the Bankruptcy Court.  Unless NNIII or Wind-Down NNIII object to a timely Filed and properly served Administrative Expense Claim, such Administrative Expense Claim shall be deemed Allowed in the amount requested. In the event that NNIII or Wind-Down NNIII object to an

Administrative Expense Claim, the parties may confer to try to reach a settlement and, failing

that, the Bankruptcy Court shall determine whether such Administrative Expense Claim should

be allowed and, if so, in what amount.

### XXXVIII. References to Plan Provisions

140.     The Plan is confirmed in its entirety.  The Plan is hereby incorporated

into this Confirmation Order by reference (subject to any provision incorporated by such

reference being governed by an express and contradictory provision herein).  The failure to

reference or discuss any particular provision of the Plan in this Confirmation Order shall not

diminish or impair the effectiveness of, or otherwise affect, the validity, binding effect and

enforceability of such provision, and each provision of the Plan shall have the same validity,

binding effect and enforceability as if fully set forth in this Confirmation Order.

### XXXIX.  Rules Governing Conflicts Between Documents

141.     In the event of a conflict between the terms or provisions of the Plan and

any other Plan-related documents, the terms of the Plan shall control over such documents.  In

the event of a conflict between the terms of the Plan or Plan-related documents, on the one hand,

and the terms of this Confirmation Order, on the other hand, the terms of this Confirmation

Order shall control.  This Confirmation Order shall supersede any orders of the Court issued

prior to the Confirmation Date that may be inconsistent herewith.  Notwithstanding the

foregoing, in the event of an inconsistency between the Plan or this Confirmation Order, on the

one hand, and the SPSA, on the other hand, the SPSA shall govern.

### XL.     No Admissions

142.     As to contested matters, adversary proceedings and other Causes of

Action or threatened Causes of Action, nothing in the Plan or the Disclosure Statement shall

constitute or be construed as an admission of any fact or liability, stipulation or waiver but rather

as a statement made in settlement negotiations.  The Plan shall not be construed to be conclusive advice on the tax, securities and other legal effects of the Plan as to Holders of Claims against, or Interests in, NNIII.

### XLI.        Headings

143.        Headings utilized herein are for convenience and reference only and shall not constitute a part of the Plan or this Confirmation Order for any other purpose.

### XLII.        Notice of Entry of this Confirmation Order

144.        In accordance with Bankruptcy Rules 2002 and 3020(c), NNIII shall serve a notice of the Effective Date (the "Effective Date Notice") by hand, overnight courier service or United States mail, first-class postage prepaid, to all Persons having been served with the notice of the Confirmation Hearing within a reasonable period of time after the conditions to effectiveness of the Plan set forth in Article 12 of the Plan have been satisfied or waived, which Effective Date Notice shall include notice of the Administrative Expense Claims Bar Date and the Professional Claims Bar Date; *provided, however,* that no notice or service of any kind shall be required to be mailed or made upon any Person to whom NNIII mailed a notice of the Confirmation Hearing but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," "forwarding order expired," or similar reason, unless NNIII has been informed in writing by such Person, or are otherwise aware, of that Person's new address.

145.        Mailing of the Effective Date Notice in the time and manner set forth in the preceding paragraph shall constitute good and sufficient notice of the information provided in the Effective Date Notice, including, without limitation, notice of confirmation of the Plan as required by the Bankruptcy Rules and Applicable Laws, the Administrative Expense Claims Bar Date and the Professional Claims Bar Date.  Under the particular circumstances and in

56

accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), no other or further

notice of confirmation or the occurrence of the Effective Date, the Administrative Expense

Claims Bar Date or the Professional Claims Bar Date is necessary.

### XLIII.    **Bankruptcy Code § 345**

146.        For the avoidance of doubt, on and after the Effective Date, the

requirements of 11 U.S.C. § 345 shall not apply.

### XLIV.    **Retention of Jurisdiction**

147.        Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and

notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, this

Court shall retain jurisdiction as provided in the Plan over all matters arising out of, or related to,

the Chapter 11 Case, NNIII, Wind-Down NNIII and the Plan, to the fullest extent permitted by

Applicable Laws, including, without limitation, jurisdiction over those matters set forth in

Article 14 of the Plan.

### XLV.    **Modifications or Amendments to the Plan and Ancillary Documents**

148.        Subject to the terms of the SPSA, and subject to the restrictions and

requirements of section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, NNIII is

authorized to modify the Plan and any ancillary documents after the date hereof in accordance

with section 15.3 of the Plan, without further notice to or authorization from this Court; *provided*

that NNIII shall not alter, amend, withdraw, replace or modify the Plan in a manner that is

inconsistent with its obligations under the SPSA without consent of the relevant SPSA Parties.

A Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as

altered, amended or modified, if the proposed alteration, amendment or modification does not

materially and adversely change the treatment of the Claim of such Holder and is consistent with

Section 15.3 of the Plan and this Confirmation Order.  For the avoidance of doubt, nothing in

Section 15.3 of the Plan or this Confirmation Order shall limit any SPSA Party's rights pursuant to Section 6(h) of the SPSA with respect to any proposed amendment, restatement, modification and/or supplement to the Plan.

149.    Subject to the terms of the SPSA, NNIII expressly reserves its respective rights to revoke or withdraw, or to alter, amend or modify, the Plan prior to the Effective Date and after Confirmation and, to the extent necessary, may initiate proceedings in this Court to so alter, amend or modify the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Section 15.3 of the Plan and the SPSA.  For the avoidance of doubt, nothing herein shall modify any SPSA Party's rights pursuant to Section 6(h) of the SPSA with respect to any proposed amendment, restatement, modification and/or supplement to the Plan.

### XLVI.    Ownership and Control

150.    The consummation of the Plan and the transactions contemplated thereby shall not constitute a change of ownership or change in control, as such terms are used in any statute, regulation, contract, indenture or agreement (including any employment, severance, termination or insurance agreements) in effect on the Effective Date and to which NNIII is a party under any Applicable Law of any applicable Governmental Unit.

### XLVII.    Final Order; Waiver of Stay; Authorization to Consummate

151.    This Confirmation Order is a Final Order.  For good cause shown, the stay of Confirmation set forth in Bankruptcy Rule 3020(e) is hereby waived.  The provisions of Federal Rule of Civil Procedure 62, as applicable pursuant to Bankruptcy Rule 7062, and Bankruptcy Rule 3020(e) shall not apply to this Confirmation Order.  NNIII is authorized to consummate the Plan immediately upon entry of this Confirmation Order, subject to satisfaction or waiver of the conditions precedent to Consummation in accordance with Article 12 of the

Plan, notwithstanding any stay otherwise imposed pursuant to Bankruptcy Rule 3020(e) or any other provision of the Bankruptcy Rules, including Bankruptcy Rules 6004(h), 7062, 9014 or otherwise.  The period in which an appeal with respect to this Confirmation Order must be filed shall commence immediately upon the entry of this Confirmation Order.

### XLVIII.    Rule 2004 Examinations

152.        The power of NNIII to conduct examinations pursuant to Bankruptcy Rule 2004 is expressly preserved following the Effective Date; *provided, however*, that Wind-Down NNIII shall not conduct any Rule 2004 examination relating to any Cause of Action that is expressly waived, relinquished, compromised or settled in the Plan, the SPSA or any Final Order (including, without limitation, the Causes of Action against the Released Parties).

### XLIX.    Case Closure

153.        Pursuant to section 350 of the Bankruptcy Code, the closing of the Chapter 11 Case is hereby authorized.  After the Chapter 11 Case has been fully administered, the Plan Administrator shall File all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.  After proper filing of NNIII's final report and account as required by Local Rule 3022-1, provided no objections to such final report are timely filed, the Plan Administrator is hereby authorized to file a Final Decree under certification of counsel closing NNIII's Chapter 11 Case pursuant to Bankruptcy Rule 3022.  The Plan Administrator's authority shall continue until such time as NNIII's Chapter 11 Case has been fully administered and closed.  The closing of NNIII's Chapter 11 Case will in no way prejudice NNIII's rights to object or otherwise contest a proof of Claim properly filed against NNIII (provided that a Holder seeking to file a late Claim has complied with 11 U.S.C. § 350(b) or Applicable Law, if NNIII's case has been closed), NNIII's rights to commence or prosecute any

action to which NNIII may be a party or a Holder's rights to receive Distributions under the Plan to the extent such Holder's Claim is ultimately Allowed, nor will the closing of NNIII's Chapter 11 Case otherwise alter or modify the terms of the Plan.

Dated: _____, 2021
        Wilmington, Delaware

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE